IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
Civil Division

| | | |
|---|---|---|
| MARY JUERGENS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action Number: 06-CA-1524 |
| | ) | |
| URBAN TITLE SERVICES, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF JUERGENS' COMBINED RESPONSE TO DEFENDANT FIRST MOUNT VERNON MORTGAGE, L.L.C. AND DEFENDANT DALE DUNCAN'S MOTION TO DISMISS AND ALSO DEFENDANT FIRST MOUNT VERNON INDUSTRIAL LOAN ASSOCIATION, INC.'S MOTION TO DISMISS**

**Oral Hearing Requested**

Plaintiff Mary Juergens, by and through her attorneys, J.P. Szymkowicz, John T. Szymkowicz and the Law Firm of Szymkowicz & Szymkowicz, LLP, respectfully requests this Honorable Court deny Defendant First Mount Vernon Mortgage, L.L.C. and Defendant Dale Duncan's motion to dismiss and also deny Defendant First Mount Vernon Industrial Loan Association, Inc.'s motion to dismiss for the reasons stated in the memorandum of points and authorities that follows. Plaintiff Juergens also requests oral hearing on the motions to dismiss pursuant to Local Civil Rule 7 (f).

**MEMORANDUM OF POINTS AND AUTHORITIES**

**Background Facts**

1.    In 2001, Plaintiff Juergens purchased condominium unit # 505 in "The Metropolitan," located at 1230 23rd Street, N.W. and moved into this unit as her primary (and only) residence.

2.     Upon Plaintiff Juergens' information and belief, Defendant First Mount Vernon Industrial Loan Association Incorporated [hereinafter "1st Mount Vernon ILA"] and Defendant First Mount Vernon Mortgage, L.L.C. [hereinafter "1st Mount Vernon Mortgage"] share the same physical place of business and registered agent and was never provided with any documents or information to differentiate the two companies when she went to the offices of "1st Mount Vernon" in August 2005 with the hopes of obtaining a loan to refinance a pre-existing loan on her condominium unit in the amount of approximately $60,000.00 allegedly owed to the George Owen Trust.

3.     What happened next is the subject of a significant dispute between Plaintiff Juergens, on the one hand, and 1st Mount Vernon ILA, 1st Mount Vernon Mortgage and Defendant Dale Duncan [the "1st Mount Vernon Defendants"] on the other:

     a.     The 1st Mount Vernon Defendants claim that Plaintiff Juergens "executed a deed of the subject real property of the Complaint (the "Property") to her newly-formed LLC" "that was executed and delivered by Plaintiff Juergens as part of the Loan transaction, and recorded among the land records of the District of Columbia."  Then, according to the 1st Mount Vernon Defendants, Plaintiff Juergens' "newly-formed LLC," known as 1230 23rd Street, LLC entered into a $250,000.00 **commercial** loan transaction with 1st Mount Vernon;[1] and

---

[1]     See page 4 of Defendant 1st Mount Vernon Mortgage and Defendant Dale Duncan's memorandum in support of their motion to dismiss Plaintiff Juergens' amended complaint.

        See also Page 3 of Defendant 1st Mount Vernon ILA's memorandum in support of its motion to dismiss Plaintiff Juergens' amended complaint.

b.      Plaintiff Juergens states that she never transferred legal ownership to 1230 23rd Street, N.W., Apt. 505 to 1230 23rd Street, LLC via a properly executed and acknowledged deed in accordance with D.C. Code §§ 42-141, 42-142, 42-143, 42-306 and 42-401 and that the proper party to the 1st Mount Vernon loan was Plaintiff Juergens in her personal capacity, not 1230 23rd Street, LLC.

4.      Whether or not Plaintiff Juergens transferred legal ownership to 1230 23rd Street, N.W., Apt. 505 to 1230 23rd Street, LLC via a properly executed and acknowledged deed in accordance with D.C. Code §§ 42-141, 42-142, 42-143, 42-306 and 42-401 is of critical importance in resolving Plaintiff Juergens' claims against the 1st Mount Vernon Defendants.  -  Without a valid transfer of the property from Mary Juergens to 1230 23rd Street, LLC, it would not be possible for the 1st Mount Vernon Defendants to lend 1230 23rd Street, LLC money using the condominium unit as collateral since the 1230 23rd Street, LLC was not the owner of the property.  Thus, the "Balloon Deed of Trust Note,"[2] the "Commercial Loan Balloon Deed of Trust"[3] and the "Financing Agreement"[4] involving 1230 23rd Street, LLC are without legal effect.

---

[2]      See Exhibit 3 of Defendant 1st Mount Vernon ILA's memorandum of points and authorities in support of its motion to dismiss Plaintiff Juergens' amended complaint.

[3]      See Exhibit 4 of Defendant 1st Mount Vernon ILA's memorandum of points and authorities in support of its motion to dismiss Plaintiff Juergens' amended complaint.

[4]      See Exhibit 5 of Defendant 1st Mount Vernon Mortgage and Defendant Dale Duncan's memorandum of points and authorities in support of its motion to dismiss Plaintiff Juergens' amended complaint.

**Plaintiff Juergens' Complaint**

5.    On August 30, 2006, Plaintiff Juergens filed her complaint seeking to void two different loans - the first is the $60,000.00 loan allegedly entered into between Plaintiff Juergens and the George Owen Trust, the second is a $250,000.00 loan allegedly entered into between the 1230 23rd Street, LLC and the 1st Mount Vernon Defendants.

6.    In addition to voiding the two loans, Plaintiff Juergens demands monetary relief against the Defendants that were associated with the two loans.

7.    Although the two loans are seemingly unrelated at first blush, Plaintiff Juergens has presented her claims against both sets of Defendants in a single complaint since Plaintiff Juergens sought the second loan [associated with the 1st Mount Vernon Defendants] in order to pay off the first loan [associated with the George Owen Trust that the Urban Title Defendants facilitated], yet has no documentation from either set of Defendants to show that the first loan was ever paid off.

8.    Plaintiff Juergens amended her complaint on October 25, 2006 in order to correct a misnomer:  Defendant Urban Title Services, Inc. was incorrectly named Defendant Urban Title Services, LLC in the original complaint.

**The 1st Mount Vernon Defendants' Two Motions to Dismiss**

9.    On November 7, 2006, Defendant 1st Mount Vernon ILA filed its motion to dismiss.

10.    Also on November 7, 2006, Defendant 1st Mount Vernon Mortgage and Defendant Duncan filed their motion to dismiss.

11.    Since the two motions to dismiss are based upon common facts and legal arguments, Plaintiff Juergens has combined her responses to both these motions to

dismiss in the instant response that will address all arguments set forth in these two motions.

**Plaintiff Juergens' Motion for Partial Summary Judgment on the Issue of the Lack of Properly Executed Deed Between Mary Juergens and the 1230 23rd Street, LLC**

12.    Both motions to dismiss are seemingly based upon the assertion that the loan at issue was a commercial loan taken out by the 1230 23 Street, LLC and not a residential loan taken out by Plaintiff Juergens in her personal capacity.

13.    Plaintiff Juergens claims that this loan was never intended to be a commercial loan, but rather a residential loan since this was her primary (and only) residence since 2001.

14.    Plaintiff Juergens further claims that the 1st Mount Vernon Defendants knew that this property was Plaintiff Juergens' primary and only residence and that she needed to refinance the $60,000.00 George Owen Trust loan in order to remain in the property.

15.    Finally, Plaintiff Juergens claims that the 1st Mount Vernon Defendants disguised the true nature of the refinance loan from a residential loan to a commercial loan in order to qualify Plaintiff Juergens for the loan since Plaintiff Juergens could not qualify for a residential loan in her personal capacity.

16.    Since the 1st Mount Vernon Defendants did not provide Plaintiff Juergens with copies of the documents that she allegedly signed in association with the refinance loan, she had no way of knowing that these Defendants would later claim that she "sold" the property to the 1230 23rd Street, LLC in order to support its alleged loan to the 1230 23rd Street, LLC.

