UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARY JUERGENS,

    Plaintiff,

     v.

URBAN TITLE SERVICES, INC., *et al.*,

    Defendants.

Civil Action No. 06–1524 (CKK)

**MEMORANDUM OPINION**
(May 25, 2007)

Plaintiff has brought this thirty-two count action against seven individual and corporate

Defendants, asserting various claims based on two disparate loans extended to Plaintiff, each of

which was secured by a condominium located at 1230 23rd Street, N.W., Apartment 505,

Washington, D.C. 20037 (the "Condo").   Plaintiff alleges that the first loan was extended by

Urban Title Services, Inc. ("UTS"), and that Defendants William Kenney ("Kenney"), Robert

William Carney ("Carney"), and Paul Erb ("Erb") (collectively, with UTS, the "UTS

Defendants"), each played a role in the extension of the UTS Loan.  Plaintiff alleges that the

second loan was extended by a combination of Defendants First Mount Vernon Industrial Loan

Association, Inc. ("FMVILA"), First Mount Vernon Mortgage, L.L.C. ("FMVLLC") and Dale

Duncan ("Duncan") (collectively the "FMV Defendants").

Currently pending before the Court are two motions to dismiss, the first brought by

FMVILA, and the second brought jointly by FMVLLC and Duncan.[1]  In passing, each of the

FMV Defendants' motions to dismiss additionally moves to sever Plaintiff's claims against the

UTS Defendants from her claims against the FMV Defendants.  Also pending before the Court is

Plaintiff's Motion for Partial Summary Judgment, in which she asks that the Court grant partial

summary judgment on the issue of whether Plaintiff transferred legal ownership to the Condo to

a limited liability corporation via a properly executed and acknowledged deed in accordance with

District of Columbia law.  Upon a searching review of the motions and legal memoranda filed by

Plaintiff and the FMV Defendants, the exhibits thereto, the relevant case law and statutes, and the

entire record herein, the Court shall deny without prejudice Plaintiff's motion for partial

summary judgment, and shall further deny without prejudice the motions to sever brought by the

FMV Defendants.

Furthermore, the Court concludes that the motions to dismiss brought by the FMV

Defendants have been converted to motions for summary judgment by virtue of the numerous

documents outside the pleadings attached thereto, and therefore must be addressed pursuant to

Federal Rule of Civil Procedure 56.  In her Opposition to the FMV Defendants' motions,

Plaintiff has raised a number of allegations that, if substantiated by factual support, might

preclude summary judgment in favor of Defendants.  However, as these allegations are largely

absent from Plaintiff's Amended Complaint, the Court shall deny without prejudice the motions

to dismiss brought the FMV Defendants, and shall grant Plaintiff leave to amend her Complaint

---

[1] Defendants UTS and Carney have filed answers to Plaintiff's Amended Complaint. Based on the docket in this matter, it appears that Plaintiff has been unable to serve Defendants Kenney and Erb with process. *See Juergens v. Urban Title Servs., et al.*, Civil Action No. 06-1524 (D.D.C. Nov. 16, 2006) (Docket #s 24, 25).

in order to clarify the grounds on which she alleges that she is entitled to relief. If Plaintiff

determines to amend her complaint, she shall do so on or before June 15, 2007; and all

Defendants shall respond to Plaintiff's amended complaint on or before July 5, 2007.

## I. BACKGROUND

Plaintiff, Mary Juergens, alleges that she resided in and owned a condominium unit

located at 1230 23rd Street, N.W., Apartment 505, Washington, D.C. 20037 (the "Condo"), and

that, prior to October 2003, she owned the Condo free and clear of any encumbrances or liens,

other than a condominium fee assessment of approximately $8000. Am. Compl. ¶¶ 13, 21.

However, in October 2003, she required a loan of $60,000 to pay off her condominium fee

assessment and to perform renovations on the Condo. *Id.* ¶ 14. Thus, according to Plaintiff, she

spoke with Defendant Kenney, who presented himself as an agent of Defendant UTS, about

securing a loan, and Defendants Kenney and UTS agreed to act as lender on a loan to be funded

by the "George Owen Trust" and secured by a deed of trust on the Condo (the "UTS Loan"). *Id.*

¶¶ 15-16, 20. According to Plaintiff, the proceeds of the UTS Loan were to be used to pay

Plaintiff's $8000 condominium fee assessment in full and Plaintiff was to receive approximately

$52,000 in cash, less reasonable settlement costs, at closing. *Id.* ¶ 22. Under the terms of the

UTS Loan, Plaintiff was responsible for paying off the UTS Loan within one year of the date of

the closing, and was also responsible for paying UTS interest at a rate of 10% per annum. *Id.* ¶

23. Plaintiff alleges, on information and belief, that the George Owen Trust did provide $60,000

to Defendants Kenney and UTS in order to fund the UTS Loan; however, Plaintiff asserts that

she never received full use of the proceeds of the UTS Loan or received an accounting of the

distributions of the UTS Loan. *Id.* ¶¶ 17-19.

