IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
Civil Division

| | | |
|---|---|---|
| MARY JUERGENS | ) | |
| 1230 23rd Street, N.W., Apt. 505 | ) | |
| Washington, DC  20037 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| URBAN TITLE SERVICES, INC. | ) | |
| 2844 Powder Mill Road | ) | |
| Adelphi, Maryland  20783 | ) | |
| | ) | |
| An unlicensed foreign corporation | ) | |
| | ) | |
| Serve Mayor Anthony Williams: | ) | |
| 1350 Pennsylvania Avenue, N.W., # 419 | ) | |
| Washington, DC  20004 | ) | |
| | ) | |
| WILLIAM KENNEY | ) | Civil Action Number: 06-CA-1524 (CKK) |
| a/k/a "Bill Kenney" | ) | |
| 2200 Defense Highway, Suite 300 | ) | |
| Crofton, Maryland  21114 | ) | |
| | ) | |
| ROBERT WILLIAM CARNEY | ) | |
| 2844 Powder Mill Road | ) | |
| Adelphi, Maryland  20783 | ) | |
| | ) | |
| PAUL ERB | ) | |
| 1200 Braddock Place, #708 | ) | |
| Alexandria, Virginia  22314 | ) | |
| | ) | |
| FIRST MOUNT VERNON INDUSTRIAL | ) | |
| LOAN ASSOCIATION INCORPORATED | ) | |
| a/k/a "First Mount Vernon Industrial Loan | ) | |
| Association, Inc." | ) | |
| 6019 Tower Court | ) | |
| Alexandria, Virginia  22304 | ) | |
| | ) | |
| Serve Registered Agent: | ) | |
| | ) | |
| Stanley Banks | ) | |
| 1310 9th Street, N.W. | ) | |
| Washington, DC  20001 | ) | |

FIRST MOUNT VERNON MORTGAGE, L.L.C.  )
6019 Tower Court                      )
Alexandria, Virginia  22304           )
                                      )
    Serve Registered Agent:           )
                                      )
        Stanley Banks               )
        1310 9th Street, N.W.        )
        Washington, DC  20001       )
                                      )
DALE E. DUNCAN                        )
6019 Tower Court                      )
Alexandria, Virginia  22304           )
                                      )
ARTHUR G. BENNETT                     )
6019 Tower Court                      )
Alexandria, Virginia  22304           )
                                      )
BRICKSHIRE SETTLEMENTS, LLC           )
6121 Dorchester Street                )
Springfield, Virginia  22150          )
                                      )
    Serve Registered Agent:           )
                                      )
        Martin Mooradian            )
        6121 Dorchester Street      )
        Springfield, Virginia  22150 )
                                      )
          Defendants.           )

## 2nd AMENDED COMPLAINT AND JURY DEMAND
## (ACTION INVOLVING REAL PROPERTY)

### 1230 23rd Street, N.W., Apt. 505, Washington, DC 20037
### District of Columbia Real Property SSL Number 0036 - 2004

Plaintiff Mary Juergens, by and through her attorneys, J.P. Szymkowicz, John T. Szymkowicz and the Law Firm of Szymkowicz & Szymkowicz, LLP, files this Amended Complaint pursuant to this Honorable Court's memorandum opinion filed on May 25, 2007 and Rule 15 of the Federal Rules of Civil Procedure and demands judgment in the amount of Five Million Dollars ($5,000,000.00) against Defendants Urban Title Services, Inc., William Kenney

a/k/a "Bill Kenney," Robert William Carney, Paul Erb, First Mount Vernon Industrial Loan Association Incorporated a/k/a "First Mount Vernon Industrial Loan Association, Inc.," First Mount Vernon Mortgage, L.L.C., Dale E. Duncan, Arthur G. Bennett and Brickshire Settlements, LLC, jointly and severally, for the reasons stated in the instant Complaint.   In addition, Plaintiff Juergens respectfully requests that the various loans, deeds and deeds of trusts more particularly described herein regarding 1230 23rd Street, N.W., Apt. 505, Washington, DC 20037 be voided and rescinded and a constructive trust and/or a resulting trust be created in Plaintiff Juergens' favor with regard to the property itself and all funds paid by Plaintiff Juergens to Defendants for the reasons set forth in the instant Complaint.

## Parties

1.     Plaintiff Mary Juergens [hereinafter "Plaintiff Juergens"] is an adult female resident of the District of Columbia.

2.     Defendant Urban Title Services, Inc. is believed to be a Virginia corporation that is not authorized to conduct business in the District of Columbia.

3.     Defendant William Kenney, a/k/a "Bill Kenney," is believed to be an adult male resident of the State of Maryland.

4.     Defendant Robert William Carney is believed to be an adult male resident of the State of Maryland.

5.     Defendant Paul Erb is believed to be an adult male, but whose state of residence is not known to Plaintiff Juergens.

6.     Defendant First Mount Vernon Industrial Loan Association Incorporated a/k/a "First Mount Vernon Industrial Loan Association, Inc." is believed to be a Virginia corporation that is authorized to conduct business in the District of Columbia as a foreign corporation.

3

7.     Defendant First Mount Vernon Mortgage, L.L.C. is believed to be a Virginia limited liability company that is authorized to conduct business in the District of Columbia as a foreign limited liability company.

8.     Defendant First Mount Vernon Industrial Loan Association Incorporated and Defendant First Mount Vernon Mortgage, L.L.C. are hereinafter referred to in this Complaint collectively as "the First Mount Vernon Defendants."

9.     Defendant Dale E. Duncan is believed to be an adult male, who works as an attorney in the Commonwealth of Virginia, but whose state of residence is not known to Plaintiff Juergens.

10.    Defendant Arthur G. Bennett is believed to be an adult male, who works in the Commonwealth of Virginia, but whose state of residence is not known to Plaintiff Juergens.

11.    Defendant Brickshire Settlements, LLC is believed to be a Virginia limited liability company.

**Property at Issue**

12.    This action concerns real property located at 1230 23rd Street, N.W., Apt. 505, Washington, DC  20037 for which the District of Columbia Recorder of Deeds has assigned SSL Number 0036 - 2004.

**Jurisdiction and Venue**

13.    This Honorable Court possesses jurisdiction over the instant matter pursuant to 28 U.S.C. § 1332 as this civil action involves citizens of different states and where the matter in controversy exceeds the sum or value of $75,000.00.

14.    Venue is proper in this Honorable Court pursuant to 28 U.S.C. § 1391 (b) and (c) since the District of Columbia is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred and since the District of Columbia is a judicial

district where all Defendants are subject to personal jurisdiction since all Defendants transact business in the District of Columbia by, including by not limited to, lending money to residents located in the District of Columbia, recording deeds and other land records with the District of Columbia Government and processing loans regarding properties located in the District of Columbia.

## BACKGROUND FACTS – URBAN TITLE SERVICES, INC. LOAN

15.    At all relevant times, Plaintiff Juergens resided in and owned a condominium unit in the Foggy Bottom area of the District of Columbia known as "The Metropolitan."

16.    In or around October 2003, Plaintiff Juergens required a loan in the amount of $60,000.00 in order for Plaintiff Juergens to pay off a condominium fee assessment and to perform renovations on her condominium unit.

17.    Plaintiff Juergens spoke to Defendant Kenney, who presented himself as an agent, servant or employee of Defendant Urban Title Services, Inc., about securing such a loan.

18.    Defendant Kenney and Defendant Urban Title Services, Inc. acted as a lender on a loan to be funded by the "George Owen Trust."

19.    Upon information and belief, the George Owen Trust did in fact, provide $60,000.00 to Defendant Kenney and Defendant Urban Title Services, Inc. in order to fund the loan to Plaintiff Juergens in or around October 2003.

20.    Plaintiff Juergens never received the full use of the proceeds of this $60,000.00 loan.

21.    Plaintiff Juergens never received an accounting of the distributions concerning this $60,000.00 loan.

22.    This "George Owen Trust" loan in the amount of $60,000.00 was to be secured by a deed of trust on Plaintiff Juergens' condominium unit in "The Metropolitan."

23.     Prior to securing this $60,000.00 loan in or around October 2003, Plaintiff Juergens owned fee title to her condominium unit in "The Metropolitan" free and clear of any encumbrances or liens, with the exception of a condominium fee assessment in the amount of approximately $8,000.00.

24.     According to the terms of this $60,000.00 loan, the $8,000.00 condominium fee assessment would be paid off in full and Plaintiff Juergens would receive cash in the amount of approximately $52,000.00 at closing, less reasonable settlement costs.

25.     The terms of this $60,000.00 loan also provided that Plaintiff Juergens was responsible for paying off this $60,000.00 loan within one year of the date of the closing on the loan, in addition to paying the lender interest at the rate of 10% per annum.

26.     This $60,000.00 loan allegedly closed at the offices of Defendant Urban Title Services, Inc. and Defendant Kenney on or about October 20, 2003.

27.     Defendant Carney was the settlement attorney with regard to the closing of this $60,000.00 loan.

28.     Plaintiff Juergens did not physically attend the closing on this $60,000.00 loan.

29.     Plaintiff Juergens neither signed any papers related to the closing of this loan nor acknowledged that she was signing such papers with the intent to borrow funds before a Notary Public because Plaintiff Juergens was not present at the closing of this loan.

30.     Notwithstanding the fact that Plaintiff Juergens never signed any papers related to the closing of this loan before a Notary Public and was out of town at the time the loan closed, Defendant Erb, allegedly acting as a Notary Public, signed his name and placed his seal on various documents related to this $60,000.00 loan.

6

31.    At the closing on this loan, Defendant Urban Title Services, Inc., Defendant Kenney and Defendant Carney paid off the condominium fee assessment in the amount of approximately $8,000.00 and provided Plaintiff Juergens with an escrow check in the amount of approximately $24,597.06 but did not account for approximately $27,402.84.

32.    The check in the amount of approximately $24,597.06 that Urban Title Services, Inc. wrote to pay Plaintiff Juergens as the proceeds of her loan was rejected by Urban Title Services, Inc.'s bank, SunTrust Bank, for "insufficient funds" when Plaintiff Juergens tried to cash this check in person at that bank.

33.    Plaintiff Juergens contacted Defendant Kenney about this "insufficient funds" issue and was told that he would make sure that there were sufficient funds in the account for this check to "clear."

34.    After speaking to Defendant Kenney, Plaintiff Juergens deposited the check in the amount of approximately $24,597.06 in her own bank account and, fortunately, this time, the check "cleared."

35.    Even though Defendant Urban Title Services, Inc.'s check in the amount of approximately $24,597.06 eventually cleared, there still was approximately $27,402.84 for which Defendant Urban Title Services, Inc., Defendant Kenney and Defendant Carney did not provide an accounting from the proceeds of Plaintiff Juergens' loan.

36.    Defendant Urban Title Services, Inc., Defendant Kenney and Defendant Carney have claimed that they paid off Plaintiff Juergens' U.S. Internal Revenue Service tax liens on the property in the amount of approximately $7,500.00 and Plaintiff Juergens' Fairfax County Department of Tax Administration tax liens in the amount of approximately $1,700.00.

37.    However, Plaintiff Juergens never gave Defendant Urban Title Services, Inc., Defendant Kenney or Defendant Carney any permission to pay off any U.S. Internal Revenue Service or Fairfax County Department of Tax Administration tax liens.

38.    Moreover, the records of the U.S. Internal Revenue Service and the Fairfax County Department of Tax Administration do not reflect any pay off of any of Plaintiff Juergens' tax liens by Defendant Urban Title Services, Inc., Defendant Kenney or Defendant Carney.

39.    In fact, the U.S. Internal Revenue Service and the Fairfax County Department of Tax Administration discharged these liens against Plaintiff Juergens' property as time-barred rather than by payment from either Plaintiff Juergens, on the one hand, or by Defendant Urban Title Services, Inc., Defendant Kenney or Defendant Carney, on the other hand.

40.    Neither Defendant Urban Title Services, Inc., Defendant Kenney nor Defendant Carney sent Plaintiff Juergens a "Red Flag Warning Disclosure Notice" at least three business days prior to the closing of the loan in violation of D.C. Code §26-1152.11.

41.    Neither Defendant Urban Title Services, Inc., Defendant Kenney nor Defendant Carney advised Plaintiff Juergens of her right to obtain counseling in connection with the loan, in violation of D.C. Code §26-1152.19.

42.    Neither Defendant Kenney, Defendant Carney nor Defendant Urban Title Services, Inc. furnished Plaintiff Juergens with a statement in conformity with D.C. Code §26-905 that showed "in clear and distinct terms, the amount of the loan, the date when loaned and when due, the person to whom the loan is made, the name of the lender, [or] the amount of interest charged."

43.    Neither Defendant Kenney, Defendant Carney nor Defendant Urban Title Services, Inc. provided Plaintiff Juergens with a "plain and complete receipt" in conformity with D.C. Code §26-905 "for all payments made on account of the loan at the time such payments are made."

44.    At no time did Defendant Urban Title Services, Inc., Defendant Kenney or Defendant Carney provide Plaintiff Juergens any accounting with regard to this $60,000.00 loan.

45.    The previously-described actions of Defendant Kenney, Defendant Carney, Defendant Erb and Defendant Urban Title Services, Inc. with regard to the loan to Plaintiff Juergens and the settlement on that loan were taken with actual malice in the sense of conscious and deliberate wrongdoing, evil or wrongful motive, intent to injure, ill will or fraud, thus supporting Plaintiff Juergens' claim for punitive damages.

## BACKGROUND FACTS – FIRST MOUNT VERNON LOAN

46.    In or around early-August 2005, Plaintiff Juergens went to the First Mount Vernon Defendants in order to obtain a loan on her condominium unit in "The Metropolitan."

47.    The loan that Plaintiff Juergens sought from the First Mount Vernon Defendants was a personal consumer residential refinance loan as opposed to a commercial loan.

48.    This loan was to be used to pay off the $60,000.00 loan plus interest that was allegedly owed to the "George Owen Trust."

49.    The First Mount Vernon Defendants, acting through its agents, servants or employees, Defendant Bennett and Defendant Duncan, encouraged Plaintiff Juergens to borrow, not just the $60,000.00 needed to pay off the alleged loan from the George Owen Trust, but to take out a loan in the amount of $250,000.00 as Defendant Bennett and Defendant Duncan indicated that the First Mount Vernon Defendants, would not extend a loan as small as $60,000.00.

50.    According to the terms of this $250,000.00 loan, the First Mount Vernon Defendants would pay off the $60,000.00 loan (plus accrued interest) from the George Owen Trust, and would remit approximately $190,000.00 to Plaintiff Juergens in cash at closing (after the payment of reasonable settlement charges).

**Defendant Bennett's Preparation of "Uniform Residential Loan Application"**

51.     On the face of the document itself, it appear that on or about August 30, 2005, Defendant Bennett, acting on his own behalf and as the First Mount Vernon Defendants' agent, servant or employee, interviewed Plaintiff Juergens as part of completing a "Uniform Residential Loan Application."[1]

52.     Even though Plaintiff Juergens informed Defendant Bennett that she lived at 1230 23rd Street, N.W., Apt. 505, Washington, DC, Defendant Bennett falsely listed Plaintiff Juergens' address as "6359 Calvilier [sic] Corridor, Falls Church, Virginia" when he completed the Uniform Residential Loan Application.

53.     Even though Plaintiff Juergens informed Defendant Bennett that she had no income, Defendant Bennett falsely listed Plaintiff Juergens' "Basic Empl. Income" as $7,500.00 per month, "Investments" as $1,250.00 per month and "Other Income" as $1,650.00 per month when he completed the Uniform Residential Loan Application.

54.     Even though Plaintiff Juergens informed Defendant Bennett that she was going to continue to live in the condominium unit and not rent the unit to a third party, Defendant Bennett falsely listed Plaintiff Juergens' "Net Rental Income" as $2,900.00 per month when he completed the Uniform Residential Loan Application.

55.     In addition, Defendant Bennett falsely checked the "No" box next to the question "Do you intend to occupy the property as your primary residence?" even though Plaintiff Juergens informed Defendant Bennett that she was going to continue to live in the condominium unit and not rent the unit to a third party when he completed the Uniform Residential Loan Application.

---

[1]     A copy of the Uniform Residential Loan Application was filed by Defendant First Mount Vernon Industrial Loan Association Incorporated as Exhibit 2 to their memorandum of points and authorities in support of its motion to dismiss.  A copy of this Uniform Residential Loan Application is attached to the instant complaint as Exhibit 1.

56.    Plaintiff Juergens admits signing one version of a Uniform Residential Loan Application, but does not believe that the signature on the version of the Uniform Residential Loan Application that is attached to the instant complaint as Exhibit 1 is her own true genuine signature.

57.    Moreover, Plaintiff Juergens does not believe that she signed the version of the Uniform Residential Loan Application that is attached to the instant complaint as Exhibit 1 since this version has "filled-in" data that is false.

58.    Defendant Bennett never gave a copy of any Uniform Residential Loan Application to Plaintiff Juergens after she signed such a document.

59.    Plaintiff Juergens further contends that she first saw the version of the Uniform Residential Loan Application that is attached to the instant complaint as Exhibit 1 when she reviewed Defendant First Mount Vernon Industrial Loan Association Incorporated's memorandum of points and authorities in support of their motion to dismiss that was filed in the instant case on November 11, 2006.

60.    The facts concerning the preparation of Plaintiff Juergens' Uniform Residential Loan Application indicate that Defendant Bennett filled in false information on the application in order to qualify Plaintiff Juergens for a loan for which she would not have qualified had truthful information been provided on the form.

**Defendant Duncan's Registration of the
"1230 23rd Street, LLC" Limited Liability Corporation**

61.    At some point prior to August 10, 2005, prior to discussing the terms of any loan with Defendant Duncan, Plaintiff Juergens informed Defendant Duncan that she lived at 1230 23rd Street, N.W., Apt. 505, Washington, DC, and intended to live at this address after she obtained a residential refinance loan from the First Mount Vernon Defendants.

11

62.    On the face of the document itself, it appears that on August 16, 2005, Defendant Duncan, acting as the First Mount Vernon Defendants' agent, servant or employee, prepared Articles of Organization for the registration of "1230 23rd Street, LLC" as a Domestic Limited Liability Company with the Commonwealth of Virginia's State Corporation Commission.[2]

63.    Despite his knowledge that Plaintiff Juergens lived at 1230 23rd Street, N.W., Apt. 505, Washington, DC, and intended to live at this address after she obtained a loan from the First Mount Vernon Defendants, Defendant Duncan falsely stated in the "1230 23rd Street, LLC's" Articles of Organization that Plaintiff Juergens was a "resident of Virginia."

64.    Defendant Duncan used the address of the First Mount Vernon Defendants (6019 Tower Court, Alexandria, Virginia) as the "1230 23rd Street, LLC's" "principal office" when completing the Articles of Organization.

65.    Defendant Duncan listed Plaintiff Juergens as the registered agent for the "1230 23rd Street, LLC" Limited Liability Company even though she neither resides nor works in the Commonwealth of Virginia and does not have any other contact with the Commonwealth of Virginia that would permit her to serve as a registered agent under Virginia corporation law.

66.    Plaintiff Juergens denies that the alleged signature of "Mary Juergens" on the "1230 23rd Street, LLC's" Articles of Organization that is attached to the instant complaint as Exhibit 2 is her own genuine signature, and further states that this signature appears to be a forgery.

67.    Moreover, Plaintiff Juergens was in Europe from August 10, 2005 until August 25, 2005 and therefore could not have affixed her signature to the "1230 23rd Street, LLC's" Articles of

---

[2]    A copy of the Articles of Organization for the "1230 23rd Street, LLC" was filed by Defendant First Mount Vernon Mortgage, L.L.C. and Defendant Duncan as Exhibit 1 to their memorandum of points and authorities in support of their motion to dismiss. These Articles of Organization for the "1230 23rd Street, LLC" are attached to the instant complaint as Exhibit 2.

Organization on August 16, 2005, the date on which she allegedly signed the "1230 23rd Street, LLC's" Articles of Organization.

68.    After preparing the "1230 23rd Street, LLC's" Articles of Organization, Defendant Duncan filed the Articles of Organization with the Commonweal of Virginia's State Corporation Commission and was issued a Certificate of Organization from that office dated August 22, 2005.[3]

69.    The facts concerning the preparation of the "1230 23rd Street, LLC's" Articles of Organization indicate that Defendant Duncan may have filled in false information on the form in order to eventually qualify Plaintiff Juergens for a loan for which she would not have qualified had truthful information been provided on the form.

70.    At no time did Plaintiff Juergens indicate to Defendant Duncan, that she wanted to establish a Limited Liability Company.

71.    At no time prior to August 31, 2005, did Defendant Duncan inform Plaintiff Juergens that he was going to or had established a Limited Liability Company named "1230 23rd Street, LLC"

72.    Nevertheless, Defendant Duncan registered the "1230 23rd Street, LLC" Limited Liability Company with the Virginia State Corporation Commission without Plaintiff Juergens' consent or knowledge.

73.    Plaintiff Juergens first learned of the existence of the "1230 23rd Street, LLC" Limited Liability Company during preparations for the instant litigation.

---

[3]    A copy of the "1230 23rd Street, LLC's" Certificate of Organization was filed by Defendant First Mount Vernon Mortgage, L.L.C. and Defendant Duncan as Exhibit 1 to their memorandum of points and authorities in support of their motion to dismiss. This Certificate of Organization is attached to the instant complaint as Exhibit 3.

## The Closing on the First Mount Vernon Defendants' Loan

74.     The closing on the First Mount Vernon Defendants' loan to Plaintiff Juergens was scheduled for August 31, 2005 at the offices of the First Mount Vernon Defendants (6019 Tower Court, Alexandria, Virginia).

75.     When Plaintiff Juergens arrived at the closing, she believed that the loan would be a personal consumer residential loan.

76.     Upon her arrival at the offices of the First Mount Vernon Defendants on August 31, 2005 for the closing of the loan, Plaintiff Juergens was taken to a conference room where Defendant Duncan laid a pile of forms on the table for her to sign.

77.     Plaintiff Juergens physically signed some of these forms in front of either Defendant Duncan or Defendant Bennett by themselves and physically signed the other forms in front of Defendant Duncan and Defendant Bennett together.

78.     Aside from Defendant Duncan and Defendant Bennett, no other person was physically present when Plaintiff Juergens signed these forms.

79.     Despite her requests to be given copies of the forms she signed, neither Defendant Duncan nor Defendant Bennett provided such copies, claiming that they needed to "process" the forms before they were ready for copying.

80.     After Plaintiff Juergens filed the instant lawsuit, she received, for the first time, certain documents from some of the Defendants in the instant case that allegedly are related to the closing on the First Mount Vernon Defendants' loan.

81.     These documents are:

    a.     The Articles of Organization for the "1230 23rd Street, LLC" that Defendant First Mount Vernon Mortgage, L.L.C. and Defendant Duncan attached as Exhibit 1 to their memorandum in support of their motion to dismiss;  [Exhibit 2].

b.      HUD-1 Settlement Statement dated August 31, 2005 that Defendant First Mount Vernon Industrial Loan Association Incorporated attached as Exhibit 2 to its memorandum of points and authorities in support of their motion to dismiss;[4]

c.      Balloon Deed of Trust Note that Defendant First Mount Vernon Industrial Loan Association Incorporated attached as Exhibit 3 to its memorandum of points and authorities in support of their motion to dismiss;[5]

d.      Commercial Loan Balloon Deed of Trust that Defendant First Mount Vernon Industrial Loan Association Incorporated attached as Exhibit 4 to its memorandum of points and authorities in support of their motion to dismiss;[6]

e.      Deed dated August 31, 2005 that Defendant First Mount Vernon Industrial Loan Association Incorporated attached as Exhibit 6 to its reply to Plaintiff Juergens' opposition to their motion to dismiss;[7]

f.      Notice to Applicant for a Mortgage Loan – Commercial Loan Disclosure that Defendant First Mount Vernon Mortgage, L.L.C. and Defendant Duncan attached as Exhibit 4 to their memorandum in support of their motion to dismiss;[8]

g.      Financing Agreement dated August 31, 2005 that Defendant First Mount Vernon Mortgage, L.L.C. and Defendant Duncan attached as Exhibit 5 to their memorandum in support of their motion to dismiss;[9] and

---

[4]     A copy of the alleged HUD-1 Settlement Statement is attached to the instant complaint as Exhibit 4.

[5]     A copy of the alleged Balloon Deed of Trust Note is attached to the instant complaint as Exhibit 5.

[6]     A copy of the alleged Balloon Deed of Trust Note is attached to the instant complaint as Exhibit 6.

[7]     A copy of the alleged Deed dated August 31, 2005 is attached to the instant complaint as Exhibit 7.

[8]     A copy of the alleged Notice to Applicant for a Mortgage Loan – Commercial Loan Disclosure is attached to the instant complaint as Exhibit 8.

[9]     A copy of the alleged Financing Agreement dated August 31, 2005 is attached to the instant complaint as Exhibit 9.

h.    Borrower Affidavit dated August 31, 2005 that Defendant First Mount Vernon Mortgage, L.L.C. and Defendant Duncan attached as Exhibit 7 to their memorandum in support of their motion to dismiss.[10]

82.    In addition, Plaintiff Juergens has obtained several other documents that are seemingly related to the First Mount Vernon Defendants' loan, including:

a.    District of Columbia Office of Tax and Revenue Security Affidavit – Class 1;[11]

b.    Assignment of Contracts, Income, Rents and Profits;[12] and

c.    Deed in Lieu of Foreclosure.

