# Exhibit 4

## BORROWER AFFIDAVIT

**Before me, the undersigned authority, on this day personally appeared 1230 23rd Street, LLC, and being first duly sworn, stated under penalties of perjury the following (please initial each line):**

**_______ I am the Borrower described in a Note in favor of First Mount Vernon Industrial Loan Association in the amount of $250,000.00 dated August 31, 2005 and secured by real property known as 1230 23rd Street, Unit 505 and Parking Space 63, Washington, DC 20037;**

**_______ I have previously informed First Mount Vernon Industrial Loan Association, either directly or through my representative(s), that the funds from this loan will be used entirely for commercial, business and/or investment purposes and I understand that the documents for this loan have been prepared based upon those representations.**

**________ During this closing process, I will not sign any documents which I do not understand. I further understand that if during settlement I do not understand any portion of any document I have been asked to sign, First Mount Vernon Industrial Loan Association will permit me to delay settlement for up to two (2) days in order to provide time for me to obtain the services of any attorney to answer my questions.**

**I any of the above statements are not correct, I will not sign this document and will so inform the closing agent so that the loan documents can be modified to conform with appropriate Federal and/or State requirements.**

**Witness my hand and seal on the day first above written.**

**______________________________(SEAL)**
**1230 23rd Street, LLC**

**Subscribed and sworn to before me, the undersigned Notary Public on August 31, 2005.**

**______________________________**
**Notary Public**
**My commission expires:** 06/30/09

# Exhibit 5



**Government of the District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
515 D Street, NW
Washington, DC 20001
Phone (202)727-5374

**SECURITY AFFIDAVIT — CLASS 1**

| 2004 | | 50 |
|------|------|-----|
| Square | Suffix | Lot |

I, (We) **MARY L. JUERGENS** the owner(s) of the real property described within certify, subject to criminal penalties for making false statements pursuant to section 404 of the District of Columbia Theft and White Collar Crimes Act of 1982, effective December 1, 1982 (D.C. Law 4-164; D.C. Code 22-2405), that the real property described within is Class 1 Property, as that class of property established pursuant to D.C. Official Code 47-813(C-6)(2).

_Signature_

_Signature_

Subscribed and sworn to me before this **31st** day of **August**, 200**5**.

_Notary Public_

My Commission Expires: **06/30/05**
/mm/dd/yyyy

```
Doc# 2005128725 Fees:$75.50
08/21/2005    11:23AM Pages 9
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD
```

RECORDING          $   69.00
SURCHARGE          $    6.50

# Exhibit 6

# Exhibit 6

LT1-5-2006128726-1

## ASSIGNMENT OF CONTRACTS, INCOME LEASES, RENTS AND PROFITS

THIS ASSIGNMENT OF CONTRACTS, INCOME, LEASES, RENTS AND PROFITS is made **August 31, 2005** by and between **1230 23rd Street, LLC** (the "Borrower"), for the benefit of **First Mount Vernon Industrial Loan Association**, a Virginia corporation (the "Lender").

**WITNESSES THAT:**

LT2-0-0-10

**Whereas**, the Borrower is indebted to the Lender in the principal sum of **Two Hundred Fifty Thousand Dollars and no/100ths ($250,000.00)**, together with interest at the rate or rates provided in the Loan Documents (as defined below) until paid. This Assignment, together with that certain Deed of Trust of even date herewith encumbering the Property described herein, secures that certain Note of even date herewith in like amount, and is given in consideration of a purchase money loan in the principal amount hereof made by the Lender to the Borrower (the "Loan"), which Note provides for payments of principal and interest in accordance with the terms thereof, with the full debt, if not paid earlier, due and payable on **September 1, 2007**, and secures to Lender: (a) the repayment of the indebtedness evidenced by and owing under the Note, the Deed of Trust, this Assignment and any other Loan Documents (as defined below), including all future advances and readvances of principal thereunder, whether such advances are obligatory or are to be made at the option of the Lender, or otherwise, to the same extent as if such future advances were made on the date of the execution and delivery of this Assignment, it being agreed and understood that the total amount of the indebtedness so secured may increase or decrease from time to time; provided, however, that the aggregate principal indebtedness which the Lender may be obligated to advance to the Borrower shall not exceed the face amount of the Deed of Trust; and it being agreed and understood that the total indebtedness secured hereby shall include the principal amounts advanced or readvanced by the Lender, plus interest thereon, plus all other amounts, payments and premiums due to the Lender on account hereof, and all other indebtedness of the Borrower to the lender payable pursuant to or secured by the Loan Documents, with interest, and all renewals, extensions and modifications of the Note; (b) the repayment of all other sums, with interest, advanced under the provisions hereof to protect the security of this Assignment; and (c) the performance of Borrower's covenants and agreements hereunder and under the Note, and the other documents evidencing and securing the loan of even date (the "Loan Documents").

