IN THE
**UNITED STATES DISTRICT COURT**
FOR THE
**DISTRICT OF COLUMBIA**
(Civil Division)

| | | |
|---|---|---|
| MARY JUERGENS | ) | CASE NUMBER: 1:06-cv-01524 |
| Plaintiff, | ) | |
| vs. | ) | JUDGE: Colleen Kollar-Kotelly |
| | ) | |
| URBAN TITLE SERVICES, LLC, *et al.,* | ) | DECK TYPE: General Civil |
| | ) | |
| Defendants. | ) | |
| | ) | |

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNTS OF AMENDED COMPLAINT OF CO-DEFENDANTS FIRST MOUNT VERNON MORTGAGE, L.L.C. AND DALE DUNCAN

Co-Defendants, First Mount Vernon, L.L.C., a Virginia limited liability company, ("FMVLLC"), and Dale Duncan ("Duncan") (collectively, "Movants"), by and through undersigned counsel, file this Memorandum of Points and Authorities in support of their Motion to Dismiss the Amended Complaint as to them as follows:

### FACTS

Under familiar principles, the facts alleged in the new Amended Complaint are to be presumed as true. *Schuler v. United States,* 617 F.2d 605, 608 (D.C. Cir. 1979). Because Movants are of the view that the alleged facts of the case are well-known to the Court and the other parties, in the interests of economy of time and judicial resources, only those new or additional facts relevant to the particular count or issue will be noted below.[1]

Nevertheless, in what appears to be a contradiction to the facts alleged in the original Complaint, Plaintiff now admits that she signed loan documents in the presence of either Mr. Bennett or Mr. Duncan in the offices of First Mount Vernon Industrial Loan Association in

---
[1] Unless otherwise noted, terms or references used in the Movants' Motion or the new Amended Complaint shall apply herein.

Alexandria, Virginia.  *Amended Complaint ("AC") at pars.* 92, 97, and 76-79.  The Loan closing took place in the Commonwealth of Virginia.  *Id.*  However, because she would not be able to explain how she came into possession of a check for $95,000 if she did not sign documents, Plaintiff now alleges that she "does *not believe* that the signature on the versions of the documents that are attached as exhibits to the instant complaint are her own genuine signatures."  *AC at* par. 83 (emphasis supplied).

## DISCUSSION

Although dozens of additional paragraphs of facts and allegations are added by the new AC, Plaintiff still has failed to state a claim upon which relief may be granted as to various counts or matters against the Movants.  This honorable Court is not bound to accept or abide by inferences not supported by the facts set out in the AC, or legal conclusions of the Plaintiff.  See *Kowal v. MCI Communications Corporation*, 16 F.3d 1271 (D.C. Cir. 1994); *Taylor v. FDIC*, 132 F.3d 753 (D.C. Cir. 1997).

I.  <u>Alleged Contractual Liability Incorrect.</u>

As set forth in this honorable Court's Memorandum Opinion (p.17-20) there were no allegations of a contract in the original Complaint sufficient to support a claim of breach of contract with respect to Movants.  The Court noted a possible contractual claim was set forth in Plaintiff's Opposition, stating that Duncan and the First Mount Vernon Defendants agreed to provide a residential loan that they did not provide.  Indeed, in the new AC at paragraphs 225 and 286, Plaintiff states that she "entered into a contract with *the First Mount Vernon Defendants*" (emphasis supplied)."  The measure of damages for breach of contract is the difference between what the non-breaching party actually received and what she would have received under the contract.

However, the AC continues a contract claim against Duncan, although it does not specify a particular count for the same. Count XX of the AC is amended to be specifically against only the First Mount Vernon Defendants. *See AC at pars. 224-230,* and the WHEREFORE clause immediately thereafter.

At paragraphs 100-104, Plaintiff states that her contract is with the First Mount Vernon Defendants (par. 100), but in paragraph 101 then states: "[t]herefore, the First Mount Vernon Defendants, *Defendant Duncan*, Defendant Bennett nor [sic] Defendant Brickshire . . . *owe the Plaintiff* the difference between the amount promised ($190,000.00) and the amount remitted at the settlement . . . . " (emphasis supplied). This is a claim for breach of contract that cannot be granted as to Duncan because Plaintiff has not alleged any facts to state that such alleged contract existed with Duncan.

