UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARY JUERGENS,

    Plaintiff,

     v.

URBAN TITLE SERVICES, INC., *et al.*,

    Defendants.

Civil Action No. 06–1524 (CKK)

**MEMORANDUM OPINION**
(February 4, 2008)

Currently pending before the Court are the Motions to Dismiss Plaintiff's Second

Amended Complaint filed by Defendants First Mount Vernon Mortgage, L.L.C. ("FMVLLC")

and Dale Duncan ("Duncan"), as well as two Motions for Partial Summary Judgment filed by

Plaintiff, Mary Juergens.  Plaintiff brings this thirty-six count action against ten individual and

corporate Defendants, asserting claims based on two disparate loans extended to Plaintiff, each of

which was secured by a condominium located at 1230 23rd Street, NW, Apartment 505,

Washington, D.C. 20037 (the "Condo").  Plaintiff alleges that the first loan was extended by

Urban Title Services, Inc. ("UTS"), and that Defendants William Kenney ("Kenney"), Robert

William Carney ("Carney"), and Paul Erb ("Erb") (collectively, with UTS, the "UTS

Defendants"), each played a role in the extension of the UTS Loan.  Plaintiff alleges that the

second loan was extended by a combination of Defendants FMVLLC, Duncan, First Mount

Vernon Industrial Loan Association, Inc. ("FMVILA"), and Arthur Bennett ("Bennett")

(collectively the "FMV Defendants").  Finally, Plaintiff alleges that Defendant Brickshire

Settlements, LLC ("Brickshire") served as the Settlement Agent on the loan extended to Plaintiff by the FMV Defendants.

On May 25, 2007, the Court issued a Memorandum Opinion and Order regarding Plaintiff's then-operative Amended Complaint. *See Juergens v. Urban Title Servs.*, 246 F.R.D. 4 (D.D.C. 2007). That Opinion denied without prejudice Plaintiff's previous motion for partial summary judgment on the issue of whether she transferred legal ownership of the Condo to a limited liability company via a properly executed and acknowledged deed in accordance with District of Columbia law, concluding that genuine issues of material fact existed. *Id.* That Opinion also denied without prejudice the FMV Defendants' previous motions to dismiss, which the Court determined had been converted to motions for summary judgment, and as to which genuine issues of material fact also existed. *Id.* In that Opinion, the Court noted that Plaintiff's opposition to the FMV Defendants' motions to dismiss raised for the first time a number of allegations not included in her Amended Complaint. Noting that Plaintiff could not amend her complaint through her Opposition, and in light of the fact that the FMV Defendants' motions to dismiss had been converted to motions for summary judgment, the Court granted Plaintiff leave to amend her complaint to add additional allegations, and thus pursue discovery on those claims.

Plaintiff has now filed her Second Amended Complaint, which Defendants FMVLLC and Duncan have again moved to dismiss for failure to state a claim. In addition, although discovery has yet to be conducted in this case, Plaintiff has filed a new Motion for Partial Summary Judgment on the issue of the whether she transferred legal ownership to the Condo to a limited liability company, and has also filed a second Motion for Partial Summary Judgment on the issue of the alleged lack of consideration for that transfer. Plaintiffs Motions for Partial Summary

2

Judgment are opposed by all of the FMV Defendants, as well as Brickshire.[1]

Upon a searching review of the memoranda filed with respect to the pending motions, the exhibits thereto, the relevant case law and statutes, and the entire record herein, the Court shall grant Defendant FMVLLC's motion to dismiss Plaintiffs' Second Amended Complaint, shall deny Defendant Duncan's motion to dismiss, and shall deny without prejudice Plaintiff's Motions for Partial Summary Judgment. The Court's conclusions with respect to Plaintiff's Motions for Partial Summary Judgment are based upon the presence of genuine issues of material fact, which must be resolved through discovery. As a result, as set forth in the accompanying Order, the parties shall be precluded from filing any additional dispositive motions prior to the completion of discovery in this matter.

## I. BACKGROUND

The Court assumes familiarity with the factual background of this case, which is set forth in detail in its May 25, 2007 Memorandum Opinion, *see generally Juergens*, 245 F.R.D. 4, and therefore discusses herein only those facts that are relevant to the motions currently pending before the Court. In particular, although Plaintiff's Second Amended Complaint includes a variety of allegations regarding the loan extended to her by the UTS Defendants, the Court does not recount the bulk of those allegations because Plaintiff's claims as to the UTS Defendants are irrelevant to the motions at issue in this Opinion.

Plaintiff, Mary Juergens, alleges that she resided in and owned a condominium unit located at 1230 23rd Street, N.W., Apartment 505, Washington, D.C. 20037 (the "Condo"), and

---

[1] Defendants UTS, Carney, Erb, Kenney, FMVILA, and Bennett have all filed answers to Plaintiff's Second Amended Complaint.

that, prior to October 2003, she owned the Condo free and clear of any encumbrances or liens, other than a condominium fee assessment of approximately $8000. Second Am. Compl. ("SAC") ¶¶ 12, 15, 23. However, in October 2003, she required a loan of $60,000 to pay off her condominium fee assessment and to perform renovations on the Condo. *Id.* ¶ 16. Plaintiff alleges that she spoke with Defendant Kenney, who presented himself as an agent of Defendant UTS, about securing a loan, and Defendants Kenney and UTS agreed to act as lender on a loan to be secured by a deed of trust on the Condo (the "UTS Loan"). *Id.* ¶¶ 17-18, 22. According to Plaintiff, the proceeds of the UTS Loan were to be used to pay Plaintiff's $8000 condominium fee assessment in full and Plaintiff was to receive approximately $52,000 in cash, less reasonable settlement costs, at closing. *Id.* ¶ 24. Plaintiff alleges that at the UTS Loan closing, the condo fee assessment was paid off, and Plaintiff received an escrow check in the amount of approximately $24,597.06. *Id.* ¶ 31. However, according to Plaintiff, she never received an accounting for the other $27,402.84 of the UTS Loan. *Id.* ¶¶ 31, 35.

