IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| MARY JUERGENS, individually, and as<br>the sole member of "1230 23rd Street, LLC"<br>1230 23rd Street, N.W., Apt. 505<br>Washington, DC  20037 | )<br>)<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )<br>) |
| URBAN TITLE SERVICES, INC.<br>2844 Powder Mill Road<br>Adelphi, Maryland  20783 | )<br>)<br>)<br>) |
| WILLIAM D. KENNEY, JR.<br>2200 Defense Highway, Suite 300<br>Crofton, Maryland  21114 | )<br>)<br>)<br>) |
| PAUL ERB<br>1200 Braddock Place, #708<br>Alexandria, Virginia  22314 | )   Civil Action Number: 06-CA-1524 (CKK)<br>)<br>)<br>) |
| FIRST MOUNT VERNON INDUSTRIAL<br>LOAN ASSOCIATION INCORPORATED<br>a/k/a "First Mount Vernon Industrial Loan<br>Association, Inc."<br>6019 Tower Court<br>Alexandria, Virginia  22304 | )<br>)<br>)<br>)<br>)<br>)<br>) |
| DALE E. DUNCAN<br>6019 Tower Court<br>Alexandria, Virginia  22304 | )<br>)<br>)<br>) |
| ARTHUR G. BENNETT<br>6019 Tower Court<br>Alexandria, Virginia  22304 | )<br>)<br>)<br>) |
| BRICKSHIRE SETTLEMENTS, LLC<br>6121 Dorchester Street<br>Springfield, Virginia  22150 | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

**3rd AMENDED COMPLAINT AND JURY DEMAND**

## (ACTION INVOLVING REAL PROPERTY)

### 1230 23rd Street, N.W., Apt. 505, Washington, DC 20037
### District of Columbia Real Property SSL Number 0036 - 2004

Plaintiff Mary Juergens, individually, and in her capacity as the sole member of "1230 23rd Street, LLC," by and through her attorneys, J.P. Szymkowicz, John T. Szymkowicz and the Law Firm of Szymkowicz & Szymkowicz, LLP, files this 3rd Amended Complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure and demands judgment in the amount of Five Million Dollars ($5,000,000.00) representing compensatory damages and Ten Million Dollars ($10,000,000.00) representing punitive damages against Defendants Urban Title Services, Inc., William D. Kenney, Jr., Paul Erb, First Mount Vernon Industrial Loan Association Incorporated a/k/a "First Mount Vernon Industrial Loan Association, Inc.," Dale E. Duncan, Arthur G. Bennett and Brickshire Settlements, LLC, jointly and severally, for the reasons stated in this 3rd Amended Complaint. In addition, Plaintiff Juergens respectfully requests that the following documents related to 1230 23rd Street, N.W., Apt. 505, Washington, DC 20037 that were allegedly notarized, witnessed or prepared by Defendant Dale Duncan: the "1230 23rd Street, LLC's" articles of organization, the "1230 23rd Street, LLC's" operating agreement, the "1230 23rd Street, LLC's" resolution to borrow from a designated bank, the deed between "Mary Juergens" and the "1230 23rd Street, LLC," the balloon deed of trust note, the commercial loan balloon deed of trust note, the mortgage reverification agreement, the financing agreement, the document correction certification, the assignment of contracts, income, leases, rents and profits, the District of Columbia Office of Tax and Revenue security affidavit – class 1 and the deed in lieu of foreclosure, be voided and rescinded and a constructive trust and/or a resulting trust be created in Plaintiff Juergens' favor with regard to the property itself and all funds paid by Plaintiff Juergens to Defendants for the reasons set forth in the instant 3rd Amended Complaint.

**Parties and Individuals Involved in Transactions at Issue**

1.      Plaintiff Mary Juergens [hereinafter "Plaintiff Juergens"] is an adult female resident of the District of Columbia who files this suit in her individual capacity as well as in her capacity as the sole member of the "1230 23rd Street, LLC."

2.      Defendant Urban Title Services, Inc. is believed to be a Virginia corporation that is not authorized to conduct business in the District of Columbia.

3.      Defendant William D. Kenney, Jr. is believed to be an adult male resident of the State of Maryland.

4.      George Owen is believed to be an adult male resident of the State of Maryland who agreed, either individually or through the George Owen Trust, to lend money to Plaintiff Juergens.  [The loan to Plaintiff Juergens will be hereinafter referred to as the "George Owen loan"].

5.      Robert William Carney is believed to be an adult male resident of the State of Maryland who was, at all relevant times, an attorney-at-law who represented George Owen and the George Owen Trust in conjunction with the George Owen loan.

6.      In addition, Robert William Carney, at all relevant times, was a partner of Defendant William D. Kenney, Jr. and Defendant Paul Erb in Defendant Urban Title Services, Inc. and shareholder of Defendant Urban Title Services, Inc.

7.      Defendant Paul Erb is believed to be an adult male resident of the Commonwealth of Pennsylvania.

8.      Defendant First Mount Vernon Industrial Loan Association Incorporated a/k/a "First Mount Vernon Industrial Loan Association, Inc." [hereinafter "Defendant First Mount Vernon

ILA"] is an "industrial loan association" licensed under Virginia Code § 6.1-227, et seq. that is authorized to conduct business in the District of Columbia as a foreign business corporation.

9.    Defendant Dale E. Duncan is believed to be an adult male, who works as an attorney in the Commonwealth of Virginia, but whose state of residence is not known to Plaintiff Juergens.

10.    Defendant Arthur G. Bennett is believed to be an adult male, who works in the Commonwealth of Virginia, but whose state of residence is not known to Plaintiff Juergens.

11.    Defendant Brickshire Settlements, LLC is believed to be a Virginia limited liability company.

**Property at Issue**

12.    This action concerns real property located at 1230 23rd Street, N.W., Apt. 505, Washington, DC  20037 for which the District of Columbia Recorder of Deeds has assigned SSL Number 0036 - 2004.

13.    At all relevant times continuing to the present, Plaintiff Juergens has resided in and owned a condominium unit in "The Metropolitan," located at 1230 23rd Street, N.W., Apt. 505, Washington, DC  20037.

**Jurisdiction and Venue**

14.    This Honorable Court possesses jurisdiction over the instant matter pursuant to 28 U.S.C. § 1332 as this civil action involves citizens of different states and where the matter in controversy exceeds the sum or value of $75,000.00.

15.    Venue is proper in this Honorable Court pursuant to 28 U.S.C. § 1391 (b) and (c) since the District of Columbia is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred and since the District of Columbia is a judicial district where all Defendants are subject to personal jurisdiction since all Defendants transact

business in the District of Columbia by, including by not limited to, lending money to residents located in the District of Columbia, recording deeds and other land records with the District of Columbia Government and processing loans regarding properties located in the District of Columbia.

## BACKGROUND FACTS – URBAN TITLE SERVICES, INC. LOAN

16.    During the summer of 2003, Plaintiff Juergens required a loan in the amount of approximately $10,000.00 in order for Plaintiff Juergens to pay off a condominium fee assessment and associated penalties and attorney's fees.

17.    During the summer of 2003, the fair market value of Plaintiff Juergens' condominium unit was approximately $330,000.00.

18.    Except for these condominium fee assessments and fees in the amount of approximately $10,000.00, Plaintiff Juergens owned her condominium free and clear of any mortgages or liens.

19.    Thus, during the summer of 2003, Plaintiff Juergens had approximately $320,000.00 in equity in her condominium unit.

20.    Sometime during June or July 2003, Plaintiff Juergens spoke to Defendant Kenney, who presented himself as an agent, servant or employee of Defendant Urban Title Services, Inc. about securing such a loan and subsequently entered into a contract with Defendant Urban Title Services, Inc. in which Defendant Urban Title Services, Inc., in exchange for a customary and reasonable fee, would solicit a mortgage loan on behalf of Plaintiff Juergens.

21.    At the time she spoke to Defendant Kenney about obtaining a loan, Plaintiff Juergens' credit was "bad."

22.    In fact, Plaintiff Juergens credit was so bad at the time she sought a loan through Defendant Kenney that she was not able to obtain a loan through any public mortgage company, which is why Plaintiff Juergens needed to seek a loan from a private lender.

23.    Defendant Kenney, acting as an agent, servant or employee of Defendant Urban Title Services, Inc., with the expectation of compensation or gain, either directly or indirectly accepted or offered to accept an application for a mortgage loan on behalf of Plaintiff Juergens or solicited or offered to solicit a mortgage loan on behalf of Plaintiff Juergens.

24.    Specifically, Defendant Kenney obtained financial information from Plaintiff Juergens and, using this information, contacted one or more sources of funding in an effort to secure a potential loan to Plaintiff Juergens, including his partner in Defendant Urban Title Services, Inc., Robert William Carney, as well as a mortgage lender named Atlantic Capital.

25.    After Atlantic Capital declined to extend a loan to Plaintiff Juergens, Defendant Kenney presented a "thick file" representing information about Plaintiff Juergens to Robert William Carney and asked him to "look it over and see if [he] might have a client that would be interested in making this loan."

26.    In response to this request, Robert William Carney asked his client, George Owen, if he would be interested in lending money to Plaintiff Juergens.

27.    Robert William Carney informed Defendant Kenney that George Owen decided to extend a loan to Plaintiff Juergens.

28.    The loan that George Owen decided to extend to Plaintiff Juergens was in the amount of $60,000.00 with an interest rate of 10%, a monthly payment of $792.90, a funding date of October 20, 2003 and a maturity date of October 20, 2004.

29.     While Plaintiff Juergens' self-reported monthly income was $5,500.00, this amount was not sufficient to cover the payoff balance on the $60,000.00 loan on the maturity date of October 20, 2004, which was exactly one year after the funding of the loan.

30.     Despite having approximately $330,000.00 in equity in her condominium unit, no prudent lender would reasonably have extended a loan to Plaintiff Juergens in the amount of $60,000.00 due to her low credit scores since the lender had no reasonable expectation that Plaintiff Juergens would be able to repay this loan pursuant to D.C. Code § 26-1114 (a), which states

> No mortgage lender or mortgage broker required to be licensed under this chapter, or person required to be licensed under this chapter, shall . . . (6) Make, directly or indirectly, any mortgage loan with the intent to foreclose on the borrower's property. For purposes of this paragraph, any of the following factors may be considered in determining whether a mortgage loan was made with the intent to foreclose on the borrower's property: (A) Lack of the probability of full repayment of the loan by the borrower; and (B) A significant proportion of similarly foreclosed loans by the lender.

31.     Defendant Erb was tasked with preparing a HUD-1 with regard to the George Owen loan as an agent, servant or employee of Defendant Urban Title Services, Inc.[1]

32.     Defendant Kenney then worked with Defendant Erb, Robert William Carney and Plaintiff Juergens in order to schedule a closing on the George Owen loan.

33.     Plaintiff Juergens's contract with Defendant Urban Title Services, Inc. also provided that, in exchange for a customary and reasonable fee, Defendant Urban Title Services, Inc. would perform the closing on the George Owen loan, including the prompt disbursal of funds associated with this loan and "clean up" her credit by "paying off the things that we had

---

[1]     A copy of the HUD-1 related to the George Owen loan is attached to this 3rd amended complaint as Exhibit 1.

collected for or were getting things released from her credit report that we had collected for" in order "to allow her to obtain a traditional loan."

34.    Because foreclosure on Plaintiff Juergens' condominium was scheduled for October 21, 2003 as a result of her past due condominium assessments and fees, and thus, she was in imminent danger of foreclosure, Defendant Kenney scheduled the closing on the George Owen loan for October 20, 2003 at Yanni's Restaurant in Washington, DC which was near Plaintiff Juergens' home, rather than Defendant Urban Title Services, Inc.'s business office in Maryland.

35.    At the closing on the George Owen loan, Defendant Kenney and Defendant Erb acted as agents, servants or employees of Defendant Urban Title Services, Inc. in "closing" the loan by "explaining" documents, "getting" signatures, "following" the instructions of Robert William Carney and George Owen, "stopping" the foreclosure, "paying off" "things that needed to be paid off" and "taking care" of "things" on Plaintiff Juergens' credit report.

36.    Despite the fact that Robert William Carney was acting as George Owen's lawyer with regard to the loan to Plaintiff Juergens and did not attend the closing on this loan, Defendant Erb placed Robert William Carney's name on the HUD-1 related to the George Owen loan as the "settlement agent."

37.    Moreover, Defendant Erb and Defendant Kenney used a HUD-1 during the closing on Plaintiff Juergens' loan that incorrectly stated that the loan closing took place in Maryland, when it actually took place at Yanni's Restaurant in Washington, DC.

38.    Additionally, Defendant Erb did not obtain any proof of identification from Plaintiff Juergens as he believed that she was a "personal acquaintance" of Defendant Kenney.

39.    Defendant Erb admitted that he did not come closer than "15 or 20 feet" from Plaintiff Juergens at the closing at Yanni's restaurant and thus, could not hear anything discussed between Plaintiff Juergens and Defendant Kenney.

40.    Defendant Erb claims to have made an entry in a notarization log book related to Plaintiff Juergens' loan, but does not have this log book anymore.

41.    Thus, Defendant Erb could not have taken an acknowledgement pursuant to D.C. Code §§ 42-141, 42-142, 42-143, 42-306 and 42-401 with regard to any of the documents allegedly signed by Plaintiff Juergens in conjunction with her loan from George Owen since he did not personally observe Plaintiff Juergens declaring that she has executed an instrument for the purposes stated in the instrument.

42.    Defendant Urban Title Services, Inc. has "misplaced" the "file" on Plaintiff Juergens' loan "over the course" of time.

**Defendant Urban Title Services, Inc. Fees with Regard to the George Owen Loan Closing**

43.    Despite Atlantic Capital not being able to offer Plaintiff Juergens a loan, Defendant Urban Title Services, Inc. nevertheless paid a $500.00 "appraisal fee" out of the proceeds Plaintiff Juergens received from the George Owen loan to pay for an appraisal allegedly obtained by Atlantic Capital; thus, Plaintiff Juergens was overbilled by $500.00.

44.    Defendant Urban Title Services, Inc. charged Plaintiff Juergens a "credit report" fee of $648.00 even though it was Atlantic Capital who ordered the credit report and, in any event, this credit report only cost $6.05, thus, Plaintiff Juergens was overbilled by at least $641.95.

45.    Defendant Urban Title Services, Inc. charged Plaintiff Juergens a "processing fee" of $575.00 for "processing all the paperwork, going around, driving around, doing all that other

stuff" even though the customary and reasonable "processing fee" was $300.00 to $400.00; thus, Plaintiff Juergens was overbilled by at least $175.00.

46.    Defendant Urban Title Services, Inc. charged Plaintiff Juergens an "administration fee" of $650.00 for "administration of running the company" even though this fee was "higher than [Defendant Urban Title Services, Inc's] normal fees" and even though the customary and reasonable "administration fee" was approximately $500.00; thus, Plaintiff Juergens was overbilled by at least $150.00.

47.    Defendant Urban Title Services, Inc. charged Plaintiff Juergens a "settlement or closing fee" of $800.00 for "conducting the settlement" due to the fact that the loan was a "private loan" with "extra risk involved" even though the customary and reasonable "settlement or closing fee" was approximately $250.00 to $350.00; thus, Plaintiff Juergens was overbilled by at least $450.00.

48.    Defendant Urban Title Services, Inc. charged Plaintiff Juergens an "abstract/title search fee" of $400.00 even though the customary and reasonable "abstract/title search fee" was approximately $125.00 to $250.00; thus, Plaintiff Juergens was overbilled by at least $150.00.

49.    Defendant Urban Title Services, Inc. charged Plaintiff Juergens a "title examination fee" of $800.00 for "examining the title and determining everything that, you know, could be out there on this property" even though the customary and reasonable "title examination fee" was approximately $125.00 to $250.00 and is usually included in the "abstract/title search fee;" thus, Plaintiff Juergens was overbilled by at least $550.00.

50.    Defendant Urban Title Services, Inc. charged Plaintiff Juergens a "title insurance binder fee" of $800.00 due to the "risk" of the loan even though this fee was not warranted at all since

the title insurance "binder" is a preliminary title policy that is converted to a final policy after closing; therefore Plaintiff Juergens was overbilled by $800.00.

51.    In fact, in this case, the actual final title insurance policy, as reflected on Line 1108 of the HUD-1 was only $171.00.

52.    Defendant Urban Title Services, Inc. charged Plaintiff Juergens a "document preparation fee" of $550.00 even though the lender, George Owen, through his counsel, Robert William Carney, prepared the deed and deed of trust note and was paid $2,500.00 for this work as referenced in Line 1107 of the HUD-1; therefore, there should not have been any such fee and thus, Plaintiff Juergens was overbilled by $550.00.

53.    Defendant    Urban    Title    Services,    Inc.    charged    Plaintiff    Juergens    a "payoff/release/recording fee" of $600.00 for "basically driving around, getting the things - you know, the people that were foreclosing, getting them their checks, going to the recording office and recording things necessary, getting the releases for the tax liens, things like that" even though the customary and reasonable "payoff/release/recording fee" was approximately $25.00 to $100.00; thus, Plaintiff Juergens was overbilled by at least $500.00.

54.    Defendant Urban Title Services, Inc. charged Plaintiff Juergens an "express fee" of $200.00 for "sending things" even though Defendant Erb admits that the actual charges were "probably" less than $200.00 and even though the customary and reasonable "express fee" was approximately $25.00 to $75.00; thus, Plaintiff Juergens was overbilled by at least $125.00.

55.    Defendant Urban Title Services, Inc. charged Plaintiff Juergens a "recording fee" of $100.00 for recording of documents with the District of Columbia Recorder of Deeds, but the true fee paid was only $68.50; thus, Plaintiff Juergens was overcharged by at least $31.50.

56.    The total amount that Defendant Urban Title Services, Inc. overcharged Plaintiff Juergens with respect to the closing on the George Owen loan was $4,623.45.

### Funds for Tax Liens that Defendant Urban Title Services, Inc. Escrowed but Did Not Payoff or Return to Plaintiff Juergens

57.    Defendant Urban Title Services, Inc. placed $10,300.00 in its escrow account upon the closing of the George Owen loan in order to pay the following debts that Plaintiff Juergens believed that she might owe, if they could be verified:  $1,100.00 for "Collection Accounts," $1,700.00 for "Fairfax County tax lien," and 7,500.00 for "USA tax liens."

58.    Since Plaintiff Juergens' alleged debts that total $10,300.00 could not be verified because the tax liens were time-barred and no documentation existed for the "Collection Accounts," Plaintiff Juergens was under no legal obligation to pay these alleged debts, and therefore, Defendant Urban Title Services, Inc. had the duty to return the escrowed $10,300.00 to Plaintiff Juergens.

59.    Despite numerous requests by Plaintiff Juergens for the return of the escrowed $10,300.00, Defendant Urban Title Services, Inc. has failed to return these funds, with the exception of a $1,592.58 check dated March 9, 2004.

60.    Therefore, of the escrowed $10,300.00, Defendant Urban Title Services, Inc. has still failed to return $8,707.42 to Plaintiff Juergens without justification, even though Defendant Erb wrote Plaintiff Juergens a letter dated March 9, 2004 in which he stated that

> We have been in contact with the IRS and have successfully negotiated a settlement and full releases of both of your tax liens.  After receiving them, we will be sending you a copy to the appropriate credit agencies in order to clean up your credit.  Bill has told me that you have also obtained several releases.  Please fax these to us so that we can make sure that they are released properly.  We have also been in contact with Kass, Miteck and Kass.  We are sending them a check for $1,592.58 to pay off your account with them.  *The balance of funds is being returned to you* [emphasis added].  It has been a pleasure doing business with you.

Keep up the good work in staying current on both your loan and your condominium dues.[2]

### Defendant Urban Title Services, Inc.'s "Bounced" Escrow Check

61.     Defendant Urban Title Services, Inc. provided Plaintiff Juergens with an escrow check in the amount of approximately $24,597.06 at the closing on the George Owen loan, but Plaintiff Juergens was not able to cash this check at Defendant Urban Title Services, Inc.'s bank due to insufficient funds in Defendant Urban Title Services, Inc.'s escrow account.

62.     Plaintiff Juergens alerted Defendant Kenney of this problem, who placed sufficient funds in Defendant Urban Title Services, Inc.'s escrow account and thereafter, Plaintiff Juergens was able to cash this check.

### Defendant Urban Title Services, Inc.'s Lack of Disclosures
### Related to the George Owen Loan

63.     Defendant Urban Title Services, Inc. did not provide Plaintiff Juergens with any of the following required disclosures with regard to the George Owen loan:

a.      a copy of the HUD-1 in advance of the closing;

b.      "Red Flag Warning" disclosure notice in violation of D.C. Code §26-1152.11;"

c.      notice of right to obtain credit counseling in connection with the loan, pursuant to D.C. Code §26-1152.19;

d.      statement in conformity with D.C. Code §26-905 that showed "in clear and distinct terms, the amount of the loan, the date when loaned and when due, the person to whom the loan is made, the name of the lender, [or] the amount of interest charged;"

e.      a "plain and complete receipt" in conformity with D.C. Code §26-905 "for all payments made on account of the loan at the time such payments are made;"

f.      disclosures pursuant to D.C. Code §28-4605;

---

[2]     See letter dated March 9, 2004 from Defendant Erb to Plaintiff Juergens that is attached to this 3rd amended complaint as Exhibit 2.

      g.        good faith estimate of loan charges and settlement costs; or

      h.        other disclosures related to Truth-in-Lending statutes.

### Total Amount Unlawfully Retained by Defendant Urban Title Services, Inc.

64.     The sum of the fees that Defendant Urban Title Services, Inc. charged for the closing on the George Owen loan that were greater than customary and reasonable ($4,623.45) and the amount that Defendant Urban Title Services, Inc. retained for the payment of tax liens and debts but did not so pay or refund to Plaintiff Juergens ($8,707.42) is $13,330.87.

### Plaintiff Juergens' Refinancing of the George Owen Loan

65.     When the George Owen loan became due on October 20, 2004, Plaintiff Juergens did not have the funds to payoff the loan balance, which was approximately $60,000.00 at the time.

66.     Therefore, Plaintiff Juergens was in default on the George Owen loan and was forced to refinance this loan to avoid losing her home to foreclosure.

67.     Plaintiff Juergens did, in fact, refinance the George Owen loan via another loan from Defendant First Mount Vernon ILA that closed on August 31, 2005.

