# Exhibit 1

Settlement Statement

d Address of Borrower
uergens
d Street
ton, D.C. 20037

location (if different from above):

.-Street
. C. 20037
. . 1

Name and Address of Lender:
Owen Living Trust
8785 Orchard Drive
Chestertown, MD 21620

Settlement Agent:
Robert Carney/UTS

Place of Settlement:
2844 Powder Mill Rd, Adelphi, MD 20783

Settlement Date: 10/20/03   Disb: 10/20/03

| ...ment Charges | | | M. Disbursement to others | |
|---|---|---|---|---|
| ...ns payable in connection with loan | | | 1501. 1230-1250 23rd Street Condominium | $8,563.22 |
| ...n Origination Fee | to Owen Living Trust | $2,400.00 | | |
| ...n Discount | | | 1502. Urban Title / Kass and Kass PLLC | $1,200.00 |
| ...praisal Fee: | to Clarke Campbell | $500.00 | | |
| ...dit Report: | to UTS | $648.00 | 1503. Collection Accounts | $1,100.00 |
| ...pection Fee: | | | to UTS for negotiation | |
| ...rtgage Insurance Application Fee: | | | 1504. Fairfax county tax lien | $1,700.00 |
| ...rtgage Broker Fee: | | | to UTS for negotiation | |
| ...gee Broker's Compensation: | | | 1505. USA tax lien | $7,500.00 |
| ...ocessing Fee: | to UTS | $575.00 | to UTS for negotiation | |
| ...an Commitment Fee: | | | 1506. | |
| ...puter Fee: | | | 1507. R.E. Taxes | 3,645.72 |
| ...derwriter Fee: | | | | |
| ...ministration Fee: | to UTS | $650.00 | 1508. | |
| | | | 1509. | |
| | | | 1510. | |
| ...ems Required by Lender to be Paid in Advance | | | 1511. | |
| ...nterest from      to      @ | | $0.00 | 1512. | |
| ...Mortgage Insurance Premium for    months | | | | |
| ...Hazard Insurance Premium for    years | | | 1513. | |
| | | | 1514. | |
| Reserves Deposited with Lender | | | 1515. | |
| .  Hazard Insurance | months @    per month | | | |
| .  Mortgage Insurance | months @    per month | | 1516. | |
| .  City Property Taxes | months @    per month | | | |
| ...nty Property Taxes | months @    per month | | 1517. | |
| ... al Assessments | months @    per month | | | |
| | months @    per month | | 1518. | |
| | months @    per month | | | |
| .  Aggregate Adjustment | | | 1519. | |
| ... Title Charges | | | | |
| .  Settlement or Closing Fee: | to Urban Title Services | $800.00 | 1520. TOTAL DISBURSED | $20,063.22 |
| 2. Abstract or Title Search: | to Atlantic Assurance/UTS | $400.00 | (enter on line 1603) | |
| 3. Title Examination: | to Urban Title Services | $800.00 | | |
| 4. Title Insurance Binder: | to Urban Title Services | $800.00 | | |
| 5. Document Preparation: | to Urban Title Services | $550.00 | | |
| 6. Notary Fees: | | | | |
| 7. Attorney's Fees: | to Robert Carney/UTS | $2,500.00 | | |
|    (includes above item | | | | |
| 8. Title Insurance: | to JKV | $171.00 | | |
|    (includes above item | | | | |
| 9. Lender's Coverage: | | | | |
| 0. Owner's Coverage: | | | | |
| 1. Payoff/Releasing/Recording: | to Urban Title Services | $600.00 | N. NET SETTLEMENT | |
| 2. Express Fees: | to Urban Title Services | $200.00 | | |
| 3. | | | | |
| 4. | | | | |
| 0. Government Recording and Transfer Charges | | | 1600. Loan Amount | $60,000.00 |
| 01. Recording Fees: | to DC Treasurer | $100.00 | | |
| 02. City/county tax stamps: | | | | |
| 03. State tax stamps: | | | 1601. Plus Cash/Check from Borrower | |
| 04. | | | | |
| 05. | | | | |
| 00. Additional Settlement Charges | | | 1602. Minus Total Settlement Charges | $11,694.00 |
| 01. Survey: | | | (line 1400) | |
| 02. Pest Inspection: | | | | |
| 03. Architectural/engineering services: | | | 1603. Minus Total Disbursements to Others | $20,063.22 |
| 04. Building permit: | | | (line 1520) | |
| 05. Attorney's Fees | | | | |
| 06. | | | 1604. Equals Disbursements to Borrower | $28,242.7? |
| 0. | | | (rather expiration of any application | |
| | | | recission period required by law) | |
| ... otal Settlement Charges (enter on line 1602) | | $11,694.00 | | |

orrower(s) signature(s):

# **Exhibit 2**

# Urban Title Services, Inc.

1200 Braddock Place – Unit 713
Alexandria, VA 22314

March 9, 2004

Mary L. Juergens
1130 23rd Street
Washington, D.C. 20037

Dear Ms. Juergens:

We have been in contact with the IRS and have successfully negotiated a settlement and full releases of both of your tax liens. After receiving them, we will be sending a copy to the appropriate credit agencies in order to clean up your credit. Bill has told me that you have also obtained several releases Please fax these to us so that we can make sure that they are released properly. We have also been in contact with Kassmileck and Kass. We are sending them a check for $1,592.58 to pay off your account with them. The balance of funds is being returned to you. It has been a pleasure doing business with you. Keep up the good work in staying current on both your loan and your condominium dues.

Sincerely,

Paul A. Erb
President – Urban Title Services

# Exhibit 3

To whom it may concern,                                        August 4, 2005

I authorize First Mount Vernon to obtain my credit report and information on my mortgage.  My social security number is

Mary Juergens
1230 23rd Street NW #505
Washington, DC 20037

# **<u>Exhibit 4</u>**



**LLC-1011**
**(05/02)**

**COMMONWEALTH OF VIRGINIA**
**STATE CORPORATION COMMISSION**

### ARTICLES OF ORGANIZATION OF A
### DOMESTIC LIMITED LIABILITY COMPANY

Pursuant to Chapter 12 of Title 13.1 of the Code of Virginia the undersigned states as follows:

1. The name of the limited liability company is **1230 23rd Street, LLC**

2. A  The name of the limited liability company's initial registered agent is **Mary Juergens**.

   B. The registered agent is **(mark appropriate box):**

   (1) an <u>INDIVIDUAL</u> who is a resident of Virginia <u>and</u>
      [ X ] a member or manager of the limited liability company.
      [  ] an officer or director of a corporation that is a member or manager of the limited liability company.
      [  ] a general partner of a general or limited partnership that is a member or manager of the limited liability company.
      [  ] a trustee of a trust that is a member or manager of the limited liability company.
      [  ] a member of the Virginia State Bar.
                                             **OR**
   (2) [  ] a domestic or foreign stock or nonstock corporation, limited liability company or registered limited liability partnership authorized to transact business in Virginia.

3. The limited liability company's initial registered office address, which is identical to the business office of the initial registered agent, is:

   **6019 Tower Court, Alexandria, Virginia 22304**

   which is located in the [ X ] city **or** [  ] county of  **Alexandria**.

4. The limited liability company's principal office is located at **6019 Tower Court, Alexandria, Virginia 22304**

5. Signature:

_____          $8/16/00$
                   (organizer)                                                        (date)
         **Mary Juergens**

)

### SEE INSTRUCTIONS ON THE REVERSE

# Exhibit 5

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☑ Conventional  ☐ Other (explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|
| | ☐ FHA  ☐ USDA/Rural Housing Service | | 2632 |

| Amount $ | Interest Rate % | No. of Months | Amortization Type: | ☑ Fixed Rate  ☐ GPM | ☐ Other (explain): ☐ ARM (type): |
|---|---|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, ZIP) | No. of Units |
|---|---|
| 1230 23rd Street, N.W. #505,  Washington, DC 20037  County: District Of Columbia | 99 |

| Legal Description of Subject Property (attach description if necessary) | Year Built |
|---|---|
| | 1994 |

| Purpose of Loan | ☐ Purchase  ☐ Construction  ☐ Other (explain): | Property will be: |
|---|---|---|
| | ☑ Refinance  ☐ Construction-Permanent | ☐ Primary Residence  ☐ Secondary Residence  ☑ Investment |

**Complete this line if construction or construction-permanent loan.**

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a+b) $ |
|---|---|---|---|---|---|

**Complete this line if this is a refinance loan.**

| Year Acquired | Original Cost $ | Amount Existing Liens $ | Purpose of Refinance | Describe Improvements ☐ made  ☐ to be made |
|---|---|---|---|---|
| 2001 | | 62,060 | Business / Investment | Cost: $ |

| Title will be held in what Name(s) 1230 23rd Street, LLC | Manner in which Title will be held Limited Liability Company | Estate will be held in: ☑ Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) |
|---|

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) Mary L. Juergens | | Co-Borrower's Name (include Jr. or Sr. if applicable) |

| Social Security Number 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 | Home Phone (incl. area code) 202-463-6336 | DOB (MM/DD/YYYY) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☐ Married  ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Co-Borrower) no. ___ ages ___ | ☐ Married  ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Borrower) no. ___ ages ___ |
|---|---|---|---|

| Present Address (street, city, state, ZIP)  ☐ Own ☐ Rent ___ No. Yrs. | Present Address (street, city, state, ZIP)  ☐ Own ☐ Rent ___ No. Yrs. |
|---|---|
| 6359 Calviler Corridor Falls Church, VA 22044 | |

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

**If residing at present address for less than two years, complete the following:**

| Former Address (street, city, state, ZIP)  ☐ Own ☐ Rent ___ No. Yrs. | Former Address (street, city, state, ZIP)  ☐ Own ☐ Rent ___ No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Name & Address of Employer  ☑ Self Employed Self | Yrs. on this job | Name & Address of Employer  ☐ Self Employed | Yrs. on this job |
| | Yrs. employed in this line of work/profession | | Yrs. employed in line of work/pro |
| Position/Title/Type of Business | Business Phone (incl. area code) 202-463-6446 | Position/Title/Type of Business | Business Phone (incl. area code) |

**If employed in current position for less than two years or if currently employed in more than one position, complete the following:**

| Name & Address of Employer  ☐ Self Employed | Dates (from-to) | Name & Address of Employer  ☐ Self Employed | Dates (from-to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

| Name & Address of Employer  ☐ Self Employed | Dates (from-to) | Name & Address of Employer  ☐ Self Employed | Dates (from-to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |


EXHIBIT
2

## MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 7,500.00 | $ | $ 7,500.00 | Rent | | |
| Overtime | | | | First Mortgage (P&I) | | $ |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | | |
| Dividends/Interest | | | | Real Estate Taxes | | |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | 2,900.00 | | 2,900.00 | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 10,400.00 | $ | $ 10,400.00 | Total | $ | $ |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income    *Notice:* Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| B | Investments | $ 1,250.00 |
| B | Other Income | 1,650.00 |

## ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed  ☐ Jointly  ☑ Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | | | | |
| | | **LIABILITIES** | Monthly Payment & Months Left to Pay | Unpaid Balance |
| List checking and savings accounts below | | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| Acct. no. | | Acct. no. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. | $ | Acct. no. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. | $ | Acct. no. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. | $ | Acct. no. | | |
| Stocks & Bonds (Company name/ number & description) | $ | Name and address of Company | $ Payment/Months | $ |
| | | Acct. no. | | |
| Life insurance net cash value | $ | Name and address of Company | $ Payment/Months | $ |
| Face amount: $ | | | | |
| Subtotal Liquid Assets | $ | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 500,000 | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Vested interest in retirement fund | $ | | | |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | Job Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ | |
| Total Assets a. | $ 500,000 | Net Worth (a minus b) | $ 500,000 | Total Liabilities b. | $ |

## VI. ASSETS AND LIABILITIES (cont'd.)

**Schedule of Real Estate Owned** (if additional properties are owned, use continuation sheet)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 1230 23rd Street | CONDO | $ 500,000 | $ 60,000 | $ 2,000 | $ | $ | $ |
| Totals | | $ 500,000 | $ 60,000 | $ 2,000 | $ | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

## VII. DETAILS OF TRANSACTION

| | $ |
|---|---|
| a. Purchase price | |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | |
| e. Estimated prepaid items | |
| f. Estimated closing costs | |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | |

