IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| MARY JUERGENS ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case Number: 06-CA-1524 |
| ) | |
| URBAN TITLE SERVICES, INC. et al. ) | |
| ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF JUERGEN'S F.R.CIV.P.26 (a) (2) (B) EXPERT DISCLOSURE OF HARVEY S. JACOBS, SETTLEMENT ATTORNEY**

Pursuant to Rule 26 (a) (2) (B) of the Federal Rules of Civil Procedure for the reasons that follow, Plaintiff Mary Juergens, by and through her attorneys, J.P. Szymkowicz, John T. Szymkowicz and the Law Firm of Szymkowicz & Szymkowicz, LLP, submits the following expert disclosure of Harvey S. Jacobs, 11 North Washington Street, Suite 640, Rockville MD 20850 who Plaintiff Juergens plans to call as an expert witness at trial in the fields of real estate settlements and duties of attorneys:

**Educational Background**

The George Washington University, Washington, District of Columbia, Bachelor of Business Administration Degree in Accounting, 1980.

Brooklyn Law School, Brooklyn, New York, Juris Doctor Degree from 1983

**Bar Memberships**

State of New York:  March 28, 1984
District of Columbia:  January 22, 1985 Bar No. 385756
State of Maryland: June 15, 1995

**Disciplinary Actions**

No disciplinary proceedings.

1

**Employment History**

| | |
|---|---|
| 1983-1984 | Robson & Miller – Associate<br>New York, NY |
| 1984-1986 | Austrian, Lance & Stewart – Associate<br>New York, NY |
| 1986-1988 | Mudge, Rose, Guthrie, Alexander & Ferdon – Associate<br>New York, NY |
| 1988-1989 | Ginsburg, Feldman & Bress – Associate<br>Washington, DC |
| 1989-2000 | Joyce & Jacobs – Partner<br>Washington, DC |
| 2000-Present | Jacobs & Associates – Owner<br>Stress-Free Settlements, LLC – Owner<br>Washington, DC and Rockville, MD |

**Employment Functions**

Personally processed and conducted more than one thousand (1000) residential real estate settlements.

**Professional Positions (current or previous positions/memberships)**

Member DC Bar Real Estate Housing and Land Use Section
Past Chairman of the Real Property Transactions Committee of the Real Estate Housing
    and Land Use Section
Elected to Steering Committee of the DC Bar Real Estate Housing and Land Use Section.
DC Bar Association
Maryland State Bar Association
Montgomery County, MD Bar Association

Frequent Panelist and Moderator on Real Estate Topics. Approximately 25-30 programs over past ten years to the following groups and organizations:

    District of Columbia Bar Association
    Maryland Land Title Association
    The George Washington University – Business School --MBA Program
    The George Washington University – Business School --Center for the
        Advancement of Small Business
    The George Washington University Alumni Association
    Virginia Tech – Executive MBA Program
    Downtown DC Kiwanis Club
    The Montgomery County Maryland Bar Association
    Montgomery County, MD Consumer Federation
    Montgomery County, MD Chamber of Commerce

Coordinator, Panelist and Moderator of Annual "Fundamentals of Real Estate Closings in the District of Columbia" for Lorman Educational Services.

Speaker: "Understanding the HUD-1 Settlement Statement" a nation-wide online CE Seminar for Lorman Educational Services.

Panelist: "Real Estate Settlements: Nuts and Bolts and the Role of Buyer's and Seller's Counsel." For the District of Columbia Real Estate Housing and Land Use Section

### Real Estate Industry Affiliations and Memberships

Affiliate Member of Greater Capital Area Association of Realtors
District of Columbia Land Title Association
Maryland Land Title Association
Co-Founder IRESPA –Independent Real Estate Professionals Association

### Notary Public

Washington DC and State of Maryland

### Licenses

Maryland Insurance License for Title Insurance; resident producer individual RPI 41951

### Community Involvement

Vice-President – Downtown DC Kiwanis Club
Frequent Guest on ABC-TV World News Now Network New Program
Frequent Guest on WUSA-TV "9 On your side" consumer protection segments.

