# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

ANDREA SLOAN, as Guardian and
Conservator on behalf of Mary Juergens, an
Incapacitated Individual, in both Mary
Juergens' individual capacity and as the sole
member of "1230 23rd Street, LLC,"

    Plaintiff,

     v.

URBAN TITLE SERVICES, INC., *et al.*,

    Defendants.

</td><td>

Civil Action No. 06-1524 (CKK)

</td></tr>
</table>

## MEMORANDUM OPINION
### (September 17, 2009)

The above-captioned lawsuit was filed by the original Plaintiff in this matter, Mary

Juergens,[1] nearly three years ago to challenge the legality of two disparate loans extended to

Plaintiff, each of which was secured by a condominium located at 1230 23rd Street, N.W.,

Apartment 505, Washington, D.C. 20037 (the "Condo"). Plaintiff named as Defendants in this

action Urban Title Services, Inc. ("UTS") as well as Dale Duncan, First Mount Vernon Industrial

Loan Association, Inc. ("FMVILA"), Arthur Bennett, and Brickshire Settlements, LLC

("Brickshire").[2] According to Plaintiff, the first of the two loans at issue in this case was

---

[1] Subsequent to filing the instant action, Ms. Juergens was found to be an "incapacitated individual," and Andrea Sloan was appointed as Guardian and Conservator on behalf of Ms. Juergens and has been substituted as Plaintiff for Ms. Juergens, in both her individual capacity and in her capacity as the sole member of 1230 23rd Street, LLC. *See* Docket No. [114] at 2; *see also* Fourth Am. Compl., Docket No. [120]. For convenience, the Court shall refer to Ms. Juergens and Ms. Sloan interchangeably as "Plaintiff."

[2] Plaintiff also originally named as Defendants in this matter First Mount Vernon Mortgage, L.L.C. ("FMVLLC"), as well as individuals William Kenney, Robert William Carney,

extended by the Owen Living Trust with the assistance of UTS (hereinafter the "Owen Loan"),

while the second loan (hereinafter "FMV Loan") was extended by FMVILA with the assistance

of Bennett, Duncan and Brickshire (collectively with FMVILA, "FMV Defendants").

Currently pending before the Court are a series of cross-motions for partial summary

judgment filed by the various parties in this action.  This Memorandum Opinion addresses only

those motions for partial summary judgment filed by Plaintiff with respect to allegations in her

Fourth Amended Complaint relating to the second loan—*i.e.*, the loan extended by FMVILA

with the assistance of Bennett, Duncan and Brickshire—and the FMV Defendants' related cross-

motions for partial summary judgment.  There are nine such motions: (1) Plaintiff's [158]

Motion for Summary Judgment on the Issue of Whether Defendant FMVILA's Loan Violated

Virginia Code § 6.1-237.6(A)(2) by Extending a Commercial Loan on Property Located Outside

of the Commonwealth of Virginia; (2) FMV Defendants' [180] Cross Motion for Summary

Judgment regarding Virginia Code § 6.1-237.6(A)(2); (3) Plaintiff's [175] Motion for Partial

Summary Judgment on the Issue of FMVILA's Counterclaims; (4) Plaintiff's [159] Motion for

Summary Judgment on the Issue of Whether Defendant FMVILA's Loan Violated Virginia Code

§ 6.1-237.6(A)(6) by Failing to Provide Required Loan Disclosures; (5) FMV Defendants' [184]

Cross-Motion for Summary Judgment on the Issue of a Failure to Provide Loan Disclosures; (6)

---

and Paul Erb.  Plaintiff's claims against Defendant FMVLLC were dismissed by this Court in a
Memorandum Opinion and Order dated February 4, 2008, *Juergens v. Urban Title Servs.*, 533 F.
Supp. 2d 64, 75 (D.D.C. 2008), and Plaintiff's claims against the individual Defendants Kenney,
Carney, and Erb.have been voluntarily dismissed by Plaintiff, *see* Jt. Stip. Regarding Dismissal
of Defendants William Kenney and Paul Erb, Docket No. [112] and Stip. of Dismissal, Docket
No. [113] (dismissing without prejudice any and all claims asserted against Defendants Kenney
and Erb individually); *see also* Notice and Stip. of Vol. Dismissal, Docket No. [116] (dismissing
any and all claims asserted against Defendant Carney).

Plaintiff's [160] Motion for Summary Judgment on the Issue of Improper Notarization; (7) FMV

Defendants' [181/182] Cross Motion on the Issue of Improper Notarization; (8) Plaintiff's [162]

Motion for Summary Judgment on the Issue of the Lack of Consideration for the Alleged Sale of

Property from Mary Juergens to the 1230 23rd Street, LLC; and (9) FMV Defendants' [173]

Cross-Motion on the Issue of the Adequacy of Consideration for the Sale of Property.

Upon a searching review of the memoranda filed with respect to the pending motions, the

exhibits thereto, the relevant case law and statutes, and the entire record herein, the Court orders

as follows, for the reasons set forth below:

* Plaintiff's [158] Motion for Summary Judgment on the Issue of Whether

Defendant FMVILA's Loan Violated Virginia Code § 6.1-237.6(A)(2) by

Extending a Commercial Loan on Property Located Outside of the

Commonwealth of Virginia and FMV Defendants' [180] Cross-Motion for

Summary Judgment regarding Virginia Code § 6.1-237.6(A)(2) are DENIED;

* Plaintiff's [175] Motion for Partial Summary Judgment on the Issue of

FMVILA's Counterclaims is DENIED;

* Plaintiff's [159] Motion for Summary Judgment on the Issue of Whether

Defendant FMVILA's Loan Violated Virginia Code § 6.1-237.6(A)(6) by

Failing to Provide Required Loan Disclosures and FMV Defendants' [184]

Cross-Motion for Summary Judgment on the Issue of a Failure to Provide

Loan Disclosures are DENIED;

* Plaintiff's [160] Motion for Summary Judgment on the Issue of Improper

Notarization is DENIED-IN-PART and the FMV Defendants' [181/182]

Cross-Motion on the Issue of Improper Notarization is GRANTED-IN-PART, insofar as each relates to the question of whether the Deed and Deed of Trust are void as between the parties in this litigation based upon improper notarization, but the motions are HELD-IN-ABEYANCE-IN-PART insofar as each relates to Plaintiff's allegations that the Deed and Deed of Trust should be stricken from the Office of the Recorders of Deed.  Plaintiff shall file, on or before **October 2, 2009**, a notice to the Court advising it as to whether her request is now moot in light of the recent agreement by the parties regarding the sale of the Condo; and

* Plaintiff's [162] Motion for Summary Judgment on the Issue of the Lack of Consideration for the Alleged Sale of Property from Mary Juergens to the 1230 23rd Street, LLC and the FMV Defendants' [173] Cross-Motion for Partial Summary Judgment on the Issue of the Adequacy of Consideration for the Sale of the Property from Mary Juergens to the 1230 23rd Street LLC are DENIED.

## I. BACKGROUND

*A.    Factual Background*

The Court assumes familiarity with the factual background of this case, which is set forth in detail in both its May 25, 2007 Memorandum Opinion, *see generally Juergens v. UTS*, 246 F.R.D. 4 (D.D.C. 2007) (hereinafter "*Juergens I*"), and its February 4, 2008, Memorandum Opinion, *see generally Juergens v, UTS*, 533 F. Supp. 2d 64 (D.D.C. 2008) (hereinafter "*Juergens II*"), and therefore discusses only those facts that are relevant to the motions at issue in the instant Memorandum Opinion.  In particular, although Plaintiff's Fourth Amended Complaint

4

includes a variety of allegations regarding the Owen Loan, the Court does not address herein the facts relevant to that loan because Plaintiff's claims as to UTS are irrelevant to the motions at issue in this Opinion.