17.    Upon receiving the two motions to dismiss, the 1st Mount Vernon Defendants' strategy of using the 1230 23rd Street, LLC as a subterfuge for a commercial loan became clear to Plaintiff Juergens.

18.    Therefore, in order to set the matter straight, on November 17, 2006, Plaintiff Juergens filed a motion for partial summary judgment on the issue of the lack of a properly executed deed to Plaintiff Juergens' home between Plaintiff Juergens and the 1230 23rd Street, LLC.

19.    Since that motion for partial summary judgment sets forth in detail the fact that Plaintiff Juergens never transferred ownership of her home to the 1230 23rd Street, LLC, she does not restate the facts and supporting documentation in the instant response but rather incorporates the entire motion for partial summary judgment herein as if fully stated.

### Selections from Defendants' Motions to Dismiss that Expose the True Nature of Defendants' Disguised Loan as a Personal Loan to Plaintiff Juergens Rather Than a Commercial Loan to the 1230 23rd Street, LLC

20.    Rather than supporting Defendants' contention that the loan was a commercial loan to the 1230 23rd Street, LLC, the documents attached as exhibits to Defendants' motions to dismiss actually support Plaintiff Juergens' contention that this loan was really a disguised loan to Plaintiff Juergens in her personal capacity.

21.    In the following sections, Plaintiff Juergens will highlight parts of the exhibits that she believes exposes the true nature of the loan.

**Alleged "Deed" between Plaintiff Juergens and 1230 23rd Street, LLC**[5]

22.    This alleged "deed" is the foundation of Defendants' claim that the loan at issue was a commercial loan to the 1230 23rd Street, and not a residential loan to Plaintiff Juergens in her personal capacity.

23.    If Plaintiff Juergens did not transfer ownership of her home to the 1230 23rd Street, LLC, then the 1230 23rd Street, LLC did not have the power to legally encumber the property.

24.    The following facts [that were fully set forth in Plaintiff Juergens' motion for partial summary judgment] prove that there was never a transfer of this property:

    a.    This alleged "deed" is unsigned;

    b.    No notary public witnessed Plaintiff Juergens signing this deed in accordance with D.C. Code §§ 42-141, 142, 143, 306 and 401;

    c.    No notary public took Plaintiff Juergens' acknowledgment that she was signing this deed with the intention of transferring ownership of her home to the 1230 23rd Street, LLC in accordance with D.C. Code §§ 42-141, 142, 143, 306 and 401;

    d.    Although this alleged "deed" references a "sale price" of $200,000.00, there is no record of any payment of these funds by the 1230 23rd Street, LLC or any receipt of these funds by Plaintiff Juergens;

    e.    Since this alleged "sale" was clearly a transaction involving a residential property and an individual person, there should have been a HUD-1 Settlement

---

[5]    See Exhibit 3 of Defendant 1st Mount Vernon Mortgage and Defendant Duncan's motion to dismiss.

Statement associated with this alleged "sale" that was signed by Plaintiff Juergens, yet Defendants cannot provide one;

f.    The alleged "sale" from Plaintiff Juergens to the 1230 23rd Street, LLC would have triggered a "Transfer Tax" owed to the District of Columbia Government in accordance with Sections 47-901 to 47-904, however, no tax was ever paid on this alleged "sale;" and

g.    The alleged "deed" was never recorded in the Office of the District of Columbia Recorder of Deeds.

### Articles of Organization of the 1230 23rd Street, LLC[6]

25.    The first indication that the Articles of Incorporation may be fraudulent is the fact that paragraph four of this document states that "The limited liability company's principal office is located at **6019 Tower Court, Alexandria, Virginia    22304**."   [Emphasis added].

26.    Why is it important that the "principal office" is "6019 Tower Court"? - because this is the office of both 1st Mount Vernon ILA and 1st Mount Vernon Mortgage.

27.    Additionally, paragraph 2 (B) (1) states that "The name of the limited liability company's initial registered agent is Mary Juergens.  The registered agent is an individual who is **a resident of Virginia** [emphasis added] and a member or manager of the limited liability company.

28.    Why is it important that this document states that Mary Juergens is a "resident of Virginia"? - because Plaintiff Juergens is not a resident of Virginia and has been a resident of the District of Columbia exclusively since 2001.

---

[6]    See Exhibit 1 of Defendant 1st Mount Vernon Mortgage and Defendant Duncan's motion to dismiss.

29.    A review of Plaintiff Juergens' alleged signature (dated August 16, 2005) at the bottom of the Articles of Organization is suspect since it is clear that this signature is different from Plaintiff Juergens' other signatures presented by Defendants in their various exhibits.

30.    Plaintiff Juergens, of course, denies ever signing the Articles of Organization.

31.    As support for her assertion that she never signed the Articles of Organization, Plaintiff Juergens presents an Orbitz Travel Itinerary that shows that she was in Europe on vacation from August 10, 2005 until August 25, 2005.[7]

32.    As further support for her assertion that she never signed the Articles of Organization, Plaintiff Juergens presents the page from her U.S. State Department issued Passport that shows that she was outside the United States from August 10, 2005 until August 25, 2005.[8]

33.    It is interesting to note that Defendants' have included a statement from the Virginia State Corporation Commission within this exhibit that states that the "2006 annual registration fees for 1230 23rd Street, LLC were paid on September 1, 2006" since Plaintiff Juergens did not pay these fees.

34.    Thus, if Plaintiff Juergens did not pay the "2006 annual registration fees for 1230 23rd Street, LLC were paid on September 1, 2006" to the Virginia State Corporation Commission, who paid the fees and why?

---

[7]    See copy of Orbitz Travel Itinerary that is attached to the instant response as Exhibit 1.

[8]    See copy of Orbitz Travel Itinerary that is attached to the instant response as Exhibit 1.

**Uniform Residential Loan Application**[9]

35.    The very name of the "Uniform Residential Loan Application" speaks for itself - Plaintiff Juergens went to the offices of the 1st Mount Vernon Defendants to seek a loan to refinance her $60,000.00 **residential** loan to the George Owen Trust, yet these Defendants claim that she left with a $250,000.00 commercial loan to a Limited Liability Company.

36.    Specifically, the "Uniform Residential Loan Application" form that an agent or employee of 1st Mount Vernon prepared, contains several statements that call into question the disguised nature of the "commercial" loan:

a.    The name of the document is a "Uniform **Residential** Loan Application." If the loan had truly been a commercial loan as alleged by Defendants, then the document would have been called a "Uniform **Commercial** Loan Application" rather than a "Uniform **Residential** Loan Application;"

b.    The person signing this "Uniform **Residential** Loan Application" was Mary Juergens in her personal capacity - not Mary Juergens in her capacity as a member of 1230 23rd Street, LLC.  In fact, the only place that 1230 23rd Street, LLC is even mentioned is the box marked "Title will be held in what Name? - 1230 23rd Street, LLC;"

c.    The Loan is listed as a "Conventional" not a "Commercial" loan on page 1 of the "Uniform **Residential** Loan Application;"

d.    The "Purpose of Loan" is listed on page 1 as "Refinance" and the "Amount [of] Existing Liens" is listed as "$62,000."  Obviously, the purpose was

---

[9]    See Exhibit 1 of Defendant 1st Mount Vernon ILA's motion to dismiss.

to refinance Plaintiff Juergens' $60,000.00 George Owen Trust loan that did not relate to the 1230 23rd Street, LLC, but rather was Plaintiff Juergens' personal obligation;

e.    Plaintiff Juergens' "Present Address" is incorrectly listed at "6359 Calviler [sic] Corridor, Falls Church, Virginia  22044," yet her "Home Number" is listed as a District of Columbia number:  "202-463-6336;"

e.    With regard to the "Borrower's" "Base Empl. Income" on page 2, the amount stated is "$7,500.00." There is no indication that the 1230 23rd Street, LLC has any "Base Empl. Income."  In fact, as a limited liability company established the week before by Defendants, it is easy to prove that the 1230 23rd Street, LLC had no income at all;

f.    Perhaps the most compelling evidence that Plaintiff Juergens applied for a residential and not a commercial loan is contained in the "Acknowledgement and Agreement" section on page 3 of the "Uniform Residential Loan Application," that states in sub-paragraph 4:

"**All statements made in this application are made for the purpose of obtaining a residential mortgage loan**." [Emphasis added];

g.    Additional compelling evidence that Plaintiff Juergens applied for a residential and not a commercial loan is contained in the "Information for Government Monitoring Purposes" section on page 3 of the "Uniform Residential Loan Application," that states [in relevant part]:

"The following information is requested by the Federal Government for certain types of loans **related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws**." [Emphasis added]; and

h.    The evidence is clear that Plaintiff Juergens applied for what the "Uniform Residential Loan Application" states is a "residential" "Conventional" mortgage, yet, according to Defendants, Plaintiff Juergens ended up with a commercial loan. If Defendants' contention is correct that the loan was issued to the 1230 23rd Street, LLC and not Plaintiff Juergens in her personal capacity, then where is the 1230 23rd Street, LLC's application for a commercial loan and where are the documents to support a $250,000.00 loan to this Limited Liability Company that Defendants established one week prior using Defendants' office as its "primary place of business"?

**Balloon Deed of Trust Note**[10]

37.    The Balloon Deed of Trust Note reinforces Plaintiff Juergens' contention that the "commercial" loan was a disguised residential loan made to Plaintiff Juergens in her personal capacity.  At the bottom of page 3 of this Balloon Deed of Trust Note, there is the following:

> The person signing below does so for the purpose of acknowledging all terms and obligations of this Note and by so signing, personally guarantees the repayment of all obligations set forth herein as if he is the maker of the [sic] this Note.

Plaintiff Juergens placed her signature above the words:

**Mary L. Juergens, Personally** [Emphasis added]

38.    Therefore, this Balloon Deed of Trust Note is the best proof that this "commercial" loan was really a disguised residential loan since Plaintiff Juergens is personally liable on this loan in the event that the 1230 23rd Street, LLC does not repay the loan.  The effect is the same whether the loan is called a commercial loan or a

---

[10]    <u>See</u> Exhibit 3 of Defendant 1st Mount Vernon ILA's motion to dismiss.

residential loan - Mary Juergens is ultimately responsible for the repayment of the loan.
Moreover, the Balloon Deed of Trust Note attached as Exhibit 3 of Defendant 1st Mount
Vernon ILA's motion to dismiss does not reflect any acknowledgement pursuant to D.C.
Code §§ 42-141 and 42-142 and therefore, is invalid.

### **Notice to Applicant for a Mortgage Loan - Commercial Loan Disclosure**[11]

39.     The document entitled "Notice to Applicant for a Mortgage Loan - Commercial
Loan Disclosure" states:

> The purpose of this Disclosure is to inform you that by making an
> application for a mortgage loan which is a commercial loan, you are
> forfeiting certain rights as Borrower:
>
> **The provisions indicated below that are included in the loan you are**
> **making for commercial purposes would not be permitted in a non-**
> **commercial loan**:  [emphasis added]
>
> __x____          A loan origination fee exceeding the greater of $500.00 or
> 4% of the net proceeds or a loan origination fee exceeding the greater of
> $2500.00 or 2% of the net proceeds of any other secondary mortgage.
>
> __x____          Payment to the Lender of additional commissions, finder's
> fees, or points for obtaining, procuring, or placing your loan.
>
> __x____          An actual interest rate greater than 24 percent.
>
> I have carefully read and understand the contents of this disclosure on
> August 31, 2005.
>
> _____ /s/ by Mary Juergens

---

[11]     <u>See</u> Exhibit 4 of Defendant 1st Mount Vernon Mortgage and Defendant Duncan's
motion to dismiss.

1230 23rd Street, LLC

40.     Therefore, Defendants seem to acknowledge that the loan that is the subject of the instant lawsuit would be illegal if extended to an individual.  The effect of Plaintiff Juergens' personal guarantee on the loan, however, makes the result the same whether the loan is called a commercial or an individual loan - Plaintiff Juergens, in her personal capacity, is ultimately responsible for the repayment of the loan.

**HUD-1 Settlement Statement**[12]

41.     What is interesting about Defendants' inclusion of a HUD-1 Settlement Statement is that they provided only one such statement, when, according to Defendants, there were actually two transactions, both of which require separate HUD-1 Settlement Statements - the first was the alleged sale of the property from Mary Juergens to 1230 23rd Street, LLC [that, pursuant to the alleged unsigned "deed" attached as Exhibit 3 to Defendant 1st Mount Vernon Mortgage and Defendant Duncan's motion to dismiss, the 1230 23rd Street, LLC purchased from Mary Juergens for $200,000.00] and the second was the $250,000.00 loan at issue in this lawsuit.  Thus, it is important to ask - Where is the HUD-1 Settlement Statement for the alleged sale of the property from Mary Juergens to 1230 23rd Street, LLC?  The answer is simple - it does not exist!

42.     The HUD-1 Settlement Statement provided by Defendants shows that "Mary Juergens" is listed as the "Seller," yet there is no reference to any money passing from the 1230 23rd Street, LLC to Mary Juergens as consideration for this "sale" (much less any reference to the $200,000.00 "sale" price stated in the alleged "deed" from Mary Juergens to the 1230 23rd Street, LLC).

_____

[12]     See Exhibit 2 of Defendant 1st Mount Vernon ILA's motion to dismiss.

43.    While the HUD-1 Settlement Statement refers to $61,195.11 as Cash to Seller on Line 603, it is clear that Mary Juergens does not receive these funds, but rather the funds are used to allegedly payoff the George Owen Trust.[13]

44.    A line by line analysis of the HUD-1 Settlement Statement for the loan at issue shows several oddities for a $250,000.00 loan:

**Line 103        Settlement Charges to Borrower        $189,003.96**

This figure seems excessive considering that the loan amount is $250,000.00.

**Line 104        Escrow                                $60,996.04**

There is no explanation or justification for any "escrow" of any money, much less $60,996.04.  The mere use of the word "escrow" without further explanation does not tell the reader of the HUD-1 Settlement Statement the purpose of the escrow, the identity of the holder of the escrowed funds or the conditions that the escrowed funds will be released.

**Line 801        Loan Origination Fee (4.000%)        $10,000.00**

A 4% "Loan Origination Fee" is clearly excessive and not permitted on a residential loan.

**Line 803        Application Fee                      $200.00**

The language of the "Uniform Residential Loan Application" that Defendant 1st Mount Vernon ILA attached as Exhibit 1 of their motion to dismiss is clear that it was Mary Juergens (in her individual capacity) rather than the 1230 23rd Street, LLC that applied for

---

[13]    One reason Plaintiff Juergens combined her causes of action against the Urban Title Defendants with the 1st Mount Vernon Defendants is that she has never received any acknowledgement that the 1st Mount Vernon Defendants ever paid off the $60,000.00 loan to the George Owen Trust that the Urban Title Defendants placed and closed.

the loan from the 1st Mount Vernon Defendants.  Therefore, since Plaintiff Juergens applied for the loan, it would be improper to charge the 1230 23rd Street, LLC an "Application Fee" for a loan for which it did not apply.