3

The UTS Loan allegedly closed at the UTS office on October 20, 2003, with Defendant Carney acting as settlement attorney and Defendant Erb acting as Notary Public. *Id.* ¶¶ 24-25, 28. Plaintiff asserts that she was not physically present at the closing of the UTS Loan and therefore did not sign any papers before a Notary Public at the closing of the UTS Loan. *Id.* ¶¶ 26-27. After the closing, the condo fee assessment was paid off, and Plaintiff received an escrow check in the amount of approximately $24,597.06. *Id.* ¶ 29. Plaintiff asserts that she never received an accounting for the other $27,402.84 of the UTS Loan. *Id.* ¶ 33. According to Plaintiff, Defendants UTS, Kenney, and Carney have claimed that they used the proceeds of the UTS Loan to pay off tax liens on the Condo, including an IRS lien of approximately $7,500 and a Fairfax County lien of approximately $1,700. *Id.* ¶ 34. However, Plaintiff asserts that she never gave the UTS Defendants permission to pay off any tax liens on the Condo, and further asserts that the IRS and Fairfax County records do not reflect such a payoff, but rather show that the liens were discharged as time-barred. *Id.* ¶¶ 35-37. In addition, with respect to the UTS Loan, Plaintiff alleges that she never received a variety of procedural documents required by various District of Columbia statutes. *Id.* ¶¶ 38-41.

Plaintiff next alleges that, in August 2005, she went to Defendant Duncan and "the First Mount Vernon Defendants" in order to obtain a loan on the Condo, that would be used to pay off the UTS Loan. *Id.* ¶ 44.[2] According to Plaintiff's Amended Complaint, FMVILA and FMVLLC – acting through Defendant Duncan – indicated that they would not extend a loan as small as

---

[2] Plaintiff uses the term "First Mount Vernon Defendants" to collectively describe FMVILA and FMVLLC, without distinguishing between the entities. *See* Am. Compl. ¶ 8. As noted above, the Court will refer to FMVILA, FMVLLC, and Defendant Duncan collectively as the "FMV Defendants".

$60,000, and instead encouraged Plaintiff to take out a loan of $250,000 (hereinafter the "FMV

Loan"). *Id.* ¶ 46. Plaintiff alleges that Defendant Duncan told her that in order to obtain the

FMV Loan, she needed to establish a limited liability corporation, known as "1230 23rd Street,

LLC" (hereinafter the "LLC"), move out of the Condo, transfer title to the LLC, and then have

the LLC rent out the Condo to a third party. *Id.* ¶ 47. According to Plaintiff, the FMV Loan

proceeds would be used to pay off the UTS loan (plus accrued interest), and Plaintiff would

receive approximately $190,000 in cash at closing, less reasonable settlement costs. *Id*. ¶¶ 52,

181.[3]

Plaintiff asserts that she never indicated that she wanted to establish the LLC or have the

LLC take title to the Condo. *Id.* ¶ 48. Nevertheless, Plaintiff alleges, Defendant Duncan

registered the LLC with the Virginia State Corporation Commission on Plaintiff's behalf, listing

Plaintiff as the registered agent for the LLC despite her ineligibility to serve as a registered agent

under Virginia law, and listing the LLC's address as the address of FMVILA and FMVLLC. *Id.*

¶¶ 49-51. Plaintiff further alleges that Defendant Duncan prepared the documents needed to

close the FMV Loan, including a "Deed in Lieu of Foreclosure," which he and the First Mount

Vernon Defendants "forced" Plaintiff to sign. *Id.* ¶¶ 53-54. According to Plaintiff, however, the

same day that she signed the Deed in Lieu of Foreclosure, she called Defendant Duncan and

informed him that she did not want to proceed with the FMV Loan. *Id.* ¶ 55.

---

[3] In paragraph 52 of the Amended Complaint, Plaintiff alleges that the terms of the FMV
Loan provided that she would receive $95,000 in cash at closing; however, in paragraph 181 of
the Amended Complaint, Plaintiff alleges the terms of the FMV Loan provided that she would
receive $190,000 in cash at closing. It appears that paragraph 52 is erroneous, as the remainder
of the allegations in the Amended Complaint are consistent with Plaintiff's allegation that the
terms of the FMV Loan provided for her to receive $190,000 in cash at closing. *See* Am. Compl.
¶ 57 (stating that Plaintiff only received $95,000 in cash at closing).

Plaintiff alleges that she never received an accounting of the proceeds of the FMV Loan, and that she only received approximately $95,000 of those proceeds. *Id.* ¶¶ 56-57. Plaintiff alleges, upon information and belief, that the FMV Defendants paid off at least part of the UTS Loan, but that the "actual amount" of the UTS Loan paid off was less than $60,000 plus accrued interest. *Id.* ¶¶ 59-60. As with the UTS Loan, Plaintiff alleges that she never received a variety of procedural documents required by various District of Columbia statutes in connection with the FMV Loan. *Id.* ¶¶ 60-64.

Based on these allegations, Plaintiff's Amended Complaint includes thirty-two (32) separate counts – nineteen (19) of which relate to the UTS Loan and fourteen (14) of which relate to the FMV Loan. With respect to the UTS Loan, Plaintiff asserts the following claims: Breach of Contract (Count I); Conversion (Count II); Fraud (Count III); Breach of Fiduciary Duty (Counts IV and VI); Negligence (Count V and VII); Civil Conspiracy (Count VIII); Violation of the District of Columbia Loan Shark Act, D.C. Code § 26-901, et seq. (Count IX); Violation of the District of Columbia Mortgage Lender and Broker Act, D.C. Code § 26-1101, et seq. (Count X); Violation of the District of Columbia Mortgage Loan Protection Act, D.C. Code § 26-1151.01, et seq. (Count XI); Violation of the District of Columbia Unlawful Trade Practice Act, D.C. Code § 28-3904 (Count XII); Violation of the District of Columbia Consumer Credit Service Organization Act, D.C. Code § 28-4601, et seq. (Count XIII); Respondeat Superior (Counts XIV-XVI); a claim entitled "Set Aside Deeds and Deed of Trust, Quiet Title and Declaratory Relief" (Count XVII); Injunctive Relief (Count XVIII); and a Demand for an

Accounting (Count XIX).[4]