83.    Despite what appears to be her signature on the HUD-1 Settlement Statement [Exhibit 4], Balloon Deed of Trust Note [Exhibit 5], Commercial Loan Balloon Deed of Trust [Exhibit 6], the Deed dated August 31, 2005 [Exhibit 7], Notice to Applicant for a Mortgage Loan – Commercial Loan Disclosure [Exhibit 8], Financing Agreement dated August 31, 2005 [Exhibit 9], Borrower Affidavit [Exhibit 10], District of Columbia Office of Tax and Revenue Security Affidavit – Class 1 [Exhibit 11], Assignment of Contracts, Income, Rents and Profits [Exhibit 12] and Deed in Lieu of Foreclosure, Plaintiff Juergens does not believe that the signatures on the versions of the documents that are attached as exhibits to the instant complaint are her own genuine signatures.

84.    Moreover, Plaintiff Juergens does not recall signing any documents that reference "1230 23rd Street, LLC" since she had no knowledge of the existence of such a Limited Liability

---

[10]    A copy of the alleged Borrower Affidavit dated August 31, 2005 is attached to the instant complaint as Exhibit 10.

[11]    A copy of the alleged District of Columbia Office of Tax and Revenue Security Affidavit – Class 1 is attached to the instant complaint as Exhibit 11.

[12]    A copy of the alleged Assignment of Contracts, Income, Rents and Profits is attached to the instant complaint as Exhibit 12.

Company at the time these documents were supposedly signed, and therefore, would not have signed such documents on behalf of a business entity about which she had no knowledge.

85.    Additionally, Plaintiff Juergens contends that she would never have knowingly signed any document that would result in the transfer of legal ownership to her condominium unit, whether to a Limited Liability Company that she controlled or any other business entity.

### Relationship between Defendant Duncan and Defendant Bennett, on the One Hand, and Defendant Brickshire Settlements, LLC, on the Other

86.    Upon information and belief, Defendant Bennett and Defendant Duncan are Defendant Brickshire Settlements, LLC's agents, servants or employees, and act as such when signing HUD-1 Settlement Statements and conducting settlements on behalf of Brickshire Settlements, LLC.

87.    Defendant Bennett and Defendant Duncan acted as Defendant Brickshire Settlements, LLC's agents, servants or employees, when they conducted the settlement on the First Mount Vernon Defendants' loan to Plaintiff Juergens.

88.    Defendant Bennett and Defendant Duncan also acted as Defendant Brickshire Settlements, LLC's agents, servants or employees, when they signed the HUD-1 Settlement Statement related to Plaintiff Juergens' loan on behalf of Defendant Brickshire Settlements, LLC.

### Lack of Notary Public at the Closing of the First Mount Vernon Defendants' Loan

89.    On each and every line of the documents attached as exhibits to the instant complaint, where a line for a Notary is present, there is, what appears to be a hand-written signature version of initials and a hand-written date "06/30/09" next to the words "My commission expires:."

90.    There is, however, no way to determine from the hand-written initials and date, the identity of the purported Notary Public.

17

91.    In addition, there was no notarial seal or stamp on any of these documents to indicate the identity of the purported Notary Public.

92.    The only individuals who were present when Plaintiff Juergens signed any papers in reference to the First Mount Vernon Defendants' loan were Defendant Duncan and Defendant Bennett – neither of whom are notaries in the Commonwealth of Virginia.[13]

93.    Therefore, despite what appears to be the signature of a Notary Public on the Balloon Deed of Trust Note [Exhibit 5], the Commercial Loan Balloon Deed of Trust [Exhibit 6], the Deed dated August 31, 2005 [Exhibit 7], the Borrower Affidavit [Exhibit 10], the District of Columbia Office of Tax and Revenue Security Affidavit – Class 1 [Exhibit 11], the Assignment of Contracts, Income, Rents and Profits [Exhibit 12] and the Deed in Lieu of Foreclosure, no one "authorized to perform a notarial act" pursuant to D.C. Code § 42-141 (5) was present when Plaintiff Juergens allegedly signed any of the foregoing documents.

94.    As the "Settlement Agent" listed on the HUD-1 for the First Mount Vernon Defendants' loan, Defendant Brickshire Settlements, LLC knew or should have known that Defendant Duncan and Defendant Bennett were not licensed notaries in the Commonwealth of Virginia, yet still allowed the settlement on the loan to proceed.

95.    Therefore, the Balloon Deed of Trust Note [Exhibit 5], the Commercial Loan Balloon Deed of Trust [Exhibit 6], the Deed dated August 31, 2005 [Exhibit 7], the Borrower Affidavit [Exhibit 10] the District of Columbia Office of Tax and Revenue Security Affidavit – Class 1 [Exhibit 11], the Assignment of Contracts, Income, Rents and Profits [Exhibit 12] and the Deed in Lieu of Foreclosure are of no legal effect since these documents require a valid notarization

---

[13]    See letter dated December 1, 2006 from Denise McDaniel, Notary Specialist, Office of the Secretary of the Commonwealth of Virginia that is attached to the instant complaint as Exhibit 13.

and acknowledgement in order to be valid pursuant to D.C. Code §§ 42-141, 42-142, 42-143, 42-306, and 42-401.

96.     Plaintiff Juergens believes that the facts indicate that the First Mount Vernon Defendants, Defendant Duncan, Defendant Bennett and Defendant Brickshire Settlements, LLC have prepared and presented documents for Plaintiff Juergens' signature without explaining the legal effect of such documents to Plaintiff Juergens in an effort to charge her a higher rate of interest, and also to circumvent District of Columbia mortgage and fair lending laws.

<p style="text-align:center"><strong><u>Plaintiff Juergens' Attempt to Rescind Loan</u></strong></p>

97.     Several hours after Plaintiff Juergens left the offices of the First Mount Vernon Defendants on August 31, 2005, she called Defendant Bennett and informed him that she did not want to proceed with this loan, but he refused to stop the loan process.

<p style="text-align:center"><strong><u>Disbursement of Funds from the First Mount Vernon Defendants' Loan</u></strong></p>

98.     A close reading of the HUD-1 Settlement Statement dated August 31, 2005 [Exhibit 1], reveals numerous false statements, inconsistencies and ambiguities that, in total, lead to the conclusion that the First Mount Vernon Defendants' loan to Plaintiff Juergens was a sham loan designed to circumvent District of Columbia mortgage and fair lending laws.

99.     Specifically, the false statements, inconsistencies and ambiguities in the HUD-1 are as follows:

> a.     The place of the settlement was First Mount Vernon Defendants' offices located at 6019 Tower Court, Alexandria, Virginia, not "7700 Little River Turnpike, Suite 604, Annandale, Virginia" as stated in Section H;

> b.     There is neither an explanation for "Escrow" in the amount of $60,996.04 on Line 104 nor is there any "escrow agreement" that would allow such a payment into an escrow account;

> c.     The "Pay off of first Mortgage to George Owens" [sic] in the amount of $61,195.11 on Line 504 does not match what Plaintiff Juergens believes to be the

<p style="text-align:center">19</p>

pay off figure as of the settlement date on the First Mount Vernon Defendants' loan, August 31, 2005;

d.    There is neither an explanation for "Advance Distribution to First Mount Vernon I.L.A." in the amount of $95,000 on Line 811 nor is there any agreement that would allow such an "Advance Distribution;"

e.    There is neither an explanation for "Escrow for Interest Reserve to First Mount Vernon I.L.A." in the amount of $67,526.31 on Line 1303 nor is there any "escrow agreement" that would allow such a payment into an escrow account;

f.    There is neither an explanation for "See additi'l Dist. Exhibit" in the amount of $5,447.90 on Line 1305 nor is there any agreement that would allow such a distribution;

g.    At best, the HUD-1 shows that Plaintiff Juergens received $95,000.00 at closing and that the first mortgage to the George Owen Trust in the amount of $61,195.11 was satisfied, but there is no accounting for the remaining $43,804.89 of the $250,000.00 loan;

h.    Although the Deed dated August 31, 2005 Defendant First Mount Vernon Industrial Loan Association Incorporated  attached as Exhibit 6 to its reply to Plaintiff Juergens' opposition to their motion to dismiss [that is attached to the instant complaint as Exhibit 7], states that

> "the Grantor [Plaintiff Juergens], in consideration of **Two Hundred Thousand Dollars ($200,000)** [emphasis added], the receipt and sufficiency of which is hereby acknowledged, does hereby grant, sell, bargain and convey unto the Grantee [the "1230 23rd Street, LLC"], its heirs and assigns, in fee simple the following described land and premises [Plaintiff Juergens' condominium unit]"

there is no reference in the HUD-1 to Plaintiff Juergens receiving any money for her alleged "sale" of her condominium unit to the "1230 23rd Street, LLC."

100.    Although her contract with the First Mount Vernon Defendants provided that she would receive approximately $190,000.00 at closing, Plaintiff Juergens only received approximately $95,000.00 at closing.

101.    Therefore, the First Mount Vernon Defendants, Defendant Duncan, Defendant Bennett nor Defendant Brickshire Settlements, LLC owe the Plaintiff Juergens the difference between the

amount promised ($190,000.00) and the amount remitted at the settlement ($95,000.00), which is also, coincidentally, approximately $95,000.00.

102.    Neither the First Mount Vernon Defendants, Defendant Duncan, Defendant Bennett nor Defendant Brickshire Settlements, LLC have provided any accounting that shows why the remaining $95,000.00 was not provided to Plaintiff Juergens at the settlement.

103.    Moreover, Plaintiff Juergens believes that the amount that the HUD-1 lists as the pay off figure for the "first Mortgage to George Owens" [sic] ($61,195.11) does not take into consideration amounts the Plaintiff Juergens paid to the George Owen Trust in order to reduce the amount owed on that loan prior to the closing on the First Mount Vernon Defendants' loan, and in any event, Plaintiff Juergens never received a pay off statement regarding the George Owen Trust loan.

104.    Therefore, the First Mount Vernon Defendants, Defendant Duncan, Defendant Bennett nor Defendant Brickshire Settlements, LLC owe Plaintiff Juergens the difference between the amount that was allegedly remitted to pay off the "first Mortgage to George Owens" [sic] ($61,195.11) and the amount that was actually owed, which is unknown at this time.

### Plaintiff Juergens' Personal Guarantee of the Repayment of the Alleged Loan to the "1230 23rd Street, LLC"

105.    Page 3 of the Balloon Deed of Trust Note that Defendant First Mount Vernon Industrial Loan Association Incorporated attached as Exhibit 3 to their memorandum of points and authorities in support of their motion to dismiss [Exhibit 5] states:

> The person signing below does so for the purpose of acknowledging all terms and obligations of this Note and by so signing, personally guarantees the repayment of all obligations set forth herein as if he [sic] is the maker of this Note.

106.    Therefore, even though the First Mount Vernon Defendants might attempt to characterize the loan as a "commercial" loan, in reality, since Plaintiff Juergens was still personally

responsible for the repayment of the loan, it was a "residential" refinance loan, subject to all of the protections found in District of Columbia residential mortgage and fair lending law.

**Plaintiff Juergens' Alleged Deed to the "1230 23rd Street, LLC"**
**was not Recorded Until September 21, 2006 – a Date After Plaintiff Juergens Filed her**
**Original Complaint in the Instant Case – August 29, 2006.**

107.    Several documents related to the First Mount Vernon Defendants' loan to Plaintiff Juergens were not filed in the office of the District of Columbia Recorder of Deeds until September 21, 2006.

108.    These documents are the Deed dated August 31, 2005 [Exhibit 7], the Commercial Loan Balloon Deed of Trust [Exhibit 6] and the Assignment of Contracts, Income, Rents and Profits [Exhibit 9].[14]

109.    While not necessarily improper on its own, these "late" recordations on September 21, 2006 that occurred after Plaintiff Juergens filed her initial complaint in the instant case on August 29, 2006 call into question the true nature of the transaction with Plaintiff Juergens.

**The True Nature of the First Mount Vernon Defendants' Loan**

110.    With specificity, and based upon the foregoing facts, Plaintiff Juergens contends that the First Mount Vernon Defendants, Defendant Duncan, Defendant Bennett and Defendant Brickshire Settlements, LLC conspired to fraudulently disguise the true nature of the First Mount Vernon Defendants' loan to Plaintiff Juergens from a simple residential refinance loan to a commercial loan in order to qualify Plaintiff Juergens for a loan since she might not qualify for a residential refinance loan in her personal capacity, charge her a higher rate of interest, and also to circumvent District of Columbia mortgage and fair lending laws related to residential loans.

---

[14]    See printout of District of Columbia Recorder of Deeds "Search Records" results page is attached to the instant complaint as Exhibit 11.

**The First Mount Vernon Defendants' Violations of D.C. Mortgage Laws**

111.    Neither the First Mount Vernon Defendants nor Defendant Duncan nor Defendant Bennett sent Plaintiff Juergens a "Red Flag Warning Disclosure Notice" at least three business days prior to the closing of the loan in violation of D.C. Code §26-1152.11.

112.    Neither the First Mount Vernon Defendants nor Defendant Duncan nor Defendant Bennett advised Plaintiff Juergens of her right to obtain counseling in connection with the loan, in violation of D.C. Code §26-1152.19.

113.    Neither the First Mount Vernon Defendants nor Defendant Duncan nor Defendant Bennett furnished Plaintiff Juergens with a statement in conformity with D.C. Code §26-905 that showed "in clear and distinct terms, the amount of the loan, the date when loaned and when due, the person to whom the loan is made, the name of the lender, [or] the amount of interest charged."

114.    Neither the First Mount Vernon Defendants nor Defendant Duncan nor Defendant Bennett provided Plaintiff Juergens with a "plain and complete receipt" in conformity with D.C. Code §26-905 "for all payments made on account of the loan at the time such payments are made."

**Punitive Damage Claim**

115.    The previously-described actions of First Mount Vernon Defendants, Defendant Duncan, Defendant Bennett and Defendant Brickshire Settlements, LLC with regard to the First Mount Vernon Defendants' loan to Plaintiff Juergens and the settlement on that loan were taken with actual malice in the sense of conscious and deliberate wrongdoing, evil or wrongful motive, intent to injure, ill will or fraud, thus supporting Plaintiff Juergens' claim for punitive damages.

**Count I – Breach of Contract**
**(Defendant Urban Title Services, Inc. and Defendant Kenney)**

116.    The allegations contained in Paragraphs 1-45 of the instant Complaint are incorporated herein as if fully stated.

117.    Plaintiff Juergens entered into a contract with Defendant Urban Title Services, Inc. and Defendant Kenney whereby Defendant Urban Title Services, Inc. and Defendant Kenney agreed to provide a $60,000.00 loan to Plaintiff Juergens to pay off a condominium fee assessment and to perform renovations on her condominium unit.

118.    According to the terms of this $60,000.00 loan, the $8,000.00 condominium fee assessment would be paid off in full and Plaintiff Juergens would receive cash in the amount of approximately $52,000.00 at closing, less reasonable settlement costs.

119.    Defendant Urban Title Services, Inc. and Defendant Kenney breached this contract by not providing the full proceeds of this $60,000.00 loan to Plaintiff Juergens, but rather only paid off the condominium fee assessment in the amount of approximately $8,000.00 and provided Plaintiff Juergens with an escrow check in the amount of approximately $24,597.06, leaving approximately $27,402.84 still due Plaintiff Juergens from the proceeds of the loan.

120.    In addition, Defendant Urban Title Services, Inc. and Defendant Kenney claim that they paid off Plaintiff Juergens' U.S. Internal Revenue Service tax liens on the property in the amount of approximately $7,500.00 and Plaintiff Juergens' Fairfax County Department of Tax Administration tax liens in the amount of approximately $1,700.00, but Plaintiff Juergens never authorized such payments.

121.    Moreover, the records of the U.S. Internal Revenue Service and the Fairfax County Department of Tax Administration do not reflect any pay off of any of Plaintiff Juergens' tax liens by Defendant Urban Title Services, Inc. or Defendant Kenney, and in fact, the U.S. Internal

Revenue Service and the Fairfax County Department of Tax Administration discharged these liens against Plaintiff Juergens' property as time-barred rather than by payment from either Plaintiff Juergens, on the one hand, or by Defendant Urban Title Services, Inc. or Defendant Kenney, on the other hand.

122. Therefore, Defendant Urban Title Services, Inc. and Defendant Kenney breached this contract by unlawfully withholding $7,500.00 (allegedly for a U.S. Internal Revenue Service tax lien) and approximately $1,700.00 (allegedly for a Fairfax County Department of Tax Administration tax lien) from the proceeds of Plaintiff Juergens' $60,000.00 loan.

123. As a direct and proximate result of Defendant Urban Title Services, Inc. and Defendant Kenney's breach of their contract, Plaintiff Juergens suffered damages, including, but not limited to, the loss of the use of the funds that Plaintiff Juergens paid as fees, charges and expenses in connection with the Urban Title Services, Inc. loan, the loss of funds that Plaintiff Juergens used to pay a higher interest rate than that allowed by law, the loss of funds that Plaintiff Juergens used to repay all or part of the Urban Title Services, Inc. loan, the loss of the use of the funds that Plaintiff Juergens might be obligated to repay in the future to Urban Title Services, Inc. or the George Owen Trust in connection with the Urban Title Services, Inc. loan and harm to Plaintiff Juergens' credit rating.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $1,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, attorneys' fees, interest and court costs and also declaring Defendant Urban Title Services, Inc.'s loan to Plaintiff Juergens to be null and void, against Defendant Urban Title Services, Inc. and Defendant William Kenney a/k/a "Bill Kenney," jointly and severally, as well as any other relief required in the interest of justice.

## Count II – Conversion
## (Defendant Kenney and Defendant Carney)

124.    The allegations contained in Paragraphs 1-45 of the instant Complaint are incorporated herein as if fully stated.

125.    Defendant Kenney and Defendant Carney's refusal to provide the full proceeds of the $60,000.00 loan (after subtracting legitimate and authorized charges and payments) was an unlawful exercise of ownership, dominion and control over Plaintiff Juergens' personalty in denial or repudiation of Plaintiff Juergens' right to such property.

126.    As a direct and proximate result of this conversion, Plaintiff Juergens' suffered damages, including, but not limited to, the loss of the use of the funds that Plaintiff Juergens paid as fees, charges and expenses in connection with the Urban Title Services, Inc. loan, the loss of funds that Plaintiff Juergens used to pay a higher interest rate than that allowed by law, the loss of funds that Plaintiff Juergens used to repay all or part of the Urban Title Services, Inc. loan, the loss of the use of the funds that Plaintiff Juergens might be obligated to repay in the future to Urban Title Services, Inc. or the George Owen Trust in connection with the Urban Title Services, Inc. loan and harm to Plaintiff Juergens' credit rating.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $1,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, attorneys' fees, interest and court costs and also declaring Defendant Urban Title Services, Inc.'s loan to Plaintiff Juergens to be null and void, against Defendant William Kenney a/k/a "Bill Kenney" and Defendant Robert William Carney, jointly and severally, as well as any other relief required in the interest of justice.

## Count III – Fraud
## (Defendant Kenney)

127.     The allegations contained in Paragraphs 1-45 of the instant Complaint are incorporated herein as if fully stated.

128.     In his dealings with Plaintiff Juergens, Defendant Kenney made numerous false representations to Plaintiff Juergens, included, but not limited to statements that the $8,000.00 condominium fee assessment would be paid off in full from the proceeds of the $60,000.00 loan and Plaintiff Juergens would receive cash in the amount of approximately $52,000.00 at closing, less reasonable settlement costs.

129.     These false representations concerned a material fact, specifically, the true nature of the $60,000.00 loan to Plaintiff Juergens.

130.     Defendant Kenney made these false representations with knowledge that they were false.

131.     Defendant Kenney made these false representations with the intent to deceive Plaintiff Juergens into entering into the $60,000.00 loan transaction.

132.     Plaintiff Juergens relied on Defendant Kenney's false representations when she entered into the $60,000.00 loan transaction.

133.     As a direct and proximate result of Defendant Kenney's fraud, Plaintiff Juergens suffered damages, including, but not limited to, the loss of the use of the funds that Plaintiff Juergens paid as fees, charges and expenses in connection with the Urban Title Services, Inc. loan, the loss of funds that Plaintiff Juergens used to pay a higher interest rate than that allowed by law, the loss of funds that Plaintiff Juergens used to repay all or part of the Urban Title Services, Inc. loan, the loss of the use of the funds that Plaintiff Juergens might be obligated to repay in the future to Urban Title Services, Inc. or the George Owen Trust in connection with the Urban Title Services, Inc. loan and harm to Plaintiff Juergens' credit rating.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $1,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, attorneys' fees, interest and court costs and also declaring Defendant Urban Title Services, Inc.'s loan to Plaintiff Juergens to be null and void, against Defendant William Kenney a/k/a "Bill Kenney" as well as any other relief required in the interest of justice.

### Count IV – Breach of Fiduciary Duty
### (Defendant Erb)

134.    The allegations contained in Paragraphs 1-45 of the instant Complaint are incorporated herein as if fully stated.

135.    Defendant Erb, as the notary public used by Defendant Kenney and Defendant Carney on Plaintiff Juergens' loan, owed a duty to Plaintiff Juergens to ensure that the loan documents complied with all legal formalities regarding the notarization of documents.

136.    Defendant Erb breached this duty owed to Plaintiff Juergens by failing to ensure that the loan documents complied with all legal formalities regarding the notarization of documents.

137.    As a direct and proximate result of Defendant Erb's breach of the fiduciary duty owed to Plaintiff Juergens, Plaintiff Juergens' suffered damages, including, but not limited to, the loss of the use of the funds that Plaintiff Juergens paid as fees, charges and expenses in connection with the Urban Title Services, Inc. loan, the loss of funds that Plaintiff Juergens used to pay a higher interest rate than that allowed by law, the loss of funds that Plaintiff Juergens used to repay all or part of the Urban Title Services, Inc. loan, the loss of the use of the funds that Plaintiff Juergens might be obligated to repay in the future to Urban Title Services, Inc. or the George Owen Trust in connection with the Urban Title Services, Inc. loan and harm to Plaintiff Juergens' credit rating.

138.    Defendant Erb's breach of the fiduciary duty owed to Plaintiff Juergens was intentional, willful and wanton, and justify the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $1,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, attorneys' fees, interest and court costs and also declaring Defendant Urban Title Services, Inc.'s loan to Plaintiff Juergens to be null and void, against Defendant Paul Erb, as well as any other relief required in the interest of justice.

<div align="center">

**Count V – Negligence**
**(Defendant Erb)**

</div>

139.    The allegations contained in Paragraphs 1-45 of the instant Complaint are incorporated herein as if fully stated.

140.    Defendant Erb, as the notary public used by Defendant Kenney and Defendant Carney on Plaintiff Juergens' loan, owed a duty to Plaintiff Juergens to ensure that the loan documents complied with all legal formalities regarding the notarization of documents.

141.    Defendant Erb breached this duty owed to Plaintiff Juergens by negligently failing to ensure that the loan documents complied with all legal formalities regarding the notarization of documents.

142.    As a direct and proximate result of Defendant Erb's breach of the fiduciary duty owed to Plaintiff Juergens, Plaintiff Juergens' suffered damages, including, but not limited to, the loss of the use of the funds that Plaintiff Juergens paid as fees, charges and expenses in connection with the Urban Title Services, Inc. loan, the loss of funds that Plaintiff Juergens used to pay a higher interest rate than that allowed by law, the loss of funds that Plaintiff Juergens used to repay all or part of the Urban Title Services, Inc. loan, the loss of the use of the funds that Plaintiff Juergens might be obligated to repay in the future to Urban Title Services, Inc. or the George Owen Trust

in connection with the Urban Title Services, Inc. loan and harm to Plaintiff Juergens' credit rating.

143.    Defendant Erb's breach of the fiduciary duty owed to Plaintiff Juergens was intentional, willful and wanton, and justify the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $1,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, attorneys' fees, interest and court costs and also declaring Defendant Urban Title Services, Inc.'s loan to Plaintiff Juergens to be null and void, against Defendant Paul Erb, as well as any other relief required in the interest of justice.

### Count VI – Breach of Fiduciary Duty
### (Defendant Carney)

144.    The allegations contained in Paragraphs 1-45 of the instant Complaint are incorporated herein as if fully stated.

145.    Defendant Carney, as the settlement attorney on Plaintiff Juergens' loan, owed a duty to Plaintiff Juergens to ensure the loan documents complied with all legal formalities, the HUD-1 Settlement Statement accurately reflected the receipts and disbursements and the loan proceeds were properly disbursed.

146.    Defendant Carney breached this duty owed to Plaintiff Juergens by failing to ensure the loan documents complied with all legal formalities, the HUD-1 Settlement Statement accurately reflected the receipts and disbursements and the loan proceeds were properly disbursed.

147.    In addition, Defendant Carney breached this duty of care by failing to pay Plaintiff Juergens' tax liens to the U.S. Internal Revenue Service and the Fairfax County Department of Tax Administration.

148.    As a direct and proximate result of Defendant Carney's breach of the fiduciary duty owed to Plaintiff Juergens, Plaintiff Juergens' suffered damages, including, but not limited to, the loss of the use of the funds that Plaintiff Juergens paid as fees, charges and expenses in connection with the Urban Title Services, Inc. loan, the loss of funds that Plaintiff Juergens used to pay a higher interest rate than that allowed by law, the loss of funds that Plaintiff Juergens used to repay all or part of the Urban Title Services, Inc. loan, the loss of the use of the funds that Plaintiff Juergens might be obligated to repay in the future to Urban Title Services, Inc. or the George Owen Trust in connection with the Urban Title Services, Inc. loan and harm to Plaintiff Juergens' credit rating.

149.    Defendant Carney's breach of the fiduciary duty owed to Plaintiff Juergens was intentional, willful and wanton, and justify the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $1,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, attorneys' fees, interest and court costs and also declaring Defendant Urban Title Services, Inc.'s loan to Plaintiff Juergens to be null and void, against Defendant Robert William Carney, as well as any other relief required in the interest of justice.