**NOW, THEREFORE**, in consideration of the sum of Ten Dollars ($10.00) and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Borrower covenants and agrees as follows:

1. **Grant of Collateral.**

The Borrower hereby grants, conveys, assigns, transfers, and sets over to the Lender, its successors and assigns, with power of sale, the following property (collectively called the "Collateral"):

1

**a. Contracts and Leases.** All right, title, interest and estate of the Borrower at law or equity, in to and under any and all contracts or leases and assignments, sublease agreements, licenses and other agreements for the sale or purchase or occupancy of all or any interest in or portion, or which benefit, cover, relate to, or affect all or any portion of the following described real property: **1230 23rd Street, Unit 505 and Parking Space 63, Washington, DC 20037.**

### SEE ATTACHED LEGAL DESCRIPTION

Together with all or any portion of the improvements now or hereafter located thereon (said land and improvements being hereafter collectively called the "Property"), whether such contracts, lease or sublease agreements, licenses and occupancy agreements now exist or are hereafter entered into by the Borrower, together with all extensions, renewals and modifications of, or substitutions for, such contracts, lease or sublease agreements, licenses and other occupancy agreements (such contracts, lease(s), and sublease agreements, licenses and other occupancy agreements, and all extensions, renewals and modifications of, or substitutions for the same being hereinafter referred to individually as an "Agreement", and collectively as the "Agreements");

**b. Income, Rents and Profits.** All income, rents, fees, profits, payments and other sums of money that may now or at any time hereafter be or become due and payable to the Borrower under the terms of the Agreements;

**c. Security and Earnest Money Deposits.** All good faith or security deposits now or hereafter made under, and all guarantees of, any and all of the Agreements; and

**d. Awards, Payments, Rights and Claims.** Any award(s) or payment(s) hereafter made to the Borrower in any bankruptcy, insolvency or reorganization proceeding involving any of the contracting parties to the Agreement; any and all payments now or hereafter made by any present or future tenant of the Property in lieu of rent; any and all rights, claims, actions and causes of action of every kind which the Borrower now has or may hereafter have against any present or future contracting parties to the Agreements; and any and all awards and payments made to the Borrower resulting from partial or complete taking of the Property by virtue of the power of eminent domain, or otherwise.

2. **Present and Absolute Assignment.**

This Assignment is an absolute and present transfer and assignment to the Lender of the Collateral and is made by the Borrower as security for the Loan described above.

3. **Covenants, Warranties and Representations of Borrower.**

The Borrower hereby warrants, represents and agrees to or with the Lender that:

**a. No Prior Conveyances.** There are no other (prior or subordinate) assignments of the Agreements or of the rents, rentals, fees, profits, payments or other sums of money that are now or may hereafter become due and payable hereunder;

**b. No Collateral Defaults.** The Borrower has not performed any other act or executed any other instruments which might prevent the Lender from enjoying and exercising any of its rights and privileges granted hereby; and

**c. Warranties as to Agreements.** With respect to each Agreement presently in effect:

i. The Agreement is in full force and effect and is valid, binding and enforceable in accordance with its terms;

ii. As to each Agreement as to which the Borrower has provided the Lender with a copy, the Agreement has not been modified or amended in any respect, nor has any provision thereof been waived;

iii. None of the contracting parties to the Agreements are in default under the terms of the Agreements in any material respect;

iv. No rent has been prepaid under any lease beyond the rental due for the current month; and

v. No parties to any Agreement have any deduction, claim, recoupment or set-off against the Borrower thereunder, or against the rents or other sums payable or to be payable thereunder.