Similarly, Plaintiff has nowhere asserted any facts that FMVLLC was the contracting party, rather than FMVILA.[2] Even assuming without conceding that FMVLLC did make a promise to extend a loan to Plaintiff, as a matter of law such claim for relief cannot be granted because there is no consideration existing or alleged supporting such claimed contract, or that __FMVLLC__ breached such contract.

Plaintiff does not assert in the new AC any facts other than a promise to extend a certain loan. was made. Plaintiff did not give anything in exchange for such alleged promise. Accordingly, there can be no contract, as all there is claimed is that FMVLLC made a promise to provide a loan.[3] Accordingly, FMVLLC was free to withdraw such an offer at any time, as banks frequently do. The AC does not allege there was consideration paid to keep such alleged promise (i.e., a loan commitment fee or loan origination fee).

---

[2] As stated in the Movants' Motion, Movants are aware that discovery may be conducted to determine FMVLLC's true role.

[3] Plaintiff does not allege estoppel, quasi contract, or other such theory.

Indeed, even assuming FMVLLC had an obligation to extend such a loan as per the alleged promise or contract, no date for performance is alleged by Plaintiff. No fact is alleged that Plaintiff made herself available to go forward with the alleged loan, or any demand to FMVLLC to perform the same.[4]

As stated in footnote 4 below, if the AC states a claim upon which relief may be granted, FMVLLC has an enforceable contract right. However, there is no such enforceable contract as the terms thereof are void for vagueness, and in which there was no meeting of the minds. What interest rate, what term, closing costs, payments of interest, escrows, etc., were not agreed upon by the parties. This is evidenced by the allegation that Plaintiff "would receive approximately $190,000 at closing." *AC at par*. 100. Closing costs and recording fees, a material term of such alleged contract, were not specified. Simply put, with respect to FMVLLC (and Duncan), a promise to make a loan, absent more, is unenforceable, and if so, that insufficient facts are alleged that **FMVLLC** breached such contract, would not perform today if asked, and therefore, does not state a claim upon which relief may be granted.[5]

II.   Facts Supporting a Count of Conversion Not Alleged.

If Plaintiff is alleging a contract with Duncan existed and the same was breached, that means that Duncan in fact did not give the loan he allegedly promised to do. In the alternative, the fact that there was no contract with Duncan alleged in Count XX means that Duncan is not alleged to be liable in contract for failure to make a loan. In either case, there is no allegation of facts other than conclusory statements that Duncan had access to funds allegedly belonging to

---

[4] In the one-year period from executing some kind of documents to the filing of the original Complaint, Plaintiff could have requested performance of FMVLLC to provide such loan. The fact that she did not pursue the same was not FMVLLC's blame or responsibility. Indeed, if there was an enforceable oral contract to make such a loan, then FMVLLC today possesses the right to enforce the same, and have Plaintiff presently make the loan.

[5] Even though Plaintiff may conduct discovery, as presently alleged in the AC, Plaintiff does not state that *both* FMVLLC and FMVILA made contracts with Plaintiff. But to prevail, an allegation that they are to be considered one and the same entity has to be made, which is not alleged in the new AC.

Plaintiff. Indeed, Exhibit 4 to the Complaint demonstrates that the closing occurred through Brickshire Settlements, LLC ("Brickshire"), and accounts for the funds. There is no other loan alleged involving Duncan or FMVLLC. Accordingly, the fact that the alleged loan was NOT made as stated in Plaintiff's breach of contract claims necessarily means that there was no withholding of Plaintiff's alleged assets. In addition, there is no allegation that such funds, if available to Movants in the first place, was converted to Movants' use. Plaintiff in this count is attempting to couch a contract claim (alleged failure to provide $190,000) into a conversion claim without alleging the predicate facts, and so states a claim upon which relief cannot be granted.

   III. <u>All Necessary Elements of Fraud Not Pled, or Not Pled With Particularity.</u>

As stated in the facts above, Plaintiff now states that she does "not believe" she signed the Exhibits attached to the AC. Accordingly, examined closely, the AC has failed to state a *prima facie* case of fraud.