Plaintiff next alleges that, in August 2005, she went to "the First Mount Vernon Defendants" in order to obtain a loan on the Condo, which would be used to pay off the UTS Loan. *Id.* ¶¶ 46, 48.[2] Plaintiff asserts that the loan she sought from the FMV Defendants "was a personal consumer refinance loan as opposed to a commercial loan," *id.* ¶ 47, and further asserts that she told Defendants Bennett and Duncan that she planned to live in the Condo after

_____

[2] Plaintiff uses the term "First Mount Vernon Defendants" to collectively describe FMVILA and FMVLLC, without distinguishing between the entities. *See* Am. Compl. ¶ 8. As noted above, the Court will refer to FMVILA, FMVLLC, Bennett, and Duncan collectively as the "FMV Defendants." Although the Court shall refer to "FMVILA and FMVLLC" where Plaintiff uses the term "First Mount Vernon Defendants," the Court notes that Plaintiff's Second Amended Complaint does not distinguish in any way between actions allegedly undertaken by FMVILA and actions allegedly undertaken by FMVLLC.

obtaining the loan, *id.* ¶¶ 54-55, 61.  According to Plaintiff, FMVILA and FMVLLC–acting

through Defendants Bennett and Duncan–indicated that they would not extend a loan as small as

$60,000, and instead encouraged Plaintiff to take out a loan of $250,000 (hereinafter the "FMV

Loan").  *Id.* ¶ 49.  Plaintiff alleges that under the terms of the FMV Loan, the proceeds would be

used to pay off the UTS Loan (plus accrued interest), and Plaintiff would receive approximately

$190,000 in cash at closing, less reasonable settlement costs.  *Id.* ¶ 50, 181.  However, according

to Plaintiff, she received only approximately $95,000 at closing, and has never received either the

other $95,000 that she was allegedly due or an accounting as to that $95,000.  *Id.* ¶¶ 100-02.

Plaintiff's Second Amended Complaint includes detailed allegations regarding the steps

that allegedly led to the closing of the FMV Loan.  First, Plaintiff alleges that on August 16,

2005, Defendant Duncan prepared Articles of Organization for the registration of a limited

liability company known as "1230 23rd Street, LLC" (hereinafter the "LLC").  *Id.* ¶ 62, Ex. 2

(LLC Arts of Org.).[3]  According to Plaintiff, she never indicated to Defendant Duncan that she

wanted to establish the LLC, and Defendant Duncan did not inform her that he was going to or

had established the LLC prior to August 31, 2005.  *Id.* ¶¶ 70-71.[4]  Nevertheless, Plaintiff alleges

that Defendant Duncan filed the LLC's Articles of Organization, registered the LLC with the

Commonwealth of Virginia State Corporation Commission, and was issued a Certificate of

---

[3] Plaintiff's Second Amended Complaint incorporates by reference, and attaches as
exhibits, a number of documents that were proffered by the FMV Defendants in support of their
motions to dismiss Plaintiff's previous Amended Complaint.  *See* SAC, Exs. 1-12.  Plaintiff's
Second Amended Complaint adds allegations regarding these documents, and the role that they
allegedly played in the FMV Defendants' actions with respect to the FMV Loan.

[4] Elsewhere in her Second Amended Complaint, Plaintiff states that she first learned of
the LLC's existence during preparations for this litigation.  SAC ¶ 73.

Organization for the LLC on August 22, 2005. *Id.* ¶ 68, Ex. 3 (Certif. of Org.). Plaintiff further

asserts that in the LLC's Articles of Organization, Defendant Duncan falsely stated that Plaintiff

was a Virginia resident, listed Plaintiff as the LLC's registered agent despite her ineligibility to

serve as a registered agent under Virginia law, and listed the LLC's "principal office" as the

address of FMVILA and FMVLLC. *Id.* ¶¶ 63-65. Plaintiff denies that the signature on the

LLC's Articles of Organization, included as Exhibit 2 to the Second Amended Complaint, is her

own genuine signature, and "states that the signature appears to be a forgery." *Id.* ¶ 66. Plaintiff

further alleges that she was in Europe between August 10 and August 25, 2005, and thus could

not have signed the Articles of Organization on the date on which they were allegedly signed. *Id.*

¶ 67. Plaintiff claims that Defendant Duncan falsified the information on the LLC's Articles of

Organization "in order to eventually qualify Plaintiff Juergens for a loan for which she would not

have qualified had truthful information been included on the form." *Id.* ¶ 69.

      Plaintiff continues to allege that on or about August 30, 2005, Defendant Bennett

interviewed her for the purpose of completing a "Uniform Residential Loan Application,"

attached as Exhibit 1 to Plaintiff's Second Amended Complaint. *Id.* ¶¶ 51-60, Ex. 1 (Uniform

Resid. Loan Applic.). According to Plaintiff, although she provided Defendant Bennett with

truthful answers to the questions on the Application, much of the information Defendant Bennett

included in the Application was false. *Id.* ¶¶ 52-60. Specifically, Plaintiff alleges that Defendant

Bennett: falsely listed Plaintiff's address as one in Virginia although Plaintiff told him that she

lived in the Condo; falsely listed various sources of income, including rental income, although

Plaintiff informed him that she had no income; and falsely indicated that Plaintiff did not intend

to live in the Condo as her primary residence. *Id.* ¶¶ 52-55, Ex. 1. Plaintiff admits signing a

version of a Uniform Residential Loan Application, but asserts that she "does not believe that the

signature on the version . . . attached [as Exhibit 1 to her Second Amended Complaint] is her

own true genuine signature," because that version "has 'filled-in' data that is false." *Id.* ¶¶ 56-57.

Plaintiff alleges that she was never given a copy of the Uniform Residential Loan Application

she signed, and did not see the version attached as Exhibit 1 to the Second Amended Complaint

until the FMV Defendants filed their motions to dismiss her Amended Complaint. *Id.* ¶¶ 58-59.

According to Plaintiff, "Defendant Bennett filled in false information on the application in order

to qualify Plaintiff Juergens for a loan for which she would not have qualified had truthful

information been provided on the form." *Id.* ¶ 60.

Plaintiff asserts that the closing of the FMV Loan was scheduled for August 31, 2005 at

the offices of the FMV Defendants, and that when she arrived at the closing of the FMV Loan

"she believed that the loan would be a personal consumer residential loan." *Id.* ¶¶ 74-75.

Plaintiff alleges that upon arriving at the offices, she was taken to a conference room where

Defendant Duncan presented her with a "pile of forms" to sign. *Id.* ¶¶ 74, 76. Plaintiff claims

that she signed the forms Defendant Duncan presented to her, signing some forms in front of

both Defendants Duncan and Bennett, and signing other forms in front of only one of the two.

*Id.* ¶ 77. According to Plaintiff, no one else was physically present when she signed the forms

regarding the FMV Loan. *Id.* ¶ 78. Plaintiff also alleges that several hours after leaving the

FMV Defendants' office on the day of the closing, she "called Defendant Bennett and informed

him that she did not want to proceed with this loan, but he refused to stop the loan process." *Id.*

¶ 97. Plaintiff does not explain why she wanted to stop the FMV Loan transaction.