### Compensatory Damage Claim with Regard to the George Owen Loan

68.     As a direct and proximate result of Defendant Kenney, Defendant Erb and Defendant Urban Title Services, Inc.'s actions with regard to the George Owen loan, Plaintiff Juergens suffered damages, including, but not limited to:

      a.      the loss of use of the funds that Defendant Urban Title Services, Inc. charged for the closing of on the George Owen loan that were greater than customary and reasonable ($4,623.45) and the amount that Defendant Urban Title Services, Inc. retained for the payment of tax liens and debts but did not so pay or refund to Plaintiff Juergens ($8,707.42), which total $13,330.87;

      b.      4% of the previously stated figure ($13,330.87), or $533.23, which represents the portion of the "Loan Origination Fee" paid on funds that Plaintiff

Juergens did not receive or were paid on her behalf with regard to the George Owen loan;

c.    interest on the $13,330.87 plus the $533.23 (which totals $13,864.10) at the rate of 10% from October 20, 2003 to the date this loan was refinanced (August 31, 2005), or $2,630.33;

d.    4% of the previously stated figures ($13,330.87 + $2,630.33) = $638.45 which represents the portion of the "Loan Origination Fee" related to the loan from First Mount Vernon ILA that was necessary to refinance the George Owen loan;

e.    interest on the previous amounts ($13,330.87 + $2,630.33  + 638.45 = $16,599.65) at the rate of 18% (the interest rate on the loan from Defendant First Mount Vernon ILA) beginning on August 31, 2005 and continuing into the future until paid off (which, as of August 1, 2008 equals $8,847.61);

f.    title searches paid by Plaintiff Juergens with reference to the George Owen loan that totaled $550.00;

g.    costs incurred to reclaim jewelry worth approximately $125,000.00 pawned by Plaintiff Juergens which is estimated at $25,000.00;

h.    damages suffered by Plaintiff Juergens in an amount to be proven at trial resulting from Defendant Kenney, Defendant Erb and Defendant Urban Title Services, Inc.'s violations of statutes, including Fair Lending and Consumer Protection statutes;

i.    mental anguish, physical injuries and emotional damages, including, but not limited to, sleeplessness, anxiety, restlessness, circulatory problems, headaches and other physical ailments suffered by Plaintiff Juergens resulting from Defendant Kenney, Defendant Erb and Defendant Urban Title Services, Inc.'s actions in an amount to be proven at trial;

j.    compensatory damages to be proven at trial, but which are expected to be in excess of $5,000,000.00;

k.    treble and punitive damages as provided for by statute to be proven at trial, but which are expected to be in excess of $5,000,000.00; and

l.    attorney's fees, legal expenses and court costs in an amount to be proven at trial.

**Punitive Damage Claim with Regard to the George Owen Loan**

69.    The previously-described actions of Defendant Kenney, Defendant Erb and Defendant Urban Title Services, Inc. with regard to the George Owen loan were taken with actual malice in the sense of conscious and deliberate wrongdoing, evil or wrongful motive, intent to injure, ill will or fraud, thus supporting Plaintiff Juergens' claim for punitive damages.

## BACKGROUND FACTS – FIRST MOUNT VERNON ILA LOAN

70.    In early-August 2005, Plaintiff Juergens had been in default on the George Owen loan for almost one year.

71.    The George Owen loan had a payoff balance of approximately $61,195.11 in August 2005.

72.    On or about August 4, 2005, Plaintiff Juergens telephoned the offices of Defendant First Mount Vernon ILA and First Mount Vernon Mortgage, L.L.C. (which share a common office in Alexandria, Virginia and which share a majority shareholder, Defendant Bennett) to inquire about a loan to refinance the George Owen loan in an effort to avoid foreclosure.

73.    On August 4, 2005, Plaintiff Juergens spoke to Defendant Bennett about this loan, and he ordered a credit report from Equifax based upon a written authorization from Plaintiff Juergens to "First Mount Vernon" dated August 4, 2005 and that listed "1230 23rd Street, Apt. 505, Washington, DC 20037" as her address.[3]

74.    After receiving a copy of Plaintiff Juergens' credit report, Defendant Bennett scheduled a meeting with Plaintiff Juergens at the joint offices of Defendant First Mount ILA and First Mount Vernon Mortgage, L.L.C. on August 5, 2005, where she met with Defendant Bennett

---

[3]    See copy of written authorization to obtain credit report from Plaintiff Juergens to "First Mount Vernon" dated August 4, 2005 that is attached to this 3rd amended complaint as Exhibit 3.

who, as Defendant First Mount Vernon ILA's President, was the agent, servant or employee of Defendant First Mount Vernon ILA.

75.   During this meeting with Defendant Bennett on August 5, 2005, Plaintiff Juergens explained her financial situation and stated that she "had an existing loan that needed to be paid off," that this loan was in default, and she was living in the condominium unit at issue.

## Plaintiff Juergens' Credit Report and Home Appraisal

76.   This Equifax credit report (which simply references "First Mount Vernon" after the words "Report prepared for" rather than "First Mount Vernon Industrial Loan Association, Incorporated") ordered by Defendant Bennett revealed that Plaintiff Juergens had horrible credit with a lot of "derogatory entries" and a credit "mid-score" of 569.

77.   In fact, Plaintiff Juergens' credit report provided a credit score that would not have allowed her to obtain a loan from a reputable bank such as Bank of America, a fact that Defendant Bennett would have known on August 5, 2005 when he met in person with Plaintiff Juergens.

78.   Moreover, Plaintiff Juergens' credit report showed "address discrepancies" that should have caused a prudent lender to require further proof of Plaintiff Juergens' home address before extending a loan to Plaintiff Juergens.

79.   In addition, Defendant Bennett ordered an appraisal on Plaintiff Juergens home, which valued the condominium unit at $490,000.00, a value that has remained constant to this date.

80.   This appraisal that Defendant Bennett ordered shows the "borrower" to be "Mary Juergens," the "owner" to be "Mary Juergens," and the box for "owner" is checked next to the term, "occupant," and that the appraisal was based on an "interior and exterior inspection."

81.     Defendant Bennett ordered this appraisal "to firm up the value of the property, which is what [the] loan was based on" since the loan was Defendant First Mount Vernon ILA's "security" and "collateral" and therefore, Defendant First Mount Vernon ILA "wanted to be sure what the value was."

### Plaintiff Juergens & Defendant First Mount Vernon ILA's Contradictory Version of Events

82.     While Plaintiff Juergens insists that Defendant First Mount Vernon ILA, acting through Defendant Bennett, offered her a residential mortgage refinancing loan in the amount of $250,000.00 at a reasonable and customary rate and with reasonable and customary terms, Defendant First Mount Vernon ILA claims that it offered Plaintiff Juergens a commercial loan if she agreed to establish a Limited Liability Company, transfer title to the condominium to the Limited Liability Company, move out of the condominium, rent out the condominium to a third party, and have the Limited Liability Company take out the commercial loan (that would be guaranteed by Plaintiff Juergens in her personal capacity).

83.     Plaintiff Juergens further insists that she signed various documents related to a residential loan and did not sign any documents related to a commercial loan, any document establishing a Limited Liability Company known as "1220 23rd Street, LLC," any document transferring title to her condominium unit to the "1220 23rd Street, LLC," or any document in conjunction with a loan involving the "1220 23rd Street, LLC."

84.     If Plaintiff Juergens is correct that she did not sign any documents related to a commercial loan, any document establishing a Limited Liability Company known as "1220 23rd Street, LLC," any document transferring title to her condominium unit to the "1220 23rd Street, LLC," or any document in conjunction with a loan involving the "1220 23rd Street, LLC," any

18

such document is a forgery and the entire loan transaction is fraudulent and should be voided on that ground alone.

85.    However, assuming arguendo that Plaintiff Juergens did sign these documents, the facts nevertheless evidence that the loan from Defendant First Mount Vernon ILA is an illegal consumer residential loan disguised as a commercial loan in order to avoid fair lending laws and disclosure requirements.

86.    Hereinafter, Plaintiff Juergens reserves her right to claim that she never signed any document related to a commercial loan, any document establishing a Limited Liability Company known as "1220 23rd Street, LLC," any document transferring title to her condominium unit to the "1220 23rd Street, LLC," or any document in conjunction with a loan involving the "1220 23rd Street, LLC," but pleads in the alternative pursuant to F. R. Civ. P. 8 (a) (3) in support of her claim that the loan from Defendant First Mount Vernon ILA is an illegal consumer residential loan disguised as a commercial loan in order to avoid fair lending laws and disclosure requirements.

### Defendant First Mount Vernon ILA's Version of Events

87.    Defendant First Mount Vernon ILA claims that Defendant Bennett "gave [Plaintiff Juergens] suggestions as to various ways that [the loan] could be done, gave – told her what the basic costs would be and discussed the amount of the loan."

88.    Thereafter, Defendant First Mount Vernon ILA claims that Plaintiff Juergens agreed to take out a $250,000.00 loan that would payoff the loan from George Owen with a balance of $61,195.11 and provide her with $95,000.00 in cash at the loan closing.

89.    Defendant First Mount Vernon ILA further claims that it offered Plaintiff Juergens a commercial loan in the amount of $250,000.00 and that Plaintiff Juergens agreed to establish a

Limited Liability Company, transfer title to the condominium to the Limited Liability Company, move out of the condominium, rent out the condominium to a third party, and have the Limited Liability Company take out the commercial loan (that would be guaranteed by Plaintiff Juergens in her personal capacity).

### Defendant Duncan's Establishment of the "1230 23rd Street, LLC"

90.     Defendant Bennett admits that it was his idea for Plaintiff Juergens to establish the Limited Liability Company by "offer[ing] it as an option to her."

91.     Defendant Duncan is a member of the Virginia State Bar who "rents space" from Defendant First Mount Vernon ILA at Defendant First Mount Vernon ILA's office while serving as its in-house "counsel."

92.     Defendant Duncan claims that Defendant Bennett brought Plaintiff Juergens into his office in order to "establish a corporation."

93.     Defendant Duncan advised Plaintiff Juergens "that for tax reasons, real property should not be held in a corporation, and that a limited liability company may prove better."

94.     Defendant Duncan admits that

> At the first meeting, I don't think I really spent that much time with her to really discuss what her plans were with the property other than it was clearly an investment property. I don't know if she planned on selling it at some point. It -- I assumed that she was going to be renting it. Why else go to the LLC?

95.     Moreover, Defendant Duncan admits that Plaintiff Juergens would not need to form a Limited Liability Company in order to simply rent her condominium unit to a third party.

96.     Thereafter, Defendant Duncan claims that he "prepared the documents for the LLC" on Plaintiff Juergens' behalf.

97.    In mid-August, 2005, Defendant Duncan filed articles of organization dated August 16, 2005, with regard to the "1230 23rd Street, LLC" with the Virginia State Corporation Commission and received a certificate of organization from that office dated August 22, 2005.[4]

98.    The "1230 23rd Street, LLC" articles of organization contain several false statements:

a.    Paragraph 2 (B) (1) states that "The name of the limited liability company's initial registered agent is Mary Juergens. The registered agent is an individual who is **a resident of Virginia** [emphasis added] and a member or manager of the limited liability company." This statement is false because Petitioner Juergens neither resided in nor worked in the Commonwealth of Virginia and did not have any other contact with the Commonwealth of Virginia that would have permitted her to serve as a registered agent under Virginia law;

b.    Paragraph 3 states that "The limited liability company's initial registered office address, which is identical to the business office of the initial registered agent is **6019 Tower Court, Alexandria, Virginia 22304**." [Emphasis added]. This address is false because it the office of Defendant First Mount Vernon ILA, not Plaintiff Juergens' home address, "business office" address or for that matter, any address associated with Plaintiff Juergens;

c.    Paragraph 4 states that "The limited liability company's principal office is located at **6019 Tower Court, Alexandria, Virginia 22304**." [Emphasis added]. This address is false because it the office of Defendant First Mount Vernon ILA, not Plaintiff Juergens' home address, "business office" address or for that matter, any address associated with Plaintiff Juergens; and

d.    Plaintiff Juergens claims that her alleged signature (dated August 16, 2005) at the bottom of the articles of organization is a forgery that was signed without Plaintiff Juergens' knowledge or consent. In fact, Plaintiff Juergens was in Europe from August 16, 2005, and could not have signed the articles of organization on August 16, 2005.

99.    In addition, Defendant Duncan admits adding the date with his own handwriting since he claims that Plaintiff Juergens neglected to place the date she signed the document in the space for the date.

---

[4]    <u>See</u> articles of organization of the "1230 23rd Street, LLC" that is attached to this 3rd amended complaint as Exhibit 4.

100.    Defendant Duncan (via a $100.00 check written on "The Beacon Group" dated August 18, 2005) paid the "1230 23rd Street, LLC" initial organization fee.

101.    Defendant First Mount Vernon ILA paid the 2006 annual registration fee of $50.00 on August 31, 2006 and the 2007 annual registration fee on February 28, 2008 by paying the annual fee plus a late charge that totaled $175.00.

102.    Even though the Defendant First Mount Vernon ILA claims that the "1230 23rd Street, LLC" was established to lease real property located in Washington, DC, it never filed any request with the District of Columbia Department of Consumer and Regulatory Affairs for authorization to conduct business as a foreign Limited Liability Company or register the property as a rental property with the District of Columbia Department of Consumer and Regulatory Affairs or obtain a business license.

103.    Defendant Duncan received $850.00 on behalf of Plaintiff Juergens for "preparation of LLC documents."

### Plaintiff Juergens Trip to Europe

104.    From August 5 to August 30, 2005, neither Defendant Bennett nor Defendant Duncan had any contact with Plaintiff Juergens since she was in Europe.

### Plaintiff Juergens' Contract with Defendant First Mount Vernon ILA

105.    Plaintiff Juergens entered into a contract with Defendant First Mount Vernon ILA in which Defendant First Mount Vernon ILA, in exchange for a customary and reasonable fee, would agree to extend a personal consumer residential loan to Plaintiff Juergens in the amount of $250,000.00 under customary and reasonable contractual terms and conditions that comply with all applicable laws and statutes and at a customary and reasonable interest rate, payoff the George Owen loan with a balance of $61,195.11 and provide Plaintiff Juergens with the

remaining proceeds as cash after the payment of customary and reasonable settlement charges.

106.    Plaintiff Juergens contends that this contract was for a personal consumer residential mortgage refinancing loan between herself, in her individual capacity, and Defendant First Mount Vernon ILA.

107.    Defendant First Mount Vernon ILA claims that this contract was with the "1230 23rd Street, LLC" and involved a commercial loan of $250,000.00 with interest at the rate of 18%, an interest rate of 24% "should the loan ever be in default," a 2.5% "administrative/reinstatement fee" on the "principal balance and all outstanding interest and penalties" charged "in the event of default," a 4% "loan origination fee," mandatory prepaid interest reserve paid to Defendant First Mount Vernon ILA in the amount of $67,526.31, monthly interest only payments of $3,750.00 to be paid from October 1, 2005 to September 1, 2007, the entire balance of principal and interest due and payable on September 1, 2007, a "3% prepayment penalty during the first year of the loan" and "an exit fee equal to one percent of the loan amount when this loan is paid in full and released."

108.    In addition, Defendant Bennett claims that Plaintiff Juergens is personally liable for the repayment of this loan in the event the "1230 23rd Street, LLC" does not make the required payments on the loan."

## Defendant Bennett's Claim that the "Commercial" Loan would Allow Plaintiff Juergens to Obtain a Favorable Residential Consumer Loan in the Future

109.    When asked if Plaintiff Juergens could not pay off the George Owen loan with a balance of approximately $61,195.11 and an interest rate of 10% how he expected Plaintiff Juergens to pay off the $250,000.00 loan from First Mount Vernon ILA with a rate of 18%, Defendant Bennett responded

First of all, she was not expected to, quote -- she was going to pay -- she would pay off our loan by refinancing to a better rate." How could she refinance to a better rate? "Well, several ways. First of all, you have to go back to what was available in the market at that time. Had she had a -- any -- a decent mortgage history -- in other words, just paid her mortgage, forget the fact she never paid any other bills. Had she just paid her mortgage on time, at that period of time, it was fairly simple to get anyone with a credit score over 500 a 60 to 75 percent loan. If you didn't pay your mortgage on time, that became extremely difficult.

110.    Defendant Bennett further stated

Well, we had hoped that she would wait six months and come back to us. We would have referred her to First Mount Vernon Mortgage, who, at that point, would have been able to do something for -- or might well have been able to do something for her. Had they not been able to, there were a number of other places she could have gone to."

111.    When asked why he would have referred her to First Mount Vernon Mortgage, L.L.C.,

Defendant Bennett stated "Obviously, there would be a fee to be earned from whoever did the

loan. We would prefer to see it come to one of our companies as opposed to someone else's."

112.    Moreover, Defendant Bennett acknowledged that the "derogatory entries" on Plaintiff

Juergens' credit report did not influence him in agreeing to extend a loan to Plaintiff Juergens

since "We expected it. We expected derogatories. We charge a higher rate. If someone can get

a lower rate, that's obviously where they're going to go."

113.    Despite having approximately $430,000.00 in equity in her condominium unit, no

prudent lender would reasonably have extended a loan to Plaintiff Juergens in the amount of

$250,000.00 due to her low credit scores since the lender had no reasonable expectation that

Plaintiff Juergens would be able to repay this loan pursuant to D.C. Code § 26-1114 (a), which

states

No mortgage lender or mortgage broker required to be licensed under this chapter, or person required to be licensed under this chapter, shall . . . (6) Make, directly or indirectly, any mortgage loan with the intent to foreclose on the borrower's property. For purposes of this paragraph, any of the following factors may be

considered in determining whether a mortgage loan was made with the intent to foreclose on the borrower's property: (A) lack of the probability of full repayment of the loan by the borrower; and (B) a significant proportion of similarly foreclosed loans by the lender.

114.    Defendant Bennett's admissions clearly show that he and Defendant First Mount Vernon ILA always envisioned Plaintiff Juergens' loan to be a consumer loan and not the commercial loan they now claim it is.

### Defendant Bennett's Preparation of the "Uniform Residential Mortgage Application"

115.    On August 30, 2005, Defendant Bennett claims that he conducted a formal interview of Plaintiff Juergens in order to complete a "Uniform Residential Mortgage Application."[5]

116.    Defendant Bennett admits that he "checked" the box marked "refinance" on the "Uniform Residential Mortgage Application" since "there was existing financing and this is additional or replacement financing to that."

117.    Defendant Bennett claims that Plaintiff Juergens provided a home address in Falls Church, Virginia but admits that he did not verify that she actually lived there or try to obtain any documents in an effort to verify that she actually lived there.

118.    Defendant Bennett further claims that Plaintiff Juergens stated that she was "self-employed" and earned "$7,500.00" per month "from her writing operations" earned "$1,250.00" from "investments" and "$1,650.00" from "*anticipated* [emphasis added] rent from her condominium" but did not verify these statements or obtain documents proving such statements.

119.    As of August 30, 2005, Defendant Bennett knew that Plaintiff Juergens did not have any actual income from the rental of her condominium unit.

---

[5]    See Uniform Residential Mortgage Application that is attached to this 3rd amended complaint as Exhibit 5.

120.    Defendant Bennett claims that Plaintiff Juergens signed this "Uniform Residential Mortgage Application" while Plaintiff Juergens claims that she did not sign any document that referenced "1230 23rd Street, LLC."

**Closing on Defendant First Mount Vernon ILA's Loan**

121.    Plaintiff Juergens entered into a contract with Defendant Duncan and Defendant Brickshire Settlements, LLC in which Defendant Duncan and Defendant Brickshire Settlements, LLC, in exchange for a customary and reasonable fee, would perform the closing on the loan from Defendant First Mount Vernon ILA, including using a proper and accurate accounting statement, ensuring the all loan documents comply with all relevant laws and statutes, notarizing and authenticating loan documents by a licensed notary, promptly disbursing funds associated with this loan, promptly filing loan documents and loan releases with the District of Columbia Recorder of Deeds and conducting the settlement in a manner in accordance with all relevant laws and statutes.

122.    The HUD-1 related to the loan from Defendant First Mount Vernon ILA to Plaintiff Juergens reflects that Defendant Brickshire Settlements, LLC was the "settlement agent," but Defendant Brickshire Settlements, LLC admits that "there was not an actual representative of Brickshire there [at the closing]."

123.    Defendant Brickshire Settlements, LLC claims that "Mr. Duncan performed the closing."

124.    Defendant Duncan claims that he "witnessed the settlement" with regard to the closing of Defendant First Mount Vernon ILA's loan to Plaintiff Juergens in order to "accommodat[e] both First Mount Vernon's client [Plaintiff Juergens] and accommodating Brickshire [Defendant Brickshire Settlements, LLC].

125.    Defendant Brickshire Settlements, LLC claims that the term "perform the closing" means

[Defendant Duncan] would present the documentation, obtain the signatures.  He would then take the closing documents and deliver them to us at our office at 7700  Little River Turnpike so that we could continue to process the paperwork and complete the processing."

126.    Defendant Brickshire Settlements, LLC explained that Defendant Duncan's role with regard to Defendant Brickshire Settlements, LLC "at that point, was to have the documents that were prepared executed."

### Documents Allegedly Signed by Plaintiff Juergens at the Closing on the Loan from Defendant First Mount Vernon ILA

127.    At the closing of the loan from Defendant First Mount Vernon ILA to Plaintiff Juergens on August 31, 2005, Defendant Duncan claims that Plaintiff Juergens signed documents related to the "1230 23rd Street, LLC," the transfer of title to Plaintiff Juergens' condominium unit from Plaintiff Juergens to the "1230 23rd Street, LLC," and the loan from Defendant First Mount Vernon ILA to Plaintiff Juergens and/or the "1230 23rd Street, LLC."

128.    These documents are:

      a.    operating agreement for the "1230 23rd Street, LLC";[6]

      b.    HUD-1 settlement statement dated August 31, 2005;[7]

      c.    deed transferring title to Plaintiff Juergens' condominium unit from Plaintiff Juergens to the "1230 23rd Street, LLC";[8]

      d.    balloon deed of trust note;[9]

---

[6]    A copy of the alleged operating agreement for the "1230 23rd Street, LLC" is attached to this 3rd amended complaint as Exhibit 6.

[7]    A copy of the HUD-1 settlement statement dated August 31, 2005 is attached to this 3rd amended complaint as Exhibit 7.

[8]    A copy of the alleged deed transferring title to Plaintiff Juergens' condominium unit from Plaintiff Juergens to the "1230 23rd Street, LLC" is attached to this 3rd amended complaint as Exhibit 8.

e.      commercial loan balloon deed of trust;[10]

f.      notice to applicant for a mortgage loan – commercial loan disclosure;[11]

g.      mortgage reverification agreement;[12]

h.      document correction certification;[13]

i.      resolution to borrow from a designated bank;[14]

j.      financing agreement;[15]

k.      borrower affidavit;[16]

l.      District of Columbia Office of Tax and Revenue security affidavit;[17]

m.      assignment of contracts, income, rents and profits;[18] and

---

[9]      A copy of the alleged balloon deed of trust note is attached to this 3rd amended complaint as Exhibit 9.

[10]      A copy of the alleged commercial loan balloon deed of trust is attached to this 3rd amended complaint as Exhibit 10.

[11]      A copy of the alleged notice to applicant for a mortgage loan – commercial loan disclosure is attached to this 3rd amended complaint as Exhibit 11.

[12]      A copy of the alleged mortgage reverification agreement is attached to this 3rd amended complaint as Exhibit 12.

[13]      A copy of the alleged document correction certification is attached to this 3rd amended complaint as Exhibit 13.

[14]      A copy of the alleged resolution to borrow from a designated bank is attached to this 3rd amended complaint as Exhibit 14.

[15]      A copy of the alleged financing agreement is attached to this 3rd amended complaint as Exhibit 15.

[16]      A copy of the alleged borrower affidavit is attached to this 3rd amended complaint as Exhibit 16.

[17]      A copy of the alleged District of Columbia Office of Tax and Revenue security affidavit is attached to this 3rd amended complaint as Exhibit 17.

n.      deed in lieu of foreclosure.[19]

129.    Plaintiff Juergens claims that she never knowingly signed any document that references

"1230 23rd Street, LLC" or the transfer of legal title to her condominium unit.

### Defendant Duncan Impersonated a Notary with Regard to the Documents Associated with the First Mount Vernon ILA Loan

130.    Defendant Duncan admits that he signed the documents associated with the First Mount

Vernon ILA loan as a notary, but that he did so without a notary license.