## VIII. DECLARATIONS

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| If you answer "yes" to any questions a through i, please use continuation sheet for explanation. | Yes | No | Yes | No |
| a. Are there any outstanding judgments against you? | ☑ | ☐ | ☐ | ☐ |
| b. Have you been declared bankrupt within the past 7 years? | ☐ | ☑ | ☐ | ☐ |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☑ | ☐ | ☐ |
| d. Are you a party to a lawsuit? | ☐ | ☑ | ☐ | ☐ |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | ☐ | ☑ | ☐ | ☐ |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? | ☐ | ☑ | ☐ | ☐ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☑ | ☐ | ☐ |
| h. Is any part of the down payment borrowed? | ☐ | ☑ | ☐ | ☐ |
| i. Are you a co-maker or endorser on a note? | ☐ | ☑ | ☐ | ☐ |
| j. Are you a U. S. citizen? | ☑ | ☐ | ☐ | ☐ |
| k. Are you a permanent resident alien? | ☐ | ☑ | ☐ | ☐ |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☐ | ☑ | ☐ | ☐ |
| m. Have you had an ownership interest in a property in the last three years? | ☑ | ☐ | ☐ | ☐ |
| (1) What type of property did you own—principal residence (PR), second home (SH), or investment property (IP)? | | | | |
| (2) How did you hold title to the home-solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | | | |

## IX. ACKNOWLEDGMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application; and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property, and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 8-30-05 | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER ☐ I do not wish to furnish this information | | | CO-BORROWER ☐ I do not wish to furnish this information | | |
|---|---|---|---|---|---|
| **Ethnicity:** ☐ Hispanic or Latino ☐ Not Hispanic or Latino | | | **Ethnicity:** ☐ Hispanic or Latino ☐ Not Hispanic or Latino | | |
| **Race:** ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☑ White | | | **Race:** ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☐ White | | |
| **Sex:** ☑ Female ☐ Male | | | **Sex:** ☐ Female ☐ Male | | |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: ☐ Face-to-face interview ☐ Mail ☐ Telephone ☐ Internet | Arthur B. Bennett | First Mount Vernon I.L.A. 6019 Tower Court Alexandria, VA 22304 (P) 703-82-38800 (F) 703-823-4455 |
| | Interviewer's Signature          Date | |
| | Interviewer's Phone Number (incl. area code) | |

# Exhibit 6

## LIMITED LIABILITY COMPANY OPERATING AGREEMENT
### FOR

### 1230 23rd Street, LLC

A Manager-Managed Limited Liability Company

THIS LIMITED LIABILITY COMPANY AGREEMENT (the Agreement) is made and entered into this _____31ˢ____ day of _Auₗuₛₜ_____, 20_05_ by: **MARY L. JUERGENS** and each individual or business entity later subsequently admitted to the Company. These individuals and/or business entities shall be known as and referred to as "Members" and individually as a "Member."

As of this date the Members, through their agent, have formed the **1230 23rd Street, LLC** named above under the laws of the Commonwealth of Virginia. Accordingly, in consideration of the conditions contained herein, they agree as follows:

### ARTICLE I
### Company Formation and Registered Agent

1.1 **FORMATION**. The Members hereby form a Limited Liability Company ("Company") subject to the provisions of the Limited Liability Company Act as currently in effect as of this date. A Certificate of Formation shall be filed with the Secretary of State.

1.2 **NAME**. The name of the Company shall be: **1230 23rd Street, LLC**.

1.3 **REGISTERED OFFICE AND AGENT**. The location of the registered office of the Company shall be **6019 Tower Court, Alexandria, Virginia 22304**.

1.4 **TERM**. The Company shall continue for an indefinite period unless dissolved by:

(a) Members whose capital interest as defined in Article 2.2 exceeds 50 percent vote for dissolution; or (b) Any event which makes it unlawful for the business of the Company to be carried on by the Members; or (c) The death, resignation, expulsion, bankruptcy, retirement of a Member or the occurrence of any other event that terminates the continued membership of a Member of the Company; or (d) Any other event causing dissolution of a Limited Liability Company under the laws of the Commonwealth of Virginia.

1.5 **CONTINUANCE OF COMPANY**. Notwithstanding the provisions of ARTICLE 1.4, in the event of an occurrence described in ARTICLE 1.4(c), if there are at least two remaining Members, said remaining Members shall have the right to continue the business of the Company. Such right can be exercised only by the unanimous vote of the remaining Members within ninety (90) days after the occurrence of an event described in ARTICLE 1.4(c). If not so exercised, the right of the Members to continue the business of the Company shall expire.

1.6 **BUSINESS PURPOSE**. The purpose of the Company is to engage in any lawful act or activity for which a Limited Liability Company may be formed under the Limited Liability statutes of the Commonwealth of Virginia.

1.7 **PRINCIPAL PLACE OF BUSINESS**. The location of the principal place of business of the Company shall be: **6019 Tower Court, Alexandria, Virginia 22304** or at such other place as the Managers from time to time select.

1.8 **THE MEMBERS**. The name and place of residence of each member are contained in Exhibit 2 attached to this Agreement.

Exhibit 3 9

1.9 **ADMISSION OF ADDITIONAL MEMBERS.** Except as otherwise expressly provided in the Agreement, no additional members may be admitted to the Company through issuance by the company of a new interest in the Company without the prior unanimous written consent of the Members.

## ARTICLE 2
### Capital Contributions

2.1 **INITIAL CONTRIBUTIONS.** The Members initially shall contribute to the Company capital as described in Exhibit 3 attached to this Agreement. The agreed value of such property and cash is **$ 1,000.00.**

2.2 **ADDITIONAL CONTRIBUTIONS.** Except as provided in ARTICLE 6.2, no Member shall be obligated to make any additional contribution to the Company's capital.

## ARTICLE 3
### Profits, Losses and Distributions

3.1 **PROFITS/LOSSES.** For financial accounting and tax purposes the Company's net profits or net losses shall be determined on an annual basis and shall be allocated to the Members in proportion to each Member's relative capital interest in the Company as set forth in Exhibit 2 as amended from time to time in accordance with Treasury Regulation 1.704-1.

3.2 **DISTRIBUTIONS.** The Members shall determine and distribute available funds annually or at more frequent intervals as they see fit. Available funds, as referred to herein, shall mean the net cash of the Company available after appropriate provision for expenses and liabilities, as determined by the Managers. Distributions in liquidation of the Company or in liquidation of a Member's interest shall be made in accordance with the positive capital account balances pursuant to Treasury Regulation 1.704-I(b)(2)(ii)(b)(2). To the extent a Member shall have a negative capital account balance, there shall be a qualified income offset, as set forth in Treasury Regulation 1.704-I(b)(2)(ii)(d).

## ARTICLE 4
### Management

4.1 **MANAGEMENT OF THE BUSINESS.** The name and place of residence of each Manager is attached as Exhibit 1 of this Agreement. By a vote of the Members holding a majority of the capital interests in the Company, as set forth in Exhibit 2 as amended from time to time, shall elect so many Managers as the Members determine, but no fewer than one, with one Manager elected by the Members as Managing Member.

4.2 **MEMBERS.** The liability of the Members shall be limited as provided under the laws of the Virginia Limited Liability statutes. Members that are not Managers shall take no part whatever in the control, management, direction, or operation of the Company's affairs and shall have no power to bind the Company. The Managers may from time to time seek advice from the Members, but they need not accept such advice, and at all times the Managers shall have the exclusive right to control and manage the Company. No Member shall be an agent of any other Member of the Company solely by reason of being a Member.

4.3 **POWERS OF MANAGERS.** The Managers are authorized on the Company's behalf to make all decisions as to (a) the sale, development lease or other disposition of the Company's assets; (b) the purchase or other acquisition of other assets of all kinds; (c) the management of all or any part of the Company's assets; (d) the borrowing of money and the granting of security interests in the Company's assets; (e) the pre-payment, refinancing or extension of any loan affecting the Company's assets; (f) the compromise or release of any of the Company's claims or debts; and, (g) the employment of persons, firms or corporations for the operation and management of the company's business. In the exercise of their management powers, the Managers are authorized to execute and deliver (a) all contracts, conveyances, assignments leases, sub-leases, franchise agreements, licensing agreements, management contracts and maintenance contracts covering or affecting the Company's assets; (b) all checks, drafts and other orders for the payment of the Company's funds; (c) all promissory notes, loans, security agreements and other similar documents; (d) all other instruments of any other kind relating to the Company's affairs, whether like or unlike

the foregoing; and, (e) nothing in the foregoing sections allow the Manager to undertake any action which increases the Company's debt or disposes of property without full consent of all members.

4.4 **MANAGING MEMBER**. The Managing Member shall have primary responsibility for managing the operations of the Company and for effectuating the decisions of the Managers.

4.5 **NOMINEE**. Title to the Company's assets shall be held in the Company's name or in the name of any nominee that the Members may designate.

4.6 **COMPANY INFORMATION**. Upon request, the Managers shall supply to any member information regarding the Company or its activities. Each Member or his authorized representative shall have access to and may inspect and copy all books, records and materials in the Manager's possession regarding the Company or its activities. The exercise of the rights contained in this ARTICLE 4.6 shall be at the requesting Member's expense.

4.7 **EXCULPATION**. Any act or omission of the Managers, the effect of which may cause or result in loss or damage to the Company or the Members if done in good faith to promote the best interests of the Company, shall not subject the Managers to any liability to the Members.

4.8 **INDEMNIFICATION**. The Company shall indemnify any person who was or is a party defendant or is threatened to be made a party defendant, pending or completed action, suit or proceeding, whether civil, criminal, administrative, or investigative (other than an action by or in the right of the Company) by reason of the fact that he is or was a Member of the Company, Manager, employee or agent of the Company, or is or was serving at the request of the Company, for instant expenses (including attorney's fees), judgments, fines, and amounts paid in settlement actually and reasonably incurred in connection with such action, suit or proceeding if the Members determine that he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interest of the Company, and with respect to any criminal action proceeding, has no reasonable cause to believe his/her conduct was unlawful. The termination of any action, suit, or proceeding by judgment, order, settlement, conviction, or upon a plea of "No Lo Contendere" or its equivalent, shall not in itself create a presumption that the person did or did not act in good faith and in a manner which he reasonably believed to be in the best interest of the Company, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his/her conduct was lawful.

4.9 **RECORDS**. The Managers shall cause the Company to keep at its principal place of business the following:

(a) a current list in alphabetical order of the full name and the last known street address of each Member;
(b) a copy of the Certificate of Formation and the Company Operating Agreement and all amendments;
(c) copies of the Company's federal, state and local income tax returns and reports, if any, for the three most recent years;
(d) copies of any financial statements of the limited liability company for the three most recent years.

### ARTICLE 5
### Compensation

5.1 **MANAGEMENT FEE**. Any Manager rendering services to the Company shall be entitled to compensation commensurate with the value of such services and agreement of all members.

5.2 **REIMBURSEMENT**. The Company shall reimburse the Managers or Members for all direct out-of-pocket expenses incurred by them in managing the Company when approved by the Members.

### ARTICLE 6
### Bookkeeping

6.1 **BOOKS**. The Managers shall maintain complete and accurate books of account of the Company's affairs at the Company's principal place of business. Such books shall be kept on such method of accounting as the Managers shall select. The company's accounting period shall be the calendar year.

6.2 **MEMBER'S ACCOUNTS**. The Managers shall maintain separate capital and distribution accounts for each member. Each member's capital account shall be determined and maintained in the manner set forth in Treasury Regulation 1.704-l(b)(2)(iv) and shall consist of his initial capital contribution increased by:

(a) any additional capital contribution made by him/her;
(b) credit balances transferred from his distribution account to his capital account;
and decreased by:
(a) distributions to him/her in reduction of Company capital;
(b) the Member's share of Company losses if charged to his/her capital account.

6.3 **REPORTS**. The Managers shall close the books of account after the close of each calendar year, and shall prepare and send to each member a statement of such Member's distributive share of income and expense for income tax reporting purposes.

### ARTICLE 7
### Transfers

7.1 **ASSIGNMENT**. If at any time a Member proposes to sell, assign or otherwise dispose of all or any part of his interest in the Company, such Member shall first make a written offer to sell such interest to the other Members at a price determined by mutual agreement. If such other Members decline or fail to elect such interest within thirty (30) days, and if the sale or assignment is made and the Members fail to approve this sale or assignment unanimously then, pursuant to the Virginia Limited Liability statutes, the purchaser or assignee shall have no right to participate in the management of the business and affairs of the Company. The purchaser or assignee shall only be entitled to receive the share of the profits or other compensation by way of income and the return of contributions to which that Member would otherwise be entitled.

Signed and Agreed this ___3/5'___ day of ___August___ 200_5_.