### List of Recent Articles and Publications:

Washington Post – *Count to Five Before you Send the Last Check* – Sunday, May 4, 2008;
Seeking Alpha –*Homebuilders Pulling Our of More Markets- Housing Tracker* – April 21, 2008;
Washington Post – *If You Walk Away Expect to Pay* – Sunday, April 20, 2008;
Washington Post  - *New Year Opens with Inspector Licensing and New Taxes*- Sunday, December 30, 2007;
Washington Post – *Not your Average Day At Work* –Saturday November 10, 2007
Washington Post  - *Realtor Discourages Use of Outside Lenders- Long & Foster Pushes Own Mortgages* – Business Section Monday, November 5, 2007;
The Business Gazette –Networking- Friday, August 10, 2007;
Washington Post – *Whose Service with Settlement?* Sunday July 29, 2007;

<u>Stress-Free Settlement Newsletter</u> – Periodic e-Newsletter with over 1400 local Real Estate Professional Subscribers.

<u>Washington Consumer CheckBook: Recommended</u>

<u>Washington Business Journal "TOP TITLE COMPANIES" Stress-Free Settlements, LLC selected as one of Top Title Companies 2007, 2006, & 2005.</u>

Editor <u>DC Bar Practice Manual</u> Section on Residential Real Estate Settlements

## Previous Expert Witness Testimony

1. DC Bar Counsel – Reviewed Confidential Case brought Against DC Title Company related to disclosure of historic easements at settlement; industry standards of settlement practice in DC.
2. Allan P. Feigelson, Esq. -- for Bank of America – Real Estate Case involving equitable subrogation settled.
3. <u>James Linn et al. v. Landmark Title Corporation, et al</u>.  DC Superior Court Case No. 05-CA-0004644B – Real Estate Settlement practices among other issues.
4. <u>Juergens v. Urban Title Services, Inc. et al</u>.  U.S. District Court for the District of Columbia 06-CA-1524.

## Information Considered in Forming Opinions

I am submitting this report based on my education and training in the field of processing real estate settlements.  The data and other information considered by me in forming my opinions expressed herein were the following:

a.	My review of Plaintiff Juergens' 3rd Amended Complaint;

b.	My knowledge, education, training and experience in the field of processing real estate settlements and

c.	My review of the following 73 exhibits introduced during the depositions of Robert William Carney, William Kenney, Paul Erb, Arthur Bennett, Dale Duncan and Matin Mooradian in the above-referenced case as well as the transcripts of these depositions:

1.	Notice of Mary Juergens' Deposition
2.	FMV Uniform Residential Loan Application dated 8/30/05
3.	FMV Borrower Affidavit
4.	Letter from John DiNucci to Kalbian Hagerty dated 9/17/04
5.	UT Uniform Residential Loan Application dated 8/15/03

6. Notice of Foreclosure Sale of Condominium Unit for Assessments Due dated 9/9/03
7. UT Note dated 10/20/03
8. UT HUD-1 dated 10/20/03
8a. UT HUD-1 dated 10/20/03 - version with Mr. Erb's Handwriting
9. UT Deed of Trust dated 10/20/03
10. IRS Certificate of Release dated 3/10/04 in amount of $716.13
11. IRS Certificate of Release dated 3/10/04 in amount of $5,363.45
12. Mary Juergens' Credit Report dated 7/15/03
13. Letter from Paul Erb to Mary Juergens dated 3/9/04
14. Letter from Nicole Brown to Mary Juergens dated 11/21/05 plus attached letter dated 10/24/03 from Kass Mitak to 1230 23rd Street Condominium Association (with attached check dated 10/21/03 in amount of $8,563.22 paid to 1230 23rd Street Condominium Association and attached check dated 3/9/04 paid to 1230 23rd Street Condominium Association in amount of $1,592.58).
15. Good Faith Estimate - Atlantic Capital (with multiple attached disclosures)
16. UT Deed of Trust dated 10/20/03 (this is the same as Exhibit 9).
17. Letter from John DiNucci to Robert Carney dated 5/25/04
18. Mary Juergens' Credit Report dated 8/31/05
19. Letter from Kalbian Hagerty to John DiNucci dated 6/29/04
20. Fax from John DiNucci to Paul Erb dated 6/2/04
21. Mary Juergens' Response to Defendants' Joint Interrogatories and Requests for Production of Documents
22. Mary Juergens' Original Complaint
23. Mary Juergens' 1st Amended Complaint (to correct misnomer of Urban Title).
24. Mary Juergens' 2nd Amended Complaint
25. Order of Judgment in State Farm v. Juergens dated 7/14/04
26. Letter from George Owen to Dale Duncan dated 8/5/05
27. Letter from Mary Juergens to First Mount Vernon dated 8/4/05
28. Check from First Mount Vernon to Mary Juergens in amount of $96,000.00 dated 8/31/05
29. Check from Brickshire to George Owen in amount of $61,195.11 dated 9/1/05
30. FMV HUD-1 dated 8/31/05
30a. FMV HUD-1 dated 8/31/05 provided by Brickshire during the deposition of Brickshire's corporate designee
31. FMV Balloon Deed of Trust Note dated 8/31/05
32. Letter from FMV to Mary dated 9/7/06
33. FMV - Commercial Loan Balloon Deed of Trust Note dated 8/31/05
34. FMV Deed dated 8/31/05
35. FMV Mortgage Reverification Agreement dated 8/31/05
36. FMV Financing Agreement dated 8/31/05
37. FMV Document Correction Certification dated 8/31/05
38. FMV Assignment of Contracts, Income, Leases, Rents and Profits dated 8/31/05
39. 1230 23rd Street, LLC Operating Agreement dated 8/31/05
40. Resolution to Borrow from a Designated Bank
41. FMV Assignment of Contracts, Income, Leases, Rents and Profits dated 8/31/05