At the outset, the Court notes that it is difficult, if not impossible, at this time to set forth a concise and comprehensive statement of the facts in this matter as they relate to the FMV Loan and Plaintiff's allegations against the FMV Defendants.  This is largely because Plaintiff, in proceeding with the instant motions, has continued her strategy of prosecuting this case in a piecemeal fashion.  She has filed a multitude of motions for partial summary judgment that are each limited to a single issue and that do not include or discuss the vast majority of her allegations against the FMV Defendants in this litigation.  Moreover, each motion includes only a truncated statement of material facts that addresses solely those facts that Plaintiff believes are relevant to the issue being challenged in that particular motion.  The relevant cross-motions filed by the FMV Defendants—*i.e.*, those motions that were filed in direct response to and focus solely on the issues raised in Plaintiff's motions— generally follow the lead of Plaintiff's opening motions and respond in kind.  As a result of this fragmented approach, the parties' briefing on Plaintiff's motions for partial summary judgment provide the Court with a rather disjointed picture of the relevant facts and events surrounding the FMV Loan.

Although Plaintiff subsequently filed a supplemental consolidated statement of material facts that purports to relate to *all* summary judgment motions and cross-motions filed by the parties between February and April, 2009, *see* Pl.'s [199] Stmt. of Mat. Facts, this statement is similarly unhelpful.  Not only was it filed in violation of this Court's orders and the local rules of this Court, but it also adds little to the factual statements already contained in her motions for

partial summary judgment.  First, the consolidated statement, which was filed in conjunction

with Plaintiff's replies and submitted after principal briefing on her motions had been completed,

does not comport with this Court's local rules.  As set forth in Local Civil Rule 7(h),

> [e]ach motion for summary judgment shall be accompanied by a statement of
> material facts as to which the moving party contends there is no genuine issue, which
> shall include references to the parts of the record relied on to support the statement.
> An opposition to such a motion shall be accompanied by a separate and concise
> statement of genuine issues setting forth all material facts as to which it is contended
> there exists a genuine issue necessary to be litigated, which shall include references
> to the parts of the record relied on to support the statement.

LCvR 7(h).  Quite clearly, the rule does not permit a party to file an additional statement of

material facts after the principal briefing on a party's motion for summary judgment has been

completed and an opposition has already been filed.  Such a filing not only contradicts the plain

language of this rule, but also violates the principal intent behind the requirements of LCvR 7(h)

to ensure that all parties are aware of and work from the same set of material facts in discussing

and responding to the merits of the relevant motion(s) for summary judgment.  Moreover, the

Court repeatedly advised the parties that they are required to "comply *fully* with Local Civil

LCvR 7(h)" and that it "may strike pleadings not in conformity with these rules."  *See, e.g.,*

1/30/09 Scheduling and Procedures Order, Docket No. [155] at 2 (emphasis in original).

Second, the supplemental statement does not shed any additional light on the facts

relevant to Plaintiff's pending motions for partial summary judgment.  The Court has reviewed

the statement in its entirety and finds that it largely repeats the factual assertions already included

in Plaintiff's individual statements.  Moreover, to the extent the statement actually includes

additional facts, such information is not particularly helpful or relevant to the Court's

consideration of the pending motions and does not resolve any of the factual disputes highlighted

below.  Accordingly, the Court shall disregard Plaintiff's [199] Statement of Material Facts in

ruling on the pending cross-motions.  The Court is therefore left with only the statements of

material fact filed with respect to each individual motion for partial summary judgment now

pending before the Court.  Given that these statements are narrowly tailored to each individual

motion, the Court shall address the relevant facts as set forth in those statements below in

discussing and ruling upon the parties' specific motions.

> B.          *Procedural Background*

Plaintiff filed her Fourth Amended Complaint in the above-captioned civil action on

October 7, 2008.  *See* Fourth Am. Compl., Docket No. [120].  Plaintiff sets forth 38 causes of

action against the Defendants in this matter, 25 of which relate to the FMV Defendants.  *See*

*generally id.*  Discovery in this case is now closed, and the parties have each filed a series of

dispositive motions on many of Plaintiff's allegations in her Fourth Amended Complaint, as well

as on the various counterclaims asserted by the Defendants in this action.  For clarity's sake, the

Court, as discussed above, addresses herein only those motions for partial summary judgment

filed by Plaintiff with respect to allegations in her Fourth Amended Complaint relating to the

second loan—*i.e.*, the loan extended by FMVILA with the assistance of Duncan, Bennett, and

Brickshire—and the FMV Defendants' related cross-motions for partial summary.  All other

pending dispositive motions shall be addressed by separate order.

## II.  LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 56, a party is entitled to summary judgment

"if the pleadings, the discovery and disclosure materials on file, and any affidavits show that

there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c).  *See also Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).

Under the summary judgment standard, the moving party bears the "initial responsibility of

informing the district court of the basis for [its] motion, and identifying those portions of the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In response, the non-moving party must "go

beyond the pleadings and by [its] own affidavits, or depositions, answers to interrogatories, and

admissions on file, 'designate' specific facts showing that there is a genuine issue for trial."  *Id.*

at 324 (internal citations omitted).

Although a court should draw all inferences from the supporting records submitted by the

nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary

judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To be material, the

factual assertion must be capable of affecting the substantive outcome of the litigation; to be

genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-

fact could find for the nonmoving party.  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C.

Cir. 1987); *Liberty Lobby*, 477 U.S. at 251 (the court must determine "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided

that one party must prevail as a matter of law").  "If the evidence is merely colorable, or is not

sufficiently probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249-50

(internal citations omitted).  "Mere allegations or denials in the adverse party's pleadings are

insufficient to defeat an otherwise proper motion for summary judgment."  *Williams v.*

*Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996).  The adverse party must do more than simply

"show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

### III.  DISCUSSION

As explained above, Plaintiff, in filing the instant motions for partial summary judgment, has continued to pursue a strategy of piecemeal litigation in this case. Although such an approach may, in certain circumstances, be useful, the Court finds that the approach has not been successful in the case at hand—at least as concerns Plaintiff's motions for partial summary judgment. Plaintiff's case against the FMV Defendants rests on a single allegation: that the FMV Loan was intended to be, or should properly be construed as, a personal mortgage loan—not a commercial loan. Plaintiff's attempts to parse her case against the FMV Defendants into several discrete questions that may be resolved independently of one another has therefore proven to be largely unsuccessful. Most, if not all, of the issues raised by Plaintiff in her motions for partial summary judgment are intertwined with and substantively related to this ultimate question.

As the parties appear to agree, the relevant documents relating to the FMV Loan, when taken at face value, purport to characterize the loan as a $250,000 commercial loan extended by FMVILA to 1220 23rd Street, LLC (hereinafter, "LLC"), a limited liability corporation that the FMV Defendants assisted Plaintiff in creating and of which Plaintiff is the sole shareholder. Plaintiff nonetheless contends that the loan is, or should properly be construed as, a personal

residential loan, based upon two alternative theories: (1) Plaintiff claims that the FMV Defendants offered her a personal mortgage loan, not a commercial loan, and that she signed only documents related to a residential loan; thus, although the FMV Loan documents on their face purportedly describe the FMV Loan as commercial in nature, such documents were forged and the entire transaction is fraudulent, Pl.'s Fourth Am. Compl. ¶¶ 89-91; (2) alternatively, Plaintiff alleges that, even assuming she did in fact sign the relevant loan documents purporting to describe the FMV Loan as commercial in nature, the loan is nonetheless unlawful as it is an illegal consumer residential loan impermissibly disguised as a commercial loan in order to avoid fair lending laws and disclosure requirements, *id.* ¶ 92.