**Line 804          Credit Report                          $35.00**

As with the "Application Fee," it is important to determine whether the "Credit Report" was provided for Mary Juergens in her personal capacity or the 1230 23rd Street, LLC. Since the 1230 23rd Street, LLC was formed by the 1st Mount Vernon Defendants just a few days before the closing of the loan at issue and was not an ongoing business, it would be highly suspect that there would even be a credit report available for the 1230 23rd Street, LLC.  Thus, the credit report had to have been produced with regard to Mary Juergens in her personal capacity.  The problem with this, for Defendants, is that Defendants claim that it did not loan Mary Juergens any money.  If Mary Juergens is not a party to the loan, it would be highly unusual (if not illegal) for the 1st Mount Vernon Defendants to use Mary Juergens' credit report to justify a loan to the 1230 23rd Street, LLC.

| | | |
|---|---|---|
| **Line 805** | **Funding Fee** | **$200.00** |
| **Line 806** | **Processing Fee** | **$400.00** |
| **Line 807** | **Underwriting Fee** | **$350.00** |
| **Line 808** | **Wire Fee** | **$25.00** |
| **Line 809** | **Release Fee** | **$100.00** |
| **Line 810** | **Commitment Fee** | **$350.00** |

These fees seem excessive on the face and are not supported by any documents.

| | | |
|---|---|---|
| **Line 1101** | **Settlement or Closing Fee** | **$595.00** |
| **Line 1102** | **Abstract or Title Search** | **$300.00** |
| **Line 1103** | **Title Examination** | **$175.00** |
| **Line 1104** | **Title Insurance Binder** | **$150.00** |

16

As previously stated, the Defendants' entire case rests upon an alleged "deed" by which Plaintiff Juergens purportedly transferred ownership of her home to the 1230 23rd Street, LLC for $200,000.00.  This alleged "deed" was never recorded among the District of Columbia Land Records by the Recorder of Deeds.  Thus, an "Abstract or Title Search" would have revealed that the 1230 23rd Street, LLC, the entity that Defendants claim is the borrower, was not the owner of record of the property at issue and would not be able to legally encumber the property.

| | | |
|---|---|---|
| **Line 1105** | **Document Preparation** | **$150.00** |
| **Line 1106** | **Notary Fees** | **$36.00** |
| | **(to Brickshire Settlements, LLC)** | |

Plaintiff Juergens contends that the alleged settlement on this loan took place at 1st Mount Vernon's offices not "Brickshire Settlements, LLC, 7700 Little River Turnpike, Suite 604, Annandale, Virginia  22003" as stated on the first page of the HUD-1 Settlement Statement.  Moreover, Plaintiff Juergens contends that she signed these documents before Defendant Duncan, not any Brickshire Settlements, LLC official (unless, of course, Defendant Duncan works for Brickshire Settlements, LLC in addition to 1st Mount Vernon).

| | | |
|---|---|---|
| **Line 1107** | **Release Tracking** | **$85.00** |

Plaintiff Juergens contends that there is no documentary evidence to show that 1st Mount Vernon ever paid off the George Owen Trust loan, and therefore, the "Release Tracking" charge is invalid.

**Line 1108      Title Insurance                          $1,743.75**

Plaintiff Juergens has attempted to obtain a copy of this Title Insurance policy from First

American Title, to no avail.

**Line 1303      Escrow for Interest Reserve        $67,526.31**

Defendants have not shown any escrow agreement providing that 1st Mount Vernon may

retain $67,526.31 as an "Interest Reserve" on a $250,000.00 loan or even what the

purpose of an "Interest Reserve" is.

**Line 1305      "See Addit'l Dist. Exhibit"          $5,447.90**

Again, Defendants have neither produce this "Addit'l Dist. Exhibit" nor explained the

purpose of this $5,447.90 charge.

## ARGUMENT

**I.      DEFENDANTS' INCLUSION OF MATTERS OUTSIDE THE PLEADINGS AS PART OF ITS MOTIONS TO DISMISS CONVERT THE MOTIONS TO DISMISS INTO MOTIONS FOR SUMMARY JUDGMENT.**

        Defendants' inclusion of matters outside the pleadings as part of its motions to

dismiss converts the motions to dismiss into motions for summary judgment.  If, on a

motion to dismiss for failure to state a claim upon which relief can be granted, "matters

outside the pleading are presented to and not excluded by the court, the motion shall be

treated as one for summary judgment and disposed of as provided in Rule 56, and all

parties shall be given reasonable opportunity to present all material made pertinent to

such a motion by Rule 56."  FED. R. CIV. P. 12 (b).  See also Center for Auto Safety and

Public Citizen, Inc. v. National Highway Traffic Safety Administration, 452 F.3d 798,

805 (D.C. Cir. 2006).  The motion to dismiss filed by 1st Mount Vernon ILA is based

upon "matters outside the pleadings" - specifically, the Articles of Incorporation of 1230 23rd Street, LLC [Exhibit 1], a check from 1st Mount Vernon ILA to Plaintiff Juergens [Exhibit 2], an unsigned "deed" allegedly between Plaintiff Juergens and 1230 23rd Street, LLC [Exhibit 3], a "Notice to Applicant for a Mortgage Loan - Commercial Loan Disclosure" [Exhibit 4], a "Financing Agreement" [Exhibit 5], a "Closing Agent Acknowledgement" [Exhibit 6] and a "Borrower Affidavit" [Exhibit 7]. Similarly, the motion to dismiss filed by 1st Mount Vernon Mortgage and Defendant Duncan, is also based upon "matters outside the pleadings" - specifically, a "Uniform Residential Loan Application" [Exhibit 1], a HUD-1 Settlement Statement [Exhibit 2], a "Balloon Deed of Trust Note" [Exhibit 3], a "Commercial Loan Balloon Deed of Trust" [Exhibit 4] and 1st Mount Vernon's "Mortgage Dual Authority" License [Exhibit 5]. Since Plaintiff Juergens, in her motion for partial summary judgment, has challenged Defendants' claim that she transferred title to her property to the 1230 23rd Street, LLC, and thus, if 1230 23rd Street, LLC did not have legal title to Plaintiff Juergens' property, it could not encumber that property via the loan that Defendants claim to support via the documents presented as exhibits to the motions to dismiss. Therefore, since Defendants cannot show that Plaintiff Juergens ever transferred legal title to her property to the 1230 23rd Street, LLC, there is a "genuine issue as to the *alleged* material fact" that the 1230 23rd Street, LLC encumbered Plaintiff Juergens' property via the alleged loan claimed by Defendants.

**A.    Since there is a genuine issue as to material facts, summary judgment is not proper.**

Since there is a genuine issue as to material facts, summary judgment is not proper. It is well established that summary judgment is an extreme remedy, and is

appropriate only when there are no material facts in issue and when it is clear that the moving party is entitled to judgment as a matter of law.  Weiss v. Kay Jewelry Stores, Inc., 470 F.2d 1259, 1261-62 (D.C. Cir. 1972).  The summary judgment standard is akin to that of a directed verdict, i.e., whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.  The Keefe Company v. Americable International, Inc., 169 F.3d 34, 38 (D.C. Cir. 1999).  A "genuine issue of material fact" exists where the evidence before the court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party.[14]  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  It is not the Court's position to attempt to decide any issue of fact or of credibility, but only whether such issues exist.[15]  Id. at 255.  In ruling on a motion for summary judgment, the court should not weigh the credibility of witnesses or other evidence and should not draw factual inferences since these are all functions reserved for the jury.[16]  Id.  Thus, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor.[17]  Id.  If there is any issue of fact undisposed of and remaining to be determined by the trier of the facts upon the weight of the evidence, summary judgment cannot be granted.[18]  Id.  Whether a loan is for personal or business

---

[14]    Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).

[15]    White v. Friel, 210 Md. 274 (1956); Anderson, 477 U.S. at 249.

[16]    Anderson, 477 U.S. at 255.

[17]    Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451, 456 (1992).

[18]    Tellez v. Canton R.R., 212 Md. 423 (1957).

purposes appears to be a factual question to be answered only after evaluating the circumstances surrounding the transaction.  Conrad v. Smith, 712 P.2d 866, 868 (Wash. App. 1986).  Since there is a genuine issue as to the material fact "genuine issue as to the *alleged* material fact" that the 1230 23rd Street, LLC encumbered Plaintiff Juergens' property via the alleged loan claimed by Defendants, summary judgment is improper.

## II.    THE QUESTION OF WHETHER USURY OR LOAN SHARKING LAWS APPLY TO A PARTICULAR TRANSACTION DEPENDS ON THE SUBSTANCE OF THE TRANSACTION AND NOT THE FORM.