All of Plaintiff's claims against the FMV Defendants are brought against all three Defendants – FMVILA, FMVLLC, and Defendant Duncan.  In Count XX, Plaintiff alleges Breach of Contract, specifically that the FMV Defendants agreed to provide the FMV Loan in order for Plaintiff to pay off the UTS Loan and for Plaintiff to take the remainder of the FMV Loan proceeds as cash, but that the FMV Defendants paid off only some of the UTS Loan and provided Plaintiff with only $95,000 in cash.  In Count XXI, Plaintiff alleges that the FMV Defendants' refusal to provide Plaintiff with the full proceeds of the FMV Loan constituted Conversion.  In Count XXII, Plaintiff alleges Fraud, claiming that the FMV Defendants made numerous false representations to Plaintiff, including that she would receive $190,000, less reasonable settlement costs, in cash at the closing of the FMV Loan, and further claiming that the FMV Defendants knowingly directed Plaintiff to falsely state that she would move out of the Condo and rent it to a third party, and to falsely state that she lived or worked in the Commonwealth of Virginia.  Count XXIII alleges Civil Conspiracy, based on Plaintiff's allegations of Fraud.

Plaintiff asserts the same statutory claims against the FMV Defendants as she does against the UTS Defendants: Violation of the District of Columbia Loan Shark Act, D.C. Code § 26-901, et seq. (Count XXIV); Violation of the District of Columbia Mortgage Lender and Broker Act, D.C. Code § 26-1101, et seq. (Count XXV); Violation of the District of Columbia Mortgage Loan Protection Act, D.C. Code § 26-1151.01, et seq. (Count XXVI); Violation of the

---

[4] As the motions currently at issue do not involve the UTS Defendants, the Court declines to discuss the substantive allegations against them at this time.

District of Columbia Unlawful Trade Practice Act, D.C. Code § 28-3904 (Count XXVII); and

Violation of the District of Columbia Consumer Credit Service Organization Act, D.C. Code §

28-4601, et seq. (Count XXVIII).  In addition, in Count XXIX, Plaintiff includes a claim for

Respondeat Superior, asserting that FMVILA and FMVLLC are responsible for Defendant

Duncan's allegedly tortious behavior.  Furthermore, in Count XXX, Plaintiff requests that the

Court declare the loan documents associated with the FMV Loan void *ab initio*, declare that the

Condo is free and clear of any mortgage or other encumbrance, and quiet title to the Condo in

Plaintiff's name.  In Count XXXI, Plaintiff asks the Court to enter an Order enjoining the FMV

Defendants and anyone who received any legal or equitable interest in the Condo from the FMV

Defendants from further encumbering the Condo or instituting any foreclosure or eviction

proceedings with respect to the Condo.  Finally, in Count XXXII, Plaintiff demands an

accounting of all funds disbursed or received with regard to the FMV Loan.

     On November 7, 2006, FMVILA filed a Motion to Dismiss Plaintiff's Amended

Complaint, and Defendants FMVLLC and Duncan also filed a joint Motion to Dismiss.  In its

motion, FMVILA argues that Plaintiff's claims are contradicted by the documents executed in

connection with the FMV Loan.  Specifically, FMVILA argues that Plaintiff is precluded from

seeking relief under the various District of Columbia statutes pursuant to which she brings claims

because the FMV Loan is a commercial, rather than residential, loan, and further argues that the

loan documents demonstrate that Plaintiff's other claims fail as a matter of law.  *See generally*

FMVILA Mot. to Dismiss.  In their motion, FMVLLC and Defendant Duncan incorporate by

reference the FMVILA Motion to Dismiss, *see* FMVLLC Mot. to Dismiss at 3, and further argue

that Plaintiff's claims against FMVLLC and Defendant Duncan fail as a matter of law because

neither was a party to the FMV Loan transaction.  *See generally* FMVLLC Mot. to Dismiss.

Plaintiff responded to the FMV Defendants' motions to dismiss in two ways.  First, on November 17, 2006, Plaintiff filed a Motion for Partial Summary Judgment, requesting that the Court grant summary judgment on the issue of whether Plaintiff transferred legal ownership to the Condo via a properly executed and acknowledged deed in accordance with District of Columbia law.  *See generally* Pl.'s Mot. for PSJ.  Plaintiff also filed an Opposition to the FMV Defendants' motions to dismiss on November 20, 2006, in which she argues that the FMV Defendants' inclusion of the various loan documents as exhibits to their motions to dismiss converts those motions into motions for summary judgment.  *See generally* Pl.'s Opp'n.  Plaintiff further argues that she has sufficiently alleged the various claims included in her Amended Complaint.  *Id.*  On November 28, 2006, Defendants FMVILA and FMVLLC/Duncan filed each filed an Opposition to Plaintiff's Motion for Partial Summary Judgment, as well as a Reply in support of their own motion to dismiss.  Plaintiff filed her Reply in support of her Motion for Partial Summary Judgment on December 1, 2006.

## II.  LEGAL STANDARD

*A.      Rule 12(b)(6)*

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations.  *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be

derived from the facts alleged.").  While the court must construe the Complaint in the Plaintiff's

favor, it "need not accept inferences drawn by the plaintiff[] if such inferences are unsupported

by the facts set out in the complaint."  *Kowal v. MCI Comm'ns Corp.*, 16 F.3d 1271, 1276 (D.C.

Cir. 1994).  Moreover, the court is not bound to accept the legal conclusions of the non-moving

party.  *See Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997).

The court is limited to considering facts alleged in the complaint, any documents attached

to or incorporated in the complaint, matters of which the court may take judicial notice, and

matters of public record.  *See E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624

(D.C. Cir. 1997); *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C.