### Count VII – Negligence
### (Defendant Carney)

150.    The allegations contained in Paragraphs 1-45 of the instant Complaint are incorporated herein as if fully stated.

151.    Defendant Carney, as the settlement attorney on Plaintiff Juergens' loan, owed a duty to Plaintiff Juergens to ensure that the loan documents complied with all legal formalities and that the loan proceeds were properly disbursed.

152.     Defendant Carney breached this duty owed to Plaintiff Juergens by negligently failing to ensure that the loan documents complied with all legal formalities and that the loan proceeds were properly disbursed.

153.     As a direct and proximate result of Defendant Carney's breach of the fiduciary duty owed to Plaintiff Juergens, Plaintiff Juergens' suffered damages, including, but not limited to, the loss of the use of the funds that Plaintiff Juergens paid as fees, charges and expenses in connection with the Urban Title Services, Inc. loan, the loss of funds that Plaintiff Juergens used to pay a higher interest rate than that allowed by law, the loss of funds that Plaintiff Juergens used to repay all or part of the Urban Title Services, Inc. loan, the loss of the use of the funds that Plaintiff Juergens might be obligated to repay in the future to Urban Title Services, Inc. or the George Owen Trust in connection with the Urban Title Services, Inc. loan and harm to Plaintiff Juergens' credit rating.

154.     Defendant Carney's breach of the fiduciary duty owed to Plaintiff Juergens was intentional, willful and wanton, and justify the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $1,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, attorneys' fees, interest and court costs and also declaring Defendant Urban Title Services, Inc.'s loan to Plaintiff Juergens to be null and void, against Defendant Robert William Carney, as well as any other relief required in the interest of justice.

### Count VIII – Civil Conspiracy
### (Defendant Kenney, Defendant Carney and Defendant Erb)

155.     The allegations contained in Paragraphs 1-45 of the instant Complaint are incorporated herein as if fully stated.

156.    Defendant Kenney, Defendant Carney and Defendant Erb formed a conspiracy whereby Defendant Kenney would personally entice Plaintiff Juergens into entering into a $60,000.00 loan.

157.    Defendant Kenney advised Plaintiff Juergens that she would receive a certain amount of funds as proceeds of the loan (after subtracting legitimate and authorized charges and payments).

158.    Defendant Carney's role in the conspiracy was as the settlement attorney who owed a duty to Plaintiff Juergens to ensure the loan documents complied with all legal formalities, the HUD-1 Settlement Statement accurately reflected the receipts and disbursements and the loan proceeds were properly disbursed.

159.    Defendant Erb's role in the conspiracy was as the notary public who owed a duty to ensure that the loan documents were properly notarized and authenticated.

160.    At all relevant times, Defendant Kenney and Defendant Carney knew that Plaintiff Juergens would not receive what Defendant Kenney told Plaintiff Juergens would be the proceeds of the loan and which she reasonably relied upon in deciding whether to accept the loan.

161.    Defendant Erb's notarization and authentication of documents related to Plaintiff Juergens' loan was false and unlawful since Defendant Erb and Plaintiff Juergens were not physically present together at the closing of this loan.

162.    Defendant Erb's false notarization and authentication of the documents related to Plaintiff Juergens' loan gave an air of credibility to the documents that Defendant Kenney and Defendant Carney signed in extending the loan to Plaintiff Juergens.

163.    The fraudulent and wrongful acts committed by Defendant Kenney, Defendant Carney and Defendant Erb in extending the loan to Plaintiff Juergens were undertaken in furtherance of the conspirators' common scheme.

164.    As a direct and proximate result of Defendant Kenney, Defendant Carney and Defendant Erb's conspiracy, Plaintiff Juergens suffered damages, including, but not limited to, the loss of the use of the funds that Plaintiff Juergens paid as fees, charges and expenses in connection with the Urban Title Services, Inc. loan, the loss of funds that Plaintiff Juergens used to pay a higher interest rate than that allowed by law, the loss of funds that Plaintiff Juergens used to repay all or part of the Urban Title Services, Inc. loan, the loss of the use of the funds that Plaintiff Juergens might be obligated to repay in the future to Urban Title Services, Inc. or the George Owen Trust in connection with the Urban Title Services, Inc. loan and harm to Plaintiff Juergens' credit rating.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $1,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, attorneys' fees, interest and court costs and also declaring Defendant Urban Title Services, Inc.'s loan to Plaintiff Juergens to be null and void, against Defendant William Kenney a/k/a "Bill Kenney," Defendant Robert William Carney and Defendant Paul Erb, jointly and severally, as well as any other relief required in the interest of justice.

### Count IX – Violation D.C. Code §26-901, et seq.
### (Loan Shark Act)
### (Defendant Urban Title Services, Inc. and Defendant Kenney)

165.    The allegations contained in Paragraphs 1-45 of the instant Complaint are incorporated herein as if fully stated.

166.    D.C. Code §26-901, <u>et</u> <u>seq.</u>, sets forth that it is "unlawful and illegal to engage in the business of loaning money in the District of Columbia upon which a rate of interest greater than 6% per annum is charged on any security of any kind, direct or collateral, tangible or intangible, without procuring license."  <u>See</u> D.C. Code §26-901.

167.    In addition, D.C. Code §26-905 states that every lender must "furnish the borrower a written, typewritten, or printed statement at the time the loan is made, showing, in English, in clear and distinct terms, the amount of the loan, the date when loaned and when due, the person to whom the loan is made, the name of the lender, [and] the amount of interest charged [and] shall give the borrower a plain and complete receipt for all payments made on account of the loan at the time such payments are made."

168.    D.C. Code §26-905 also states that "any person contracting, directly or indirectly, for, or receiving a greater rate of interest than that fixed in this chapter [D.C. Code §26-901, <u>et</u> <u>seq.</u>], shall forfeit all interest so contracted for or received; and in addition thereto shall forfeit to the borrower a sum of money, to be deducted from the amount due for principal, equal to one-fourth of the principal sum."

169.    D.C. Code §26-909 further states that it is "unlawful to incorporate any provision for liquidated or other damages as a penalty for any default or forfeiture thereunder."

170.    Neither Defendant Kenney, Defendant Carney nor Defendant Urban Title Services, Inc. furnished Plaintiff Juergens with a statement in conformity with D.C. Code §26-905 that showed "in clear and distinct terms, the amount of the loan, the date when loaned and when due, the person to whom the loan is made, the name of the lender, [or] the amount of interest charged."

171.    Neither Defendant Kenney, Defendant Carney nor Defendant Urban Title Services, Inc. provided Plaintiff Juergens with a "plain and complete receipt" in conformity with D.C. Code §26-905 "for all payments made on account of the loan at the time such payments are made."

172.    As a direct and proximate result of Defendant Kenney, Defendant Carney and Defendant Urban Title Services, Inc.'s violations of D.C. Code §26-905, Plaintiff Juergens suffered damages, including, but not limited to, the loss of the use of the funds that Plaintiff Juergens paid as fees, charges and expenses in connection with the Urban Title Services, Inc. loan, the loss of funds that Plaintiff Juergens used to pay a higher interest rate than that allowed by law, the loss of funds that Plaintiff Juergens used to repay all or part of the Urban Title Services, Inc. loan, the loss of the use of the funds that Plaintiff Juergens might be obligated to repay in the future to Urban Title Services, Inc. or the George Owen Trust in connection with the Urban Title Services, Inc. loan and harm to Plaintiff Juergens' credit rating.

173.    Pursuant to D.C. Code §26-905. Plaintiff Juergens is entitled to a return of all interest contracted for or received and one fourth of the principal of the loan.

174.    D.C. Code §26-907 provides a civil remedy for violation of D.C. Code §26-901, et seq.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $1,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, attorneys' fees, interest and court costs and also declaring Defendant Urban Title Services, Inc.'s loan to Plaintiff Juergens to be null and void, against Defendant Urban Title Services, Inc. and Defendant William Kenney a/k/a "Bill Kenney," jointly and severally, as well as any other relief required in the interest of justice.

**Count X – Violation D.C. Code §26-1101, et seq.**
**(Mortgage Lender and Broker Act)**
**(Defendant Urban Title Services, Inc. and Defendant Kenney)**

175.    The allegations contained in Paragraphs 1-45 of the instant Complaint are incorporated herein as if fully stated.

176.    At all relevant times, Defendant Urban Title Services, Inc. and Defendant Kenney were "mortgage lenders" as defined by D.C. Code §26-1101 (11) since they "made mortgage loans" and were engaged "in the business of servicing mortgage loans for others or collecting or otherwise receiving mortgage loan payments directly from borrowers for distribution to any other person."

177.    At all relevant times, Defendant Urban Title Services, Inc. and Defendant Kenney were also "mortgage brokers" as defined by D.C. Code §26-1101 (10) since they "for compensation or gain, or in the expectation of compensation or gain, either directly or indirectly accept[ed] or offer[ed] to accept an application for a mortgage loan, solicit[ed] or offer[ed] to solicit a mortgage loan on behalf of a borrower, or negotiat[ed] or offer[ed] to negotiate the terms and conditions of a mortgage loan on behalf of a lender.

178.    D.C. Code §26-1103 requires that "mortgage lenders" and "mortgage brokers" obtain a license prior to engaging in business as a "mortgage lender" or "mortgage broker."

179.    Defendant Urban Title Services, Inc., Defendant Kenney and Defendant Carney violated D.C. Code §26-1101, et seq., with regard to the loan to Plaintiff Juergens by failing to require that the person closing the mortgage loan provide Plaintiff Juergens prior to the closing of the mortgage loan a settlement statement as required pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. §2601, et seq., and any disclosure required by the Truth in Lending Act, 15 U.S.C. §1601, et seq., in violation of D.C. Code §26-1114 (a) (7).

180.    As a direct and proximate result of Defendant Urban Title Services, Inc., Defendant Kenney and Defendant Carney's violations of D.C. Code §26-1151.01, et seq., Plaintiff Juergens suffered damages, including, but not limited to, the loss of the use of the funds that Plaintiff Juergens paid as fees, charges and expenses in connection with the Urban Title Services, Inc. loan, the loss of funds that Plaintiff Juergens used to repay all or part of the Urban Title Services, Inc. loan, the loss of funds that Plaintiff Juergens used to pay a higher interest rate than that allowed by law, the loss of the use of the funds that Plaintiff Juergens might be obligated to repay in the future to Urban Title Services, Inc. or the George Owen Trust in connection with the Urban Title Services, Inc. loan and harm to Plaintiff Juergens' credit rating.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $1,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, attorneys' fees, interest and court costs and also declaring Defendant Urban Title Services, Inc.'s loan to Plaintiff Juergens to be null and void, against Defendant Urban Title Services, Inc. and Defendant William Kenney a/k/a "Bill Kenney," jointly and severally, as well as any other relief required in the interest of justice.

### Count XI – Violation D.C. Code §26-1151.01, et seq.
### (Mortgage Loan Protection Act)
### (Defendant Urban Title Services, Inc. and Defendant Kenney)

181.    The allegations contained in Paragraphs 1-45 of the instant Complaint are incorporated herein as if fully stated.

182.    D.C. Code §26-1151.01 (7) (A) defines the term "covered loan" as

a mortgage loan, secured by property located in the District (including an open-end line of credit, but not including a mortgage loan insured or guaranteed by a state or local authority, the District of Columbia Housing Finance Agency, the Federal Housing Administration, or the Department of Veteran Affairs, or a reverse mortgage transaction), in which the terms of the mortgage loan exceed one or more of the following thresholds:

   (i)  The loan is secured by a first mortgage on the borrower's principal dwelling and the annual percentage rate at closing will exceed by more than 6 percentage points the yield on United States Treasury securities having comparable periods of maturity to the loan maturity measured as of the 15th day of the month immediately preceding the month in which the application for the residential mortgage loan is received by the creditor;

   (ii)  The loan is secured by a junior mortgage on the borrower's principal dwelling and the annual percentage rate at closing will exceed by more than 7 percentage points the yield on United States Treasury securities having comparable periods of maturity to the loan maturity measured as of the 15th day of the month immediately preceding the month in which the application for the residential mortgage loan is received by the creditor; or

   (iii)  The origination/discount points and fees payable by the borrower at or before loan closing exceed 5% of the total loan amount.

183. At all relevant times, Defendant Urban Title Services, Inc. and Defendant Kenney were "lenders," as defined in D.C. Code §26-1151.01 (11), who entered into a conspiracy in which they extended a "covered loan" to Plaintiff Juergens that violated D.C. Code §26-1151.01, et seq by

   A.  failing to send Plaintiff Juergens a "Red Flag Warning Disclosure Notice" at least three business days prior to the closing of the loan in violation of D.C. Code §26-1152.11; and

   B.  failing to advise Plaintiff Juergens of her right to obtain counseling in connection with the loan, in violation of D.C. Code §26-1152.19.

184. As a direct and proximate result of Defendant Urban Title Services, Inc., Defendant Kenney and Defendant Carney's violations of D.C. Code §26-1151.01, et seq., Plaintiff Juergens suffered damages, including, but not limited to, the loss of the use of the funds unlawfully converted by Defendant Kenney and Defendant Carney.

185.    D.C. Code §26-1153.01 provides a civil remedy for violation of D.C. Code §26-1151.01, et seq. including

    a.    Reformation of the "covered loan" to correct or remove an unfair term or a term obtained in violation of D.C. Code §26-1151.02;

    b.    Actual damages;

    c.    Injunctive relief;

    d.    Reasonable attorneys' fees and costs; and

    e.    Statutory damages.

186.    Since Defendant Urban Title Services, Inc., Defendant Kenney and Defendant Carney engaged in a "systematic pattern of practices" and acted in violation of D.C. Code §26-1151.02 and subchapter II of D.C. Code §26-1152.01, et seq., Plaintiff Juergens is entitled to statutory damages pursuant to D.C. Code §26-1153.01 (c) (5).

    WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $1,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, attorneys' fees, interest and court costs and also declaring Defendant Urban Title Services, Inc.'s loan to Plaintiff Juergens to be null and void, against Defendant Urban Title Services, Inc. and Defendant William Kenney a/k/a "Bill Kenney," jointly and severally, as well as any other relief required in the interest of justice.

### Count XII – Violation of D.C. Code §28-3904 (e, f, q and r) (Unlawful Trade Practice Act) (Defendant Urban Title Services, Inc. and Defendant Kenney)

187.    The allegations contained in Paragraphs 1-45 of the instant Complaint are incorporated herein as if fully stated.

188.    Pursuant to D.C. Code §28-3901 (2), Plaintiff Juergens was a "consumer" at all relevant times.

189.    Pursuant to D.C. Code §28-3901 (3), Defendant Urban Title Services, Inc. and Defendant Kenney were "merchants" at all relevant times.

190.    Pursuant to D.C. Code §28-3901 (7), the loan that Defendant Urban Title Services, Inc., and Defendant Kenney extended to Plaintiff Juergens was a "good" or a "service."

191.    Defendant Urban Title Services, Inc. and Defendant Kenney violated D.C. Code §28-3904 (e) by misrepresenting a material fact that had a tendency to mislead Plaintiff Juergens, specifically, that Plaintiff Juergens would receive, as proceeds of the loan, approximately $52,000.00 at closing, less reasonable settlement costs.

192.    Defendant Urban Title Services, Inc. and Defendant Kenney violated D.C. Code §28-3904 (f) by failing to state a material fact if such failure tends to mislead, specifically that Plaintiff Juergens would not receive, as proceeds of the loan, all that Defendant Urban Title Services, Inc. and Defendant Kenney promised Plaintiff Juergens that she would receive.

193.    Defendant Urban Title Services, Inc. and Defendant Kenney violated D.C. Code §28-3904 (q) by failing to supply Plaintiff Juergens with a copy of her alleged indebtedness.

194.    Defendant Urban Title Services, Inc. and Defendant Kenney's misrepresentations of material facts, or alternatively, their failure to state material facts, were made with knowledge that they were false, or alternatively, that the omission would create a false understanding in Plaintiff Juergens' mind.

195.    Plaintiff Juergens justifiably relied on Defendant Urban Title Services, Inc. and Defendant Kenney's misrepresentations and/or failures to state material facts when she entered into the $60,000.00 loan.

196.    Defendant Urban Title Services, Inc. and Defendant Kenney's conduct and actions with regard to Plaintiff Juergens' loan constitutes "unfair and deceptive practices" within the meaning set forth in D.C. Code §28-3901, et seq.

197.    Defendant Urban Title Services, Inc., Defendant Kenney and Defendant Carney each agreed, explicitly or tacitly, to participate with other Defendants in the acts alleged above, and their acts were in furtherance of a common scheme to wrongfully divest Plaintiff Juergens of the use of the expected proceeds from her $60,000.00 loan for Defendants' financial gain.

198.    Each of the Defendants' acts alleged above aided the other Defendants, and was in furtherance of a common scheme to wrongfully divest Plaintiff Juergens of the use of the expected proceeds from her $60,000.00 loan for Defendants' financial gain.

199.    As a direct and proximate result of Defendant Urban Title Services, Inc. and Defendant Kenney's violations of D.C. Code §28-3901, et seq., Plaintiff Juergens suffered damages, including, but not limited to, the loss of the use of the funds that Plaintiff Juergens paid as fees, charges and expenses in connection with the Urban Title Services, Inc. loan, the loss of funds that Plaintiff Juergens used to pay a higher interest rate than that allowed by law, the loss of funds that Plaintiff Juergens used to repay all or part of the Urban Title Services, Inc. loan, the loss of the use of the funds that Plaintiff Juergens might be obligated to repay in the future to Urban Title Services, Inc. or the George Owen Trust in connection with the Urban Title Services, Inc. loan and harm to Plaintiff Juergens' credit rating.

200.    Defendant Urban Title Services, Inc. and Defendant Kenney's violations of D.C. Code §28-3901, et seq. were intentional, willful and wanton, and justify the imposition of treble and punitive damages.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $1,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, attorneys' fees, interest and court costs and also declaring Defendant Urban Title Services, Inc.'s loan to Plaintiff Juergens to be null and void, against Defendant Urban Title Services, Inc. and Defendant William Kenney a/k/a "Bill Kenney," jointly and severally, as well as any other relief required in the interest of justice.

### Count XIII – Violation D.C. Code §28-4601, et seq.
### (Consumer Credit Service Organization Act)
### (Defendant Urban Title Services, Inc. and Defendant Kenney)

201.    The allegations contained in Paragraphs 1-45 of the instant Complaint are incorporated herein as if fully stated.

202.    Pursuant to D.C. Code §28-4601 (1), Plaintiff Juergens was a "consumer" at all relevant times since she was solicited to purchased or actually purchased the services of a consumer credit service organization.

203.    Pursuant to D.C. Code §28-4601 (2), Defendant Urban Title Services, Inc. and Defendant Kenney were both a "consumer credit service organization" at all relevant times since they sold, provided, performed or represented that they sold, provided or performed, in return for the payment of money or other valuable consideration,

    A.    an extension of credit for Plaintiff Juergens and

    B.    advice or assistance to Plaintiff Juergens regarding any matter related to her personal, household or family credit.

204.    Defendant Urban Title Services, Inc. and Defendant Kenney both violated D.C. Code §28-4601, et seq. by making and using false and misleading representations, failing to disclose material facts, and directly or indirectly engaging in acts and in a course of business to defraud or

43

deceive Plaintiff Juergens in violation of D.C. Code §28-4603 (4), with respect to the $60,000.00 loan.

205.    As a direct and proximate result of Defendant Urban Title Services, Inc. and Defendant Kenney's violations of D.C. Code §28-4601, et seq., Plaintiff Juergens suffered damages, including, but not limited to, the loss of the use of the funds that Plaintiff Juergens paid as fees, charges and expenses in connection with the Urban Title Services, Inc. loan, the loss of funds that Plaintiff Juergens used to pay a higher interest rate than that allowed by law, the loss of funds that Plaintiff Juergens used to repay all or part of the Urban Title Services, Inc. loan, the loss of the use of the funds that Plaintiff Juergens might be obligated to repay in the future to Urban Title Services, Inc. or the George Owen Trust in connection with the Urban Title Services, Inc. loan and harm to Plaintiff Juergens' credit rating.

206.    Defendant Urban Title Services, Inc. and Defendant Kenney's violations of D.C. Code §28-4601, et seq. were intentional, willful and wanton, and justify the imposition of treble and punitive damages and an award of attorneys' fees pursuant to D.C. Code §28-4607 (c).

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $1,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, attorneys' fees, interest and court costs and also declaring Defendant Urban Title Services, Inc.'s loan to Plaintiff Juergens to be null and void, against Defendant Urban Title Services, Inc. and Defendant William Kenney a/k/a "Bill Kenney," jointly and severally, as well as any other relief required in the interest of justice.

## Count XIV – Respondeat Superior
### (Defendant Carney)

207.    The allegations contained in Paragraphs 1-45 and 116-206 of the instant Complaint are incorporated herein as if fully stated.

208.    At all relevant times, Defendant Erb was the agent, servant or employee of Defendant Carney who was acting within the scope of his employment.

209.    Therefore, under the doctrine of respondeat superior, Defendant Carney is responsible for Defendant Erb's tortuous conduct.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $1,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, attorneys' fees, interest and court costs and also declaring Defendant Urban Title Services, Inc.'s loan to Plaintiff Juergens to be null and void, against Robert William Carney as well as any other relief required in the interest of justice.

## Count XV – Respondeat Superior
### (Defendant Kenney)

210.    The allegations contained in Paragraphs 1-45 and 116-209 of the instant Complaint are incorporated herein as if fully stated.

211.    At all relevant times, Defendant Carney and Defendant Erb were the agents, servants or employees of Defendant Kenney who was acting within the scope of their employment.

212.    Therefore, under the doctrine of respondeat superior, Defendant Kenney is responsible for Defendant Carney and Defendant Erb's tortuous conduct.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $1,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, attorneys' fees, interest and court costs and also declaring Defendant Urban Title Services, Inc.'s loan to Plaintiff Juergens to be null and void, against William Kenney a/k/a "Bill Kenney" as well as any other relief required in the interest of justice.

## Count XVI – Respondeat Superior
## (Defendant Urban Title Services, Inc.)

213.    The allegations contained in Paragraphs 1-45 and 116-212 of the instant Complaint are incorporated herein as if fully stated.

214.    At all relevant times, Defendant Kenney, Defendant Carney and Defendant Erb were the agents, servants or employees of Defendant Urban Title Services, Inc. who was acting within the scope of their employment.

215.    Therefore, under the doctrine of respondeat superior, Defendant Urban Title Services, Inc. is responsible for Defendant Kenney, Defendant Carney and Defendant Erb's tortuous conduct.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $1,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, attorneys' fees, interest and court costs and also declaring Defendant Urban Title Services, Inc.'s loan to Plaintiff Juergens to be null and void, against Defendant Urban Title Services, Inc. as well as any other relief required in the interest of justice.

## Count XVII – Set Aside Deeds and Deed of Trust, Quiet Title and Declaratory Relief
## (Defendant Urban Title Services, Inc., Defendant Kenney and Defendant Carney)

216.    The allegations contained in Paragraphs 1-45 and 116-215 of the instant Complaint are incorporated herein as if fully stated.

217.    Defendant Urban Title Services, Inc., Defendant Kenney and Defendant Carney extended a loan to Plaintiff Juergens through fraud and without the formalities required for a lawful deed transfer or loan document.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order against Defendant Urban Title Services, Inc., Defendant Kenney and Defendant

Carney declaring the loan documents associated with Defendant Urban Title Services, Inc.'s $60,000.00 loan to Plaintiff Juergens referenced in the instant Complaint *void ab initio*, and declaring that Plaintiff Juergens' 1230 23rd Street, N.W., Apt. 505 property is free and clear of any mortgage or other encumbrance on her property and quieting title to the 1230 23rd Street, N.W., Apt. 505 property in Plaintiff Juergens' name.

<div align="center">

**Count XVIII – Injunctive Relief**
**(Defendant Urban Title Services, Inc., Defendant Kenney and Defendant Carney)**

</div>

218.    The allegations contained in Paragraphs 1-45 and 116-217 of the instant Complaint are incorporated herein as if fully stated.

219.    As previously described, Defendant Urban Title Services, Inc., Defendant Kenney and Defendant Carney have conspired and perpetrated a scheme through which they have extended a loan to Plaintiff Juergens through fraud and without the formalities required for a lawful deed transfer or loan document.

220.    Because Defendants' actions involve Plaintiff Juergens' home, there may not be any adequate remedy at law.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order permanently enjoining

A.    Defendant Urban Title Services, Inc., Defendant Kenney and Defendant Carney from conveying, borrowing against, or otherwise encumbering Plaintiff Juergens' property located at 1230 23rd Street, N.W., Apt. 505 in order to prevent a further cloud on the title to this property;

B.    enjoining Defendant Urban Title Services, Inc., Defendant Kenney and Defendant Carney from instituting any foreclosure or eviction proceedings with

respect to Plaintiff Juergens' property located at 1230 23rd Street, N.W., Apt. 505; and

C.      enjoining anyone who received any legal or equitable interest in Plaintiff Juergens' property located at 1230 23rd Street, N.W., Apt. 505 from Defendant Urban Title Services, Inc., Defendant Kenney or Defendant Carney from further conveyance, encumbrance or similar transaction involving this property, including any foreclosure or eviction proceedings;

and also enter an Order

A.      enforcing Plaintiff Juergens' rescission rights with respect to Defendant Urban Title Services, Inc.'s loan to Plaintiff Juergens concerning the property located at 1230 23rd Street, N.W., Apt. 505;

B.      voiding Defendant Urban Title Services, Inc.'s loan to Plaintiff Juergens loan concerning the property located at 1230 23rd Street, N.W., Apt. 505; and

C.      granting any further relief as the Court deems just and proper.

### Count XIX – Demand for an Accounting
### (Defendant Urban Title Services, Inc., Defendant Kenney and Defendant Carney)

221.    The allegations contained in Paragraphs 1-45 and 116-221 of the instant Complaint are incorporated herein as if fully stated.