**d. No Further Conveyances or Hypothecation of Collateral.** The Borrower agrees that, so long as the Indebtedness or any part thereof shall remain unpaid, it will:

i. Make no further assignment, pledge or disposition of the Collateral without the prior written consent of the Lender;

ii. Not enter, alter, amend, modify, terminate or renew the Agreements, or waive any condition thereof, without the prior written consent of the Lender;

3



    iii.    Give prompt notice to the Lender of any default by any of the contracting parties to the Agreements, including themselves, together with a complete copy of any notice delivered as a result of such default; and

    iv.    At its sole cost and expense, enforce, short of termination of any Agreements, the performances or observance of each and every covenant and condition of the Agreements to be performed or observed by the other contracting parties to the Agreements; provided, however, that any Agreement related to the Property made in the ordinary course of the Borrower's business which does not create an adverse change affecting the Property or the Lender's security, need not be approved by the Lender, but a copy of the same shall be forwarded to the Lender for its files.

**e. Performance.** The Borrower covenants with Lender to observe and perform when due all the obligations imposed upon them under the Agreements and not to do or permit to be done anything to impair the security thereof.

### 4. Tenant and Contractor Estoppels.

In addition to any other provisions requested by the Lender, all Agreements shall contain a covenant to the Tenant or promissor to provide on five (5) days written notice estoppel certificates to the effect that (a) As to Leases, (i) all work has been completed and the work and premises are accepted as satisfactory except for items listed on a punch list, if any, attached to such certificate; (ii) the tenant is in full and complete possession, stating the date on which rent commenced to accrue and the date to which it is paid (which should not be more than one month in advance and not in default); and (b) as to all Agreements, (i) the Agreement is in full force and effect, and if it has been amended or modified, stating the amendment or modification; (ii) the tenant or promissor has received no notice of any sale, transfer, pledge or assignment of the Agreement or of the rentals or contract proceeds by the Borrower (except for the assignment to the Lender); (iii) the tenant or promissor has not advanced any amounts to or on behalf of the Borrower under the Agreement which have not been reimbursed; (iv) the tenant or promissor holds no claim against the Borrower which might be set off against accruing rentals or contract proceeds; and (v) the tenant or promissor understands that the Agreement has been collaterally assigned to the Lender as security for a loan to Borrower and that rent (under a Lease) may not be prepaid nor the Agreement amended or modified, or waived so as to have a material impact on the financial obligations of either the tenant/promissor or the Borrower thereunder without the Lender's prior written approval.

### 5. Collection and Possession of Collateral Prior to Default.

It is the intention of the parties that this Assignment of Contracts, Income, Leases, Rents and Profits shall be a present assignment; provided, however, that if

    a.    The Borrower is not in default under the Note or any Loan Documents;

b. The Borrower has not breached any warranty, representation or agreement contained herein; and

c. There exists no misrepresentation by the Borrower in the Note or the Loan Documents, then the Borrower shall be entitled to collect all monies, rents, rentals, fees, profits, payments and other sums of money that become due and payable under the Agreements, but not more than one (1) month's rent in advance under any lease, without the written consent of the Lender. In the event of any such default which has not been cured during any applicable notice period, breach or misrepresentation by the Borrower, the Lender, or any agent designated by the Lender, shall have the right, power and privilege (but shall be under no obligation or duty) to take possession of the Property or any of the premises described in any lease, or any part thereof, or any part or item related thereto, including any documents, books, records, plans and specifications and accounts of the Borrower related thereto, and have, hold, manage, lease, insure, maintain and operate (including the making of repairs, alterations, additions and betterments) the same on such terms and for such period of time as the Lender may deem proper, and either with or without taking possession of said premises, Lender shall have the right, power and privilege (but shall be under no duty), and is hereby appointed by the Borrower at its true and lawful attorney-in-fact, with power of substitution, immediately to complete the performance of the Borrower under such Agreements, and collect and sue for, in its own name, or in the name of the Borrower, such income, rents, rentals, fees, payments or other sums of money as they become due. The appointment of the Lender as attorney-in-fact shall be deemed to constitute a power of attorney coupled with an interest and shall not be recoverable. A written demand by the Lender to any contracting party for the payment of income, rent, rentals, fees, profits, payments and other sums of money that become due under the Agreements, after the occurrence of any such default, breach or misrepresentation by Borrower claimed by the Lender, shall be sufficient to warrant the other contracting parties to make all future payments of such income, rents, rentals, fees, payments and other sums of money directly to the Lender without the necessity for further consent by the Borrower. Each such contracting party shall be entitled to rely upon a written demand by the Lender for such payment (without any further inquiry) and is expressly relieved of any and all duty, liability or obligation to the Borrower for all payments so made.