Plaintiff has complied with the Court's Opinion at page 23, and has specifically stated that the fraud alleged to have occurred is for those defendants to have "conspired to fraudulently disguise the true nature of the First Mount Vernon Defendants' loan to Plaintiff Jurgens." *AC at par.* 110. See *AC at par.* 300*, et. seq.*

However, examined closely, as to Movants, the elements of fraud have not been pled, or not pled with sufficient particularity in accordance with Federal Rules of Civil Procedure 9(b).

In the District of Columbia,[6] to sustain a count of fraud, there must be an intentional or reckless, misrepresentation of a material fact, reasonably relied upon by the Plaintiff, resulting in an injury. In the District of Columbia, to prove a claim for negligent misrepresentation, the

---

[6]  Again, as FMVLLC and Duncan did not engage in any activities with regard to the District of Columbia, the law of the Commonwealth of Virginia applies to them with respect to the loan evidenced by the Note, not the District of Columbia, as to them.

plaintiff must demonstrate that Defendants "made a false statement or omitted a fact that they had a duty to disclose; (2) that it involved a material issue; and (3) that Plaintiff reasonably relied upon the false statement or omission to his detriment for the period of time at issue in the case." *Redmond v. State Farm Insurance Company*, 728 A.2d 1202 (D.C. 1999); *Hall v. Ford Enter. Ltd.,* 445 A.2d 610, 612 (D.C. 1982).

The fatal flaw of Plaintiff's shotgun approach to pleading is that the facts alleged become necessarily contradictory. As modified in the new AC, Plaintiff now alleges that the fraud that occurred was the "disguising" of the true nature of the loan. AC at par. 110, 229. However, that "disguising" had to be the presentation of loan documents to Plaintiff without informing her that these documents would result in the sale of her property to the '1230 23rd Street, LLC' and that the loan was a commercial as opposed to a residential loan." AC at par. 229.

For that to be a true fact, then the documents attached as exhibits to the new AC had to be, *inter alia,* the forms presented to Plaintiff at closing on August 31, 2005. However, if they were, then Plaintiff necessarily signed them, for which she is deemed to know the contents.

The law of the District of Columbia is that a party not otherwise under an impairment is responsible for a document he, she, or it signs if provided opportunity to have read it. *Patterson v. Reeves,* 113 U.S. App. D.C. 74, 304 F.2d 950 (D.C. 1962). Movants incorporate by reference their memorandum in support of their Motion to dismiss the original Complaint as to all the disclosures clearly set forth in the documents.

Due to such disclosures, the alleged attempting to disguise a residential loan as a commercial loan cannot stand, as there can be no misstatement upon which Plaintiff can claim to reasonably rely.[7] The AC does not allege that Plaintiff signed the documents under duress of

---

[7] And the Parol Evidence Rule precludes any claim that there was an oral agreement contrary to the signed documents.

Duncan or FMVLLC. Plaintiff does not deny that she signed these documents. She does not affirmatively state she did not sign these documents, because then the basis of the claim would be for forgery. Simply put, Plaintiff cannot have it both ways. She cannot simultaneously claim that "Duncan placed a pile of documents before her," and that the fraud was the disguising of a loan as commercial in nature, because those documents would necessarily show there WAS no such disguising, but full disclosure. Similarly, the fact that she signed the Note twice, on behalf of 1230 23rd Street, LLC and "personally," means that there cannot be a disguising of the true nature of the loan as being made to that LLC.

That she does not *believe* she signed those documents is insufficient to constitute with requisite particularity what facts that these defendants, Duncan and FMVLLC, allegedly did that constitute common law fraud. As set forth in paragraph 110 of the AC, at best Plaintiff is alleging that substance over form should apply as to the true nature of the Loan. That is a complaint of violation of D.C. Code provisions, NOT fraud as to the Movants. And if the basis of the alleged sham transaction is the loan documents themselves, on their face they do not mention Duncan or FMVLLC.