According to Plaintiff, she asked for copies of the forms she signed at the FMV Loan

closing, but was told by Defendants Duncan and Bennett that they needed to "process" the forms before they could give her copies. *Id.* ¶ 79. Plaintiff asserts that she only received documents allegedly related to the closing of the FMV Loan "from some of the Defendants" after filing the instant action. *Id.* ¶ 80. Those documents include: (1) the LLC Articles of Organization, *see* SAC, Ex. 2; (2) a HUD-1 Settlement Statement that appears to reflect Plaintiff's sale of the Condo to the LLC, *see* SAC, Ex. 4; (3) a Balloon Deed of Trust Note that appears to reflect a $250,000 loan from FMVILA to the LLC, *see* SAC, Ex. 5; (4) a Commercial Loan Balloon Deed of Trust that appears to reflect the LLC's $250,000 debt to FMVILA, *see* SAC, Ex. 6; (5) a Deed that appears to convey the Condo from Plaintiff to the LLC in exchange for $200,000, *see* SAC, Ex. 7; (6) a "Notice to Applicant for a Mortgage Loan – Commercial Loan Disclosure," *see* SAC, Ex. 8; (7) a Financing Agreement apparently between the LLC and FMVILA, *see* SAC, Ex. 9; and (8) a Borrower Affidavit that appears to be executed by Plaintiff on behalf of the LLC, *see* SAC, Ex. 10. SAC ¶ 81. Plaintiff also asserts that she has obtained other documents that appear to be related to the FMV Loan, including a District of Columbia Office of Tax and Revenue Security Affidavit, *see* SAC, Ex. 11; an Assignment of Contracts, Income, Rents and Profits, *see* SAC, Ex. 12, and a Deed in Lieu of Foreclosure. *Id.* ¶ 82.

With the exception of the LLC Articles of Organization, each of these documents is dated August 31, 2005, and each appears to reflect Plaintiff's signature either individually or on behalf of the LLC. *See* SAC, Exs. 2, 4-12. Nevertheless, Plaintiff alleges that she "does not believe that the signatures on the versions of the documents that are attached as exhibits to [the Second Amended Complaint] are her own genuine signatures." *Id.* ¶ 83. Plaintiff further asserts that she "does not recall signing any documents that reference" the LLC because she had no knowledge of

8

the LLC's existence on August 31, 2005 and "would not have signed such documents on behalf of a business entity about which she had no knowledge." *Id.* ¶ 84. Plaintiff also "contends that she would never have knowingly signed any document that would result in the transfer of legal ownership to [the Condo], whether to a Limited Liability Company that she controlled or any other business entity." *Id.* ¶ 85.

Plaintiff continues to allege, upon information and belief, that Defendants Bennett and Duncan are the agents of Defendant Brickshire "and act as such when signing HUD-1 Settlement Statements and conducting settlements on behalf of Brickshire," including when they conducted the settlement on the FMV Loan and when they signed the HUD-1 Settlement Statement regarding the FMV Loan. *Id.* ¶¶ 86-88. Furthermore, in an allegation that is seemingly alternative to her claim that she did not sign the documents described above, Plaintiff alleges that the FMV Defendants and Defendant Brickshire "prepared and presented documents for [her] signature without explaining the legal effect of such documents to [her] in an effort to charge her a higher rate of interest, and also to circumvent District of Columbia mortgage and fair lending laws." *Id.* ¶ 96.

Plaintiff raises a number of other arguments regarding the documents. First, Plaintiff takes issue with what appears to be the notary block on each document, asserting that there is no way to identify the "purported Notary Public" who witnessed the documents, and asserting that the documents do not include a "notarial seal or stamp." *Id.* ¶¶ 89-91. According to Plaintiff, Defendants Duncan and Bennett were the only individuals present when she signed documents regarding the FMV Loan, and neither Defendant is a notary in the Commonwealth of Virginia.

*Id.* ¶ 92.[5]  Plaintiff thus concludes that the various documents described above "are of no legal effect" because they "require a valid notarization and acknowledgment."  *Id.* ¶ 95.

Plaintiff also asserts that a "close reading" of the HUD-1 described above "reveals numerous false statements, inconsistencies and ambiguities that, in total lead to the conclusion that the [FMV Loan] was a sham loan designed to circumvent District of Columbia mortgage and fair lending laws."  *Id.* ¶¶ 98-99.  In particular, Plaintiff asserts that the amount listed on the HUD-1 as the pay off figure for the UTS Loan "does not take into consideration amounts that [she] paid . . . in order to reduce the amount owed on that loan prior to the closing on the [FMV Loan]."  *Id.* ¶ 103.  Plaintiff alleges that, because she never received a pay off statement regarding the UTS Loan, the FMV Defendants and Brickshire owe her "the difference between the amount that was allegedly remitted to pay off the [UTS Loan] and the amount that was actually owed, which is unknown at this time."  *Id.* ¶¶ 103-04.

Plaintiff next claims that, although the Balloon Deed of Trust Note described above purports to reflect a $250,000 loan from FMVILA to the LLC, because that Note includes an apparent personal guarantee by Plaintiff Juergens, the purported loan to the LLC is in fact a "'residential' refinance loan, subject to all of the protections found in District of Columbia residential mortgage and fair lending laws."  *Id.* ¶¶ 105-06.  Finally, Plaintiff alleges that she never received a variety of procedural protections required by various District of Columbia statutes in connection with the FMV Loan.  *Id.* ¶¶ 111-14.

Based on these allegations, Plaintiff's Amended Complaint includes thirty-six (36)

---

[5] Plaintiff supports her assertion that neither Defendant Duncan nor Defendant Bennett is a notary in Virginia with a December 1, 2006 letter to that effect from a Notary Specialist in the Office of the Secretary of the Commonwealth of Virginia.  SAC, Ex. 13.

separate counts–nineteen relating to the UTS Loan and seventeen relating to the FMV

Loan–against a combination of the UTS Defendants, the FMV Defendants, and Brickshire.  As

only FMVLLC and Defendant Duncan have moved to dismiss Plaintiff's Second Amended

Complaint, the Court's discussion herein is limited to those claims brought against the FMV

Defendants.  In Count XX of the Second Amended Complaint, Plaintiff alleges Breach of

Contract against FMVILA and FMVLLC, asserting that (1) although they agreed to pay off the

UTS Loan and give Plaintiff the remainder of the FMV Loan proceeds as cash at closing, they

paid off only some of the UTS Loan and provided Plaintiff with only $95,000 in cash; and (2)

that they had a contract to provide Plaintiff with a personal consumer residential loan, but instead

extended her a commercial loan.  *Id.* ¶¶ 224-30.  In Count XXIV, Plaintiff alleges conversion

against all of the FMV Defendants, along with Defendant Brickshire, asserting that those

Defendants (1) remitted more than Plaintiff owed to pay off the UTS Loan; (2) allocated much of

the FMV Loan proceeds due to Plaintiff at closing to various fees, charges, and escrow accounts

without Plaintiff's permission; and (3) did not remit to Plaintiff the $200,000 that the Deed

described above recites that she received for the sale of the Condo to the LLC.  *Id.* ¶¶ 285-94.