131.    Virginia Code § 47.1-29 states

**Impersonation of notary a felony**.  -  Any person who shall willfully act as, or otherwise impersonate, a notary public while not lawfully commissioned as a notary public or other official authorized to perform notarial acts, shall be guilty of a Class 6 felony.

132.    Thus, Defendant Duncan violated Virginia Code § 47.1-29 by "willfully acting" as a

notary public or "otherwise impersonating" a notary public "while not lawfully commissioned as

a notary public" by notarizing the above-referenced documents in connection with the loan from

Defendant First Mount Vernon ILA.

133.    Moreover, Defendant Brickshire Settlements, LLC and Defendant First Mount Vernon

ILA knew or should have known that Defendant Duncan did not hold a valid notarization license

since the documents that he purportedly notarized lacked a notary stamp or seal.

134.    Defendant Brickshire Settlements, LLC admits that it received $36.00 for "notary fees"

associated with the loan from Defendant First Mount Vernon ILA with regard to the

notarizations performed by Defendant Duncan with regard to Plaintiff Juergens' signatures.

---

[18]      A copy of the alleged assignment of contracts, income, rents and profits is attached to this 3rd amended complaint as Exhibit 18.

[19]      A copy of the alleged deed in lieu of foreclosure is attached to this 3rd amended complaint as Exhibit 19.

135.    Therefore, despite what appears to be the signature of a Notary Public the above-referenced documents, no one "authorized to perform a notarial act" pursuant to D.C. Code § 42-141 (5) was present when Plaintiff Juergens allegedly signed these documents.

136.    As the "Settlement Agent" listed on the HUD-1 for Defendant First Mount Vernon ILA's loan, Defendant Brickshire Settlements, LLC knew or should have known that Defendant Duncan was not a licensed notary in the Commonwealth of Virginia, yet still allowed the settlement on the loan to proceed.

137.    Therefore, the above-referenced documents notarized by Defendant Duncan are of no legal effect since these documents require a valid notarization and acknowledgement in order to be valid pursuant to D.C. Code §§ 42-141, 42-142, 42-143, 42-306, and 42-401.

### The Alleged Transfer of Title to the Condominium Unit between Plaintiff Juergens and the "1230 23rd Street, LLC"

138.    Defendant First Mount Vernon ILA claims that Plaintiff Juergens transferred title to her condominium unit to the "1230 23rd Street, LLC" via a deed dated August 31, 2005 that Defendant Duncan asked another attorney to prepare.

139.    This deed provides that in exchange for "$200,000, to her paid by Grantee [the "1230 23rd Street, LLC"], the receipt and sufficiency of which is hereby acknowledged," Plaintiff Juergens transfers title to her condominium unit to the "1230 23rd Street, LLC."

140.    Defendant Brickshire Settlements, LLC claims, however, that the HUD-1 referencing the loan from Defendant First Mount Vernon ILA is a "refinance" HUD-1 with "no seller."

141.    Defendant Brickshire Settlements, LLC claim that the HUD-1 is a "refinance" HUD-1 with "no seller" is based on the premise that Plaintiff Juergens transferred title to her condominium unit to the "1230 23rd Street, LLC" "prior to the closing" on the "refinance" loan.

142.    Defendant Brickshire Settlements, LLC claims that it has no knowledge of when the transfer of title actually took place.

143.    Similarly, Defendant Duncan has no knowledge of Plaintiff Juergens receiving the $200,000 referenced in the deed, although he acknowledges that Plaintiff Juergens executed the deed in front of him.

144.    In actuality, the HUD-1 related to the loan from Defendant First Mount Vernon ILA to Plaintiff Juergens does, apparently, relate to the transfer of title to the condominium unit from Plaintiff Juergens to the "1230 23rd Street, LLC" since Lines 1202 and 1203 of the HUD-1 reflect "transfer tax" in the amount of $2,750.00 and "recordation tax" in the amount of $2,750.00.

145.    If the HUD-1 were, indeed, a "refinance" HUD-1 as Defendant Brickshire Settlements, LLC claims, and not a "sale" HUD-1, there would be no need to pay a $2,750.00 "transfer tax" or a $2,750.00 "recordation tax."

146.    Moreover, Defendant Bennett admitted that the only asset owned by the "1230 23rd Street, LLC" was "the condominium," and thus, the "1230 23rd Street, LLC" did not have $200,000.00 in which to "purchase" the condominium from Plaintiff Juergens prior to the closing on the loan from Defendant First Mount Vernon ILA.

147.    Thus, if the transfer of title took place before the closing of the loan from Defendant First Mount Vernon ILA, there is no way for the $200,000.00 "purchase price" to have passed from the "1230 23rd Street, LLC" to Plaintiff Juergens as the "1230 23rd Street, LLC" had not yet received any funds from Defendant First Mount Vernon ILA.

148.    Thus, no consideration passed with regard to the "sale" of Plaintiff Juergens' condominium unit from the "1230 23rd Street, LLC" to Plaintiff Juergens, and therefore, the sale is void for lack of consideration.

149.    Because, by its own admission, the alleged transfer of title to the condominium unit occurred outside of the closing on the loan from Defendant First Mount Vernon ILA, and thus, Brickshire should not have disbursed "transfer" or "recordation" charges to District of Columbia Recorder of Deeds.

### The HUD-1 Used with Regard to the Loan from First Mount Vernon ILA

150.    With regard to the closing of the loan, Defendant Duncan claimed that

> "I explained all the documents to Ms. Juergens. I explained to her where her money was going from the proceeds of her loan. The HUD-1 is used to make that a simple process. In many commercial transactions, a HUD-1 is not used. You can use any form of settlement statement or none at all. This is simply to make sure that there's some way of relating to the borrower where their money is going and how it's being accounted for. It could have been typed on a plain sheet of paper."

151.    Defendant Duncan claimed that even though he signed the HUD-1 under the statement "To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction" and above the statement "WARNING: It is a crime to knowingly make false statements to the United States on this or any similar form. Penalties upon conviction can include a fine and imprisonment," that it was not his responsibility to ensure that the statements contained on the HUD-1 are true.

152.    The HUD-1 incorrectly listed the place of settlement as Defendant Brickshire Settlements, LLC's office rather than Defendant First Mount Vernon ILA's office where the settlement actually took place.

153.    Moreover, if the HUD-1 was "refinance" HUD-1 as Defendant Brickshire Settlements, LLC claims, there was no reason for Plaintiff Juergens' name to be in Box E - "name and address of *seller*."

154.    Additionally, the inclusion of Plaintiff Juergens' address as "1230 23rd Street, N.W., Washington, DC  20037" in Box E - "name and address of seller" supports Plaintiff Juergens' claim that this was an individual residential loan and not the commercial loan alleged by Defendant First Mount Vernon ILA and also provides further support for Plaintiff Juergens' claim that she was living in this condominium unit at the time of the closing on this loan, and thus, this was a residential loan.

155.    Adding to the confusing nature of the HUD-1, is the fact that the columns do not "add up" since there is a listing for "escrow" in the amount of $60,996.04 in Line 1104 and another listing for "escrow for interest reserve" in the amount of $67,526.31 in Line 1303.

156.    In fact, neither Defendant Bennett nor Defendant Duncan can explain this double charge for "escrow."

157.    Defendant Duncan admitted that "This settlement sheet, any number you pick off this, off this page, is inaccurate.  Any line you ask a question about is inappropriate.  It's just - this is not a right number.  I've stated very clearly, I don't have a clue where $60,996.04 came from.  Just don't know" and that the numbers "do[] not balance, never did balance, and I don't believe have ever been part of the final settlement" and that he signed a statement attesting to the truth and accuracy of the "account of the funds which were received and have been or will be distributed" even though this statement was false since he believed that the HUD-1 is "of little or no consequence."

158.    Defendant Brickshire Settlements, LLC claims that there were actually two HUD-1s prepared for the loan from Defendant First Mount Vernon ILA due to this "escrow imbalance."

159.    Even though he alleges that Plaintiff Juergens signed a HUD-1 at the settlement on the loan from Defendant First Mount Vernon ILA, Defendant Duncan does not know which HUD-1

33

her acknowledgement of receipt relates, claiming "I have no idea" and "It might have been one we don't have" and that "in the process of a year or two, the files got culled, someone saw a draft, threw out the original, I don't know."

### Alleged Purpose for "Escrow for Interest Reserve"

160.    Defendant Duncan claimed that Defendant First Mount Vernon ILA charged Plaintiff Juergens $67,526.31 via an "escrow for interest reserve" in order to "make payments on the loan until the escrow was exhausted."

161.    Defendant Bennett claims that the "escrow for interest reserve" "guaranteed that Ms. Juergens would have a good mortgage history and, had she pursued it, been able to refinance at a more favorable rate."

162.    Both Defendant Duncan and Defendant Bennett acknowledges that there is no written documentation to support any such escrow arrangement between Defendant First Mount Vernon ILA and Plaintiff Juergens.

163.    The lack of a formal written escrow arrangement or agreement between Plaintiff Juergens and Defendant First Mount Vernon ILA led to Defendant First Mount Vernon ILA rejecting Plaintiff Juergens' payment in the amount of $3,775.00 on September 1, 2006 since the "monthly payments are deducted from [Plaintiff Juergens'] escrow account.  The current remaining balance in the account is $22,526.31.  All payments will be deducted from this account until the funds have been depleted."

### The Loss of Plaintiff Juergens' Loan File by Defendant Brickshire Settlements, LLC

164.    Defendant Brickshire Settlements, LLC "misfiled" documents associated with the loan between Defendant First Mount Vernon ILA and Plaintiff Juergens, including the alleged deed

between Plaintiff Juergens and the "1230 23rd Street, LLC" and only "found" these documents after Plaintiff Juergens filed her complaint in this case.

165.    Because of this "misfiling," Defendant Brickshire Settlements, LLC did not file the alleged deed between Plaintiff Juergens and the "1230 23rd Street, LLC" with the District of Columbia Recorder of Deeds until over a year after this alleged deed was signed.

166.    Moreover, Defendant Brickshire Settlements, did not record the release of the George Owen loan until April 2008 - more than 3 ½ years after that loan was paid off in full.

## Plaintiff Juergens' Attempt to Rescind Loan

167.    Several hours after Plaintiff Juergens left the offices of Defendant First Mount Vernon ILA on August 31, 2005, she called Defendant Bennett and informed him that she did not want to proceed with this loan, even though she had not received any required disclosures or rescission forms, but he refused to stop the loan process.

## Defendant Brickshire Settlements, LLC's Excess Title Coverage

168.    The title policy procured by Defendant Brickshire Settlements, LLC during the closing of the loan from Defendant First Mount Vernon ILA provided title insurance in the amount of $317,000.00 rather than the $250,000.00, which shows a lack of care for Plaintiff Juergens' funds since the lender can only receive an insurance payout of the value of the loan, in this case, $250,000.00; thus, the title company received an additional premium of approximately $200.00.

## The True Nature of the First Mount Vernon ILA Loan

169.    With specificity, and based upon the foregoing facts, Plaintiff Juergens contends that Defendant First Mount Vernon ILA, Defendant Duncan, Defendant Bennett and Defendant Brickshire Settlements, LLC conspired to fraudulently disguise the true nature of Defendant First Mount Vernon ILA's loan to Plaintiff Juergens from a simple residential refinance loan to a

35

commercial loan in order to qualify Plaintiff Juergens for a loan since she might not qualify for a residential refinance loan in her personal capacity, charge her a higher rate of interest, and also to circumvent District of Columbia mortgage and fair lending laws related to residential loans.

**First Mount Vernon ILA's Violations of D.C. Mortgage Disclosure Laws**

170.    Neither Defendant First Mount Vernon ILA, Defendant Bennett, Defendant Duncan not Defendant Brickshire Settlements, LLC provided Plaintiff Juergens with any of the following required disclosures with regard to the loan from Defendant First Mount Vernon ILA:

    a.    a copy of the HUD-1 in advance of the closing;

    b.    "Red Flag Warning" disclosure notice in violation of D.C. Code §26-1152.11;"

    c.    notice of right to obtain credit counseling in connection with the loan, pursuant to D.C. Code §26-1152.19;

    d.    statement in conformity with D.C. Code §26-905 that showed "in clear and distinct terms, the amount of the loan, the date when loaned and when due, the person to whom the loan is made, the name of the lender, [or] the amount of interest charged;"

    e.    a "plain and complete receipt" in conformity with D.C. Code §26-905 "for all payments made on account of the loan at the time such payments are made;"

    f.    disclosures pursuant to D.C. Code §28-4605;

    g.    good faith estimate of loan charges and settlement costs; or

    h.    other disclosures related to Truth-in-Lending statutes.

**Other LLCs Established by Defendant First Mount Vernon ILA and Defendant Duncan that are Secured by Residential Properties**

171.    Upon information and belief, Defendant First Mount Vernon ILA and Defendant Duncan established other Limited Liability Companies in the Commonwealth of Virginia regarding loans from Defendant First Mount Vernon ILA secured by residential properties.

**Law in the Commonwealth of Virginia Related to Industrial Loan Associations**

172.    Virginia Code § 6.1-237.6 states

No industrial loan association shall:

. . .

2.    Take an interest in collateral other than the real estate or residential property, including fixtures and appliances thereon, securing a "mortgage loan," as that term is defined in § 6.1-409; however, an interest in collateral other than real estate may be taken if the real estate taken as collateral does not have sufficient equity to secure the mortgage loan;

173.    Virginia Code § 6.1-409 states:

'Mortgage loan' means a loan made to an individual, the proceeds of which are to be used primarily for personal, family or household purposes, which loan is secured by a mortgage or deed of trust upon any interest in one- to four-family residential property located in the Commonwealth, regardless of where made, including the renewal or refinancing of any such loan, but excluding (i) loans or extensions of credit to buyers of real property for any part of the purchase price of such property by persons selling such property owned by them, (ii) loans to persons related to the lender by blood or marriage, and (iii) loans to persons who are bona fide employees of the lender. 'Mortgage loan' shall not include any loan secured by a mortgage or deed of trust upon any interest in a more than four-family residential property or property used for a commercial or agricultural purpose.

174.    Therefore, Defendant First Mount Vernon ILA did not have the authority to lend money to the "1230 23rd Street, LLC" since such a loan violated Virginia Code § 6.1-237.6 by taking an interest in collateral other than the real estate or residential property, including fixtures and appliances thereon, securing a "mortgage loan," as that term is defined in § 6.1-409 (a "loan made to an individual, the proceeds of which are to be used primarily for personal, family or household purposes, which loan is secured by a mortgage or deed of trust upon any interest in one- to four-family residential property located in the Commonwealth").

175.    Thus, the loan from Defendant First Mount Vernon ILA to the "1230 23rd Street, LLC" is *ultra vires* and void.

### Lack of Disclosures Related to Defendant First Mount Vernon ILA's Loan

176.    Neither Defendant First Mount Vernon ILA, Defendant Bennett, Defendant Duncan nor Defendant Brickshire Settlements, LLC ever provide Plaintiff Juergens with any of the following required disclosures with regard to its loan:

      a.    a copy of the HUD-1 in advance of the closing;

      b.    "Red Flag Warning" disclosure notice in violation of D.C. Code §26-1152.11;"

      c.    notice of right to obtain credit counseling in connection with the loan, pursuant to D.C. Code §26-1152.19.

      d.    statement in conformity with D.C. Code §26-905 that showed "in clear and distinct terms, the amount of the loan, the date when loaned and when due, the person to whom the loan is made, the name of the lender, [or] the amount of interest charged;"

      e.    a "plain and complete receipt" in conformity with D.C. Code §26-905 "for all payments made on account of the loan at the time such payments are made;"

      f.    disclosures pursuant to D.C. Code §28-4605;

      g.    good faith estimate of loan charges and settlement costs; and

      h.    other disclosures related to Truth-in-Lending statutes.

### Compensatory Damage Claim

177.    As a direct and proximate result of Defendant First Mount Vernon ILA, Defendant Bennett, Defendant Duncan and Defendant Brickshire Settlements, LLC's actions with regard to loan at issue, Plaintiff Juergens suffered damages, including, but not limited to:

      a.    value of the $250,000.00 loan;

      b.    4% of the $250,000.00 loan value ($10,000.00) which represents the "loan origination fee;"

      c.    the loss of use of the funds used to pay interest, fees and expenses associated with the loan at issue; including:

            1.    interest on the $250,000.00 loan at the rate of 18% (the interest rate on the loan from Defendant First Mount Vernon ILA) beginning on

August 31, 2005 and continuing into the future until paid off (which, as of August 1, 2008 equals $131,375.00);

2.    $2,750.00, which represents the unnecessary "transfer tax;"

      i.    interest on the $2,750.00 unnecessary "transfer tax" at the rate of 18% beginning on August 31, 2005 and continuing into the future until paid off (which, as of August 1, 2008 = $1,445.13);

3.    $2,750.00, which represents the unnecessary "recordation tax;"

      i.    interest on the $2,750.00 unnecessary "recordation tax" at the rate of 18% beginning on August 31, 2005 and continuing into the future until paid off (which, as of August 1, 2008 = $1,445.13);

4.    $850.00, which represents the unnecessary "preparation of LLC document fee" charged by Defendant Duncan to establish the "1230 23rd Street, LLC;"

      i.    interest on the $850.00 unnecessary "preparation of LLC document fee" at the rate of 18% beginning on August 31, 2005 and continuing into the future until paid off (which, as of August 1, 2008 = $446.68);

5.    $795.00, which represents the unnecessary "document preparation fee" charged by Defendant Duncan;"

      i.    interest on the $795.00 unnecessary "document preparation fee" at the rate of 18% beginning on August 31, 2005 and continuing into the future until paid off (which, as of August 1, 2008 = $417.77);

6.    $450.00, which represents the unnecessary "settlement coordination fee" charged by Defendant Duncan;"

      i.    interest on the $450.00 unnecessary "settlement coordination fee" at the rate of 18% beginning on August 31, 2005 and continuing into the future until paid off (which, as of August 1, 2008 = $236.48);

7.    $200.00, which represents the excess "title insurance" premium charged by Defendant Brickshire Settlements, LLC;"

      i.    interest on the $200.00 unnecessary "settlement coordination fee" at the rate of 18% beginning on August 31, 2005

and continuing into the future until paid off (which, as of August 1, 2008 = $105.10);

d.    Plaintiff Juergens' loss of a homestead deduction from August 31, 2005 until District of Columbia Recorder of Deeds and Office of Tax and Revenue records are updated (which, is valued from August 31, 2005 to August 30,2006 at $576.00; is valued from August 31, 2006 to August 30, 2007 at $552.00 and is valued from August 31, 2007 to August 31, 2008 at $528.00.

e.    Damages suffered by Plaintiff Juergens in an amount to be proven at trial resulting from Defendant First Mount Vernon ILA, Defendant Bennett, Defendant Duncan and Defendant Brickshire Settlements, LLC's violations of statutes, including Fair Lending and Consumer Protection statutes;

f.    Mental anguish, physical injuries and emotional damages, including, but not limited to, sleeplessness, anxiety, restlessness, circulatory problems, headaches and other physical ailments suffered by Plaintiff Juergens resulting from Defendant First Mount Vernon ILA, Defendant Bennett, Defendant Duncan and Defendant Brickshire Settlements, LLC's actions in an amount to be proven at trial;

g.    Title searches paid by Plaintiff Juergens with reference to loan from Defendant First Mount Vernon ILA that totaled $550.00;

h.    Costs incurred to reclaim jewelry worth approximately $125,000.00 pawned by Plaintiff Juergens that is estimated at $25,000.00;

i.    Compensatory damages to be proven at trial, but which are expected to be in excess of $5,000,000.00;

j.    treble and punitive damages as provided for by statute to be proven at trial, but which are expected to be in excess of $5,000,000.00; and

k.    Attorney's fees, legal expenses and court costs in an amount to be proven at trial.

## **Punitive Damage Claim**

178.   The previously-described actions of Defendant First Mount Vernon ILA, Defendant Duncan, Defendant Bennett and Defendant Brickshire Settlements, LLC with regard to Defendant First Mount Vernon ILA's loan to Plaintiff Juergens and the settlement on that loan were taken with actual malice in the sense of conscious and deliberate wrongdoing, evil or

wrongful motive, intent to injure, ill will or fraud, thus supporting Plaintiff Juergens' claim for punitive damages.

**Count I – Breach of Contract**
**(Defendant Urban Title Services, Inc.)**

179.    The allegations contained in paragraphs 1-69 of this 3rd amended complaint are incorporated herein as if fully stated.

180.    Plaintiff Juergens entered into a contract with Defendant Urban Title Services, Inc. in which Defendant Urban Title Services, Inc., in exchange for a customary and reasonable fee, would solicit a mortgage loan on behalf of Plaintiff Juergens and perform the closing on that loan, including the prompt disbursal of funds associated with this loan and "clean up" her credit by "paying off the things that we had collected for or were getting things released from her credit report that we had collected for" in order "to allow her to obtain a traditional loan."

181.    Defendant Urban Title Services, Inc. breached this contract by failing to promptly disburse the remaining proceeds of the $60,000.00 loan from George Owen (after the subtraction of customary and reasonable charges and fees and funds to pay off legitimate liens and overdue credit accounts).

182.    In addition, Defendant Urban Title Services, Inc. breached this contract by charging Plaintiff Juergens unreasonable and non-customary fees associated with the closing on the $60,000.00 loan from George Owen.

183.    As a direct and proximate result of Defendant Urban Title Services, Inc.'s breach of its contract, Plaintiff Juergens suffered damages that are fully stated in paragraphs 68-69 of this 3rd amended complaint.

184.    Defendant Urban Title Services, Inc.'s breach of its contract with Plaintiff Juergens was intentional, willful and wanton, and justifies the imposition of punitive damages.

41

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Defendant Urban Title Services, Inc. as well as any other relief required in the interest of justice.

**Count II – Conversion**
**(Defendant Kenney and Defendant Erb)**

185.    The allegations contained in paragraphs 1-69 of this 3rd amended complaint are incorporated herein as if fully stated.

186.    Defendant Kenney and Defendant Erb each had duties as settlement officers of Defendant Urban Title Services, Inc. to promptly disburse the remaining proceeds of the $60,000.00 loan from George Owen (after the subtraction of customary and reasonable charges and fees and funds to pay off legitimate liens and overdue credit accounts).

187.    Defendant Kenney and Defendant Erb's refusal to promptly disburse the remaining proceeds of the $60,000.00 loan from George Owen (after the subtraction of customary and reasonable charges and fees and funds to pay off legitimate liens and overdue credit accounts) was an unlawful exercise of ownership, dominion and control over Plaintiff Juergens' property in denial or repudiation of Plaintiff Juergens' right to such property.

188.    As a direct and proximate result of Defendant Kenney and Defendant Erb's conversion, Plaintiff Juergens suffered damages that are fully stated in paragraphs 68-69 of this 3rd amended complaint.

189.    Defendant Kenney and Defendant Erb's conversion was intentional, willful and wanton, and justifies the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive

damages, attorneys' fees, interest and court costs against Defendant William D. Kenney, Jr. and Defendant Paul Erb, jointly and severally, as well as any other relief required in the interest of justice.

## Count III – Fraud
## (Defendant Kenney)

190.    The allegations contained in paragraphs 1-69 of this 3rd amended complaint are incorporated herein as if fully stated.

191.    In his dealings with Plaintiff Juergens, Defendant Kenney made numerous false representations to Plaintiff Juergens, included, but not limited to statements that he would either pay off Plaintiff Juergens' alleged tax liens and overdue credit accounts or negotiate a settlement of these liens and accounts and then return any funds escrowed to pay off these alleged liens and accounts to Plaintiff Juergens.