Member _____
MARY L. JUERGENS

### LIMITED LIABILITY COMPANY OPERATING AGREEMENT
### FOR 1230 23rd Street, LLC
### LISTING OF MANAGERS

By a majority vote of the Members the following Manager (s) were elected to operate the Company pursuant to ARTICLE 4 of the Agreement:

MARY L. JUERGENS
**Managing Member**

The above listed Manager(s) will serve in their capacities until they are removed for any reason by a majority vote of the Members as defined by ARTICLE 4 or upon their voluntary resignation.

Signed and Agreed this ___31st___ day of ___August___, 2005

MARY L. JUERGENS — Member

**LIMITED LIABILITY COMPANY OPERATING AGREEMENT**
**1230 23rd Street, LLC.**
LISTING OF MEMBERS

As of the _____ day of _____, 20__ the following is a list
of Members of the Company:

NAME:

**MARY L. JUERGENS**          **100% Ownership**

Authorized by Member(s) to provide Member Listing as of this $3/\frac{s^t}{}$ day of $August$ _____, 200~

MARY L. JUERGENS , Member

## LIMITED LIABILITY COMPANY OPERATING AGREEMENT
### 1230 23rd Street, LLC

**CAPITAL CONTRIBUTIONS**

Pursuant to ARTICLE 2, the Members' initial contribution to the Company capital is stated to be $1,000.00. The description and each individual portion of this initial contribution is as follows:

**MARY L. JUERGENS -**                    **$1000.00**

SIGNED AND AGREED this $3\underline{L^{+'}}$ day of $\underline{August}$ , 200 $\underline{2}$ .

MARY L. JUERGENS, Member

# **Exhibit 7**

OMB NO. 2502-0265

#86

| A. | | B. T. OF LOAN | |
|---|---|---|---|
| **U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT** | 1. ☐ FHA   2. ☐ FmHA   3. ☒ CONV. UNINS.   4. ☐ VA   5. ☐ CONV. INS. | | |
| | 6. FILE NUMBER  2005-08-003 | | 7. LOAN NUMBER |
| **SETTLEMENT STATEMENT** | 8. MORTGAGE INS CASE NUMBER | | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(POC)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

1.0   3/98   (JUERGENS, MARY,PFD/2005-08-003/31)

| D. NAME AND ADDRESS OF BORROWER | E. NAME AND ADDRESS OF SELLER | F. NAME AND ADDRESS OF LEN |
|---|---|---|
| 1230 23rd St., LLC 1230 23rd Street NW #505 Washington, D.C. 20037 | Mary Juergens 1230 23rd St. NW Washington, D.C. 20037 | First Mount Vernon I.L.A. 6019 Tower Court Alexandria, VA 22304 |

| G. PROPERTY LOCATION | H. SETTLEMENT AGENT | I. SETTLEMENT DATE |
|---|---|---|
| 1230 23rd Street NW #505 Washington, DC 20037 | Brickshire Settlements, LLC | August 31, 2005 |
| 1230 23rd St. N.W. #505 Washington, D.C. 20037 | PLACE OF SETTLEMENT 7700 Little River Turnpike, Ste 604 Annandale, Va 22003 | |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 189,003.96 | 403. | |
| 104. escrow for cash-back (POC) OBLIGEE | 60,996.04 | 404. | |
| 105. | | 405. | |
| Adjustments For Items Paid By Seller in advance | | Adjustments For Items Paid By Seller in advance | |
| 106. City/Town Taxes       to | | 406. City/Town Taxes       to | |
| 107. County Taxes       to | | 407. County Taxes       to | |
| 108. Assessments       to | | 408. Assessments       to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 250,000.00 | **420. GROSS AMOUNT DUE TO SELLER** | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | 250,000.00 | 502. Settlement Charges to Seller (Line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first Mortgage to George Owens | 61,195.11 |
| 205. | | 505. Payoff of second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments For Items Unpaid By Seller | | Adjustments For Items Unpaid By Seller | |
| 210. City/Town Taxes       to | | 510. City/Town Taxes       to | |
| 211. County Taxes       to | | 511. County Taxes       to | |
| 212. Assessments       to | | 512. Assessments       to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 250,000.00 | **520. TOTAL REDUCT. AMT DUE SELLER** | 61,195.11 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Borrower (Line 120) | 250,000.00 | 601. Gross Amount Due To Seller (Line 420) | |
| 302. Less Amount Paid By/For Borrower (Line 220) | ( 250,000.00) | 602. Less Reductions Due Seller (Line 520) | ( 61,195.11) |
| 303. CASH ( FROM )( TO ) BORROWER | 0.00 | 603. CASH ( TO )( X FROM ) SELLER | 61,195.11 |

HUD-1 (3-86) RESPA, HB4305.2

Exhibit 30

## L. SETTLEMENT CHARGES

| | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|
| **700. TOTAL COMMISSION Based on Price**  $ @ % | | |
| Division of Commission (line 700) as Follows: | | |
| 701. $ to | | |
| 702. $ to | | |
| 703. Commission Paid at Settlement | | |
| 704. to | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | |
| 801. Loan Origination Fee  4.0000 %  to First Mount Vernon I.L.A. | 10,000.00 | |
| 802. Loan Discount  %  to | | |
| 803. Application Fee  to First Mount Vernon I.L.A. | 200.00 | |
| 804. Credit Report  to First Mount Vernon I.L.A. | 35.00 | |
| 805. Funding Fee  to First Mount Vernon I.L.A. | 200.00 | |
| 806. Processing Fee  to First Mount Vernon I.L.A. | 400.00 | |
| 807. Underwriting Fee  to First Mount Vernon I.L.A. | 350.00 | |
| 808. Wire Fee  to First Mount Vernon I.L.A. | 25.00 | |
| 809. Release Fee  to First Mount Vernon I.L.A. | 100.00 | |
| 810. Commitment fee  to First Mount Vernon I.L.A. | 350.00 | |
| 811. Advance disbursement  to First Mount Vernon I.L.A. | 95,000.00 | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | |
| 901. Interest From  08/31/05 to 09/01/05  @ $ 100.000000/day  ( 1 days  %) | 100.00 | |
| 902. Mortgage Insurance Premium  months | | |
| 903. Hazard Insurance Premium  1.0 years | | |
| 904. | | |
| 905. | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | |
| 1001. Hazard Insurance  months @ $  per month | | |
| 1002. Mortgage Insurance  months @ $  per month | | |
| 1003. City/Town Taxes  months @ $  per month | | |
| 1004. County Taxes  months @ $  per month | | |
| 1005. Assessments  months @ $  per month | | |
| 1006.  months @ $  per month | | |
| 1007.  months @ $  per month | | |
| 1008.  months @ $  per month | | |
| **1100. TITLE CHARGES** | | |
| 1101. Settlement or Closing Fee  to Brickshire Settlements, LLC | 595.00 | |
| 1102. Abstract or Title Search  to Consolidated Abstract Service of D.C./Brickshire | 300.00 | |
| 1103. Title Examination  to Stephen J. Sheehy & Assoc., PLLC | 175.00 | |
| 1104. Title Insurance Binder  to Sisters and Brothers Title Services/Brickshire | 150.00 | |
| 1105. Document Preparation  to Martin Mooradian, Esq. | 150.00 | |
| 1106. Notary Fees  to Brickshire Settlements, LLC | 36.00 | |
| 1107. Release Tracking  to Brickshire Settlements, LLC | 85.00 | |
| (includes above item numbers: ) | | |
| 1108. Title Insurance  to First American/Brickshire | 1,743.75 | |
| (includes above item numbers: ) | | |
| 1109. Lender's Coverage  $ 312,500.00 | | |
| 1110. Owner's Coverage  $ | | |
| 1111. Deed Preparation  to Stephen J. Sheehy III & Assoc. PLLC | 200.00 | |
| 1112. | | |
| 1113. | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | |
| 1201. Recording Fees:  Deed $  82.50; Mortgage $  82.50:  Releases $ | 165.00 | |
| 1202. City/County Tax/Stamps:  Deed  ; Mortgage  2,750.00 | 2,750.00 | |
| 1203. State Tax/Stamps:  Revenue Stamps  ; Mortgage  2,750.00 | 2,750.00 | |
| 1204. Assignment of Rents  to D. C. Register of Deeds | 82.50 | |
| 1205. | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | |
| 1301. Survey  to | | |
| 1302. Pest Inspection  to | | |
| 1303. Escrow for interest Reserve  to First Mount Vernon I.L.A. | 67,526.31 | |
| 1304. Courier/FedEx  to Brickshire Settlements, LLC | 87.50 | |
| 1305. See addit'l disb. exhibit  to | 5,447.90 | |
| **1400. TOTAL SETTLEMENT CHARGES (Enter on Lines 103, Section J and 502, Section K)** | 189,003.96 | |

By signing page 1 of this statement, the signatories acknowledge receipt of a completed copy of page 2 of this two page statement.

Certified to be a true copy.

Brickshire Settlements, LLC
Settlement Agent

## ACKNOWLEDGMENT OF RECEIPT OF SETTLEMENT STATEMENT

| | |
|---|---|
| Borrower: | 1230 23rd St., LLC |
| Seller: | Mary Juergens |
| Lender: | First Mount Vernon I.L.A. |
| Settlement Agent: | Brickshire Settlements, LLC |
| | (703)256-6200 |
| Place of Settlement: | 7700 Little River Turnpike, Ste 604 |
| | Annandale, Va 22003 |
| Settlement Date: | August 31, 2005 |
| Property Location: | 1230 23rd Street NW #505 |
| | Washington, DC 20037 |
| | 1230 23rd St. N.W. #505 |
| | Washington, D.C. 20037 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

1230 23rd St. , LLC

_____              _____
Mary Juergens                         By: Mary Juergens, Member

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

_____
Brickshire Settlements, LLC
Settlement Agent

WARNING: It is a crime to knowingly make false statements to the United States on this or any similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

## CERTIFIED TRUE COPY

HUD-1 (3-86) RESPA, HB4305.2

## AD. IONAL DISBURSEMENTS EXHIB

|  |  |
|---|---|
| Borrower: | 1230 23rd St., LLC |
| Seller: | Mary Juergens |
| Lender: | First Mount Vernon I.L.A. |
| Settlement Agent: | Brickshire Settlements, LLC |
|  | (703)256-6200 |
| Place of Settlement: | 7700 Little River Turnpike, Ste 604 |
|  | Annandale, Va 22003 |
| Settlement Date: | August 31, 2005 |
| Property Location: | 1230 23rd Street NW #505 |
|  | Washington, DC 20037 |
|  | 1230 23rd St. N.W. #505 |
|  | Washington, D.C. 20037 |

| PAYEE/DESCRIPTION | NOTE/REF NO | BORROWER | SELLER |
|---|---|---|---|
| D.C. Government<br>04 7 1st 1/2 taxes |  | 3,352.90 |  |
| Dale Duncan<br>Preparation of LLC Documents |  | 850.00 |  |
| Dale Duncan<br>Documentation Preparation Fee |  | 795.00 |  |
| Dale Duncan<br>Settlement Coordination Fee |  | 450.00 |  |
| **Total Additional Disbursements shown on Line 1305** |  | $    5,447.90 | $        0.00 |

(JUERGENS, MARY.PFD/2005-08-003/17)

# Exhibit 8

### THIS DEED

**MADE** this 31st day of *August*, 2005, by and between MARY L. JUERGENS,

Grantor and 1230 23rd STREET, LLC, a Virginia Limited Liability Company, Grantee:

**WITNESSETH**, that the Grantor, in consideration of Two Hundred Thousand

Dollars ($200,000), to her paid by the Grantee, the receipt and sufficiency of which is hereby

acknowledged, does hereby grant, sell, bargain and convey unto the Grantee, its heirs and

assigns, in fee simple, the following described land and premises, with the improvements,

easements, and appurtenances thereunto belonging, situate, lying and being in the District of

Columbia and having the street address of 1230 23rd St., NW, Unit 505, Washington, D.C.

20037 and more particularly described as:

> Part of Lot Fifty (50) in Square Thirty-six (36), as per Plat recorded
> November 20, 1987 by 23 WEST LIMITED PARTNERSHIP in the
> Office of the surveyor of the District of Columbia in Liber 179 at Folio
> 182, now being more particularly described as follows:
>
> Condominium Unit 505, 1230-1250 Twenty-Third Street
> Condominium and the limited common element parking spaces(s) no.
> 63, established by recording a Declaration and By-Laws on March 2,
> 1990 as Instrument No. 12871 in the Office of the Surveyor of the
> District of Columbia in Condominium Book 39 at Page 11.
>
> NOTE: The condominium unit is currently designated on the records
> of the Assessor of the District of Columbia for taxation purposes as
> Lot 2004 in Square 36.
>
> AND BEING the same property conveyed unto Mary L. JUERGENS,
> as sole owner, by virtue of a Deed granted by Alyson F. GANNON,
> dated September 21, 2001, and recorded September 24, 2001 as
> Instrument #92945, among the Land Records of the District of
> Columbia.