42. FMV Deed in Lieu of Foreclosure dated 8/31/05
43. Letter from First Mount Vernon to Mary Juergens dated 12/1/06
44. Envelope from First Mount Vernon to Mary Juergens (with handwritten notation from Mary Juergens' mother) with postmark dated 12/8/07
45. FMV Loan Payoff Statements (multiple statements)
46. FMV Checks to FMV (multiple checks)
47. Letter from FMV to Mary Juergens dated 11/15/05
48. Letter from FMV to Mary Juergens dated 11/3/05
49. Mary's Passport
50. Mary's signature on blank page above her name
51. Mary's signature on a blank page
52. Mary's Affidavit in reply to Defendants' Summary Judgment Motion
53. Two pages from Letter from Mary Juergens to First Mount Vernon dated 8/4/05
54. Pay-off Note - Owen Trust
55. Satisfaction of George Owen Trust
56. Letter from Brickshire to D.C. Real Property Tax dated 9/3/05
57. D.C. Recorder of Deeds receipt dated 9/21/06 in the amount of $5,934.50
58. Letter dated 9/5/01 signed by Douglas Yearley, Mary Juergens and Alyson Gannon regarding title ownership of condo
59. Notice of Intent to Accelerate Installments and File Lien from the 1230 23rd Street Condominium Association dated 5/7/08
60. Deed dated 9/21/01 from Alyson Gannon to Mary
61. Mary's Affidavit in Support of her Motion for Partial Summary Judgment
62. 1230 23rd Street LLC's Articles of Organization
63. Disbursement Sheet provided by Mr. Erb during his deposition
64. Disbursement Sheet provided by Brickshire during its deposition
65. Appraisal re: FMV Loan
66 Check dated 8/18/05 from "The Beacon Group" to Virginia State Corporation Commission re: "1230 23rd Street, LLC"
67. Check dated 8/31/06 from FMV ILA to Virginia State Corporation Commission re: "1230 23rd Street, LLC"
68. Check dated 2/28/08 from FMV ILA to Virginia State Corporation Commission re: "1230 23rd Street, LLC"
69. Certification of Maryland Secretary of State re: Dale Duncan's Notary License
70. Presidential Savings Bank Wire Disbursal dated 8/31/05 in the amount of $73,718.69 re: FMV loan
71. Chevy Chase Bank receipt dated 7/7/08 re: Mary Juergens' Safe Deposit Box
72. Letter from Virginia Secretary of the Commonwealth re: Dale Duncan's Notary License
73. FMV's Accounting of Payments made on Mary Juergens' FMV loan

**Opinions and Conclusions and Bases and Reasons for Opinions and Conclusions**

**I.     I have reviewed the Plaintiff's Third amended Complaint in this matter and related exhibits, documents, transcripts and authoritative resource materials such**

**as statutes, practice manual, and the like and have formed an opinion as to the allegation contained in said Third Amended Complaint as follows:**

<u>LOAN I GEORGE OWEN LOAN SETTLED BY URBAN</u>:

1. The allegation in paragraph 23 reflects a glaring conflict of interest between the neutral duties of a settlement attorney and a mortgage loan broker
2. The allegation in paragraph 36 reflect a gross violation of industry standards and the Real Estate Settlement Procedures Act. ("RESPA") (the act which governs the conduct and information disclosure for all residential real estate settlements nationwide) which requires the actual person or entity conducting the settlement to be reflected in Box H of the HUD-1 Settlement Statement.
3. The allegation in Paragraph 37 also reflects a RESPA violation.
4. Most lenders subject to Patriot Act now require at least one form of photo, government issued, and current identification before being allowed to transact a closing.
5. The allegations in paragraph 41 are true.
6. The allegations in paragraph 42 are likely to be a violation of Urban's agreements under its agency agreement with its title underwriter. It also is likely to be a violation of Plaintiff's Privacy rights.  Since if it cannot locate the file it cannot ensure that Plaintiff's personally identifiable private and confidential information has not been disclosed. Breach of Privacy Policy.  There is a "new" Federal Law that requires all persons in possession of confidential information like social security numbers, date of birth, credit card numbers to safeguard them.
7. The allegations contained in paragraphs 43-56 are all true.
8. The allegations contained in paragraph 58 are true.
9. The allegations contained in paragraph 59 violates the DC Wet Settlement Act requiring disbursement of all settlement funds within 24 hours.
10. The allegations contained in paragraph 60 violates the DC Wet Settlement Act requiring disbursement of all settlement funds within 24 hours.
11. The allegations in paragraph 61 reflects negligence, malfeasance, and breach of fiduciary duty.
12. The allegations in paragraph 62 reflect an unethical co-mingling of escrowed funds belonging to the Plaintiff and funds deposited by Defendant Kenny belonging to someone other than Plaintiff.  Breach of fiduciary duty to make sure there are sufficient funds in escrow account before proceeding with the settlement or disbursing funds at settlement.
13. The allegations in paragraph 63a. is a RESPA violation if HUD-1 not provided upon request at least 24 hours prior to the settlement.
14. The allegations in paragraph 102 would also require the obtaining of a business license, and registration of the property as rental unit for DC Rent Control purposes.

<u>LOAN II SETTLED BY BRICKSHIRE</u>:

15. The allegations in paragraph 122 are a RESPA violation.

16. The allegations in paragraph 122 and 123 appear to be simply self-serving denials of what it means to be the settlement attorney. To clarify: the party in the "room" handling the paperwork which forms the basis of the insurable interest in the property i.e., the lien of the Deed of Trust is the one responsible for the actions occurring in that room including but not limited to observing if all parties signing are really who they say they are, are not under the influence of any alcohol or other drugs, or under duress or any other mental or physical condition that negates their free will to enter into a legally binding contract. The party conducting the settlement has a duty to ensure that the party signing can either read and understand what they are signing or has a duty to explain or obtain explanations of the ramifications of what they are signing. Merely getting a signature on the bottom of numerous pieces of paper is insufficient to discharge the settlement agent's duty to the borrower and all the other parties to the typical multi-party settlement.
17. The allegations in paragraphs 124-126 reflecting Brickshire's explanations, appear to be self-serving and not in compliance with industry standards
18. The allegations in paragraph 130 do not address the real issue. In order to be a valid notarization the Notary must be a Notary Public in the jurisdiction in which the person is signing. In other words, if this deal was signed physically in the District of Columbia then a District of Columbia Notary Public must authenticate the action. If deal signed in Virginia then they needed a bona fide Virginia Notary.
19. The allegations in paragraph 133 reflect a glaring failure on Brickshire's part to reasonably supervise its staff resulting in gross negligence.
20. The allegation in paragraph 134 is fraud, and a RESPA violation for charging a fee where no services were performed.
21. The allegations in paragraphs 135-137 appear to be governed by DC Code 42-404(c) and (d).
22. The allegations in paragraph 142 reflects either that Brickshire is lying or grossly incompetent. In order to provide title insurance to the new Lender, i.e., Mount Vernon, Brickshire must conduct a title search to ascertain, at a minimum who owns the subject property and thus be in a position to issue a title commitment identifying that vested owner to the new lender i.e., Mt. Vernon to insure that the party they are loaning $250,000 to really owns the property. It is basic, fundamental title practice to determine who is vested with title and when it was vested and from whom it was derived.
23. The allegations in paragraphs 144-149 are true.
24. The allegations in paragraph 150 are true in a commercial deal you do nto need a HUD-1 format.
25. The allegations in paragraph 151
26. The allegations in paragraphs 151 reflecting Duncan's claim is false. While it is true that if this were a "real" commercial loan and not the sham transaction that it is, you could use any format you want. But since the HUD-1 format was used and since it does contain those representations they do bind the party signing those representations.
27. The allegations in paragraph 151a-154 are true.