Not unsurprisingly, the FMV Defendants deny Plaintiff's allegations and assert that the FMV Loan is a valid commercial loan extended to Plaintiff's LLC. *See id.* ¶¶ 94-96. According to the FMV Defendants, they assisted Plaintiff, at her request, in establishing the LLC. Title to the Condo was then transferred from Plaintiff to the LLC, and FMVILA extended a lawful commercial loan for $250,000 to the LLC, which was secured by the Condo. *See id.* ¶ 96.

As presented by the parties, the key question underlying this case is whether the FMV Loan is a legitimate commercial loan lawfully extended to the LLC or whether it is an unlawful loan—either because the underlying documents were fraudulently forged by the FMV Defendants or because it was unlawfully disguised by the FMV Defendants as a commercial loan in order to avoid fair lending laws and disclosure requirements. However, based on the record before the Court at this time, this ultimate question appears unlikely to be suitable for resolution on summary judgment. Indeed, as is discussed below, the parties continue to dispute the basic question of whether Plaintiff even signed the relevant documents relating to the creation of the

LLC, the transfer of the Condo from Plaintiff to the LLC, and the FMV Loan itself. *See infra* at p. 28. Accordingly, because many of the arguments asserted in Plaintiff's motions for partial summary judgment are substantively dependent upon resolution of this key question, the Court finds itself largely unable to resolve Plaintiff's motions at this time.

> A.      *The Parties' Cross-Motions for Partial Summary Based Upon Alleged Violations of Virginia Code § 6.1-237.6*

Plaintiff has filed two motions for partial summary judgment relating to Virginia Code §
6.1-237.6. First, Plaintiff filed a [158] Motion for Summary Judgment on the Issue of Whether
Defendant FMVILA's Loan Violated Virginia Code § 6.1-237.6(A)(2) by Extending a
Commercial Loan on Property Located Outside of the Commonwealth of Virginia, to which the
FMV Defendants responded by filing a [179/180] Cross Motion for Summary Judgment
regarding Virginia Code § 6.1-237.6(A)(2). Second, Plaintiff filed a [159] Motion for Summary
Judgment on the Issue of Whether Defendant FMVILA's Loan Violated Virginia Code § 6.1-
237.6(A)(6) by Failing to Provide Required Loan Disclosures, to which the FMV Defendants
responded by filing a [183/184] Cross-Motion for Summary Judgment on the Issue of a Failure to
Provide Loan Disclosures. The Court shall address each set of related motions in turn.

> 1.      Virginia Code § 6.1-237.6(A)(2)

The Court begins with Plaintiff's [158] Motion for Summary Judgment on the Issue of
Whether Defendant FMVILA's Loan Violated Virginia Code § 6.1-237.6(A)(2) by Extending a
Commercial Loan on Property Located Outside of the Commonwealth of Virginia. Plaintiff
contends that, pursuant to Virginia Code § 6.1-237.6(A)(2), FMVILA was prohibited from
making loans for commercial purposes or loans secured by real property located outside of the

Commonwealth of Virginia.  *See* Fourth Am. Compl. ¶¶ 178-181.  Accordingly, Plaintiff argues

that—even assuming the FMV Loan is a commercial loan—it was unlawfully extended by

FMVILA in violation of Virginia Code, and Plaintiff is therefore entitled to an order declaring

the FMV Loan "invalid, unenforceable, illegal, *void ab initio* and in contravention of public

policy."  *See* Pl.'s [158] MSJ at 11.  For this same reason, Plaintiff contends that FMVILA's

counterclaim for equitable subrogation and equitable mortgage should be dismissed because

FMVILA may not seek equitable remedies based upon an unlawful loan.  *Id.* at 9-10.[3]

       The FMV Defendants filed a timely opposition to Plaintiff's motion, and also filed a

cross-motion for summary judgment as to their counterclaims for equitable subrogation

(Counterclaim I) and equitable mortgage (Counterclaim II).  *See* Defs.' [179/180] Opp'n/Cross-

MSJ.  According to the FMV Defendants, Plaintiff's argument as set forth in her motion for

partial summary judgment is based upon a flawed reading of the relevant statute.  Plaintiff filed a

consolidated reply in support of her motion and opposition to the FMV Defendants' cross-

motion.  *See* Pl.'s [192] Reply/Opp'n.  The FMV Defendants declined to file any reply.

Accordingly, the parties' cross-motions are fully briefed and ripe for the Court's review.

---

     [3] Somewhat puzzlingly, despite the fact that Plaintiff has moved for summary judgment on these counterclaims in the instant motion, Plaintiff nonetheless filed a later, independent [175] Motion for Partial Summary Judgment on the Issue of FMVILA's Counterclaims for equitable subrogation and equitable mortgage.  Plaintiff is not entitled to two bites at the apple, and for that reason alone, Plaintiff's later-filed motion on the same counterclaims should be denied. Regardless, it is clear that the additional motion is without merit.  Plaintiff's [175] Motion for Partial Summary Judgment is, by Plaintiff's own admission, contingent upon a favorable decision on the four motions for partial summary judgment that are at issue in this Memorandum Opinion.  *See* Pl.'s [175] MSJ (Plaintiff "believes that the instant motion should be heard if any of those motions are granted").  Given that the Court below denies each of Plaintiff's motions for partial summary judgment, the Court easily concludes that Plaintiff is not entitled to summary judgment on this additional motion. Accordingly, Plaintiff's [175] Motion for Partial Summary Judgment on the Issue of FMVILA's Counterclaims is DENIED.

Turning first to Plaintiff's assertion that the FMV Loan was extended in violation of Virginia Code, the Court agrees with the FMV Defendants that Plaintiff's argument is based on a fundamentally flawed reading of the relevant statute and therefore fails.  Plaintiff's argument focuses on Virginia Code § 6.1-237.6(A)(2), which provides in relevant part that:

> A.        No industrial loan association shall:
>
> * * *
>
> 2.        Take an interest in collateral other than the real estate or residential property, including fixtures and appliances thereon, securing a "mortgage loan," as that term is defined in § 6.1-409; however, an interest in collateral other than real estate may be taken if the real estate taken as collateral does not have sufficient equity to secure the mortgage loan.

Neither party has directed the Court to any case law discussing or applying this statutory provision nor is the Court itself aware of any such relevant case law.  It therefore appears that the proper interpretation of Virginia Code § 6.1-237.6(A)(2) is an issue of first impression.

Accordingly, the Court begins with the plain language of the statute.  *See Negusie v. Holder*, __ U.S. __, 129 S. Ct. 1159, 1178 (2009) ("As with all statutory interpretation questions, construction of the [relevant statutory provision] must begin with the plain language of the statute.").  Upon a close review of the above-quoted language, the Court agrees with the FMV Defendants that this provision provides only that, when an industrial loan association extends a mortgage loan, it cannot take an interest in collateral other than the real estate that secures the loan—unless that real estate lacks sufficient equity to secure the mortgage loan, in which case, the industrial loan association may take an interest in other collateral.  The term "mortgage loan" is in turn defined as

a loan made to an individual, the proceeds of which are to be used primarily for personal, family or household purposes, which loan is secured by a mortgage or deed of trust upon any interest in one- to four-family residential property located in the Commonwealth, regardless of where made, including the renewal or refinancing of any such loan . . . ."Mortgage loan" shall not include any loan secured by a mortgage or deed of trust upon any interest in a more than four-family residential property or property used for a commercial or agricultural purpose.