The question of whether usury or loan sharking laws apply to a particular transaction depends on the substance of the transaction and not the form.  Browner v. District of Columbia, 549 A.2d 1107, 1114 (D.C. 1988).  Unscrupulous lenders may not avoid the application of usury or loan sharking laws by "attempting to disguise the character of the arrangement, or by denominating what is really a loan as something else."  Id. In B&S Marketing Enterprises, LLC v. Consumer Protection Division, 835 A.2d 215, 230 (Md. App. 2003), the court observed the following with regard to transactions involving usurious rates:

> It matters not in what part of the transaction it may lurk, or what form it may take - whether it reads six percent upon its face, with an understanding to pay an extra four per cent, or whether it be a pretended sale and lease, or under whatever guise the lender - always fruitful in expedients - may attempt to evade the law.  Courts of justice, disregarding the shadow and looking to the substance, will ascertain what in truth was the contract between the parties.

Similarly, the court in Hoffman v. Key Federal Savings and Loan Association, 416 A.2d 1265, 1268 (Md. App. 1979), the court held:

> This Court has held that no device or subterfuge of the lender will be permitted to shield him in taking more than the legal interest on a loan. . . . the laws against usury ought to be strictly enforced . . . It has so

21

> happened, from the earliest times to the present, that every devise and shift which the wit of man could suggest, have been invoked to exempt contracts for illegal interest from the operation of the law, but courts have not hesitated, in every case, to tear off, with unsparing hands, the mask under which it has been attempted to conceal the usury, and to declare the true nature of the transaction.

In Browner, several homeowners were in "financial difficulty" and were facing "imminent foreclosure on their homes. Id. at 1109. The homeowners claimed that the transactions at issue were loans to stop the imminent foreclosure. Id. The lenders claim that "rather than making loans, they were purchasing homes, leasing them back, and providing the former homeowners with an option to repurchase" and "held themselves out as money lenders." Id. The Browner lenders also distributed a circular that stated "YOUR FINANCIAL RESOURCE: RAW ASSOCIATES - Where banks stop, we start – SERVICES PROVIDED: Financing money to lend." Id.

The trial court in Browner observed:

> [V]arious homeowners who testified for the government contacted the defendants in response to these advertisements, seeking loans to save their homes, which were threatened with foreclosure. Instead of receiving loans, however, they were presented with and signed papers ostensibly conveying their property to [the lender] with a lease back and an option to repurchase within a year.

> Although the transactions were denominated sales, the homeowners testified that they never intended to sell their property. Moreover, there was evidence that the [lenders] described the transactions to [the homeowners] as loans, and sometimes assured those clients who raised questions about what they were signing that the characterization of a transaction as a sale in the documents was solely a technicality, effected for the purpose of accommodating an accountant. In any event, most of the homeowners were understandably upset about their financial difficulties and the prospect of losing their homes, and even those with some years of college were less than diligent in reading what they were signing or otherwise protecting their own interests.

> While the 'sales' saved the homes from immediate foreclosure, they left the homeowners in an extremely precarious position. The homeowners were required to pay a monthly 'rent' which was generally at least twice

22

their former mortgage payment. In addition, in order to redeem their property after one year, they had to repay the money [the lender] had expended to make current the mortgage arrearages and other debts, as well as all costs incurred by [the lender] in conveying the property to [the lender]. If they homeowners were unable to make all of these payments, they lost the homes which they had asked appellants to help them save, equity and all. <u>Id</u>.

In <u>Browner</u>, the court was faced with the question "[W]hether the purported sales were really sham transactions that masked loans?" <u>Id</u>. In answering this question in the affirmative, the court found that "[e]ach of the homeowners was drawn to the [lender] by advertising which promised the availability of 'money to lend' to stop imminent foreclosure." <u>Id</u>. In the instant case, Plaintiff Juergens sought to refinance a residential mortgage loan from 1st Mount Vernon. Instead, Defendant 1st Mount Vernon claims that she "sold" her property to the 1230 23rd Street, LLC for $200,000.00 (money that Plaintiff Juergens never received and that the 1230 23rd Street, LLC never paid) that was allegedly evidence by a "deed" (that Plaintiff Juergens never signed and was not notarized) and finally that the 1230 23rd Street, LLC encumbered the property via a loan in the amount of $250,000.00 (even though the existing lien on Plaintiff Juergens' home was just $60,000.00). Moreover, 1st Mount Vernon charged almost $100,000 in fees and other charges in association with this loan. It is clear then, that Plaintiff Juergens did not receive what she originally sought from 1st Mount Vernon - the refinancing of a residential mortgage loan at terms that comply with fair lending laws.

In <u>Browner</u>, the court observed that "[w]hen the homeowners asked for the loans which they believed that the advertisements were describing, and then posed questions about the form of the transactions, the [lenders] couched their answers to these questions

in language which confirmed to the [homeowners] that they were receiving the very loans for which they had come." Id.  The Browner court also observed:

> if the transactions were in fact sales, as [the lenders] contend, they were surely most extraordinary ones.  When a homeowner sells his home, which is usually his most valuable possession, one would expect at least some measure of bargaining over the sale price.  Here, there was none.  In each instance, what the [lenders] characterize as the 'sales' price bore no relation whatever to the value of the equity.  It is absurd to suggest that [the homeowner] would knowingly sell her home, in which she had an equity of more than $36,500.00 for $8,100.00.  None of the 'sellers' had placed his or her home on the market or expressed the slightest interest in selling it.  Each 'seller' remained in possession after the purported sale, and [the lenders] were indeed depicting their service as one that would enable their clients to 'save' their homes from foreclosure.  Although the transaction also lacked one of the common characteristics of a loan – an evaluation of the borrower's credit - - no such investigation was needed because the home itself, which in each case was worth far more than the amount expended by the [lenders] served as their security.  **It was therefore altogether reasonable for the trial judge to find that the depiction of each of these transactions as a sale and lease back was a transparent sham which masked an unlawful loan.** Id.  [emphasis added].

The Browner court further observed that "in addressing the very kinds of arrangements at issue here, the courts have held that a transaction which is a sale in form is to be treated as a loan when this more accurately reflects the substance of the arrangement." Id. at 1115.  In quoting an Oregon case, the court in Browner found:

> the undisputed evidence shows that defendants were financially distressed at the time of the transaction, that the purported sale price was substantially less than the fair market value of the property, that defendants remained in possession of the property, that plaintiff did not obtain an appraisal on the property until after the purported conveyance, and that there was no bargaining between the parties as to the consideration recited in the deed. Finally, the form of the transaction was a deed absolute in form accompanied by an option to repurchase.  That plaintiff did not require defendants to fill out a credit application does not persuade us that the transaction was a sale, not a loan. Plaintiff knew that defendants were financially distressed and had been unable to obtain a loan. Further, he had defendants' house as security. The sum of these facts squares clearly with our conclusion that the

transaction between the parties constituted a loan with a security interest. Id., quoting Long v. Storms, 622 P.2d 731, 738 (Or. 1981).

The Browner court further observed "that it is well settled by our cases that in all transactions of this character the court will disregard the form of the matter, and will look to its real substance." Id. at 1116.