Cir. 1993).  Factual allegations in briefs of memoranda of law may not be considered when

deciding a Rule 12(b)(6) motion, particularly when the facts they contain contradict those alleged

in the complaint.  *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994); *cf. Behrens v.

Pelletier*, 516 U.S. 299, 309, 116 S. Ct. 834, 840, 133 L. Ed. 2d 773 (1996) (when a motion to

dismiss is based on the complaint, the facts alleged in the complaint control).  If, on a Rule

12(b)(6) motion, "matters outside the pleadings are presented to and not excluded by the court,

the motion shall be treated as one for summary judgment."  Fed. R. Civ. P. 12(b).

B.     *Summary Judgment*

A party is entitled to summary judgment if the pleadings, depositions, and affidavits

demonstrate that there is no genuine issue of material fact in dispute and that the moving party is

entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638

(D.C. Cir. 1994).  Under the summary judgment standard, Defendant, as the moving party, "bears

the initial responsibility of informing the district court of the basis for its motion, and identifying

10

those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue

of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed.

2d 265 (1986).  Plaintiff, in response to Defendants' motion, must "go beyond the pleadings and

by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'

designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324, 106 S. Ct.

2548.

Although a court should draw all inferences from the supporting records submitted by the

nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar

summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505,

2510, 91 L. Ed. 2d 202 (1986).  To be material, the factual assertion must be capable of affecting

the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient

admissible evidence that a reasonable trier-of-fact could find for the nonmoving party.

*Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at

251-52, 106 S. Ct. 2505 (the court must determine "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law").  "If the evidence is merely colorable, or is not sufficiently probative,

summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249-50, 106 S. Ct. 2505

(internal citations omitted).  "Mere allegations or denials of the adverse party's pleading are not

enough to prevent the issuance of summary judgment."  *Williams v. Callaghan*, 938 F. Supp. 46,

49 (D.D.C. 1996).  The adverse party "must do more than simply show that there is some

metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).  Instead, while the movant

bears the initial responsibility of identifying those portions of the record that demonstrate the

absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward

with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587, 106 S. Ct. 1348

(citing Fed. R. Civ. P. 56(e)) (emphasis in original).

### III.  DISCUSSION

A.    *Plaintiff's Motion for Partial Summary Judgment*

Believing that the FMV Defendants' motions to dismiss are predicated on the assertion

that the FMV Loan was a commercial loan taken out by the LLC and not a residential loan taken

out by Plaintiff in her personal capacity, Plaintiff has moved for partial summary judgment on

the issue of whether she transferred legal ownership of the Condo to the LLC via a properly

executed and acknowledged deed in accordance with District of Columbia law.  *See* Pl.'s Opp'n

at 5-6.  In support of her Motion for Partial Summary Judgment, Plaintiff attaches a sworn

affidavit in which she avers that she never transferred title, signed or sealed a deed (whether in

the presence of a Notary Public or otherwise), delivered a "signed or sealed" deed, or

acknowledged her signature or seal on a deed, to the Condo to the LLC.  Juergens 11/17/06 Aff.

¶¶ 5-10.  Plaintiff further asserts that she has not received any funds related to an alleged

transfer of title to the Condo or paid any transfer or recordation taxes or fees with respect to that

alleged transfer.  *Id.* ¶¶ 11-12.  Finally, Plaintiff asserts that, before receiving Defendants

FMVLLC and Duncan's motion to dismiss, she had never seen the draft "Deed" attached as an

exhibit thereto, and that the District of Columbia Recorder of Deeds records pertaining to the

Condo do not contain any deed transferring ownership of the Condo to the LLC.  *Id.* ¶¶ 11, 13.

Based on these assertions, Plaintiff argues in her Motion for Partial Summary Judgment that she did not validly transfer title to the Condo to the LLC pursuant to the law of the District of Columbia.  Specifically, Plaintiff argues that any alleged deed introduced by the FMV Defendants is defective because no Notary Public ever witnessed Plaintiff sign a deed to the Condo to the LLC, or took her acknowledgment that she was executing a deed for the purpose of transferring title to her home.  Pl.'s Mot. for PSJ at 8-11.[5]  However, in response to Plaintiff's Motion for Summary Judgment, the FMV Defendants have proffered what appears to be a Deed signed by Plaintiff on August 31, 2005 before a Notary Public, which purports to transfer title in the Condo to the LLC.  *See* FMVILA Opp'n, Ex. 1 (8/31/05 Deed).  This August 31, 2005 Deed also appears to bear a stamp indicating that it was filed and recorded in the official records of the District of Columbia Recorder of Deeds on September 21, 2005.  *Id.* at 2.

In her reply, Plaintiff continues to challenge the validity of the Deed proffered by FMVILA, asserting that on August 31, 2005, she signed papers before Defendant Duncan and an Arthur Bennet in the Commonwealth of Virginia, at which point neither of those individuals were commissioned as Notaries in the Commonwealth of Virginia.  Pl.'s Reply at 2-3; 12/1/06 Juergens Aff.; 12/1/06 Letter from D. McDaniel, Commonwealth of Virginia Notary Specialist (stating that the Commonwealth's Notary records do not show Messrs. Bennet and Duncan as commissioned Notaries).  Based on the foregoing, it is clear that genuine issues of material fact exist as to whether Plaintiff validly transferred title to the Condo to the LLC, and that these issues of material fact preclude summary judgment at this time.  The Court shall therefore deny

_____

[5] The Court notes that, in her Amended Complaint, Plaintiff alleges that the FMV Defendants forced her to sign a "Deed in Lieu of Foreclosure."  Am. Compl. ¶ 54.