222.    As previously described, Defendant Urban Title Services, Inc., Defendant Kenney and Defendant Carney have conspired and perpetrated a scheme through which they have extended a loan to Plaintiff Juergens through fraud and without the formalities required for a lawful deed transfer or loan document.

48

223.    Because Defendants' have converted funds belonging to Plaintiff Juergens with respect to her loan, Plaintiff Juergens does not have any way to account for the payments and/or disbursals made with respect to this loan.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order requiring Defendant Urban Title Services, Inc., Defendant Kenney and Defendant Carney to provide an accounting of all funds disbursed or received with regard to the loan to Plaintiff Juergens and granting any further relief as the Court deems just and proper.

### Count XX – Breach of Contract
### (First Mount Vernon Defendants)

224.    The allegations contained in Paragraphs 1-14 and 46-115 of the instant Complaint are incorporated herein as if fully stated.

225.    Plaintiff Juergens entered into a contract with the First Mount Vernon Defendants whereby the First Mount Vernon Defendants agreed to provide a $250,000.00 loan to Plaintiff Juergens in order for her to pay off her loan to the George Owen Trust in the amount of approximately $60,000.00 (plus accrued interest) and for her to take the remainder of the loan proceeds (less reasonable settlement charges) as cash.

226.    The contract that Plaintiff Juergens entered into with the First Mount Vernon Defendants was a contract to provide a personal consumer residential loan, not a commercial loan.

227.    The First Mount Vernon Defendants breached this contract by not providing the full proceeds of this $250,000.00 loan to Plaintiff Juergens, but rather only paying off some of the $60,000.00 George Owen Trust loan and providing Plaintiff Juergens with a check in the amount of approximately $95,000.00, leaving approximately $95,000.00 still due Plaintiff Juergens from the proceeds of the loan.

228.    The First Mount Vernon Defendants also breached this contract by failing to provide a personal consumer residential loan to Plaintiff Juergens.

229.    Furthermore, the First Mount Vernon Defendants fraudulently disguised the loan to Plaintiff Juergens as a commercial loan rather than, what was in reality, a residential refinancing loan in order to charge Plaintiff Juergens a higher rate of interest and to circumvent District of Columbia mortgage, consumer and fair lending laws.

230.    As a direct and proximate result of the First Mount Vernon Defendants' breaches of its contract, Plaintiff Juergens suffered damages, including, but not limited to, the loss of the use of the funds that Plaintiff Juergens paid as fees, charges and expenses in connection with the First Mount Vernon loan, the loss of funds that Plaintiff Juergens used to pay a higher interest rate than that allowed by law, the loss of funds that Plaintiff Juergens used to repay all or part of the First Mount Vernon loan, the loss of the use of the funds that Plaintiff Juergens might be obligated to repay in the future to the First Mount Vernon Defendants in connection with the First Mount Vernon loan and harm to Plaintiff Juergens' credit rating.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $1,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, attorneys' fees, interest and court costs and also declaring the First Mount Vernon Defendants' loan to Plaintiff Juergens to be null and void, against Defendant First Mount Vernon Industrial Loan Association Incorporated and Defendant First Mount Vernon Mortgage, L.L.C., jointly and severally, as well as any other relief required in the interest of justice.

### Count XXI – Breach of Contract
### (Defendant Brickshire Settlements, LLC)

231.    The allegations contained in Paragraphs 1-14 and 46-115 of the instant Complaint are incorporated herein as if fully stated.

232.    Plaintiff Juergens contracted with Defendant Brickshire Settlements, LLC whereby the Defendant Brickshire Settlements, LLC agreed to act as the settlement agent on the First Mount Vernon Defendants' loan to Plaintiff Juergens.

233.    This contract required Defendant Brickshire Settlements, LLC to disburse the proceeds of this loan according to the terms of the loan upon Plaintiff Juergens' approval.

234.    This contract required Defendant Brickshire Settlements, LLC to refrain from placing any proceeds of the loan in any escrow type account without an explicit escrow agreement with Plaintiff Juergens.

235.    This contract required Defendant Brickshire Settlements, LLC to obtain a pay off amount for Plaintiff Juergens' loan from the George Owen Trust , and pay off only the amount due.

236.    This contract required Defendant Brickshire Settlements, LLC to remit all proceeds of the loan to Plaintiff Juergens after the pay off of the George Owen Trust and the payment of all reasonable charges and fees.

237.    This contract required Defendant Brickshire Settlements, LLC to provide an accounting for all funds disbursed at the settlement of First Mount Vernon Defendants' loan to Plaintiff Juergens.

238.    This contract required Defendant Brickshire Settlements, LLC to ensure that the loan documents associated with First Mount Vernon Defendants' loan to Plaintiff Juergens complied with all legal formalities regarding the notarization of documents.

239.    This contract required Defendant Brickshire Settlements, LLC to record documents associated with Plaintiff Juergens' loan with the District of Columbia Recorder of Deeds only after these documents are found to be properly executed and notarized.

240.    Defendant Brickshire Settlements, LLC breached its contract with Plaintiff Juergens by failing to disburse the proceeds of this loan according to the terms of the loan upon Plaintiff Juergens' approval.

241.    Defendant Brickshire Settlements, LLC breached its contract with Plaintiff Juergens by failing to obtain a pay off amount for Plaintiff Juergens' loan from the George Owen Trust, and paying off more than the amount due.

242.    Defendant Brickshire Settlements, LLC breached its contract with Plaintiff Juergens by failing to remit all proceeds of the loan to Plaintiff Juergens after the pay off of the George Owen Trust and the payment of all reasonable charges and fees.

243.    Defendant Brickshire Settlements, LLC breached its contract with Plaintiff Juergens by failing to provide an accounting for all funds disbursed at the settlement of First Mount Vernon Defendants' loan to Plaintiff Juergens.

244.    Defendant Brickshire Settlements, LLC breached its contract with Plaintiff Juergens by failing to ensure that the loan documents associated with First Mount Vernon Defendants' loan to Plaintiff Juergens complied with all legal formalities regarding the notarization of documents.

245.    Defendant Brickshire Settlements, LLC breached its contract with Plaintiff Juergens by failing to record documents associated with Plaintiff Juergens' loan with the District of Columbia Recorder of Deeds only after these documents are found to be properly executed and notarized.

246.    Assuming arguendo that Plaintiff Juergens did, in fact, sell her property to the "1230 23rd Street, LLC," for $200,000.00 as purportedly evidenced by the Deed dated August 31, 2007 [Exhibit 7], Defendant Brickshire Settlements, LLC had the duty to properly account for the proceeds of this sale on the HUD-1 regarding the First Mount Vernon Defendants' loan to

Plaintiff Juergens, but breached this duty by failing to remit the proceeds of such alleged sale to Plaintiff Juergens or otherwise account for such proceeds of this alleged sale.

247.    As a direct and proximate result of Defendant Brickshire Settlements, LLC's breach of its contract with Plaintiff Juergens, Plaintiff Juergens' suffered damages, including, but not limited to, the loss of the use of the funds that Plaintiff Juergens paid as fees, charges and expenses in connection with the First Mount Vernon loan, the loss of funds that Plaintiff Juergens used to pay a higher interest rate than that allowed by law, the loss of funds that Plaintiff Juergens used to repay all or part of the First Mount Vernon loan, the loss of the use of the funds that Plaintiff Juergens might be obligated to repay in the future to the First Mount Vernon Defendants in connection with the First Mount Vernon loan and harm to Plaintiff Juergens' credit rating.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $1,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, attorneys' fees, interest and court costs and also declaring the First Mount Vernon Defendants' loan to Plaintiff Juergens to be null and void, against Defendant Brickshire Settlements, LLC, as well as any other relief required in the interest of justice.

## Count XXII – Breach of Fiduciary Duty
## (Defendant Brickshire Settlements, LLC)

248.    The allegations contained in Paragraphs 1-14 and 46-115 of the instant Complaint are incorporated herein as if fully stated.

249.    Plaintiff Juergens contracted with Defendant Brickshire Settlements, LLC whereby the Defendant Brickshire Settlements, LLC agreed to act as the settlement agent on the First Mount Vernon Defendants' loan to Plaintiff Juergens.

250.    As a result of this contract, a fiduciary relationship was established with regard to the funds associated with Plaintiff Juergens' loan.

251.     Pursuant to this fiduciary relationship, Defendant Brickshire Settlements, LLC owed a duty of care to Plaintiff Juergens to disburse the proceeds of this loan according to the terms of the loan upon Plaintiff Juergens' approval.

252.     Defendant Brickshire Settlements, LLC owed a duty of care to Plaintiff Juergens to refrain from placing any proceeds of the loan in any escrow type account without an explicit escrow agreement with Plaintiff Juergens.

253.     Defendant Brickshire Settlements, LLC owed a duty of care to Plaintiff Juergens to obtain a pay off amount for Plaintiff Juergens' loan from the George Owen Trust , and pay off only the amount due.

254.     Defendant Brickshire Settlements, LLC owed a duty of care to Plaintiff Juergens to remit all proceeds of the loan to Plaintiff Juergens after the pay off of the George Owen Trust and the payment of all reasonable charges and fees.

255.     Defendant Brickshire Settlements, LLC owed a duty of care to Plaintiff Juergens to provide an accounting for all funds disbursed at the settlement of First Mount Vernon Defendants' loan to Plaintiff Juergens.

256.     Defendant Brickshire Settlements, LLC owed a duty of care to Plaintiff Juergens to ensure that the loan documents associated with First Mount Vernon Defendants' loan to Plaintiff Juergens complied with all legal formalities regarding the notarization of documents.

257.     Defendant Brickshire Settlements, LLC owed a duty of care to Plaintiff Juergens to record documents associated with Plaintiff Juergens' loan with the District of Columbia Recorder of Deeds only after these documents are found to be properly executed and notarized.

258.    Defendant Brickshire Settlements, LLC violated its fiduciary relationship with Plaintiff Juergens by failing to disburse the proceeds of this loan according to the terms of the loan upon Plaintiff Juergens' approval.

259.    Defendant Brickshire Settlements, LLC violated its fiduciary relationship with Plaintiff Juergens by failing to obtain a pay off amount for Plaintiff Juergens' loan from the George Owen Trust, and paying off more than the amount due.

260.    Defendant Brickshire Settlements, LLC violated its fiduciary relationship with Plaintiff Juergens by failing to remit all proceeds of the loan to Plaintiff Juergens after the pay off of the George Owen Trust and the payment of all reasonable charges and fees.

261.    Defendant Brickshire Settlements, LLC violated its fiduciary relationship with Plaintiff Juergens by failing to provide an accounting for all funds disbursed at the settlement of First Mount Vernon Defendants' loan to Plaintiff Juergens.

262.    Defendant Brickshire Settlements, LLC violated its fiduciary relationship with Plaintiff Juergens by failing to ensure that the loan documents associated with First Mount Vernon Defendants' loan to Plaintiff Juergens complied with all legal formalities regarding the notarization of documents.

263.    Defendant Brickshire Settlements, LLC violated its fiduciary relationship with Plaintiff Juergens by failing to record documents associated with Plaintiff Juergens' loan with the District of Columbia Recorder of Deeds only after these documents are found to be properly executed and notarized.

264.    Assuming arguendo that Plaintiff Juergens did, in fact, sell her property to the "1230 23rd Street, LLC," for $200,000.00 as purportedly evidenced by the Deed dated August 31, 2007 [Exhibit 7], Defendant Brickshire Settlements, LLC owed Plaintiff Juergens a fiduciary duty to

properly account for the proceeds of this sale on the HUD-1 regarding the First Mount Vernon Defendants' loan to Plaintiff Juergens, but violated this fiduciary relationship by failing to remit the proceeds of such alleged sale to Plaintiff Juergens or otherwise account for such proceeds of this alleged sale.

265.     As a direct and proximate result of Defendant Brickshire Settlements, LLC's violation of its fiduciary relationship with Plaintiff Juergens, Plaintiff Juergens' suffered damages, including, but not limited to, the loss of the use of the funds that Plaintiff Juergens paid as fees, charges and expenses in connection with the First Mount Vernon loan, the loss of funds that Plaintiff Juergens used to pay a higher interest rate than that allowed by law, the loss of funds that Plaintiff Juergens used to repay all or part of the First Mount Vernon loan, the loss of the use of the funds that Plaintiff Juergens might be obligated to repay in the future to the First Mount Vernon Defendants in connection with the First Mount Vernon loan and harm to Plaintiff Juergens' credit rating.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $1,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, attorneys' fees, interest and court costs and also declaring the First Mount Vernon Defendants' loan to Plaintiff Juergens to be null and void, against Defendant Brickshire Settlements, LLC, as well as any other relief required in the interest of justice.

### Count XXIII – Negligence
### (Defendant Brickshire Settlements, LLC)

266.     The allegations contained in Paragraphs 1-14 and 46-115 of the instant Complaint are incorporated herein as if fully stated.

267.    Plaintiff Juergens contracted with Defendant Brickshire Settlements, LLC whereby the Defendant Brickshire Settlements, LLC agreed to act as the settlement agent on the First Mount Vernon Defendants' loan to Plaintiff Juergens.

268.    As a result of this contract, Defendant Brickshire Settlements, LLC owed certain duties toward Plaintiff Juergens with regard to the funds associated with Plaintiff Juergens' loan.

269.    Defendant Brickshire Settlements, LLC owed a duty of care to Plaintiff Juergens to disburse the proceeds of this loan according to the terms of the loan upon Plaintiff Juergens' approval.

270.    Defendant Brickshire Settlements, LLC owed a duty of care to Plaintiff Juergens to refrain from placing any proceeds of the loan in any escrow type account without an explicit escrow agreement with Plaintiff Juergens.

271.    Defendant Brickshire Settlements, LLC owed a duty of care to Plaintiff Juergens to obtain a pay off amount for Plaintiff Juergens' loan from the George Owen Trust , and pay off only the amount due.

272.    Defendant Brickshire Settlements, LLC owed a duty of care to Plaintiff Juergens to remit all proceeds of the loan to Plaintiff Juergens after the pay off of the George Owen Trust and the payment of all reasonable charges and fees.

273.    Defendant Brickshire Settlements, LLC owed a duty of care to Plaintiff Juergens to provide an accounting for all funds disbursed at the settlement of First Mount Vernon Defendants' loan to Plaintiff Juergens.

274.    Defendant Brickshire Settlements, LLC owed a duty of care to Plaintiff Juergens to ensure that the loan documents associated with First Mount Vernon Defendants' loan to Plaintiff Juergens complied with all legal formalities regarding the notarization of documents.

275.    Defendant Brickshire Settlements, LLC owed a duty of care to Plaintiff Juergens to record documents associated with Plaintiff Juergens' loan with the District of Columbia Recorder of Deeds only after these documents are found to be properly executed and notarized.

276.    Defendant Brickshire Settlements, LLC was negligent and violated the duty of care it owed to Plaintiff Juergens by failing to disburse the proceeds of this loan according to the terms of the loan upon Plaintiff Juergens' approval.

277.    Defendant Brickshire Settlements, LLC was negligent and violated the duty of care it owed to Plaintiff Juergens by failing to obtain a pay off amount for Plaintiff Juergens' loan from the George Owen Trust, and paying off more than the amount due.

278.    Defendant Brickshire Settlements, LLC was negligent and violated the duty of care it owed to Plaintiff Juergens by failing to remit all proceeds of the loan to Plaintiff Juergens after the pay off of the George Owen Trust and the payment of all reasonable charges and fees.

279.    Defendant Brickshire Settlements, LLC was negligent and violated the duty of care it owed to Plaintiff Juergens by failing to provide an accounting for all funds disbursed at the settlement of First Mount Vernon Defendants' loan to Plaintiff Juergens.

280.    Defendant Brickshire Settlements, LLC was negligent and violated the duty of care it owed to Plaintiff Juergens by failing to ensure that the documents associated with First Mount Vernon Defendants' loan to Plaintiff Juergens complied with all legal formalities regarding the notarization of documents.

281.    Defendant Brickshire Settlements, LLC was negligent and violated the duty of care it owed to Plaintiff Juergens by allowing an individual who was not a licensed notary public to notarize the documents associated with First Mount Vernon Defendants' loan to Plaintiff Juergens.

282.    Defendant Brickshire Settlements, LLC was negligent and violated the duty of care it owed to Plaintiff Juergens by failing to record documents associated with Plaintiff Juergens' loan with the District of Columbia Recorder of Deeds only after these documents are found to be properly executed and notarized.

283.    Assuming arguendo that Plaintiff Juergens did, in fact, sell her property to the "1230 23rd Street, LLC," for $200,000.00 as purportedly evidenced by the Deed dated August 31, 2007 [Exhibit 7], Defendant Brickshire Settlements, LLC had the duty to properly account for the proceeds of this sale on the HUD-1 regarding the First Mount Vernon Defendants' loan to Plaintiff Juergens, but was negligent and breached this duty by failing to remit the proceeds of such alleged sale to Plaintiff Juergens or otherwise account for such proceeds of this alleged sale.

284.    As a direct and proximate result of Defendant Brickshire Settlements, LLC's negligence and violation of duties of care it owed to Plaintiff Juergens, Plaintiff Juergens' suffered damages, including, but not limited to, the loss of the use of the funds that Plaintiff Juergens paid as fees, charges and expenses in connection with the First Mount Vernon loan, the loss of funds that Plaintiff Juergens used to pay a higher interest rate than that allowed by law, the loss of funds that Plaintiff Juergens used to repay all or part of the First Mount Vernon loan, the loss of the use of the funds that Plaintiff Juergens might be obligated to repay in the future to the First Mount Vernon Defendants in connection with the First Mount Vernon loan and harm to Plaintiff Juergens' credit rating.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $1,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, attorneys' fees, interest and court costs and also declaring the First Mount

Vernon Defendants' loan to Plaintiff Juergens to be null and void, against Defendant Brickshire Settlements, LLC, as well as any other relief required in the interest of justice.

### Count XXIV – Conversion
### (First Mount Vernon Defendants, Defendant Duncan, Defendant Bennett and Defendant Brickshire Settlements, LLC )

285.    The allegations contained in Paragraphs 1-14 and 46-115 of the instant Complaint are incorporated herein as if fully stated.

286.    The contract between the First Mount Vernon Defendants and Plaintiff Juergens provided that Plaintiff Juergens would receive approximately $190,000.00 in cash at closing on the First Mount Vernon Defendants' $250,000.00 loan to Plaintiff Juergens after the pay off of Plaintiff Juergens' $60,000 loan from the George Owen Trust.

287.    In settling on this loan, Defendant Duncan and Defendant Bennett acted as the agents, servants or employees of both the First Mount Vernon Defendants, the lender, and Defendant Brickshire Settlements, LLC, the settlement agent.

288.    Rather than remitting $190,000.00 to Plaintiff Juergens in cash at closing on the First Mount Vernon Defendants' $250,000.00 loan to Plaintiff Juergens, the First Mount Vernon Defendants, Defendant Duncan, Defendant Bennett and Defendant Brickshire Settlements, LLC only remitted half this amount - $95,000.00 without providing any accounting for the remaining $95,000.00 that Plaintiff Juergens was due pursuant to her contract with the First Mount Vernon Defendants.

289.    The First Mount Vernon Defendants, Defendant Duncan, Defendant Bennett and Defendant Brickshire Settlements, LLC also had a duty to pay off only that part of the George Owen Trust's loan to Plaintiff Juergens that was due and payable.

290.    Rather than paying off only that part of the George Owen Trust's loan to Plaintiff Juergens that was due and payable, the First Mount Vernon Defendants, Defendant Duncan, Defendant Bennett and Defendant Brickshire Settlements, LLC, upon information and belief, remitted more than Plaintiff Juergens owed to the George Owen Trust.

291.    Rather than remitting $190,000.00 to Plaintiff Juergens in cash at closing on the First Mount Vernon Defendants' $250,000.00 loan to Plaintiff Juergens, the First Mount Vernon Defendants, Defendant Duncan, Defendant Bennett and Defendant Brickshire Settlements, LLC allocated much of the $190,000.00 due Plaintiff Juergens to miscellaneous fees, charges, and escrow accounts without permission from Plaintiff Juergens and without an accounting of these funds.

292.    Assuming arguendo that Plaintiff Juergens did, in fact, sell her property to the "1230 23rd Street, LLC," for $200,000.00 as purportedly evidenced by the Deed dated August 31, 2007 [Exhibit 7], the First Mount Vernon Defendants, Defendant Duncan, Defendant Bennett and Defendant Brickshire Settlements, LLC had the duty to properly account for the proceeds of this sale on the HUD-1 regarding the First Mount Vernon Defendants' loan to Plaintiff Juergens, but breached this duty by failing to remit the proceeds of such alleged sale to Plaintiff Juergens or otherwise account for such proceeds of this alleged sale.

293.    The First Mount Vernon Defendants, Defendant Duncan, Defendant Bennett and Defendant Brickshire Settlements, LLC 's retention of some of the proceeds of the $250,000.00 loan (after subtracting legitimate and authorized charges and payments) was an unlawful exercise of ownership, dominion and control over Plaintiff Juergens' personalty in denial or repudiation of Plaintiff Juergens' right to such property.

294.    As a direct and proximate result of this conversion, Plaintiff Juergens' suffered damages, including, but not limited to, the loss of the use of the funds that Plaintiff Juergens paid as fees, charges and expenses in connection with the First Mount Vernon loan, the loss of funds that Plaintiff Juergens used to pay a higher interest rate than that allowed by law, the loss of funds that Plaintiff Juergens used to repay all or part of the First Mount Vernon loan, the loss of the use of the funds that Plaintiff Juergens might be obligated to repay in the future to the First Mount Vernon Defendants in connection with the First Mount Vernon loan and harm to Plaintiff Juergens' credit rating.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $1,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, attorneys' fees, interest and court costs and also declaring the First Mount Vernon Defendants' loan to Plaintiff Juergens to be null and void, against Defendant First Mount Vernon Industrial Loan Association Incorporated, Defendant First Mount Vernon Mortgage, L.L.C. and Defendant Dale E. Duncan, Defendant Arthur G. Bennett, and Defendant Brickshire Settlements, LLC, jointly and severally, as well as any other relief required in the interest of justice.

### Count XXV – Fraud
### (First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett)

295.    The allegations contained in Paragraphs 1-14 and 46-115 of the instant Complaint are incorporated herein as if fully stated.

296.    In their dealings with Plaintiff Juergens at the offices of the First Mount Vernon Defendants in early-August 2005 and again in the days leading up to the settlement on the First Mount Vernon Defendants' loan on August 31, 2005, the First Mount Vernon Defendants' agents, servants and employees, Defendant Duncan and Defendant Bennett made numerous false

representations to Plaintiff Juergens, included, but not limited to statements that the First Mount Vernon Defendants would extend a $250,000.00 personal residential refinance loan to Plaintiff Juergens concerning the condominium unit that she lived in and that Plaintiff Juergens would receive cash in the amount of approximately $190,000.00 at closing, after the pay off of the George Owen Trust loan in the amount of approximately $60,000.00 and after the payment of reasonable settlement costs.

297.    The First Mount Vernon Defendants' agents, servants and employees, Defendant Duncan and Defendant Bennett prepared documents associated with this loan that falsely stated that Plaintiff Juergens would move out of her condominium unit and rent the unit to a third party even though Defendant Duncan and Defendant Bennett knew that Plaintiff Juergens would not move out of the unit or rent the unit to a third party.

298.    The First Mount Vernon Defendants' agents, servants and employees, Defendant Duncan and Defendant Bennett prepared documents associated with this loan that falsely stated that Plaintiff Juergens lived or worked in the Commonwealth of Virginia so that she could serve as the registered agent of "1230 23rd Street, LLC" even though Defendant Duncan and Defendant Bennett knew that Plaintiff Juergens neither lived nor worked in the Commonwealth of Virginia.

299.    At the actual settlement on the loan, the First Mount Vernon Defendants' agents, servants and employees, Defendant Duncan and Defendant Bennett presented loan documents to Plaintiff Juergens without informing her that these documents would result in the sale of her property to the "1230 23rd Street, LLC" and that the loan was a commercial as opposed to a residential loan.

300.    Defendant Duncan and Defendant Bennett's false representations concerned material facts, specifically, the true nature of the $250,000.00 loan to Plaintiff Juergens as a commercial

loan as opposed to a personal residential loan and the amount that Plaintiff Juergens would receive at closing from the proceeds of the loan.

301.    Defendant Duncan and Defendant Bennett made the false representations that the loan to be issued to Plaintiff Juergens was personal residential loan and that Plaintiff Juergens would receive cash in the amount of approximately $190,000.00 at closing, after the pay off of the George Owen Trust loan in the amount of approximately $60,000.00 and after the payment of reasonable settlement costs with actual knowledge that these statements were false since Defendant Duncan and Defendant Bennett knew at the time that they made these statements that the First Mount Vernon Defendants would only issue a commercial loan to Plaintiff Juergens rather than a residential loan and that Plaintiff Juergens would not receive approximately $190,000.00 at closing, but rather an amount significantly lower than this amount.

302.    At the time they made these false representations to Plaintiff Juergens, it was with the intent to deceive Plaintiff Juergens into entering into the $250,000.00 loan transaction.