6. **Collection and Possession of Collateral after Default.**

The Lender, in the exercise of the rights and powers conferred upon it by this Assignment, shall have full power to use and apply the income, rents, rentals, fees, payments and other sums of money that become due under the Agreements to the payment of, or on account of, the following, and in such order as Lender, in its sole discretion, may determine:

a. To the costs of collecting the same or performance under the Agreements (including, without limitation, attorney's fees);

5

    **b.** To the payment of the sales or operating expenses of the Property, including, but not limited to, insurance, management fees and sales or leasing commissions;

    **c.** To the payment of taxes and assessments (general and/or special) levied against the Property;

    **d.** To the payment of the costs of all repairs, renovations, alterations, additions, betterments and improvements necessary, in the sole judgment of the Lender, to make the Property readily or more easily saleable or rentable; and

    **e.** To the payment of the Indebtedness.

    7. **Indemnification of Lender.**

    The Lender shall not be liable for any loss sustained by the Borrower, or from any other act or omission of the Lender in managing the premises described in the Agreements after default by the Borrower, unless such loss is caused by the willful misconduct or bad faith of the Lender, nor shall the Lender be obligated to perform or discharge any obligation, duty or liability under said Agreements, or under or by reason of this Assignment of Contracts. The Borrower shall and hereby agrees to indemnify the Lender for, and to hold the Lender harmless from and against, any and all liability, claim, demand, loss or damage that may or might be incurred by the Lender under the Agreements or under or by reason of this Assignment of Contracts, and/or that result from any and all claims and demands whatsoever which may be asserted against the Lender by reason of any alleged obligations or undertakings on the Lender's part to perform or discharge any of the terms, covenants or agreements contained in the Agreements, such indemnification to include the Lender's attorney's fees. In the event the Lender incurs any such liability under the Agreements, or under or by reason of this Assignment, or in defense of any such claims or demands, the amount thereof, including costs, expenses and attorney's fees, shall be secured hereby; and the Borrower shall reimburse the Lender therefor immediately upon demand, failing which the Lender may, at its option, declare all sums secured hereby or by any Loan Documents to be immediately due and payable. This Agreement shall not operate to place any obligation or responsibility upon the Lender for the control, care, management or repair of the premises covered by the Agreements, nor for the carrying out of any of the terms and conditions of the Agreements, nor shall it operate to make the Lender responsible or liable for any waste committed on the Property by any tenants or for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.

    8. **Mortgagee in Possession.**

    This Assignment shall not be construed as constituting the Lender as "mortgagee in possession" of the Property in absence of the taking of actual possession of the Property. In the

6  

exercise of any of the powers herein granted the Lender, no liability or claim of any kind relating or enforced against the Lender, shall be allowed, and all such liabilities and claims being expressly waived and released by the Borrower.

9. **Waiver by Lender.**

Nothing contained herein and no act done or omitted by the Lender pursuant to the powers and rights granted it hereunder shall be deemed to be a waiver by the Lender of its rights and remedies under the Note and Loan Documents, or any one of them, and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by the Lender under the terms of the Note or the Loan Documents. The right of the Lender to collect all sums due under the Note and to enforce the terms of the Loan Documents may be exercised by the Lender either prior to, simultaneously with, or subsequent to any action taken by it hereunder. Any default hereunder by the Borrower shall constitute a default under the Note and all Loan Documents, in which event, the Lender, at its option, may declare all sums secured hereby or by the Loan Documents to be immediately due and payable.

10. **Other Collateral.**

The Lender may take or release other security, may release any party primarily or secondarily liable for the Indebtedness, and may apply the other security therefor held by it to the satisfaction of the Indebtedness, without prejudice to any of its rights hereunder.

11. **Performance of Borrower's Obligations by Lender.**

The Lender may, at its option, after default hereunder or under any of the Loan Documents, although it shall not be obligated to do so, perform any covenant in the Agreements for and on behalf of the Borrower, and any monies expended in so doing shall be chargeable with interest (at the rate provided in the Note) to the Borrower, and added to the Indebtedness.

12. **Notice to Third Parties.**

The Borrower hereby authorizes the Lender to give written notice of this Assignment at any time and from time to time to any present or future contracting party to the Agreements.

13. **Release.**

Upon the full payment of the Indebtedness and the performance by the Borrower of all obligations under the Loan Documents, and upon release of the Deed of Trust of record, this Assignment shall terminate and thereafter become null and void.