    IV.    <u>Law of the Commonwealth of Virginia Applies.</u>

The AC sets forth the facts that all actions undertaken by the First Mount Vernon Defendants and Duncan occurred exclusively in the Commonwealth of Virginia. The AC alleges Plaintiff physically met with Mr. Bennett at FMVILA's offices, where he allegedly filled out the loan application form. Plaintiff then attended closing at the same offices, where the documents were presented to her. The funds were advanced and delivered to Plaintiff in Virginia. The balance of the remaining funds was disbursed by Brickshire in Virginia. Mr. Bennett and Mr. Duncan never entered the District of Columbia with respect to this transaction. The Note does

not specify that any other law applies.[8]  Accordingly, this is a Virginia loan, not a District of Columbia loan, and the law of the Commonwealth of Virginia applies.[9]

> V. Claims of D.C. Statutory Violations Do Not Apply to Movants.

Because this was a loan executed and performed wholly within the Commonwealth of Virginia, the alleged violations by Movants of D.C.'s Code provisions literally do not apply.

Moreover, as stated above, Plaintiff does not allege a separate count of breach of contract against Duncan, unlike the original complaint.  As such, there is no allegation in the AC that satisfies the requirement that Duncan is a "lender" or "mortgage broker" in as defined in the statutes, rather than the closing attorney.  As Duncan and FMVLLC are not making the loan, these provisions fail to state a claim upon which relief may be granted.

> VI. Prayer for Injunctive Relief Improper.

Once again, Plaintiff cannot have it both ways.  Either the Exhibits attached to the AC are the applicable loan documents, or they are not.  If they are the applicable loan documents, then on the face, Duncan and FMVLLC are not parties to the loan, and the Deed and Deed of Trust in no way benefit them.  Accordingly, the prayer for relief that an injunction be issued against Movants to cause such documents to be voided or released, or preventing any action to foreclose fails to state a claim upon which relief can be granted, because, *inter alia*, it is not within Movants' power to do the same.

Accordingly, the new Amended Complaint should be dismissed against Movants with respect to those counts or items as set forth above.

---

[8] The legend at the top states that the loan is a commercial loan as defined by the applicable DC statute, but not that DC law applies to the enforcement of the Note.  The Deed of Trust states that enforcement of that document is to be in accordance with District of Columbia law (because the Property is in D.C.) but affirmatively states that the law of enforcement of the Note may be different.

[9] For example, if Plaintiff had other properties to offer as collateral in Illinois and California, that would not make the loan a loan under those jurisdictions.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated:  July 13, 2007 | /s/ James M. Towarnicky<br>James M. Towarnicky, #370931<br>James M. Towarnicky, P.L.L.C.<br>3977 Chain Bridge Road, Suite #1<br>Fairfax, VA 22030<br>Tel. (703) 352-0022<br>Fax (703) 352-1516<br>Counsel for Co-Defendants First Mount<br>Vernon Mortgage, LLC and Dale Duncan |

## CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of the foregoing Memorandum in support of Motion on the counsel for the Plaintiff and all other parties having appeared by placing the same in the United States Mail, first class postage prepaid, this 13th day of July, 2007, addressed as follows:

Daniel J. Marino, Esq.
Sutherland, Asbill & Brennan, LLP
1275 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Counsel for Defendant Robert William Carney

J.P. Szymkowicz, Esq.
John T. Szymkowicz, Esq.
Szymkowicz & Szymkowicz, LLP
1220 19th Street, N.W., Suite #400
Washington, D.C. 20036-2438
Counsel for Plaintiff Mary Juergens

Michale M. Hicks
Bonner Kiernan Trebach & Crociata, LLP
1233 20th Streete, NW, Suite 800
Washington, D.C. 20036
Counsel for Urban Title Services, Inc.

David P. Durbin, Esq.
Jordan Coyne & Savits, L.L.P.
1100 Connecticut Avenue, N.W., #600
Washington, D.C. 20036
Counsel for Co-Defendant First Mount
Vernon Industrial Loan Association, Inc.

Michael N. Russo, Jr., Esq.
Council Baradel, Losmerl & Nolan, P.A.
P.O. Box 2289
Annapolis, MD 21404-2289
Co-Counsel to First Mount Vernon ILA and
Arthur G. Bennett

  /s/ James M. Towarnicky
James M. Towarnicky