In Count XXV, Plaintiff alleges Fraud, claiming that the FMV Defendants made

numerous false representations to Plaintiff, including that they would extend a residential loan to

her, and that she would receive $190,000, less reasonable settlement costs, in cash at the closing

of the FMV Loan.  Plaintiff further claims that the FMV Defendants knowingly prepared false

documents in order to fraudulently disguise the true residential nature of the loan, and that the

FMV Defendants presented loan documents to Plaintiff at the closing of the FMV Loan without

informing her that the documents would result in the sale of the Condo to the LLC.  *Id.* ¶¶ 295-

309.  Count XXVI alleges Civil Conspiracy, based on Plaintiff's allegations of Fraud.  *Id.* ¶¶

310-17.  Plaintiff also asserts a number of statutory claims against the FMV Defendants,

including: Violation of the District of Columbia Loan Shark Act, D.C. Code § 26-901, et seq.

(Count XXVII, *id.* ¶¶ 318-28); Violation of the District of Columbia Mortgage Lender and

Broker Act, D.C. Code § 26-1101, et seq. (Count XXVIII, *id.* ¶¶ 329-35); Violation of the

District of Columbia Mortgage Loan Protection Act, D.C. Code § 26-1151.01, et seq. (Count

XXIX, *id.* ¶¶ 336-42); Violation of the District of Columbia Unlawful Trade Practice Act, D.C.

Code § 28-3904 (Count XXX, *id.* ¶¶ 343-58); and Violation of the District of Columbia

Consumer Credit Service Organization Act, D.C. Code § 28-4601, et seq. (Count XXXI, *id.* ¶¶

359-64).

    In addition, in Count XXXII, Plaintiff includes a claim for Respondeat Superior, asserting

that FMVILA and FMVLLC are responsible for Defendants Duncan's and Bennett's allegedly

tortious behavior.  *Id.* ¶¶ 365-68.  Furthermore, in Count XXXIV, Plaintiff requests that the

Court declare the loan documents associated with the FMV Loan void *ab initio*, declare that the

Condo is free and clear of any mortgage or other encumbrance, and quiet title to the Condo in

Plaintiff's name.  *Id.* ¶¶ 373-74.  In Count XXXV, Plaintiff asks the Court to enter an Order

enjoining the FMV Defendants and anyone who received any legal or equitable interest in the

Condo from the FMV Defendants from further encumbering the Condo or instituting any

foreclosure or eviction proceedings with respect to the Condo.  *Id.* ¶¶ 375-77.  Finally, in Count

XXXVI, Plaintiff demands an accounting of all funds disbursed or received with regard to the

FMV Loan.  *Id.* ¶¶ 378-80.

    As noted above, Plaintiff filed her Second Amended Complaint on June 15, 2007, after

the Court granted her leave to do so.  Soon thereafter, Plaintiff filed her Motions for Partial

Summary Judgment, as to the issues of the alleged lack of a properly executed deed reflecting the

sale of the Condo to the LLC and the alleged lack of consideration for that sale.  Plaintiff's

Motions are opposed by all of the FMV Defendants, as well as Defendant Brickshire.  On July

13, 2007, Defendants FMVLLC and Duncan moved to dismiss Plaintiff's Second Amended

Complaint.  Plaintiff filed her opposition to those motions on July 27, 2007, and no reply in

support of those motions has been filed.

## II.  LEGAL STANDARD

*A.     Rule 12(b)(6)*

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain

statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355

U.S. 41, 47 (1957)); *accord Erickson v. Pardus*, 551 U.S. ___, 127 S. Ct. 2197, 2200 (2007) (per

curiam).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6)

motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish

"more than labels and conclusions" or "a formulaic recitation of the elements of a cause of

action."  *Id*. at 1964-65; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Instead, the

complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative

level, on the assumption that all the allegations in the complaint are true (even if doubtful in

fact)."  *Bell Atl. Corp*., 127 S. Ct. at 1965; *see also id.* at 1966 (the "threshold requirement" of

Fed. R. Civ. P. 8(a)(2) is "that the 'plain statement' possess enough heft to 'sho[w]' that the

pleader is entitled to relief'") (quoting Fed. R. Civ. P. 8(a)(2)).

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged."). While the court must construe the complaint in the Plaintiff's favor, it "need not accept inferences drawn by the plaintiff[] if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Comm'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Moreover, the court is not bound to accept the legal conclusions of the non-moving party. *See Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997). The court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. *See E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993). Factual allegations in briefs or memoranda of law may not be considered when deciding a Rule 12(b)(6) motion, particularly when the facts they contain contradict those alleged in the complaint. *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994); *cf. Behrens v. Pelletier*, 516 U.S. 299, 309, 116 S. Ct. 834, 840, 133 L. Ed. 2d 773 (1996) (when a motion to dismiss is based on the complaint, the facts alleged in the complaint control).

14

B.    *Summary Judgment*

A party is entitled to summary judgment upon a showing that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party.  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251-52 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).  "Mere allegations or denials of the adverse party's pleading are not enough to prevent the issuance of summary judgment."  *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996).  Rather, the adverse party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Indeed, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'"  *Id.* at 587 (citing Fed. R. Civ. P. 56(e)).