192.    These false representations concerned a material fact, specifically, the amount of funds that Plaintiff Juergens would receive as proceeds from the $60,000.00 loan from George Owen.

193.    Defendant Kenney made these false representations with knowledge that they were false.

194.    Defendant Kenney made these false representations with the intent to deceive Plaintiff Juergens into entering into the $60,000.00 loan from George Owen and contracting with Defendant Urban Title Services, Inc. to perform the closing on this loan.

195.    Plaintiff Juergens relied on Defendant Kenney's false representations when she entered into the $60,000.00 loan from George Owen and contracted with Defendant Urban Title Services, Inc. to perform the closing on this loan.

196.    As a direct and proximate result of Defendant Kenney's fraud, Plaintiff Juergens suffered damages that are fully stated in paragraphs 68-69 of this 3rd amended complaint.

197.    Defendant Kenney's fraud was intentional, willful and wanton, and justifies the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Defendant William D. Kenney, Jr., as well as any other relief required in the interest of justice.

### Count IV – Fraud
### (Defendant Erb)

198.    The allegations contained in paragraphs 1-69 of this 3rd amended complaint are incorporated herein as if fully stated.

199.    In his dealings with Plaintiff Juergens, Defendant Erb made false representations to Plaintiff Juergens, included, but not limited to statements that "the balance of funds [escrowed to pay alleged tax liens and overdue credit accounts] is being returned to you."

200.    These false representations concerned a material fact, specifically, the amount of funds that Plaintiff Juergens would receive as proceeds from the $60,000.00 loan from George Owen.

201.    Defendant Erb made these false representations with knowledge that they were false.

202.    Defendant Erb made these false representations with the intent to deceive Plaintiff Juergens into refraining from taking legal action to seek the return of these escrowed funds.

203.    Plaintiff Juergens relied on Defendant Kenney's false representations when she refrained from taking legal action to seek the return of these escrowed funds for over two years, which caused her to have the inability to pay down the outstanding balance on the $60,000.00 loan from George Owen and, thus, continue to pay interest on the portion of this loan that she expected to pay down after the escrowed funds were returned.

204.    As a direct and proximate result of Defendant Erb's fraud, Plaintiff Juergens suffered damages that are fully stated in paragraphs 68-69 of this 3rd amended complaint.

205.    Defendant Erb's fraud was intentional, willful and wanton, and justifies the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Defendant Paul Erb, as well as any other relief required in the interest of justice.

### Count V – Breach of Fiduciary Duty
### (Defendant Erb)

206.    The allegations contained in paragraphs 1-69 of this 3rd amended complaint are incorporated herein as if fully stated.

207.    Defendant Erb, as the notary public on Plaintiff Juergens' loan from George Owen, owed a fiduciary duty to Plaintiff Juergens to ensure that the loan documents complied with all legal formalities regarding the notarization of documents.

208.    In addition, Defendant Erb, as a settlement officer of Defendant Urban Title Services, Inc., had the fiduciary duty to promptly disburse the full proceeds of $60,000.00 loan from George Owen and remit the remaining proceeds of this loan to Plaintiff Juergens (after subtracting customary and reasonable charges and fees and funds to pay off legitimate liens and overdue credit accounts), but refused to do so upon numerous requests from Plaintiff Juergens or her representatives.

209.    Defendant Erb breached his fiduciary duty owed to Plaintiff Juergens by failing to ensure that the loan documents complied with all legal formalities regarding the notarization of documents.

210.    In addition, Defendant Erb, as a settlement officer of Defendant Urban Title Services, Inc., breached his fiduciary duty to failing to promptly disburse the remaining proceeds of the $60,000.00 loan from George Owen (after subtracting customary and reasonable charges and fees and funds to pay off legitimate liens and overdue credit accounts), by refusing to do so upon numerous requests from Plaintiff Juergens or her representatives.

211.    As a direct and proximate result of Defendant Erb's breaches of his fiduciary duty, Plaintiff Juergens suffered damages that are fully stated in paragraphs 68-69 of this 3rd amended complaint.

212.    Defendant Erb's breaches of his fiduciary duty were intentional, willful and wanton, and justifies the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Defendant Paul Erb, as well as any other relief required in the interest of justice.

## Count VI – Negligence
### (Defendant Erb)

213.    The allegations contained in paragraphs 1-69 of this 3rd amended complaint are incorporated herein as if fully stated.

214.    Defendant Erb, as the notary public on Plaintiff Juergens' loan from George Owen, owed a duty of care to Plaintiff Juergens to ensure that the loan documents complied with all legal formalities regarding the notarization of documents.

215.    In addition, Defendant Erb, as a settlement officer of Defendant Urban Title Services, Inc., had the duty to promptly disburse the remaining proceeds of the $60,000.00 loan from

George Owen (after subtracting customary and reasonable charges and fees and funds to pay off legitimate liens and overdue credit accounts).

216.    Defendant Erb was negligent and breached his duty of care owed to Plaintiff Juergens by failing to ensure that the loan documents complied with all legal formalities regarding the notarization of documents.

217.    In addition, Defendant Erb, as a settlement officer of Defendant Urban Title Services, Inc., was negligent and breached his duty of care by failing to promptly disburse the remaining proceeds of the $60,000.00 loan from George Owen (after subtracting customary and reasonable charges and fees and funds to pay off legitimate liens and overdue credit accounts), by refusing to do so upon numerous requests from Plaintiff Juergens or her representatives.

218.    As a direct and proximate result of Defendant Erb's negligence, Plaintiff Juergens suffered damages that are fully stated in paragraphs 68-69 of this 3rd amended complaint.

219.    Defendant Erb's negligence was intentional, willful and wanton, and justifies the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Defendant Paul Erb, as well as any other relief required in the interest of justice.

### Count VII – Breach of Fiduciary Duty
### (Defendant Kenney)

220.    The allegations contained in paragraphs 1-69 of this 3rd amended complaint are incorporated herein as if fully stated.

221.    Defendant Kenney, was employed a settlement officer by Defendant Urban Title Services, Inc.

222.    As a settlement officer, Defendant Kenney owed a fiduciary duty to Plaintiff Juergens to ensure that the loan documents associated with the George Owen loan complied with all legal formalities regarding the notarization of documents.

223.    In addition, Defendant Kenney, as a settlement officer of Defendant Urban Title Services, Inc., had the fiduciary duty to promptly disburse the full proceeds of $60,000.00 loan from George Owen and remit the remaining proceeds of this loan to Plaintiff Juergens (after subtracting customary and reasonable charges and fees and funds to pay off legitimate liens and overdue credit accounts), but refused to do so upon numerous requests from Plaintiff Juergens or her representatives.

224.    Defendant Kenney breached his fiduciary duty owed to Plaintiff Juergens by failing to ensure that the loan documents complied with all legal formalities regarding the notarization of documents.

225.    In addition, Defendant Kenney, as a settlement officer of Defendant Urban Title Services, Inc., breached his fiduciary duty to failing to promptly disburse the remaining proceeds of the $60,000.00 loan from George Owen (after subtracting customary and reasonable charges and fees and funds to pay off legitimate liens and overdue credit accounts), by refusing to do so upon numerous requests from Plaintiff Juergens or her representatives.

226.    As a direct and proximate result of Defendant Kenney's breaches of his fiduciary duty, Plaintiff Juergens suffered damages that are fully stated in paragraphs 68-69 of this 3rd amended complaint.

227.    Defendant Kenney's breaches of his fiduciary duty were intentional, willful and wanton, and justify the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Defendant William D. Kenney, Jr., as well as any other relief required in the interest of justice.

## Count VIII – Negligence
## (Defendant Erb)

228.   The allegations contained in Paragraphs 1-69 of this 3rd amended complaint are incorporated herein as if fully stated.

229.   Defendant Kenney, as a settlement officer of Defendant Urban Title Services, Inc., owed a duty of care to Plaintiff Juergens to ensure that the loan documents associated with the George Owen loan complied with all legal formalities regarding the notarization of documents.

230.   In addition, Defendant Kenney, as a settlement officer of Defendant Urban Title Services, Inc., had the duty to promptly disburse the full proceeds of $60,000.00 loan from George Owen and remit the remaining proceeds of this loan to Plaintiff Juergens (after subtracting customary and reasonable charges and fees and funds to pay off legitimate liens and overdue credit accounts), but refused to do so upon numerous requests from Plaintiff Juergens or her representatives.

231.   Defendant Kenney was negligent and breached his duty of care owed to Plaintiff Juergens by failing to ensure that the loan documents complied with all legal formalities regarding the notarization of documents.

232.   In addition, Defendant Kenney, as a settlement officer of Defendant Urban Title Services, Inc., was negligent and breached his duty to failing to promptly disburse the remaining proceeds of the $60,000.00 loan from George Owen (after subtracting customary and reasonable charges

and fees and funds to pay off legitimate liens and overdue credit accounts), by refusing to do so upon numerous requests from Plaintiff Juergens or her representatives.

233.    As a direct and proximate result of Defendant Kenney's negligence, Plaintiff Juergens suffered damages that are fully stated in paragraphs 68-69 of this 3rd amended complaint.

234.    Defendant Kenney's negligence was intentional, willful and wanton, and justifies the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Defendant William D. Kenney, Jr., as well as any other relief required in the interest of justice.

## Count IX – Civil Conspiracy
## (Defendant Kenney and Defendant Erb)

235.    The allegations contained in paragraphs 1-69 of this 3rd amended complaint are incorporated herein as if fully stated.

236.    Defendant Kenney and Defendant Erb formed a conspiracy whereby Defendant Kenney would personally entice Plaintiff Juergens into entering into a loan and entice her into entering a contract with Defendant Urban Title Services, Inc. to conduct the closing on this loan.

237.    Defendant Kenney advised Plaintiff Juergens that she would receive cash proceeds of the loan (after subtracting customary and reasonable charges and fees and funds to pay off legitimate liens and overdue credit accounts).

238.    Defendant Kenney's and Defendant Erb's roles in the conspiracy were also as settlement agents who owed a duty to Plaintiff Juergens to ensure the loan documents complied with all legal formalities regarding the notarization of documents.

239.    In addition, Defendant Kenney's and Defendant Erb's roles in the conspiracy were as settlement agents who owed a duty to Plaintiff Juergens to ensure that she would receive cash proceeds of the loan (after subtracting customary and reasonable charges and fees and funds to pay off legitimate liens and overdue credit accounts).

receive cash proceeds of the loan (after subtracting customary and reasonable charges and fees and funds to pay off legitimate liens and overdue credit accounts).

240.    At all relevant times, Defendant Kenney and Defendant Erb knew that Plaintiff Juergens would not receive what Defendant Kenney told Plaintiff Juergens would be her cash proceeds of the loan and which she reasonably relied upon in deciding whether to accept the loan.

241.    Moreover, Defendant Erb's notarization and authentication of documents related to Plaintiff Juergens' loan were false and unlawful since Defendant Erb and Plaintiff Juergens were not physically present together at the closing of this loan.

242.    The fraudulent and wrongful acts committed by Defendant Kenney and Defendant Erb in connection with the procurement of the George Owen loan and the closing on this loan were undertaken in furtherance of the conspirators' common scheme.

243.    As a direct and proximate result of Defendant Kenney's and Defendant Erb's conspiracy, Plaintiff Juergens suffered damages that are fully stated in paragraphs 68-69 of this 3rd amended complaint.

244.    Defendant Kenney's and Defendant Erb's actions in furtherance of their conspiracy were intentional, willful and wanton, and justify the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Defendant William D. Kenney, Jr. and

Defendant Paul Erb, jointly and severally, as well as any other relief required in the interest of justice.

**Count X – Violation D.C. Code §26-1151.01, et seq.**
**(Mortgage Loan Protection Act)**
**(Defendant Urban Title Services, Inc. and Defendant Kenney)**

245.   The allegations contained in paragraphs 1-69 of this 3rd amended complaint are incorporated herein as if fully stated.

246.   At all relevant times, Plaintiff Juergens was a "borrower" as defined in D.C. Code §26-1151.01 (4) as she is an

> accommodation party, borrower, co-borrower, cosigner, co-maker, obligor, mortgagor, or guarantor obligated to repay a loan that is secured by a lien instrument.

247.   At all relevant times, Defendant Urban Title Services, Inc. and Defendant Kenney were "lenders" as defined in D.C. Code §26-1151.01 (11) as they are mortgage brokers as defined in D.C. Code §26-1151.01 (13) and D.C. Code §26-1101 (10).

248.   At all relevant times, the loan from George Owen to Plaintiff Juergens was a "covered loan" as defined in D.C. Code §26-1151.01 (7) since

> (i)     The loan is secured by a first mortgage on the borrower's principal dwelling and the annual percentage rate at closing will exceed by more than 6 percentage points the yield on United States Treasury securities having comparable periods of maturity to the loan maturity measured as of the 15th day of the month immediately preceding the month in which the application for the residential mortgage loan is received by the creditor; or

> . . .

> (iii)    The origination/discount points and fees payable by the borrower at or before loan closing exceed 5% of the total loan amount.

249.   George Owen, Defendant Urban Title Services, Inc. and Defendant Kenney made a "covered loan" to Plaintiff Juergens that violated D.C. Code §26-1152.02 since

a.     at the time the "covered loan" closed, Plaintiff Juergens could not have "reasonably be expected to make the scheduled payments" pursuant to D.C. Code §26-1152.02 (a) because of Plaintiff Juergens'

1.     inability to make payments of interest and principal on the "covered loan;"

2.     lack of verifiable employment;

3.     lack of verifiable current income;

4.     lack of verifiable expected income;

5.     extensive current financial obligations; and

6.     lack of other financial resources (other than Plaintiff Juergens' equity in the dwelling that secured the repayment of the "covered loan."

250.    In addition, George Owen, Defendant Urban Title Services, Inc. and Defendant Kenney made a "covered loan" to Plaintiff Juergens that violated D.C. Code §26-1152.02 (a) (2) because they unlawfully considered Plaintiff Juergens' "equity interest in the residential real property which secures repayment of the 'covered loan.'"

251.    In addition, George Owen, Defendant Urban Title Services, Inc. and Defendant Kenney made a "covered loan" to Plaintiff Juergens that violated D.C. Code §26-1152.02 (a) (3) because this loan included "payment terms under which the aggregate amount of the scheduled payments will not fully amortize the outstanding principal balance," and Plaintiff Juergens would not have been able to refinance that "covered loan" "without penalty, hardship or material loss of equity."

252.    For purposes of D.C. Code §26-1152.02 (c), Plaintiff Juergens' "gross income" "did not exceed 120% of median family income" at the time she closed on the George Owen loan.

253.    George Owen, Defendant Urban Title Services, Inc. and Defendant Kenney made a "covered loan" to Plaintiff Juergens that violated D.C. Code §26-1152.02 (c) since they failed to verify Plaintiff Juergens' "current and expected income, current debts, current assets, and

employment" "in accordance with standard residential mortgage lending industry practices to underwrite a loan secured by a residential lien instrument."

254.    Defendant Urban Title Services, Inc. and Defendant Kenney violated D.C. Code §26-1152.10 (c) by "charg[ing] and retain[ing] fees paid by the borrower in making a 'covered loan' which are (1) for services that are not actually performed; . . . (3) in violation of the Real Estate Procedures Settlement Act of 1974, 12 U.S.C. § 2601, et seq.

255.    Moreover, Defendant Urban Title Services, Inc. and Defendant Kenney violated D.C. Code §26-1152.10 (c) by failing to send Plaintiff Juergens a "Red Flag Warning Disclosure Notice" pursuant to D.C. Code §26-1151.11 at least three days prior to the closing of the loan.

256.    Defendant Urban Title Services, Inc. and Defendant Kenney violated D.C. Code §26-1152.19 by failing to inform Plaintiff Juergens of her right to obtain counseling in connection with a "covered loan."

257.    Additionally, Defendant Urban Title Services, Inc. and Defendant Kenney violated D.C. Code §26-1152.21 by failing to submit a "loan package" regarding the George Owen loan to Plaintiff Juergens to the Mayor of the District of Columbia.

258.    Pursuant to D.C. Code §26-1153.01, Plaintiff Juergens may recover damages against Defendant Urban Title Services, Inc. and Defendant Kenney in connection with Defendant Urban Title Services, Inc.'s and Defendant Kenney's violations of D.C. Code §26-1151.01, et seq. and seek actual damages as well as reasonable attorney's fees and costs.

259.    As a direct and proximate result of Defendant Urban Title Services, Inc.'s and Defendant Kenney's violations of D.C. Code § 26-1151.01, et seq., Plaintiff Juergens suffered damages that are fully stated in paragraphs 68-69 of this 3rd amended complaint.

260.    Defendant Urban Title Services, Inc.'s and Defendant Kenney's violations of D.C. Code § 26-1151.01, et seq., were intentional, willful and wanton, and justify the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Defendant Urban Title Services, Inc. and Defendant William D. Kenney, Jr., jointly and severally, as well as any other relief required in the interest of justice.

<u>**Count XI – Violation D.C. Code §26-1101, et seq.**</u>
**(Mortgage Lender and Broker Act)**
**(Defendant Urban Title Services, Inc. and Defendant Kenney)**

261.    The allegations contained in paragraphs 1-69 of this 3rd amended complaint are incorporated herein as if fully stated.

262.    At all relevant times, Plaintiff Juergens was a "borrower" as defined in D.C. Code § 26-1101 (1) as she is a

> person who submits an application for a loan secured by a first or subordinate mortgage or deed of trust on a single to 4-family home to be occupied by the borrower as the borrower's primary residence.

263.    At all relevant times, the deed of trust regarding the George Owen loan to Plaintiff Juergens was an "interest in real property" as defined in D.C. Code § 26-1101 (6) as it is

> (A)     A confessed judgment note or consent judgment required or obtained by any person acting as a mortgage lender or mortgage broker for the purpose of acquiring a lien on residential real property;

> (B)     A sale and leaseback required or obtained by any person acting as a mortgage lender or mortgage broker for the purpose of creating a lien on residential real property;

> (C)     A mortgage, deed of trust, or lien other than a judgment lien, on residential real property; and

(D)     Any other security interest that has the effect of creating a lien on residential real property in the District of Columbia.

264.     At all relevant times, Defendant Urban Title Services, Inc. and Defendant Kenney were "mortgage brokers" as defined in D.C. Code § 26-1101 (10) as they were "persons"

> who, for compensation or gain, or in the expectation of compensation or gain, either directly or indirectly accepts or offers to accept an application for a mortgage loan, solicits or offers to solicit a mortgage loan on behalf of a borrower, or negotiates or offers to negotiate the terms and conditions of a mortgage loan on behalf of a lender.

265.     At all relevant times, the George Owen loan to Plaintiff Juergens was a "mortgage loan" as defined in D.C. Code § 26-1101 (12) as it is

> loan or other extension of credit that is secured, in whole or in part, by any interest in residential real property in the District of Columbia.

266.     At all relevant times, Plaintiff Juergens' condominium unit located at 1220 23rd Street, N.W., Apt. 505, Washington, DC  20037 was "residential real property" as defined in D.C. Code § 26-1101 (16) as it is an

> owner-occupied real property located in the District of Columbia, which property has a dwelling on it designed principally as a residence with accommodations for not more than 4 families.

267.     Because they were "mortgage brokers" as defined in D.C. Code § 26-1101 (10), Defendant Urban Title Services, Inc. and Defendant Kenney were required to obtain a license pursuant to D.C. Code § 26-1103 (a), yet failed to do so.

268.     In addition, because they were "mortgage brokers" as defined in D.C. Code § 26-1101 (10), Defendant Urban Title Services, Inc. and Defendant Kenney were required to obtain a surety bond pursuant to D.C. Code § 26-1103 (i), yet failed to do so.

269.     As "mortgage brokers" as defined in D.C. Code § 26-1101 (10), Defendant Urban Title Services, Inc. and Defendant Kenney were required to retain

for at least 3 years after a mortgage loan is made, the original contract for his or her compensation, a copy of the settlement statement, an account of fees received in connection with the loan, and such other papers or records as may be required by rule or regulation.

pursuant to D.C. Code § 26-1109 (d), but failed to do so.

270.    As "mortgage brokers" as defined in D.C. Code § 26-1101 (10), Defendant Urban Title

Services, Inc. and Defendant Kenney were required to provide Plaintiff Juergens with a

financing statement executed by the lender pursuant to D.C. Code § 26-1113 (a) that shall

include

(A)    the term and principal amount of the loan;

(B)    an explanation of the type of mortgage loan being offered;

(C)    the rate of interest that will apply to the loan and, if the rate is subject to change, or is a variable rate, or is subject to final determination at a future date based on some objective standard, a specific statement of those facts;

(D)    the points and all fees, if any, to be paid by the borrower or the seller, or both; and

(E)    the term during which the financing agreement remains in effect,

and deliver this financing statement to Plaintiff Juergens at least 72 hours before the time of the

settlement agreed to by the parties along with a financing statement that includes

(A)    the effective fixed interest rate or initial interest rate that will be applied to the loan; and

(B)    a restatement of all the remaining unchanged provisions of the financing agreement.

271.    Neither Defendant Urban Title Services, Inc. nor Defendant Kenney provided Plaintiff

Juergens with any financing statement at all pursuant to D.C. Code § 26-1113.

272.    Defendant Urban Title Services, Inc. and Defendant Kenney violated D.C. Code § 26-

1114 (a) (6) by brokering a mortgage loan to Plaintiff Juergens with the intent to foreclose on the

borrower's property since there was a lack of probability that Plaintiff Juergens would make full repayment of the George Owen loan

273.    In addition, Defendant Urban Title Services, Inc. and Defendant Kenney violated D.C. Code § 26-1114 (a) (7) by failing to provide Plaintiff Juergens with a HUD-1 settlement statement as required by the Real Estate Settlement Procedures Act, 12 U.S.C. § 2610, et seq. or disclosures required by the Truth in Lending Act, 15 U.S.C. § 1601, et seq. and Regulation Z, 12 C.F.R. Part 226.

274.    Defendant Urban Title Services, Inc. and Defendant Kenney also violated D.C. Code § 26-1114 (a) (9) by engaging in predatory lending activity in violation of D.C. Code § 26-1151.01, et seq.

275.    Furthermore, Defendant Urban Title Services, Inc. and Defendant Kenney violated D.C. Code § 26-1114 (a) (11) by engaging in the business as a mortgage broker or holding himself out to the public as a mortgage broker without a license.

276.    As a direct and proximate result of Defendant Urban Title Services, Inc.'s and Defendant Kenney's violations of D.C. Code § 26-1101, et seq., Plaintiff Juergens suffered damages that are fully stated in paragraphs 68-69 of this 3rd amended complaint.

277.    Defendant Urban Title Services, Inc.'s and Defendant Kenney's violations of D.C. Code § 26-1101, et seq., were intentional, willful and wanton, and justify the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Defendant Urban Title Services, Inc.

and Defendant William D. Kenney, Jr., jointly and severally, as well as any other relief required in the interest of justice.

**Count XII – Violation of D.C. Code §28-3901, et seq.)**
**(Consumer Protection Procedures Act)**
**(Defendant Urban Title Services, Inc. and Defendant Kenney)**

278.    The allegations contained in paragraphs 1-69 of this 3rd amended complaint are incorporated herein as if fully stated.

279.    At all relevant times, Plaintiff Juergens was a "consumer" as defined in D.C. Code § 28-3901 (a) (2) as she is a

> a person who does or would purchase, lease (from), or receive consumer goods or services, including a co-obligor or surety, or a person who does or would provide the economic demand for a trade practice.