**SUBJECT, HOWEVER** to restrictions, conditions, rights of way and easements of

record.



EXHIBIT
34

**AND** the Grantor herein warrants generally the property hereby conveyed and covenants to execute such further assurances of the land as may be requisite.

**WITNESS** the following signature and seal:

_____(SEAL)
MARY L. JUERGENS, GRANTOR

COMMONWEALTH OF VIRGINIA    :
COUNTY OF FAIRFAX           :        To-Wit:

I, the undersigned, a Notary Public in and for the County and State aforesaid, do hereby certify that Mary L. Juergens, whose name is signed to the foregoing instrument, bearing date of _August 31_, 2005 having acknowledged the same before me in my County and State aforesaid.

GIVEN under my hand and official seal this _31st_ day of _August_, 2005.

Notary Public

My Commission Expires: _06/30/09_

Doc# 2006128724 Fees:$5825.50
09/21/2006    11:23am Pages 2
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD

| RECORDING | $ | 20.00 |
| SURCHARGE | $ | 6.50 |
| RECORDATION TAX FEE | $ | 2,750.00 |
| TRANSFER TAX FEE | $ | 2,750.00 |

# **Exhibit 9**

# BALLOON DEED OF TRUST NOTE

## First Trust
## Important Notice

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION THAT CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

**THIS LOAN IS BEING MADE FOR COMMERCIAL OR INVESTMENT PURPOSES PURSUANT TO SECTION 28-3301 OF THE DISTRICT OF COLUMBIA CODE.**

Given for money loaned and secured by a Balloon Deed of Trust on **SEE ATTACHED LEGAL DESCRIPTION.** The improvements thereon being known as **1230 23rd Street, Unit 505 and Parking Space 63, Washington, DC 20037.**

Ronald S. Deutsch, Edward S. Cohn, Steven Goldberg, Richard J. Rogers and Richard Solomon, Trustees

---

**$250,000.00**                                                                    **August 31, 2005**

FOR VALUE RECEIVED, I, 1230 23rd Street, LLC (hereinafter known as "Borrower"), promise to pay to the order of FIRST MOUNT VERNON INDUSTRIAL LOAN ASSOCIATION, a Virginia corporation, 6019 Tower Court, Alexandria, Virginia 22304 (hereinafter known as "Noteholder") the sum of **Two Hundred Fifty Thousand Dollars and no/100ths ($250,000.00),** with interest from the date hereof until paid at the rate of **Eighteen percent (18%) per annum on the unpaid balance. However, should this loan ever be in default the interest rate will be increased to Twenty-four percent (24%) per annum for the remainder of the time that this loan is outstanding.** Said principal and interest is payable as follows: Commencing on **October 1, 2005,** and continuing on the 1st day of each and every month thereafter **interest-only payments of $3,750.00,** with the **entire remaining unpaid balance of principal and interest, if not sooner paid, being due and payable in full on or before September 1, 2007.**

Each installment when so paid to be applied first to the payment of late charges, second to the payment of interest on the amount of principal remaining unpaid, and the balance thereof to be credited to the principal.

And it is expressly agreed that if default be made in the payment of any one of the aforesaid installments when and as the same shall become due and payable, then and in that event, the unpaid balance of the aforesaid principal sum and accrued interest shall at the option of the holder hereof at once become and be due and payable. Borrower shall be responsible for all costs of collections, including without limitation, court costs, attorney's fees of at least 20% of the outstanding indebtedness under this Note and all other costs of collection to the extent not prohibited by applicable law. Additionally, **in the event of Default and at the sole discretion**

1



of the Lender, if said note is modified, extended or default cured, there shall be an administrative / reinstatement fee equal to two and one-half percent (2.5%) of the principal balance and all outstanding interest and penalties.    If the Noteholder has not received the full amount of any payment including the balloon payment by the end of five (5) calendar days after the date it is due, a late fee shall apply as follows:  A **late fee of $650.00** shall become immediately due if payment is not received by the Noteholder by the 5th day of any month.  **IN ADDITION, A TEN PERCENT (10%) LATE FEE SHALL BE PAYABLE ON THE PRINCIPAL BALLOON PAYMENT, SHOULD THE BORROWER NOT PAY SAID AMOUNT WITHIN FIVE (5) DAYS OF DUE DATE.**  Borrower shall also be responsible for the payment of Twenty-Five Dollars ($25.00) for each check that, upon presentment, is returned unpaid from the Lender.

The Maker(s) agree, upon any default hereunder, to pay all costs of collection as set forth above, and severally waive the benefits of any exemption now or hereafter allowed it by law insofar as such exemption may lawfully be waived. In the event the Noteholder accepts a Deed in Lieu of Foreclosure, such acceptance shall only satisfy the amount of unpaid principal outstanding and Noteholder reserves the right to collect all interest, fees and other charges outstanding at the time of such acceptance. If permitted by law, and if, under its terms, this Note is in default, the Maker hereof constitutes and appoints the attorney of said **First Mount Vernon Industrial Loan Association** with power of substitution its duly constituted attorney-in-fact for the purpose of confessing judgment against Maker for any amounts required to be paid pursuant to the Note, including costs of collection as set forth above. Said attorney is hereby authorized to confess judgment on behalf of Maker for such amounts not paid in compliance with the terms of this Note. Further, Maker does hereby constitute and appoint said attorney to confess judgment on behalf of Maker for immediate possession of the premises in any Court of **The District of Columbia** having jurisdiction and hereby ratifies and confirms the acts of said attorney in fact as fully as if done in person.

Upon the nonpayment of this Note or any part thereof, at maturity, the Maker(s) hereby authorize and empower any Clerk of any Court of record in **The District of Columbia** or elsewhere, to enter judgment by confession, on or after maturity, against the undersigned, in favor of **First Mount Vernon Industrial Loan Association**, its successors and assigns or legal holder, for the full amount of the indebtedness then due hereon, interest and costs, as well as reasonable attorney's fees as set forth herein, expressly waiving summons and other process, and does hereby further consent to the immediate execution of said judgment.

**There shall be a 3% prepayment penalty during the first year of this loan. Should borrower prepay, or cause this loan to become due prior to maturity through default, interest may be recalculated using a method (the Rule of 78's) which could result in additional interest being due. There shall be an exit fee equal to one percent of the loan amount when this loan is paid in full and released.**

The Borrower and all endorsers and guarantors hereof waive notice of maturity, presentment, protest and notice of protest, notice of non-payment and dishonor.

In the event of any filing under any Chapter of the United States Bankruptcy Code ("bankruptcy proceeding") Noteholder shall be entitled to charge interest on all accrued interest, foreclosure costs, attorney fees (whether incurred as a result of the foreclosure or the bankruptcy proceeding) or other pre-petition arrearage payable pursuant to or through any plan in the

bankruptcy proceeding. If any post-petition arrearage occurs and those amounts are payable pursuant to or through any plan, Noteholder shall be entitled to charge interest on those amounts the same as if they were pre-petition arrears. Said interest shall be at the same rate charged under this Promissory Note.

This Note shall be the joint and several obligation of all Borrowers, sureties, guarantors and endorsers, and shall be binding upon them and their heirs, Personal Representatives, successors and assigns.

Any notice to Borrower shall be given by mailing such notice by Certified Mail, Return Receipt Requested, postage prepaid, to Borrower at Borrower's designated address. Any notice to Noteholder shall be given by mailing such notice by Certified Mail, Return Receipt Requested, postage prepaid, to Noteholder at Noteholder's designated address.

In addition to the protections given to Noteholder under this Note, a Deed of Trust dated this same date, containing additional provisions which are incorporated by referenced herein, protects the Noteholder from possible losses which might result upon Borrower's default.

**IT IS FURTHER AGREED THAT IN THE EVENT THE TITLE OR ANY INTEREST TO THE PROPERTIES CONVEYED BY THE DEED OF TRUST SECURING THIS NOTE SHALL BECOME VESTED IN ANY ONE OTHER THAN THE MAKER(S) HEREOF, IF ADDITIONAL ENCUMBRANCES OR DEEDS OF TRUST ARE RECORDED, OR, IF ANY JUDGMENTS OR LIENS ARE RECORDED AGAINST ANY ONE MAKER, THEN THE ENTIRE BALANCE OF THIS NOTE SHALL IMMEDIATELY BECOME DUE AND PAYABLE.**

**BORROWER HEREBY WAIVES BORROWER'S RIGHT TO HAVE THE PAYMENTS THAT ARE TO BE MADE UNDER THIS AGREEMENT IN SUBSTANTIALLY EQUAL AMOUNTS.**

**BORROWER SPECIFICALLY STATES THAT HE WILL NOT OCCUPY THE PROPERTIES.**

If any provision of this Note is found to violate a particular statute, then only that provision will be appropriately modified and the remaining provisions will stand and are fully enforceable.

Borrower acknowledges that he may now, or in the future may have other loan(s) from Noteholder and that such loan(s) are or will be evidenced by Promissory Notes and that said Notes are or will be secured by Deeds of Trust. That in consideration for Noteholder making this loan, Borrower understands and agrees that Noteholder may require repayment of sums due on said other loans in order to fully satisfy the within loan.

_____ (SEAL)
1230 23rd Street, LLC

The person signing below does so for the purpose of acknowledging all terms and obligations of this Note and by so signing, personally guarantees the repayment of all obligations set forth herein as if he is the maker of the this Note.

3

_____ (SEAL)
Mary A. Juergens, Personally

This is to certify that this is the Note
described in a Deed of Trust to the
Trustees named hereon and bearing
even date herewith.  Said Deed of
Trust and Note having been executed
In my presence.

_____
Notary Public
My Commission Expires: 06/31/65

4

# **<u>Exhibit 10</u>**

 

## COMMERCIAL LOAN
## BALLOON DEED OF TRUST
### First Trust

### THE LOAN SECURED BY THIS DEED OF TRUST HAS BEEN MADE FOR COMMERCIAL OR INVESTMENT PURPOSES PURSUANT TO SECTION 28-3301 OF THE DISTRICT OF COLUMBIA CODE

**THIS BALLOON DEED OF TRUST**, made **August 31, 2005**, by and between **1230 23rd Street, LLC**, hereinafter referred to as "Grantor" and Ronald S. Deutsch, Edward S. Cohn, Steven Goldberg, Richard J. Rogers and Richard Solomon, Trustees, hereinafter referred to as "Trustee", either of whom may act, independently of the other. The Trustees are licensed to practice law in the District of Columbia and are in good standing, and their law office address is 600 Baltimore Avenue, Towson, MD 21204;

**WHEREAS**, Grantor is indebted unto FIRST MOUNT VERNON INDUSTRIAL LOAN ASSOCIATION, a Virginia corporation, 6019 Tower Court, Alexandria, Virginia 22304 (hereinafter referred to as "Noteholder"), in the principal sum of **Two Hundred Fifty Thousand Dollars and no/100ths ($250,000.00)**, or so much thereof as has been advanced, being money loaned, for which amount Grantor has signed and delivered Grantor's **Promissory Note**, hereinafter referred to as "Note" of even date herewith payable to the order of Noteholder, bearing interest at the rate of **18%** per annum until paid with the full debt, if not paid earlier, due and payable on or before September 1, 2007. **However, should this loan ever be in default the interest rate will be increased to Twenty-Four percent (24%) per annum for the remainder of the time that this loan is outstanding.**

**NOW, THEREFORE, WITNESSETH:** That this Deed of Trust secures to Noteholder (a) the repayment of the debt evidenced by the Note and all interest, renewals, extensions and modifications thereof; (b) the payment of all other sums, with interest, advanced under this Deed of Trust; and (c) the performance of Grantor's covenants and agreements under this Deed of Trust. For this purpose, and in consideration of One Dollar ($1.00) in hand paid, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Grantor hereby irrevocably grants and conveys to Trustee in fee simple, in trust with power of sale, the following described properties: **1230 23rd Street, Unit 505 and Parking Space 63, Washington, DC 20037.**

#### SEE ATTACHED LEGAL DESCRIPTION

Together with all the improvements now or hereafter erected on the said described land and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights, stock and all fixtures now or hereafter a part thereof. This Deed of Trust shall also cover all replacements and additions. All of the foregoing is referred to in this Deed of Trust as the "Properties";

1

Exhibit 33

**IN TRUST,** to permit said Grantor to use and occupy the said described Properties and to receive the rents, issues and profits thereof, until default be made in the payment of any indebtedness hereby secured or in the performance of the conditions and obligations made and stipulated in the said Note or in the performance of any covenants or agreements contained herein; and upon full payment of all the indebtedness secured by said Note and any extensions or renewals thereof, any additional interest thereon, and all monies advanced or expended as provided for in said Note or as herein provided for, to release and re-convey the said Properties unto and at the cost of the Grantor or the party or parties then claiming under said Grantor.