8

28. The allegations in paragraphs 155-159 do accurately reflect typical operations of a mismanaged and negligent settlement operation. It is true that many drafts of a HUD-1 get prepared. They are prepared by a computer program in this case I believe it to be called Softpro (Proform). I am familiar with SoftPro and several other computer-based settlement software programs. In ALL cases the latest version of the HUD-1 existing in the computer is always available to be re-printed.
29. The allegations in paragraphs 160-163 in a real residential personal loan would cause the effective yield on this loan to go sky high and certainly be usurious since the borrower does not have the use of those escrowed funds and thus they have not been technically disbursed.
30. The allegations in paragraphs 164-166 reflect sloppy and negligent settlement practice.  Breach of a duty to the Borrower to promptly record her deed and lien instruments, and furthermore to promptly payoff and release of record the Owen lien.
31. The allegations in paragraph 167 are supported by the federal law that provide a borrower with a three day right of rescission if the loan is for her principal resident as was the case here.
32. The allegations in paragraph 168 constitute a fraud on the Plaintiff.   Brickshire's actions in over insuring the property violate fundamental title insurance law which provides in a refinance scenario that a title company may only insure up to the loan amount (enhanced Eagle polices already contain provisions for inflation at no additional premium).  To allow a title company to insure for a higher amount opens the door for all manner of fraud against the borrower in the form of higher premiums and potentially against the title underwriter for paying out higher claims than legally justified.
33. The allegations in paragraph 169 are true.
34. The allegations in paragraph 170a is also a RESPA violation.
35. The allegations in paragraph 172-175 would appear to make the Mt. Vernon Loan *Ultra Vires*.
36. The allegations in paragraph 176a is also a RESPA violation.

**COUNTS I-IX** I have reviewed the allegations contained in these counts and based on the laws and facts as adduced and for the reasons stated in my foregoing expert's report these counts are fully justified by the facts and law cited.

**COUNT XII** I have reviewed the allegations contained in this count and based on the laws and facts as adduced and for the reasons stated in my foregoing expert's report this count is fully justified by the facts and law cited.

**COUNTS XVIII-XXIV** I have reviewed the allegations contained in these counts and based on the laws and facts as adduced and for the reasons stated in my foregoing expert's report these counts are fully justified by the facts and law cited.

**COUNTS XXVI-XXIV** I have reviewed the allegations contained in these counts and based on the laws and facts as adduced and for the reasons stated in my foregoing expert's report these counts are fully justified by the facts and law cited.

**COUNTS XXXII** I have reviewed the allegations contained in this count and based on the laws and facts as adduced and for the reasons stated in my foregoing expert's report this count is fully justified by the facts and law cited.

**COUNTS XXXV-XXXIX** I have reviewed the allegations contained in these counts and based on the laws and facts as adduced and for the reasons stated in my foregoing expert's report these counts are fully justified by the facts and law cited.

With respect to all remaining Counts, the undersigned is not an expert with respect to the entire subject matter contained within those counts. As such does not render an opinion as those Counts in their entirety.

In addition, I have reviewed Gary Schiller, Mortgage Broker's Expert Report in this case and as this report relates settlement procedures and real estate settlement industry standard and practices and I concur with is opinions and conclusions as they relate to real estate settlement procedures with respect to each and every defendant, and incorporate his opinions and conclusions in my report.

### Compensation for Study and Testimony

My billing rate for the preparation of my expert report and disclosure, including the time I spent preparing my expert report and disclosure, reviewing Plaintiff Juergens' 3rd Amended Complaint, deposition transcripts and exhibits is $400.00 per hour or part thereof. To date I have spent 25 hours on these tasks. I have received $10,000 in advance for services that have been and will be performed in connection with my expert report and disclosure and in connection with the time to be spent preparing for trial and actually appearing at trial to testify as an expert.

My billing rate for appearance at depositions and trial is $400.00 per hour. I begin charging when I leave my home or office and end when I return to my home or office.

Respectfully Submitted,

Dated: August 1, 2008

Harvey S. Jacobs, Esq.

FILENAME \p M:\HJ909-001\Pld-Expert Witness.doc