Virginia Code § 6-1.409.  This provision, when read together with Virginia Code § 6.1-237.6(A)(2), clearly provides that Virginia Code § 6.1-237.6(A)(2) applies only to certain types of *personal* loans extended by an industrial loan association—*i.e.*, "mortgage loans" as defined in Virginia Code  § 6.1-409.  Quite clearly, then, Plaintiff's allegation that the FMV Loan was extended in violation of this statutory section is wholly dependent upon a finding that the FMV Loan is actually a personal mortgage loan, and not a commercial loan as the FMV Defendants argue.  As discussed above, however, this question has not yet been resolved and is unlikely to be resolved on the record now before the Court.  Consequently, summary judgment on Plaintiff's allegations that FMV Loan was unlawfully extended in violation of Virginia Code § 6.1-237.6(A)(2) is not appropriate at this time.

Plaintiff's attempts to avoid this outcome are without merit.  Plaintiff contends that summary judgment is appropriate at this juncture because Virginia Code § 6.1-237.6(A)(2) prohibits industrial loan associations like FMVILA from extending any commercial loans or from extending any loans secured by property outside of the Commonwealth of Virginia. Therefore, regardless of the exact nature of the FMV Loan, it was extended in violation of Virginia Code § 6.1-237.6(A)(2).  Plaintiff's argument, however, is premised on a flawed and convoluted reading of the relevant statutes.  According to Plaintiff, Virginia Code § 6.1-237.6(A)(2) should be read in conjunction with Virginia Code § 6.1-409 to explicitly restrict an

14

industrial loan association, like FMVILA, to extending *only* personal mortgage loans that are secured by personal residences located within Virginia.  This argument is simply not supported by the plain language of the relevant statutory provisions.  As discussed above, Virginia Code § 6.1-237.6(A)(2) provides only that, when an industrial loan association extends a mortgage loan (as defined by § 6.1-409), it cannot take an interest in collateral other than the real estate that secures the loan unless that real estate lacks sufficient equity to secure the mortgage loan.  Contrary to Plaintiff's suggestion, it does not prohibit an industrial loan association from making any loans other than personal mortgages.

Indeed, not only does such an interpretation contradict the plain language of Virginia Code § 6.1-237.6(A)(2), it also contradicts the basic principle that industrial loan associations shall have all the powers conferred on banks by Virginia law and shall be treated as banks for purposes of state supervision and control.  *See* Virginia Code § 6.1-228 ("Industrial loan associations . . . shall have all the powers conferred on banks by the Virginia Banking Acts ( § 6.1.-3 *et seq.*), shall be subject to all restrictions applicable to banks, and shall for the purposes of state supervision and control be banks.").  Surely Plaintiff does not contend that banks in the Commonwealth of Virginia can only make personal mortgage loans.  Plaintiff's suggestion that industrial loan associations are so limited is equally without merit.

Plaintiff's argument also directly contradicts the various statutory provisions indicating that the Virginia legislature intended industrial loan associations to be able to extend commercial loans to commercial entities.  For example, Virginia Code § 6.1-234 provides that loans made by an industrial loan association to "any person, *firm*, or *corporation*" cannot be made for "a greater amount in the aggregate . . . than twenty percent of the paid-in capital stock and capital surplus of

the association." As an another example, Virginia Code § 6.1-237.2 requires industrial loan

associations to file an annual written report with the State Corporate Commission that

"contain[s] such information as the Commissioner may require concerning its business and

operations during the preceding calendar year." Reference to the latest annual report form

provided by the State Corporate Commission demonstrates that industrial loan associations are

required to report on, *inter alia*, the number and amount of *commercial*, mortgage and consumer

loans made in the last year. *See* State Corp. Comm'n, Bureau of Financial Institutions Annual

Report of Industrial Loan Associations for the Year Ending December 31, 2008, *available at*

http://www.scc.virginia. gov/publicforms/124/ccb6602.pdf.

Plaintiff's assertion that FMVILA cannot extend loans secured by property outside the

Commonwealth of Virginia is equally flawed. This argument appears to be based on Virginia

Code § 6.1-409, which defines a "mortgage loan" as a personal loan that is "secured by a

mortgage or deed of trust upon any interest in one- to four-family residential property in the

Commonwealth." However, as is readily apparent from the plain language of this statutory

provision, the requirement that the loan be secured by residential property within Virginia is

applicable only to mortgage loans. This provision says nothing about an industrial loan

association's ability to extend commercial loans or other types of personal consumer loans

secured by property outside Virginia.

Thus, contrary to Plaintiff's assertions, Virginia Code § 6.1-237.6(A)(2) applies only to

mortgage loans. As the predicate question of whether the FMV Loan actually is a personal

mortgage loan does not appear suitable to resolution on summary judgment, summary judgment

on Plaintiff's allegations that FMV Loan was unlawfully extended in violation of Virginia Code

§ 6.1-237.6(A)(2) is not appropriate at this time.  Accordingly, Plaintiff's [158] Motion for

Summary Judgment on the Issue of Whether Defendant FMVILA's Loan Violated Virginia Code

§ 6.1-237.6(A)(2) by Extending a Commercial Loan on Property Located Outside of the

Commonwealth of Virginia and the FMV Defendants' [179/180] Cross-Motion for Summary

Judgment are DENIED, insofar as each moves for summary judgment with respect to the alleged

violation of Virginia Code § 6.1-237.6(A)(2).

  The Court turns next to the FMV Defendants' contention that Defendant FMVILA and

Defendant Bennett are entitled to the equitable relief requested in their counterclaims for

equitable subrogation and equitable mortgage.  It is undisputed that Defendant FMVILA paid

approximately $61,000 of the FMV Loan proceeds to pay off Plaintiff's loan from the Owen

Living Trust and that an additional $95,000 of the FMV Loan proceeds was given to Plaintiff at

closing.  Defs.' [179/180] Stmt. ¶¶ 2-3; Pl.'s [192] Resp. ¶¶ 2-3.  In addition, the parties agree

that approximately $67,500 was escrowed as an interest reserve to FMVILA to pay the mortgage

interest on the Condo, although Plaintiff contends that this was done without her knowledge or

approval.  Defs.' [179/180] Stmt. ¶ 4; Pl.'s [192] Resp. ¶ 4.  Defendants FMVILA and Bennett

assert that they are entitled to equitable subrogation and equitable mortgage based on these

payments and request that, "in the event this Court sets aside [any of the relevant FMV Loan

Documents]," it should enter a declaration in the FMV Defendants' favor that the Condo is

subject to a lien in these amounts.  *See id.*  Quite obviously, the Court has not yet made any

substantive ruling on the validity of the underlying FMV Loan Documents.  As FMVILA and

Bennett's counterclaims for equitable subrogation and equitable mortgage are contingent upon

such a finding, the Court concludes that any ruling on the counterclaims is premature at this

time.[4]  Accordingly, FMV Defendants' [179/180] Cross-Motion for Summary Judgment with

respect to the counterclaims for equitable subrogation and equitable mortgage is DENIED.

2.                Virginia Code § 6.1-237.6(A)(6)

The Court turns next to Plaintiff's [159] Motion for Summary Judgment on the Issue of

Whether Defendant FMVILA's Loan Violated Virginia Code § 6.1-237.6(A)(6) by Failing to

Provide Required Loan Disclosures.  As the title suggests, Plaintiff argues that the FMV

Defendants failed to provide Plaintiff with required loan disclosures when they extended the

FMV Loan to the LLC and that the FMV Loan should therefore be declared "invalid,

unenforceable, illegal, *void ab initio*, and in contravention of public policy."  Pl.'s [159] MSJ at

2.  The FMV Defendants filed an opposition and cross-motion for summary judgment, *see* Defs.'

[183/184] Opp'n/Cross-MSJ, and Plaintiff filed a consolidated opposition/reply, *see* Pl.'s [193]

Opp'n/Reply.  FMV Defendants declined to file a reply.