**A.    Other courts have found that in determining the true nature of a loan, it is critical to "look beneath" the form of the transaction into its "true nature."**

**1.    United States Supreme Court – Russell v. Southard**

In Russell v. Southard, 53 U.S. 139 (1851), the United States Supreme Court was faced with the determination of whether a contract represented a mortgage or sale.  The facts presented in Russell were simple:  In May 1826, an individual bought a farm for $12,960.  Id. at 149.  About 16 months after he had purchased the farm, the farm-owner was still a "stranger, without friends or resources [in the area of the farm]" who had "pressing wants of about $2,000 in cash."  Id.  Therefore, the farm-owner conveyed a deed to a money lender/alleged purchaser to the farm in exchange for $4,929.81.  Id. at 146.  The parties agreed that four months later the money lender/alleged purchaser would resell the farm back to the farm-owner for $4,929.81 "with lawful interest thereon."  Id.  If the farm-owner did not pay back the $4,929.81 plus interest within the four months, the "agreement shall be at an end and null and void."  Id.   The Russell court held that "when it is alleged and proved that a loan on security was really intended, and the defendant sets up the loan as a payment of purchase money, and the conveyance as a sale, both fraud and a vice in the consideration are sufficiently averred and proved to require a court of equity to hold the transaction to be a mortgage."  Id. at 148.  "The fact that the real transaction between the parties was a borrowing and lending, will, whenever, or however

it may appear, show that a deed absolute on its face was intended as a security for money; and whenever it can be ascertained to be a security for money, it is only a mortgage, however artfully it may be disguised." Id. In conclusion, the Russell court observed that "[w]hen no fraud is practiced, and in inequitable advantages taken of pressing wants, owners of property do not sell it for a consideration manifestly inadequate, and therefore, in the cases on this subject great stress is justly laid upon the fact that what is alleged to have been the price bore no proportion to the value of the thing said to have been sold." Id.

2.    **Maryland – B&S Marketing Enterprises v. Consumer Protection Division**

District of Columbia courts may look to Maryland law because the District of Columbia derives its common law from the State of Maryland. Johnson v. Fairfax Village Condominium IV Unit Owners Association, 641 A.2d 495, 506 n. 22 (D.C. 1994). In B&S Marketing Enterprises v. Consumer Protection Division, 153 Md. App. 130, 154-55 (2003), the court found that courts must look "beneath of the form of a transaction" into its "true nature" to determine whether a "sale-leaseback" was in substance, a "disguised loan." The court in B&S Marketing Enterprises quoted Andrews v. Poe, 30 Md. 485, 487 (1869) to show that this approach is not new:

> It matters not in what part of the transaction it may lurk, or what form it may take - - whether it reads six percent upon its face, with an understanding to pay an extra four percent, or whether it be a pretended sale and lease, or under whatever the guise the lender - - always fruitful in expedients - - may attempt to evade the law. Courts of justice, disregarding the shadow and looking to the substance, will ascertain what in truth was the contract between the parties. Id.

3.    **Washington State – <u>Levy v. Butler</u>**

In <u>Levy v. Butler</u>, 1998 Wash. App. LEXIS 1573, *4-5 (Wash. 1998), the court held that where a dispute exists on the issue of whether a real estate transaction was intended as a sale or a mortgage, the rule the court follow is that "the character of the transaction is determined by the intention of both parties at the inception of the agreement."    In determining the parties' intent, the court may consider "all of the circumstances surrounding the transaction."  <u>Id</u>. at 5.   The <u>Levy</u> court then noted that "where the transaction is by deed, absolute in form, and nothing in the documents associated with the transaction show[s] a contrary intent, the courts have created a presumption that the parties intended to conduct the transaction as a sale."  <u>Id</u>.  In such a case, the burden shifts to the party claiming an intent to create a mortgage to "prove that intent by clear and convincing evidence."  <u>Id</u>.  Importantly, the <u>Levy</u> court added that the "presumption of presumed sale is merely a presumption and does not restrict the court's consideration to only those words of sale or mortgage contained on the face of the collateral documents."   <u>Id</u>. at 6.   Therefore, the court facing such a dispute must "look beyond the mere form of the transaction to the substance of the agreement to arrive at the parties' true intent."  <u>Id</u>.  In determining the money lender/alleged purchaser's summary judgment motion against the homeowner, the <u>Levy</u> court observed that the homeowner may overcome the presumption of a sale and not a mortgage by "establishing a prima facie case supporting [the homeowner's] defense."  <u>Id</u>. at 7.   In other words, the <u>Levy</u> court found that in deciding a summary judgment motion filed by a money lender/purchaser, the court "must determine whether, viewing the evidence in the light most favorable to the [homeowner], a rational trier of fact could find that he supported his

claim with clear, cogent, and convincing evidence." <u>Id</u>. Furthermore, the <u>Levy</u> court observed that "a sale with an option to repurchase, coupled with an existing disparity between the consideration and the property value, can constitute clear, cogent and convincing evidence of a mortgage." <u>Id</u>. In <u>Levy</u>, the transaction at issue presented such a disparity: the money lender/alleged purchaser paid the homeowner $50,000 for property valued at approximately $145,000. <u>Id</u>. The court found that "[b]ecause the amount paid by [the money lender/alleged purchaser] was equivalent to the amount owed by [the homeowner], the [homeowner] in effect obtained nothing from the transaction other than a one year extension in the payment due date." <u>Id</u>. In conclusion, the <u>Levy</u> court held that "[t]his disparity in value is consistent with a loan and constitutes evidence sufficient to overcome the presumption of a sale for purposes of defeating a motion for summary judgment." <u>Id</u>.

**4.      North Carolina – <u>Redic v. Gary H. Watts Realty Co.</u>**

In <u>Redic v. Gary H. Watts Realty Co.</u>, 762 F.2d 1181, 1185-86, (4th Cir. 1985), the court held that under North Carolina law, "the test for determining whether a conveyance with an option to repurchase represents a true sale or merely a loan with a security interest focuses on the intent of the parties and not the form of the transaction." The <u>Redic</u> court found that the "intention to create a mortgage must be established, not by simple declaration of the parties, but by proof of the facts and circumstances *dehors* [italics in original] the deed, inconsistent with the ideal of an absolute purchase." <u>Id</u>. at 1186. There are six factors that are pertinent under North Carolina law in determining whether a transaction is a sale or loan:

> (1)    whether there was a debtor-creditor relationship created at the time of the transaction;

    (2)    whether the 'grantor' remains in possession or whether the grantee takes immediate possession of the property;

    (3)    whether the 'grantor' was under distress and hard-pressed for money at the time of the transaction'

    (4)    whether the transaction originated out of an application for a loan;

    (5)    whether the purported sale price is less than the net worth of the property; and

    (6)    whether the 'grantor' was obliged to exercise the 'option to repurchase.' Id.

The Redic court concluded that "doubts about whether the transaction is a sale or a mortgage are to be construed in favor of a mortgage in order to prevent the possibility of oppression created by an outright sale." Id.

**B.    Loan Sharking and Usury are Abhorrent to Public Policy.**

Loan sharking and usury are abhorrent to public policy. In Browner, the court observed that:

> Two aspects of criminal usury are abhorrent to public policy. First, the excessive interest charged is considered repulsive to our values. It is nothing more than a thoroughly unscrupulous exploitation of another's vulnerability. Society will not condone one person's taking unfair advantage of another's weaker position. Second, the exaction of criminally excessive interest is, in the public's mind, inextricably linked with violent methods of collecting delinquent debts.
>
> It should be noted that in criminalizing these usurious practices, the Legislature was not only concerned with the stereotypical loan shark accompanied by a strong-arm enforcer. The Legislature specifically recognized that the criminal usurer often 'conducts his business wholly within the law' (as it then existed), taking advantage of legal loopholes and relying on reputation rather than actual intimidation to collect loans. Thus, it can only be concluded that the Legislature intended to penalize those usurious lenders who operate "under high-sounding business names, with offices and other trappings of legitimacy. Browner, 549 A.2d at 1115. [citations omitted].

29

In addition, the court in <u>Browner</u> found that "'[w]hite collar' loan sharking is often characterized by the use of labels designed to mask the character of the transaction, but courts do not allow themselves to be hoodwinked by such disguises.  <u>Id</u>.