13

without prejudice Plaintiff's Motion for Partial Summary Judgment.

      B.      *The FMV Defendants' Motions to Sever*

      The motions to dismiss filed by the FMV Defendants focus on the substance of Plaintiff's Amended Complaint and argue that it should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). However, in passing in their motions to dismiss, the FMV Defendants also suggest that, in the event that the Court does not dismiss Plaintiff's Amended Complaint, her claims regarding the UTS Loan should be severed from her claims regarding the FMV Loan. *See* FMVILA Mot. to Dismiss at 2 n.1; FMVLLC Mot. to Dismiss at 1-2. Plaintiff opposes severing her claims, acknowledging that the two Loans seem unrelated at first glance, but arguing that the claims should be considered in a single complaint because she sought the FMV Loan in order to pay off the UTS Loan, but has not received any documentation from any Defendant to show that the UTS Loan has been paid off. Pl.'s Opp'n at 4.

      In response, FMVILA argues that Plaintiff's assertion that the UTS Loan was not paid off is not a "well pleaded fact," and further argues that whether the UTS Loan has been paid off is irrelevant because Plaintiff does not allege that the UTS Loan is in default or that a foreclosure proceeding has been instituted. FMVILA Reply at 3 n.4, 4-5. However, to the extent that Plaintiff alleges (albeit on information and belief) that the FMV Defendants may not have paid off the entirety of the UTS Loan, that allegation implicates both the UTS Defendants and the FMV Defendants and resolution of the issue may require discovery from both sets of Defendants. The Court shall therefore deny without prejudice the pending motions to sever, and allow Plaintiff to conduct discovery as to whether the FMV Defendants have satisfied the UTS Loan. Alternatively, any Defendant may choose to resolve this issue by providing Plaintiff with

14

documentation demonstrating that the UTS Loan has been paid in full, if they are in possession of such documentation.

C.    *The FMV Defendants' Motions to Dismiss are Converted to Motions for Summary Judgment*

In addressing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court is limited to considering facts alleged in the complaint, any documents attached to or incorporated by reference in the complaint, matters of which the court may take judicial notice, and matters of public record.  *See St. Francis Xavier Parochial Sch.*, 117 F.3d at 624; *Marshall County Health Care Auth.*, 988 F.2d at 1226 n.6.  In addition, if on a Rule 12(b)(6) motion, "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment."  Fed. R. Civ. P. 12(b).

Plaintiff's Amended Complaint specifically refers to a "Deed in Lieu of Foreclosure," Am. Compl. ¶ 54, and more generally refers to other categories of documents such as the records of the Virginia State Corporation Commission and the "documents needed to close" the FMV Loan, *id.* ¶¶ 50-51, 53.  In support of their motions to dismiss, the FMV Defendants proffer a variety of documents, some of which might be viewed as falling into the general categories of documents incorporated by reference in Plaintiff's Amended Complaint.  *See, e.g.*, FMVLLC Mot. to Dismiss, Ex. 1 (1230 23rd Street LLC Articles of Org.).  However, the FMV Defendants also proffer documents that are neither referenced in or attached to the Amended Complaint, such as a license issued to Defendant FMVILA by the District of Columbia Department of Insurance, Securities and Banking.  FMVILA Mot. to Dismiss, Ex. 5 (3/4/05 License).  For her part, Plaintiff does not challenge most of the documents proffered by the

FMV Defendants in support of their motions to dismiss, but rather argues that the FMV Defendants' reliance upon these documents convert those motions into motions for summary judgment. *See* Pl.'s Opp'n at 18-19.

The Court agrees with Plaintiff that by relying on numerous documents that must be viewed as outside the pleadings, the FMV Defendants have converted their motions to dismiss into motions for summary judgment. As such, the FMV Defendants' motions must be considered pursuant to Federal Rule of Civil Procedure 56. Furthermore, pursuant to Rule 12(b), if a motion to dismiss pursuant to Rule 12(b)(6) is converted to a motion for summary judgment, "all parties shall be given reasonable opportunity to present all material made pertinent to [a motion for summary judgment] by Rule 56." Fed. R. Civ. P. 12(b). The parties have not yet conducted discovery in this matter, and are therefore clearly unable to present all material pertinent to a motion for summary judgment under Rule 56. Moreover, the Court notes that neither party has complied with Local Civil Rules 56.1 and 7(h), which requires that each party submitting a motion for summary judgment attach a statement of material facts to which that party contends there is no genuine issue, with specific citations to those portions of the record upon which the party relies in fashioning the statement, and with which this Court strictly complies. *See* LCvR 56.1, 7(h). It therefore appears that summary judgment is likely premature at this point in the proceedings.

    D.     *Genuine Issues of Material Fact Preclude Summary Judgment in Favor of Defendants FMVILA, FMVLLC and Duncan At This Time*

The FMV Defendants' motions to dismiss raise a number of arguments that might counsel dismissal pursuant to Rule 12(b)(6); however, as discussed above, those motions have been converted into motions for summary judgment. In turn, Plaintiff's Opposition to the FMV

Defendants' motions to dismiss includes a number of allegations that might – if substantiated with factual support – preclude summary judgment under Rule 56.  However, many of these key allegations are entirely absent from Plaintiff's Amended Complaint.  The Court is certainly cognizant that a complaint may not be amended by the briefs in opposition to a motion to dismiss.  *See Arbitraje Casa de Cambio, S.A. v. United Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) (citing *Coleman v. Pension Benefit Guar. Corp.*, 94 F. Supp. 2d 18, 24 n. 8 (D.D.C. 2000)).  Furthermore, the Court notes that the Court is not required to afford a party an opportunity to amend a complaint that is insufficient on its face in the absence of a motion to amend.  Nevertheless, in light of the fact that the FMV Defendants' motions to dismiss have been converted to motions for summary judgment, the Court shall grant Plaintiff leave to amend her complaint in order to clarify the allegations on which she bases her claims for relief against the FMV Defendants.