303.    At all relevant times, Defendant Duncan and Defendant Bennett knew that Plaintiff Juergens would not received a residential loan and that Plaintiff Juergens' cash proceeds of the loan would not be as much as they had informed Plaintiff Juergens, but Plaintiff Juergens would nevertheless rely upon the false statements in deciding whether to accept the loan or not.

304.    Plaintiff Juergens did, in fact, rely to her detriment on Defendant Duncan and Defendant Bennett's false representations when she entered into the $250,000.00 loan transaction.

305.    In furtherance of their scheme, Defendant Duncan and Defendant Bennett submitted documents associated with this loan that contained false information, including statements that Plaintiff Juergens lived in Virginia when she actually lived in Washington, DC, that Plaintiff Juergens had monthly income, when in fact, she did not, and that Plaintiff Juergens intended to

move out of her condominium unit and rent this unit to a third party when, in fact, she had no such intention.

306.    Assuming arguendo that Plaintiff Juergens did, in fact, sell her property to the "1230 23rd Street, LLC," for $200,000.00 as purportedly evidenced by the Deed dated August 31, 2007 [Exhibit 7], the First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett had the duty to properly account for the proceeds of this sale on the HUD-1 regarding the First Mount Vernon Defendants' loan to Plaintiff Juergens, but breached this duty by failing to remit the proceeds of such alleged sale to Plaintiff Juergens or otherwise account for such proceeds of this alleged sale.

307.    The fraudulent and wrongful acts committed by Defendant Duncan and Defendant Bennett on behalf of the First Mount Vernon Defendants were undertaken in furtherance of a common scheme to defraud Plaintiff Juergens and qualify her for a loan for which she would not have qualified had truthful information been provided.

308.    Furthermore, the First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett fraudulently disguised the loan to Plaintiff Juergens as a commercial loan rather than, what was in reality, a residential refinancing loan in order to circumvent District of Columbia mortgage, consumer and fair lending laws.

309.    As a direct and proximate result of the Defendant Duncan and Defendant Bennett's fraud, Plaintiff Juergens suffered damages, including, but not limited to, the loss of the use of the funds that Plaintiff Juergens paid as fees, charges and expenses in connection with the First Mount Vernon loan, the loss of funds that Plaintiff Juergens used to pay a higher interest rate than that allowed by law, the loss of funds that Plaintiff Juergens used to repay all or part of the First Mount Vernon loan, the loss of the use of the funds that Plaintiff Juergens might be obligated to

repay in the future to the First Mount Vernon Defendants in connection with the First Mount Vernon loan and harm to Plaintiff Juergens' credit rating.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $1,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, attorneys' fees, interest and court costs and also declaring the First Mount Vernon Defendants' loan to Plaintiff Juergens to be null and void, against Defendant First Mount Vernon Industrial Loan Association Incorporated, Defendant First Mount Vernon Mortgage, L.L.C. and Defendant Dale E. Duncan and Defendant Arthur G. Bennett, jointly and severally, as well as any other relief required in the interest of justice.

### Count XXVI – Civil Conspiracy
### (First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett)

310.    The allegations contained in Paragraphs 1-14 and 46-115 of the instant Complaint are incorporated herein as if fully stated.

311.    The First Mount Vernon Defendants,  Defendant Duncan and Defendant Bennett formed a conspiracy whereby Defendant Duncan and Defendant Bennett would personally entice Plaintiff Juergens into entering into a $250,000.00 loan transaction with the First Mount Vernon Defendants based upon false information about that loan conveyed to Plaintiff Juergens by Defendant Duncan and Defendant Bennett.

312.    Specifically, Defendant Duncan and Defendant Bennett, acting as the First Mount Vernon Defendants' agents, servants and employees, informed Plaintiff Juergens that the First Mount Vernon Defendants would extend a $250,000.00 personal residential refinance loan to Plaintiff Juergens concerning the condominium unit that she lived in and that Plaintiff Juergens would receive cash in the amount of approximately $190,000.00 at closing, after the pay off of the George Owen Trust loan in the amount of approximately $60,000.00 and after the payment

of reasonable settlement costs, even though Defendant Duncan and Defendant Bennett knew these statements were false.

313.   In furtherance of their scheme, Defendant Duncan and Defendant Bennett submitted documents associated with this loan that contained false information, including statements that Plaintiff Juergens lived in Virginia when she actually lived in Washington, DC, that Plaintiff Juergens had monthly income, when in fact, she did not, and that Plaintiff Juergens intended to move out of her condominium unit and rent this unit to a third party when, in fact, she had no such intention.

314.   Assuming arguendo that Plaintiff Juergens did, in fact, sell her property to the "1230 23rd Street, LLC," for $200,000.00 as purportedly evidenced by the Deed dated August 31, 2007 [Exhibit 7], the First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett had the duty to properly account for the proceeds of this sale on the HUD-1 regarding the First Mount Vernon Defendants' loan to Plaintiff Juergens, but breached this duty by failing to remit the proceeds of such alleged sale to Plaintiff Juergens or otherwise account for such proceeds of this alleged sale.

315.   The fraudulent and wrongful acts committed by Defendant Duncan and Defendant Bennett on behalf of the First Mount Vernon Defendants were undertaken in furtherance of the conspirators' common scheme to defraud Plaintiff Juergens and qualify her for a loan for which she would not have qualified had truthful information been provided.

316.   Furthermore, the First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett fraudulently disguised the loan to Plaintiff Juergens as a commercial loan rather than, what was in reality, a residential refinancing loan in order to charge her a higher rate of interest, and also to circumvent District of Columbia mortgage, consumer and fair lending laws.

317.    As a direct and proximate result of the Defendant Duncan and Defendant Bennett's fraud, Plaintiff Juergens suffered damages, including, but not limited to, the loss of the use of the funds that Plaintiff Juergens paid as fees, charges and expenses in connection with the First Mount Vernon loan, the loss of funds that Plaintiff Juergens used to pay a higher interest rate than that allowed by law, the loss of funds that Plaintiff Juergens used to repay all or part of the First Mount Vernon loan, the loss of the use of the funds that Plaintiff Juergens might be obligated to repay in the future to the First Mount Vernon Defendants in connection with the First Mount Vernon loan and harm to Plaintiff Juergens' credit rating.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $1,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, attorneys' fees, interest and court costs and also declaring the First Mount Vernon Defendants' loan to Plaintiff Juergens to be null and void, against Defendant First Mount Vernon Industrial Loan Association Incorporated, Defendant First Mount Vernon Mortgage, L.L.C. and Defendant Dale E. Duncan and Defendant Arthur G. Bennett, jointly and severally, as well as any other relief required in the interest of justice.

## Count XXVII – Violation D.C. Code §26-901, et seq.
### (Loan Shark Act)
### (First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett)

318.    The allegations contained in Paragraphs 1-14 and 46-115 of the instant Complaint are incorporated herein as if fully stated.

319.    The First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett fraudulently disguised the loan to Plaintiff Juergens as a commercial loan rather than, what was in reality, a residential refinancing loan in order to charge her a higher rate of interest, and also to circumvent District of Columbia mortgage, consumer and fair lending laws.

320.    D.C. Code §26-901, et seq., makes it "unlawful and illegal to engage in the business of loaning money in the District of Columbia upon which a rate of interest greater than 6% per annum is charged on any security of any kind, direct or collateral, tangible or intangible, without procuring license."  See D.C. Code §26-901.

321.    In addition, D.C. Code §26-905 states that every lender must "furnish the borrower a written, typewritten, or printed statement at the time the loan is made, showing, in English, in clear and distinct terms, the amount of the loan, the date when loaned and when due, the person to whom the loan is made, the name of the lender, [and] the amount of interest charged [and] shall give the borrower a plain and complete receipt for all payments made on account of the loan at the time such payments are made."

322.    D.C. Code §26-905 also states that "any person contracting, directly or indirectly, for, or receiving a greater rate of interest than that fixed in this chapter [D.C. Code §26-901, et seq.], shall forfeit all interest so contracted for or received; and in addition thereto shall forfeit to the borrower a sum of money, to be deducted from the amount due for principal, equal to one-fourth of the principal sum."

323.    D.C. Code §26-909 further states that it is "unlawful to incorporate any provision for liquidated or other damages as a penalty for any default or forfeiture thereunder."

324.    Neither the First Mount Vernon Defendants, Defendant Duncan nor Defendant Bennett furnished Plaintiff Juergens with a statement in conformity with D.C. Code §26-905 that showed "in clear and distinct terms, the amount of the loan, the date when loaned and when due, the person to whom the loan is made, the name of the lender, [or] the amount of interest charged."

325.    Neither the First Mount Vernon Defendants, Defendant Duncan nor Defendant Bennett provided Plaintiff Juergens with a "plain and complete receipt" in conformity with D.C. Code §26-905 "for all payments made on account of the loan at the time such payments are made."

326.    As a direct and proximate result of the First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett's violations of D.C. Code §26-905, Plaintiff Juergens suffered damages, including, but not limited to, the loss of the use of the funds that Plaintiff Juergens paid as fees, charges and expenses in connection with the First Mount Vernon loan, the loss of funds that Plaintiff Juergens used to pay a higher interest rate than that allowed by law, the loss of funds that Plaintiff Juergens used to repay all or part of the First Mount Vernon loan, the loss of the use of the funds that Plaintiff Juergens might be obligated to repay in the future to the First Mount Vernon Defendants in connection with the First Mount Vernon loan and harm to Plaintiff Juergens' credit rating.

327.    Pursuant to D.C. Code §26-905. Plaintiff Juergens is entitled to a return of all interest contracted for or received and one fourth of the principal of the loan.

328.    D.C. Code §26-907 provides a civil remedy for violation of D.C. Code §26-901, et seq.

        WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $1,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, attorneys' fees, interest and court costs and also declaring the First Mount Vernon Defendants' loan to Plaintiff Juergens to be null and void, against Defendant First Mount Vernon Industrial Loan Association Incorporated, Defendant First Mount Vernon Mortgage, L.L.C. and Defendant Dale E. Duncan and Defendant Arthur G. Bennett, jointly and severally, as well as any other relief required in the interest of justice.

**Count XXVIII – Violation D.C. Code §26-1101, et seq.**
**(Mortgage Lender and Broker Act)**
**(First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett)**

329.    The allegations contained in Paragraphs 1-14 and 46-115 of the instant Complaint are incorporated herein as if fully stated.

330.    The First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett fraudulently disguised the loan to Plaintiff Juergens as a commercial loan rather than, what was in reality, a residential refinancing loan in order to charge her a higher rate of interest, and also to circumvent District of Columbia mortgage, consumer and fair lending laws.

331.    At all relevant times, the First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett were  "mortgage lenders" as defined by D.C. Code §26-1101 (11) since they "made mortgage loans" and were engaged "in the business of servicing mortgage loans for others or collecting or otherwise receiving mortgage loan payments directly from borrowers for distribution to any other person."

332.    At all relevant times, the First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett were also "mortgage brokers" as defined by D.C. Code §26-1101 (10) since they "for compensation or gain, or in the expectation of compensation or gain, either directly or indirectly accept[ed] or offer[ed] to accept an application for a mortgage loan, solicit[ed] or offer[ed] to solicit a mortgage loan on behalf of a borrower, or negotiat[ed] or offer[ed] to negotiate the terms and conditions of a mortgage loan on behalf of a lender.

333.    D.C. Code §26-1103 requires that "mortgage lenders" and "mortgage brokers" obtain a license prior to engaging in business as a "mortgage lender" or "mortgage broker."

334.    The First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett violated D.C. Code §26-1101, et seq., with regard to the loan to Plaintiff Juergens by failing to require

that the person closing the mortgage loan to provide Plaintiff Juergens prior to the closing of the mortgage loan a settlement statement as required pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. §2601, et seq., and any disclosure required by the Truth in Lending Act, 15 U.S.C. §1601, et seq., in violation of D.C. Code §26-1114 (a) (7).

335.    As a direct and proximate result of the First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett's violations of D.C. Code §26-1151.01, et seq., Plaintiff Juergens suffered damages, including, but not limited to, the loss of the use of the funds that Plaintiff Juergens paid as fees, charges and expenses in connection with the First Mount Vernon loan, the loss of funds that Plaintiff Juergens used to pay a higher interest rate than that allowed by law, the loss of funds that Plaintiff Juergens used to repay all or part of the First Mount Vernon loan, the loss of the use of the funds that Plaintiff Juergens might be obligated to repay in the future to the First Mount Vernon Defendants in connection with the First Mount Vernon loan and harm to Plaintiff Juergens' credit rating.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $1,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, attorneys' fees, interest and court costs and also declaring the First Mount Vernon Defendants' loan to Plaintiff Juergens to be null and void, against Defendant First Mount Vernon Industrial Loan Association Incorporated, Defendant First Mount Vernon Mortgage, L.L.C. and Defendant Dale E. Duncan and Defendant Arthur G. Bennett, jointly and severally, as well as any other relief required in the interest of justice.

**Count XXIX – Violation D.C. Code §26-1151.01, et seq.**
**(Mortgage Loan Protection Act)**
**(First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett)**

336.    The allegations contained in Paragraphs 1-14 and 46-115 of the instant Complaint are incorporated herein as if fully stated.

337.    The First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett fraudulently disguised the loan to Plaintiff Juergens as a commercial loan rather than, what was in reality, a residential refinancing loan in order to charge her a higher rate of interest, and also to circumvent District of Columbia mortgage, consumer and fair lending laws.

338.    D.C. Code §26-1151.01 (7) (A) defines the term "covered loan" as

> a mortgage loan, secured by property located in the District (including an open-end line of credit, but not including a mortgage loan insured or guaranteed by a state or local authority, the District of Columbia Housing Finance Agency, the Federal Housing Administration, or the Department of Veteran Affairs, or a reverse mortgage transaction), in which the terms of the mortgage loan exceed one or more of the following thresholds:

> (i)    The loan is secured by a first mortgage on the borrower's principal dwelling and the annual percentage rate at closing will exceed by more than 6 percentage points the yield on United States Treasury securities having comparable periods of maturity to the loan maturity measured as of the 15th day of the month immediately preceding the month in which the application for the residential mortgage loan is received by the creditor;

> (ii)    The loan is secured by a junior mortgage on the borrower's principal dwelling and the annual percentage rate at closing will exceed by more than 7 percentage points the yield on United States Treasury securities having comparable periods of maturity to the loan maturity measured as of the 15th day of the month immediately preceding the month in which the application for the residential mortgage loan is received by the creditor; or

> (iii)    The origination/discount points and fees payable by the borrower at or before loan closing exceed 5% of the total loan amount.

339.    At all relevant times, the First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett were "lenders," as defined in D.C. Code §26-1151.01 (11), who entered into

a conspiracy in which they extended a "covered loan" to Plaintiff Juergens that violated D.C. Code §26-1151.01, et seq by

    A.    failing to send Plaintiff Juergens a "Red Flag Warning Disclosure Notice" at least three business days prior to the closing of the loan in violation of D.C. Code §26-1152.11; and

    B.    failing to advise Plaintiff Juergens of her right to obtain counseling in connection with the loan, in violation of D.C. Code §26-1152.19.

340.    As a direct and proximate result of the First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett's violations of D.C. Code §26-1151.01, et seq., Plaintiff Juergens suffered damages, including, but not limited to, the loss of the use of the funds unlawfully converted by the First Mount Vernon Defendants and Defendant Duncan.

341.    D.C. Code §26-1153.01 provides a civil remedy for violation of D.C. Code §26-1151.01, et seq. including

    a.    Reformation of the "covered loan" to correct or remove an unfair term or a term obtained in violation of D.C. Code §26-1151.02;

    b.    Actual damages;

    c.    Injunctive relief;

    d.    Reasonable attorneys' fees and costs; and

    e.    Statutory damages.

342.    Because the First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett engaged in a "systematic pattern of practices" and acted in violation of D.C. Code §26-1151.02 and subchapter II of D.C. Code §26-1152.01, et seq., Plaintiff Juergens is entitled to statutory damages pursuant to D.C. Code §26-1153.01 (c) (5).

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $1,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, attorneys' fees, interest and court costs and also declaring the First Mount Vernon Defendants' loan to Plaintiff Juergens to be null and void, against Defendant First Mount Vernon Industrial Loan Association Incorporated, Defendant First Mount Vernon Mortgage, L.L.C. and Defendant Dale E. Duncan and Defendant Arthur G. Bennett, jointly and severally, as well as any other relief required in the interest of justice.

### Count XXX – Violation of D.C. Code §28-3904 (e, f, q and r)
### (Unlawful Trade Practice Act)
### (First Mount Vernon Defendants and Defendant Duncan)

343.    The allegations contained in Paragraphs 1-14 and 46-115 of the instant Complaint are incorporated herein as if fully stated.

344.    Pursuant to D.C. Code §28-3901 (2), Plaintiff Juergens was a "consumer" at all relevant times.

345.    Pursuant to D.C. Code §28-3901 (3), the First Mount Vernon Defendants and Defendant Duncan were "merchants" at all relevant times.

346.    Pursuant to D.C. Code §28-3901 (7), the loan that the First Mount Vernon Defendants and Defendant Duncan extended to Plaintiff Juergens was a "good" or a "service."

347.    The First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett violated D.C. Code §28-3904 (e) by misrepresenting a material fact that had a tendency to mislead Plaintiff Juergens, specifically, that Plaintiff Juergens would receive, as proceeds of the loan, approximately $190,000.00 at closing, less reasonable settlement costs.

348.    The First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett violated D.C. Code §28-3904 (e) by misrepresenting a material fact that had a tendency to mislead

Plaintiff Juergens, specifically, that the loan to Plaintiff Juergens was a residential refinancing loan rather than a commercial loan that these Defendants later purported to provide to Plaintiff Juergens.

349.    The First Mount Vernon Defendants and Defendant Duncan violated D.C. Code §28-3904 (f) by failing to state a material fact if such failure tends to mislead, specifically that Plaintiff Juergens would not receive, as proceeds of the loan, all that the First Mount Vernon Defendants and Defendant Duncan promised Plaintiff Juergens that she would receive.

350.    The First Mount Vernon Defendants and Defendant Duncan violated D.C. Code §28-3904 (q) by failing to supply Plaintiff Juergens with a copy of her alleged indebtedness.

351.    The First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett fraudulently disguised the loan to Plaintiff Juergens as a commercial loan rather than, what was in reality, a residential refinancing loan in order to charge her a higher rate of interest, and also to circumvent District of Columbia mortgage, consumer and fair lending laws.

352.    The First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett's misrepresentations of material facts, or alternatively, their failure to state material facts, were made with knowledge that they were false, or alternatively, that the omission would create a false understanding in Plaintiff Juergens' mind.

353.    Plaintiff Juergens justifiably relied on the First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett's misrepresentations and/or failures to state material facts when she entered into the $250,000.00 loan.

354.    The First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett's conduct and actions with regard to Plaintiff Juergens' loan constitutes "unfair and deceptive practices" within the meaning set forth in D.C. Code §28-3901, et seq.

355.    The First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett each agreed, explicitly or tacitly, to participate with other Defendants in the acts alleged above, and their acts were in furtherance of a common scheme to wrongfully divest Plaintiff Juergens of the use of the expected proceeds from her $250,000.00 loan for Defendants' financial gain.

356.    Each of the Defendants' acts alleged above aided the other Defendants, and was in furtherance of a common scheme to wrongfully divest Plaintiff Juergens of the use of the expected proceeds from her $250,000.00 loan for Defendants' financial gain.

357.    As a direct and proximate result of the First Mount Vernon Defendants and Defendant Duncan's violations of D.C. Code §28-3901, et seq., Plaintiff Juergens suffered damages, including, but not limited to, the loss of the use of the funds that Plaintiff Juergens paid as fees, charges and expenses in connection with the First Mount Vernon loan, the loss of funds that Plaintiff Juergens used to pay a higher interest rate than that allowed by law, the loss of funds that Plaintiff Juergens used to repay all or part of the First Mount Vernon loan, the loss of the use of the funds that Plaintiff Juergens might be obligated to repay in the future to the First Mount Vernon Defendants in connection with the First Mount Vernon loan and harm to Plaintiff Juergens' credit rating.

358.    The First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett's violations of D.C. Code §28-3901, et seq. were intentional, willful and wanton, and justify the imposition of treble and punitive damages.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $1,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, attorneys' fees, interest and court costs and also declaring the First Mount Vernon Defendants' loan to Plaintiff Juergens to be null and void, against Defendant First Mount

Vernon Industrial Loan Association Incorporated, Defendant First Mount Vernon Mortgage, L.L.C. and Defendant Dale E. Duncan and Defendant Arthur G. Bennett, jointly and severally, as well as any other relief required in the interest of justice.

### Count XXXI – Violation D.C. Code §28-4601, et seq.
### (Consumer Credit Service Organization Act)
### (First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett)

359.    The allegations contained in Paragraphs 1-14 and 46-115 of the instant Complaint are incorporated herein as if fully stated.

360.    Pursuant to D.C. Code §28-4601 (1), Plaintiff Juergens was a "consumer" at all relevant times since she was solicited to purchased or actually purchased the services of a consumer credit service organization.

361.    Pursuant to D.C. Code §28-4601 (2), the First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett were all a "consumer credit service organization" at all relevant times since they sold, provided, performed or represented that they sold, provided or performed, in return for the payment of money or other valuable consideration,

    A.    an extension of credit for Plaintiff Juergens and

    B.    advice or assistance to Plaintiff Juergens regarding any matter related to

    her personal, household or family credit.

362.    The First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett all violated D.C. Code §28-4601, et seq. by making and using false and misleading representations, failing to disclose material facts, and directly or indirectly engaging in acts and in a course of business to defraud or deceive Plaintiff Juergens in violation of D.C. Code §28-4603 (4), with respect to the $250,000.00 loan.

363.    As a direct and proximate result of First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett's violations of D.C. Code §28-4601, et seq., Plaintiff Juergens suffered damages, including, but not limited to, the loss of the use of the funds that Plaintiff Juergens paid as fees, charges and expenses in connection with the First Mount Vernon loan, the loss of funds that Plaintiff Juergens used to pay a higher interest rate than that allowed by law, the loss of funds that Plaintiff Juergens used to repay all or part of the First Mount Vernon loan, the loss of the use of the funds that Plaintiff Juergens might be obligated to repay in the future to the First Mount Vernon Defendants in connection with the First Mount Vernon loan and harm to Plaintiff Juergens' credit rating.

364.    The First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett's violations of D.C. Code §28-4601, et seq. were intentional, willful and wanton, and justify the imposition of treble and punitive damages and an award of attorneys' fees pursuant to D.C. Code §28-4607 (c).

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $1,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, attorneys' fees, interest and court costs and also declaring the First Mount Vernon Defendants' loan to Plaintiff Juergens to be null and void, against Defendant First Mount Vernon Industrial Loan Association Incorporated, Defendant First Mount Vernon Mortgage, L.L.C. and Defendant Dale E. Duncan and Defendant Arthur G. Bennett, jointly and severally, as well as any other relief required in the interest of justice.

## Count XXXII – Respondeat Superior
### (First Mount Vernon Defendants)

365.    The allegations contained in Paragraphs 1-14, 46-115 and 224-364 of the instant Complaint are incorporated herein as if fully stated.

366.    At all relevant times, Defendant Duncan and Defendant Bennett were the agents, servants or employees of the First Mount Vernon Defendants.

367.    At all relevant times, Defendant Duncan and Defendant Bennett were acting within the scope of their employment with the First Mount Vernon Defendants.

368.    Therefore, under the doctrine of respondeat superior, the First Mount Vernon Defendants are responsible for Defendant Duncan and Defendant Bennett's tortuous conduct.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $1,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, attorneys' fees, interest and court costs and also declaring the First Mount Vernon Defendants' loan to Plaintiff Juergens to be null and void, against Defendant First Mount Vernon Industrial Loan Association Incorporated and Defendant First Mount Vernon Mortgage, L.L.C., jointly and severally, as well as any other relief required in the interest of justice.

### Count XXXIII – Respondeat Superior
### (Defendant Brickshire Settlements, LLC)

369.    The allegations contained in Paragraphs 1-14, 46-115 and 224-364 of the instant Complaint are incorporated herein as if fully stated.

370.    At all relevant times during the settlement on the First Mount Vernon Defendants' loan to Plaintiff Juergens, Defendant Duncan and Defendant Bennett were the agents, servants or employees of Defendant Brickshire Settlements, LLC.

371.    At all relevant times during the settlement on the First Mount Vernon Defendants' loan to Plaintiff Juergens, Defendant Duncan and Defendant Bennett were acting within the scope of their employment with Defendant Brickshire Settlements, LLC.

372.    Therefore, under the doctrine of respondeat superior, Defendant Brickshire Settlements, LLC is responsible for Defendant Duncan and Defendant Bennett's tortuous conduct.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $1,000,000.00 in compensatory damages, $10,000,000.00 in punitive damages, attorneys' fees, interest and court costs and also declaring the First Mount Vernon Defendants' loan to Plaintiff Juergens to be null and void, against Defendant Brickshire Settlements, LLC as well as any other relief required in the interest of justice.

### Count XXXIV – Set Aside Deeds and Deed of Trust, Quiet Title and Declaratory Relief
### (First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett)

373.    The allegations contained in Paragraphs 1-14, 46-115 and 224-372 of the instant Complaint are incorporated herein as if fully stated.

374.    The First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett extended a loan to Plaintiff Juergens through fraud and without the formalities required for a lawful deed transfer or loan document.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order declaring the loan documents associated with the $250,000.00 loan referenced in the instant Complaint *void ab initio*, and declaring that Plaintiff Juergens' 1230 23rd Street, N.W., Apt. 505 property is free and clear of any mortgage or other encumbrance on her property and quieting title to the 1230 23rd Street, N.W., Apt. 505 property in Plaintiff Juergens' name.