14. **Miscellaneous.**

a. **Covenants of Performance.** All of the agreements, conditions, covenants and provisions contained in each of the Loan Documents are hereby made a part of this instrument to the same extent as if they were fully set forth herein. The Guarantor covenants and agrees to

7



keep and perform, or cause to be kept and performed, all such agreements, conditions, covenants and provisions strictly in accordance with their terms.

 **b. Notices.** All notices to be given pursuant to this instrument shall be sufficient if mailed postage prepaid, certified or registered mail, return receipt requested, to the addresses of the parties hereto set forth in any of the Loan Documents, or to such other address as a party may instruct in writing. Any time period provided in the giving of any notice hereunder shall commence upon the date such notice is deposited in the mail.

 **c. Completeness of Agreement.** This instrument and the other Loan Documents contain the final and entire agreement between the parties hereto, and neither they nor their agents shall be bound by any terms, conditions or representations not herein or therein written.

 **d. Changes.** No change or modification to this instrument shall be valid unless the same is in writing and signed by the parties hereto. The purported or alleged waiver of any of the provisions of this instrument shall not be binding or effective unless in writing and signed by the party against whom it is sought to be enforced.

 **e. Enforceability.** The covenants, conditions and agreements contained in this instrument to be performed by the Borrowers and Guarantors herein are jointly and severally binding on each of the Borrowers and Guarantors herein and their heirs, executors, administrators, successors and assigns.

 **f. Cumulative, Non-exclusive Rights.** The rights and remedies of the Lender under this instrument are cumulative and concurrent with and are not in lieu of, but are in addition to any other rights or remedies which the Lender shall have under the Note or the other Loan Documents, or at law or in equity.

 **g. Non-Waiver.** No waiver of any breach of any covenant hereof shall be construed to be a waiver of the covenant itself or of any subsequent breach thereof, or of this instrument.

 **h. Captions.** The captions contained in this instrument are for convenience and reference only and in no way define, describe or limit the scope or intent of this instrument or any of the provisions or terms hereof.

 **i. Severability.** If any terms, covenants or conditions of this instrument, or its application to any person or circumstance, shall be invalid or unenforceable, the remainder of this instrument or the application of such term or provision to person or circumstances other than

8

those to which it is held invalid or unenforceable shall not be affected, and each term shall be valid and enforceable to the fullest extent permitted by law.

    **j. Joint Venture.** Any intention to create hereby a joint venture or partnership relation between the parties hereto is expressly disclaimed.

    **k. Governing Law.** The parties hereto agree that this instrument shall be governed by the laws of the jurisdiction in which the property is located.

**IN WITNESS WHEREOF,** the Borrower, with full power and authority to do so, intending that this Assignment shall constitute an instrument under seal, has executed or caused these presents to be executed, delivered, and sealed on the day and year first above written.

                                **BORROWER:**

                                _____(SEAL)
                                1230 23rd Street, LLC

**STATE OF VIRGINIA**
**COUNTY OF FAIRFAX**

    I HEREBY CERTIFY that on **August 31, 2005**, before me, the subscriber, a Notary Public in and for the State and County aforesaid, personally appeared **Mary L. Juergens, Managing Member of 1230 23rd Street, LLC,** known to me or satisfactorily proven to the be person whose name is subscribed to the within instrument bearing the date of **August 31, 2005,** and acknowledged the same to be **her** act and deed for the purposes contained therein.

    IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

                                _____
                                Notary Public
                                My Commission Expires: 06/30/05

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| MARY JUERGENS ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number: 06-CA-1524 |
| ) | |
| URBAN TITLE SERVICES, INC., et al. ) | |
| ) | |
| Defendants. ) | |

### ORDER GRANTING PLAINTIFF JUERGENS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON ISSUE OF THE LACK OF PROPERLY EXECUTED DEED TO 1230 23rd STREET, N.W., #505 BETWEEN MARY JUERGENS AND THE "1230 23rd STREET, LLC"

Upon consideration of Plaintiff Mary Juergens' motion for partial summary judgment on the issue of the lack of a properly executed deed to 1230 23rd Street, N.W., Apt. 505, between Plaintiff Juergens and the "1230 23rd Street, LLC" and any response thereto, it is hereby ordered that the motion for partial summary judgment is GRANTED.

It is further ordered that the court has decided as a matter of fact and law that there was no properly executed deed to 1230 23rd Street, N.W., Apt. 505 between Mary Juergens and the "1230 23rd Street, LLC."

_____          _____
Date                                              Colleen Kollar-Kotelly
                                                      United States District Judge