15

## III.  DISCUSSION

*A.        Defendants FMVLLC and Duncan's Motions to Dismiss*

As noted above, Defendants FMVLLC and Duncan previously moved to dismiss

Plaintiff's Amended Complaint; however, because FMVLLC and Duncan supported that motion

with a variety of documents that were "neither referenced in or attached to the Amended

Complaint," the Court concluded that their motions to dismiss had been converted to motions for

summary judgment pursuant to Federal Rule of Civil Procedure 12(b).  *Juergens*, 246 F.R.D. at

12.  As such, the Court noted that their motions had to be considered pursuant to Federal Rule of

Civil Procedure 56, with all parties afforded the opportunity to present material pertinent to a

motion under that Rule.  *Id.*  Further, because the parties had not yet conducted discovery, and

because Plaintiff's Opposition contained allegations that would, if substantiated through

discovery, demonstrate the existence of genuine questions of material fact, the Court denied

Defendants FMVLLC and Duncan's motion to dismiss without prejudice.  *Id.* at 13-15.  In so

doing, the Court specifically advised Plaintiff that she could not pursue allegations not included

in her Amended Complaint, unless she revised her complaint to reflect them.  *Id.*

Plaintiff has now amended her complaint, and Defendants FMVLLC and Duncan have

moved to dismiss her Second Amended Complaint, asserting that Plaintiff still fails to state a

claim against either of them.  *See generally* FMVLLC/Duncan Mem.  The Court addresses each

Defendant's arguments for dismissal in turn.

*1.        Plaintiff Fails to State a Claim Against Defendant FMVLLC*

As FMVLLC correctly notes, Plaintiff's Second Amended Complaint never alleges that

FMVLLC was a party to the FMV Loan transaction.  Instead, as she did in her Amended

16

Complaint, Plaintiff "generally describes actions taken by Defendants Duncan [and Bennett] on behalf of the FMV Defendants," a term she uses to collectively describe FMVILA and FMVLLC, "without differentiating between [them]." *Juergens*, 246 F.R.D. at 13. Moreover, the alleged FMV Loan documents that Plaintiff has now incorporated in her Second Amended Complaint (and which the FMV Defendants previously proffered in support of their motions to dismiss her Amended Complaint) "indicate that the FMV Loan was . . . extended by FMVILA rather than FMVLLC." *Id.*; *see* SAC, Exs. 1, 4-12.

Plaintiff's opposition argues that her Second Amended Complaint nevertheless states various claims against FMVLLC because

> upon [her] information and belief, [FMVILA] and [FMVLLC] share the same physical place of business and registered agent and [she] was never provided with any documents or information to differentiate the two companies when she went to the offices of "1st Mount Vernon" in August 2005 with the hopes of obtaining a loan to refinance [the UTS Loan].

Pl.'s Resp. to Defs' FMVLLC and Duncan's MTD (hereinafter "Pl.'s Opp'n") at 2-3. This allegation is not included in Plaintiff's Second Amended Complaint. Plaintiff's opposition notes that she raised the same argument in response to FMVLLC's previous motion to dismiss her Amended Complaint and asserts that she is entitled to discovery "to determine the relationship between [FMVILA] and [FMVLLC]." *Id.* at 3. Plaintiff did, indeed, raise this argument in response to FMVLLC's previous motion to dismiss and, in that context, it was a winning argument. *See Juergens*, 246 F.R.D. at 13. Now, however, Plaintiff's argument comes in a significantly different posture, and is ultimately unavailing.

When the Court previously concluded that Plaintiff should be allowed to "conduct discovery as to the relationship between FMVILA and FMVLLC, as well as the role played by

17

FMVLLC in the FMV Loan transaction," it did so largely because FMVLLC's motion to dismiss had been converted into a motion for summary judgment and Plaintiff had not been given the opportunity to present all material pertinent to a motion under Rule 56. *Id.* at 12-13. In contrast, because Plaintiff's Second Amended Complaint incorporates the pertinent documents indicating that FMVLLC was not a party to the FMV Loan transaction, FMVLLC's current motion to dismiss need not be considered under the rubric of Rule 56. Nor is the Court required to afford Plaintiff the opportunity to present all material pertinent to a motion under that Rule. Instead, the relevant question is whether, on the face of her Second Amended Complaint and the documents attached thereto, Plaintiff states a claim for relief against FMVLLC.

Moreover, in denying FMVLLC's previous motion to dismiss, the Court specifically granted Plaintiff leave to amend her complaint "in order to specify her allegations with respect to FMVLLC" and, if she so chose, add allegations that FMVLLC and FMVILA failed to differentiate between themselves with respect to the FMV Loan. *Id.* at 13. Plaintiff, however, has squandered this opportunity. Plaintiff again includes allegations regarding the relationship between FMVLLC and FMVILA in her *opposition* to FMVLLC's motion to dismiss. Nevertheless, her Second Amended Complaint does not contain any allegations that, in even the most generous light, could be viewed as alleging either that FMVLLC was a party to the FMV Loan transaction or that Plaintiff viewed FMVLLC and FMVILA as one entity in August 2005. Nor does the Second Amended Complaint allege with specificity any action purportedly undertaken by FMVLLC. By this point, Plaintiff should be well aware that she cannot amend her complaint through her opposition; indeed, the Court specifically so advised her in its May 25, 2007 Memorandum Opinion. *See id.* (citing *Arbitraje Casa de Cambio, S.A. v. United States*

18

*Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) (citing *Coleman v. Pension Benefit Guar. Corp.*, 94 F. Supp. 2d 18, 24 n.8 (D.D.C. 2000))).

While the Federal Rules of Civil Procedure require only "a short and plain statement of the claim showing that the pleader is entitled to relief," the purpose of that requirement is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. ___, 127 S. Ct. at 1964 (quoting *Conley*, 355 U.S. at 47). Plaintiff has been given an opportunity to amend her complaint in order to include allegations that would apprise FMVLLC of her claims against it, and thus support discovery into the relationship between FMVLLC and FMVILA. Plaintiff has failed to do so. To the contrary, the documents now attached to Plaintiff's Second Amended Complaint indicate that FMVLLC was not a party to the FMV Loan transaction. Because all of Plaintiff's claims against FMVLLC arise out of that transaction, the Court is forced to conclude that Plaintiff fails to state a claim against FMVLLC.