280.    At all relevant times, Defendant Urban Title Services, Inc. and Defendant Kenney were "merchants" as defined in D.C. Code § 28-3901 (a) (3) as they are persons

> whether organized or operating for profit or for a nonprofit purpose, who in the ordinary course of business does or would sell, lease (to), or transfer, either directly or indirectly, consumer goods or services, or a person who in the ordinary course of business does or would supply the goods or services which are or would be the subject matter of a trade practice.

281.    At all relevant times, George Owen's loan to Plaintiff Juergens and Defendant Urban Title Services, Inc.'s and Defendant Kenney's closing on that loan were "goods or services" as defined in D.C. Code § 28-3901 (a) (7) since they are

> any and all parts of the economic output of society, at any stage or related or necessary point in the economic process, and includes consumer credit, franchises, business opportunities, real estate transactions, and consumer services of all types.

282.    At all relevant times, Defendant Urban Title Services, Inc.'s and Defendant Kenney's procurement of the George Owen loan on Plaintiff Juergens' behalf and settlement on that loan were "trade practices" as defined in D.C. Code § 28-3901 (a) (6) since these were acts

which does or would create, alter, repair, furnish, make available, provide information about, or, directly or indirectly, solicit or offer for or effectuate, a sale, lease or transfer, of consumer goods or services.

283.    Defendant Urban Title Services, Inc. and Defendant Kenney violated D.C. Code §28-3904 (e) by misrepresenting a material fact that had a tendency to mislead Plaintiff Juergens, specifically, that they would promptly disburse the full proceeds of $60,000.00 loan from George Owen to Plaintiff Juergens and remit the remaining proceeds of this loan to Plaintiff Juergens (after subtracting customary and reasonable charges and fees and funds to pay off legitimate liens and overdue credit accounts).

284.    Defendant Urban Title Services, Inc. and Defendant Kenney violated D.C. Code §28-3904 (f) by failing to state a material fact if such failure tends to mislead, specifically, that they would not promptly disburse the full proceeds of $60,000.00 loan from George Owen to Plaintiff Juergens and remit the remaining proceeds of this loan to Plaintiff Juergens (after subtracting customary and reasonable charges and fees and funds to pay off legitimate liens and overdue credit accounts).

285.    Defendant Urban Title Services, Inc. and Defendant Kenney violated D.C. Code §28-3904 (z-1) by violating the District of Columbia Consumer Credit Service Organization Act, D.C. Code § 28-4601, et seq.

286.    Defendant Urban Title Services, Inc. and Defendant Kenney's misrepresentations of material facts, or alternatively, their failure to state material facts, were made with knowledge that they were false, or alternatively, that the omission would create a false understanding in Plaintiff Juergens' mind.

287.    Plaintiff Juergens justifiably relied on Defendant Urban Title Services, Inc. and Defendant Kenney's misrepresentations and/or failures to state material facts when she entered into and closed on the $60,000.00 loan from George Owen.

288.    Defendant Urban Title Services, Inc. and Defendant Kenney's conduct and actions with regard to George Owen's loan to Plaintiff Juergens constitutes "unfair and deceptive practices" within the meaning set forth in D.C. Code §28-3901, et seq.

289.    Defendant Urban Title Services, Inc., Defendant Kenney and Defendant Erb each agreed, explicitly or tacitly, to participate with other Defendants in the acts alleged above, and their acts were in furtherance of a common scheme to wrongfully divest Plaintiff Juergens of the use of the expected cash proceeds from her $60,000.00 loan from George Owen for Defendants' financial gain.

290.    Each of the Defendants' acts alleged above aided the other Defendants, and was in furtherance of a common scheme to wrongfully divest Plaintiff Juergens of the use of the expected cash proceeds from her $60,000.00 loan from George Owen for Defendants' financial gain.

291.    Pursuant to D.C. Code §28-3905 (k), Plaintiff Juergens is entitled to recover damages against Defendant Urban Title Services, Inc. and Defendant Kenney for their violations of D.C. Code §28-3901, et seq., including actual damages, treble damages, or $1,500 per violation, whichever is greater, reasonable attorney's fees and punitive damages.

292.    As a direct and proximate result of Defendant Urban Title Services, Inc.'s and Defendant Kenney's violations of D.C. Code § 28-3901, et seq., Plaintiff Juergens suffered damages that are fully stated in paragraphs 68-69 of this 3rd amended complaint.

293.    Defendant Urban Title Services, Inc.'s and Defendant Kenney's violations of D.C. Code § 28-3901, et seq., were intentional, willful and wanton, and justify the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Defendant Urban Title Services, Inc. and Defendant William D. Kenney, Jr., jointly and severally, as well as any other relief required in the interest of justice.

**Count XIII – Violation D.C. Code §28-4601, et seq.**
**(Consumer Credit Service Organization Act)**
**(Defendant Urban Title Services, Inc. and Defendant Kenney)**

294.    The allegations contained in paragraphs 1-69 of this 3rd amended complaint are incorporated herein as if fully stated.

295.    At all relevant times, Plaintiff Juergens was a "consumer" as defined in D.C. Code § 28-4601 (1) as she is a

a person who is solicited to purchase or who purchases the services of a consumer credit service organization.

296.    At all relevant times, Defendant Urban Title Services, Inc. was a "consumer credit service organization" as defined in D.C. Code § 28-4601 (2) (A) as it is a person

who, with respect to the extension of credit by others, sells, provides, performs, or represents that he or she can sell, provide, or perform, in return for the payment of money or other valuable consideration, any of the following services:

(i)    Improvement of a consumer's credit record, history, or rating;

(ii)    Obtain an extension of credit for a consumer; or

(iii)    Provide advice or assistance to a consumer regarding any matter related to the consumer's personal, household, or family credit.

62

297.    At all relevant times, Defendant Kenney was a "consumer credit service organization" as defined in D.C. Code § 28-4601 (2) (B) and/or D.C. Code § 28-4601 (2) (B) as he is a person who is a "salesperson, agent, or representative of a consumer credit service organization" or a person who is an "independent agent who sells or attempts to sell the services of a consumer credit service organization."

298.    Defendant Urban Title Services, Inc. and Defendant Kenney both made and used false and misleading representations, failed to disclose material facts, and directly or indirectly engaged in acts and in a course of business to defraud or deceive Plaintiff Juergens in violation of D.C. Code §28-4603 (4), with respect to George Owen's loan to Plaintiff Juergens, specifically, that they would promptly disburse the full proceeds of $60,000.00 loan from George Owen to Plaintiff Juergens and remit the remaining proceeds of this loan to Plaintiff Juergens (after subtracting customary and reasonable charges and fees and funds to pay off legitimate liens and overdue credit accounts).

299.    Defendant Urban Title Services, Inc. and Defendant Kenney both violated D.C. Code §28-4605 by failing to provide Plaintiff Juergens with a disclosure statement in conformity with D.C. Code §28-4605 (b).

300.    Defendant Urban Title Services, Inc. and Defendant Kenney both violated D.C. Code §28-4605 by failing to provide Plaintiff Juergens with a written contract in conformity with D.C. Code §28-4605 (c) and notice of Plaintiff Juergens' right to cancellation in conformity with D.C. Code §28-4605 (d).

301.    Pursuant to D.C. Code §28-4607 (c), Plaintiff Juergens is entitled to recover damages against Defendant Urban Title Services, Inc. and Defendant Kenney for their violations of D.C. Code §28-4601, et seq., including actual damages, which, "in no case be less than the amount

paid by the consumer to the consumer credit service organization," reasonable attorney's fees and "actual costs incurred to recover the damages" and punitive damages.

302.    As a direct and proximate result of Defendant Urban Title Services, Inc.'s and Defendant Kenney's violations of D.C. Code § 28-4601, et seq., Plaintiff Juergens suffered damages that are fully stated in paragraphs 68-69 of this 3rd amended complaint.

303.    Defendant Urban Title Services, Inc.'s and Defendant Kenney's violations of D.C. Code § 28-4601, et seq., were intentional, willful and wanton, and justify the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Defendant Urban Title Services, Inc. and Defendant William D. Kenney, Jr., jointly and severally, as well as any other relief required in the interest of justice.

### Count XIV – Respondeat Superior
### (Defendant Urban Title Services, Inc.)

304.    The allegations contained in paragraphs 1-303 of this 3rd amended complaint are incorporated herein as if fully stated.

305.    At all relevant times, Defendant Kenney and Defendant Erb were the agents, servants or employees of Defendant Urban Title Services, Inc. who was acting within the scope of their employment.

306.    Therefore, under the doctrine of respondeat superior, Defendant Urban Title Services, Inc. is responsible for Defendant Kenney and Defendant Erb's tortuous conduct.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive

damages, attorneys' fees, interest and court costs against Defendant Urban Title Services, Inc., as well as any other relief required in the interest of justice.

**Count XV – Breach of Contract**
**(First Mount Vernon ILA)**

307.    The allegations contained in all preceding paragraphs of this 3rd amended complaint are incorporated herein as if fully stated.

308.    Plaintiff Juergens entered into a contract with Defendant First Mount Vernon ILA in which Defendant First Mount Vernon ILA, in exchange for a customary and reasonable fee, would agree to extend a personal consumer residential loan to Plaintiff Juergens in the amount of $250,000.00 under customary and reasonable contractual terms and conditions that comply with all applicable laws and statutes and at a customary and reasonable interest rate, payoff the George Owen loan with a balance of $61,195.11 and provide Plaintiff Juergens with the remaining proceeds as cash after the payment of customary and reasonable settlement charges.

309.    Defendant First Mount Vernon ILA breached this contract by not extending a personal consumer residential loan under customary and reasonable contractual terms and conditions that comply with all applicable laws and statutes and at a customary and reasonable interest rate.

310.    Furthermore, Defendant First Mount Vernon ILA fraudulently disguised the loan to Plaintiff Juergens as a commercial loan rather than, what was in reality, a personal consumer residential loan in order to charge Plaintiff Juergens a higher rate of interest and to circumvent District of Columbia mortgage, consumer and fair lending laws.

311.    As a direct and proximate result of Defendant First Mount Vernon ILA's breach of its contract, Plaintiff Juergens suffered damages that are fully stated in paragraphs 177-178 of this 3rd amended complaint.

312.    Defendant First Mount Vernon ILA's breach of its contract was intentional, willful and wanton, and justifies the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens, individually, and in her capacity as the sole member of "1230 23rd Street, LLC," respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Defendant First Mount Vernon Industrial Loan Association Incorporated a/k/a "First Mount Vernon Industrial Loan Association, Inc.," as well as any other relief required in the interest of justice, including, but not limited to, declaring Defendant First Mount Vernon Industrial Loan Association Incorporated's a/k/a "First Mount Vernon Industrial Loan Association, Inc.'s" loan to Plaintiff Juergens and/or the "1230 23rd Street, LLC," all documents related to the "1230 23rd Street, LLC," the transfer of title to Plaintiff Juergens' condominium unit from Plaintiff Juergens to the "1230 23rd Street, LLC," and all documents set forth in paragraphs 127-128 of this 3rd amended complaint to be rescinded, null and *void ab initio*.

## Count XVI – Breach of Fiduciary Duty
### (Related to Defendant Bennett's Role as a Loan Officer)
### (Defendant Bennett)

313.    The allegations contained in all preceding paragraphs of this 3rd amended complaint are incorporated herein as if fully stated.

314.    By acting as a loan officer charged with the duty of assisting Plaintiff Juergens obtain a refinance loan in order to pay off her loan to George Owen, Defendant Bennett owed a duty of care to Plaintiff Juergens.

315.    By allegedly advising Plaintiff Juergens as to the supposed "benefits" of establishing a Limited Liability Company to take legal title to Plaintiff Juergens' condominium unit, and

allegedly obtaining Plaintiff Juergens' approval to establish the "1230 23rd Street, LLC" in order to take legal title to Plaintiff Juergens' condominium unit and thereafter obtain a loan secured by this condominium unit, Defendant Bennett was negligent and breached this duty of care by failing to use a degree of reasonable care and skill expected of loan brokers acting under similar circumstances since there were no such benefits to Plaintiff Juergens from entering into such a complicated transaction.

316.    Moreover, this complicated transaction actually harmed Plaintiff Juergens as she was forced to pay significant "transfer" and "recordation" taxes to the District of Columbia Recorder of Deeds and lost her homestead tax deduction.

317.    Furthermore, this complicated transaction allowed Defendant First Mount Vernon ILA to fraudulently disguise the loan to Plaintiff Juergens as a commercial loan rather than, what was in reality, a personal consumer residential loan in order to charge Plaintiff Juergens a higher rate of interest and to circumvent District of Columbia mortgage, consumer and fair lending laws.

318.    As a direct and proximate result of Defendant Bennett's negligence, Plaintiff Juergens suffered damages that are fully stated in paragraphs 177-178 of this 3rd amended complaint.

319.    Defendant Bennett's negligence was intentional, willful and wanton, and justifies the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens, individually, and in her capacity as the sole member of "1230 23rd Street, LLC," respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Defendant Arthur G. Bennett, as well as any other relief required in the interest of justice, including, but not limited to, declaring Defendant First Mount Vernon Industrial Loan Association Incorporated's a/k/a "First Mount Vernon Industrial

Loan Association, Inc.'s" loan to Plaintiff Juergens and/or the "1230 23rd Street, LLC," all documents related to the "1230 23rd Street, LLC," the transfer of title to Plaintiff Juergens' condominium unit from Plaintiff Juergens to the "1230 23rd Street, LLC," and all documents set forth in paragraphs 127-128 of this 3rd amended complaint to be rescinded, null and *void ab initio*.

### Count XVII – Negligence
### (Related to Defendant Bennett's Role as a Loan Officer)
### (Defendant Bennett)

320.    The allegations contained in all preceding paragraphs of this 3rd amended complaint are incorporated herein as if fully stated.

321.    By acting as a loan officer charged with the duty of assisting Plaintiff Juergens obtain a refinance loan in order to pay off her loan to George Owen, Defendant Bennett owed a fiduciary duty to Plaintiff Juergens.

322.    By allegedly advising Plaintiff Juergens as to the supposed "benefits" of establishing a Limited Liability Company to take legal title to Plaintiff Juergens' condominium unit, and allegedly obtaining Plaintiff Juergens' approval to establish the "1230 23rd Street, LLC" in order to take legal title to Plaintiff Juergens' condominium unit and thereafter obtain a loan secured by this condominium unit, Defendant Bennett breached this fiduciary duty by failing to use a degree of reasonable care and skill expected of loan brokers acting under similar circumstances since there were no such benefits to Plaintiff Juergens from entering into such a complicated transaction.

323.    Moreover, this complicated transaction actually harmed Plaintiff Juergens as she was forced to pay significant "transfer" and "recordation" taxes to the District of Columbia Recorder of Deeds and lost her homestead tax deduction.

324.    Defendant Duncan further failed to filed any request with the District of Columbia Department of Consumer and Regulatory Affairs for authorization for the "1230 23rd Street, LLC" to conduct business as a foreign Limited Liability Company or register the property as a rental property with the District of Columbia Department of Consumer and Regulatory Affairs or obtain a business license for the "1230 23rd Street, LLC" even though he had this duty as the attorney establishing such Limited Liability Company for the purpose of renting the property to third parties.

325.    Furthermore, this complicated transaction allowed Defendant First Mount Vernon ILA to fraudulently disguise the loan to Plaintiff Juergens as a commercial loan rather than, what was in reality, a personal consumer residential loan in order to charge Plaintiff Juergens a higher rate of interest and to circumvent District of Columbia mortgage, consumer and fair lending laws.

326.    As a direct and proximate result of Defendant Bennett's breach of his fiduciary duty, Plaintiff Juergens suffered damages that are fully stated in paragraphs 177-178 of this 3rd amended complaint.

327.    Defendant Bennett's breach of fiduciary duty was intentional, willful and wanton, and justifies the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens, individually, and in her capacity as the sole member of "1230 23rd Street, LLC," respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Defendant Arthur G. Bennett, as well as any other relief required in the interest of justice, including, but not limited to, declaring Defendant First Mount Vernon Industrial Loan Association Incorporated's a/k/a "First Mount Vernon Industrial Loan Association, Inc.'s" loan to Plaintiff Juergens and/or the "1230 23rd Street, LLC," all

documents related to the "1230 23rd Street, LLC," the transfer of title to Plaintiff Juergens' condominium unit from Plaintiff Juergens to the "1230 23rd Street, LLC," and all documents set forth in paragraphs 127-128 of this 3rd amended complaint to be rescinded, null and *void ab initio*.

### Count XVIII – Breach of Contract
### (Related to the Establishment of the "1230 23rd Street, LLC")
### (Defendant Duncan)

328.    The allegations contained in all preceding paragraphs of this 3rd amended complaint are incorporated herein as if fully stated.

329.    By claiming to have prepared documents on Plaintiff Juergens' behalf and receiving a fee for doing so, specifically, documents that established the "1230 23rd Street, LLC," and filing these documents with the Virginia State Corporation Commission, Defendant Duncan entered into contract with Plaintiff Juergens to use a degree of reasonable care and skill expected of lawyers acting under similar circumstances.

330.    By allegedly advising Plaintiff Juergens as to the supposed "benefits" of establishing a Limited Liability Company to take legal title to Plaintiff Juergens' condominium unit, and allegedly obtaining Plaintiff Juergens' approval to establish the "1230 23rd Street, LLC" in order to take legal title to Plaintiff Juergens' condominium unit and thereafter obtain a loan secured by this condominium unit, Defendant Duncan breached his contract by failing to use a degree of reasonable care and skill expected of lawyers acting under similar circumstances since there were no such benefits to Plaintiff Juergens from entering into such a complicated transaction.

331.    Moreover, this complicated transaction actually harmed Plaintiff Juergens as she was forced to pay significant "transfer" and "recordation" taxes to the District of Columbia Recorder of Deeds and lost her homestead tax deduction.

332.    Defendant Duncan further failed to filed any request with the District of Columbia Department of Consumer and Regulatory Affairs for authorization for the "1230 23rd Street, LLC" to conduct business as a foreign Limited Liability Company or register the property as a rental property with the District of Columbia Department of Consumer and Regulatory Affairs or obtain a business license for the "1230 23rd Street, LLC" even though he had this duty as the attorney establishing such Limited Liability Company for the purpose of renting the property to third parties.

333.    Furthermore, this complicated transaction resulted in a breach of the duty of loyalty that Defendant Duncan owed to Plaintiff Juergens since this complicated transaction benefitted Defendant Duncan's principal client, Defendant First Mount Vernon ILA, and allowed Defendant First Mount Vernon ILA to fraudulently disguise the loan to Plaintiff Juergens as a commercial loan rather than, what was in reality, a personal consumer residential loan in order to charge Plaintiff Juergens a higher rate of interest and to circumvent District of Columbia mortgage, consumer and fair lending laws.

334.    As a direct and proximate result of Defendant Duncan's breach of his contract, Plaintiff Juergens suffered damages that are fully stated in paragraphs 177-178 of this 3rd amended complaint.

335.    Defendant Duncan's breach of contract was intentional, willful and wanton, and justifies the imposition of punitive damages.

        WHEREFORE, Plaintiff Mary Juergens, individually, and in her capacity as the sole member of "1230 23rd Street, LLC," respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Defendant Dale E. Duncan, as well as any other

relief required in the interest of justice, including, but not limited to, declaring Defendant First Mount Vernon Industrial Loan Association Incorporated's a/k/a "First Mount Vernon Industrial Loan Association, Inc.'s" loan to Plaintiff Juergens and/or the "1230 23rd Street, LLC," all documents related to the "1230 23rd Street, LLC," the transfer of title to Plaintiff Juergens' condominium unit from Plaintiff Juergens to the "1230 23rd Street, LLC," and all documents set forth in paragraphs 127-128 of this 3rd amended complaint to be rescinded, null and *void ab initio*.

### Count XIX – Legal Malpractice
### (Related to the Establishment of the "1230 23rd Street, LLC")
### (Defendant Duncan)

336.    The allegations contained in all preceding paragraphs of this 3rd amended complaint are incorporated herein as if fully stated.

337.    By claiming to have prepared documents on Plaintiff Juergens' behalf and receiving a fee for doing so, specifically, documents that established the "1230 23rd Street, LLC," and filing these documents with the Virginia State Corporation Commission, Defendant Duncan entered into an attorney-client relationship with Plaintiff Juergens.

338.    By allegedly advising Plaintiff Juergens as to the supposed "benefits" of establishing a Limited Liability Company to take legal title to Plaintiff Juergens' condominium unit, and allegedly obtaining Plaintiff Juergens' approval to establish the "1230 23rd Street, LLC" in order to take legal title to Plaintiff Juergens' condominium unit and thereafter obtain a loan secured by this condominium unit, Defendant Duncan failed to use a degree of reasonable care and skill expected of lawyers acting under similar circumstances since there were no such benefits to Plaintiff Juergens from entering into such a complicated transaction.

339.    Moreover, this complicated transaction actually harmed Plaintiff Juergens as she was forced to pay significant "transfer" and "recordation" taxes to the District of Columbia Recorder of Deeds and lost her homestead tax deduction.

340.    Defendant Duncan further failed to filed any request with the District of Columbia Department of Consumer and Regulatory Affairs for authorization for the "1230 23rd Street, LLC" to conduct business as a foreign Limited Liability Company or register the property as a rental property with the District of Columbia Department of Consumer and Regulatory Affairs or obtain a business license for the "1230 23rd Street, LLC" even though he had this duty as the attorney establishing such Limited Liability Company for the purpose of renting the property to third parties.

341.    Furthermore, this complicated transaction resulted in a breach of the duty of loyalty that Defendant Duncan owed to Plaintiff Juergens since this complicated transaction benefitted Defendant Duncan's principal client, Defendant First Mount Vernon ILA, and allowed Defendant First Mount Vernon ILA to fraudulently disguise the loan to Plaintiff Juergens as a commercial loan rather than, what was in reality, a personal consumer residential loan in order to charge Plaintiff Juergens a higher rate of interest and to circumvent District of Columbia mortgage, consumer and fair lending laws.

342.    As a direct and proximate result of Defendant Duncan's legal malpractice, Plaintiff Juergens suffered damages that are fully stated in paragraphs 177-178 of this 3rd amended complaint.

343.    Defendant Duncan's legal malpractice was intentional, willful and wanton, and justifies the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens, individually, and in her capacity as the sole member of "1230 23rd Street, LLC," respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Defendant Dale E. Duncan, as well as any other relief required in the interest of justice, including, but not limited to, declaring Defendant First Mount Vernon Industrial Loan Association Incorporated's a/k/a "First Mount Vernon Industrial Loan Association, Inc.'s" loan to Plaintiff Juergens and/or the "1230 23rd Street, LLC," all documents related to the "1230 23rd Street, LLC," the transfer of title to Plaintiff Juergens' condominium unit from Plaintiff Juergens to the "1230 23rd Street, LLC," and all documents set forth in paragraphs 127-128 of this 3rd amended complaint to be rescinded, null and *void ab initio*.

## Count XX– Breach of Fiduciary Duty
### (Related to the Establishment of the "1230 23rd Street, LLC")
### (Defendant Duncan)

344.    The allegations contained in all preceding paragraphs of this 3rd amended complaint are incorporated herein as if fully stated.

345.    By claiming to have prepared documents on Plaintiff Juergens' behalf and receiving a fee for doing so, specifically, documents that established the "1230 23rd Street, LLC," and filing these documents with the Virginia State Corporation Commission, Defendant Duncan owed a fiduciary duty to Plaintiff Juergens.