The assignment of rents of the Properties is done pursuant to the understanding that, if by reason of default under and of the terms hereof, the holder of the Note collects said rents, such holder shall have the right to appoint a receiver to enter upon, take possession of and manage the Properties and to collect the rents of the Properties, including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Properties and collection of rents including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Deed of Trust. The receiver shall be liable to account only for those rents actually received.

This Deed of Trust creates a security interest in the Properties, and, to the extent any portion of the Properties is not real properties, this Deed of Trust constitutes a security agreement from the Grantor to the Noteholder under the Uniform Commercial Code in such portion of the Properties and the proceeds (cash and non-cash) thereof. With respect to such portion of the Properties, the Noteholder shall have all rights and remedies of a secured party under the Uniform Commercial Code.

This Deed of Trust is also given to secure the reimbursement to the holder of said Note and to Trustees, and any purchaser or purchasers under the sale or sales as provided by this Trust, for any and all costs and expenses incurred in respect thereto, including reasonable counsel fees in an amount of not less than Twenty percent (20%) of the indebtedness secured by this Deed of Trust, which counsel fees are incurred or paid on account of any collection efforts or litigation at law or in equity which may arise in respect to Deed of Trust, or to the indebtedness secured hereby, or in obtaining possession of the Properties after any sale which may be made as hereinafter provided for.

Additional terms and conditions are more particularly set forth in the Note, reference to which is hereby made, said Note being incorporated herein by reference.

If the Noteholder has not received the full amount of any payment including the balloon payment by the end of five (5) calendar days after the date it is due, a late fee shall apply as follows: A late fee of **$650.00** shall become immediately due if payment is not received by the Noteholder by the 5th day of any month. **IN ADDITION, A TEN PERCENT (10%) LATE FEE SHALL BE PAYABLE ON THE PRINCIPAL BALLOON PAYMENT IF NOT PAID WITHIN FIVE (5) DAYS OF DUE DATE..** Grantor shall also be responsible for the payment of Twenty Five ($25.00) Dollars for each check that upon presentment is returned unpaid from the Bank.

2

Grantor for himself and his successors and assigns, covenants and agrees as a part of this trust as follows:

1. **CONVEYANCE RIGHTS.** That Grantor is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Properties and that the Properties are unencumbered, except for encumbrances of record. Grantor warrants specially and will defend generally the title to the Properties against all claims and demands, subject to any encumbrances of record. Grantor will execute such assurances thereof as may be requisite.

2. **PAYMENT OF PRINCIPAL, INTEREST, TAXES, CHARGES, LIENS.** That Grantor will pay the indebtedness evidenced by the note secured hereby, all taxes and assessments relating to the land and premises herein described, ground rents, all charges, liens or other obligations against the Properties and all other sums which are required to be paid by him under the terms of said Note or this Deed of Trust, including costs, expenses and attorney's fees incurred by the Trustees or the holder of said Note with respect to this Trust, the said note or the land and premises herein described, and in default of any such payment the holder of said note may pay the same, and any sum or sums so paid shall be added to the debt hereby secured, shall be payable on demand, shall bear interest at the rate set forth in the Note, and shall be secured by this Deed of Trust. The contrary notwithstanding, the authorization contained in this Section shall impose no duty or obligation on the Trustees or the Noteholder to perform any action or make any advancement on behalf of the Grantor and is for the sole benefit and protection of the Noteholder.

3. **PRESERVATION, MAINTENANCE.** That Grantor will keep the said Properties in as good order and condition as they are now and will not commit or permit any waste thereof, reasonable wear and tear accepted; and that he will not act or fail to act in any manner which will jeopardize the lien of this Deed of Trust. Noteholder may make or cause to be made reasonable entries upon and inspections of the Properties provided that Noteholder shall give Grantor notice prior to any such inspection specifying reasonable cause therefore.

4. **INSURANCE.** That Grantor will keep the improvements now existing, or hereinafter erected on said land, insured against loss by fire and other hazards, casualties and contingencies in such amounts and for such periods as may be required by the holder of said Note, and will pay promptly, when due, any premiums on such insurance. All insurance shall be carried in companies approved by the holder of said Note and the policies and renewal thereof shall be held by said holder and have attached thereto loss payable clauses in favor of and in form acceptable to the holder of said Note. If Grantor fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Properties in accordance with paragraph 2. In the event of loss, he will give immediate notice by mail to the noteholder, who may make proof of loss if not made promptly by the Grantor, and each insurance company concerned is hereby authorized and directed to make payment for such loss directly to and to the order of the holder of said Note and the insurance proceeds or any part thereof may be applied by such holder at his option either to the reduction of the indebtedness hereby secured or to the restoration or repair of the Properties. In the event of sale under the

3

terms of this Deed of Trust or other transfer of title to said Properties in extinguishment of the indebtedness secured hereby, all right, title and interest of the Grantor in and to any insurance policies then in force shall pass to the purchaser or grantee. All insurance policies shall bear an endorsement prohibiting cancellation, material modification or termination, unless thirty (30) calendar days' prior written notice thereof is provided to the Noteholder.

5. **OWNERSHIP.** That in the event ownership of the Properties becomes vested in a person other than the Grantor, the holder of said Note, may, at Noteholder's option, without notice to the Grantor, deal with such successor or successors in interest with reference to this instrument and the indebtedness secured hereby in the same manner as with Grantor, and any extension of time of the payment of the indebtedness or any other modification of the terms of the indebtedness at the instance of the then owner shall not relieve the Grantor of his liability on the Note hereby secured or from the performance of any of the covenants and agreements contained herein whether said extension or modification be made with or without the consent of the Grantor.

6. **SUBSTITUTION OF TRUSTEES.** That the irrevocable power to substitute one or more of the Trustees named herein or substituted therefor is expressly reserved to the holder of the Note secured by this Deed of Trust to be exercised any time hereafter no matter how often without notice and without specifying any reason therefor by filing for record among the land records where the instrument is recorded a Deed of Appointment, and thereupon all of the title and estate, powers, rights and duties of the Trustee thus superseded shall terminate and shall be vested in the successor Trustee or Trustees. The Grantor and the Trustee herein named or that hereafter may be substituted hereunder expressly waive notice of the exercise of this power, the giving of bond on any Trustee, and any requirement for application to any Court for the removal, substitution or appointment of a Trustee hereunder.

7. **TRUSTEE ACTS/LENDER COUNSEL.** That each Trustee acting hereunder be paid a fee of Twenty-Five Dollars ($25.00) for each document which he his required to execute under the terms of this Deed of Trust. It is expressly agreed by Grantor that the Trustee may retain as his counsel, counsel of the Noteholder, irrespective of any conflict, real or potential, such representation may cause, unless such representation is improper as determined by a Court of competent jurisdiction, after application by Grantor.

8. **EVENTS OF DEFAULT.** Grantor agrees that the following events shall constitute an event of default (i) the failure to pay any other obligation of indebtedness owned by Grantor or to permit any encumbrance, lien or other charge to be recorded against the Properties; (ii) a failure to pay any amount of interest, principal or any fee, charge, penalty, premium, or advancement call for payment of any of the installments due or any other obligations under the Note, when and as the same shall become due and payable, or if Grantor fails to perform any obligation under this Deed of Trust, then and in that event, the unpaid balance and accrued interest thereon shall, at the sole option of the holder of the Note secured hereby, at once become

4



due and payable; (iii) a voluntary or involuntary case under the Federal Bankruptcy laws or any state insolvency or similar laws is commenced by or against Grantor or Grantor consents to the appointment of or of the taking of possession by a receiver or similar official for the Grantor or any of the Grantor's properties, including but not limited to the secured Properties; (iv) failure to comply with the terms and conditions of the Acquisition, Construction and Development Loan Agreement, if applicable; and (v) AT THE SOLE OPTION OF THE SAID NOTEHOLDER, THE PRINCIPAL AMOUNT OF THE INDEBTEDNESS SECURED BY THIS DEED OF TRUST MAY IMMEDIATELY BECOME DUE AND PAYABLE IN FULL IN THE EVENT ALL OR ANY PART OF THE PROPERTY IS SOLD, CONVEYED OR OTHERWISE TRANSFERRED WHETHER OR NOT BY VOLUNTARY OR INVOLUNTARY CONVEYANCE OR BY OPERATION OF LAW (OR IF A BENEFICIAL INTEREST IN GRANTOR IS SOLD OR TRANSFERRED AND GRANTOR IS NOT A NATURAL PERSON).

9. **ACCELERATION.** That Grantor's failure to perform any of his obligations under this Deed of Trust or under said Note shall constitute a default and all indebtedness secured hereby shall immediately become due and payable at the option of the holder of said Note. Any time thereafter, at the request of the holder of said Note, the Trustees, either one of whom may act, shall have the power and it shall be their duty to sell said land and premises or any part thereof at public auction in such manner, at such time and place, upon such terms and conditions, and upon such public notice as the Trustees may deem best for the interest of all concerned, consisting of advertisement of general circulation in the county or city in which the Properties are located for such period as applicable law may require and, in case of default of any purchaser, to re-sell with such postponement of sale or re-sale and upon public notice thereof as the Trustees may determine and upon judicial approval as may be required by law, convey said land and premises in fee simple to and at the cost of the purchaser, who shall not be liable to see to the application of the purchase money; and from the proceeds of sale; FIRST, to pay all proper costs and charges, including but not limited to court costs, advertising expenses, auctioneer's allowance, the expenses, if any, required to correct any irregularity in the title, premium for Trustees' bond, auditor's fee, attorney's fee of not less than $750.00, and all other expenses of sale and or collection incurred in and about the protection and execution of this trust, and all moneys advanced for taxes due upon said land and premises at time of sale and to retain as compensation a commission of five percent (5%) on the amount of said sale or sales, it being understood that Attorney fees shall be payable whether or not Attorney and Trustees are the same person or in the same law firm; SECOND, to pay the whole amount then remaining unpaid of the principal of said Note, and interest thereon to date of payment, whether the same shall be due or not, it being understood and agreed that upon such sale before maturity of the Note the balance thereof shall be immediately due and payable; THIRD, to pay liens of record against the security properties according to their priority of lien and to the extent that funds remaining in the hands of the Trustees are available; and LAST, to pay the remainder of said proceeds, if any, to the Grantor, his heirs, personal representatives, successors or assigns upon the delivery and surrender to the purchaser of possession of said land and premises, less costs and expenses of obtaining possession. At the sole discretion of the Lender, the Borrower may be allowed to reinstate upon payment of all money due, including penalties, interest and principal. **In**



addition, the Borrower agrees to pay an administrative / reinstatement fee of 2.5% of outstanding principal for such reinstatement.

10. **TRUSTEE FEES.**    That if the Properties shall be advertised for sale, as herein above provided and not sold, Grantors will pay all costs in connection therewith including but not limited to advertising, attorney's fees, and a Trustees' commission of 2 ½ % of the then unpaid principal balance of the indebtedness, and the same shall be secured in like manner as other charges and expenses relating to the execution of this trust and bear interest at the rate stated in said Note.

11. **BANKRUPTCY.** In the event of any bankruptcy proceeding, Grantor shall pay all expenses and reasonable attorney's fees related thereto. Additionally, the Noteholder shall be entitled to interest at the rate provided for in the Note secured hereby, on any and all arrears (including interest arrears), all advances or costs incurred by the Noteholder, as those amounts are payable over time or payable through any plan proposed by the Grantor.

12. **WAIVERS.**    Grantor hereby waives the benefit of the notice of maturity, presentment, demand and protest. Any forbearance by Noteholder in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

13. **LOAN CHARGES.** If a law which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed permitted limits, then (i) any such loan charges shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected which exceeded permitted limits will be refunded. Noteholder may choose to make this refund by reducing the principal or by making a direct refund payment. If a refund reduces principal, the reduction will be treated as a partial payment.