At the outset, the Court highlights a significant fact overlooked by both

parties—Plaintiff's Fourth Amended Complaint does **not** contain any allegation that the FMV

Defendants violated the loan disclosure requirements of Virginia Code § 6.1-237.6(A)(6).

Although the Fourth Amended Complaint includes allegations that the FMV Defendants violated

Virginia Code § 6.1-237.6(A)(2) as discussed above, it is entirely devoid of any reference to

---

[4] In addition, the Court notes that Plaintiff and the FMV Defendants have recently advised the Court that Plaintiff intends to sell the Condo at issue to a third-party purchaser and that FMVILA has agreed to waive its lien on the property in exchange for the net proceeds from that sale.  *See* Jt. Status Report, Docket No. [236].  This agreement was reached after briefing on the parties' cross-motions had been completed.  Consequently, the parties' motions do not address the impact, if any, that the sale of the Condo to a third-party buyer may have on Defendant FMVILA and Defendant Bennett's counterclaims for equitable mortgage and equitable subrogation.  For this reason as well, the Court finds that any decision on the counterclaims is premature at this time.

Virginia Code § 6.1-237.6(A)(6).  Rather, Plaintiff asserts only that the FMV Defendants

violated the District's disclosure laws, *see* Fourth Am. Compl. ¶¶ 176, 182—but contains no

similar assertion that the FMV Defendants also violated *Virginia's* disclosure laws.  Plaintiff

cannot amend her complaint by merely taking discovery on a subject or by filing a motion for

summary judgment; she must amend her complaint in accordance with Fed. R. Civ. P. 15(a).  *See*

*Youssef v. F.B.I.*, 541 F. Supp. 2d 121, 161-62 (D.D.C. 2008); *see also Sharp v. Rosa Mexicano*,

496 F. Supp. 2d 93, 97 n. 3 (D.D.C. 2007) (plaintiff may not, "through summary judgment briefs,

raise [ ] new claims . . . because plaintiff did not raise them in his complaint, and did not file an

amended complaint" such claims may be dismissed); *DSMC, Inc. v. Convera Corp.*, 479 F. Supp.

2d 68, 84 (D.D.C. 2007) (rejecting plaintiff's attempts to broaden its conspiracy claims in its

opposition to defendant's motion for summary judgment because plaintiff failed to amend its

complaint).  Accordingly, it would appear that any claim by Plaintiff that the FMV Defendants

violated Virginia Code § 6.1-237.6(A)(6) should not be considered as it presents issues not

included in the Fourth Amended Complaint.  The FMV Defendants, however, did not raise this

defense in their opposition to Plaintiff's motion and instead responded directly to the substance

of Plaintiff's arguments.  Therefore, given that the Court raised this issue for the first time in this

Memorandum Opinion, the Court shall, in exercising its discretion, briefly examine the merits of

Plaintiff's claim at this time.

Plaintiff asserts—and the FMV Defendants do not dispute—that Plaintiff did not receive

any loan disclosures with respect to the FMV Loan.  According to Plaintiff, the failure to provide

her with any loan disclosures violated section 6.1-237.6(A)(6) of the Virginia Code.  The FMV

Defendants respond that no loan disclosure were required because the FMV Loan was a

commercial (and not personal) loan.  Again, as previously emphasized, genuine disputes of material fact preclude resolution at this time of the ultimate question of whether the FMV Loan should be considered a commercial or personal loan.  Accordingly, Plaintiff may succeed at this juncture only if she can show that she is entitled to summary judgment, even assuming the FMV Loan is a commercial loan.  This Plaintiff has not done.

Plaintiff's argument focuses on section 6.1-237.6(A)(6) of the Virginia Code, which provides as follows:

> A.         No industrial loan association shall:
>
> 6.          If acting as a mortgage lender, fail to require the person closing the mortgage loan to provide the borrower, prior to closing of the mortgage loan, with a (i) settlement statement and (ii) disclosure which conforms to that required by the provisions of 15 U.S.C. 1601 et seq. and Regulation Z, 12 C.F.R. Part 226.

Accordingly, pursuant to the plain language of this statutory provision, an industrial loan association must provide the required loan disclosures *only* if it is "acting as a mortgage lender" with respect to a "mortgage loan."  As discussed above, a "mortgage loan" is defined as a personal loan secured by property with the Commonwealth of Virginia.  *See supra* at pp. 13-14.[5] Thus, as with Virginia Code § 6.1-237.6(A)(2), whether the FMV Defendants violated this statutory provision is predicated upon a finding that the FMV Loan is a personal mortgage loan,

---

[5] For reasons that are unclear, Plaintiff initially argued that the Court should interpret the term "mortgage loan" as used in this provision, not as it is defined in Virginia Code § 6.1-409, but as set forth in a decision by the Virginia State Supreme Court from 1849.  *See* Pl.'s [159] MSJ at 7 (quoting *Forkner v. Stuart*, 47 Va. 197 (1849)).  Although somewhat unclear, this argument was apparently aimed at demonstrating that loans made to corporate entities may also be considered a "mortgage loan" for purposes of Virginia Code § 6.1-237.6(A)(6).  Plaintiff's argument, however, is entirely without merit—a point Plaintiff herself apparently recognizes, given that she did not renew any such assertion in her consolidated opposition/reply.  *See generally* Pl.'s [193] Opp'n/Reply.

and not a commercial loan as the FMV Defendants contend.  Accordingly, for the same reasons

discussed above with respect to Virginia Code § 6.1-237.6(A)(2), Plaintiff's allegation that the

FMV Loan was extended in violation of Virginia Code § 6.1-237.6(A)(6) is equally unsuited to

resolution at the summary judgment stage.  Therefore, Plaintiff's [159] Motion for Summary

Judgment on the Issue of Whether Defendant FMVILA's Loan Violated Virginia Code § 6.1-

237.6(A)(6) by Failing to Provide Required Loan Disclosures and the FMV Defendants' Cross-

Motion for Summary Judgment on the Issue of a Failure to Provide Loan Disclosures are

DENIED.[6]

> B.      *Allegations that the Deed and Deed of Trust are Invalid Based Upon Deficiencies*
>         *in the Documents' Notarization*

The Court next considers Plaintiff's [160] Motion for Summary Judgment on the Issue of

Improper Notarization.  Plaintiff contends that certain documents relating to the transfer of the

Condo from Plaintiff to the LLC and the FMV Loan are invalid because the documents were not

properly executed, acknowledged and certified by a valid notary public.  Accordingly, Plaintiff

asks that these documents be ordered stricken from the D.C. Recorder of Deeds' records.  The

FMV Defendants filed an opposition and cross-motion for summary judgment, *see* Defs.'

[181/182] Opp'n/Cross-MSJ, Plaintiff filed a consolidated opposition/reply, *see* Pl.'s [194]

Opp'n/Reply, and FMV Defendants filed a reply, *see* Defs.' [222] Reply.