**C.     Pursuant to the holding in <u>Browner</u>, Defendants cannot obtain summary judgment on the ground that Plaintiff Juergens signed documents clearly identifying the transaction as a "commercial loan."**

Pursuant to the holding in <u>Browner</u>, Defendants cannot obtain summary judgment on the ground that Plaintiff Juergens signed documents clearly identifying the transaction as a "commercial loan."  In <u>Browner</u>, the court observed that the:

> [Lender] contends that the homeowners, some of whom were comparatively well educated, signed documents clearly identifying the arrangements in question as sales and leasebacks, and under these circumstances the trial judge erred in finding that the transactions were loans.  Although it is true that, viewed from the calm and detached perspective of an appellate tribunal, the actions of the [homeowners] might well be described as improvident, that is not a defense to the instant charges.
>
> The class of persons protected by laws proscribing usury and loan sharking consists, essentially by definition, of individuals who, as a result of their financial plight, have improvidently made agreements so unconscionable that their enforcement is unwarranted.  As the New York Court of Appeals explained in <u>Schneider v. Phelps</u>, 359 N.E.2d 1361, 1365 (N.Y. 1977):
>
>> The purpose of usury laws, from time immemorial, has been to protect desperately poor people from the consequences of their own desperation.  Law-making authorities in almost all civilizations have recognized that the crush of financial burdens causes people to agree to almost any conditions of the lender and to consent to even the most improvident loans.  Lenders, with the money, have all the leverage; borrowers, in dire need of money, have none.
>
> Although the present prosecutions were brought under the loan sharking statute, the trial judge found that here, as in usury cases, the [lender] used [its] superior economic power to induce desperate individuals who faced imminent foreclosure to sign disguised loan agreements at a rate of interest far in excess of that permitted by law.  The lender's transgression

in such a situation is not excused by his victim's ill-advised agreement to the oppressive terms offered.  Id. at 1116.

## III.    PLAINTIFF    JUERGENS'    RESPONSE    TO    DEFENDANTS' CHALLENGES TO EACH COUNT.[19]

### Count XX - Breach of Contract

Plaintiff Juergens' breach of contract claim (Count XX) is proper.  For an enforceable contract to exist, there must be both an agreement as to all material terms and the intention of the parties to be bound. Redmond v. State Farm Insurance Company, 728 A.2d 1202, 1207 (D.C. 1999).  Plaintiff Juergens sought to refinance the $60,000.00 George Owen Trust loan with the 1st Mount Vernon Defendants.  The Defendants offered to extend a residential loan as witnessed by Plaintiff Juergens' Application.  Plaintiff Juergens accepted this offer, thus, the parties entered into a contract.  Defendants breached this contract by delivering, not a residential loan under terms that are legal under fair lending laws, but rather a commercial loan that would be illegal if it were a loan to a person.  Additionally, no matter what Defendants call the loan agreement, the Balloon Deed of Trust Note is clear that Plaintiff Juergens is obligated on the loan in her personal capacity - thus, the "true nature" of the loan is a personal loan.[20] Therefore, Plaintiff Juergens' breach of contract claim should survive dismissal.

---

[19]      In their motion to dismiss, Defendant Duncan and Defendant 1st Mount Vernon Mortgage claim that they are not the parties that contracted with Plaintiff Juergens with regard to her loan.  Rather, these Defendants claim that Defendant 1st Mount Vernon ILA is the proper party since documents that the three Defendants provided as Exhibits to their motions to dismiss reflect Defendant 1st Mount Vernon ILA as the party who ultimately funded the loan.  Plaintiff Juergens believes that discovery is necessary to determine the relationship between these three Defendants who share a common office and who trade under similar names prior to a dismissal based on the naming of an incorrect party.  For the purpose of addressing the individual counts contained in her amended complaint within this response, Plaintiff Juergens will continue to refer to the three Defendants by the name "1st Mount Vernon Defendants."

[20]      See Exhibit 3 of Defendant 1st Mount Vernon ILA's motion to dismiss.

## Count XXI - Conversion

Plaintiff Juergens' conversion claim (Count XXI) is proper. The tort of conversion involves an unlawful exercise of ownership, dominion and control over the personalty of another in denial or repudiation of his right to such property. Dennis v. Edwards, 831 A.2d 1006, 1013 (D.C. 2002). In this count, Plaintiff Juergens focuses on the inflated and questionable charges as stated in the HUD-1 Settlement Statement for the loan extended by the 1st Mount Vernon Defendants. To the extent that these charges were illegal, excessive or were not earned, Plaintiff Juergens sets forth a proper cause of action for conversion.

## Count XXII - Fraud

Plaintiff Juergens' conversion claim (Count XXI) is proper. To sustain a count of fraud, there must be an intentional or reckless misrepresentation of a material fact, reasonably relied upon by the plaintiff resulting in an injury. To prove a claim for negligent misrepresentation, the plaintiff must prove that the defendant made a false statement or omitted a fact that they had a duty to disclose, that it involved a material issue and that the plaintiff reasonably relied upon the false statement or omission to his or her detriment for the period of time at issue. Redmond, 728 A.2d at 1207. Plaintiff Juergens' amended complaint states:

> Paragraph 181:    In their dealings with Plaintiff Juergens, the 1st Mount Vernon Defendants and Defendant Duncan made numerous false representations to Plaintiff Juergens, included, but not limited to statements that Plaintiff Juergens would receive cash in the amount of approximately $190,000.00 at closing, less reasonable settlement costs.

Paragraph 182:     In addition, the 1st Mount Vernon Defendants and Defendant Duncan directed Plaintiff Juergens to falsely state that she would move out of the 1230 23rd Street property and rent the property to a third party when the 1st Mount Vernon Defendants and Defendant Duncan knew that Plaintiff Juergens would not move out of the property or rent the property to a third party.

Paragraph 183:     The Mount Vernon Defendants and Defendant Duncan further directed Plaintiff Juergens to falsely state that she lived or worked in the Commonwealth of Virginia so that she could serve as the registered agent of "1230 23rd Street, LLC."

Paragraph 184:     These false representations concerned a material fact, specifically, the true nature of the $250,000.00 loan to Plaintiff Juergens.

Paragraph 185:     The 1st Mount Vernon Defendants and Defendant Duncan made these false representations with knowledge that they were false.

Paragraph 186:     The 1st Mount Vernon Defendants and Defendant Duncan made these false representations with the intent to deceive Plaintiff Juergens into entering into the $250,000.00 loan transaction.

Paragraph 187:     Plaintiff Juergens relied on the 1st Mount Vernon Defendants and Defendant Duncan's false representations when she entered into the $250,000.00 loan transaction.

Paragraph 188:     As a direct and proximate result of the 1st Mount Vernon Defendants and Defendant Duncan's fraud, Plaintiff Juergens

33

suffered damages, including, but not limited to, the loss of the use of the

funds unlawfully converted by the 1st Mount Vernon Defendants and

Defendant Duncan.

On the pleadings alone, Plaintiff Juergens has set forth facts sufficient to survive motion

to dismiss and, in the alternative, to survive summary judgment

### **Statutory Counts (Counts XXIV through XXVIII)**

Defendant 1st Mount Vernon ILA states, in its motion to dismiss, that these

claims are "dependent upon the claims of wrongdoing purported set forth in the

preceding claims.  Given the Plaintiff's failure to plead any viable claims of wrongdoing,

the dependent equitable requests also fail."   Plaintiff Juergens contends that these

statutory counts are separate and distinct from the common law counts, but even if this

Defendant is correct, Plaintiff Juergens has set forth viable causes of action for the

common law counts as described above.

 Defendant 1st Mount Vernon ILA also states that "the request to set aside the

note, deed of trust and to quiet title cannot be granted in the absence of the property

owner and borrower - 1230 23rd Street, LLC., which is not presently a party to this

action."  Such a claim ignores District of Columbia law that, as previously stated, looks

to find the true nature of a disguised loan.  Moreover, Plaintiff Juergens would have

standing to sue on the basis that she is a guarantor on this alleged loan to the 1230 23rd

Street, LLC.

Defendant 1st Mount Vernon Mortgage and Defendant Dale E. Duncan claim in

their motion to dismiss that these Defendants should be dismissed from the statutory

counts since the loan documents do not reflect any mention of these particular

Defendants, but rather, Defendant 1st Mount Vernon ILA.  While this may or may not be true, Plaintiff Juergens should be granted the opportunity to discovery and determine the relationship between these three Defendants who share a common office and who trade under similar names prior to a dismissal based on the naming of an incorrect party.