The Court shall discuss below some of the specific inconsistences between Plaintiff's Amended Complaint and Opposition, first in the context of the arguments for dismissal raised by Defendants FMVLLC and Duncan, and then more generally with respect to the various claims that Plaintiff asserts against the FMV Defendants.

### 1.    *FMVLLC's Motion to Dismiss*

In addition to incorporating by reference FMVILA's Motion to Dismiss, FMVLLC's Motion to Dismiss argues that the FMV Loan was extended by FMVILA – and not by FMVLLC.  FMVLLC thus argues that Plaintiff's Amended Complaint must be dismissed with respect to FMVLLC because it does not allege with particularity actions undertaken by FMVLLC and because FMVLLC is not a party to the FMV Loan transaction.  *See generally*

FMVLLC Mot. to Dismiss.  FMVLLC is correct that Plaintiff's Amended Complaint generally describes actions taken by Defendant Duncan on behalf of the FMV Defendants, without differentiating between FMVILA and FMVLLC.  *See* Am. Compl. ¶¶ 44-55.  Furthermore, the FMV Loan documents proffered by the FMV Defendants in support of their motions to dismiss appear to indicate that the FMV Loan was, as FMVLLC argues, extended by FMVILA rather than FMVLLC.  *See generally* FMVILA Mot. to Dismiss, Exs. 2-4; FMVLLC Mot. to Dismiss; Exs. 5-7.

However, in her Opposition, Plaintiff asserts, upon information and belief, that FMVILA and FMVLLC share the same physical place of business and registered agent, and that she "was never provided with any documents or information to differentiate the two companies when she went to the offices of '1st Mount Vernon' in August 2005 with hopes of obtaining a loan. . . ." Pl.'s Opp'n at 2.  Plaintiff further argues that "discovery is necessary to determine the relationship between [the FMV Defendants] who share a common office and who trade under similar names prior to dismissal based on the naming of an incorrect party."  *Id.* at 31 n.19.  The Court agrees with Plaintiff that it is inappropriate to dismiss FMVLLC from this action at this time, as the parties have not yet engaged in discovery.  The Court shall therefore allow Plaintiff to conduct discovery as to the relationship between FMVILA and FMVLLC, as well as the role played by FMVLLC in the FMV Loan transaction.  Furthermore, the Court shall grant Plaintiff leave to amend her complaint in order to specify her allegations with respect to FMVLLC.

2.    *Defendant Duncan's Motion to Dismiss*

In addition to adopting by reference the arguments in favor of dismissal made by FMVILA, Defendant Duncan has moved to dismiss Plaintiff's Amended Complaint on the

grounds that he was not a party to the FMV Loan transaction.  *See generally* FMVLLC Mot. to

Dismiss.  While this argument may be of some merit with respect to Plaintiff's Breach of

Contract claim, it also appears to be somewhat inapposite with respect to the remainder of

Plaintiff's claims against the FMV Defendants.  Plaintiff's claims of Conversion, Fraud, Civil

Conspiracy, and various statutory violations by the FMV Defendants are not based specifically

on the FMV Loan documents, but rather are premised on other actions allegedly taken by

Defendant Duncan on behalf of FMVILA and/or FMVLLC.  *See* Am. Compl. ¶¶ 44-55; 177-

250.  The Court therefore cannot conclude that, with respect to Plaintiff's claims other than

Breach of Contract, Defendant Duncan is shielded from liability simply because he is not a party

to the FMV Loan documents.

Defendant Duncan's argument may be more compelling with respect to Plaintiff's claim

for Breach of Contract; however, Plaintiff frames that claim quite differently in her Amended

Complaint and in her Opposition.  In her Amended Complaint, Plaintiff alleges that the FMV

Defendants breached their contract with Plaintiff regarding the proceeds of the FMV Loan when

they only paid off some of the UTS Loan and only provided Plaintiff with a check for $95,000 at

closing.  Am. Compl. ¶¶ 174-76.  Plaintiff further alleges that Defendant Duncan acted as an

agent for FMVILA – a disclosed principal – in connection with the FMV loan.  *Id.*  Plaintiff

does not allege that Defendant Duncan accepted individual liability with respect to the FMV

Loan, *see id.* ¶¶ 44-55, and the Court notes that the loan documents proffered by the FMV

Defendants appear to demonstrate the FMV Loan was extended by FMVILA, and not by

Defendant Duncan individually.  Under the law of the District of Columbia, "[w]here a principal

is disclosed, no liability will fall upon the agent for acts committed by the principal unless he

binds himself for same by definite words or stipulation." *Rittenberg v. Donohoe Constr. Co.*, 426 A.2d 338, 341 (D.C. 1981); *see also Penick v. Frank E. Basil, Inc. of Delaware*, 579 F. Supp. 160, 164-65 (D.D.C. 1984) (same). Thus, Plaintiff likely cannot maintain a Breach of Contract claim against Defendant Duncan personally based solely on an allegation that he acted as an agent for FMVILA – a disclosed principal – on the FMV Loan.