### Count XXXV – Injunctive Relief
### (First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett)

375.    The allegations contained in Paragraphs 1-14, 46-115 and 224-374 of the instant Complaint are incorporated herein as if fully stated.

376.    As previously described, the First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett have conspired and perpetrated a scheme through which they have extended a

loan to Plaintiff Juergens through fraud and without the formalities required for a lawful deed transfer or loan document.

377.    Since Defendants' actions involve Plaintiff Juergens' home, there may not be any adequate remedy at law.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order permanently enjoining

A.    Defendant First Mount Vernon Industrial Loan Association Incorporated, Defendant First Mount Vernon Mortgage, L.L.C., Defendant Dale E. Duncan and Defendant Arthur G. Bennett from conveying, borrowing against, or otherwise encumbering Plaintiff Juergens' property located at 1230 23rd Street, N.W., Apt. 505 in order to prevent a further cloud on the title to this property;

B.    enjoining Defendant First Mount Vernon Industrial Loan Association Incorporated, Defendant First Mount Vernon Mortgage, L.L.C., Defendant Dale E. Duncan and Defendant Arthur G. Bennett from instituting any foreclosure or eviction proceedings with respect to Plaintiff Juergens' property located at 1230 23rd Street, N.W., Apt. 505; and

C.    enjoining anyone who received any legal or equitable interest in Plaintiff Juergens' property located at 1230 23rd Street, N.W., Apt. 505 from Defendant First Mount Vernon Industrial Loan Association Incorporated, Defendant First Mount Vernon Mortgage, L.L.C., Defendant Dale E. Duncan and Defendant Arthur G. Bennett from further conveyance, encumbrance or similar transaction involving this property, including any foreclosure or eviction proceedings;

and also enter an Order

A.     enforcing Plaintiff Juergens' rescission rights with respect to the loan concerning the property located at 1230 23rd Street, N.W., Apt. 505;

B.     voiding the loan concerning the property located at 1230 23rd Street, N.W., Apt. 505; and

C.     granting any further relief as the Court deems just and proper.

**Count XXXVI – Demand for an Accounting
(First Mount Vernon Defendants and Defendant Duncan)**

378.   The allegations contained in Paragraphs 1-14, 46-115 and 224-376 of the instant Complaint are incorporated herein as if fully stated.

379.   As previously described, First Mount Vernon Defendants, Defendant Duncan and Defendant Bennett have conspired and perpetrated a scheme through which they have extended a loan to Plaintiff Juergens through fraud and without the formalities required for a lawful deed transfer or loan document.

380.   Since Defendants' have converted funds belonging to Plaintiff Juergens with respect to her loan, Plaintiff Juergens does not have any way to account for the payments and/or disbursals made with respect to this loan.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order requiring Defendant First Mount Vernon Industrial Loan Association Incorporated, Defendant First Mount Vernon Mortgage, L.L.C., Defendant Dale E. Duncan and Defendant Arthur G. Bennett to provide an accounting of all funds disbursed or received with regard to the loan to Plaintiff Juergens and granting any further relief as the Court deems just.

Respectfully submitted,

J.P. Szymkowicz (#462146)
John T. Szymkowicz (#946079)
SZYMKOWICZ & SZYMKOWICZ, LLP
1220 19th Street, N.W., Suite 400
Washington, DC  20036-2438
(202) 862-8500

Attorney for Plaintiff Mary Juergens

## JURY DEMAND

Plaintiff Mary Juergens demands trial by jury as to all issues so triable.

J.P. Szymkowicz (#462146)

84

# Exhibit 1

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☑ Conventional  ☐ Other (explain):<br>☐ FHA  ☐ USDA/Rural Housing Service | Agency Case Number | Lender Case Number<br>2632 |
|---|---|---|---|

| Amount<br>$ | Interest Rate<br>% | No. of Months | Amortization Type: | ☑ Fixed Rate  ☐ Other (explain):<br>☐ GPM  ☐ ARM (type): |
|---|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, ZIP)<br>1230 23rd Street, N.W. #505,  Washington, DC 20037  County: District Of Columbia | No. of Units<br>99 |
|---|---|

| Legal Description of Subject Property (attach description if necessary) | Year Built<br>1994 |
|---|---|

| Purpose of Loan | ☐ Purchase  ☐ Construction  ☐ Other (explain):<br>☑ Refinance  ☐ Construction-Permanent | Property will be:<br>☐ Primary Residence  ☐ Secondary Residence  ☑ Investment |
|---|---|---|

**Complete this line if construction or construction-permanent loan.**

| Year Lot Acquired | Original Cost<br>$ | Amount Existing Liens<br>$ | (a) Present Value of Lot<br>$ | (b) Cost of Improvements<br>$ | Total (a+b)<br>$ |
|---|---|---|---|---|---|

**Complete this line if this is a refinance loan.**

| Year Acquired<br>2001 | Original Cost<br>$ | Amount Existing Liens<br>$        62,000 | Purpose of Refinance<br>Business / Investment | Describe Improvements ☐ made  ☐ to be made<br>Cost: $ |
|---|---|---|---|---|

| Title will be held in what Name(s)<br>1230 23rd Street, LLC | Manner in which Title will be held<br>Limited Liability Company | Estate will be held in:<br>☑ Fee Simple<br>☐ Leasehold (show expiration date) |
|---|---|---|

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) |
|---|

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable)<br>**Mary L Juergens** | | Co-Borrower's Name (include Jr. or Sr. if applicable) |

| Social Security Number<br>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 | Home Phone (incl. area code)<br>202-463-6336 | DOB (MM/DD/YYYY) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☐ Married  ☐ Unmarried (include single, ☐ Separated  divorced, widowed) | Dependents (not listed by Co-Borrower)<br>no.  ages | ☐ Married  ☐ Unmarried (include single, ☐ Separated  divorced, widowed) | Dependents (not listed by Borrower)<br>no.  ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP)  ☐ Own ☐ Rent ___ No. Yrs.<br><br>6359 Calvlier Corridor<br>Falls Church, VA 22044 | Present Address (street, city, state, ZIP)  ☐ Own ☐ Rent ___ No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

**If residing at present address for less than two years, complete the following:**

| Former Address (street, city, state, ZIP)  ☐ Own ☐ Rent ___ No. Yrs. | Former Address (street, city, state, ZIP)  ☐ Own ☐ Rent ___ No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Name & Address of Employer  ☑ Self Employed<br><br>Self | Yrs. on this job<br><br>Yrs. employed in this line of work/profession | Name & Address of Employer  ☐ Self Employed | Yrs. on this job<br><br>Yrs. employed in this line of work/profession |

| Position/Title/Type of Business | Business Phone (incl. area code)<br>202-463-6446 | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

**If employed in current position for less than two years or if currently employed in more than one position, complete the following:**

| Name & Address of Employer  ☐ Self Employed | Dates (from-to) | Name & Address of Employer  ☐ Self Employed | Dates (from-to) |
|---|---|---|---|
| | Monthly Income<br>$ | | Monthly Income<br>$ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Name & Address of Employer  ☐ Self Employed | Dates (from-to) | Name & Address of Employer  ☐ Self Employed | Dates (from-to) |
|---|---|---|---|
| | Monthly Income<br>$ | | Monthly Income<br>$ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 7,500.00 | $ | $ 7,500.00 | Rent | | |
| Overtime | | | | First Mortgage (P&I) | | $ |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | | |
| Dividends/Interest | | | | Real Estate Taxes | | |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | 2,900.00 | | 2,900.00 | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 10,400.00 | $ | $ 10,400.00 | Total | $ | $ |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income    Notice:  Alimony, child support, or separate maintenance income need not be revealed if the
Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | | Monthly Amount |
|---|---|---|---|
| B | Investments | | $ 1,250.00 |
| B | Other Income | | 1,650.00 |

## VI.  ASSETS  AND  LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed ☐ Jointly ☑ Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | | | |
| | | **LIABILITIES** | Monthly Payment & Months Left to Pay | Unpaid Balance |
| List checking and savings accounts below | | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | | |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Stocks & Bonds (Company name/ number & description) | $ | | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Life insurance net cash value | | | | |
| Face amount: $ | | | | |
| Subtotal Liquid Assets | $ | Acct. no. | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 500,000 | Name and address of Company | $ Payment/Months | $ |
| Vested interest in retirement fund | $ | | | |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | Job Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ | |
| Total Assets a. | $ 500,000 | Net Worth (a minus b) => $ 500,000 | Total Liabilities b. | $ |

## VI. ASSETS AND LIABILITIES (cont.)

**Schedule of Real Estate Owned** (if additional properties are owned, use continuation sheet)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 1230 23rd Street | CONDO | $ 500,000 | $ 60,000 | $ 2,000 | $ | $ | $ |
| | | | | | | | |
| | Totals | $ 500,000 | $ 60,000 | $ 2,000 | $ | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | |
| e. Estimated prepaid items | |
| f. Estimated closing costs | |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits(explain) | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | |

## VIII. DECLARATIONS

If you answer "yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower Yes No | Co-Borrower Yes No |
|---|---|---|
| a. Are there any outstanding judgments against you? | ☐ ☑ | ☐ ☐ |
| b. Have you been declared bankrupt within the past 7 years? | ☐ ☑ | ☐ ☐ |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ ☑ | ☐ ☐ |
| d. Are you a party to a lawsuit? | ☐ ☑ | ☐ ☐ |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | ☐ ☑ | ☐ ☐ |
| (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐ ☑ | ☐ ☐ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ ☑ | ☐ ☐ |
| h. Is any part of the down payment borrowed? | ☐ ☑ | ☐ ☐ |
| i. Are you a co-maker or endorser on a note? | ☐ ☑ | ☐ ☐ |
| j. Are you a U. S. citizen? | ☑ ☐ | ☐ ☐ |
| k. Are you a permanent resident alien? | ☐ ☑ | ☐ ☐ |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☐ ☑ | ☐ ☐ |
| m. Have you had an ownership interest in a property in the last three years? | ☑ ☐ | ☐ ☐ |
| (1) What type of property did you own—principal residence (PR), second home (SH), or investment property (IP)? | | |
| (2) How did you hold title to the home—solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X _(signature)_ | 8-30-05 | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may discriminate neither on the basis of this information nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER ☐ I do not wish to furnish this information | CO-BORROWER ☐ I do not wish to furnish this information |
|---|---|
| **Ethnicity:** ☐ Hispanic or Latino ☐ Not Hispanic or Latino | **Ethnicity:** ☐ Hispanic or Latino ☐ Not Hispanic or Latino |
| **Race:** ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American | **Race:** ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American |
| ☐ Native Hawaiian or Other Pacific Islander ☑ White | ☐ Native Hawaiian or Other Pacific Islander ☐ White |
| **Sex:** ☑ Female ☐ Male | **Sex:** ☐ Female ☐ Male |

| To be Completed by Interviewer This application was taken by: ☐ Face-to-face interview ☐ Mail ☐ Telephone ☐ Internet | Interviewer's Name (print or type) Arthur G. Bennett | Name and Address of Interviewer's Employer |
|---|---|---|
| | Interviewer's Signature ___ Date ___ | **First Mount Vernon I.L.A.** 6019 Tower Court Alexandria, VA 22304 (P) 703- 82-36800 (F) 703-823-4455 |
| | Interviewer's Phone Number (incl. area code) | |

# Exhibit 2



**LLC-1011**
**(05/02)**

## COMMONWEALTH OF VIRGINIA
## STATE CORPORATION COMMISSION

### ARTICLES OF ORGANIZATION OF A
### DOMESTIC LIMITED LIABILITY COMPANY

Pursuant to Chapter 12 of Title 13.1 of the Code of Virginia the undersigned states as follows:

1. The name of the limited liability company is **1230 23rd Street, LLC**

2. A. The name of the limited liability company's initial registered agent is **Mary Juergens**.

   B. The registered agent is **(mark appropriate box):**

   (1) an <u>INDIVIDUAL</u> who is a resident of Virginia **and**
      [ **X** ] a member or manager of the limited liability company.
      [   ] an officer or director of a corporation that is a member or manager of the limited liability company.
      [   ] a general partner of a general or limited partnership that is a member or manager of the limited
         liability company.
      [   ] a trustee of a trust that is a member or manager of the limited liability company.
      [   ] a member of the Virginia State Bar.
                      **OR**
   (2) [   ] a domestic or foreign stock or nonstock corporation, limited liability company or registered limited
        liability partnership authorized to transact business in Virginia.

3. The limited liability company's initial registered office address, which is identical to the business office of the initial registered agent, is:

   **6019 Tower Court, Alexandria, Virginia 22304**

   which is located in the [ **X** ] city **or** [   ] county of **Alexandria**.

4. The limited liability company's principal office is located at **6019 Tower Court, Alexandria, Virginia 22304**

5. Signature:

_____          *8/16/05*
           (organizer)                                          (date)
  **Mary Juergens**

)

### SEE INSTRUCTIONS ON THE REVERSE

# Exhibit 3

# Commonwealth of Virginia



## State Corporation Commission

*I Certify the Following from the Records of the Commission:*

A certificate of organization was issued by the Commission to 1230 23rd Street, LLC, a limited liability company formed under the laws of VIRGINIA, effective as of August 22, 2005.

As of the date below, articles of cancellation have not been filed in this office by 1230 23rd Street, LLC, a Virginia limited liability company.

The records of this office show the 2006 annual registration fees for 1230 23rd Street, LLC were paid on September 1, 2006

Nothing more is hereby certified.

*Signed and Sealed at Richmond on this Date:*
*September 29, 2006*



*Joel H. Peck*

_____
*Joel H. Peck, Clerk of the Commission*

CIS0505

# Exhibit 4

OMB NO. 2502-0265

| A. | | |
|---|---|---|
| U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT | B. TYPE OF LOAN | |
| **SETTLEMENT STATEMENT** | 1.☐FHA  2.☐FmHA  3.☒CONV. UNINS.  4.☐VA  5.☐CONV. INS. | |
| | 6. FILE NUMBER  2005-08-003 | 7. LOAN NUMBER |
| | 8. MORTGAGE INS CASE NUMBER | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown.
Items marked "[POC]" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

1.0   3/98   (JUERGENS, MARY, PFD/2005-08-003/31)

| D. NAME AND ADDRESS OF BORROWER | E. NAME AND ADDRESS OF SELLER | F. NAME AND ADDRESS OF LENDER |
|---|---|---|
| 1230 23rd St., LLC  1230 23rd Street NW #505  Washington, D.C. 20037 | Mary Juergens  1230 23rd St. NW  Washington, D.C.  20037 | First Mount Vernon I.L.A.  6019 Tower Court  Alexandria, VA  22304 |

| G. PROPERTY LOCATION | H. SETTLEMENT AGENT | |
|---|---|---|
| 1230 23rd Street NW #505  Washington, DC 20037 | Brickshire Settlements, LLC | I. SETTLEMENT DATE |
| 1230 23rd St. N.W. #505  Washington, D.C. 20037 | PLACE OF SETTLEMENT  7700 Little River Turnpike, Ste 604  Annandale, Va 22003 | August 31, 2005 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 189,003.96 | 403. | |
| 104. escrow for cash back Todd Holmes | 60,996.04 | 404. | |
| 105. | | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. City/Town Taxes         to | | 406. City/Town Taxes         to | |
| 107. County Taxes         to | | 407. County Taxes         to | |
| 108. Assessments         to | | 408. Assessments         to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| *120. GROSS AMOUNT DUE FROM BORROWER* | 250,000.00 | *420. GROSS AMOUNT DUE TO SELLER* | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | 250,000.00 | 502. Settlement Charges to Seller (Line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first Mortgage to George Owens | 61,195.11 |
| 205. | | 505. Payoff of second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. City/Town Taxes         to | | 510. City/Town Taxes         to | |
| 211. County Taxes         to | | 511. County Taxes         to | |
| 212. Assessments         to | | 512. Assessments         to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| *220. TOTAL PAID BY/FOR BORROWER* | 250,000.00 | *520. TOTAL REDUCT. AMT DUE SELLER* | 61,195.11 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Borrower (Line 120) | 250,000.00 | 601. Gross Amount Due To Seller (Line 420) | |
| 302. Less Amount Paid By/For Borrower (Line 220) | ( 250,000.00 ) | 602. Less Reductions Due Seller (Line 520) | ( 61,195.11 ) |
| *303. CASH ( ☐ FROM ) ( ☐ TO ) BORROWER* | 0.00 | *603. CASH ( ☐ TO ) ( ☒ FROM ) SELLER* | 61,195.11 |

HUD-1 (3-86) RESPA, HB4305.2

## L. SETTLEMENT CHARGES

| 700. TOTAL COMMISSION Based on Price | $ | @ | % | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|---|
| *Division of Commission (line 700) as Follows:* | | | | | |
| 701. $ to | | | | | |
| 702. $ to | | | | | |
| 703. Commission Paid at Settlement | | | | | |
| 704. to | | | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | | | |
| 801. Loan Origination Fee 4.0000 % to First Mount Vernon I.L.A. | | | | 10,000.00 | |
| 802. Loan Discount % to | | | | | |
| 803. Application Fee to First Mount Vernon I.L.A. | | | | 200.00 | |
| 804. Credit Report to First Mount Vernon I.L.A. | | | | 35.00 | |
| 805. Funding Fee to First Mount Vernon I.L.A. | | | | 200.00 | |
| 806. Processing Fee to First Mount Vernon I.L.A. | | | | 400.00 | |
| 807. Underwriting Fee to First Mount Vernon I.L.A. | | | | 350.00 | |
| 808. Wire Fee to First Mount Vernon I.L.A. | | | | 25.00 | |
| 809. Release Fee to First Mount Vernon I.L.A. | | | | 100.00 | |
| 810. Commitment fee to First Mount Vernon I.L.A. | | | | 350.00 | |
| 811. Advance disbursement to First Mount Vernon I.L.A. | | | | 95,000.00 | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | | | |
| 901. Interest From 08/31/05 to 09/01/05 @ $ 100.000000/day ( 1 days %) | | | | 100.00 | |
| 902. Mortgage Insurance Premium months | | | | | |
| 903. Hazard Insurance Premium 1.0 years | | | | | |
| 904. | | | | | |
| 905. | | | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | | | |
| 1001. Hazard Insurance months @ $ per month | | | | | |
| 1002. Mortgage Insurance months @ $ per month | | | | | |
| 1003. City/Town Taxes months @ $ per month | | | | | |
| 1004. County Taxes months @ $ per month | | | | | |
| 1005. Assessments months @ $ per month | | | | | |
| 1006. months @ $ per month | | | | | |
| 1007. months @ $ per month | | | | | |
| 1008. months @ $ per month | | | | | |
| **1100. TITLE CHARGES** | | | | | |
| 1101. Settlement or Closing Fee to Brickshire Settlements, LLC | | | | 595.00 | |
| 1102. Abstract or Title Search to Consolidated Abstract Service of D.C./Brickshire | | | | 300.00 | |
| 1103. Title Examination to Stephen J. Sheehy & Assoc., PLLC | | | | 175.00 | |
| 1104. Title Insurance Binder to Sisters and Brothers Title Services/Brickshire | | | | 150.00 | |
| 1105. Document Preparation to Martin Mooradian, Esq. | | | | 150.00 | |
| 1106. Notary Fees to Brickshire Settlements, LLC | | | | 36.00 | |
| 1107. Release Tracking to Brickshire Settlements, LLC | | | | 85.00 | |
| (includes above item numbers: ) | | | | | |
| 1108. Title Insurance to First American/Brickshire | | | | 1,743.75 | |
| (includes above item numbers: ) | | | | | |
| 1109. Lender's Coverage $ 312,500.00 | | | | | |
| 1110. Owner's Coverage $ | | | | | |
| 1111. Deed Preparation to Stephen J. Sheehy III & Assoc. PLLC | | | | 200.00 | |
| 1112. | | | | | |
| 1113. | | | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | | | |
| 1201. Recording Fees: Deed $ 82.50; Mortgage $ 82.50; Releases $ | | | | 165.00 | |
| 1202. City/County Tax/Stamps: Deed ; Mortgage 2,750.00 | | | | 2,750.00 | |
| 1203. State Tax/Stamps: Revenue Stamps ; Mortgage 2,750.00 | | | | 2,750.00 | |
| 1204. Assignment of Rents to D. C. Register of Deeds | | | | 82.50 | |
| 1205. | | | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | | | |
| 1301. Survey to | | | | | |
| 1302. Pest Inspection to | | | | | |
| 1303. Escrow for interest Reserve to First Mount Vernon I.L.A. | | | | 67,526.31 | |
| 1304. Courier/FedEx to Brickshire Settlements, LLC | | | | 87.50 | |
| 1305. (See addit'l disb. exhibit) to | | | | 5,447.90 | |
| **1400. TOTAL SETTLEMENT CHARGES (Enter on Lines 103, Section J and 502, Section K)** | | | | 189,003.96 | |

By signing page 1 of this statement, the signatories acknowledge receipt of a completed copy of page 2 of this two page statement.

Certified to be a true copy.

Loan = $280,000.00

SEE Apartment Disbursement Sheet

Wells = $73,718.69

Brickshire Settlements, LLC
Settlement Agent

( 2005-08-003 / 2005-08-003 / 32 )

## ACKNOWLEDGMENT OF RECEIPT OF SETTLEMENT STATEMENT

| | |
|---|---|
| Borrower: | 1230 23rd St., LLC |
| Seller: | Mary Juergens |
| Lender: | First Mount Vernon I.L.A. |
| Settlement Agent: | Brickshire Settlements, LLC |
| | (703)256-6200 |
| Place of Settlement: | 7700 Little River Turnpike, Ste 604 |
| | Annandale, Va 22003 |
| Settlement Date: | August 31, 2005 |
| Property Location: | 1230 23rd Street NW #505 |
| | Washington, DC 20037 |
| | 1230 23rd St. N.W. #505 |
| | Washington, D.C. 20037 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction.  I further certify that I have received a copy of the HUD-1 Settlement Statement.

1230 23rd St. , LLC

_____          _____
Mary Juergens                                              By:  Mary Juergens, Member

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

_____
Brickshire Settlements, LLC
Settlement Agent

WARNING:  It is a crime to knowingly make false statements to the United States on this or any similar form.  Penalties upon conviction can include a fine and imprisonment.  For details see:  Title 18 U.S. Code Section 1001 and Section 1010.

HUD-1 (3-86) RESPA, HB4305.2

# Exhibit 5

# BALLOON DEED OF TRUST NOTE

### First Trust
## Important Notice

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION THAT CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

**THIS LOAN IS BEING MADE FOR COMMERCIAL OR INVESTMENT PURPOSES PURSUANT TO SECTION 28-3301 OF THE DISTRICT OF COLUMBIA CODE.**

Given for money loaned and secured by a Balloon Deed of Trust on **SEE ATTACHED LEGAL DESCRIPTION.** The improvements thereon being known as **1230 23rd Street, Unit 505 and Parking Space 63, Washington, DC 20037.**

Ronald S. Deutsch, Edward S. Cohn, Steven Goldberg, Richard J. Rogers and Richard Solomon, Trustees

---

**$250,000.00**                                                         **August 31, 2005**

FOR VALUE RECEIVED, I, **1230 23rd Street, LLC** (hereinafter known as "Borrower"), promise to pay to the order of FIRST MOUNT VERNON INDUSTRIAL LOAN ASSOCIATION, a Virginia corporation, 6019 Tower Court, Alexandria, Virginia 22304 (hereinafter known as "Noteholder") the sum of **Two Hundred Fifty Thousand Dollars and no/100ths ($250,000.00),** with interest from the date hereof until paid at the rate of **Eighteen percent (18%)** per annum on the unpaid balance. **However, should this loan ever be in default the interest rate will be increased to Twenty-four percent (24%) per annum for the remainder of the time that this loan is outstanding.** Said principal and interest is payable as follows: Commencing on **October 1, 2005,** and continuing on the 1st day of each and every month thereafter **interest-only payments of $3,750.00, with the entire remaining unpaid balance of principal and interest, if not sooner paid, being due and payable in full on or before September 1, 2007.**

Each installment when so paid to be applied first to the payment of late charges, second to the payment of interest on the amount of principal remaining unpaid, and the balance thereof to be credited to the principal.

And it is expressly agreed that if default be made in the payment of any one of the aforesaid installments when and as the same shall become due and payable, then and in that event, the unpaid balance of the aforesaid principal sum and accrued interest shall at the option of the holder hereof at once become and be due and payable. Borrower shall be responsible for all costs of collections, including without limitation, court costs, attorney's fees of at least 20% of the outstanding indebtedness under this Note and all other costs of collection to the extent not prohibited by applicable law. Additionally, **in the event of Default and at the sole discretion**

1

---

of the Lender, if said note is modified, extended or default cured, there shall be an administrative / reinstatement fee equal to two and one-half percent (2.5%) of the principal balance and all outstanding interest and penalties. If the Noteholder has not received the full amount of any payment including the balloon payment by the end of five (5) calendar days after the date it is due, a late fee shall apply as follows: A **late fee of $650.00** shall become immediately due if payment is not received by the Noteholder by the 5th day of any month. **IN ADDITION, A TEN PERCENT (10%) LATE FEE SHALL BE PAYABLE ON THE PRINCIPAL BALLOON PAYMENT, SHOULD THE BORROWER NOT PAY SAID AMOUNT WITHIN FIVE (5) DAYS OF DUE DATE.** Borrower shall also be responsible for the payment of Twenty-Five Dollars ($25.00) for each check that, upon presentment, is returned unpaid from the Lender.