### 2.    *Plaintiff Sufficiently States Claims Against Defendant Duncan*

In contrast, the Court concludes that the allegations included in the Second Amended Complaint are sufficient to state claims for relief against Defendant Duncan. At the outset, the Court notes that, unlike her Amended Complaint, Plaintiff's Second Amended Complaint only alleges breach of contract against FMVILA and FMVLLC. *See* SAC, Count XX; Pl.'s Opp'n at 3 n.1. As such, Defendant Duncan's arguments regarding Plaintiff's breach of contract claim are irrelevant. *See* FMVLLC/Duncan Mem. at 2-3. As to the remainder of Plaintiff's claims against Defendant Duncan, the Second Amended Complaint is replete with allegations that Defendant Duncan acted as agent on behalf of FMVILA in connection with the FMV Loan transaction. In particular, Plaintiff alleges that Defendant Duncan registered the LLC without Plaintiff's

19

knowledge or consent, as well as by use of false information and a forged signature, "in order to eventually qualify [her] for a loan for which she would not have qualified had truthful information been provided." SAC ¶¶ 61-73. Plaintiff also alleges that Defendant Duncan "conspired to fraudulently disguise the true nature of the [FMV Loan] from a simple residential refinance loan to a commercial loan." *Id.* ¶ 110. Plaintiff further alleges that Defendant Duncan participated in the FMV Loan closing on behalf of both FMVILA and Brickshire, *id.* ¶¶ 74-88, and that he "prepared and presented documents for Plaintiff['s] signature without explaining the legal effect of such documents to [her] in an effort to charge her a higher rate of interest, and also to circumvent District of Columbia mortgage and fair lending laws," *id.* at 96.

These allegations are sufficient to sustain Plaintiff's various claims against Defendant Duncan. Specifically, with respect to Plaintiff's conversion claim, the Second Amended Complaint alleges that Duncan acted as an agent in connection with the FMV Loan, and that Plaintiff was wrongfully deprived of $95,000 of the proceeds of that loan without an accounting. *See* SAC ¶¶ 287-88. Plaintiff's allegations thus sufficiently allege that Duncan participated in the "unlawful exercise of ownership, dominion or control over [Plaintiff's] personal property . . . in denial or repudiation of [her] rights thereto." *Duggan v. Keto*, 554 A.2d 1126, 1127 (D.C. 1989). Defendant Duncan's cursory argument that Plaintiff cannot sustain her prayers for injunctive relief (brought in Counts XXXIV and XXXV of the Second Amended Complaint) against him because he is not a party to the FMV Loan is likewise unavailing. FMVLLC/Duncan Mem. at 8. As a practical matter, Counts XXXIV and XXXV assert requests for relief, rather than legal causes of action. Nevertheless, Plaintiff's Second Amended Complaint adequately alleges that Defendant Duncan acted as an agent for FMVILA in conjunction with the FMV Loan, and it

20

remains to be seen whether Plaintiff will be able to prove her claims with respect to that Loan or establish any basis for Defendant Duncan's personal liability with respect to the Loan. If Plaintiff is able to do so, the prayers for relief set forth in Counts XXXIV and XXXV may ultimately prove appropriate.

With respect to Plaintiff's Fraud claim, Defendant Duncan argues that Plaintiff's allegations are inconsistent, and thus fail to state a claim against him. FMVLLC/Duncan Mem. at 5-7. According to Defendant Duncan, Plaintiff cannot simultaneously allege that the FMV Defendants committed fraud by disguising the nature of the FMV Loan, i.e., by inducing her to sign documents without disclosing their true legal effect, while also alleging that she does not believe she signed the documents attached to the Second Amended Complaint. *Id.* at 6. However, Rule 8(d)(2) of the Federal Rules of Civil Procedure specifically provides that "[a] party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). Plaintiff's allegations are not inherently contradictory; the overall import of the allegations is that Plaintiff does not believe that she knowingly signed the documents attached to the Second Amended Complaint, either because they are not the documents she actually signed, or because the FMV Defendants (including Defendant Duncan) misrepresented the nature of the documents. Even if Plaintiff may ultimately be forced to determine whether she believes she actually signed the documents in question, because the Federal Rules of Civil Procedure permit pleading in the alternative, Plaintiff's allegations are sufficient to survive dismissal.

Defendant Duncan also asserts that "the elements of fraud have not been pled, or [sic] not

pled with sufficient particularity in accordance with Federal Rules of Civil Procedure 9(b)."

FMVLLC/Duncan Mem. at 5.  Under District of Columbia law, the elements of common law

fraud are: "(1) a false representation (2) in reference to a material fact, (3) made with knowledge

of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the

representation." *Atraqchi v. GUMC Unified Billing Servs.*, 788 A.2d 559, 563 (D.C.2002)

(quoting *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C.1977)).  A party pleading fraud "must allege

such facts as will reveal the existence of all the requisite elements of fraud."  *Bennett,* 377 A.2d

at 59-60.  Defendant Duncan is right that "in alleging fraud . . . a party must state with

particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  However, the

requirements of Rule 9 should be read in conjunction with Rule 8, which only requires "a short

and plain statement" of the claim or defense.  *United States ex rel. Williams v. Martin-Baker*

*Aircraft Co.,* 389 F.3d 1251, 1256 (D.C. Cir.2004).  To satisfy both Rules 8 and 9, a party must

"state the time, place and content of the false misrepresentations, the fact misrepresented and

what was retained or given up as a consequence of the fraud."  *Id.* (citations and internal

quotation marks omitted). The party must also identify the individuals allegedly involved in the

fraud.  *Id.*

Plaintiff's allegations regarding Defendant Duncan, detailed above, meet these

requirements.  In particular, Plaintiff alleges that in August 2005, at the offices of the FMV

Defendants, Defendant Duncan misrepresented to Plaintiff the nature of the FMV Loan and/or

the nature of the documents she was signing, created documents designed to disguise the nature

of the Loan, and possibly falsified documents regarding the Loan.  Plaintiff further alleges that,

as a result of Defendant Duncan's misrepresentations and actions, she agreed to take out a loan of

22

$250,000 and was deprived of loan proceeds to which she was entitled. Such allegations are sufficient to survive a motion to dismiss pursuant to Rule 12(b)(6).

Finally, Defendant Duncan argues that because the FMV Loan was "executed and performed wholly within the Commonwealth of Virginia," Virginia law applies to the FMV Loan, and Plaintiff cannot state claims against him for various District of Columbia statutory violations. FMVLLC/Duncan Mem. at 8. Defendant Duncan devotes a scant paragraph to this argument, and Plaintiff's response is equally terse. As the parties have not briefed the choice of law issue, the Court draws no conclusions as to which law actually applies to the FMV Loan. The Court notes only that, with respect to at least some of Plaintiff's D.C. statutory claims, the fact that the FMV Loan was executed in Virginia may not preclude application of the D.C. statutes to the Loan. *See* D.C. Code § 26-1151.01(7)(A) (D.C. Home Loan Protection Act applies to "a mortgage loan, secured by property located in the District"); *see also Williams v. First Gov't Mortgage and Investors Corp.*, 176 F.3d 497, 499 (D.C. Cir. 1999) (concluding that D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901, et seq., applied to home loan issued to D.C. resident and secured by property in the District of Columbia, even though loan was issued by non-D.C. corporation with offices in Maryland, meetings regarding the loan took place in Maryland, and loan payments were sent to a Maryland address); *Wiggins v. Avco Fin. Servs*, 62 F. Supp. 2d 90 (D.D.C. 1999) (same).