346.    By allegedly advising Plaintiff Juergens as to the supposed "benefits" of establishing a Limited Liability Company to take legal title to Plaintiff Juergens' condominium unit, and allegedly obtaining Plaintiff Juergens' approval to establish the "1230 23rd Street, LLC" in order to take legal title to Plaintiff Juergens' condominium unit and thereafter obtain a loan secured by

this condominium unit, Defendant Duncan breached this fiduciary duty by failing to use a degree of reasonable care and skill expected of lawyers acting under similar circumstances since there were no such benefits to Plaintiff Juergens from entering into such a complicated transaction.

347.    Moreover, this complicated transaction actually harmed Plaintiff Juergens as she was forced to pay significant "transfer" and "recordation" taxes to the District of Columbia Recorder of Deeds and lost her homestead tax deduction.

348.    Defendant Duncan further failed to filed any request with the District of Columbia Department of Consumer and Regulatory Affairs for authorization for the "1230 23rd Street, LLC" to conduct business as a foreign Limited Liability Company or register the property as a rental property with the District of Columbia Department of Consumer and Regulatory Affairs or obtain a business license for the "1230 23rd Street, LLC" even though he had this duty as the attorney establishing such Limited Liability Company for the purpose of renting the property to third parties.

349.    Furthermore, this complicated transaction resulted in a breach of the duty of loyalty that Defendant Duncan owed to Plaintiff Juergens since this complicated transaction benefitted Defendant Duncan's principal client, Defendant First Mount Vernon ILA, and allowed Defendant First Mount Vernon ILA to fraudulently disguise the loan to Plaintiff Juergens as a commercial loan rather than, what was in reality, a personal consumer residential loan in order to charge Plaintiff Juergens a higher rate of interest and to circumvent District of Columbia mortgage, consumer and fair lending laws.

350.    As a direct and proximate result of Defendant Duncan's breach of his fiduciary duty, Plaintiff Juergens suffered damages that are fully stated in paragraphs 177-178 of this 3rd amended complaint.

351. Defendant Duncan's breach of fiduciary duty was intentional, willful and wanton, and justifies the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens, individually, and in her capacity as the sole member of "1230 23rd Street, LLC," respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Defendant Dale E. Duncan, as well as any other relief required in the interest of justice, including, but not limited to, declaring Defendant First Mount Vernon Industrial Loan Association Incorporated's a/k/a "First Mount Vernon Industrial Loan Association, Inc.'s" loan to Plaintiff Juergens and/or the "1230 23rd Street, LLC," all documents related to the "1230 23rd Street, LLC," the transfer of title to Plaintiff Juergens' condominium unit from Plaintiff Juergens to the "1230 23rd Street, LLC," and all documents set forth in paragraphs 127-128 of this 3rd amended complaint to be rescinded, null and *void ab initio*.

### Count XXI – Negligence
### (Related to the Establishment of the "1230 23rd Street, LLC")
### (Defendant Duncan)

352. The allegations contained in all preceding paragraphs of this 3rd amended complaint are incorporated herein as if fully stated.

353. By claiming to have prepared documents on Plaintiff Juergens' behalf and receiving a fee for doing so, specifically, documents that established the "1230 23rd Street, LLC," and filing these documents with the Virginia State Corporation Commission, Defendant Duncan owed a duty of care to Plaintiff Juergens.

354. By allegedly advising Plaintiff Juergens as to the supposed "benefits" of establishing a Limited Liability Company to take legal title to Plaintiff Juergens' condominium unit, and

allegedly obtaining Plaintiff Juergens' approval to establish the "1230 23rd Street, LLC" in order to take legal title to Plaintiff Juergens' condominium unit and thereafter obtain a loan secured by this condominium unit, Defendant Duncan was negligent and breached this duty of care by failing to use a degree of reasonable care and skill expected of lawyers acting under similar circumstances since there were no such benefits to Plaintiff Juergens from entering into such a complicated transaction.

355.    Moreover, this complicated transaction actually harmed Plaintiff Juergens as she was forced to pay significant "transfer" and "recordation" taxes to the District of Columbia Recorder of Deeds and lost her homestead tax deduction.

356.    Defendant Duncan further failed to filed any request with the District of Columbia Department of Consumer and Regulatory Affairs for authorization for the "1230 23rd Street, LLC" to conduct business as a foreign Limited Liability Company or register the property as a rental property with the District of Columbia Department of Consumer and Regulatory Affairs or obtain a business license for the "1230 23rd Street, LLC" even though he had this duty as the attorney establishing such Limited Liability Company for the purpose of renting the property to third parties.

357.    Furthermore, this complicated transaction resulted in a breach of the duty of loyalty that Defendant Duncan owed to Plaintiff Juergens since this complicated transaction benefitted Defendant Duncan's principal client, Defendant First Mount Vernon ILA, and allowed Defendant First Mount Vernon ILA to fraudulently disguise the loan to Plaintiff Juergens as a commercial loan rather than, what was in reality, a personal consumer residential loan in order to charge Plaintiff Juergens a higher rate of interest and to circumvent District of Columbia mortgage, consumer and fair lending laws.

358.    As a direct and proximate result of Defendant Duncan's negligence, Plaintiff Juergens suffered damages that are fully stated in paragraphs 177-178 of this 3rd amended complaint.

359.    Defendant Duncan's negligence was intentional, willful and wanton, and justifies the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens, individually, and in her capacity as the sole member of "1230 23rd Street, LLC," respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Defendant Dale E. Duncan, as well as any other relief required in the interest of justice, including, but not limited to, declaring Defendant First Mount Vernon Industrial Loan Association Incorporated's a/k/a "First Mount Vernon Industrial Loan Association, Inc.'s" loan to Plaintiff Juergens and/or the "1230 23rd Street, LLC," all documents related to the "1230 23rd Street, LLC," the transfer of title to Plaintiff Juergens' condominium unit from Plaintiff Juergens to the "1230 23rd Street, LLC," and all documents set forth in paragraphs 127-128 of this 3rd amended complaint to be rescinded, null and *void ab initio*.

### Count XXII – Breach of Contract
### (Loan Closing)
### (Defendant Duncan and Defendant Brickshire Settlements, LLC)

360.    The allegations contained in all preceding paragraphs of this 3rd amended complaint are incorporated herein as if fully stated.

361.    Plaintiff Juergens entered into a contract with Defendant Duncan and Defendant Brickshire Settlements, LLC in which Defendant Duncan and Defendant Brickshire Settlements, LLC, in exchange for a customary and reasonable fee, would perform the closing on the loan from Defendant First Mount Vernon ILA, including using a proper and accurate accounting

statement, ensuring the all loan documents comply with all relevant laws and statutes, notarizing and authenticating loan documents by a licensed notary, promptly disbursing funds associated with this loan, promptly filing loan documents and loan releases and conducting the settlement in a manner in accordance with all relevant laws and statutes.

362.    Defendant Duncan and Defendant Brickshire Settlements, LLC breached this contract by failing to use a proper and accurate accounting statement, by failing to ensure that the all loan documents comply with all relevant laws and statutes, by failing to notarize and authenticate loan documents by a licensed notary, by failing to promptly disburse funds associated with this loan, by failing to promptly filing loan documents and loan releases and by failing to conduct the settlement in a manner in accordance with all relevant laws and statutes.

363.    Moreover, Defendant Duncan and Defendant Brickshire Settlements, LLC breached this contract by using a HUD-1 settlement statement that did not accurately reflect the nature of the transaction, which was a refinancing of a personal consumer residential loan to Plaintiff Juergens.

364.    Additionally, assuming arguendo that Plaintiff Juergens, had, in fact, transferred title to her condominium unit to the "1230 23rd Street, LLC" prior to an extension of a loan to the "1230 23rd, Street, LLC, Defendant Duncan and Defendant Brickshire Settlements, LLC breached this contract by paying "transfer" and "recordation" taxes to the District of Columbia Recorder of Deeds with regard to the transfer of title between Plaintiff Juergens and the "1230 23rd Street, LLC."

365.    Furthermore, by breaching the contract, Defendant Duncan and Defendant Brickshire Settlements, LLC allowed Defendant First Mount Vernon ILA to fraudulently disguise the loan to Plaintiff Juergens as a commercial loan rather than, what was in reality, a personal consumer

residential loan in order to charge Plaintiff Juergens a higher rate of interest and to circumvent District of Columbia mortgage, consumer and fair lending laws.

366.    As a direct and proximate result of Defendant Duncan's and Defendant Brickshire Settlements, LLC's breaches of the contract, Plaintiff Juergens suffered damages that are fully stated in paragraphs 177-178 of this 3rd amended complaint.

367.    Defendant Duncan's and Defendant Brickshire Settlements, LLC's breaches of the contract was intentional, willful and wanton, and justify the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens, individually, and in her capacity as the sole member of "1230 23rd Street, LLC," respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Defendant Dale E. Duncan and Defendant Brickshire Settlements, LLC, jointly and severally, as well as any other relief required in the interest of justice, including, but not limited to, declaring Defendant First Mount Vernon Industrial Loan Association Incorporated's a/k/a "First Mount Vernon Industrial Loan Association, Inc.'s" loan to Plaintiff Juergens and/or the "1230 23rd Street, LLC," all documents related to the "1230 23rd Street, LLC," the transfer of title to Plaintiff Juergens' condominium unit from Plaintiff Juergens to the "1230 23rd Street, LLC," and all documents set forth in paragraphs 127-128 of this 3rd amended complaint to be rescinded, null and *void ab initio*.

### Count XXIII – Breach of Fiduciary Duty
### (Loan Closing)
### (Defendant Duncan and Defendant Brickshire Settlements, LLC)

368.    The allegations contained in all preceding paragraphs of this 3rd amended complaint are incorporated herein as if fully stated.

369.    Defendant Duncan and Defendant Brickshire Settlements, LLC owed a fiduciary duty to Plaintiff Juergens to perform the closing on the loan from Defendant First Mount Vernon ILA, including using a proper and accurate accounting statement, ensuring the all loan documents comply with all relevant laws and statutes, notarizing and authenticating loan documents by a licensed notary, promptly disbursing funds associated with this loan, promptly filing loan documents and loan releases and conducting the settlement in a manner in accordance with all relevant laws and statutes.

370.    Defendant Duncan and Defendant Brickshire Settlements, LLC breached this fiduciary duty by failing to use a proper and accurate accounting statement, by failing to ensure that the all loan documents comply with all relevant laws and statutes, by failing to notarize and authenticate loan documents by a licensed notary, by failing to promptly disburse funds associated with this loan, by failing to promptly filing loan documents and loan releases and by failing to conduct the settlement in a manner in accordance with all relevant laws and statutes.

371.    Moreover, Defendant Duncan and Defendant Brickshire Settlements, LLC breached this fiduciary duty by using a HUD-1 settlement statement that did not accurately reflect the nature of the transaction, which was a refinancing of a personal consumer residential loan to Plaintiff Juergens.

372.    Additionally, assuming arguendo that Plaintiff Juergens, had, in fact, transferred title to her condominium unit to the "1230 23rd Street, LLC" prior to an extension of a loan to the "1230 23rd, Street, LLC, Defendant Duncan and Defendant Brickshire Settlements, LLC breached this fiduciary duty by paying "transfer" and "recordation" taxes to the District of Columbia Recorder of Deeds with regard to the transfer of title between Plaintiff Juergens and the "1230 23rd Street, LLC."

373.    Furthermore, by breaching this fiduciary duty, Defendant Duncan and Defendant Brickshire Settlements, LLC allowed Defendant First Mount Vernon ILA to fraudulently disguise the loan to Plaintiff Juergens as a commercial loan rather than, what was in reality, a personal consumer residential loan in order to charge Plaintiff Juergens a higher rate of interest and to circumvent District of Columbia mortgage, consumer and fair lending laws.

374.    As a direct and proximate result of Defendant Duncan's and Defendant Brickshire Settlements, LLC's breach of fiduciary duty, Plaintiff Juergens suffered damages that are fully stated in paragraphs 177-178 of this 3rd amended complaint.

375.    Defendant Duncan's and Defendant Brickshire Settlements, LLC's breaches of this fiduciary duty were intentional, willful and wanton, and justify the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens, individually, and in her capacity as the sole member of "1230 23rd Street, LLC," respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Defendant Dale E. Duncan and Defendant Brickshire Settlements, LLC, jointly and severally, as well as any other relief required in the interest of justice, including, but not limited to, declaring Defendant First Mount Vernon Industrial Loan Association Incorporated's a/k/a "First Mount Vernon Industrial Loan Association, Inc.'s" loan to Plaintiff Juergens and/or the "1230 23rd Street, LLC," all documents related to the "1230 23rd Street, LLC," the transfer of title to Plaintiff Juergens' condominium unit from Plaintiff Juergens to the "1230 23rd Street, LLC," and all documents set forth in paragraphs 127-128 of this 3rd amended complaint to be rescinded, null and *void ab initio*.

## Count XXIV – Negligence
## (Loan Closing)
## (Defendant Duncan and Defendant Brickshire Settlements, LLC)

376.    The allegations contained in all preceding paragraphs of this 3rd amended complaint are incorporated herein as if fully stated.

377.    Defendant Duncan and Defendant Brickshire Settlements, LLC owed a duty of care to Plaintiff Juergens to perform the closing on the loan from Defendant First Mount Vernon ILA, including using a proper and accurate accounting statement, ensuring the all loan documents comply with all relevant laws and statutes, notarizing and authenticating loan documents by a licensed notary, promptly disbursing funds associated with this loan, promptly filing loan documents and loan releases and conducting the settlement in a manner in accordance with all relevant laws and statutes.

378.    Defendant Duncan and Defendant Brickshire Settlements, LLC were negligent and breached this duty of care by failing to use a proper and accurate accounting statement, by failing to ensure that the all loan documents comply with all relevant laws and statutes, by failing to notarize and authenticate loan documents by a licensed notary, by failing to promptly disburse funds associated with this loan, by failing to promptly filing loan documents and loan releases and by failing to conduct the settlement in a manner in accordance with all relevant laws and statutes.

379.    Moreover, Defendant Duncan and Defendant Brickshire Settlements, LLC breached this duty by using a HUD-1 settlement statement that did not accurately reflect the nature of the transaction, which was a refinancing of a personal consumer residential loan to Plaintiff Juergens.

380.    Additionally, assuming arguendo that Plaintiff Juergens, had, in fact, transferred title to her condominium unit to the "1230 23rd Street, LLC" prior to an extension of a loan to the "1230 23rd, Street, LLC, Defendant Duncan and Defendant Brickshire Settlements, LLC breached this duty by paying "transfer" and "recordation" taxes to the District of Columbia Recorder of Deeds with regard to the transfer of title between Plaintiff Juergens and the "1230 23rd Street, LLC."

381.    Furthermore, by breaching this duty of care, Defendant Duncan and Defendant Brickshire Settlements, LLC allowed Defendant First Mount Vernon ILA to fraudulently disguise the loan to Plaintiff Juergens as a commercial loan rather than, what was in reality, a personal consumer residential loan in order to charge Plaintiff Juergens a higher rate of interest and to circumvent District of Columbia mortgage, consumer and fair lending laws.

382.    As a direct and proximate result of Defendant Duncan's and Defendant Brickshire Settlements, LLC's negligence, Plaintiff Juergens suffered damages that are fully stated in paragraphs 177-178 of this 3rd amended complaint.

383.    Defendant Duncan's and Defendant Brickshire Settlements, LLC's negligence was intentional, willful and wanton, and justifies the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens, individually, and in her capacity as the sole member of "1230 23rd Street, LLC," respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Defendant Dale E. Duncan and Defendant Brickshire Settlements, LLC, jointly and severally, as well as any other relief required in the interest of justice, including, but not limited to, declaring Defendant First Mount Vernon Industrial Loan Association Incorporated's a/k/a "First Mount Vernon Industrial Loan Association, Inc.'s" loan to Plaintiff Juergens and/or the "1230 23rd Street, LLC," all documents

related to the "1230 23rd Street, LLC," the transfer of title to Plaintiff Juergens' condominium unit from Plaintiff Juergens to the "1230 23rd Street, LLC," and all documents set forth in paragraphs 127-128 of this 3rd amended complaint to be rescinded, null and *void ab initio*.

### Count XXV – Conversion
### (Defendant First Mount Vernon ILA)

384.    The allegations contained in all preceding paragraphs of this 3rd amended complaint are incorporated herein as if fully stated.

385.    By fraudulently disguising its loan to Plaintiff Juergens as a commercial loan rather than, what was in reality, a personal consumer residential loan, Defendant First Mount Vernon ILA was able to charge Plaintiff Juergens a higher rate of interest and to circumvent District of Columbia mortgage, consumer and fair lending laws.

386.    By charging higher loan fees and rate of interest higher than permitted by District of Columbia law, Defendant First Mount Vernon ILA unlawfully exercised ownership, dominion and control over Plaintiff Juergens' personalty in denial or repudiation of Plaintiff Juergens' right to such property.

387.    As a direct and proximate result of Defendant First Mount Vernon ILA's conversion, Plaintiff Juergens suffered damages that are fully stated in paragraphs 177-178 of this 3rd amended complaint.

388.    Defendant First Mount Vernon ILA's conversion was intentional, willful and wanton, and justifies the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens, individually, and in her capacity as the sole member of "1230 23rd Street, LLC," respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Defendant First Mount Vernon Industrial Loan

Association Incorporated a/k/a "First Mount Vernon Industrial Loan Association, Inc.," as well as any other relief required in the interest of justice, including, but not limited to, declaring Defendant First Mount Vernon Industrial Loan Association Incorporated's a/k/a "First Mount Vernon Industrial Loan Association, Inc.'s" loan to Plaintiff Juergens and/or the "1230 23rd Street, LLC," all documents related to the "1230 23rd Street, LLC," the transfer of title to Plaintiff Juergens' condominium unit from Plaintiff Juergens to the "1230 23rd Street, LLC," and all documents set forth in paragraphs 127-128 of this 3rd amended complaint to be rescinded, null and *void ab initio*.

**Count XXVI – Fraud**
**(Defendant Bennett and Defendant Duncan)**

389.     The allegations contained in all preceding paragraphs of this 3rd amended complaint are incorporated herein as if fully stated.

390.     In their dealings with Plaintiff Juergens at the offices of Defendant First Mount Vernon ILA in early-August 2005 and again in the days leading up to the settlement on Defendant First Mount Vernon ILA's loan on August 31, 2005, Defendant Bennett and Defendant Duncan both made numerous false representations to Plaintiff Juergens, included, but not limited to statements that Defendant First Mount Vernon ILA's loan would be extended in accordance with all applicable laws and would result in a financial benefit to Plaintiff Juergens.

391.     Defendant Bennett and Defendant Duncan prepared documents associated with this loan that falsely stated that Plaintiff Juergens was living in Falls Church, Virginia when they knew or should have known that Plaintiff Juergens was living at 1230 23rd Street, N.W., Apt. 505, Washington, DC 20037.

392.     Defendant Bennett and Defendant Duncan prepared documents associated with this loan that falsely stated that Plaintiff Juergens would move out of her condominium unit and rent the

unit to a third party even though Defendant Bennett and Defendant Duncan knew or should have known that Plaintiff Juergens would not move out of the unit or rent the unit to a third party.

393.    Defendant Bennett and Defendant Duncan prepared documents associated with this loan that falsely stated that Plaintiff Juergens lived or worked in the Commonwealth of Virginia so that she could serve as the registered agent of "1230 23rd Street, LLC" even though Defendant Bennett and Defendant Duncan knew or should have known that Plaintiff Juergens neither lived nor worked in the Commonwealth of Virginia.

394.    Furthermore, Defendant Bennett and Defendant Duncan fraudulently disguised the loan to Plaintiff Juergens as a commercial loan rather than, what was in reality, a personal consumer residential loan in order to charge Plaintiff Juergens a higher rate of interest and to circumvent District of Columbia mortgage, consumer and fair lending laws.

395.    Defendant Bennett's and Defendant Duncan's false representations concerned material facts, specifically, the true nature of the $250,000.00 loan to Plaintiff Juergens as a commercial loan as opposed to the personal residential loan that Plaintiff Juergens sought from Defendant First Mount Vernon ILA.

396.    Defendant Bennett and Defendant Duncan made these representations and prepared these documents with actual knowledge that representations made and statements contained in the documents were false since Defendant Duncan and Defendant Bennett knew at the time that they made these statements that Defendant First Mount Vernon ILA was disguising a residential loan as a commercial loan and that Plaintiff Juergens had not moved out of her condominium unit..

397.    At the time Defendant Bennett and Defendant Duncan made these false representations to Plaintiff Juergens and prepared documents with false information contained thereon, it was with

87

the intent to deceive Plaintiff Juergens into entering into the loan from Defendant First Mount Vernon ILA.

398.   At all relevant times, Defendant Bennett and Defendant Duncan knew that Plaintiff Juergens would not received a residential loan from Defendant First Mount Vernon ILA, but Plaintiff Juergens would nevertheless rely upon the false statements in deciding whether to accept the loan from Defendant First Mount Vernon ILA or not.

399.   Plaintiff Juergens did, in fact, rely to her detriment on Defendant Bennett's and Defendant Duncan's false representations when she entered into the loan from Defendant First Mount Vernon ILA.

400.   In furtherance of their scheme, Defendant Duncan and Defendant Bennett submitted documents associated with this loan that contained false information, including statements that Plaintiff Juergens lived in Virginia when she actually lived in Washington, DC, that Plaintiff Juergens had monthly income, when in fact, she did not, and that Plaintiff Juergens intended to move out of her condominium unit and rent this unit to a third party when, in fact, she had no such intention.

401.   The fraudulent and wrongful acts committed by Defendant Bennett and Defendant Duncan were undertaken in furtherance of a common scheme to defraud Plaintiff Juergens and disguise the loan to Plaintiff Juergens as a commercial loan rather than, what was in reality, a personal consumer residential loan in order to charge Plaintiff Juergens a higher rate of interest and to circumvent District of Columbia mortgage, consumer and fair lending laws.

402.   As a direct and proximate result of Defendant Bennett's and Defendant Duncan's fraud, Plaintiff Juergens suffered damages that are fully stated in paragraphs 177-178 of this 3rd amended complaint.

403.    Defendant Bennett's and Defendant Duncan's fraudulent acts were intentional, willful and wanton, and justify the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens, individually, and in her capacity as the sole member of "1230 23rd Street, LLC," respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Defendant Arthur G. Bennett and Defendant Dale E. Duncan, jointly and severally, as well as any other relief required in the interest of justice, including, but not limited to, declaring Defendant First Mount Vernon Industrial Loan Association Incorporated's a/k/a "First Mount Vernon Industrial Loan Association, Inc.'s" loan to Plaintiff Juergens and/or the "1230 23rd Street, LLC," all documents related to the "1230 23rd Street, LLC," the transfer of title to Plaintiff Juergens' condominium unit from Plaintiff Juergens to the "1230 23rd Street, LLC," and all documents set forth in paragraphs 127-128 of this 3rd amended complaint to be rescinded, null and *void ab initio*.

### Count XXVII – Civil Conspiracy
### (Defendant Bennett and Defendant Duncan)

404.    The allegations contained in all preceding paragraphs of this 3rd amended complaint are incorporated herein as if fully stated.