14. **NOTICES.** Any notice to Grantor provided for in this Deed of Trust shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The Notice shall be directed to the Properties Address or any other address Grantor designates by Notice to the Noteholder. Any Notice to the Noteholder shall be given by first class mail to Noteholder's address stated herein or any other address Noteholder designates by Notice to Grantor. Any notice provided for in this Deed of Trust shall be deemed to have been given to Grantor or Noteholder when given as provided.

15. **CONDEMNATION.**    The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Properties, or for the conveyance in lieu of condemnation, are hereby assigned and shall be paid to

6

Noteholder. In the event of a total taking of the Properties, the proceeds shall be applied to the sums secured by this Deed of Trust, whether or not then due, with any excess paid to Grantor. In the event of a partial taking of the Properties in which the fair market value of the Properties immediately before the taking is equal to or greater than the amount of the sums secured by this Deed of Trust immediately before the taking, unless the Grantor and Noteholder otherwise agree in writing, the sums secured by this Deed of Trust shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Properties immediately before taking. Any balance shall be paid to Grantor. In the event of a partial taking of the Properties in which the fair market value of the Properties immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Grantor and Noteholder otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to sums secured by this Deed of Trust whether or not the sums are then due. If the Properties are abandoned by Grantor or if, after notice by Noteholder to Grantor that the condemner offers to make an award or settle a claim for damages, Grantor fails to respond to Noteholder within 30 days after the date the notice is given, Noteholder is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Properties or to the sums secured herein, whether or not then due.

16. **GRANTOR NOT RELEASED; FORBEARANCE BY NOTEHOLDER NOT A WAIVER.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Noteholder to any successor in interest of Grantor shall not operate to release the liability of the original Grantor or Grantor's successors in interest. Noteholder shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Grantor or Grantor's successors in interest. Any forbearance by Noteholder in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

17. **INSPECTION.** Noteholder may make or cause to be made reasonable entries upon and inspections of the Properties, provided that Noteholder shall give Grantor notice prior to any such inspection specifying reasonable cause therefor related to Noteholder's interest in the Properties.

18. **MISCELLANEOUS.** The provisions of this Deed of Trust shall be binding upon and inure to the benefit of Grantor, Grantor's heirs, personal representatives, successors and assigns, the Trustees and any successor or substitute trustee or trustees and the holder of the Note hereby secured. Whenever used herein, the singular shall include the plural, the plural the singular and the use of any gender shall be applicable to all genders.

19. **GOVERNING LAW; SEVERABILITY.** The laws of the jurisdiction in which the Property is located shall govern this Deed of Trust. If any provision or clause of this Deed of

7

Trust or the Note conflicts with applicable law such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision. To this end the provisions of the Deed of Trust and the Note are declared to be severable.

20. **FURTHER ASSURANCES.** At any time, and from time to time upon request of Lender, Grantor, at the sole expense of Grantor, shall make, execute, deliver and record or cause to be made, executed, delivered and recorded, any and all further instruments, certificates and other documents as may in the opinion of Holder, be reasonably necessary in order to effectuate, complete, perfect or continue and preserve the obligations of Grantor or Borrower under the Loan Documents and the lien in this Deed of Trust, and all modifications, extensions and other amendments of same. **In this regard, if Borrower is a corporation, Borrower specifically agrees to execute a Stock Voting Trust when presented to it by Lender.**

21. **OCCUPANCY. N/A**

22. **CROSS COLLATERALIZATION.** This Deed of Trust is hereby cross collateralized and cross defaulted with any current or future loans made to this Borrower by this Lender and default on any loan will be a default on all loans.

Witness the hand and seal of the Borrower.

_____(SEAL)
1230 23rd Street, LLC

STATE OF **VIRGINIA**
COUNTY OF **FAIRFAX**

I HEREBY CERTIFY that on **August 31, 2005**, before me, the subscriber, a Notary Public and in for the State and County aforesaid, personally appeared **Mary L. Juergens, Managing Member of 1230 23rd Street, LLC,** known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument bearing the date of **August 31, 2005** and acknowledged the same to be **her** act and deed for the purposes contained therein.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_____
Notary Public

My Commission Expires: 06/30/05

After recording mail to:

8

## LEGAL DESCRIPTION

Part of Lot Fifty (50) in Square Thirty-six (36), as per Plat recorded November 20, 1987 by 23 WEST LIMITED PARTNERSHIP in the Office of the surveyor of the District of Columbia in Liber 179 at Folio 182, now being more particularly described as follows:

Condominium Unit No. 505, 1230-1250 Twenty-Third Street Condominium and the limited common element parking space(s) no. 63, established by recording a Declaration and By-Laws on March 2, 1990 as Instrument No. 12871 in the Office of the Surveyor of the District of Columbia in Condominium Book 39 at Page 11.

NOTE: The condominium unit is currently designated on the records of the Assessor of the District of Columbia for taxation purposes as Lot 2004 in Square 36.

AND BEING the same property conveyed unto Mary L. JUERGENS, as sole owner, by virtue of a Deed granted by Alyson F. GANNON, dated September 21, 2001, and recorded September 24, 2001 as Instrument # 92945, among the Land Records of the District of Columbia.

Property Address: 1230 23rd Street, NW, Unit 505, Washington, DC 20037

# **Exhibit 11**

## NOTICE TO APPLICANT FOR A
## MORTGAGE LOAN
## COMMERCIAL LOAN DISCLOSURE

### IMPORTANT

DO NOT SIGN THIS FORM UNTIL YOU HAVE CAREFULLY
READ IT AND UNDERSTAND ITS CONTENTS

The purpose of this Disclosure is to inform you that by making an application for a mortgage loan which is a commercial loan, you are forfeiting certain rights as Borrower:

The provisions indicated below that are included in the loan you are making for commercial purposes would not be permitted in a non-commercial loan:

Check applicable provision(s):

   **X**      A loan origination fee exceeding the greater of **$500.00** or **4%** of the net proceeds or a loan origination fee exceeding the greater of **$250.00** or **2%** of the net proceeds of any other secondary mortgage.

   **X**      Payment to the Lender of additional commissions, finder's fees, or points for obtaining, procuring, or placing your loan.

   **X**      An actual interest rate greater than 24 percent

I have carefully read and understand the contents of this disclosure on **August 31, 2005.**

_____(SEAL)
**1230 23rd Street, LLC**

1

# Exhibit 12

## MORTGAGE REVERIFICATION AGREEMENT

THIS AGREEMENT made **August 31, 2005** by and between **FIRST MOUNT VERNON INDUSTRIAL LOAN ASSOCIATION**, a Virginia corporation, hereinafter called the "Lender" and the undersigned, hereinafter called the "Borrower".

WHEREAS, Borrower has applied for a loan in the principal sum of **Two Hundred Fifty Thousand Dollars and no/100ths ($250,000.00)**, the said advance to be repaid in monthly, interest only installments until **September 1, 2007** and secured by a lien on the property now known as **1230 23rd Street, Unit 505 and Parking Space 63, Washington, DC 20037.**

**SEE ATTACHED LEGAL DESCRIPTION; and**

WHEREAS, Borrower has agreed to permit Lender to reverify all information from time to time during the pendency of the loan with Lender.

**NOW, THEREFORE,** in consideration of the premises, Lender and Borrower hereby agree as follows:

1. As part of the application process, LENDER may verify information contained in the loan application and in other documents required in connection with the loan, either before the loan is closed or as part of its quality control program.

2. I authorize you to provide to LENDER, to any investor to whom LENDER may sell my mortgage, and to the applicable mortgage insurer, any and all information and documentation that they request. Such information includes, but is not limited to, employment history and income; bank, money market, and similar account balances; credit history; and copies of income tax returns. LENDER, any investor that purchases the mortgage or the applicable mortgage insurer may address this authorization to any party named in the loan application.

3. I understand and agree that LENDER reserves the right to change the mortgage loan review process to a full documentation program at any time. This may include verifying the information provided on the application with the employer and/or the financial institution and/or reviewing income tax returns.

4. A copy of this authorization may be accepted as an original.

5. Your prompt reply to LENDER or the Investor that purchased the mortgage is appreciated.

Borrower:

_M̲g̲ ̲L̲.̲ ̲J̲u̲y̲_____        _____
**1230 23rd Street, LLC**                          E.I.N.

1

Exhibit D

# Exhibit 13

## DOCUMENT CORRECTION CERTIFICATION

Borrower acknowledges having received a copy of the letter of instructions dated **August 31, 2005** prior to settlement for the loan in the amount of **$250,000.00** to be secured by **(SEE ATTACHED LEGAL DESCRIPTION)**, the loan to be made by First Mount Vernon Industrial Loan Association. If the settlement agent, the lender, or the lender's agent makes an error in drafting the loan documents and the errors are discovered subsequent to settlement, upon discovery of said errors, the Borrower agrees to immediately execute upon request any revision or correction documents or forms as deemed necessary by the Lender or the Lender's agent. Borrower also agrees to immediately initial any correction or re-execute any document containing typographical errors or omissions upon the request of the Lender or the Lender's agent. The Note is dated **August 31, 2005, and the settlement occurred on August 31, 2005.**

_____(SEAL)
1230 23rd Street, LLC

The foregoing instrument was acknowledged before me by **Mary L. Juergens, Managing Member of 1230 23rd Street, LLC,** on **August 31, 2005.**

_____
Notary Public

My Commission Expires: 06/30/09

1

Exhibit 37

# Exhibit 14

Resolution to Borrow from a Designated Bank

RESOLVED, that the Managing Member of 1230 23rd Street is authorized, for the
account of this LLC, and on such terms and conditions as he/she/they may deem
proper, to borrow $250,000.00 from First Mount Vernon, Industrial Loan
Association (Financial Institution) sums of money; and to sign, execute, and
endorse all such documents as may be required by said bank to evidence such
indebtedness; to discount or rediscount with said bank any of the bills
receivable owned by this Corporation; to apply for and obtain from said bank
letters of credit, and to execute agreements to secure said bank in connection
therewith, to pledge and/or mortgage any moneys on deposit or any moneys
otherwise in the possession of said band, and/or any bonds, stocks, receivables,
or other property of this Corporation, to secure the payment of any
indebtedness, liability, or obligation of this Corporation to said bank whether
now due or to become due and whether existing or hereafter incurred, to withdraw
and/or substitute any property held at any time by said bank as collateral, and
to sign and execute trust receipts for the withdrawal of same when required; and
generally to do and perform all acts and sign all agreements, obligations,
pledges, and/or other instruments necessary or required by said bank.

Mary L. Juergens, Sole and Managing Member

Exhibit 40

# Exhibit 15

## FINANCING AGREEMENT

**THIS AGREEMENT** made **August 31, 2005** by and between FIRST MOUNT VERNON INDUSTRIAL LOAN ASSOCIATION, a Virginia corporation, hereinafter called the "Noteholder" and **1230 23rd Street, LLC**, hereinafter call the "Borrower".

WHEREAS, Borrower has applied to Noteholder for a loan in the principal sum of **Two Hundred Fifty Thousand Dollars and no/100ths ($250,000.00)**, being money loaned, with the entire remaining unpaid balance of principal and interest being due and payable on **September 1, 2007** and secured by a lien on the properties now known as **SEE ATTACHED LEGAL DESCRIPTION;** and

WHEREAS, Noteholder has agreed to make the aforesaid loan applied for by the Borrower provided Borrower will agree to the repayment of all principal and interest thereon according to the terms below:

**NOW, THEREFORE,** in consideration of the premises, Noteholder and Borrower hereby agrees as follows:

1. **Interest Rate.**  The rate of interest to be charged Borrower(s) by Noteholder on the principal sum to be advanced, and the rate to be set forth in the contract of indebtedness covering the lien hereinabove described shall be a fixed rate of **Eighteen Percent (18%)** per annum. Payments shall be at least the monthly interest then due with a final payment plus accrued interest being due on or before **September 1, 2007.**

1  **Late Fees.**  If the Noteholder has not received the full amount of any payment including the balloon payment by the end of five (5) calendar days after the date it is due, a late fee shall apply as follows:  A late fee of **$650.00** shall become immediately due if payment is not received by the Noteholder by the 5th day of any month. IN ADDITION, A **TEN PERCENT (10%)** LATE FEE SHALL BE PAYABLE ON THE PRINCIPAL BALLOON PAYMENT SHOULD THE BORROWER NOT PAY SAID AMOUNT WITHIN FIVE (5) DAYS OF DUE DATE.  Borrower shall also be responsible for the payment of Twenty-five Dollars ($25.00) for each check that upon presentment is returned unpaid from the Bank.