As an initial matter, the Court notes that it is not entirely clear from Plaintiff's briefing

---

[6] Although the Court does not grant the FMV Defendants' motion—given that they themselves failed to challenged Plaintiff's failure to include such allegations in her complaint—Plaintiff is hereby placed on notice and advised that she may not continue to pursue allegations that the FMV Defendants violated Virginia Code § 6.1-237.6(A)(6) without amending her complaint to include such assertions.

which particular documents she claims are invalid as a result of alleged deficiencies in

notarization.  In her motion for partial summary judgment, Plaintiff originally requested that the

Court declare invalid and strike from the Recorder of Deeds' records all documents relating to

the FMV Loan, including: (a) the Deed conveying the Condo to the LLC (hereinafter, the

"Deed"); (b) the Commercial Loan Balloon Deed of Trust executed with respect to the FMV

Loan (hereinafter, the "Deed of Trust"); (c) the Balloon Deed of Trust Note; (d) the Document

Correction Certification; (e) the Borrower Affidavit; (f) the D.C. Office of Tax and Revenue

Security Affidavit; (g) the Assignment of Contracts, Income, Leases, Rents and Profits; and (h)

the Deed in Lieu of Foreclosure.  *See* Defs.' [181] Opp'n/Cross-MSJ at 4; *see also* Pl.'s [160]

MSJ at 2.  Despite this apparent request that *all* documents be declared invalid, however,

Plaintiff's opening briefing argued only that the Deed was invalid and did not address or

otherwise substantively discuss any of the other documents.  *See generally* Pl.'s [160] MSJ.

Moreover, as the FMV Defendants emphasize in their opposition and cross-motion for summary

judgment, many of these additional documents that Plaintiff purportedly sought to strike from the

Recorder of Deeds' records had not even been submitted to the Recorder of Deeds; only the

Deed, Deed of Trust, and the Assignment of Contracts, Income, Leases, Rent and Profits were

actually registered with the Recorder of Deeds in this case  *See* Defs.' [181] Opp'n /Cross-MSJ at

4; Defs.' [181/182] Stmt. ¶ 12.  Plaintiff, in filing her consolidated opposition and reply, does not

contest that the FMV Defendants' assertion is accurate and indeed, does not renew her request

that *all* documents be declared invalid.  Rather, Plaintiff makes clear that she in fact intends only

to challenge the validity of the Deed and Deed of Trust in the pending motion for partial

summary judgment.  *See* Pl.'s [194] Opp'n/Reply at 8 (arguing solely that the "deed and deed of

trust at issue are void" due to improper notarization).   Accordingly, the Court proceeds with the

understanding that Plaintiff is, at present, challenging only the validity of the Deed and Deed of

Trust based upon alleged deficiencies in the notarization of the documents.

The facts relevant to this issue are as follows.  The Deed and Deed of Trust were

purportedly notarized by Defendant Duncan on August 31, 2005 and were subsequently recorded

with the D.C. Recorder of Deeds on September 21, 2006.  Pl.'s [160] Stmt. ¶ 1; Defs.' [181/182]

Stmt.¶¶ 11-12.  The FMV Defendants concede that Duncan was not a valid notary public at the

time he purported to notarize the documents.  Defs.' [181/182] Resp. ¶ 2.  Although the parties

dispute whether Plaintiff in fact actually signed these documents at issue, *see* Pl.'s [160] Stmt. ¶

4; Defs.' [181/182] Resp.¶ 4; *see also infra* at p. 28, this dispute does not preclude a

determination of whether the admittedly improper notarization of the documents—by

itself—invalidates the Deed and Deed of Trust as a matter of law.

Plaintiff contends that the Deed and Deed of Trust are required to be executed and

acknowledged and certified before a proper notary public in order to be valid in the District of

Columbia.  *See* Pl.'s [160] MSJ at 9.  Plaintiff's argument is predicated upon D.C. Code § 42-

401, which addresses the "[e]ffective dates of deeds" and "exception[s]" thereto, and which

provides that

> [a]ny deed conveying real property in the District, or interest therein, or declaring or
> limiting any use or trust thereof, executed and acknowledged and certified as
> provided in §§ 42-101, 42-121 to 42-123, 42-306, and 42-602 and delivered to the
> person in whose favor the same is executed, shall be held to take effect from the date
> of the delivery thereof, except that as to creditors and subsequent bona fide
> purchasers and mortgagees without notice of said deed, and others interested in said
> property, it shall only take effect from the time of its delivery to the Recorder of
> Deeds for record.

23

According to Plaintiff, because neither the Deed nor the Deed of Trust were properly "acknowledged and certified" before a notary public, the documents are invalid as between Plaintiff and the FMV Defendants, pursuant to D.C. Code § 42-401.  *See* Pl.'s [160] MSJ at 10. The FMV Defendants oppose Plaintiff's motion, arguing that a proper notary/acknowledgment is required only for recordation of a deed and does not affect the validity of the deed as between the signature parties.  *See* Defs.' [181] Opp'n/Cross-MJS at 4-5.  According to the FMV Defendants, D.C. Code § 42-401 deals exclusively with recordation statutes and priority preferences and does not control the validity of a conveying instrument.  *Id.* at 7.  Rather, the FMV Defendants contend that, under District law, "a defectively notarized deed is still valid between the parties so long as the common law requirements (signed, sealed and delivered) are met."  *Id.* at 6.

Significantly, this is not the first time that the Court has been called upon by Plaintiff to interpret D.C. Code § 42-401.  Prior to discovery, Plaintiff filed not one, but two motions for partial summary judgment advancing this very same argument.  *See* Pl.'s Mot. for Partial Summary J. on Issue of Lack of Properly Executed Deed to 1230 23rd Street, NW #505, Docket No. [26]; Pl.'s Mot. for Partial Summary J. Issue of Lack of Properly Executed Deed to 1230 23rd Street, NW #505, Docket No. [47].  Indeed, comparison of these motions to the now-pending motion for partial summary judgment demonstrates that the motions are, in relevant part, identical, and that Plaintiff has simply cut and pasted the same substantive argument into the instant motion for partial summary judgment.  *Compare* Docket Nos. [26], [47], and [160].  At the time Plaintiff initially made this argument, then-existing disputes of material fact as to the notarization issue precluded summary judgment prior to discovery, and Plaintiff's motions were denied without prejudice.  *See Juergens I*, 246 F.R.D. at 10-11; *Juergens II*, 533 F. Supp. 2d at

24

78-80.  In so ruling, however, the Court explicitly rejected Plaintiff's legal arguments based on

D.C. Code § 42-401—*i.e*, the very same legal argument Plaintiff repeats in her pending motion

for partial summary judgment.  Specifically, the Court explained that,

> even if the Deed in question was not "acknowledged and certified," as required by
> D.C. Code § 42-401, because that section "deals with acknowledgment, certification,
> and recordation as protections for 'creditors and subsequent bona fide purchasers,'
> . . . [t]hose requirements do not bar the operation of a signed, sealed, and delivered
> deed against parties and their assignees."

*Juergens II*, 533 F. Supp. 2d at 79 (quoting *Lumpkins v. CSL Locksmith, LLC*, 911 A.2d 418, 425

(D.C. 2006)).

Nonetheless, Plaintiff filed the instant motion for partial summary judgment

advancing—word for word—the very same argument that the Court had previously rejected.

Perhaps even more troubling, Plaintiff did so ***without*** even acknowledging the Court's previous

decision explicitly rejecting her very argument.  Plaintiff's counsel's failure to acknowledge or

otherwise address the Court's previous discussion on this legal issue, while at the same time

advancing the argument as if it is made to this Court for the very first time, is unacceptable.

Regardless, it is clear that Plaintiff has not offered the Court any new or additional case

law or other legal authority that would support reconsideration of the Court's previous

determination.  Indeed, as discussed above, the relevant portions of Plaintiff's now-pending

motion have simply been lifted almost verbatim from her prior motions.  The Court has therefore

already reviewed and considered these arguments, ultimately finding them to be without merit.