**IV.   EVEN THOUGH THE CAUSES OF ACTION SET FORTH BY PLAINTIFF JUERGENS AGAINST THE URBAN TITLE DEFENDANTS, ON THE ONE HAND, AND THE 1ST MOUNT VERNON DEFENDANTS, ON THE OTHER, ARE TWO SEPARATE LOAN TRANSACTIONS, THE CASE SHOULD NOT BE SEVERED IN TWO SINCE A CENTRAL ISSUE IN THE ENTIRE CASE IS WHETHER THE 1ST MOUNT VERNON DEFENDANTS EVER PAID OFF THE URBAN TITLE LOAN.**

Even though the causes of action set forth by Plaintiff Juergens against the Urban Title Defendants, on the one hand, and the 1st Mount Vernon Defendants, on the other, are two separate loan transactions, the case should not be severed in two since a central issue in the entire case is whether the 1st Mount Vernon Defendants ever paid off the Urban Title loan.  Thus, it is necessary for Plaintiff Juergens to obtain discovery from both sets of Defendants on the same issue in order to prove her case.  Therefore, there is no misjoinder pursuant to Rule 21 of the Federal Rules of Civil Procedure.

<u>**Conclusion**</u>

Plaintiff Juergens respectfully requests that this Honorable Court deny Defendant First Mount Vernon Mortgage, L.L.C. and Defendant Dale Duncan's motion to dismiss and also deny Defendant First Mount Vernon Industrial Loan Association, Inc.'s motion to dismiss.

Respectfully submitted,

J.P. Szymkowicz (#462146)
John T. Szymkowicz (#946079)
SZYMKOWICZ & SZYMKOWICZ, LLP
1220 19th Street, N.W., Suite 400
Washington, DC  20036-2438
(202) 862-8500

Attorney for Plaintiff Mary Juergens

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| MARY JUERGENS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action Number: <u>06-CA-1524</u> |
| | ) |
| URBAN TITLE SERVICES, INC., <u>et al</u>. | ) |
| | ) |
| Defendants. | ) |

**STATEMENT OF MATERIAL FACTS
AS TO WHICH PLAINTIFF CONTENDS THERE IS NO GENUINE ISSUE
IN SUPPORT OF
PLAINTIFF JUERGENS' RESPONSE TO THE FIRST MOUNT VERNON
DEFENDANTS' MOTIONS TO DISMISS**

Pursuant to Local Civil Rule 7 (h) and Rule 56 of the Federal Rules of Civil Procedure, Plaintiff Mary Juergens, by and through her attorneys, J.P. Szymkowicz, John T. Szymkowicz and the Law Firm of Szymkowicz & Szymkowicz, LLP, respectfully submits the following statement of material facts as to which Plaintiff Juergens contends there is no genuine issue in support of her response to Defendant First Mount Vernon Mortgage, L.L.C. and Defendant Dale Duncan's motion to dismiss and to Defendant First Mount Vernon Industrial Loan Association, Inc.'s motion to dismiss:

1.     Plaintiff Juergens never transferred title (or any other interest) to her condominium unit in The Metropolitan (1230 23rd Street, N.W., Unit #505) to a Limited Liability Corporation known as "1230 23rd Street, LLC."[1]

2.     Plaintiff Juergens never signed or sealed a deed to her condominium unit in The Metropolitan (1230 23rd Street, N.W., Unit #505) to a Limited Liability Corporation known as "1230 23rd Street, LLC" pursuant to D.C. Code § 42-306.[2]

---

[1]     <u>See</u> Plaintiff Juergens' motion for partial summary judgment that was filed on November 7, 2006.

[2]     <u>Id</u>.

3.      Plaintiff Juergens never delivered a "signed or sealed" deed to her condominium unit in The Metropolitan (1230 23rd Street, N.W., Unit #505) to a Limited Liability Corporation known as "1230 23rd Street, LLC" pursuant to D.C. Code § 42-401.[3]

4.      Plaintiff Juergens never signed or sealed, in the presence of a notary public, a deed to her condominium unit in The Metropolitan (1230 23rd Street, N.W., Unit #505) to a Limited Liability Corporation known as "1230 23rd Street, LLC."[4]

5.      Plaintiff Juergens never acknowledged her signature or seal on a deed in the presence of a notary public to her condominium unit in The Metropolitan (1230 23rd Street, N.W., Unit #505) to a Limited Liability Corporation known as "1230 23rd Street, LLC" pursuant to D.C. Code §§ 42-141 and 42-142.[5]

6.      Plaintiff Juergens never received any funds (including the $200,000.00 referenced in Exhibit 5 of Defendant First Mount Vernon Mortgage, L.L.C. and Defendant Dale Duncan's memorandum of points and authorities in support of its motion to dismiss) related to any alleged transfer of title of her condominium unit in The Metropolitan (1230 23rd Street, N.W., Unit #505) to 1230 23rd Street, LLC (or any other entity).[6]

7.      Plaintiff Juergens never paid any transfer or recordation taxes or fees to the District of Columbia Recorder of Deeds that pertain to her condominium unit in The Metropolitan (1230 23rd Street, N.W., Unit #505) with respect to the alleged transfer of title from myself to the 1230 23rd Street, LLC.[7]

8.      The District of Columbia Recorder of Deeds records that pertain to Plaintiff Juergens' condominium unit in The Metropolitan (1230 23rd Street, N.W., Unit #505) do not contain any deed transferring ownership of this condominium unit from Plaintiff Juergens to the 1230 23rd Street, LLC.[8]

9.      Plaintiff Juergens is a personal guarantor of the alleged loan from 1st Mount

---

[3]     Id.

[4]     Id.

[5]     Id.

[6]     Id.

[7]     Id.

[8]     Id.

Vernon to the 1230 23rd Street, LLC.[9]

10.     The Uniform Residential Loan Application related to the 1st Mount Vernon loan is a residential loan application that Plaintiff Juergens signed in her personal capacity.[10]

Respectfully submitted,

J.P. Szymkowicz (#462146)
John T. Szymkowicz (#946079)
SZYMKOWICZ & SZYMKOWICZ, LLP
1220 19th Street, N.W., Suite 400
Washington, DC  20036-2438
(202) 862-8500

Attorney for Plaintiff Mary Juergens

---

[9]     See Balloon Deed of Trust Note that is attached to Defendant First Mount Vernon Industrial Loan Association, Inc.'s motion to dismiss as Exhibit 3.

[10]     See Uniform Residential Loan Application that is attached to Defendant First Mount Vernon Industrial Loan Association, Inc.'s motion to dismiss as Exhibit 1.

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| MARY JUERGENS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action Number: <u>06-CA-1524</u> |
| | ) |
| URBAN TITLE SERVICES, INC., <u>et al</u>. | ) |
| | ) |
| Defendants. | ) |

## <u>ORDER DENYING</u>
## <u>DEFENDANT FIRST MOUNT VERNON MORTGAGE, L.L.C. AND DEFENDANT DALE DUNCAN'S MOTION TO DISMISS AND ALSO DENYING DEFENDANT FIRST MOUNT VERNON INDUSTRIAL LOAN ASSOCIATION, INC.'S MOTION TO DISMISS</u>

Upon consideration of Defendant First Mount Vernon Mortgage, L.L.C. and

Defendant Dale Duncan's motion to dismiss and Defendant First Mount Vernon

Industrial Loan Association, Inc.'s motion to dismiss and Plaintiff Juergens' response

thereto, it is hereby ordered that

　　　　1.　　　Defendant First Mount Vernon Mortgage, L.L.C. and Defendant Dale

Duncan's motion to dismiss is DENIED; and

　　　　2.　　　Defendant First Mount Vernon Industrial Loan Association, Inc.'s motion

to dismiss is DENIED.


_____                    _____
Date                                       Colleen Kollar-Kotelly
                                           United States District Judge