In her Opposition, however, Plaintiff posits an entirely different theory of breach of contract, claiming that a contract was formed when Plaintiff accepted the FMV Defendants' offer to extend a residential loan, and that the FMV Defendant breached that contract "by delivering, not a residential loan under terms that are legal under fair lending laws, but rather a commercial loan that would be illegal if it were a loan to a person." Pl.'s Opp'n at 31. Plaintiff thus appears to suggest that Defendant Duncan might be personally liable for Breach of Contract based on his role in the FMV Loan negotiations, rather than on the FMV Loan documents themselves. *See* Am. Compl. ¶¶ 44-55. Plaintiff cannot pursue the breach of contract theory announced in her Opposition at this time, however, because it is entirely absent from her Amended Complaint. If Plaintiff in fact wants to pursue this newly announced theory, she must amend her complaint in order to clarify the grounds on which she alleges that Defendant Duncan is liable for Breach of Contract.

> ### 3. *Plaintiff's Claims Against the FMV Defendants*
>
> #### a. *Plaintiff's Breach of Contract Claim*

As discussed above, Plaintiff's description of her Breach of Contract claim in her Opposition does not accord with the allegations included in her Amended Complaint. Plaintiff's Amended Complaint alleges that the FMV Defendants breached their loan agreement

with Plaintiff by only paying off some of the UTS Loan and only providing Plaintiff with

$95,000 in cash at closing.  Am. Compl. ¶¶ 174-76.  FMVILA moves to dismiss this claim on

the grounds that the proceeds of the FMV Loan are accounted for in the HUD-1 Settlement

Statement that Plaintiff signed at the closing of the FMV Loan, which provides for an escrow of

the funds required to make Plaintiff's monthly payments on the FMV Loan in addition to the

payment of the UTS Loan and the cash payment to Plaintiff.  FMVILA Mot. to Dismiss at 5-6

(citing FMVILA Mot. to Dismiss, Ex. 2).  In response, Plaintiff appears to re-frame her Breach

of Contract claim, stating that the FMV Defendants breached an alleged contract to provide

Plaintiff with a residential loan by extending a commercial loan instead.  Pl.'s Opp'n at 31.  It

therefore appears that genuine questions of material fact may exist with respect to Plaintiff's

Breach of Contract Claim; however, if Plaintiff intends to rely on the allegations raised in her

Opposition, she must amend her complaint to properly reflect those allegations.

### b.    *Plaintiff's Conversion Claim*

Plaintiff's Opposition likewise sets forth a new theory for Plaintiff's Conversion claim.

In her Amended Complaint, Plaintiff alleges that the FMV Defendants refused to provide her

with the full proceeds of the FMV Loan.  Am. Compl. ¶¶ 177-179.  FMVILA in turn argues for

dismissal of Plaintiff's Conversion claim by claiming that the HUD-1 fully accounts for the

proceeds of the FMV Loan.  FMVILA Mot. to Dismiss at 5-6.  In response to this argument,

Plaintiff asserts that her Conversion claim "focuses on the inflated and questionable charges as

stated in the HUD-1 Settlement Statement for the loan extended by [FMVILA and FMVLLC],"

and details those aspects of the HUD-1 that she considers "oddities."  Pl.'s Opp'n at 15-18, 32.

The Court is therefore precluded from granting summary judgment as to Plaintiff's Conversion

claim, but notes that Plaintiff cannot pursue her newly announced theory of conversion without amending her complaint to include the relevant allegations.

### c.     Plaintiff's Fraud Claim

Unlike her Breach of Contract and Conversion claims, Plaintiff's Fraud claim contains at least a suggestion of the allegations that she levels in her Opposition. Plaintiff's Amended Complaint alleges that the FMV Defendants made numerous false representations to Plaintiff, including that she would receive $190,000, less reasonable settlement costs, in cash at the closing of the FMV Loan, and further alleges that the FMV Defendants knowingly directed Plaintiff to falsely state that she would move out of the Condo and rent it to a third party, and to falsely state that she lived or worked in the Commonwealth of Virginia. Am. Compl. ¶¶ 180-188. Based on these allegations, the FMV Defendants have moved to dismiss Plaintiff's Fraud claim, arguing that the nature of the FMV Loan is clear from the documents associated with the Loan, and that as a result Plaintiff cannot claim reasonable reliance on any alleged oral representations. *See* FMVILA Mot. to Dismiss at 6-7; FMVLLC Mot. to Dismiss at 9-10. In addition, FMVLLC argues that Plaintiff's Fraud claim fails to meet the heightened pleading requirement set forth in Federal Rule of Civil Procedure 9(b). FMVLLC Mot. to Dismiss at 9-10.

FMVLLC is correct that under Rule 9(b) claims of fraud must be pled with particularity, and the pleader is normally required to "state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *Kowal*, 16 F.3d at 1278. Although Plaintiff asserts in her Opposition that she has pled sufficient facts to sustain her Fraud claim, *see* Pl.'s Opp'n at 32-34, that assertion is belied

22

by the fact that, elsewhere in her Opposition, she includes allegations that appear related to her

Fraud claim, but which are absent from her Amended Complaint.  Specifically, in her

Opposition, Plaintiff asserts that the FMV Defendants were aware that the Condo was Plaintiff's

primary and only residence and that she sought the FMV Loan in order to refinance the UTS

Loan and thereby remain in the Condo.  Pl.'s Opp'n at 5.  Plaintiff further claims that the FMV

Defendants "disguised the true nature of the refinance loan from a residential loan to a

commercial loan in order to qualify [Plaintiff] for the loan since [Plaintiff] would not qualify for

a residential loan in her personal capacity."  *Id.*  While these claims might provide additional

specificity for Plaintiff's Fraud claim and perhaps preclude summary judgment, Plaintiff cannot

rely on them unless she amends her complaint to properly reflect these allegations.

d.     *Plaintiff's Statutory Claims*

In her Amended Complaint, Plaintiff alleges that the FMV Defendants violated a number

District of Columbia statutes by failing to provide Plaintiff with various procedural safeguards

in connection with the FMV Loan.  *See* Am. Compl. ¶¶ 197-239.  The FMV Defendants argue

that each of Plaintiff's statutory claims must be dismissed because the FMV Loan was a

commercial loan rather than residential loan.  *See* FMVILA Mot. to Dismiss at 4-5; FMVLLC

Mot. to Dismiss at 11-12.  In response, Plaintiff argues that the "question of whether usury or

loan sharking laws apply to a particular transaction depends on the substance of the transaction

and not the form," Pl.'s Opp'n at 21-31, and further argues that the FMV Loan is actually a

residential loan disguised as a commercial loan, *id.* at 6-18.