The Maker(s) agree, upon any default hereunder, to pay all costs of collection as set forth above, and severally waive the benefits of any exemption now or hereafter allowed it by law insofar as such exemption may lawfully be waived. In the event the Noteholder accepts a Deed in Lieu of Foreclosure, such acceptance shall only satisfy the amount of unpaid principal outstanding and Noteholder reserves the right to collect all interest, fees and other charges outstanding at the time of such acceptance. If permitted by law, and if, under its terms, this Note is in default, the Maker hereof constitutes and appoints the attorney of said **First Mount Vernon Industrial Loan Association** with power of substitution its duly constituted attorney-in-fact for the purpose of confessing judgment against Maker for any amounts required to be paid pursuant to the Note, including costs of collection as set forth above. Said attorney is hereby authorized to confess judgment on behalf of Maker for such amounts not paid in compliance with the terms of this Note. Further, Maker does hereby constitute and appoint said attorney to confess judgment on behalf of Maker for immediate possession of the premises in any Court of **The District of Columbia** having jurisdiction and hereby ratifies and confirms the acts of said attorney in fact as fully as if done in person.

Upon the nonpayment of this Note or any part thereof, at maturity, the Maker(s) hereby authorize and empower any Clerk of any Court of record in **The District of Columbia** or elsewhere, to enter judgment by confession, on or after maturity, against the undersigned, in favor of **First Mount Vernon Industrial Loan Association**, its successors and assigns or legal holder, for the full amount of the indebtedness then due hereon, interest and costs, as well as reasonable attorney's fees as set forth herein, expressly waiving summons and other process, and does hereby further consent to the immediate execution of said judgment.

**There shall be a 3% prepayment penalty during the first year of this loan. Should borrower prepay, or cause this loan to become due prior to maturity through default, interest may be recalculated using a method (the Rule of 78's) which could result in additional interest being due. There shall be an exit fee equal to one percent of the loan amount when this loan is paid in full and released.**

The Borrower and all endorsers and guarantors hereof waive notice of maturity, presentment, protest and notice of protest, notice of non-payment and dishonor.

In the event of any filing under any Chapter of the United States Bankruptcy Code ("bankruptcy proceeding") Noteholder shall be entitled to charge interest on all accrued interest, foreclosure costs, attorney fees (whether incurred as a result of the foreclosure or the bankruptcy proceeding) or other pre-petition arrearage payable pursuant to or through any plan in the

bankruptcy proceeding. If any post-petition arrearage occurs and those amounts are payable pursuant to or through any plan, Noteholder shall be entitled to charge interest on those amounts the same as if they were pre-petition arrears. Said interest shall be at the same rate charged under this Promissory Note.

This Note shall be the joint and several obligation of all Borrowers, sureties, guarantors and endorsers, and shall be binding upon them and their heirs, Personal Representatives, successors and assigns.

Any notice to Borrower shall be given by mailing such notice by Certified Mail, Return Receipt Requested, postage prepaid, to Borrower at Borrower's designated address. Any notice to Noteholder shall be given by mailing such notice by Certified Mail, Return Receipt Requested, postage prepaid, to Noteholder at Noteholder's designated address.

In addition to the protections given to Noteholder under this Note, a Deed of Trust dated this same date, containing additional provisions which are incorporated by referenced herein, protects the Noteholder from possible losses which might result upon Borrower's default.

**IT IS FURTHER AGREED THAT IN THE EVENT THE TITLE OR ANY INTEREST TO THE PROPERTIES CONVEYED BY THE DEED OF TRUST SECURING THIS NOTE SHALL BECOME VESTED IN ANY ONE OTHER THAN THE MAKER(S) HEREOF, IF ADDITIONAL ENCUMBRANCES OR DEEDS OF TRUST ARE RECORDED, OR, IF ANY JUDGMENTS OR LIENS ARE RECORDED AGAINST ANY ONE MAKER, THEN THE ENTIRE BALANCE OF THIS NOTE SHALL IMMEDIATELY BECOME DUE AND PAYABLE.**

**BORROWER HEREBY WAIVES BORROWER'S RIGHT TO HAVE THE PAYMENTS THAT ARE TO BE MADE UNDER THIS AGREEMENT IN SUBSTANTIALLY EQUAL AMOUNTS.**

**BORROWER SPECIFICALLY STATES THAT HE WILL NOT OCCUPY THE PROPERTIES.**

If any provision of this Note is found to violate a particular statute, then only that provision will be appropriately modified and the remaining provisions will stand and are fully enforceable.

Borrower acknowledges that he may now, or in the future may have other loan(s) from Noteholder and that such loan(s) are or will be evidenced by Promissory Notes and that said Notes are or will be secured by Deeds of Trust. That in consideration for Noteholder making this loan, Borrower understands and agrees that Noteholder may require repayment of sums due on said other loans in order to fully satisfy the within loan.

_____(SEAL)
1230 23rd Street, LLC

The person signing below does so for the purpose of acknowledging all terms and obligations of this Note and by so signing, personally guarantees the repayment of all obligations set forth herein as if he is the maker of the this Note.

_____(SEAL)
*Mary D. Juergens, Personally*

This is to certify that this is the Note
described in a Deed of Trust to the
Trustees named hereon and bearing
even date herewith. Said Deed of
Trust and Note having been executed
In my presence.

_____
Notary Public
My Commission Expires: 06/30/05

4

# Exhibit 6

## COMMERCIAL LOAN
## BALLOON DEED OF TRUST
### First Trust

## THE LOAN SECURED BY THIS DEED OF TRUST HAS BEEN MADE FOR COMMERCIAL OR INVESTMENT PURPOSES PURSUANT TO SECTION 28-3301 OF THE DISTRICT OF COLUMBIA CODE

**THIS BALLOON DEED OF TRUST**, made **August 31, 2005**, by and between **1230 23rd Street, LLC**, hereinafter referred to as "Grantor" and Ronald S. Deutsch, Edward S. Cohn, Steven Goldberg, Richard J. Rogers and Richard Solomon, Trustees, hereinafter referred to as "Trustee", either of whom may act, independently of the other. The Trustees are licensed to practice law in the District of Columbia and are in good standing, and their law office address is 600 Baltimore Avenue, Towson, MD 21204;

**WHEREAS,** Grantor is indebted unto FIRST MOUNT VERNON INDUSTRIAL LOAN ASSOCIATION, a Virginia corporation, 6019 Tower Court, Alexandria, Virginia 22304 (hereinafter referred to as "Noteholder"), in the principal sum of **Two Hundred Fifty Thousand Dollars and no/100ths ($250,000.00)**, or so much thereof as has been advanced, being money loaned, for which amount Grantor has signed and delivered Grantor's **Promissory Note**, hereinafter referred to as "Note" of even date herewith payable to the order of Noteholder, bearing interest at the rate of **18%** per annum until paid with the full debt, if not paid earlier, due and payable **on or before September 1, 2007. However, should this loan ever be in default the interest rate will be increased to Twenty-Four percent (24%) per annum for the remainder of the time that this loan is outstanding.**

**NOW, THEREFORE, WITNESSETH:** That this Deed of Trust secures to Noteholder (a) the repayment of the debt evidenced by the Note and all interest, renewals, extensions and modifications thereof; (b) the payment of all other sums, with interest, advanced under this Deed of Trust; and (c) the performance of Grantor's covenants and agreements under this Deed of Trust. For this purpose, and in consideration of One Dollar ($1.00) in hand paid, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Grantor hereby irrevocably grants and conveys to Trustee in fee simple, in trust with power of sale, the following described properties: **1230 23rd Street, Unit 505 and Parking Space 63, Washington, DC 20037.**

### SEE ATTACHED LEGAL DESCRIPTION

Together with all the improvements now or hereafter erected on the said described land and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights, stock and all fixtures now or hereafter a part thereof. This Deed of Trust shall also cover all replacements and additions. All of the foregoing is referred to in this Deed of Trust as the "Properties";

1

**IN TRUST,** to permit said Grantor to use and occupy the said described Properties and to receive the rents, issues and profits thereof, until default be made in the payment of any indebtedness hereby secured or in the performance of the conditions and obligations made and stipulated in the said Note or in the performance of any covenants or agreements contained herein; and upon full payment of all the indebtedness secured by said Note and any extensions or renewals thereof, any additional interest thereon, and all monies advanced or expended as provided for in said Note or as herein provided for, to release and re-convey the said Properties unto and at the cost of the Grantor or the party or parties then claiming under said Grantor.

The assignment of rents of the Properties is done pursuant to the understanding that, if by reason of default under and of the terms hereof, the holder of the Note collects said rents, such holder shall have the right to appoint a receiver to enter upon, take possession of and manage the Properties and to collect the rents of the Properties, including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Properties and collection of rents including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Deed of Trust. The receiver shall be liable to account only for those rents actually received.

This Deed of Trust creates a security interest in the Properties, and, to the extent any portion of the Properties is not real properties, this Deed of Trust constitutes a security agreement from the Grantor to the Noteholder under the Uniform Commercial Code in such portion of the Properties and the proceeds (cash and non-cash) thereof. With respect to such portion of the Properties, the Noteholder shall have all rights and remedies of a secured party under the Uniform Commercial Code.

This Deed of Trust is also given to secure the reimbursement to the holder of said Note and to Trustees, and any purchaser or purchasers under the sale or sales as provided by this Trust, for any and all costs and expenses incurred in respect thereto, including reasonable counsel fees in an amount of not less than Twenty percent (20%) of the indebtedness secured by this Deed of Trust, which counsel fees are incurred or paid on account of any collection efforts or litigation at law or in equity which may arise in respect to Deed of Trust, or to the indebtedness secured hereby, or in obtaining possession of the Properties after any sale which may be made as hereinafter provided for.

Additional terms and conditions are more particularly set forth in the Note, reference to which is hereby made, said Note being incorporated herein by reference.

If the Noteholder has not received the full amount of any payment including the balloon payment by the end of five (5) calendar days after the date it is due, a late fee shall apply as follows: A late fee of **$650.00** shall become immediately due if payment is not received by the Noteholder by the 5th day of any month. IN ADDITION, A **TEN PERCENT (10%) LATE FEE SHALL BE PAYABLE ON THE PRINCIPAL BALLOON PAYMENT IF NOT PAID WITHIN FIVE (5) DAYS OF DUE DATE..** Grantor shall also be responsible for the payment of Twenty Five ($25.00) Dollars for each check that upon presentment is returned unpaid from the Bank.

2

Grantor for himself and his successors and assigns, covenants and agrees as a part of this trust as follows:

1. **CONVEYANCE RIGHTS.** That Grantor is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Properties and that the Properties are unencumbered, except for encumbrances of record. Grantor warrants specially and will defend generally the title to the Properties against all claims and demands, subject to any encumbrances of record. Grantor will execute such assurances thereof as may be requisite.

2. **PAYMENT OF PRINCIPAL, INTEREST, TAXES, CHARGES, LIENS.** That Grantor will pay the indebtedness evidenced by the note secured hereby, all taxes and assessments relating to the land and premises herein described, ground rents, all charges, liens or other obligations against the Properties and all other sums which are required to be paid by him under the terms of said Note or this Deed of Trust, including costs, expenses and attorney's fees incurred by the Trustees or the holder of said Note with respect to this Trust, the said note or the land and premises herein described, and in default of any such payment the holder of said note may pay the same, and any sum or sums so paid shall be added to the debt hereby secured, shall be payable on demand, shall bear interest at the rate set forth in the Note, and shall be secured by this Deed of Trust. The contrary notwithstanding, the authorization contained in this Section shall impose no duty or obligation on the Trustees or the Noteholder to perform any action or make any advancement on behalf of the Grantor and is for the sole benefit and protection of the Noteholder.

3. **PRESERVATION, MAINTENANCE.** That Grantor will keep the said Properties in as good order and condition as they are now and will not commit or permit any waste thereof, reasonable wear and tear accepted; and that he will not act or fail to act in any manner which will jeopardize the lien of this Deed of Trust. Noteholder may make or cause to be made reasonable entries upon and inspections of the Properties provided that Noteholder shall give Grantor notice prior to any such inspection specifying reasonable cause therefore.

4. **INSURANCE.** That Grantor will keep the improvements now existing, or hereinafter erected on said land, insured against loss by fire and other hazards, casualties and contingencies in such amounts and for such periods as may be required by the holder of said Note, and will pay promptly, when due, any premiums on such insurance. All insurance shall be carried in companies approved by the holder of said Note and the policies and renewal thereof shall be held by said holder and have attached thereto loss payable clauses in favor of and in form acceptable to the holder of said Note. If Grantor fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Properties in accordance with paragraph 2. In the event of loss, he will give immediate notice by mail to the noteholder, who may make proof of loss if not made promptly by the Grantor, and each insurance company concerned is hereby authorized and directed to make payment for such loss directly to and to the order of the holder of said Note and the insurance proceeds or any part thereof may be applied by such holder at his option either to the reduction of the indebtedness hereby secured or to the restoration or repair of the Properties. In the event of sale under the

3

terms of this Deed of Trust or other transfer of title to said Properties in extinguishment of the indebtedness secured hereby, all right, title and interest of the Grantor in and to any insurance policies then in force shall pass to the purchaser or grantee. All insurance policies shall bear an endorsement prohibiting cancellation, material modification or termination, unless thirty (30) calendar days' prior written notice thereof is provided to the Noteholder.

5. **OWNERSHIP.** That in the event ownership of the Properties becomes vested in a person other than the Grantor, the holder of said Note, may, at Noteholder's option, without notice to the Grantor, deal with such successor or successors in interest with reference to this instrument and the indebtedness secured hereby in the same manner as with Grantor, and any extension of time of the payment of the indebtedness or any other modification of the terms of the indebtedness at the instance of the then owner shall not relieve the Grantor of his liability on the Note hereby secured or from the performance of any of the covenants and agreements contained herein whether said extension or modification be made with or without the consent of the Grantor.

6. **SUBSTITUTION OF TRUSTEES.** That the irrevocable power to substitute one or more of the Trustees named herein or substituted therefor is expressly reserved to the holder of the Note secured by this Deed of Trust to be exercised any time hereafter no matter how often without notice and without specifying any reason therefor by filing for record among the land records where the instrument is recorded a Deed of Appointment, and thereupon all of the title and estate, powers, rights and duties of the Trustee thus superseded shall terminate and shall be vested in the successor Trustee or Trustees. The Grantor and the Trustee herein named or that hereafter may be substituted hereunder expressly waive notice of the exercise of this power, the giving of bond on any Trustee, and any requirement for application to any Court for the removal, substitution or appointment of a Trustee hereunder.

7. **TRUSTEE ACTS/LENDER COUNSEL.** That each Trustee acting hereunder be paid a fee of Twenty-Five Dollars ($25.00) for each document which he his required to execute under the terms of this Deed of Trust. It is expressly agreed by Grantor that the Trustee may retain as his counsel, counsel of the Noteholder, irrespective of any conflict, real or potential, such representation may cause, unless such representation is improper as determined by a Court of competent jurisdiction, after application by Grantor.

8. **EVENTS OF DEFAULT.** Grantor agrees that the following events shall constitute an event of default (i) the failure to pay any other obligation of indebtedness owned by Grantor or to permit any encumbrance, lien or other charge to be recorded against the Properties; (ii) a failure to pay any amount of interest, principal or any fee, charge, penalty, premium, or advancement call for payment of any of the installments due or any other obligations under the Note, when and as the same shall become due and payable, or if Grantor fails to perform any obligation under this Deed of Trust, then and in that event, the unpaid balance and accrued interest thereon shall, at the sole option of the holder of the Note secured hereby, at once become

4

due and payable; (iii) a voluntary or involuntary case under the Federal Bankruptcy laws or any state insolvency or similar laws is commenced by or against Grantor or Grantor consents to the appointment of or of the taking of possession by a receiver or similar official for the Grantor or any of the Grantor's properties, including but not limited to the secured Properties; (iv) failure to comply with the terms and conditions of the Acquisition, Construction and Development Loan Agreement, if applicable; and (v) AT THE SOLE OPTION OF THE SAID NOTEHOLDER, THE PRINCIPAL AMOUNT OF THE INDEBTEDNESS SECURED BY THIS DEED OF TRUST MAY IMMEDIATELY BECOME DUE AND PAYABLE IN FULL IN THE EVENT ALL OR ANY PART OF THE PROPERTY IS SOLD, CONVEYED OR OTHERWISE TRANSFERRED WHETHER OR NOT BY VOLUNTARY OR INVOLUNTARY CONVEYANCE OR BY OPERATION OF LAW (OR IF A BENEFICIAL INTEREST IN GRANTOR IS SOLD OR TRANSFERRED AND GRANTOR IS NOT A NATURAL PERSON).

9. **ACCELERATION.** That Grantor's failure to perform any of his obligations under this Deed of Trust or under said Note shall constitute a default and all indebtedness secured hereby shall immediately become due and payable at the option of the holder of said Note. Any time thereafter, at the request of the holder of said Note, the Trustees, either one of whom may act, shall have the power and it shall be their duty to sell said land and premises or any part thereof at public auction in such manner, at such time and place, upon such terms and conditions, and upon such public notice as the Trustees may deem best for the interest of all concerned, consisting of advertisement in a newspaper of general circulation in the county or city in which the Properties are located for such period as applicable law may require and, in case of default of any purchaser, to re-sell with such postponement of sale or re-sale and upon public notice thereof as the Trustees may determine and upon judicial approval as may be required by law, convey said land and premises in fee simple to and at the cost of the purchaser, who shall not be liable to see to the application of the purchase money; and from the proceeds of sale; FIRST, to pay all proper costs and charges, including but not limited to court costs, advertising expenses, auctioneer's allowance, the expenses, if any, required to correct any irregularity in the title, premium for Trustees' bond, auditor's fee, attorney's fee of not less than $750.00, and all other expenses of sale and or collection incurred in and about the protection and execution of this trust, and all moneys advanced for taxes due upon said land and premises at time of sale and to retain as compensation a commission of five percent (5%) on the amount of said sale or sales, it being understood that Attorney fees shall be payable whether or not Attorney and Trustees are the same person or in the same law firm; SECOND, to pay the whole amount then remaining unpaid of the principal of said Note, and interest thereon to date of payment, whether the same shall be due or not, it being understood and agreed that upon such sale before maturity of the Note the balance thereof shall be immediately due and payable; THIRD, to pay liens of record against the security properties according to their priority of lien and to the extent that funds remaining in the hands of the Trustees are available; and LAST, to pay the remainder of said proceeds, if any, to the Grantor, his heirs, personal representatives, successors or assigns upon the delivery and surrender to the purchaser of possession of said land and premises, less costs and expenses of obtaining possession. At the sole discretion of the Lender, the Borrower may be allowed to reinstate upon payment of all money due, including penalties, interest and principal. In

5

addition, the Borrower agrees to pay an administrative / reinstatement fee of 2.5% of outstanding principal for such reinstatement.

10. **TRUSTEE FEES.** That if the Properties shall be advertised for sale, as herein above provided and not sold, Grantors will pay all costs in connection therewith including but not limited to advertising, attorney's fees, and a Trustees' commission of 2 ½ % of the then unpaid principal balance of the indebtedness, and the same shall be secured in like manner as other charges and expenses relating to the execution of this trust and bear interest at the rate stated in said Note.

11. **BANKRUPTCY.** In the event of any bankruptcy proceeding, Grantor shall pay all expenses and reasonable attorney's fees related thereto. Additionally, the Noteholder shall be entitled to interest at the rate provided for in the Note secured hereby, on any and all arrears (including interest arrears), all advances or costs incurred by the Noteholder, as those amounts are payable over time or payable through any plan proposed by the Grantor.

12. **WAIVERS.** Grantor hereby waives the benefit of the notice of maturity, presentment, demand and protest. Any forbearance by Noteholder in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

13. **LOAN CHARGES.** If a law which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed permitted limits, then (i) any such loan charges shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected which exceeded permitted limits will be refunded. Noteholder may choose to make this refund by reducing the principal or by making a direct refund payment. If a refund reduces principal, the reduction will be treated as a partial payment.

14. **NOTICES.** Any notice to Grantor provided for in this Deed of Trust shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The Notice shall be directed to the Properties Address or any other address Grantor designates by Notice to the Noteholder. Any Notice to the Noteholder shall be given by first class mail to Noteholder's address stated herein or any other address Noteholder designates by Notice to Grantor. Any notice provided for in this Deed of Trust shall be deemed to have been given to Grantor or Noteholder when given as provided.

15. **CONDEMNATION.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Properties, or for the conveyance in lieu of condemnation, are hereby assigned and shall be paid to

6



Noteholder. In the event of a total taking of the Properties, the proceeds shall be applied to the sums secured by this Deed of Trust, whether or not then due, with any excess paid to Grantor. In the event of a partial taking of the Properties in which the fair market value of the Properties immediately before the taking is equal to or greater than the amount of the sums secured by this Deed of Trust immediately before the taking, unless the Grantor and Noteholder otherwise agree in writing, the sums secured by this Deed of Trust shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Properties immediately before taking. Any balance shall be paid to Grantor. In the event of a partial taking of the Properties in which the fair market value of the Properties immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Grantor and Noteholder otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to sums secured by this Deed of Trust whether or not the sums are then due. If the Properties are abandoned by Grantor or if, after notice by Noteholder to Grantor that the condemner offers to make an award or settle a claim for damages, Grantor fails to respond to Noteholder within 30 days after the date the notice is given, Noteholder is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Properties or to the sums secured herein, whether or not then due.

16. **GRANTOR NOT RELEASED; FORBEARANCE BY NOTEHOLDER NOT A WAIVER.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Noteholder to any successor in interest of Grantor shall not operate to release the liability of the original Grantor or Grantor's successors in interest. Noteholder shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Grantor or Grantor's successors in interest. Any forbearance by Noteholder in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

17. **INSPECTION.** Noteholder may make or cause to be made reasonable entries upon and inspections of the Properties, provided that Noteholder shall give Grantor notice prior to any such inspection specifying reasonable cause therefor related to Noteholder's interest in the Properties.

18. **MISCELLANEOUS.** The provisions of this Deed of Trust shall be binding upon and inure to the benefit of Grantor, Grantor's heirs, personal representatives, successors and assigns, the Trustees and any successor or substitute trustee or trustees and the holder of the Note hereby secured. Whenever used herein, the singular shall include the plural, the plural the singular and the use of any gender shall be applicable to all genders.

19. **GOVERNING LAW; SEVERABILITY.** The laws of the jurisdiction in which the Property is located shall govern this Deed of Trust. If any provision or clause of this Deed of

7

Trust or the Note conflicts with applicable law such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision. To this and the provisions of the Deed of Trust and the Note are declared to be severable.

20. **FURTHER ASSURANCES.** At any time, and from time to time upon request of Lender, Grantor, at the sole expense of Grantor, shall make, execute, deliver and record or cause to be made, executed, delivered and recorded, any and all further instruments, certificates and other documents as may in the opinion of Holder, be reasonably necessary in order to effectuate, complete, perfect or continue and preserve the obligations of Grantor or Borrower under the Loan Documents and the lien in this Deed of Trust, and all modifications, extensions and other amendments of same. **In this regard, if Borrower is a corporation, Borrower specifically agrees to execute a Stock Voting Trust when presented to it by Lender.**

21. **OCCUPANCY.** N/A

22. **CROSS COLLATERALIZATION.** This Deed of Trust is hereby cross collateralized and cross defaulted with any current or future loans made to this Borrower by this Lender and default on any loan will be a default on all loans.

Witness the hand and seal of the Borrower.

_____ (SEAL)
1230 23rd Street, LLC

STATE OF **VIRGINIA**
COUNTY OF **FAIRFAX**

I HEREBY CERTIFY that on **August 31, 2005**, before me, the subscriber, a Notary Public and in for the State and County aforesaid, personally appeared **Mary L. Juergens, Managing Member of 1230 23rd Street, LLC,** known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument bearing the date of **August 31, 2005** and acknowledged the same to be **her** act and deed for the purposes contained therein.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_____
Notary Public

My Commission Expires: 06/30/09

After recording mail to:

8

# Exhibit 7

 

# THIS DEED

**MADE** this 31st day of August, 2005, by and between MARY L. JUERGENS, Grantor and 1230 23rd STREET, LLC, a Virginia Limited Liability Company, Grantee:

**WITNESSETH**, that the Grantor, in consideration of Two Hundred Thousand Dollars ($200,000), to her paid by the Grantee, the receipt and sufficiency of which is hereby acknowledged, does hereby grant, sell, bargain and convey unto the Grantee, its heirs and assigns, in fee simple, the following described land and premises, with the improvements, easements, and appurtenances thereunto belonging, situate, lying and being in the District of Columbia and having the street address of 1230 23rd St., NW, Unit 505, Washington, D.C. 20037 and more particularly described as:

> Part of Lot Fifty (50) in Square Thirty-six (36), as per Plat recorded November 20, 1987 by 23 WEST LIMITED PARTNERSHIP in the Office of the surveyor of the District of Columbia in Liber 179 at Folio 182, now being more particularly described as follows:
>
> Condominium Unit 505, 1230-1250Twenty-Third Street Condominium and the limited common element parking spaces(s) no. 63, established by recording a Declaration and By-Laws on March 2, 1990 as Instrument No. 12871 in the Office of the Surveyor of the District of Columbia in Condominium Book 39 at Page 11.
>
> NOTE: The condominium unit is currently designated on the records of the Assessor of the District of Columbia for taxation purposes as Lot 2004 in Square 36.
>
> AND BEING the same property conveyed unto Mary L. JUERGENS, as sole owner, by virtue of a Deed granted by Alyson F. GANNON, dated September 21, 2001, and recorded September 24, 2001 as Instrument #92945, among the Land Records of the District of Columbia.