Furthermore, although Defendant Duncan asserts that Plaintiff has not alleged that he is a "lender" or "mortgage broker," as defined in some of the D.C. statutes at issue, the Court notes that those terms are defined quite broadly and that Plaintiff sufficiently alleges that Defendant Duncan "for compensation or gain . . . either directly or indirectly, accept[ed] or offer[ed] to

accept an application for a mortgage loan . . . or negotiate[d] or offer[ed] to negotiate the terms

and conditions of a mortgage loan on behalf of a lender." *See* D.C. Code § 26-1101(10)

(defining "mortgage broker"). The parties have given only cursory consideration to the question

of whether the various D.C. statutes on which Plaintiff grounds her claims actually apply to the

FMV Loan transaction, and the Court declines to develop arguments for Defendant Duncan that

he has not proffered himself. For the reasons discussed above, Defendant Duncan shall not be

dismissed as a Defendant to this action. As such, if Defendant Duncan believes that certain of

the D.C. statutes at issue are inapplicable to the FMV Loan transaction, he may argue as

much–and support his arguments with thorough briefing–in a motion for summary judgment

*after* discovery in this matter. For the time being, however, the Court concludes that Plaintiff's

allegations sufficiently state various claims for relief against Defendant Duncan, and are thus

adequate to survive a motion to dismiss pursuant to Rule 12(b)(6).

   B. *Plaintiff's Motions for Partial Summary Judgment*

   Turning now to Plaintiff's Motions for Partial Summary Judgment, the Court first

addresses Plaintiff's argument on the issue a properly executed deed conveying the Condo to the

LLC, and then addresses her argument on the alleged lack of consideration for the sale of the

Condo to the LLC. As noted above, all of the FMV Defendants, as well as Defendant Brickshire,

oppose each of Plaintiff's Motions for Partial Summary Judgment.

   1. *Alleged Lack of a Properly Executed Deed*

   Plaintiff asserts that she is entitled to summary judgment because she did not transfer

legal ownership to the Condo via a properly executed and acknowledged deed in accordance with

District of Columbia law. *See generally* Pl.'s Deed Mem. Plaintiff raised the same argument in

her previous motion for partial summary judgment on this issue, which the Court denied without

prejudice based on the clear issues of material fact created by the FMV Defendants' proffer of a

copy of an apparent Deed signed by Plaintiff on August 31, 2005 transferring title in the Condo

to the LLC. *See Juergens*, 246 F.R.D. at 11. As the FMV Defendants note in response to

Plaintiff's current Motion for Partial Summary Judgment, the "parties have not engaged in any

discovery since the Court's denial of Plaintiff's prior motion . . . and no additional facts are

known to the parties." FMVIILA/Bennett Opp'n at 5. Nevertheless, Plaintiff maintains that she

is entitled to summary judgment on the issue because (1) the identity of the purported notary

cannot be determined from the Deed at issue; (2) there is no notarial seal or stamp on the Deed;

(3) the only people present when she signed any documents were Defendants Duncan and

Bennett, neither of whom is a notary in Virginia; and (4) she never "'signed or sealed' any deed

transferring her ownership interest in [the Condo] before a notary public or acknowledged her

signature or seal before a notary public." *See* Pl.'s Deed Mem. at 6, Ex. B (6/21/07 Juergens

Aff.).

Notwithstanding Plaintiff's argument, a number of issues of fact clearly exist based on

the record at this time. Most significantly, although Plaintiff's Second Amended Complaint

asserts that she does not believe that she signed the Deed at issue, *see* SAC ¶¶ 83-84, a signature

resembling Plaintiff's appears on the face of the Deed. *Compare* Pl.'s Deed Mem., Ex. B

(Juergens Aff.) *with* Ex. B(3) (8/31/05 Deed). In addition, as Plaintiff acknowledges, based on

the face of the Deed at issue, there is no way to identify the individual who purportedly notarized

the document, and thus ascertain whether that individual was a licensed notary. Further, while

Plaintiff maintains that Defendants Duncan and Bennett were present when she signed

25

documents regarding the FMV Loan, the Court notes that in his Answer to Plaintiff's Second Amended Complaint, Defendant Bennett denies being present at the closing of the FMV Loan. *See* FMVILA/Bennett Ans. ¶ 78.  Moreover, although the photocopies of the Deed attached to the parties' filings do not reveal any seals or stamps, as Defendants FMVILA and Bennett note in their Statement of Material Facts accompanying their Opposition, raised seal stamps are not always visible on photocopied documents, *see* FMVILA/Bennett Stmt. at 2 ¶ 3, and the record is devoid of information regarding the original of the Deed.  Finally, while Plaintiff argues that she did not orally acknowledge a deed transferring title in the Condo to the LLC before a notary public, *see* Pl.'s Deed Mem. at 10,  the notary block on the Deed in question asserts that Plaintiff "acknowledged" the Deed before the unidentified notary, *see id.*, Ex. B(3) (8/31/05 Deed).

These genuine issues of fact become highly material based on the Court's cursory review of the statutes relevant to Plaintiff's argument that the Deed in question did not validly transfer title to the Condo to the LLC under District of Columbia law because it was not executed, acknowledged, and certified before a notary.  *See* Pl.'s Deed Mem. at 6-8.  As an initial matter, in focusing on the lack of a notary seal, Plaintiff cites to the District of Columbia's requirements for valid notarizations.  *See id.* (citing D.C. Code §§ 42-141 and 42-142).  The Deed in question, however, was purportedly executed at the FMV Defendants' offices in Virginia, *see* Pl.'s Deed Mem., Ex. B(3); SAC ¶ 74, and District of Columbia law provides reciprocity for notarial acts performed by notaries public of other jurisdictions.  *See* D.C. Code § 42-144.  Furthermore, under Virginia law, while a notary is required to "affix a sharp, legible, permanent, and photographically reproducible image of the official seal" near his or her "official signature on the notarial certificate of a paper document," "failure to affix an official seal shall not in any way

26

impact the legality or efficacy of the paper document."  Va. Code Ann. § 47.1-16.