405.    Defendant Bennett and Defendant Duncan formed a conspiracy whereby they fraudulently disguised Defendant First Mount Vernon ILA's loan to Plaintiff Juergens as a commercial loan rather than, what was in reality, a personal consumer residential loan in order to charge Plaintiff Juergens a higher rate of interest and to circumvent District of Columbia mortgage, consumer and fair lending laws.

406.    Defendant Bennett's role in the conspiracy was to entice Plaintiff Juergens into agreeing to borrowing money from Defendant First Mount Vernon ILA and obtaining financial information from Plaintiff Juergens in order to process the loan.

407.    Defendant Duncan's role in the conspiracy was to prepare documents establishing the "1230 23rd Street, LLC," and filing these documents with the Virginia State Corporation Commission, as well as acting as the settlement agent on the loan closing.

408.    The fraudulent and wrongful acts committed by Defendant Bennett and Defendant Duncan in connection with Defendant First Mount Vernon ILA's loan to Plaintiff Juergens were undertaken in furtherance of the conspirators' common scheme.

409.    As a direct and proximate result of Defendant Bennett's and Defendant Duncan's conspiracy, Plaintiff Juergens suffered damages that are fully stated in paragraphs 177-178 of this 3rd amended complaint.

410.    Defendant Bennett's and Defendant Duncan's actions in furtherance of their conspiracy were intentional, willful and wanton, and justify the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens, individually, and in her capacity as the sole member of "1230 23rd Street, LLC," respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Defendant Arthur G. Bennett and Defendant Dale E. Duncan, jointly and severally, as well as any other relief required in the interest of justice, including, but not limited to, declaring Defendant First Mount Vernon Industrial Loan Association Incorporated's a/k/a "First Mount Vernon Industrial Loan Association, Inc.'s" loan to Plaintiff Juergens and/or the "1230 23rd Street, LLC," all documents related to the "1230 23rd Street, LLC," the transfer of title to Plaintiff Juergens' condominium unit from Plaintiff Juergens

to the "1230 23rd Street, LLC," and all documents set forth in paragraphs 127-128 of this 3rd amended complaint to be rescinded, null and *void ab initio*.

<u>**Count XXVIII – Violation D.C. Code § 28-3301, et seq.**</u>
<u>**(Usury)**</u>
<u>**(Defendant First Mount Vernon ILA)**</u>

411.    The allegations contained in all preceding paragraphs of this 3rd amended complaint are incorporated herein as if fully stated.

412.    Defendant First Mount Vernon ILA fraudulently disguised the loan to Plaintiff Juergens as a commercial loan rather than, what was in reality, a personal consumer residential loan in order to charge Plaintiff Juergens a higher rate of interest and to circumvent District of Columbia mortgage, consumer and fair lending laws.

413.    This loan was, on the face, a loan of $250,000.00 with interest at the rate of 18%, an interest rate of 24% "should the loan ever be in default," a 2.5% "administrative/reinstatement fee" on the "principal balance and all outstanding interest and penalties" charged "in the event of default," a 4% "loan origination fee," mandatory prepaid interest reserve paid to Defendant First Mount Vernon ILA in the amount of $67,526.31, monthly interest only payments of $3,750.00 to be paid from October 1, 2005 to September 1, 2007, the entire balance of principal and interest due and payable on September 1, 2007, a "3% prepayment penalty during the first year of the loan" and "an exit fee equal to one percent of the loan amount when this loan is paid in full and released."

414.    Therefore, when the loan origination fee, mandatory prepaid interest and exit fee are added to the stated interest rate, the effective interest rate on Defendant First Mount Vernon ILA's loan to Plaintiff Juergens is 42.239%.

91

415.    Thus, this loan violates D.C. Code § 28-3301, et seq. since it is a loan in excess of 24% per annum.

416.    Moreover, this loan violates D.C. Code § 28-3301 (f) (3) since Defendant First Mount Vernon ILA failed to furnish Plaintiff Juergens "a separate statement, in writing, which complies with the disclosure provisions of the Truth-in-Lending Act, and the regulations and interpretations thereunder."  [citations omitted].

417.    Therefore, pursuant to D.C. Code § 28-3303, Defendant First Mount Vernon ILA must "forfeit the whole of the interest so contracted to be received."

418.    Pursuant to D.C. Code § 28-3304, Plaintiff Juergens is authorized to bring this suit and pursuant to D.C. Code § 28-3305, Plaintiff Juergens is entitled to a credit of interest paid that has the effect of reducing her principal balance on the loan from Defendant First Mount Vernon ILA.

419.    As a direct and proximate result of Defendant First Mount Vernon ILA's usurious actions, Plaintiff Juergens suffered damages that are fully stated in paragraphs 177-178 of this 3rd amended complaint.

420.    Defendant First Mount Vernon ILA's usurious actions were intentional, willful and wanton, and justify the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens, individually, and in her capacity as the sole member of "1230 23rd Street, LLC," respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Mount Vernon Industrial Loan Association Incorporated a/k/a "First Mount Vernon Industrial Loan Association, Inc.", jointly and severally, as well as any other relief required in the interest of justice, including, but not limited to, declaring Defendant First Mount Vernon Industrial Loan Association Incorporated's a/k/a "First

Mount Vernon Industrial Loan Association, Inc.'s" loan to Plaintiff Juergens and/or the "1230 23rd Street, LLC," all documents related to the "1230 23rd Street, LLC," the transfer of title to Plaintiff Juergens' condominium unit from Plaintiff Juergens to the "1230 23rd Street, LLC," and all documents set forth in paragraphs 127-128 of this 3rd amended complaint to be rescinded, null and *void ab initio*.

**Count XXIX – Violation D.C. Code §26-901, et seq.**
**(Loan Shark Act)**
**(Defendant First Mount Vernon ILA)**

421.    The allegations contained in all preceding paragraphs of this 3rd amended complaint are incorporated herein as if fully stated.

422.    Defendant First Mount Vernon ILA fraudulently disguised the loan to Plaintiff Juergens as a commercial loan rather than, what was in reality, a personal consumer residential loan in order to charge Plaintiff Juergens a higher rate of interest and to circumvent District of Columbia mortgage, consumer and fair lending laws.

423.    D.C. Code §26-901, et seq., makes it "unlawful and illegal to engage in the business of loaning money in the District of Columbia upon which a rate of interest greater than 6% per annum is charged on any security of any kind, direct or collateral, tangible or intangible, without procuring license." See D.C. Code §26-901.

424.    In addition, D.C. Code §26-905 states that every lender must "furnish the borrower a written, typewritten, or printed statement at the time the loan is made, showing, in English, in clear and distinct terms, the amount of the loan, the date when loaned and when due, the person to whom the loan is made, the name of the lender, [and] the amount of interest charged [and] shall give the borrower a plain and complete receipt for all payments made on account of the loan at the time such payments are made."

425.    D.C. Code §26-905 also states that "any person contracting, directly or indirectly, for, or receiving a greater rate of interest than that fixed in this chapter [D.C. Code §26-901, et seq.], shall forfeit all interest so contracted for or received; and in addition thereto shall forfeit to the borrower a sum of money, to be deducted from the amount due for principal, equal to one-fourth of the principal sum."

426.    D.C. Code §26-909 further states that it is "unlawful to incorporate any provision for liquidated or other damages as a penalty for any default or forfeiture thereunder."

427.    Defendant First Mount Vernon ILA did not furnish Plaintiff Juergens with a statement in conformity with D.C. Code §26-905 that showed "in clear and distinct terms, the amount of the loan, the date when loaned and when due, the person to whom the loan is made, the name of the lender, [or] the amount of interest charged."

428.    Defendant First Mount Vernon ILA did not furnish Plaintiff Juergens with a "plain and complete receipt" in conformity with D.C. Code §26-905 "for all payments made on account of the loan at the time such payments are made."

429.    Pursuant to D.C. Code §26-905. Plaintiff Juergens is entitled to a return of all interest contracted for or received and one fourth of the principal of the loan.

430.    D.C. Code §26-907 provides a civil remedy for violation of D.C. Code §26-901, et seq.

431.    As a direct and proximate result of Defendant First Mount Vernon ILA's violations of D.C. Code §26-901, et seq., Plaintiff Juergens suffered damages that are fully stated in paragraphs 177-178 of this 3rd amended complaint.

432.    Defendant First Mount Vernon ILA's violations of D.C. Code §26-901, et seq. were intentional, willful and wanton, and justify the imposition of punitive damages.

94

WHEREFORE, Plaintiff Mary Juergens, individually, and in her capacity as the sole member of "1230 23rd Street, LLC," respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Mount Vernon Industrial Loan Association Incorporated a/k/a "First Mount Vernon Industrial Loan Association, Inc.," as well as any other relief required in the interest of justice, including, but not limited to, declaring Defendant First Mount Vernon Industrial Loan Association Incorporated's a/k/a "First Mount Vernon Industrial Loan Association, Inc.'s" loan to Plaintiff Juergens and/or the "1230 23rd Street, LLC," all documents related to the "1230 23rd Street, LLC," the transfer of title to Plaintiff Juergens' condominium unit from Plaintiff Juergens to the "1230 23rd Street, LLC," and all documents set forth in paragraphs 127-128 of this 3rd amended complaint to be rescinded, null and *void ab initio*.

### Count XXX – Violation D.C. Code §26-1151.01, et seq.
### (Mortgage Loan Protection Act)
### (Defendant First Mount Vernon and Defendant Bennett)

433.    The allegations contained in all preceding paragraphs of this 3rd amended complaint are incorporated herein as if fully stated.

434.    At all relevant times, Plaintiff Juergens was a "borrower" as defined in D.C. Code §26-1151.01 (4) as she is an

> accommodation party, borrower, co-borrower, cosigner, co-maker, obligor, mortgagor, or guarantor obligated to repay a loan that is secured by a lien instrument.

435.    At all relevant times, Defendant First Mount Vernon ILA and Defendant Bennett were "lenders" as defined in D.C. Code §26-1151.01 (11) as Defendant First Mount Vernon ILA was a "person to whom the obligation is initially payable, either under the terms of the note or

contract, or by agreement if there is no note or contract" and as Defendant Bennett is a

"mortgage brokers" as defined in D.C. Code §26-1151.01 (13) and D.C. Code §26-1101 (10).

436.    D.C. Code §26-1151.01 (7) (A) defines the term "covered loan" as

> a mortgage loan, secured by property located in the District (including an open-end line of credit, but not including a mortgage loan insured or guaranteed by a state or local authority, the District of Columbia Housing Finance Agency, the Federal Housing Administration, or the Department of Veteran Affairs, or a reverse mortgage transaction), in which the terms of the mortgage loan exceed one or more of the following thresholds:

> (i)    The loan is secured by a first mortgage on the borrower's principal dwelling and the annual percentage rate at closing will exceed by more than 6 percentage points the yield on United States Treasury securities having comparable periods of maturity to the loan maturity measured as of the 15th day of the month immediately preceding the month in which the application for the residential mortgage loan is received by the creditor;

> (ii)    The loan is secured by a junior mortgage on the borrower's principal dwelling and the annual percentage rate at closing will exceed by more than 7 percentage points the yield on United States Treasury securities having comparable periods of maturity to the loan maturity measured as of the 15th day of the month immediately preceding the month in which the application for the residential mortgage loan is received by the creditor; or

> (iii)    The origination/discount points and fees payable by the borrower at or before loan closing exceed 5% of the total loan amount.

437.    Defendant First Mount Vernon ILA and Defendant Bennett made a "covered loan" to

Plaintiff Juergens that violated D.C. Code §26-1152.02 since

> a.    at the time the "covered loan" closed, Plaintiff Juergens could not have "reasonably be expected to make the scheduled payments" pursuant to D.C. Code §26-1152.02 (a) because of Plaintiff Juergens'

>> 1.    inability to make payments of interest and principal on the "covered loan;"

>> 2.    lack of verifiable employment;

>> 3.    lack of verifiable current income;

>> 4.    lack of verifiable expected income;

     5.     extensive current financial obligations; and

     6.     lack of other financial resources (other than Plaintiff Juergens' equity in the dwelling that secured the repayment of the "covered loan."

438.    In addition, Defendant First Mount Vernon ILA and Defendant Bennett made a "covered loan" to Plaintiff Juergens that violated D.C. Code §26-1152.02 (a) (2) because they unlawfully considered Plaintiff Juergens' "equity interest in the residential real property which secures repayment of the 'covered loan.'"

439.    In addition, Defendant First Mount Vernon ILA and Defendant Bennett made a "covered loan" to Plaintiff Juergens that violated D.C. Code §26-1152.02 (a) (3) because this loan included "payment terms under which the aggregate amount of the scheduled payments will not fully amortize the outstanding principal balance," and Plaintiff Juergens would not have been able to refinance that "covered loan" "without penalty, hardship or material loss of equity."

440.    For purposes of D.C. Code §26-1152.02 (c), Plaintiff Juergens' "gross income" "did not exceed 120% of median family income" at the time she closed on the loan from Defendant First Mount Vernon ILA.

441.    Defendant First Mount Vernon ILA and Defendant Bennett made a "covered loan" to Plaintiff Juergens that violated D.C. Code §26-1152.02 (c) since they failed to verify Plaintiff Juergens' "current and expected income, current debts, current assets, and employment" "in accordance with standard residential mortgage lending industry practices to underwrite a loan secured by a residential lien instrument."

442.    Defendant First Mount Vernon ILA and Defendant Bennett violated D.C. Code §26-1152.10 (c) by "charg[ing] and retain[ing] fees paid by the borrower in making a 'covered loan'

which are (1) for services that are not actually performed; . . . (3) in violation of the Real Estate Procedures Settlement Act of 1974, 12 U.S.C. § 2601, et seq.

443.    Defendant First Mount Vernon ILA and Defendant Bennett violated D.C. Code §26-1152.07 by failing to "report Plaintiff Juergens' favorable payment history and information to a nationally recognized credit-reporting agency at least once every 12 months."

444.    Defendant First Mount Vernon ILA and Defendant Bennett violated D.C. Code §26-1152.09 by making "a covered loan that includes a provision that increases the covered loan's interest rate upon a default."

445.    Defendant First Mount Vernon ILA and Defendant Bennett violated D.C. Code §26-1152.10 (c) by failing to send Plaintiff Juergens a "Red Flag Warning Disclosure Notice" pursuant to D.C. Code §26-1151.11 at least three days prior to the closing of the loan.

446.    Defendant First Mount Vernon ILA and Defendant Bennett violated D.C. Code §26-1152.16 by making a "covered loan that includes terms under which any periodic payments required under the loan are paid in advance from loan proceeds."

447.    Defendant First Mount Vernon ILA and Defendant Bennett violated D.C. Code §26-1152.19 by failing to inform Plaintiff Juergens of her right to obtain counseling in connection with a "covered loan."

448.    Additionally, Defendant First Mount Vernon ILA and Defendant Bennett violated D.C. Code §26-1152.21 by failing to submit a "loan package" regarding the George Owen loan to Plaintiff Juergens to the Mayor of the District of Columbia.

449.    Pursuant to D.C. Code §26-1153.01, Plaintiff Juergens may recover damages against Defendant First Mount Vernon ILA and Defendant Bennett in connection with Defendant First

Mount Vernon ILA's and Defendant Bennett's violations of D.C. Code §26-1151.01, et seq. and seek actual damages as well as reasonable attorney's fees and costs.

450.    As a direct and proximate result of Defendant First Mount Vernon ILA's and Defendant Bennett's violations of D.C. Code § 26-1151.01, et seq., Plaintiff Juergens suffered damages that are fully stated in paragraphs 177-178 of this 3rd amended complaint.

451.    Defendant First Mount Vernon ILA's and Defendant Bennett's violations of D.C. Code § 26-1151.01, et seq. were intentional, willful and wanton, and justify the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens, individually, and in her capacity as the sole member of "1230 23rd Street, LLC," respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Mount Vernon Industrial Loan Association Incorporated a/k/a "First Mount Vernon Industrial Loan Association, Inc." and Defendant Arthur G. Bennett, jointly and severally, as well as any other relief required in the interest of justice, including, but not limited to, declaring Defendant First Mount Vernon Industrial Loan Association Incorporated's a/k/a "First Mount Vernon Industrial Loan Association, Inc.'s" loan to Plaintiff Juergens and/or the "1230 23rd Street, LLC," all documents related to the "1230 23rd Street, LLC," the transfer of title to Plaintiff Juergens' condominium unit from Plaintiff Juergens to the "1230 23rd Street, LLC," and all documents set forth in paragraphs 127-128 of this 3rd amended complaint to be rescinded, null and *void ab initio*.

**Count XXXI – Violation D.C. Code §26-1101, et seq.**
**(Mortgage Lender and Broker Act)**
**(Defendant First Mount Vernon and Defendant Bennett)**

452.    The allegations contained in all preceding paragraphs of this 3rd amended complaint are

incorporated herein as if fully stated.

453.    At all relevant times, Plaintiff Juergens was a "borrower" as defined in D.C. Code § 26-

1101 (1) as she is a

> person who submits an application for a loan secured by a first or subordinate
> mortgage or deed of trust on a single to 4-family home to be occupied by the
> borrower as the borrower's primary residence.

454.    At all relevant times, the deed of trust regarding Defendant First Mount Vernon ILA's

loan to Plaintiff Juergens was an "interest in real property" as defined in D.C. Code § 26-1101

(6) as it is

> (A)    A confessed judgment note or consent judgment required or obtained by
> any person acting as a mortgage lender or mortgage broker for the purpose of
> acquiring a lien on residential real property;
>
> (B)    A sale and leaseback required or obtained by any person acting as a
> mortgage lender or mortgage broker for the purpose of creating a lien on
> residential real property;
>
> (C)    A mortgage, deed of trust, or lien other than a judgment lien, on residential
> real property; and
>
> (D)    Any other security interest that has the effect of creating a lien on
> residential real property in the District of Columbia.

455.    At all relevant times, Defendant First Mount Vernon ILA and Defendant Bennett were

"mortgage brokers" as defined in D.C. Code § 26-1101 (10) as they were "persons"

> who, for compensation or gain, or in the expectation of compensation or gain,
> either directly or indirectly accepts or offers to accept an application for a
> mortgage loan, solicits or offers to solicit a mortgage loan on behalf of a
> borrower, or negotiates or offers to negotiate the terms and conditions of a
> mortgage loan on behalf of a lender.

456.    At all relevant times, Defendant First Mount Vernon ILA was a  "mortgage lender" as defined in D.C. Code § 26-1101 (11) as it was a "person who makes a mortgage loan to any person."

457.    At all relevant times, the Defendant First Mount Vernon ILA loan to Plaintiff Juergens was a "mortgage loan" as defined in D.C. Code § 26-1101 (12) as it is

> loan or other extension of credit that is secured, in whole or in part, by any interest in residential real property in the District of Columbia.

458.    At all relevant times, Plaintiff Juergens' condominium unit located at 1220 23rd Street, N.W., Apt. 505, Washington, DC  20037 was "residential real property" as defined in D.C. Code § 26-1101 (16) as it is an

> owner-occupied real property located in the District of Columbia, which property has a dwelling on it designed principally as a residence with accommodations for not more than 4 families.

459.    As "mortgage brokers" and/or "mortgage lenders" as defined in D.C. Code § 26-1101, Defendant First Mount Vernon ILA and Defendant Bennett were required to retain

> for at least 3 years after a mortgage loan is made, the original contract for his or her compensation, a copy of the settlement statement, an account of fees received in connection with the loan, and such other papers or records as may be required by rule or regulation.

pursuant to D.C. Code § 26-1109 (d), but failed to do so.

460.    As "mortgage brokers" and/or "mortgage lenders" as defined in D.C. Code § 26-1101, Defendant First Mount Vernon ILA and Defendant Bennett were required to provide Plaintiff Juergens with a financing statement executed by the lender pursuant to D.C. Code § 26-1113 (a) that shall include

> (A)    the term and principal amount of the loan;

> (B)    an explanation of the type of mortgage loan being offered;

(C)      the rate of interest that will apply to the loan and, if the rate is subject to change, or is a variable rate, or is subject to final determination at a future date based on some objective standard, a specific statement of those facts;

(D)      the points and all fees, if any, to be paid by the borrower or the seller, or both; and

(E)      the term during which the financing agreement remains in effect,

and deliver this financing statement to Plaintiff Juergens at least 72 hours before the time of the settlement agreed to by the parties along with a financing statement that includes

(A)      the effective fixed interest rate or initial interest rate that will be applied to the loan; and

(B)      a restatement of all the remaining unchanged provisions of the financing agreement.

461.    Neither Defendant First Mount Vernon ILA and Defendant Bennett provided Plaintiff Juergens with any financing statement at all pursuant to D.C. Code § 26-1113.

462.    Defendant First Mount Vernon ILA and Defendant Bennett violated D.C. Code § 26-1114 (a) (6) by brokering and/or extending a mortgage loan to Plaintiff Juergens with the intent to foreclose on the borrower's property since there was a lack of probability that Plaintiff Juergens would make full repayment of the George Owen loan

463.    In addition, Defendant First Mount Vernon ILA and Defendant Bennett violated D.C. Code § 26-1114 (a) (7) by failing to provide Plaintiff Juergens with an accurate settlement statement as required by the Real Estate Settlement Procedures Act, 12 U.S.C. § 2610, et seq. or disclosures required by the Truth in Lending Act, 15 U.S.C. § 1601, et seq. and Regulation Z, 12 C.F.R. Part 226.

464.    Defendant First Mount Vernon ILA and Defendant Bennett also violated D.C. Code § 26-1114 (a) (9) by engaging in predatory lending activity in violation of D.C. Code § 26-1151.01, et seq.

465.    As a direct and proximate result of Defendant First Mount Vernon ILA's and Defendant Bennett's violations of D.C. Code § 26-1101, et seq., Plaintiff Juergens suffered damages that are fully stated in paragraphs 177-178 of this 3rd amended complaint.

466.    Defendant First Mount Vernon ILA's and Defendant Bennett's violations of D.C. Code §26-901, et seq. were intentional, willful and wanton, and justify the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens, individually, and in her capacity as the sole member of "1230 23rd Street, LLC," respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Mount Vernon Industrial Loan Association Incorporated a/k/a "First Mount Vernon Industrial Loan Association, Inc." and Defendant Arthur G. Bennett, jointly and severally, as well as any other relief required in the interest of justice, including, but not limited to, declaring Defendant First Mount Vernon Industrial Loan Association Incorporated's a/k/a "First Mount Vernon Industrial Loan Association, Inc.'s" loan to Plaintiff Juergens and/or the "1230 23rd Street, LLC," all documents related to the "1230 23rd Street, LLC," the transfer of title to Plaintiff Juergens' condominium unit from Plaintiff Juergens to the "1230 23rd Street, LLC," and all documents set forth in paragraphs 127-128 of this 3rd amended complaint to be rescinded, null and *void ab initio*.

### Count XXXII – Violation of D.C. Code §28-3901, et seq.) (Consumer Protection Procedures Act) (Defendant First Mount Vernon ILA, Defendant Bennett, Defendant Duncan and Defendant Brickshire Settlements, LLC)

467.    The allegations contained in all preceding paragraphs of this 3rd amended complaint are incorporated herein as if fully stated.

468.    At all relevant times, Plaintiff Juergens was a "consumer" as defined in D.C. Code § 28-3901 (a) (2) as she is a

> a person who does or would purchase, lease (from), or receive consumer goods or services, including a co-obligor or surety, or a person who does or would provide the economic demand for a trade practice.