2. **Insurance.**  Borrower(s) shall keep the Properties insured against hazard and name the Noteholder as an additional insured under the Mortgagee clause.

3. **Taxes.**  Borrower(s) shall pay all taxes and assessments due upon the Properties.

4. **Points.**  The total points to be charged Borrower(s) by Noteholder shall equal **$10,000.00.**

5. **Loan to Value Ratio.**  N/A.

6. **Acknowledgement.**  The parties hereto further acknowledge and affirm that this agreement as to the interest rate and late fees on the said loan, was executed by each of them prior to the execution of the contract of indebtedness between them, and further acknowledge receipt of a copy of this Agreement.

WITNESS the hand and seal of the Borrower.

_____ (SEAL)
1230 23rd Street, LLC

1

*Exhibit 36*

# Exhibit 16

# BORROWER AFFIDAVIT

Before me, the undersigned authority, on this day personally appeared 1230 23rd Street, LLC, and being first duly sworn, stated under penalties of perjury the following (please initial each line):

________ I am the Borrower described in a Note in favor of First Mount Vernon Industrial Loan Association in the amount of $250,000.00 dated August 31, 2005 and secured by real property known as 1230 23rd Street, Unit 505 and Parking Space 63, Washington, DC 20037;

________ I have previously informed First Mount Vernon Industrial Loan Association, either directly or through my representative(s), that the funds from this loan will be used entirely for commercial, business and/or investment purposes and I understand that the documents for this loan have been prepared based upon those representations.

________ During this closing process, I will not sign any documents which I do not understand. I further understand that if during settlement I do not understand any portion of any document I have been asked to sign, First Mount Vernon Industrial Loan Association will permit me to delay settlement for up to two (2) days in order to provide time for me to obtain the services of any attorney to answer my questions.

I any of the above statements are not correct, I will not sign this document and will so inform the closing agent so that the loan documents can be modified to conform with appropriate Federal and/or State requirements.

Witness my hand and seal on the day first above written.

________________________(SEAL)
1230 23rd Street, LLC

Subscribed and sworn to before me, the undersigned Notary Public on August 31, 2005.

________________________
Notary Public
My commission expires: 06/30/09

# **Exhibit 17**



**Government of the
District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
515 D Street, NW
Washington, DC 20001
Phone (202)727-5374

## SECURITY AFFIDAVIT — CLASS 1

| 2004 | | 50 |
|------|--------|-----|
| Square | Suffix | Lot |

I, (We) MARY L. JUERGENS _____ the owner(s) of the real property
described within certify, subject to criminal penalties for making false statements pursuant to
section 404 of the District of Columbia Theft and White Collar Crimes Act of 1982, effective
December 1, 1982 (D.C. Law 4-164; D.C. Code 22-2405), that the real property described
within is Class 1 Property, as that class of property established pursuant to D.C. Official Code
47-813(C-6)(2).

_____
Signature

_____
Signature

Subscribed and sworn to me before this [31st] day of [ August ], 200[3]

_____
Notary Public

My Commission Expires [ 06/30/05 ]
                          mm/dd/yyyy

Doc# 2005128725 Fees:$75.50
09/21/2006    11:23AM Pages 9
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD

RECORDING            $    68.00
SURCHARGE            $     0.50

# <u>Exhibit 18</u>

## ASSIGNMENT OF CONTRACTS, INCOME
## LEASES, RENTS AND PROFITS

THIS ASSIGNMENT OF CONTRACTS, INCOME, LEASES, RENTS AND
PROFITS is made August 31, 2005 by and between 1230 23rd Street, LLC (the "Borrower"),
for the benefit of First Mount Vernon Industrial Loan Association, a Virginia corporation (the
"Lender").

WITNESSES THAT:

Whereas, the Borrower is indebted to the Lender in the principal sum of Two Hundred
Fifty Thousand Dollars and no/100ths ($250,000.00), together with interest at the rate or rates
provided in the Loan Documents (as defined below) until paid. This Assignment, together with
that certain Deed of Trust of even date herewith encumbering the Property described herein,
secures that certain Note of even date herewith in like amount, and is given in consideration of a
purchase money loan in the principal amount hereof made by the Lender to the Borrower (the
"Loan"), which Note provides for payments of principal and interest in accordance with the
terms thereof, with the full debt, if not paid earlier, due and payable on September 1, 2007, and
secures to Lender: (a) the repayment of the indebtedness evidenced by and owing under the
Note, the Deed of Trust, this Assignment and any other Loan Documents (as defined below),
including all future advances and readvances of principal thereunder, whether such advances are
obligatory or are to be made at the option of the Lender, or otherwise, to the same extent as if
such future advances were made on the date of the execution and delivery of this Assignment, it
being agreed and understood that the total amount of the indebtedness so secured may increase
or decrease from time to time; provided, however, that the aggregate principal indebtedness
which the Lender may be obligated to advance to the Borrower shall not exceed the face amount
of the Deed of Trust; and it being agreed and understood that the total indebtedness secured
hereby shall include the principal amounts advanced or readvanced by the Lender, plus interest
thereon, plus all other amounts, payments and premiums due to the Lender on account hereof,
and all other indebtedness of the Borrower to the lender payable pursuant to or secured by the
Loan Documents, with interest, and all renewals, extensions and modifications of the Note; (b)
the repayment of all other sums, with interest, advanced under the provisions hereof to protect
the security of this Assignment; and (c) the performance of Borrower's covenants and
agreements hereunder and under the Note, and the other documents evidencing and securing the
loan of even date (the "Loan Documents").

NOW, THEREFORE, in consideration of the sum of Ten Dollars ($10.00) and for other
good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged,
the Borrower covenants and agrees as follows:

## 1. Grant of Collateral.

The Borrower hereby grants, conveys, assigns, transfers, and sets over to the Lender, its
successors and assigns, with power of sale, the following property (collectively called the
"Collateral"):

1

Exhibit 41

**a. Contracts and Leases.** All right, title, interest and estate of the Borrower at law or equity, in to and under any and all contracts or leases and assignments, sublease agreements, licenses and other agreements for the sale or purchase or occupancy of all or any interest in or portion, or which benefit, cover, relate to, or affect all or any portion of the following described real property: **1230 23rd Street, Unit 505 and Parking Space 63, Washington, DC 20037.**

## SEE ATTACHED LEGAL DESCRIPTION

Together with all or any portion of the improvements now or hereafter located thereon (said land and improvements being hereafter collectively called the "Property"), whether such contracts, lease or sublease agreements, licenses and occupancy agreements now exist or are hereafter entered into by the Borrower, together with all extensions, renewals and modifications of, or substitutions for, such contracts, lease or sublease agreements, licenses and other occupancy agreements (such contracts, lease(s), and sublease agreements, licenses and other occupancy agreements, and all extensions, renewals and modifications of, or substitutions for the same being hereinafter referred to individually as an "Agreement", and collectively as the "Agreements");

**b. Income, Rents and Profits.** All income, rents, fees, profits, payments and other sums of money that may now or at any time hereafter be or become due and payable to the Borrower under the terms of the Agreements;

**c. Security and Earnest Money Deposits.** All good faith or security deposits now or hereafter made under, and all guarantees of, any and all of the Agreements; and

**d. Awards, Payments, Rights and Claims.** Any award(s) or payment(s) hereafter made to the Borrower in any bankruptcy, insolvency or reorganization proceeding involving any of the contracting parties to the Agreement; any and all payments now or hereafter made by any present or future tenant of the Property in lieu of rent; any and all rights, claims, actions and causes of action of every kind which the Borrower now has or may hereafter have against any present or future contracting parties to the Agreements; and any and all awards and payments made to the Borrower resulting from partial or complete taking of the Property by virtue of the power of eminent domain, or otherwise.

2. **Present and Absolute Assignment.**

This Assignment is an absolute and present transfer and assignment to the Lender of the Collateral and is made by the Borrower as security for the Loan described above.

3. **Covenants, Warranties and Representations of Borrower.**

2

The Borrower hereby warrants, represents and agrees to or with the Lender that:

**a. No Prior Conveyances.** There are no other (prior or subordinate) assignments of the Agreements or of the rents, rentals, fees, profits, payments or other sums of money that are now or may hereafter become due and payable hereunder;

**b. No Collateral Defaults.** The Borrower has not performed any other act or executed any other instruments which might prevent the Lender from enjoying and exercising any of its rights and privileges granted hereby; and

**c. Warranties as to Agreements.** With respect to each Agreement presently in effect:

    i.    The Agreement is in full force and effect and is valid, binding and enforceable in accordance with its terms;

    ii.    As to each Agreement as to which the Borrower has provided the Lender with a copy, the Agreement has not been modified or amended in any respect, nor has any provision thereof been waived;

    iii.    None of the contracting parties to the Agreements are in default under the terms of the Agreements in any material respect;

    iv.    No rent has been prepaid under any lease beyond the rental due for the current month; and

    v.    No parties to any Agreement have any deduction, claim, recoupment or set-off against the Borrower thereunder, or against the rents or other sums payable or to be payable thereunder.

**d. No Further Conveyances or Hypothecation of Collateral.** The Borrower agrees that, so long as the Indebtedness or any part thereof shall remain unpaid, it will:

    i.    Make no further assignment, pledge or disposition of the Collateral without the prior written consent of the Lender;

    ii.    Not enter, alter, amend, modify, terminate or renew the Agreements, or waive any condition thereof, without the prior written consent of the Lender;

3

iii.     Give prompt notice to the Lender of any default by any of the contracting parties to the Agreements, including themselves, together with a complete copy of any notice delivered as a result of such default; and

iv.     At its sole cost and expense, enforce, short of termination of any Agreements, the performances or observance of each and every covenant and condition of the Agreements to be performed or observed by the other contracting parties to the Agreements; provided, however, that any Agreement related to the Property made in the ordinary course of the Borrower's business which does not create an adverse change affecting the Property or the Lender's security, need not be approved by the Lender, but a copy of the same shall be forwarded to the Lender for its files.

**c. Performance.** The Borrower covenants with Lender to observe and perform when due all the obligations imposed upon them under the Agreements and not to do or permit to be done anything to impair the security thereof.

### 4. Tenant and Contractor Estoppels.

In addition to any other provisions requested by the Lender, all Agreements shall contain a covenant to the Tenant or promissor to provide on five (5) days written notice estoppel certificates to the effect that (a) As to Leases, (i) all work has been completed and the work and premises are accepted as satisfactory except for items listed on a punch list, if any, attached to such certificate; (ii) the tenant is in full and complete possession, stating the date on which rent commenced to accrue and the date to which it is paid (which should not be more than one month in advance and not in default); and (b) as to all Agreements, (i) the Agreement is in full force and effect, and if it has been amended or modified, stating the amendment or modification; (ii) the tenant or promissor has received no notice of any sale, transfer, pledge or assignment of the Agreement or of the rentals or contract proceeds by the Borrower (except for the assignment to the Lender); (iii) the tenant or promissor has not advanced any amounts to or on behalf of the Borrower under the Agreement which have not been reimbursed; (iv) the tenant or promissor holds no claim against the Borrower which might be set off against accruing rentals or contract proceeds; and (v) the tenant or promissor understands that the Agreement has been collaterally assigned to the Lender as security for a loan to Borrower and that rent (under a Lease) may not be prepaid nor the Agreement amended or modified, or waived so as to have a material impact on the financial obligations of either the tenant/promissor or the Borrower thereunder without the Lender's prior written approval.