Accordingly, it is readily apparent that, based on the present record, Plaintiff has failed to provide

the Court with any reason to revisit its prior determination that D.C. Code § 42-401 applies only

to recordation of deeds and that a failure to properly acknowledge and certify a deed does not

affect the validity of the deed as between the two signature parties.  Thus, although the Deed and

Deed of Trust were not properly notarized, this deficiency does not, as a matter of law, invalidate

the Deed and Deed of Trust as between Plaintiff and the FMV Defendants.  Plaintiff's [160]

Motion for Summary Judgment on the Issue of Improper Notarization is therefore DENIED and

the FMV Defendants' [181/182] Cross-Motion on the Issue of Improper Notarization is

GRANTED, insofar as each relates to the question of whether the Deed and Deed of Trust are

void as between the parties in this litigation based upon a lack of proper notarization.

In addition to seeking a declaration that the documents are void as between the two

parties, Plaintiff has also requested that the Deed and Deed of Trust be stricken from the

Recorder of Deeds' records based upon the admittedly improper notarization.  The FMV

Defendants oppose Plaintiff's request, arguing that the deficient notarization has been cured by

means of D.C.'s curative statute because Plaintiff did not timely challenge the deficiency in a

judicial proceeding.  The FMV Defendants rely on D.C. Code § 42-403, which provides that

> [a]ny instrument recorded in the Office of the Recorder of Deeds . . . shall be
> effective notwithstanding the existence of 1 or more failures in the formal requisites
> listed in § 42-404, unless the failure is challenged in a judicial proceeding
> commenced within 6 months after the instrument is recorded.

Section 42-404 in turn identifies a "defective acknowledgment or improper acknowledgment" as

one such defect that may be cured by means of D.C. Code § 42-403.  Plaintiff responds that she

timely challenged the defective notarization with six months of the recordation, and therefore, the

improper acknowledgment is not cured.  The Court notes that Plaintiff filed a motion for partial

summary judgment challenging the lack of an appropriate notary within six months of the date

the Deed and Deed of Trusts were recorded, although the specific allegation was not added to the

complaint until a later date.

As discussed above, *see supra* at p. 18, n. 4, Plaintiff has recently advised the Court that she intends to sell the Condo at issue to a third-party purchaser and provide FMVILA with the net proceeds from that sale in exchange for FMVILA waiving its lien on the property. *See* Jt. Status Report, Docket No. [236]. As this agreement was reached after briefing on the parties' cross-motions had been completed, the parties' motions do not address the impact, if any, that the sale of the Condo and FMVILA's associated agreement to waive its lien may have on Plaintiff's request to strike the Deed and Deed of Trust from the Office of the Recorder of Deeds. The Court declines to reach this issue without such information. Accordingly, Plaintiff's [160] Motion for Summary Judgment on the Issue of Improper Notarization, as well as the FMV Defendants' [181/182] Cross-Motion on the Issue of Improper Notarization, are HELD IN ABEYANCE insofar as each moves for judgment on Plaintiff's request to strike the Deed and Deed of Trust from the Office of the Recorders of Deed. Plaintiff must file, on or before **October 2, 2009**, a notice to the Court advising it as to whether her request that the Court strike the Deed and Deed of Trust is now moot in light of the recent agreement by the parties. In the event Plaintiff responds that the request has not become moot, the Court shall permit the FMV Defendants an opportunity to respond.

      C.    *Allegations that the Deed is Void due to a Lack of Consideration*

Finally, the Court turns to Plaintiff's [162] Motion for Summary Judgment on the Issue of the Lack of Consideration for the Alleged Sale of Property from Mary Juergens to the 1230 23rd Street, LLC. As explained above, the FMV Loan was extended on its face—not to Plaintiff—but to a newly-created LLC of which Plaintiff was the only shareholder and to which Plaintiff had

27

transferred title of the Condo.  Plaintiff, in the pending motion, argues that the underlying

transfer of ownership of the Condo from Plaintiff to the LLC is void for lack of consideration.

The implication, of course, is that the LLC did not have legal title to the Condo and therefore

could not have offered it as collateral to secure the FMV Loan.  FMV Defendants filed an

opposition and cross-motion for summary judgment, *see* Defs.' [173] Opp'n/Cross-MSJ, Plaintiff

filed a consolidated opposition/reply, *see* Pl.'s [195] Opp'n/Reply, and FMV Defendants filed a

reply, *see* Defs.' [217] Reply.  Accordingly, the parties' cross-motions are fully briefed and ripe

for the Court's review.

At the outset, the Court notes that Plaintiff has also twice-previously raised this same

argument in this case, having filed two nearly identical motions for partial summary judgment on

this issue prior to discovery—each of which were denied without prejudice based on the issues of

disputed material fact.  *See Juergens I*, 246 F.R.D. at 10-11; *Juergens II*, 533 F. Supp. 2d at 80-

81.  As is summarized in the Court's prior opinions, Plaintiff has consistently stated that she did

not receive any money in consideration for transferring title to the Condo to the LLC.  *See*

*Juergens I*, 533 F. Supp. 2d at 80.  The Deed itself, however, indicates that Plaintiff received

$200,000 in exchange for transferring title of the Condo to the LLC.  *See* Defs.' [173]

Opp'n/Cross-MSJ, Ex. G (copy of Deed dated August 31, 2005) (hereinafter "Deed").

Specifically, the Deed provides that,

> the Grantor [*i.e.*, Plaintiff], in consideration of Two Hundred Thousand Dollars
> ($200,000), to her paid by the Grantee [*i.e.*, the LLC], the receipt and sufficiency of
> which is hereby acknowledged, does grant, sell, bargain and convey unto the Grantee,
> its heirs and assigns, in fee simply, the following described land and premises . . . ,
> lying and being in the District of Columbia and having the street address of 1230
> 23rd Str., NW, Unit 505, Washington, D.C., 20037.

*Id.* at 1.  Accordingly, as the Court has previously indicated, "Plaintiff's assertion that she did not receive $200,000 from the LLC for an alleged sale [of the Condo] is clearly contradicted by the recitation in the Deed at issue."  *Juergens I*, 533 F. Supp. 2d at 80.

Moreover, Plaintiff has also consistently disputed that she actually signed this or any documents referencing the LLC.  *Id.* at 80.  In contrast, the FMV Defendants argue that Plaintiff did in fact sign the Deed and that her testimony to the contrary should not be credited, as it contradicts other statements made by Plaintiff in this litigation; in addition, the FMV Defendants' handwriting expert has indicated that Plaintiff's signature on the Deed is consistent with her signatures on other documents that she has admitted signing.  Defs.' [217] Reply Stmt. ¶ 1.  Accordingly, a dispute exists as to whether Plaintiff signed the Deed at issue.

The factual record with respect to this issue is further complicated by the HUD-1 Settlement Statement that was executed with respect to the FMV Loan and that has been produced by the FMV Defendants in this litigation.  *See* Defs.' [173] Opp'n/Cross-MSJ, Ex. C (HUD-1 Settlement Statement for FMV Loan) (hereinafter, "HUD-1").  As the Court has previously observed, "the HUD-1 reflects a number of payments on Plaintiff's behalf which, in combination, total over $200,000.  Specifically, the HUD-1 states that $61,195.11 of the FMV Loan proceeds were used to pay off the UTS Loan, $95,000 was advanced to FMVILA, and $67,526.31 was escrowed for 'interest Reserve.'" *Juergens I*, 533 F. Supp. 2d at 80.  Plaintiff herself admits she received a check from FMVILA for $95,000 and that FMVILA paid off her loan to the Owen Living Trust, which had a then-current balance of $6,1195.11.  Pl.'s [195] Resp. ¶ 8.