Plaintiff is correct that under the law of the District of Columbia, substance rather than

form determines whether "usury or loan sharking laws, *civil or criminal*, apply to a particular

23

transaction." *Browner v. District of Columbia*, 549 A.2d 1107, 1114 (D.C. 1984) (emphasis added).[6] Moreover, in cases arising in related contexts in other jurisdictions, courts have consistently looked to the substance rather than the form of a transaction in determining whether usury laws are applicable. *See, e.g., Schneider v. Phelps*, 359 N.E.2d 1361, 1364 (N.Y. 1977) ("where the loan was in fact, although not in form, made to an individual guarantor to discharge his personal obligations, and not in furtherance of a corporate or personal enterprise, the individual guarantor may interpose the defense of usury" in a foreclosure proceeding); *Jones v. Nelson*, 432 N.W.2d 792, 795-96 (Minn. Ct. App. 1988) (discussing "two lines of authority articulating rules limiting the effect of the corporate loan exception to usury laws," including the "New Jersey Rule" set forth in *Gelber v. Kugel's Tavern*, 89 A.2d 654 (N.J. 1952) and the "New York Rule" set forth in *Schneider v. Phelps*.). Furthermore, investigating the substance of the FMV Loan transaction clearly involves factual issues that have not yet been developed via discovery in this matter. *See Schneider*, 359 N.E.2d at 1366 ("A proper disposition of the case can be made only after opportunity has been afforded both parties . . . to develop proof relevant to the critical factual issue as to the identity of the real borrower.").

The Court therefore cannot grant summary judgment as to Plaintiff's statutory claims at this time. However, the Court notes that Plaintiff's Amended Complaint does not actually allege that the FMV Loan was a residential loan disguised as a commercial loan in order to qualify Plaintiff for a loan that should would have been unable to procure on a personal basis.

---

[6] The Court notes that in its Reply, FMVILA attempts to distinguish *Browner* on the grounds that it was a criminal action brought under the District of Columbia's loan sharking statutes. *See* FMVILA Reply at 3. While *Browner* does involve a criminal action, the case is still relevant, as the *Browner* court specifically indicated that a substance-over-form analysis would apply in the context of civil loan sharking laws as well. *See Browner*, 549 A.2d at 1114.

24

　　　　　　　　　　e.　　*Plaintiff's Remaining Claims Against the FMV Defendants*

In addition to the foregoing substantive claims, Plaintiff's counts against the FMV

Defendants include claims for Civil Conspiracy (Count XXIII) and Respondeat Superior (Count

XXIX); requests that the Court declare the loan documents associated with the FMV Loan void

*ab initio*, declare the Condo free and clear of any mortgage or other encumbrance, quiet title to

the Condo in Plaintiff's name (Count XXX), and enjoin the FMV Defendants and anyone who

received any legal or equitable interest in the Condo from the FMV Defendants from further

encumbering the Condo or instituting any foreclosure or eviction proceedings with respect to the

Condo (Count XXXI); and a demand for an accounting of all funds disbursed or received with

regard to the FMV Loan (Count XXXII).   The FMV Defendants generally do not address these

counts in their motions to dismiss, beyond noting that they are dependent on the substantive

claims discussed above.  *See* FMVILA Mot. to Dismiss at 7.[7]  Therefore, the Court shall simply

note at this time that the issues raised by the inconsistencies between Plaintiff's Amended

Complaint and Opposition are of equal import in connection with Plaintiff's conspiracy and

equitable claims.

## IV.  CONCLUSION

For the foregoing reasons, the Court shall (1) deny without prejudice Plaintiff's Motion

---

[7] In addition, FMVILA argues that Plaintiff's request to set aside the note and deed of trust, and to quiet title in the Condo "cannot be granted in the absence of the property owner and borrower [the LLC] which is not presently a party to this action."  FMVILA Mot. to Dismiss at 7. This argument assumes, however, that Plaintiff validly executed a deed transferring title in the Condo to the LLC – the very question that is at issue in Plaintiff's Motion for Partial Summary Judgment.  As the Court has denied that motion without prejudice and the parties will be conducting discovery to that end, the Court declines to determine at this time whether the LLC is a necessary party to this action.

for Partial Summary Judgment; (2) deny without prejudice the motions to sever brought by the FMV Defendants; (3) deny without prejudice the motions to dismiss brought by the FMV Defendants, which the Court concludes have been converted to motions for summary judgment by the presentation of matters outside the pleadings; and (4) grant Plaintiff leave to amend her complaint as may be appropriate in light of the foregoing discussion.  If Plaintiff determines to amend her complaint, she shall do so on or before June 15, 2007, and all Defendants shall respond to Plaintiff's amended complaint on or before July 5, 2007.

Date:   May 25, 2007

                              _____/s/_____
                              COLLEEN KOLLAR-KOTELLY
                              United States District Judge

26