**SUBJECT, HOWEVER** to restrictions, conditions, rights of way and easements of record.

**AND** the Grantor herein warrants generally the property hereby conveyed and covenants to execute such further assurances of the land as may be requisite.

**WITNESS** the following signature and seal:

_(signature)_ (SEAL)
MARY L. JUERGENS, GRANTOR

COMMONWEALTH OF VIRGINIA       :
COUNTY OF FAIRFAX              :       To-Wit:

I, the undersigned, a Notary Public in and for the County and State aforesaid, do hereby certify that Mary L. Juergens, whose name is signed to the foregoing instrument, bearing date of _Augst 31_ , 2005 having acknowledged the same before me in my County and State aforesaid.

GIVEN under my hand and official seal this _31st_ day of _August_ , 2005.

_(signature)_
Notary Public

My Commission Expires: _06/30/09_

```
DocH 2005128724 Fees:$5525.50
09/21/2005    11:23AM Pages 2
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD


RECORDING                  $       20.00
SURCHARGE                  $        6.50
RECORDATION TAX FEE        $    2,750.00
TRANSFER TAX FEE           $    2,750.00
```

Exhibit 8

## NOTICE TO APPLICANT FOR A
## MORTGAGE LOAN
## COMMERCIAL LOAN DISCLOSURE

### IMPORTANT

### DO NOT SIGN THIS FORM UNTIL YOU HAVE CAREFULLY
### READ IT AND UNDERSTAND ITS CONTENTS

The purpose of this Disclosure is to inform you that by making an application for a mortgage loan which is a commercial loan, you are forfeiting certain rights as Borrower:

The provisions indicated below that are included in the loan you are making for commercial purposes would not be permitted in a non-commercial loan:

Check applicable provision(s):

**X**     A loan origination fee exceeding the greater of **$500.00** or **4%** of the net proceeds or a loan origination fee exceeding the greater of **$250.00** or **2%** of the net proceeds of any other secondary mortgage.

**X**     Payment to the Lender of additional commissions, finder's fees, or points for obtaining, procuring, or placing your loan.

**X**     An actual interest rate greater than 24 percent

I have carefully read and understand the contents of this disclosure on **August 31, 2005.**

_____(SEAL)
**1230 23rd Street, LLC**

1

# Exhibit 9

# FINANCING AGREEMENT

**THIS AGREEMENT** made **August 31, 2005** by and between FIRST MOUNT VERNON INDUSTRIAL LOAN ASSOCIATION, a Virginia corporation, hereinafter called the "Noteholder" and **1230 23rd Street, LLC**, hereinafter call the "Borrower".

WHEREAS, Borrower has applied to Noteholder for a loan in the principal sum of **Two Hundred Fifty Thousand Dollars and no/100ths ($250,000.00)**, being money loaned, with the entire remaining unpaid balance of principal and interest being due and payable on **September 1, 2007** and secured by a lien on the properties now known as **SEE ATTACHED LEGAL DESCRIPTION;** and

WHEREAS, Noteholder has agreed to make the aforesaid loan applied for by the Borrower provided Borrower will agree to the repayment of all principal and interest thereon according to the terms below:

**NOW, THEREFORE,** in consideration of the premises, Noteholder and Borrower hereby agrees as follows:

1. **Interest Rate.** The rate of interest to be charged Borrower(s) by Noteholder on the principal sum to be advanced, and the rate to be set forth in the contract of indebtedness covering the lien hereinabove described shall be a fixed rate of **Eighteen Percent (18%)** per annum. Payments shall be at least the monthly interest then due with a final payment plus accrued interest being due on or before **September 1, 2007.**

1 **Late Fees.** If the Noteholder has not received the full amount of any payment including the balloon payment by the end of five (5) calendar days after the date it is due, a late fee shall apply as follows: A late fee of **$650.00** shall become immediately due if payment is not received by the Noteholder by the 5th day of any month. IN ADDITION, A **TEN PERCENT (10%)** LATE FEE SHALL BE PAYABLE ON THE PRINCIPAL BALLOON PAYMENT SHOULD THE BORROWER NOT PAY SAID AMOUNT WITHIN FIVE (5) DAYS OF DUE DATE. Borrower shall also be responsible for the payment of Twenty-five Dollars ($25.00) for each check that upon presentment is returned unpaid from the Bank.

2. **Insurance.** Borrower(s) shall keep the Properties insured against hazard and name the Noteholder as an additional insured under the Mortgagee clause.

3. **Taxes.** Borrower(s) shall pay all taxes and assessments due upon the Properties.

4. **Points.** The total points to be charged Borrower(s) by Noteholder shall equal **$10,000.00.**

5. **Loan to Value Ratio.** N/A.

6. **Acknowledgement.** The parties hereto further acknowledge and affirm that this agreement as to the interest rate and late fees on the said loan, was executed by each of them prior to the execution of the contract of indebtedness between them, and further acknowledge receipt of a copy of this Agreement.

WITNESS the hand and seal of the Borrower.

_____(SEAL)
**1230 23rd Street, LLC**

1

# Exhibit 10

## BORROWER AFFIDAVIT

**Before me, the undersigned authority, on this day personally appeared 1230 23rd Street, LLC, and being first duly sworn, stated under penalties of perjury the following (please initial each line):**

**________ I am the Borrower described in a Note in favor of First Mount Vernon Industrial Loan Association in the amount of $250,000.00 dated August 31, 2005 and secured by real property known as 1230 23rd Street, Unit 505 and Parking Space 63, Washington, DC 20037;**

**________ I have previously informed First Mount Vernon Industrial Loan Association, either directly or through my representative(s), that the funds from this loan will be used entirely for commercial, business and/or investment purposes and I understand that the documents for this loan have been prepared based upon those representations.**

**________ During this closing process, I will not sign any documents which I do not understand. I further understand that if during settlement I do not understand any portion of any document I have been asked to sign, First Mount Vernon Industrial Loan Association will permit me to delay settlement for up to two (2) days in order to provide time for me to obtain the services of any attorney to answer my questions.**

**I any of the above statements are not correct, I will not sign this document and will so inform the closing agent so that the loan documents can be modified to conform with appropriate Federal and/or State requirements.**

**Witness my hand and seal on the day first above written.**

**______________________________(SEAL)**
**1230 23rd Street, LLC**

**Subscribed and sworn to before me, the undersigned Notary Public on August 31, 2005.**

**______________________________**
**Notary Public**
**My commission expires:** 06/30/09

Exhibit 11



**Government of the District of Columbia**

Office of Tax
and Revenue
Recorder of Deeds
515 D Street, NW
Washington, DC 20001
Phone (202)727-5374

## SECURITY AFFIDAVIT — CLASS 1

| 2004 | | 50 |
|------|--------|-----|
| Square | Suffix | Lot |

I, (We) MARY L. JUERGENS the owner(s) of the real property described within certify, subject to criminal penalties for making false statements pursuant to section 404 of the District of Columbia Theft and White Collar Crimes Act of 1982, effective December 1, 1982 (D.C. Law 4-164; D.C. Code 22-2405), that the real property described within is Class 1 Property, as that class of property established pursuant to D.C. Official Code 47-813(C-6)(2).

_____
Signature

_____
Signature

Subscribed and sworn to me before this 31st day of August , 200 5 .

_____
Notary Public

My Commission Expires: 06/30/05
                       /mm/dd/yyyy

Doc# 2005128725 Fees:$75.50
09/21/2005   11:23AM Pages 9
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD

RECORDING          $        69.00
SURCHARGE          $         6.50

# Exhibit 12


LT1-5-2006128726-1

## ASSIGNMENT OF CONTRACTS, INCOME
## LEASES, RENTS AND PROFITS

THIS ASSIGNMENT OF CONTRACTS, INCOME, LEASES, RENTS AND PROFITS is made **August 31, 2005** by and between **1230 23rd Street, LLC** (the "Borrower"), for the benefit of **First Mount Vernon Industrial Loan Association**, a Virginia corporation (the "Lender").

**WITNESSES THAT:**

LT2-0-0-10

**Whereas**, the Borrower is indebted to the Lender in the principal sum of **Two Hundred Fifty Thousand Dollars and no/100ths ($250,000.00)**, together with interest at the rate or rates provided in the Loan Documents (as defined below) until paid. This Assignment, together with that certain Deed of Trust of even date herewith encumbering the Property described herein, secures that certain Note of even date herewith in like amount, and is given in consideration of a purchase money loan in the principal amount hereof made by the Lender to the Borrower (the "Loan"), which Note provides for payments of principal and interest in accordance with the terms thereof, with the full debt, if not paid earlier, due and payable on **September 1, 2007**, and secures to Lender: (a) the repayment of the indebtedness evidenced by and owing under the Note, the Deed of Trust, this Assignment and any other Loan Documents (as defined below), including all future advances and readvances of principal thereunder, whether such advances are obligatory or are to be made at the option of the Lender, or otherwise, to the same extent as if such future advances were made on the date of the execution and delivery of this Assignment, it being agreed and understood that the total amount of the indebtedness so secured may increase or decrease from time to time; provided, however, that the aggregate principal indebtedness which the Lender may be obligated to advance to the Borrower shall not exceed the face amount of the Deed of Trust; and it being agreed and understood that the total indebtedness secured hereby shall include the principal amounts advanced or readvanced by the Lender, plus interest thereon, plus all other amounts, payments and premiums due to the Lender on account hereof, and all other indebtedness of the Borrower to the lender payable pursuant to or secured by the Loan Documents, with interest, and all renewals, extensions and modifications of the Note; (b) the repayment of all other sums, with interest, advanced under the provisions hereof to protect the security of this Assignment; and (c) the performance of Borrower's covenants and agreements hereunder and under the Note, and the other documents evidencing and securing the loan of even date (the "Loan Documents").

**NOW, THEREFORE,** in consideration of the sum of Ten Dollars ($10.00) and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Borrower covenants and agrees as follows:

1. **Grant of Collateral.**

The Borrower hereby grants, conveys, assigns, transfers, and sets over to the Lender, its successors and assigns, with power of sale, the following property (collectively called the "Collateral"):

1

**a. Contracts and Leases.** All right, title, interest and estate of the Borrower at law or equity, in to and under any and all contracts or leases and assignments, sublease agreements, licenses and other agreements for the sale or purchase or occupancy of all or any interest in or portion, or which benefit, cover, relate to, or affect all or any portion of the following described real property: **1230 23rd Street, Unit 505 and Parking Space 63, Washington, DC 20037.**

<div align="center">

**SEE ATTACHED LEGAL DESCRIPTION**

</div>

Together with all or any portion of the improvements now or hereafter located thereon (said land and improvements being hereafter collectively called the "Property"), whether such contracts, lease or sublease agreements, licenses and occupancy agreements now exist or are hereafter entered into by the Borrower, together with all extensions, renewals and modifications of, or substitutions for, such contracts, lease or sublease agreements, licenses and other occupancy agreements (such contracts, lease(s), and sublease agreements, licenses and other occupancy agreements, and all extensions, renewals and modifications of, or substitutions for the same being hereinafter referred to individually as an "Agreement", and collectively as the "Agreements");

**b. Income, Rents and Profits.** All income, rents, fees, profits, payments and other sums of money that may now or at any time hereafter be or become due and payable to the Borrower under the terms of the Agreements;

**c. Security and Earnest Money Deposits.** All good faith or security deposits now or hereafter made under, and all guarantees of, any and all of the Agreements; and

**d. Awards, Payments, Rights and Claims.** Any award(s) or payment(s) hereafter made to the Borrower in any bankruptcy, insolvency or reorganization proceeding involving any of the contracting parties to the Agreement; any and all payments now or hereafter made by any present or future tenant of the Property in lieu of rent; any and all rights, claims, actions and causes of action of every kind which the Borrower now has or may hereafter have against any present or future contracting parties to the Agreements; and any and all awards and payments made to the Borrower resulting from partial or complete taking of the Property by virtue of the power of eminent domain, or otherwise.

2. **Present and Absolute Assignment.**

This Assignment is an absolute and present transfer and assignment to the Lender of the Collateral and is made by the Borrower as security for the Loan described above.

3. **Covenants, Warranties and Representations of Borrower.**

<div align="center">2</div>

The Borrower hereby warrants, represents and agrees to or with the Lender that:

**a.   No Prior Conveyances.** There are no other (prior or subordinate) assignments of the Agreements or of the rents, rentals, fees, profits, payments or other sums of money that are now or may hereafter become due and payable hereunder;

**b.   No Collateral Defaults.** The Borrower has not performed any other act or executed any other instruments which might prevent the Lender from enjoying and exercising any of its rights and privileges granted hereby; and

**c.   Warranties as to Agreements.**  With respect to each Agreement presently in effect:

   i.   The Agreement is in full force and effect and is valid, binding and enforceable in accordance with its terms;

   ii.   As to each Agreement as to which the Borrower has provided the Lender with a copy, the Agreement has not been modified or amended in any respect, nor has any provision thereof been waived;

   iii.   None of the contracting parties to the Agreements are in default under the terms of the Agreements in any material respect;

   iv.   No rent has been prepaid under any lease beyond the rental due for the current month; and

   v.   No parties to any Agreement have any deduction, claim, recoupment or set-off against the Borrower thereunder, or against the rents or other sums payable or to be payable thereunder.

**d.   No Further Conveyances or Hypothecation of Collateral.** The Borrower agrees that, so long as the Indebtedness or any part thereof shall remain unpaid, it will:

   i.   Make no further assignment, pledge or disposition of the Collateral without the prior written consent of the Lender;

   ii.   Not enter, alter, amend, modify, terminate or renew the Agreements, or waive any condition thereof, without the prior written consent of the Lender;

3



iii.  Give prompt notice to the Lender of any default by any of the contracting parties to the Agreements, including themselves, together with a complete copy of any notice delivered as a result of such default; and

iv.  At its sole cost and expense, enforce, short of termination of any Agreements, the performances or observance of each and every covenant and condition of the Agreements to be performed or observed by the other contracting parties to the Agreements; provided, however, that any Agreement related to the Property made in the ordinary course of the Borrower's business which does not create an adverse change affecting the Property or the Lender's security, need not be approved by the Lender, but a copy of the same shall be forwarded to the Lender for its files.

**e. Performance.** The Borrower covenants with Lender to observe and perform when due all the obligations imposed upon them under the Agreements and not to do or permit to be done anything to impair the security thereof.

4.  **Tenant and Contractor Estoppels.**

In addition to any other provisions requested by the Lender, all Agreements shall contain a covenant to the Tenant or promissor to provide on five (5) days written notice estoppel certificates to the effect that (a) As to Leases, (i) all work has been completed and the work and premises are accepted as satisfactory except for items listed on a punch list, if any, attached to such certificate; (ii) the tenant is in full and complete possession, stating the date on which rent commenced to accrue and the date to which it is paid (which should not be more than one month in advance and not in default); and (b) as to all Agreements, (i) the Agreement is in full force and effect, and if it has been amended or modified, stating the amendment or modification; (ii) the tenant or promissor has received no notice of any sale, transfer, pledge or assignment of the Agreement or of the rentals or contract proceeds by the Borrower (except for the assignment to the Lender); (iii) the tenant or promissor has not advanced any amounts to or on behalf of the Borrower under the Agreement which have not been reimbursed; (iv) the tenant or promissor holds no claim against the Borrower which might be set off against accruing rentals or contract proceeds; and (v) the tenant or promissor understands that the Agreement has been collaterally assigned to the Lender as security for a loan to Borrower and that rent (under a Lease) may not be prepaid nor the Agreement amended or modified, or waived so as to have a material impact on the financial obligations of either the tenant/promissor or the Borrower thereunder without the Lender's prior written approval.

5.  **Collection and Possession of Collateral Prior to Default.**

It is the intention of the parties that this Assignment of Contracts, Income, Leases, Rents and Profits shall be a present assignment; provided, however, that if

a.  The Borrower is not in default under the Note or any Loan Documents;

4

**b.** The Borrower has not breached any warranty, representation or agreement contained herein; and

**c.** There exists no misrepresentation by the Borrower in the Note or the Loan Documents, then the Borrower shall be entitled to collect all monies, rents, rentals, fees, profits, payments and other sums of money that become due and payable under the Agreements, but not more than one (1) month's rent in advance under any lease, without the written consent of the Lender. In the event of any such default which has not been cured during any applicable notice period, breach or misrepresentation by the Borrower, the Lender, or any agent designated by the Lender, shall have the right, power and privilege (but shall be under no obligation or duty) to take possession of the Property or any of the premises described in any lease, or any part thereof, or any part or item related thereto, including any documents, books, records, plans and specifications and accounts of the Borrower related thereto, and have, hold, manage, lease, insure, maintain and operate (including the making of repairs, alterations, additions and betterments) the same on such terms and for such period of time as the Lender may deem proper, and either with or without taking possession of said premises, Lender shall have the right, power and privilege (but shall be under no duty), and is hereby appointed by the Borrower at its true and lawful attorney-in-fact, with power of substitution, immediately to complete the performance of the Borrower under such Agreements, and collect and sue for, in its own name, or in the name of the Borrower, such income, rents, rentals, fees, payments or other sums of money as they become due. The appointment of the Lender as attorney-in-fact shall be deemed to constitute a power of attorney coupled with an interest and shall not be recoverable. A written demand by the Lender to any contracting party for the payment of income, rent, rentals, fees, profits, payments and other sums of money that become due under the Agreements, after the occurrence of any such default, breach or misrepresentation by Borrower claimed by the Lender, shall be sufficient to warrant the other contracting parties to make all future payments of such income, rents, rentals, fees, payments and other sums of money directly to the Lender without the necessity for further consent by the Borrower. Each such contracting party shall be entitled to rely upon a written demand by the Lender for such payment (without any further inquiry) and is expressly relieved of any and all duty, liability or obligation to the Borrower for all payments so made.

6. **Collection and Possession of Collateral after Default.**

The Lender, in the exercise of the rights and powers conferred upon it by this Assignment, shall have full power to use and apply the income, rents, rentals, fees, payments and other sums of money that become due under the Agreements to the payment of, or on account of, the following, and in such order as Lender, in its sole discretion, may determine:

**a.** To the costs of collecting the same or performance under the Agreements (including, without limitation, attorney's fees);

5



**b.** To the payment of the sales or operating expenses of the Property, including, but not limited to, insurance, management fees and sales or leasing commissions;

**c.** To the payment of taxes and assessments (general and/or special) levied against the Property;

**d.** To the payment of the costs of all repairs, renovations, alterations, additions, betterments and improvements necessary, in the sole judgment of the Lender, to make the Property readily or more easily saleable or rentable; and

**e.** To the payment of the Indebtedness.

7. <u>**Indemnification of Lender.**</u>

The Lender shall not be liable for any loss sustained by the Borrower, or from any other act or omission of the Lender in managing the premises described in the Agreements after default by the Borrower, unless such loss is caused by the willful misconduct or bad faith of the Lender, nor shall the Lender be obligated to perform or discharge any obligation, duty or liability under said Agreements, or under or by reason of this Assignment of Contracts. The Borrower shall and hereby agrees to indemnify the Lender for, and to hold the Lender harmless from and against, any and all liability, claim, demand, loss or damage that may or might be incurred by the Lender under the Agreements or under or by reason of this Assignment of Contracts, and/or that result from any and all claims and demands whatsoever which may be asserted against the Lender by reason of any alleged obligations or undertakings on the Lender's part to perform or discharge any of the terms, covenants or agreements contained in the Agreements, such indemnification to include the Lender's attorney's fees. In the event the Lender incurs any such liability under the Agreements, or under or by reason of this Assignment, or in defense of any such claims or demands, the amount thereof, including costs, expenses and attorney's fees, shall be secured hereby; and the Borrower shall reimburse the Lender therefor immediately upon demand, failing which the Lender may, at its option, declare all sums secured hereby or by any Loan Documents to be immediately due and payable. This Agreement shall not operate to place any obligation or responsibility upon the Lender for the control, care, management or repair of the premises covered by the Agreements, nor for the carrying out of any of the terms and conditions of the Agreements, nor shall it operate to make the Lender responsible or liable for any waste committed on the Property by any tenants or for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.

8. <u>**Mortgagee in Possession.**</u>

This Assignment shall not be construed as constituting the Lender as "mortgagee in possession" of the Property in absence of the taking of actual possession of the Property. In the

6



exercise of any of the powers herein granted the Lender, no liability or claim of any kind relating or enforced against the Lender, shall be allowed, and all such liabilities and claims being expressly waived and released by the Borrower.

### 9. Waiver by Lender.

Nothing contained herein and no act done or omitted by the Lender pursuant to the powers and rights granted it hereunder shall be deemed to be a waiver by the Lender of its rights and remedies under the Note and Loan Documents, or any one of them, and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by the Lender under the terms of the Note or the Loan Documents. The right of the Lender to collect all sums due under the Note and to enforce the terms of the Loan Documents may be exercised by the Lender either prior to, simultaneously with, or subsequent to any action taken by it hereunder. Any default hereunder by the Borrower shall constitute a default under the Note and all Loan Documents, in which event, the Lender, at its option, may declare all sums secured hereby or by the Loan Documents to be immediately due and payable.

### 10. Other Collateral.

The Lender may take or release other security, may release any party primarily or secondarily liable for the Indebtedness, and may apply the other security therefor held by it to the satisfaction of the Indebtedness, without prejudice to any of its rights hereunder.

### 11. Performance of Borrower's Obligations by Lender.

The Lender may, at its option, after default hereunder or under any of the Loan Documents, although it shall not be obligated to do so, perform any covenant in the Agreements for and on behalf of the Borrower, and any monies expended in so doing shall be chargeable with interest (at the rate provided in the Note) to the Borrower, and added to the Indebtedness.

### 12. Notice to Third Parties.

The Borrower hereby authorizes the Lender to give written notice of this Assignment at any time and from time to time to any present or future contracting party to the Agreements.

### 13. Release.

Upon the full payment of the Indebtedness and the performance by the Borrower of all obligations under the Loan Documents, and upon release of the Deed of Trust of record, this Assignment shall terminate and thereafter become null and void.

### 14. Miscellaneous.

**a. Covenants of Performance.** All of the agreements, conditions, covenants and provisions contained in each of the Loan Documents are hereby made a part of this instrument to the same extent as if they were fully set forth herein. The Guarantor covenants and agrees to

7



keep and perform, or cause to be kept and performed, all such agreements, conditions, covenants and provisions strictly in accordance with their terms.

**b. Notices.** All notices to be given pursuant to this instrument shall be sufficient if mailed postage prepaid, certified or registered mail, return receipt requested, to the addresses of the parties hereto set forth in any of the Loan Documents, or to such other address as a party may instruct in writing. Any time period provided in the giving of any notice hereunder shall commence upon the date such notice is deposited in the mail.

**c. Completeness of Agreement.** This instrument and the other Loan Documents contain the final and entire agreement between the parties hereto, and neither they nor their agents shall be bound by any terms, conditions or representations not herein or therein written.

**d. Changes.** No change or modification to this instrument shall be valid unless the same is in writing and signed by the parties hereto. The purported or alleged waiver of any of the provisions of this instrument shall not be binding or effective unless in writing and signed by the party against whom it is sought to be enforced.

**e. Enforceability.** The covenants, conditions and agreements contained in this instrument to be performed by the Borrowers and Guarantors herein are jointly and severally binding on each of the Borrowers and Guarantors herein and their heirs, executors, administrators, successors and assigns.

**f. Cumulative, Non-exclusive Rights.** The rights and remedies of the Lender under this instrument are cumulative and concurrent with and are not in lieu of, but are in addition to any other rights or remedies which the Lender shall have under the Note or the other Loan Documents, or at law or in equity.

**g. Non-Waiver.** No waiver of any breach of any covenant hereof shall be construed to be a waiver of the covenant itself or of any subsequent breach thereof, or of this instrument.

**h. Captions.** The captions contained in this instrument are for convenience and reference only and in no way define, describe or limit the scope or intent of this instrument or any of the provisions or terms hereof.

**i. Severability.** If any terms, covenants or conditions of this instrument, or its application to any person or circumstance, shall be invalid or unenforceable, the remainder of this instrument or the application of such term or provision to person or circumstances other than

8

those to which it is held invalid or unenforceable shall not be affected, and each term shall be valid and enforceable to the fullest extent permitted by law.

**j. Joint Venture.** Any intention to create hereby a joint venture or partnership relation between the parties hereto is expressly disclaimed.

**k. Governing Law.** The parties hereto agree that this instrument shall be governed by the laws of the jurisdiction in which the property is located.

**IN WITNESS WHEREOF,** the Borrower, with full power and authority to do so, intending that this Assignment shall constitute an instrument under seal, has executed or caused these presents to be executed, delivered, and sealed on the day and year first above written.

BORROWER:

_____(SEAL)
1230 23rd Street, LLC

**STATE OF VIRGINIA**
**COUNTY OF FAIRFAX**

I HEREBY CERTIFY that on **August 31, 2005,** before me, the subscriber, a Notary Public in and for the State and County aforesaid, personally appeared **Mary L. Juergens, Managing Member of 1230 23rd Street, LLC,** known to me or satisfactorily proven to the be person whose name is subscribed to the within instrument bearing the date of **August 31, 2005,** and acknowledged the same to be **her** act and deed for the purposes contained therein.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_____
Notary Public
My Commission Expires: 06/30/07

9

# Exhibit 13

# COMMONWEALTH of VIRGINIA

NOTARY DIVISION
POST OFFICE BOX 1795

*Secretary of the Commonwealth*

RICHMOND, VIRGIN

December 1, 2006

To Whom It May Concern;

According to the Commonwealth of Virginia's Notary records, we do not show Arthur G. Bennett or Dale E. Duncan commissioned as Notaries in the Commonwealth of Virgina.

If I can be of any additional assistance, please contact me at 804 692 2636.

Denise McDaniel
Notary Specialist