In addition, even if the Deed in question was not "acknowledged and certified," as required by D.C. Code § 42-401, because that section "deals with acknowledgment, certification, *and recordation* as protections for 'creditors and subsequent bona fide purchasers,' . . . [t]hose requirements do not bar the operation of a signed, sealed, and delivered deed against parties and their assignees."  *Lumpkins v. CSL Locksmith, LLC*, 911 A.2d 418, 425 (D.C. 2006) (quoting *Clay Props., Inc. v. Washington Post. Co.*, 604 A.2d 890, 894 (D.C. 1992) (en banc) and *Munsey Trust Co. v. Alexander, Inc.*, 42 F.2d 604 (D.C. Cir. 1930)).  As such, for purposes of determining whether the Deed in question validly transferred title to the Condo from Plaintiff to the LLC, the issue again becomes whether the signature on the Deed belongs to Plaintiff and whether the original copy of the Deed bears a raised seal.  *See* D.C. Code § 42-306 (requiring the use of a deed "signed and sealed by the grantor" for transfers of interests in property for a term of longer than one year).  Those questions simply cannot be resolved on the record before the Court, and the Court shall therefore deny without prejudice Plaintiff's Motion for Partial Summary Judgment as to the issue of a properly executed deed.[6]  Plaintiff may raise the alleged lack of a

---

[6] Defendants FMVILA and Bennett devote much of their Opposition to Plaintiff's Motion for Summary Judgment to arguing that Plaintiff's challenge to the efficacy of the Deed in question is barred by D.C. Code § 42-403, which provides that "[a]ny instrument recorded in the Office of the Recorder of Deeds . . . shall be effective notwithstanding the existence of [a failure in the formal requisites of a deed] . . . unless the failure is challenged in a judicial proceeding commenced within 6 months after the instrument is recorded."  *See* FMVILA/Bennett Opp'n at 5-7 (citing D.C. Code § 42-403).  The Deed in question was recorded on September 21, 2006.  *See* Pl.'s Deed Mem., Ex. B(3) (8/31/05 Deed).  According to FMVILA and Bennett, Plaintiff did not challenge the validity of the Deed "in a judicial proceeding" until her June 15, 2007 Second Amended Complaint, filed more than six months after September 21, 2006.  *See* FMVILA/Bennett Opp'n at 5-7.  In contrast, Plaintiff argues that she challenged the validity of the deed purporting to transfer title in the Condo to the LLC via her previous motion for partial summary judgment, filed on November 17, 2006.  Pl.'s Reply at 2-3.  Because Plaintiff's Motion

validly executed deed again, if appropriate, *after* the parties engage in discovery in this matter.

2.    *Alleged Lack of Consideration*

Plaintiff argues that she is likewise entitled to summary judgment because the alleged sale of the Condo from Plaintiff to the LLC is void for lack of consideration.  In support of her Motion, Plaintiff asserts that, although the Deed attached to her Second Amended Complaint recites that she was paid $200,000 by the LLC as consideration for the sale, the HUD-1 that purports to reflect the alleged sale does not account for any payment of $200,000 from the LLC to Plaintiff, and she was never paid $200,000 by the LLC for an alleged sale.  *See generally* Pl.'s Consid. Mem.  Again, however, summary judgment is precluded by the existence of genuine questions of material fact.

Specifically, Plaintiff's assertion that she did not receive $200,000 from the LLC for an alleged sale, *see id.*, Ex. B (6/20/07 Juergens Aff. ¶ 7), is clearly contradicted by the recitation in the Deed at issue.  Further, because Plaintiff does not believe she signed that Deed, *see* SAC ¶ 85, another question exists as to the validity of that signature.  Next, Plaintiff's argument that she did not receive consideration for the alleged sale is based largely on the HUD-1 that purports to memorialize the sale of the Condo to the LLC.  *See* Pl.'s Consid. Mem., Ex. B(2) (8/31/05 HUD-1).  That HUD-1, however, is also contradicted by the Deed at issue, and Plaintiff offers no legal or factual grounds for crediting either the alleged Deed or the alleged HUD-1 over the other.  Furthermore, even if the Court were to credit the HUD-1 (which Plaintiff asserts she does not believe she signed, *see* SAC ¶¶ 83-84) over the Deed, the HUD-1 reflects a number of payments

---

for Partial Summary Judgment is precluded by the existence of genuine issues of material fact, the Court need not determine what constitutes a "challenge[] in a judicial proceeding."

on Plaintiff's behalf which, in combination, total over $200,000. Specifically, the HUD-1 states that $61,195.11 of the FMV Loan proceeds were used to pay off the UTS Loan, $95,000 was advanced to FMVILA, and $67,526.31 was escrowed for "interest Reserve." *See* Pl.'s Consid. Mem., Ex. B(2) (8/31/05 HUD-1). Plaintiff admits to receiving $95,000 in cash at the closing of the FMV Loan, *see* SAC ¶ 101, and in his Affidavit filed in support of his Opposition, Defendant Bennett asserts that "funds escrowed from the [FMV Loan] transaction were paid out to meet the monthly payment obligations set forth in the Balloon Deed of Trust Note dated August 31, 2005 which [Plaintiff] had personally guaranteed. Those payments totaled approximately $78,750.00," *see* 7/11/07 Bennett Aff.

Based on the foregoing, it is clear that genuine questions exist as to disposition of the FMV Loan proceeds and whether Plaintiff, in fact, received $200,000 from those proceeds that might constitute consideration for the alleged sale of the Condo to the LLC. These questions are highly material, and while they may ultimately be resolved through discovery, they preclude summary judgment in favor of Plaintiff at this time. The Court shall therefore deny without prejudice Plaintiff's Motion for Partial Summary Judgment on the alleged lack of consideration. Plaintiff may raise the alleged lack of consideration again, if appropriate, *after* the parties conduct discovery in this matter.

### IV.  CONCLUSION

For the foregoing reasons, the Court shall (1) grant Defendant FMVLLC's Motion to Dismiss Plaintiff's Second Amended Complaint; (2) deny Defendant Duncan's Motion to Dismiss Plaintiff's Second Amended Complaint; (3) deny without prejudice Plaintiff's Motion for Partial Summary Judgment as to the alleged lack of a properly executed deed; and (4) deny

without prejudice Plaintiff's Motion for Partial Summary Judgment as to the alleged lack of consideration for the sale of the Condo to the LLC.  In addition, as set forth in the accompanying Order, the parties shall be precluded from filing any further dispositive motions before discovery is complete in this matter.

Date:   February 4, 2008

_____/s/_____

COLLEEN KOLLAR-KOTELLY
United States District Judge