469.    At all relevant times, Defendant First Mount Vernon ILA, Defendant Bennett, Defendant Duncan and Defendant Brickshire Settlements, LLC were "merchants" as defined in D.C. Code § 28-3901 (a) (3) as they are persons

> whether organized or operating for profit or for a nonprofit purpose, who in the ordinary course of business does or would sell, lease (to), or transfer, either directly or indirectly, consumer goods or services, or a person who in the ordinary course of business does or would supply the goods or services which are or would be the subject matter of a trade practice.

470.    At all relevant times, Defendant First Mount Vernon ILA loan to Plaintiff Juergens, the services provided by Defendant Bennett in originating the loan, the services provided by Defendant Duncan in establishing the "1230 23rd Street, LLC" and in closing the loan and the services provided by Defendant Brickshire Settlements, LLC in closing the loan were "goods or services" as defined in D.C. Code § 28-3901 (a) (7) since they are

> any and all parts of the economic output of society, at any stage or related or necessary point in the economic process, and includes consumer credit, franchises, business opportunities, real estate transactions, and consumer services of all types.

471.    At all relevant times, Defendant First Mount Vernon ILA loan to Plaintiff Juergens, the services provided by Defendant Bennett in originating the loan, the services provided by Defendant Duncan in establishing the "1230 23rd Street, LLC" and in closing the loan and the services provided by Defendant Brickshire Settlements, LLC in closing the loan were "trade practices" as defined in D.C. Code § 28-3901 (a) (6) since these were acts

which does or would create, alter, repair, furnish, make available, provide information about, or, directly or indirectly, solicit or offer for or effectuate, a sale, lease or transfer, of consumer goods or services.

472.    Defendant First Mount Vernon ILA, Defendant Bennett, Defendant Duncan and Defendant Brickshire Settlements, LLC violated D.C. Code §28-3904 (e) by misrepresenting a material fact that had a tendency to mislead Plaintiff Juergens, specifically, by fraudulently disguising the loan to Plaintiff Juergens as a commercial loan rather than, what was in reality, a personal consumer residential loan in order to charge Plaintiff Juergens a higher rate of interest and to circumvent District of Columbia mortgage, consumer and fair lending laws and by providing Plaintiff Juergens with a false, incomplete and deceptive HUD-1 settlement statement.

473.    Defendant First Mount Vernon ILA, Defendant Bennett, Defendant Duncan and Defendant Brickshire Settlements, LLC violated D.C. Code §28-3904 (f) by failing to state a material fact if such failure tends to mislead, specifically, by fraudulently disguising the loan to Plaintiff Juergens as a commercial loan rather than, what was in reality, a personal consumer residential loan in order to charge Plaintiff Juergens a higher rate of interest and to circumvent District of Columbia mortgage, consumer and fair lending laws and by providing Plaintiff Juergens with a false, incomplete and deceptive HUD-1 settlement statement.

474.    Defendant First Mount Vernon ILA, Defendant Bennett, Defendant Duncan and Defendant Brickshire Settlements, LLC violated D.C. Code §28-3904 (z-1) by violating the District of Columbia Consumer Credit Service Organization Act, D.C. Code § 28-4601, et seq.

475.    Defendant First Mount Vernon ILA's, Defendant Bennett's, Defendant Duncan's and Defendant Brickshire Settlements, LLC's misrepresentations of material facts, or alternatively, their failure to state material facts, were made with knowledge that they were false, or alternatively, that the omission would create a false understanding in Plaintiff Juergens' mind.

476.    Plaintiff Juergens justifiably relied on Defendant First Mount Vernon ILA's, Defendant Bennett's, Defendant Duncan's and Defendant Brickshire Settlements, LLC's misrepresentations and/or failures to state material facts when she entered into and closed on the loan from Defendant First Mount Vernon ILA.

477.    Defendant First Mount Vernon ILA's, Defendant Bennett's, Defendant Duncan's and Defendant Brickshire Settlements, LLC's conduct and actions with regard to the loan from Defendant First Mount Vernon ILA constitutes "unfair and deceptive practices" within the meaning set forth in D.C. Code §28-3901, et seq.

478.    Defendant First Mount Vernon ILA, Defendant Bennett, Defendant Duncan and Defendant Brickshire Settlements, LLC each agreed, explicitly or tacitly, to participate with other Defendants in the acts alleged above, and their acts were in furtherance of a common scheme to wrongfully divest Plaintiff Juergens of proceeds from the loan from Defendant First Mount Vernon ILA and interest paid thereon for Defendants' financial gain.

479.    Each of the Defendants' acts alleged above aided the other Defendants, and was in furtherance of a common scheme to wrongfully divest Plaintiff Juergens of proceeds from the loan from Defendant First Mount Vernon ILA and interest paid thereon for Defendants' financial gain.

480.    Pursuant to D.C. Code §28-3905 (k), Plaintiff Juergens is entitled to recover damages against Defendant First Mount Vernon ILA, Defendant Bennett, Defendant Duncan and Defendant Brickshire Settlements, LLC for their violations of D.C. Code §28-3901, et seq., including actual damages, treble damages, or $1,500 per violation, whichever is greater, reasonable attorney's fees and punitive damages.

481.    As a direct and proximate result of Defendant First Mount Vernon ILA's, Defendant Bennett's, Defendant Duncan's and Defendant Brickshire Settlements, LLC's violations of D.C. Code § 28-3901, <u>et</u> <u>seq</u>., Plaintiff Juergens suffered damages that are fully stated in paragraphs 177-178 of this 3rd amended complaint.

482.    Defendant First Mount Vernon ILA's, Defendant Bennett's, Defendant Duncan's and Defendant Brickshire Settlements, LLC's violations of D.C. Code § 28-3901, <u>et</u> <u>seq</u>., were intentional, willful and wanton, and justify the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens, individually, and in her capacity as the sole member of "1230 23rd Street, LLC," respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Mount Vernon Industrial Loan Association Incorporated a/k/a "First Mount Vernon Industrial Loan Association, Inc," Defendant Arthur G. Bennett, Defendant Dale E. Duncan and Defendant Brickshire Settlements, LLC, jointly and severally, as well as any other relief required in the interest of justice, including, but not limited to, declaring Defendant First Mount Vernon Industrial Loan Association Incorporated's a/k/a "First Mount Vernon Industrial Loan Association, Inc.'s" loan to Plaintiff Juergens and/or the "1230 23rd Street, LLC," all documents related to the "1230 23rd Street, LLC," the transfer of title to Plaintiff Juergens' condominium unit from Plaintiff Juergens to the "1230 23rd Street, LLC," and all documents set forth in paragraphs 127-128 of this 3rd amended complaint to be rescinded, null and *void ab initio*.

**Count XXXIII – Violation D.C. Code §28-4601, et seq.**
**(Consumer Credit Service Organization Act)**
**(Defendant First Mount Vernon, Defendant Bennett and Defendant Duncan)**

483.    The allegations contained in all preceding paragraphs of this 3rd amended complaint are

incorporated herein as if fully stated.

484.    At all relevant times, Plaintiff Juergens was a "consumer" as defined in D.C. Code § 28-

4601 (1) as she is a

> a person who is solicited to purchase or who purchases the services of a consumer
> credit service organization.

485.    At all relevant times, Defendant First Mount Vernon ILA, Defendant Bennett and

Defendant Duncan were "consumer credit service organizations" as defined in D.C. Code § 28-

4601 (2) (A) as they are all persons

> who, with respect to the extension of credit by others, sells, provides, performs, or
> represents that he or she can sell, provide, or perform, in return for the payment of
> money or other valuable consideration, any of the following services:
>
> > (i)     Improvement of a consumer's credit record, history, or rating;
> >
> > (ii)    Obtain an extension of credit for a consumer; or
> >
> > (iii)   Provide advice or assistance to a consumer regarding any matter
> > related to the consumer's personal, household, or family credit.

486.    At all relevant times, Defendant Bennett and Defendant Duncan were "consumer credit

service organizations" as defined in D.C. Code § 28-4601 (2) (B) and/or D.C. Code § 28-4601

(2) (B) as they are both persons who are a "salesperson, agent, or representative of a consumer

credit service organization" or persons who are an "independent agent who sells or attempts to

sell the services of a consumer credit service organization."

487.    Defendant First Mount Vernon ILA, Defendant Bennett and Defendant Duncan made and

used false and misleading representations, failed to disclose material facts, and directly or

108

indirectly engaged in acts and in a course of business to defraud or deceive Plaintiff Juergens in violation of D.C. Code §28-4603 (4), with respect to Defendant First Mount Vernon ILA's loan to Plaintiff Juergens, specifically, by fraudulently disguising the loan to Plaintiff Juergens as a commercial loan rather than, what was in reality, a personal consumer residential loan in order to charge Plaintiff Juergens a higher rate of interest and to circumvent District of Columbia mortgage, consumer and fair lending laws and by providing Plaintiff Juergens with a false, incomplete and deceptive HUD-1 settlement statement.

488.   Defendant First Mount Vernon ILA, Defendant Bennett and Defendant Duncan violated D.C. Code §28-4605 by failing to provide Plaintiff Juergens with a disclosure statement in conformity with D.C. Code §28-4605 (b).

489.   Defendant First Mount Vernon ILA, Defendant Bennett and Defendant Duncan violated D.C. Code §28-4605 by failing to provide Plaintiff Juergens with a written contract in conformity with D.C. Code §28-4605 (c) and notice of Plaintiff Juergens' right to cancellation in conformity with D.C. Code §28-4605 (d).

490.   Pursuant to D.C. Code §28-4607 (c), Plaintiff Juergens is entitled to recover damages against Defendant First Mount Vernon ILA, Defendant Bennett and Defendant Duncan for their violations of D.C. Code §28-4601, et seq., including actual damages, which, "in no case be less than the amount paid by the consumer to the consumer credit service organization," reasonable attorney's fees and "actual costs incurred to recover the damages" and punitive damages.

491.   As a direct and proximate result of Defendant First Mount Vernon ILA's, Defendant Bennett's and Defendant Duncan's violations of D.C. Code § 28-4601, et seq., Plaintiff Juergens suffered damages that are fully stated in paragraphs 177-178 of this 3rd amended complaint.

492.    Defendant First Mount Vernon ILA's, Defendant Bennett's and Defendant Duncan's violations of D.C. Code § 28-4601, et seq., were intentional, willful and wanton, and justify the imposition of punitive damages.

WHEREFORE, Plaintiff Mary Juergens, individually, and in her capacity as the sole member of "1230 23rd Street, LLC," respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Mount Vernon Industrial Loan Association Incorporated a/k/a "First Mount Vernon Industrial Loan Association, Inc," Defendant Arthur G. Bennett and Defendant Dale E. Duncan, jointly and severally, as well as any other relief required in the interest of justice, including, but not limited to, declaring Defendant First Mount Vernon Industrial Loan Association Incorporated's a/k/a "First Mount Vernon Industrial Loan Association, Inc.'s" loan to Plaintiff Juergens and/or the "1230 23rd Street, LLC," all documents related to the "1230 23rd Street, LLC," the transfer of title to Plaintiff Juergens' condominium unit from Plaintiff Juergens to the "1230 23rd Street, LLC," and all documents set forth in paragraphs 127-128 of this 3rd amended complaint to be rescinded, null and *void ab initio*.

## Count XXXIV– Respondeat Superior
## (Defendant First Mount Vernon ILA)

493.    The allegations contained in all preceding paragraphs of this 3rd amended complaint are incorporated herein as if fully stated.

494.    At all relevant times, Defendant Bennett and Defendant Duncan were the agents, servants or employees of Defendant First Mount Vernon ILA.

495.    At all relevant times, Defendant Bennett and Defendant Duncan were acting within the scope of their employment with Defendant First Mount Vernon ILA.

496.     Therefore, under the doctrine of respondeat superior, Defendant First Mount Vernon ILA is responsible for Defendant Bennett's and Defendant Duncan's tortuous conduct.

WHEREFORE, Plaintiff Mary Juergens, individually, and in her capacity as the sole member of "1230 23rd Street, LLC," respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Defendant First Mount Vernon Industrial Loan Association Incorporated a/k/a "First Mount Vernon Industrial Loan Association, Inc.," as well as any other relief required in the interest of justice, including, but not limited to, declaring Defendant First Mount Vernon Industrial Loan Association Incorporated's a/k/a "First Mount Vernon Industrial Loan Association, Inc.'s" loan to Plaintiff Juergens and/or the "1230 23rd Street, LLC," all documents related to the "1230 23rd Street, LLC," the transfer of title to Plaintiff Juergens' condominium unit from Plaintiff Juergens to the "1230 23rd Street, LLC," and all documents set forth in paragraphs 127-128 of this 3rd amended complaint to be rescinded, null and *void ab initio*.

### Count XXXV – Respondeat Superior
### (Defendant Brickshire Settlements, LLC)

497.     The allegations contained in all preceding paragraphs of this 3rd amended complaint are incorporated herein as if fully stated.

498.     At all relevant times during the closing on Defendant First Mount Vernon ILA's loan to Plaintiff Juergens, Defendant Duncan was the agent, servant or employee of Defendant Brickshire Settlements, LLC.

499.     At all relevant times during the closing on Defendant First Mount Vernon ILA's loan to Plaintiff Juergens, Defendant Duncan was acting within the scope of his employment with Defendant Brickshire Settlements, LLC.

500.    Therefore, under the doctrine of respondeat superior, Defendant Brickshire Settlements, LLC is responsible for Defendant Duncan's tortuous conduct.

WHEREFORE, Plaintiff Mary Juergens, individually, and in her capacity as the sole member of "1230 23rd Street, LLC," respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Defendant Brickshire Settlements, LLC, as well as any other relief required in the interest of justice, including, but not limited to, declaring Defendant First Mount Vernon Industrial Loan Association Incorporated's a/k/a "First Mount Vernon Industrial Loan Association, Inc.'s" loan to Plaintiff Juergens and/or the "1230 23rd Street, LLC," all documents related to the "1230 23rd Street, LLC," the transfer of title to Plaintiff Juergens' condominium unit from Plaintiff Juergens to the "1230 23rd Street, LLC," and all documents set forth in paragraphs 127-128 of this 3rd amended complaint to be rescinded, null and *void ab initio*.

## Count XXXVI – Set Aside Deeds and Deed of Trust, Quiet Title and Declaratory Relief (Defendant First Mount Vernon ILA)

501.    The allegations contained in all preceding paragraphs of this 3rd amended complaint are incorporated herein as if fully stated.

502.    As previously described, Defendant First Mount Vernon ILA extended a loan to Plaintiff Juergens through fraud and fraudulently disguised the loan to Plaintiff Juergens as a commercial loan rather than, what was in reality, a personal consumer residential loan in order to charge Plaintiff Juergens a higher rate of interest and to circumvent District of Columbia mortgage, consumer and fair lending laws.

503.    Moreover, the alleged transfer of title to Plaintiff Juergens' condominium unit from Plaintiff Juergens to the "1230 23rd Street, LLC" was without consideration.

504.    Furthermore, the documents related to the alleged transfer of title to Plaintiff Juergens' condominium unit from Plaintiff Juergens to the "1230 23rd Street, LLC" and loan from Defendant First Mount Vernon ILA to the "1230 23rd Street, LLC" were not notarized or authenticated in accordance with D.C. Code §§ 42-141, 42-142, 42-143, 42-306 and 42-401, and thus are void.

505.    Additionally, Defendant First Mount Vernon ILA lacked the authority to lend to "1230 23rd Street, LLC" on property located in the District of Columbia pursuant to Virginia Code §§ 6.1-237.6 and 6.1-409, and therefore, the loan transaction is void.

506.    Thus, the deeds, mortgages and deeds of trust related to the condominium unit at issue should be set aside and Plaintiff Juergens should receive quiet title to the condominium unit at issue.

WHEREFORE, Plaintiff Mary Juergens, individually, and in her capacity as the sole member of "1230 23rd Street, LLC," respectfully requests this Honorable Court to enter an Order awarding her $5,000,000.00 in compensatory damages, $5,000,000.00 in punitive damages, attorneys' fees, interest and court costs against Defendant First Mount Vernon Industrial Loan Association Incorporated a/k/a "First Mount Vernon Industrial Loan Association, Inc.," as well as any other relief required in the interest of justice, including, but not limited to, declaring Defendant First Mount Vernon Industrial Loan Association Incorporated's a/k/a "First Mount Vernon Industrial Loan Association, Inc.'s" loan to Plaintiff Juergens and/or the "1230 23rd Street, LLC," all documents related to the "1230 23rd Street, LLC," the transfer of title to Plaintiff Juergens' condominium unit from Plaintiff Juergens to the "1230 23rd Street, LLC," and all documents set forth in paragraphs 127-128 of this 3rd amended complaint to be set aside, rescinded, null and *void ab initio* and Plaintiff Juergens should receive quiet title to the condominium unit at issue.

## Count XXXVII – Injunctive Relief
### (Defendant First Mount Vernon ILA)

507.    The allegations contained in all preceding paragraphs of this 3rd amended complaint are incorporated herein as if fully stated.

508.    As previously described, Defendant First Mount Vernon ILA extended a loan to Plaintiff Juergens through fraud and fraudulently disguised the loan to Plaintiff Juergens as a commercial loan rather than, what was in reality, a personal consumer residential loan in order to charge Plaintiff Juergens a higher rate of interest and to circumvent District of Columbia mortgage, consumer and fair lending laws.

509.    Moreover, the alleged transfer of title to Plaintiff Juergens' condominium unit from Plaintiff Juergens to the "1230 23rd Street, LLC" was without consideration.

510.    Furthermore, the documents related to the alleged transfer of title to Plaintiff Juergens' condominium unit from Plaintiff Juergens to the "1230 23rd Street, LLC" and loan from Defendant First Mount Vernon ILA to the "1230 23rd Street, LLC" were not notarized or authenticated in accordance with D.C. Code §§ 42-141, 42-142, 42-143, 42-306 and 42-401, and thus are void.

511.    Additionally, Defendant First Mount Vernon ILA lacked the authority to lend to "1230 23rd Street, LLC" on property located in the District of Columbia pursuant to Virginia Code §§ 6.1-237.6 and 6.1-409, and therefore, the loan transaction is void.

512.    Thus, the deeds, mortgages and deeds of trust related to the condominium unit at issue should be set aside and Plaintiff Juergens should receive quiet title to the condominium unit at issue.

513.    Since Defendants' actions involve Plaintiff Juergens' home, there may not be any adequate remedy at law.

WHEREFORE, Plaintiff Mary Juergens, individually, and in her capacity as the sole member of "1230 23rd Street, LLC," respectfully requests this Honorable Court to enter an Order permanently enjoining

A.     Defendant First Mount Vernon Industrial Loan Association Incorporated a/k/a "First Mount Vernon Industrial Loan Association, Inc." from conveying, borrowing against, or otherwise encumbering the condominium unit located at 1230 23rd Street, N.W., Apt. 505, Washington, DC  20037 in order to prevent a further cloud on the title to this property;

B.     Defendant First Mount Vernon Industrial Loan Association Incorporated a/k/a "First Mount Vernon Industrial Loan Association, Inc." from instituting any foreclosure or eviction proceedings with respect to Plaintiff Juergens or the condominium unit located at 1230 23rd Street, N.W., Apt. 505, Washington, DC 20037; and

C.      enjoining anyone who received any legal or equitable interest in the condominium unit located at 1230 23rd Street, N.W., Apt. 505, Washington, DC 20037 from Defendant First Mount Vernon Industrial Loan Association Incorporated a/k/a "First Mount Vernon Industrial Loan Association, Inc." from further conveyance, encumbrance or similar transaction involving this property, including any foreclosure or eviction proceedings;

and also enter an Order

A.      enforcing Plaintiff Juergens' rescission rights with respect to the loan concerning the condominium unit located at 1230 23rd Street, N.W., Apt. 505, Washington, DC  20037;

115

B.      voiding the deed and loan concerning the condominium unit located at

1230 23rd Street, N.W., Apt. 505, Washington, DC   20037 for lack of

consideration, lack of valid notarization in accordance with D.C. Code §§ 42-141,

42-142, 42-143, 42-306 and 42-401 and due to Defendant First Mount Vernon

Industrial Loan Association Incorporated's a/k/a "First Mount Vernon Industrial

Loan Association, Inc.'s" lack of authority to extend a commercial loan or any

other loan in the District of Columbia pursuant to Virginia Code §§ 6.1-237.6 and

6.1-409; and

C.      granting any further relief as the Court deems just and proper.

### Count XXXVIII – Demand for an Accounting
### (Defendant First Mount Vernon ILA)

514.    The allegations contained in all preceding paragraphs of this 3rd amended complaint are

incorporated herein as if fully stated.

515.    As previously described, Defendant First Mount Vernon ILA extended a loan to Plaintiff

Juergens through fraud and fraudulently disguised the loan to Plaintiff Juergens as a commercial

loan rather than, what was in reality, a personal consumer residential loan in order to charge

Plaintiff Juergens a higher rate of interest and to circumvent District of Columbia mortgage,

consumer and fair lending laws.

516.    Since Defendant First Mount Vernon ILA has converted funds belonging to Plaintiff

Juergens with respect to her loan, Plaintiff Juergens does not have any way to account for the

payments and/or disbursals made with respect to this loan.

WHEREFORE, Plaintiff Mary Juergens respectfully requests this Honorable Court to

enter an Order requiring Defendant First Mount Vernon Industrial Loan Association

Incorporated a/k/a "First Mount Vernon Industrial Loan Association, Inc." to provide an

accounting of all funds disbursed or received with regard to the loan to Plaintiff Juergens and granting any further relief as the Court deems just.

### Count XXXIX – Right of Rescission Pursuant to 15 U.S.C. § 1635 (Consumer Credit Protection Act) (Defendant First Mount Vernon ILA)

517.    The allegations contained in all preceding paragraphs of this 3rd amended complaint are incorporated herein as if fully stated.

518.    Pursuant to 15 U.S.C. § 1635, Plaintiff Juergens demands her right of rescission with respect to the loan from Defendant First Mount Vernon ILA due to Defendant First Mount Vernon ILA's failure to deliver to Plaintiff Juergens rescission forms and disclosures required pursuant to 15 U.S.C. § 1601, et seq.

519.    Thus, pursuant to 15 U.S.C. § 1635 (b), Defendant First Mount Vernon ILA must return to Plaintiff Juergens "any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction."

WHEREFORE, Plaintiff Mary Juergens, individually, and in her capacity as the sole member of "1230 23rd Street, LLC," respectfully requests this Honorable Court to enter an Order rescinding Defendant First Mount Vernon Industrial Loan Association Incorporated's a/k/a "First Mount Vernon Industrial Loan Association, Inc.'s" loan to Plaintiff Juergens and/or the "1230 23rd Street, LLC," all documents related to the "1230 23rd Street, LLC," the transfer of title to Plaintiff Juergens' condominium unit from Plaintiff Juergens to the "1230 23rd Street, LLC," and all documents set forth in paragraphs 127-128 of this 3rd amended complaint  and requiring Defendant First Mount Vernon Industrial Loan Association Incorporated a/k/a "First Mount Vernon Industrial Loan Association, Inc.", to return to Plaintiff Juergens "any money or property

117

given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction."

Respectfully submitted,

J.P. Szymkowicz (#462146)
John T. Szymkowicz (#946079)
SZYMKOWICZ & SZYMKOWICZ, LLP
1220 19th Street, N.W., Suite 400
Washington, DC 20036-2438
(202) 862-8500

Attorney for Plaintiff Mary Juergens

## JURY DEMAND

Plaintiff Mary Juergens demands trial by jury as to all issues so triable.

J.P. Szymkowicz (#462146)

118