### 5. Collection and Possession of Collateral Prior to Default.

It is the intention of the parties that this Assignment of Contracts, Income, Leases, Rents and Profits shall be a present assignment; provided, however, that if

a.     The Borrower is not in default under the Note or any Loan Documents;

4

**b.** The Borrower has not breached any warranty, representation or agreement contained herein; and

**c.** There exists no misrepresentation by the Borrower in the Note or the Loan Documents, then the Borrower shall be entitled to collect all monies, rents, rentals, fees, profits, payments and other sums of money that become due and payable under the Agreements, but not more than one (1) month's rent in advance under any lease, without the written consent of the Lender. In the event of any such default which has not been cured during any applicable notice period, breach or misrepresentation by the Borrower, the Lender, or any agent designated by the Lender, shall have the right, power and privilege (but shall be under no obligation or duty) to take possession of the Property or any of the premises described in any lease, or any part thereof, or any part or item related thereto, including any documents, books, records, plans and specifications and accounts of the Borrower related thereto, and have, hold, manage, lease, insure, maintain and operate (including the making of repairs, alterations, additions and betterments) the same on such terms and for such period of time as the Lender may deem proper, and either with or without taking possession of said premises, Lender shall have the right, power and privilege (but shall be under no duty), and is hereby appointed by the Borrower at its true and lawful attorney-in-fact, with power of substitution, immediately to complete the performance of the Borrower under such Agreements, and collect and sue for, in its own name, or in the name of the Borrower, such income, rents, rentals, fees, payments or other sums of money as they become due. The appointment of the Lender as attorney-in-fact shall be deemed to constitute a power of attorney coupled with an interest and shall not be recoverable. A written demand by the Lender to any contracting party for the payment of income, rent, rentals, fees, profits, payments and other sums of money that become due under the Agreements, after the occurrence of any such default, breach or misrepresentation by Borrower claimed by the Lender, shall be sufficient to warrant the other contracting parties to make all future payments of such income, rents, rentals, fees, payments and other sums of money directly to the Lender without the necessity for further consent by the Borrower. Each such contracting party shall be entitled to rely upon a written demand by the Lender for such payment (without any further inquiry) and is expressly relieved of any and all duty, liability or obligation to the Borrower for all payments so made.

## 6. **Collection and Possession of Collateral after Default.**

The Lender, in the exercise of the rights and powers conferred upon it by this Assignment, shall have full power to use and apply the income, rents, rentals, fees, payments and other sums of money that become due under the Agreements to the payment of, or on account of, the following, and in such order as Lender, in its sole discretion, may determine:

-    a.   To the costs of collecting the same or performance under the Agreements (including, without limitation, attorney's fees);

5

**b.** To the payment of the sales or operating expenses of the Property, including, but not limited to, insurance, management fees and sales or leasing commissions;

**c.** To the payment of taxes and assessments (general and/or special) levied against the Property;

**d.** To the payment of the costs of all repairs, renovations, alterations, additions, betterments and improvements necessary, in the sole judgment of the Lender, to make the Property readily or more easily saleable or rentable; and

**e.** To the payment of the Indebtedness.

## 7. **Indemnification of Lender.**

The Lender shall not be liable for any loss sustained by the Borrower, or from any other act or omission of the Lender in managing the premises described in the Agreements after default by the Borrower, unless such loss is caused by the willful misconduct or bad faith of the Lender, nor shall the Lender be obligated to perform or discharge any obligation, duty or liability under said Agreements, or under or by reason of this Assignment of Contracts. The Borrower shall and hereby agrees to indemnify the Lender for, and to hold the Lender harmless from and against, any and all liability, claim, demand, loss or damage that may or might be incurred by the Lender under the Agreements or under or by reason of this Assignment of Contracts, and/or that result from any and all claims and demands whatsoever which may be asserted against the Lender by reason of any alleged obligations or undertakings on the Lender's part to perform or discharge any of the terms, covenants or agreements contained in the Agreements, such indemnification to include the Lender's attorney's fees. In the event the Lender incurs any such liability under the Agreements, or under or by reason of this Assignment, or in defense of any such claims or demands, the amount thereof, including costs, expenses and attorney's fees, shall be secured hereby; and the Borrower shall reimburse the Lender therefor immediately upon demand, failing which the Lender may, at its option, declare all sums secured hereby or by any Loan Documents to be immediately due and payable. This Agreement shall not operate to place any obligation or responsibility upon the Lender for the control, care, management or repair of the premises covered by the Agreements, nor for the carrying out of any of the terms and conditions of the Agreements, nor shall it operate to make the Lender responsible or liable for any waste committed on the Property by any tenants or for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.

## 8. **Mortgagee in Possession.**

This Assignment shall not be construed as constituting the Lender as "mortgagee in possession" of the Property in absence of the taking of actual possession of the Property. In the

6

exercise of any of the powers herein granted the Lender, no liability or claim of any kind relating or enforced against the Lender, shall be allowed, and all such liabilities and claims being expressly waived and released by the Borrower.

### 9. Waiver by Lender.

Nothing contained herein and no act done or omitted by the Lender pursuant to the powers and rights granted it hereunder shall be deemed to be a waiver by the Lender of its rights and remedies under the Note and Loan Documents, or any one of them, and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by the Lender under the terms of the Note or the Loan Documents. The right of the Lender to collect all sums due under the Note and to enforce the terms of the Loan Documents may be exercised by the Lender either prior to, simultaneously with, or subsequent to any action taken by it hereunder. Any default hereunder by the Borrower shall constitute a default under the Note and all Loan Documents, in which event, the Lender, at its option, may declare all sums secured hereby or by the Loan Documents to be immediately due and payable.

### 10. Other Collateral.

The Lender may take or release other security, may release any party primarily or secondarily liable for the Indebtedness, and may apply the other security therefor held by it to the satisfaction of the Indebtedness, without prejudice to any of its rights hereunder.

### 11. Performance of Borrower's Obligations by Lender.

The Lender may, at its option, after default hereunder or under any of the Loan Documents, although it shall not be obligated to do so, perform any covenant in the Agreements for and on behalf of the Borrower, and any monies expended in so doing shall be chargeable with interest (at the rate provided in the Note) to the Borrower, and added to the Indebtedness.

### 12. Notice to Third Parties.

The Borrower hereby authorizes the Lender to give written notice of this Assignment at any time and from time to time to any present or future contracting party to the Agreements.

### 13. Release.

Upon the full payment of the Indebtedness and the performance by the Borrower of all obligations under the Loan Documents, and upon release of the Deed of Trust of record, this Assignment shall terminate and thereafter become null and void.

### 14. Miscellaneous.

**a. Covenants of Performance.**    All of the agreements, conditions, covenants and provisions contained in each of the Loan Documents are hereby made a part of this instrument to the same extent as if they were fully set forth herein. The Guarantor covenants and agrees to

7

keep and perform, or cause to be kept and performed, all such agreements, conditions, covenants and provisions strictly in accordance with their terms.

**b. Notices.** All notices to be given pursuant to this instrument shall be sufficient if mailed postage prepaid, certified or registered mail, return receipt requested, to the addresses of the parties hereto set forth in any of the Loan Documents, or to such other address as a party may instruct in writing. Any time period provided in the giving of any notice hereunder shall commence upon the date such notice is deposited in the mail.

**c. Completeness of Agreement.** This instrument and the other Loan Documents contain the final and entire agreement between the parties hereto, and neither they nor their agents shall be bound by any terms, conditions or representations not herein or therein written.

**d. Changes.** No change or modification to this instrument shall be valid unless the same is in writing and signed by the parties hereto. The purported or alleged waiver of any of the provisions of this instrument shall not be binding or effective unless in writing and signed by the party against whom it is sought to be enforced.

**e. Enforceability.** The covenants, conditions and agreements contained in this instrument to be performed by the Borrowers and Guarantors herein are jointly and severally binding on each of the Borrowers and Guarantors herein and their heirs, executors, administrators, successors and assigns.

**f. Cumulative, Non-exclusive Rights.** The rights and remedies of the Lender under this instrument are cumulative and concurrent with and are not in lieu of, but are in addition to any other rights or remedies which the Lender shall have under the Note or the other Loan Documents, or at law or in equity.

**g. Non-Waiver.** No waiver of any breach of any covenant hereof shall be construed to be a waiver of the covenant itself or of any subsequent breach thereof, or of this instrument.

**h. Captions.** The captions contained in this instrument are for convenience and reference only and in no way define, describe or limit the scope or intent of this instrument or any of the provisions or terms hereof.

**i. Severability.** If any terms, covenants or conditions of this instrument, or its application to any person or circumstance, shall be invalid or unenforceable, the remainder of this instrument or the application of such term or provision to person or circumstances other than

8

# **Exhibit 19**

# DEED
# IN LIEU OF FORECLOSURE

THIS DEED, made this **31st day of August, 2005**, by and between **1230 23rd Street, LLC, Grantor,** and **First Mount Vernon Industrial Loan Association, Grantee**.

### Explanatory Statements

WHEREAS, Grantor is indebted to First Mount Vernon Industrial Loan Association under a Note in the original principal amount of **$250,000.00**, which note is secured by a Deed of Trust dated the **31st day of August, 2005**, and recorded among the Land Records of The District of Columbia, and

WHEREAS, Grantor is in default, as of the date of recording this Deed, under the terms of the aforesaid Note and Deed of Trust, and has agreed to convey the property to First Mount Vernon Industrial Loan Association in full satisfaction of all obligations due by her under the terms of said Note and Deed of Trust; and

WHEREAS, First Mount Vernon Industrial Loan Association has agreed to accept this deed in full and final satisfaction of all obligations of Grantor under the terms of the Note and Deed of Trust and, at the time of the acceptance of the Deed, to mark the Note and Deed of Trust paid in full.

WITNESSETH, that in consideration of the explanatory statements set forth herein, and the discharge of the Note and Deed of Trust having a current principal balance of **$250,000.00**, **1230 23rd Street, LLC,** Grantor, does hereby grant and convey unto First Mount Vernon Industrial Loan Association, its successors and assigns, in fee simple, all that property situate, lying and being in the District of Columbia known as **1230 23rd Street, NW, Unit 505 and**

Exhibit 4L

**Parking Space 63, Washington, DC 20037** and more particularly described on **Schedule A.** attached hereto and made a part hereof.

WITNESS my hand and seal.

_____(SEAL)
**1230 23rd Street, LLC, Grantor**

STATE OF
COUNTY OF

    I HEREBY CERTIFY that on **August 31, 2005,** before me, the subscriber, a Notary Public in and for the State and County of aforesaid, personally appeared **Mary L. Juergens, the authorized representative of 1230 23rd Street, LLC** known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument bearing the date of **August 31, 2005** and acknowledged the same to be **her** act and deed for the purposes contained therein.

    IN WITNESS WHEREOF, I have here unto set my hand and official seal.

_____
Notary Public

My Commission Expires: 06/30/09

After recording, mail to:

2

## DISCLOSURE STATEMENT – DEED IN LIEU OF FORECLOSURE

The undersigned Borrowers hereby acknowledge and agree as follows:

1. As a part of the financing of the property known as **1230 23rd Street, Unit 505 and Parking Space 63, Washington, DC 20037** by First Mount Vernon Industrial Loan Association in the amount of **$250,000.00** on **August 31, 2005,** the Borrowers have executed a Deed in Lieu of Foreclosure;

2. The Deed in Lieu of Foreclosure conveys title to the property to First Mount Vernon Industrial Loan Association;

3. First Mount Vernon Industrial Loan Association will hold the Deed in Lieu of Foreclosure and not record it in the land records so long as Borrower is not in default in the repayment of the financing;

4. First Mount Vernon Industrial Loan Association will record the Deed in Lieu of Foreclosure and take over title to the property if the Borrowers are two (2) payments past due and have not made satisfactory payment arrangements;

5. If the Borrowers are past due, it is the Borrowers' responsibility to contact First Mount Vernon Industrial Loan Association at (703) 823-6800 to make satisfactory payment arrangements;

6. If the Borrowers do not contact First Mount Vernon Industrial Loan Association, no further notice will be given to the Borrowers before the Deed in Lieu of Foreclosure is recorded;

7. Once the Deed in Lieu of Foreclosure is recorded, the Borrowers will no longer own the Property and the debt will be cancelled.

1230 23rd Street, LLC

1

those to which it is held invalid or unenforceable shall not be affected, and each term shall be valid and enforceable to the fullest extent permitted by law.

**j.  Joint Venture.**  Any intention to create hereby a joint venture or partnership relation between the parties hereto is expressly disclaimed.

**k.  Governing Law.**  The parties hereto agree that this instrument shall be governed by the laws of the jurisdiction in which the property is located.

**IN WITNESS WHEREOF,** the Borrower, with full power and authority to do so, intending that this Assignment shall constitute an instrument under seal, has executed or caused these presents to be executed, delivered, and sealed on the day and year first above written.

**BORROWER:**

_____ (SEAL)
1230 23rd Street, LLC

**STATE OF VIRGINIA
COUNTY OF FAIRFAX**

I HEREBY CERTIFY that on **August 31, 2005,** before me, the subscriber, a Notary Public in and for the State and County aforesaid, personally appeared **Mary L. Juergens, Managing Member of 1230 23rd Street, LLC,** known to me or satisfactorily proven to the be person whose name is subscribed to the within instrument bearing the date of **August 31, 2005,** and acknowledged the same to be **her** act and deed for the purposes contained therein.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_____
Notary Public

My Commission Expires: 06/30/09

9