Based on these disputes of material fact, the Court has twice denied Plaintiff's motions

29

for partial summary judgment that were filed before discovery on this same issue.  In so doing, the Court indicated that Plaintiff was free to "raise the alleged lack of consideration again, *if appropriate*, after the parties" had conducted discovery.  *Juergens I*, 533 F. Supp. 2d at 80-81 (emphasis added).  Plaintiff has now moved once again for summary judgment on this issue.  It is, however, readily apparent from the parties' briefing that the above issues of material fact remain in dispute and have not been resolved through discovery.  Plaintiff continues to dispute that she signed the Deed or that she received any money in consideration for the transfer of the Condo title to the LLC.  Pl.'s [162] Stmt. ¶ 5; Pl.'s [195] Resp. ¶ 1.  The plain language of the Deed and the HUD-1, quite obviously, remain the same.  Indeed, rather than resolve these disputes, the parties' briefing has only raised new questions as to the specific timing of the execution of the Deed and the FMV Loan documents.  *See generally* Pl.'s [162] MSJ; Defs.' [173] Cross-Mot.  Accordingly, given that these clear disputes of material fact remain outstanding, the Court easily concludes that summary judgment is inappropriate at this time.

        In addition, the Court emphasizes that the question of what consideration, if any, Plaintiff received in exchange for transfer of the Condo's title to the LLC is, as the parties have presented it, fundamentally related to and intertwined with the ultimate issue in this lawsuit—*i.e.*, whether the loan extended by FMVILA to the LLC was a legitimate commercial loan, as the FMV Defendants contend, or whether it was a personal loan to Plaintiff herself illegally disguised as a commercial loan to the LLC in exchange for sham consideration, as Plaintiff contends.  Despite Plaintiff's protestations to the contrary, the record now before the Court supports a finding that the transfer of the Condo's title to the LLC and the execution of the FMV Loan to the LLC were part and parcel of the same transaction.  Indeed, the LLC was established and the title to the

Condo was transferred to the LLC in order to facilitate the FMV Loan.  Moreover, the FMV

Defendants have proffered evidence that the Deed was executed during the same session in

which the documents relating to the FMV Loan were signed on August 31, 2005.  Defs.' [173]

Resp. ¶ 3; *see also* Defs.' [173] Opp'n/Reply, Ex. B (Declaration of Dale Duncan) (averring that

the Deed and the various FMV Loan documents were all executed during the same session), ¶¶ 2-

4.[7]  Plaintiff, in arguing that the transfer of title to the LLC was not supported by consideration, is

simply arguing a variant of her claim that the entire FMV Loan arrangement was fraudulent.  The

Court reiterates, however, that it is unable to resolve this question on the record now before it.

Accordingly, Plaintiff's [162] Motion for Summary Judgment on the Issue of the Lack of

---

[7] As the parties all acknowledge, the evidence shows that the Deed was, strictly speaking, signed prior to the execution of the FMV Loan documents.  *See* Pl.'s [162] Stmt. ¶ 3; Defs.' [173] Resp. ¶ 3.  From this, Plaintiff draws the conclusion that the Deed was therefore executed separately from and not in conjunction with the FMV Loan documents.  *See* Pl.'s [162] Stmt. ¶ 3. The Court, however, is not so persuaded.  The FMV Defendants have submitted the sworn declaration of Defendant Duncan, that, "[w]hile the Deed may have been executed prior to the loan documents, all of the documents were executed during the same session."  Defs.' [173] Opp'n/Reply, Ex. B (Declaration of Dale Duncan) ¶ 4.  Plaintiff has not proffered any evidence to rebut this testimony.  Rather, the only evidence she provides in support of her assertion to the contrary is the deposition testimony of the Martin Mooradian, a third-party attorney who was responsible for drafting the Deed at issue.  *See* Pl.'s Stmt. ¶ 3 (quoting Mooradian Dep. at pp. 38:8-40:2).  By his own admission, however, Mooradian was not present at the time the documents were signed on August 31, 2005.  *See* Pl.'s Stmt. ¶ 3 (quoting Mooradian Dep. at pp. 38:8-40:2 ("Q. . . . When did 12 – when did 1230 23rd Street, LLC, become the owner of the property at issue?  Prior the closing.  Q.  Do you know when?  A.  I wasn't there.").  As his deposition testimony makes clear, he has no personal knowledge of the events on August 31, 2005, but testified only as to his "understanding" of what happened that day.  *See id.*  Moreover, the portion of Moordian's testimony relied upon by Plaintiff does not actually conflict with Duncan's Declaration.  Mooradian simply states that the Deed was signed earlier on the same day that the FMV Loan documents were executed—a statement which is entirely consistent with Duncan's Declaration.  *See id.*  Thus, although Plaintiff makes much of Mooradian's statement that the Deed was not executed as part of the loan closing, this statement is not based on personal knowledge nor does it actually rebut Duncan's testimony that the documents were all executed during the same session on August 31, 2005.  *See id.*

Consideration for the Alleged Sale of Property from Mary Juergens to the 1230 23rd Street, LLC and the FMV Defendants' [173] Cross-Motion for Partial Summary Judgment on the Issue of the Adequacy of Consideration for the Sale of the Property from Mary Juergens to the 1230 23rd Street LLC are DENIED based upon the existence of disputes of material fact.

## IV.  CONCLUSION

For the reasons set forth above:

* Plaintiff's [158] Motion for Summary Judgment on the Issue of Whether Defendant FMVILA's Loan Violated Virginia Code § 6.1-237.6(A)(2) by Extending a Commercial Loan on Property Located Outside of the Commonwealth of Virginia and FMV Defendants' [180] Cross-Motion for Summary Judgment regarding Virginia Code § 6.1-237.6(A)(2) are DENIED;

* Plaintiff's [175] Motion for Partial Summary Judgment on the Issue of FMVILA's Counterclaims is DENIED;

* Plaintiff's [159] Motion for Summary Judgment on the Issue of Whether Defendant FMVILA's Loan Violated Virginia Code § 6.1-237.6(A)(6) by Failing to Provide Required Loan Disclosures and FMV Defendants' [184] Cross-Motion for Summary Judgment on the Issue of a Failure to Provide Loan Disclosures are DENIED;

* Plaintiff's [160] Motion for Summary Judgment on the Issue of Improper Notarization is DENIED-IN-PART and the FMV Defendants' [181/182] Cross-Motion on the Issue of Improper Notarization is GRANTED-IN-PART, insofar as each relates to the question of whether the Deed and Deed

of Trust are void as between the parties in this litigation based upon improper notarization, but the motions are HELD-IN-ABEYANCE-IN-PART insofar as each relates to Plaintiff's allegations that the Deed and Deed of Trust should be stricken from the Office of the Recorders of Deed.  Plaintiff shall file, on or before **October 2, 2009**, a notice to the Court advising it as to whether her request is now moot in light of the recent agreement by the parties regarding the sale of the Condo; and

\*      Plaintiff's [162] Motion for Summary Judgment on the Issue of the Lack of Consideration for the Alleged Sale of Property from Mary Juergens to the 1230 23rd Street, LLC and the FMV Defendants' [173] Cross-Motion for Partial Summary Judgment on the Issue of the Adequacy of Consideration for the Sale of the Property from Mary Juergens to the 1230 23rd Street LLC are DENIED.

An appropriate Order accompanies this Memorandum Opinion.


Date:   September 17, 2009

                       _/s/_
                       COLLEEN KOLLAR-KOTELLY
                       United States District Judge