# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANDREA SLOAN, as Guardian and Conservator on behalf of Mary Juergens, an Incapacitated Individual, in both Mary Juergens' individual capacity and as the sole member of "1230 23rd Street, LLC," <br><br> Plaintiff/Counter-Defendant, <br><br> v. <br><br> URBAN TITLE SERVICES, INC., *et al.*, <br><br> Defendants/Counter-Plaintiffs. | Civil Action No. 06-1524 (CKK) |

## MEMORANDUM OPINION
(February 12, 2010)

The above-captioned lawsuit was filed by the original Plaintiff in this matter, Mary Juergens,[1] nearly three years ago to challenge the legality of two disparate loans extended to Plaintiff, each of which was secured by a condominium located at 1230 23rd Street, N.W., Apartment 505, Washington, D.C. 20037 (the "Condo").  Plaintiff initially named as Defendants in this action Urban Title Services, Inc. ("UTS") as well as Dale Duncan, First Mount Vernon Industrial Loan Association, Inc. ("FMVILA"), Arthur Bennett, and Brickshire Settlements, LLC ("Brickshire").[2]  According to Plaintiff, the first of the two loans at issue in this case was

---

[1] Subsequent to filing the instant action, Ms. Juergens was found to be an "incapacitated individual," and Andrea Sloan was appointed as Guardian and Conservator on behalf of Ms. Juergens and has been substituted as Plaintiff for Ms. Juergens, in both her individual capacity and in her capacity as the sole member of 1230 23rd Street, LLC.  *See* Docket No. [114] at 2; *see also* Fourth Am. Compl., Docket No. [120].  For convenience, the Court shall refer to Ms. Juergens and Ms. Sloan interchangeably as "Plaintiff."

[2] Plaintiff also originally named as Defendants in this matter First Mount Vernon Mortgage, L.L.C. ("FMVLLC"), as well as individuals William Kenney, Robert William Carney,

extended by the Owen Living Trust with the assistance of UTS, while the second loan

(hereinafter "FMV Loan") was extended by FMVILA with the assistance of Bennett, Duncan and

Brickshire (collectively with FMVILA, the "FMV Defendants").  Plaintiff has since voluntarily

dismissed with prejudice all of her claims against UTS.  *See* Stip. of Dismissal, Docket No.

[243].  Accordingly, the only claims that remain at issue in this lawsuit relate to the second of

these two loans, the FMV Loan.

Plaintiff and the FMV Defendants have filed a series of cross-motions for partial

summary judgment.  The Court previously ruled on several of the parties' cross-motions —

specifically, those motions for partial summary judgment filed by Plaintiff with respect to

allegations in her Fourth Amended Complaint relating to the FMV Loan and those related cross-

motions for partial summary judgment by the FMV Defendants.  *See Juergens v, UTS*, 652 F.

Supp. 2d 51 (D.D.C. 2009).  Still outstanding, however, are Plaintiff's motion for partial

summary judgment filed with respect to Defendant Duncan's counterclaims as well as several

motions for partial summary judgment filed by Defendant Duncan and Defendant Brickshire with

respect to certain allegations and claims asserted against them in Plaintiff's Fourth Amended

Complaint.  This Memorandum Opinion addresses Plaintiff's remaining motion for partial

summary judgment as to Defendant Duncan's counterclaims as well as Duncan's motion for

---

and Paul Erb.  Plaintiff's claims against Defendant FMVLLC were dismissed by this Court in a
Memorandum Opinion and Order dated February 4, 2008, *Juergens v. Urban Title Servs.*, 533 F.
Supp. 2d 64, 75 (D.D.C. 2008), and Plaintiff's claims against the individual Defendants Kenney,
Carney, and Erb.have been voluntarily dismissed by Plaintiff, *see* Jt. Stip. Regarding Dismissal
of Defendants William Kenney and Paul Erb, Docket No. [112] and Stip. of Dismissal, Docket
No. [113] (dismissing without prejudice any and all claims asserted against Defendants Kenney
and Erb individually); *see also* Notice and Stip. of Vol. Dismissal, Docket No. [116] (dismissing
any and all claims asserted against Defendant Carney).

partial summary judgment, specifically: Plaintiff's [174] Motion for Summary Judgment on the Issue of Dale Duncan's Counterclaim and Defendant Duncan's [185/186] Motion for Summary Judgment Regarding Counts XVII-XXVI and XXX-XXXI and Claims for Punitive Damages.

Upon a searching review of the memoranda filed with respect to the pending motions, the exhibits thereto, the relevant case law and statutes, and the entire record herein, the Court orders as follows, for the reasons set forth below.  First, Duncan's [185/186] Motion for Partial Summary Judgment is GRANTED-IN-PART, DENIED-IN-PART, and HELD IN ABEYANCE-IN-PART.  Specifically, the motion is GRANTED insofar as Duncan argues that no attorney-client relationship existed between himself and Plaintiff, and it is also GRANTED with respect to Count XVII (Breach of Contract) of Plaintiff's Fourth Amended Complaint.  It is denied, however, with respect to Counts XXV (Fraud), XXVI (Civil Conspiracy), XXXI (CPPA), and XXXII (CCSOA) of Plaintiff's Fourth Amended Complaint.  Finally, the motion is HELD IN ABEYANCE insofar as Duncan urges that he is entitled to summary judgment on the underlying claims and/or Plaintiff's punitive damages requests set forth in Counts XVIII (Legal Malpractice), XIX (Breach of Fiduciary Duty), XX (Negligence), XXI (Breach of Contract), XXII (Breach of Fiduciary Duty), and XXIII (Negligence), pending further briefing by the parties.

Second, Plaintiff's [174] Motion for Summary Judgment on the Issue of Duncan's Counterclaim is GRANTED-IN-PART and HELD IN ABEYANCE-IN-PART.  Specifically, Plaintiff's motion is GRANTED with respect to Count Two of Duncan's Counterclaim but is HELD IN ABEYANCE with respect to Count One, pending further briefing by the parties.

## I. BACKGROUND

*A.      Factual Background*

The Court assumes familiarity with the factual background of this case, which is set forth

in detail in this Court previous' opinions, *see Juergens v. UTS,* 652 F. Supp. 2d 51 (D.D.C.

2009);  *Juergens v. UTS*, 246 F.R.D. 4 (D.D.C. 2007); *Juergens v, UTS*, 533 F. Supp. 2d 64

(D.D.C. 2008); *Juergens v, UTS*, 652 F. Supp. 2d 40 (D.D.C. 2009); *Juergens v, UTS*, 652 F.

Supp. 2d 51 (D.D.C. 2009), and the Court therefore addresses herein only such facts as are

necessary for resolution of the motions currently before the Court.

Before doing so, however, the Court pauses briefly to comment upon the parties' attempts

to incorporate by reference various factual statements set forth in separately-filed submissions.

The Court reminds both parties that "[LCvR 7(h)(1)] places the burden on the parties and their

counsel, who are most familiar with the litigation and the record, to crystallize for the district

court the material facts and relevant portions of the record." *Jackson v. Finnegan, Henderson,*

*Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996) (citing *Twist v. Meese*, 854

F.2d 1421, 1425 (D.C. Cir. 1988).  The parties' attempts to broadly incorporate a multitude of

unspecified facts set forth in separate filings directly contradicts both the spirit and the text of

LCvR 7(h)(1), as it impermissibly shifts counsel's burden to locate and identify the relevant facts

and leaves the Court to guess which of the many factual statements set forth in the separate

pleadings are purportedly of relevance to the instant motions.  As the Court has repeatedly

advised the parties, it strictly adheres to the text of Local Civil Rule 7(h)(1) when resolving

motions for summary judgment.  *See, e.g.,* 1/30/09 Scheduling and Procedures Order, Docket

No. [155] at 2.  Accordingly, the Court shall disregard the parties' efforts to incorporate factual

statements by reference.  The Court advises the parties once again that it is their obligation, and

not this Court's, to locate and cite to the appropriate portions of the record that support their

arguments on summary judgment.  In order to ensure clarity of argument, the parties may not

incorporate by reference factual statements made in other pleadings, but each motion must

independently contain all facts that the party believes are relevant to resolution of the issues

raised in that particular motion.[3]

　　　For this same reason, the Court also disregards Plaintiff's consolidated statement of

material facts, which purports to relate to *all* summary judgment motions and cross-motions filed

by the parties and which was filed in addition to the individual statements and response

statements she provided in her briefing now before the Court.  *See* Pl.'s [199] Stmt. of Mat.

Facts.  Plaintiff did not seek prior leave of the Court to file her consolidated factual statement

and, as the Court has previously observed, the document was filed in violation of both this

Court's orders and the local rules of this Court.  *See Juergens v. UTS*, 652 F. Supp. 2d 51, 55-56

(D.D.C. 2009).  Moreover, the consolidated statement, which appears to have been intended

principally as a means of supplementing Plaintiff's own cross-motions for summary judgment,

does not directly respond to Duncan's statement of material facts not in issue filed with his

motion for partial summary judgment and is therefore of no help to the Court in identifying what,

if any, material facts are purportedly in dispute with respect to that motion.  Accordingly, the

Court shall — once again — disregard Plaintiff's consolidated [199] Statement of Material Facts

---

[3] The same is true for legal arguments.  The parties may not incorporate legal arguments
made in other pleadings by reference, but must provide all relevant legal authority and argument
in the operative motion.

5

and any factual assertions set forth therein in ruling on the pending cross-motions, as well as the

Defendants' [223] Joint Response.  *Cf. Juergens v. UTS*, 652 F. Supp. 2d 51, 55-56 (D.D.C.

2009).  As a consequence, the Court is left with only the individual statements of material fact

and response statements of genuine issues in dispute that were filed with the parties' briefing.

Given that these statements are narrowly tailored to each individual motion, the Court at this

point provides only a short introduction to the facts of this case, with a more detailed discussion

to follow below as is necessary for evaluation of a particular claim.

The heart of Plaintiff's lawsuit against the FMV Defendants, including Duncan, is her

allegation that the FMV Loan was intended to be, or should properly be construed as, a personal

mortgage loan — not a commercial loan.  As the parties appear to agree, the relevant documents

relating to the FMV Loan, when taken at face value, purport to characterize the loan as a

$250,000 commercial loan extended by FMVILA to 1220 23rd Street, LLC (hereinafter, "LLC"),

a limited liability corporation of which Plaintiff is the sole shareholder.  Plaintiff nonetheless

contends that the loan is, or should properly be construed as, a personal residential loan, based

upon two alternative theories: (1) Plaintiff claims that the FMV Defendants offered her a

personal mortgage loan, not a commercial loan, and that she signed only documents related to a

residential loan; thus, although the FMV Loan documents on their face purportedly describe the

FMV Loan as commercial in nature, such documents were fraudulently obtained by forgery, such

that the entire transaction is fraudulent, Pl.'s Fourth Am. Compl. ¶¶ 89-91; (2) alternatively,

Plaintiff alleges that, even assuming she did in fact sign the relevant loan documents purporting

to describe the FMV Loan as commercial in nature, the loan is nonetheless unlawful as it is an

illegal consumer residential loan impermissibly disguised as a commercial loan in order to avoid

6

fair lending laws and disclosure requirements, *id.* ¶ 92.

Not unsurprisingly, the FMV Defendants deny Plaintiff's allegations and assert that the FMV Loan is a valid commercial loan extended to Plaintiff's LLC. *See id.* ¶¶ 94-96. The Defendants contend that they assisted Plaintiff, at her request, in establishing the LLC; title to the Condo was then transferred from Plaintiff to the LLC, and FMVILA extended a lawful commercial loan for $250,000 to the LLC, which was secured by the Condo. *See id.* ¶ 96.

As presented by the parties, then, the key question underlying this case is whether the FMV Loan is a legitimate commercial loan lawfully extended to the LLC or whether it is an unlawful loan — either because the underlying documents were fraudulently forged by the FMV Defendants or because it was unlawfully disguised by the FMV Defendants as a commercial loan in order to avoid fair lending laws and disclosure requirements. As the Court has previously observed, this ultimate question appears unlikely to be suitable for resolution on summary judgment based on the record before the Court at this time. *See Juergens v. UTS*, 652 F. Supp. 2d 51, 58 (D.D.C. 2009). At present, the Court is presented with two very different stories regarding the formation of the LLC and the issuance of the FMV Loan. Nonetheless, to the extent the parties' arguments in the instant motions do not depend upon or turn on this key factual dispute, summary judgment on such discrete issues may be appropriate.

B.      *Procedural Background*

Plaintiff filed her Fourth Amended Complaint in the above-captioned civil action on October 7, 2008. *See* Fourth Am. Compl., Docket No. [120]. Plaintiff sets forth 25 causes of action against the FMV Defendants in this matter stemming from the issuance of the FMV Loan. *See generally id.* The FMV Defendants have each filed an Answer in response and, as is relevant

7

to the instant Memorandum Opinion, Defendant Duncan filed a Counterclaim against Plaintiff for fraud, fraud in the inducement, misrepresentation, and negligent misrepresentation (Count I) and abuse of process or malicious prosecution (Count II).   *See generally* Duncan's Ans. & Counterclaim, Docket No. [119].

Discovery in this case is now closed, and the parties have each filed a series of motions for partial summary judgment.  The Court previously issued a Memorandum Opinion ruling on those motions for partial summary judgment that were filed by Plaintiff with respect to allegations in her Fourth Amended Complaint relating to the FMV Loan and those related cross-motions for partial summary judgment by the FMV Defendants.  *See Juergens v. UTS*, 652 F. Supp. 2d 51 (D.D.C. 2009).  As indicated above, the instant Memorandum Opinion addresses Plaintiff's [174] Motion for Summary Judgment on the Issue of Dale Duncan's Counterclaim and Defendant Duncan's [185/186] Motion for Summary Judgment Regarding Counts XVII-XXVI and XXX-XXXI and Claims for Punitive Damages.

Finally, the Court notes that after the parties' cross-motions for summary judgment had been fully briefed, Plaintiff advised the Court that she had executed a special warranty deed selling the Condo at issue in this litigation to a third-party purchaser, and that Defendant FMVILA had agreed to release its lien on the Condo in exchange for receiving $319,229.18 in compensation from the sale proceeds.  *See* [242] Status Report.

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56, a party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c); *see also Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).

Under the summary judgment standard, the moving party bears the "initial responsibility of

informing the district court of the basis for [its] motion, and identifying those portions of the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In response, the non-moving party must "go

beyond the pleadings and by [its] own affidavits, or depositions, answers to interrogatories, and

admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." *Id.*

at 324 (internal citations omitted).

Although a court should draw all inferences from the supporting records submitted by the

nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary

judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To be material, the

factual assertion must be capable of affecting the substantive outcome of the litigation; to be

genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-

fact could find for the nonmoving party.  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C.

Cir. 1987); *Liberty Lobby*, 477 U.S. at 251 (the court must determine "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided

that one party must prevail as a matter of law").  "If the evidence is merely colorable, or is not

sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50

(internal citations omitted).  "Mere allegations or denials in the adverse party's pleadings are

insufficient to defeat an otherwise proper motion for summary judgment." *Williams v.*

*Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996).  The adverse party must do more than simply

"show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

## III. DISCUSSION

### A. Defendant Duncan's Motion for Partial Summary Regarding Counts XVII-XXVI and XXX-XXXI, and Claims for Punitive Damages

The Court turns first to consider Defendant Duncan's [185/186] Motion for Summary Judgment.[4] Duncan has moved for summary judgment with respect to the following claims

---

[4] As an initial matter, Duncan's [185/186] motion is captioned and described throughout the briefing as a "Motion for Summary Judgment Regarding Counts XVII-XXVI and XXX-XXXI, and Claims for Punitive Damages." Such a description, however, is inaccurate in several ways. **First,** Duncan has not moved for summary judgment on Count XXIV of the Fourth Amended Complaint, as that count asserts a claim for Conversion and is asserted against FMVILA only. **Second**, Duncan has not moved for summary judgment with respect to Count XXX, which is alleged only against Defendants FMVILA and Bennet and is based upon alleged violations of the D.C. Mortgage Lender and Broker Act. **Third**, while not included in the motion's caption, Duncan has moved for summary judgment with respect to Count XXXII, which alleges that Duncan and others violated the D.C. Consumer Credit Service Organization Act. *See* Duncan's [186-1] Mem. of Law in support of MSJ at 20-21. **Fourth**, Duncan has not moved for summary judgment with respect to the merits of Count XXI of the Fourth Amended Complaint, which alleges a claim for breach of contract against Defendant Duncan, as well as Defendant Bennett, based upon alleged conduct related to the FMV Loan closing; Duncan's argument regarding Plaintiff's breach of contract claim is explicitly limited to allegations asserted in Count XVII of Plaintiff's Fourth Amended Complaint, and he makes no similar argument with respect to Count XXI. *See id.* at 13-14 (arguing only that "Count XVII claim for breach of contract fails"). The Court therefore proceeds on the understanding that Duncan has moved for summary judgment on the merits of Count XVII only and not with respect to Count XXI as well.

In addition, the Court notes that Duncan has, throughout his motion, consistently

and/or allegations asserted against him in Plaintiff's Fourth Amended Complaint:

- Counts XVII (Breach of Contract), XVIII (Legal Malpractice), XIX (Breach of Fiduciary Duty), and XX (Negligence), which are each based upon the same factual allegations relating to the establishment of the LLC;

- Counts XXII (Breach of Fiduciary Duty)[5] and XXIII (Negligence), which are each based upon Duncan's alleged conduct with respect to the FMV Loan closing;

- Count XXV (Fraud), which alleges that Duncan prepared false documents with respect to the FMV Loan in an effort to fraudulently disguise the transaction as a commercial loan rather than a personal consumer residential loan;

- Count XXVI (Civil Conspiracy), which alleges that Duncan conspired with Defendant Bennet to fraudulently disguise the FMV Loan as a commercial loan rather than a personal consumer residential loan;

- Count XXXI (Violation of D.C. Consumer Protection Procedures Act), which principally alleges that Duncan misrepresented and/or omitted a material fact by fraudulently disguising the FMV Loan as a commercial loan rather than a personal consumer residential loan and by providing a false, incomplete and

---

misnumbered the relevant counts of Plaintiff's Fourth Amended Complaint. Where the error is readily apparent, the Court has corrected such oversights. The Court nonetheless admonishes the parties that the need for accuracy in their briefing — although always of great import — takes on added significance in the present case, given the sheer number of claims and defendants involved. The Court expects future briefing to maintain the required level of accuracy.

[5] It is apparent from review of Duncan's motion that he intended to move for summary judgment with respect to both of Plaintiff's breach of fiduciary duty claims asserted against him, as alleged in Counts XIX (breach of fiduciary duty based on establishment of LLC) and XXII (breach of fiduciary duty based on FMV Loan closing). *See* Duncan's [186-1] Mem. of Law in support of MSJ at 10-13 (moving for summary judgment with respect to "Juergen's [*sic*] claims for alleged breaches of fiduciary duty relat[ing] to Duncan's alleged drafting of documents, formation of the LLC, allegedly not providing additional legal services to Juergens, and his activities at Settlement."). Accordingly, although Duncan omits any direct reference to Count XXII by number, Plaintiff had adequate notice that Duncan intended to move for summary judgment on both breach of fiduciary counts and indeed, Plaintiff's opposition is based on that assumption. *See* Pl.'s [196] Opp'n at 17 (addressing both Plaintiff's claims for fiduciary duty). The Court shall therefore proceed on the understanding that Duncan has moved for summary judgment with respect to Count XXII as well.

deceptive HUD-1;

- Count XXXII (Violation of D.C. Consumer Credit Service Organization Act), which alleges that Duncan made and used false and misleading representations, failed to disclose material facts, and directly or indirectly engaged in acts to defraud or deceive Plaintiff by fraudulently disguising the FMV Loan as a commercial loan rather than a personal consumer residential loan; and

- Plaintiff's request for punitive damages as set forth in Counts XVII (Breach of Contract), XVIII (Legal Malpractice), XIX (Breach of Fiduciary Duty), XX (Negligence), XXI (Breach of Contract), XXII (Breach of Fiduciary Duty), and XXIII (Negligence).

Duncan's motion therefore focuses principally on Plaintiff's claims with respect to his alleged role in the formation of the LLC and the issuance of the FMV Loan.  Given the existence of a material dispute over the correct nature of the FMV Loan, Duncan is entitled to summary judgment only to the extent his arguments do not turn on this key dispute.

At the outset, the Court notes that its resolution of Duncan's motion for partial summary judgment is significantly hindered by the generally deficient quality of the parties' briefing.  As is discussed in more detail below, the parties' briefing is often at cross-purposes and unresponsive to the arguments advanced by the other side's papers.  In addition, the parties have provided only a bare outline of the facts relevant to Duncan's motion and his role in forming the LLC and extending the FMV Loan.  The specific details regarding Duncan's exact conduct in those transactions therefore remain unclear to a large degree.  Nonetheless, the following background emerges from the parties' briefing and attachments.

As the parties agree, Duncan acted as FMVILA's attorney with respect to the FMV Loan transaction.  *See* Duncan's [186-3] Stmt. ¶¶ 2, 9 Pl.'s [196] Resp. Stmt. ¶¶ 2, 9.  Plaintiff admitted as much at deposition, testifying that she knew Duncan was counsel for FMVILA and

that he had neither agreed to be nor was acting as her attorney with respect to the FMV Loan.

*See* Duncan's [186-3] Stmt. ¶ 9; Pl.'s [196] Resp. Stmt. ¶ 9; *see also* Duncan's [186] MSJ, Att. 5

(Excerpts of Plaintiff's May 28, 2008 Deposition) (hereinafter, "Juergens Dep.") at 819:18-820:6

("Q.  And you knew [Duncan] only as the lawyer for [FMVILA]?  A.  Correct.  Correct.  Q.  And

did he agree to be your lawyer?  A.  No, he did not . . . he told me he was not acting as my lawyer

. . . [h]e made that clear.").

The details of the FMV Loan closing itself are largely absent from the parties' briefing.

The parties agree, however, that Duncan was present at the FMV Loan closing and that he

discussed the FMV Loan papers with Plaintiff.  Duncan's [186-3] Stmt. ¶ 6; Pl.'s [196] Resp.

Stmt. ¶ 6.  Although Plaintiff was aware that Duncan was acting as FMVILA's attorney at the

closing, she testified that she "trust[ed]" him because he was a lawyer who was "there to be on

your side and not take advantage."  *See* Pl.'s [196] Resp. Stmt. ¶ 9 (quoting Juergens Dep. at

109:19-110:3).

In addition, the parties appear to agree that Duncan assisted with the preparation and

filing of the articles of organization necessary for the formation of Plaintiff's LLC.  *See* Compl.,

Ex. 4 (Articles of Organization).  A material dispute exists, however, as to whether Duncan did

so at Plaintiff's request.  As to this point, the parties present contradictory stories.  According to

Duncan, Plaintiff requested that Duncan assist with the formation of a limited liability

corporation.  Duncan's [186-3] Stmt. ¶ 4; *see also* Duncan's [186] MSJ, Att. 4 (Excerpts of

Duncan's July 9, 2008 Deposition) (hereinafter, "Duncan Dep.") at 7:2-8:13; 9:13-15 (testifying

that Defendant Bennett and Plaintiff approached him at the FMVILA office and informed him

that Plaintiff was going to be borrowing money from FMVILA and that she wanted to establish a

13

corporation in order to do so).  Duncan agreed to the request, but he maintains that in so doing, he made it clear to Plaintiff that he was not acting as her attorney.  Duncan's [186-3] Stmt. ¶ 4; *see also* Duncan Dep. at 14:6-9 (stating that he "made it very clear to [Plaintiff] that [he] was not representing her at any point; that, in fact, [his] client was [FMVILA]").

Plaintiff for her part denies that she ever requested Duncan to assist with the formation of the LLC.  Specifically, Plaintiff testified at deposition that she never signed any document containing the words "1230 23rd Street, LLC" and that she only learned of the existence of the LLC during the course of the pending litigation.  Pl.'s [196] Resp. Stmt. ¶ 4.  The implication, of course, is that she never requested that Duncan establish an LLC and that the decision to form a limited liability company was made by Duncan, FMVILA, or one of the other FMV Defendants without her knowledge or consent.

Finally, the parties agree that "[a]ll of Duncan's activities with regard to the FMV Loan occurred solely in Virginia at the offices of FMV," and that he is not now, nor has he been at any time relevant to this lawsuit, a licensed member of the District of Columbia Bar.  Duncan's [186-3] Stmt. ¶¶ 7, 8; Pl.'s [196] Resp. Stmt. ¶¶ 7, 8.  With that background in mind, the Court now turns to the merits of the parties' arguments as set forth in Duncan's [185/186] Motion for Summary Judgment, Plaintiff's [195] Opposition, and Duncan's [224] Reply.

### 1.    Choice of Law

Because this is a diversity case, the Court must first determine which state law to apply. In resolving this question, the Court applies the District of Columbia's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941).  Under the District of Columbia's rules, the Court first determines whether a "true conflict" exists between the laws of

competing jurisdictions. *GEICO v. Fetisoff,* 958 F.2d 1137, 1141 (D.C. Cir. 1992). Where no true conflict exists, a court applies the law of the District of Columbia by default. *Id.* If, however, a true conflict exists, District of Columbia courts apply a "constructive blending" of the "governmental interests" and the "most significant relationship" test. *Hercules & Co., Ltd v. Sharma Restaurant Co.*, 566 A.2d 31, 41 n. 18 (D.C. 1989); *see also Drs. Groover, Christie & Merritt, P.C. v. Burke*, 917 A.2d 1110, 1117 (D.C. 2007). Under that test, courts must "'evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be more advanced by the application of its law to the facts of the case under review.'" *Burke*, 917 A.2d at 1117 (quoting *District of Columbia v. Coleman*, 667 A.2d 811, 816 (D.C. 1995)). In so doing, courts also consider certain relevant factors enumerated in the Restatement (Second) of Conflict of Laws as part of that analysis, which factors "help to identify the jurisdiction with the 'most significant relationship to the dispute,' that presumptively being the jurisdiction whose policy would be more advanced by application of its law."[6] *Id.* (quoting *Hercules*, 566 A.2d at 41 & n.18)). Dependent upon the facts and legal claims at issue in a particular case, "'[d]ifferent law may apply to different issues in a lawsuit.'" *Jaffe v. Pallotta TeamWorks,* 374 F.3d 1223, 1228 (D.C. Cir. 2004) (quoting *Logan v. Providence Hosp.,* 778

---

[6] Specifically, for tort claims, District of Columbia courts consider the following four factors as set forth in the Restatement (Second) of Conflict of Laws § 145: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship is centered. *Burke*, 917 A.2d at 1117 (quoting *Coleman*, 667 A.2d 816)). For contract claims, District of Columbia courts consider the following five similar factors set forth in the Restatement (Second) of Conflict of Laws § 188: (1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the contract's subject matter; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Stephen A. Goldberg Co. v. Remsen Partners, Ltd.*, 170 F.3d 191, 194 (D.C. Cir. 1999).

A.2d 275,  280 (D.C. 2001)).

Applying District of Columbia's choice of law rules to this case, Duncan argues that Virginia law applies to Plaintiff's common law claims sounding in tort.[7]  *See* Duncan's [186-1] Mem. of Law in support of MSJ at 3-4.  As support for this assertion, Duncan notes that "he engaged in no activities or actions outside of Virginia;" that all relevant actions and services "occurred in Virginia;" and that, to the extent Plaintiff's claims against him stem from his role as a licensed Virginia attorney, "Virginia has a paramount interest in regulating its attorneys."  *Id.* at 4.  Duncan therefore concludes that under the District's choice of law analysis, Virginia state law should apply.  *See id.* at 4-5.

Plaintiff makes no effort to address the choice of law inquiry and fails to provide any response whatsoever to Duncan's argument that Virginia law applies.  *See generally* Pl.'s [196] Opp'n.  Her failure to do so is particularly egregious given that the Court has previously made clear that choice of law concerns are implicated in this diversity action and that it is the parties' obligation to sufficiently brief the issue.  *See Juergens v. UTS*, 533 F. Supp. 2d 64, 77 (D.D.C. 2008).  Nonetheless, while Plaintiff has not explicitly addressed the issue, the Court notes that she agrees with Duncan that "[a]ll of [his] activities with regard to the FMV Loan occurred solely

---

[7] Although at first glance Duncan's choice of law analysis purports to apply to all of Plaintiff's claims against him, it is apparent upon closer review that Duncan's substantive discussion is directed solely at Plaintiff's common law claims sounding in tort.  *See* Duncan's [186-1] Mem. of Law in support of MSJ at 3-4 (citing to case law discussing choice of law rules for tort-based claims).  He does not specifically address either Plaintiff's contract-based claims or her statutory claims.  *See id.*  As noted above, "'[d]ifferent law may apply to different issues in a lawsuit,'" *Jaffe*, 374 F.3d at 1228 (quoting *Logan*, 778 A.2d at 280)), and Duncan's choice of law analysis with respect to Plaintiff's common law tort claims may not apply with equal weight to Plaintiff's remaining claims.  Accordingly, the Court understands Duncan's choice of law analysis to apply only to Plaintiff's common law claims sounding in tort.

in Virginia at the offices of [FMVILA]." Pl.'s [196] Resp. Stmt. ¶ 7. Plaintiff also relies heavily

on Virginia case law in opposing Duncan's motion. *See* Pl.'s [196] Opp'n at 15-18. The Court

therefore understands Plaintiff to have conceded Duncan's arguments that Virginia law applies

and finds that she has waived any objections to application of Virginia state law to her common

law claims sounding in tort as alleged against Duncan. *See CSX Transp., Inc. v. Commercial*

*Union Ins. Co.*, 82 F.3d 478, 482-83 (D.C. Cir. 1996) (parties may waive choice-of-law

arguments); *C&E Servs., Inc. v. Ashland, Inc.*, 498 F. Supp. 2d 242, 255 n. 5 (D.D.C. 2007)

(same); *cf. In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475, 1495 (D.C. Cir.

1991) (courts need not address choice of law questions *sua sponte* ). Accordingly, the Court

shall apply Virginia substantive law to Plaintiff's common law claims sounding in tort — *i.e.,*

Plaintiff's legal malpractice, negligence, breach of fiduciary duty, fraud and civil conspiracy

claims.

Neither party, however, has addressed the choice of law analysis with respect to

Plaintiff's remaining contract-based and statutory claims. As indicated above, Plaintiff has failed

to provide any choice of law analysis, and Duncan has addressed the application of the District's

choice of law rules only to Plaintiff's tort-based claims. Nonetheless, both parties have assumed

that Virginia law governs Plaintiff's breach of contract claim and have each applied Virginia

substantive law in evaluating the merits of that claim. *See* Duncan's [186-1] Mem. of Law in

support of MSJ at 13-14; Pl.'s [196] Opp'n at 17-18. "The Court need not and does not question

the parties' assumptions on that point." *Davis v. Grant Park Nursing Home LP*, 639 F. Supp. 2d

60, 65 (D.D.C. 2009) (citing *CSX Transp.*, 82 F.3d at 482-83 and *In re Korean Air Lines*

*Disaster*, 932 F.2d at 1495).

The only remaining issue, then, for purposes of the instant Memorandum Opinion is the choice of law question with respect to Plaintiff's statutory claims.  For the reasons set forth below, the Court shall address the choice of law analysis specific to these claims in the context of discussing the parties' substantive arguments regarding the application of the District of Columbia's consumer protection statute.

2.      Plaintiff's Legal Malpractice, Negligence, and Breach of Fiduciary Duty
        Claims Relating to Duncan's Role in the FMV Loan Transaction

The Court first moves to consider Duncan's motion with respect to Plaintiff's legal malpractice, negligence, and breach of fiduciary duty claims asserted against him based upon his alleged role in the establishment of the LLC and the FMV Loan closing — *i.e.,* Counts XVIII (Legal Malpractice), XIX (Breach of Fiduciary Duty), XX (Negligence), Count XXII (Breach of Fiduciary Duty), and XXIII (Negligence).  The first three of these claims (Counts XVII, XIX, and XX) are each premised on an identical set of allegations relating to the establishment of the LLC and essentially assert alternative theories of recovery for the same conduct.  *See* Fourth Am. Compl. ¶¶ 351-374.  Specifically, Plaintiff alleges that, "[b]y claiming to have prepared documents [establishing the LLC] on [Plaintiff's] behalf and receiving a fee for doing so, . . . and filing these documents with the Virginia State Corporation Commission," Duncan: (a) "entered into an attorney client-relationship with [Plaintiff]'" (Count XVIII); (b) owed "a fiduciary duty to [Plaintiff]," (Count XIX); and/or (c) "owed a duty of care to [Plaintiff]," (Count XX).  *Id.* ¶¶ 352, 360, 368.  Plaintiff further alleges that Duncan committed legal malpractice, breached his fiduciary duty and/or breached his duty of care to Plaintiff by establishing the LLC.[8]  *See id.* ¶¶

_____

[8] In particular, as set forth in Plaintiff's Fourth Amended Complaint, she asserts that Duncan breached his duties to her and/or committed legal practice by establishing the LLC

353-56, 361-64, 369-72.  By contrast, the latter two claims — for breach of fiduciary duty (Count

XXII) and negligence (Count XXIII), respectively — are based upon Duncan's alleged conduct at

the actual FMV Loan closing.  *See id.* ¶¶ 383-98.  Plaintiff alleges that Duncan owed a duty of

care and/or fiduciary duty "to [Plaintiff] to perform the closing on the [FMV Loan], including

using a proper and accurate accounting statement, ensuring the all loan documents comply with

all relevant laws and statutes, notarizing and authenticating loan documents by a licensed notary,

promptly disbursing funds associated with this loan, promptly filing loan documents and loan

releases and conducting the settlement in a manner in accordance with all relevant laws and

statutes."  *Id.* ¶¶ 384, 392.  According to Plaintiff, Duncan was negligent and/or breached his

fiduciary duty in a multitude of ways and that she suffered damages as a direct and proximate

result of such breaches.  *See id.* ¶¶ 385-89, 393-98.[9]

---

because: (a) "there was no benefit to [Plaintiff] from entering into such a complicated
transaction;" (b) Plaintiff was "actually harmed" by the transaction "as she was forced to pay
significant 'transfer' and 'recordation' taxes to the District of Columbia Record of Deeds and lost
her homestead tax deduction;" (c) Duncan "failed to file any request with the District of
Columbia Department of Consumer and Regulatory Affairs for authorization for the [LLC] to
conduct business as a foreign Limited Liability Company or register the property as a rental
property with the District of Columbia Department of Consumer and Regulatory Affairs or
obtain a business license for the [LLC];" and (d) the transaction actually "benefitted Defendant
Duncan's principal client, Defendant [FMVILA], and allowed [FMVILA] to fraudulently
disguise the loan to [Plaintiff] as a commercial loan rather than, what was in reality, a personal
consumer residential loan."  Fourth Am. Compl.¶¶ 353-56, 361-64, 369-72.

    [9] Specifically, Plaintiff alleges that Duncan breached his duty to her by:  (a) "by failing to
use a proper and accurate accounting statement;" (b) "by failing to ensure that the all loan
documents comply with all relevant laws and statutes;" (c) "by failing to notarize and
authenticate loan documents by a licensed notary;" (d) "by failing to promptly disburse funds
associated with this loan;" (e) "by failing to promptly filing loan documents and loan releases;"
(f) "by failing to conduct the settlement in a manner in accordance with all relevant laws and
statutes;" (g) "by using a HUD-1 settlement statement that did not accurately reflect the nature of
the transaction;" and (h) "by paying 'transfer' and 'recordation' taxes to the District of Columbia
Recorder of Deeds."  Fourth Am. Compl. ¶¶ 385-87, 393-95.

Duncan has moved for summary judgment with respect to each of the claims enumerated above.  As set forth in his opening motion, Duncan principally argues that Plaintiff cannot succeed on any of her claims against him that are based on his role in the formation of the LLC and the FMV Loan settlement because there is no evidence that he entered into an attorney-client relationship with Plaintiff.  As characterized by Duncan, Plaintiff's claims for legal malpractice, breach of fiduciary duty and negligence are each predicated upon a finding that he entered into an attorney-client relationship with Plaintiff, such that absent proof that an attorney-client relationship existed, Plaintiff cannot succeed on her claims against Duncan based on his role in forming the LLC and closing the FMV Loan.  *See* Duncan's [186-1] Mem. of Law in support of MSJ at 4-8.[10]

Plaintiff concedes in her opposition briefing that she did not enter in an attorney-client relationship with Duncan with respect to the FMV Loan closing, but argues that an attorney-client relationship nonetheless existed at least with respect to the formation of the LLC ,and that regardless, even absent an attorney-client relationship, Plaintiff's claims survive.  *See* Pl.'s [196] Opp'n at 9-16.  Specifically, Plaintiff argues that her legal malpractice claim remains viable because Virginia law permits third-parties to bring a legal malpractice action against an attorney in certain "special circumstances" where the third-party's reliance was both reasonable and foreseeable.  *See id.* at 15.  Plaintiff also argues that, notwithstanding the absence of an attorney-

---

[10] Duncan also argues in the alternative that even if the Court were to find that an attorney-client relationship existed, such that Plaintiff's claim for legal malpractice survives summary judgment, he is nonetheless entitled to summary judgment with respect to Plaintiff's negligence and breach of fiduciary claims.  *See* Duncan's [186-1] Mem. of Law in support of MSJ at 8-13.  Because the Court finds below that no attorney-client relationship existed between Plaintiff and Duncan, the Court need not consider this argument in the alternative.

client relationship, Duncan owed her "the duty of acting carefully" and a "duty to act with fairness," such that her claims for negligence and breach of fiduciary duty survive summary judgment as well.  *See id.* at 11-16.  Pursuant to these broad duties, Plaintiff argues that Duncan was required to, *inter alia*, "resolve the discrepancy involving where she was living before executing [the FMV Loan documents];" "ensure the HUD-1 was complete and truthful;" and ensure that Plaintiff was not "misle[d] . . . into believing that she was signing documents before a valid notary public."  *Id.* at 13.

Duncan does not directly respond to Plaintiff's argument in his reply briefing that her claims survive even absent an attorney-client relationship.  *See generally* Duncan's [224] Opp'n. Rather, Duncan argues for the first time that Plaintiff's claims against him must fail because she is required under Virginia law to proffer expert testimony to establish the appropriate standard of care and to prove liability against him, but that she has failed to provide an expert qualified to opine on these issues.[11]  Duncan's [224] Reply at 4-8.  According to Duncan, although Plaintiff has designated two expert witnesses, neither expert is sufficiently qualified to provide the necessary testimony regarding Duncan's duties under Virginia law with respect to the FMV Loan.  *Id.*  Plaintiff therefore cannot succeed on her legal malpractice, negligence or breach of fiduciary claims against him.  *Id.*

---

[11] Although Duncan briefly noted the issue in a footnote in his opening memorandum, he declined to provide any substantive discussion at that time in light of his arguments in the alternative that Plaintiff's claims based on Duncan's alleged role in the FMV Loan closing failed given the lack of any attorney-client relationship.  *See* Duncan's [186-1] Mem. of Law in support of MSJ at 5, n. 1 (noting that expert legal testimony is normally required to demonstrate whether an attorney has violated an applicable standard of care, but indicating that it "was premature to consider the purported expert testimony of Plaintiff's experts" given his argument that the claims fail in the absence of any attorney-client relationship).

Upon consideration of the parties' briefing and the positions set forth therein, the Court ultimately agrees with Duncan that there is no evidence in the record from which a jury could reasonably conclude that he and Plaintiff entered into an attorney-client relationship.  The Court, however, cannot agree on the present record that the absence of an attorney-client relationship conclusively establishes that Duncan is also entitled to summary judgment with respect to Plaintiff's malpractice and common law tort claims.  The parties have not adequately briefed this question.  As indicated above, Duncan's opening brief in support of his motion focuses almost entirely on the question of whether an attorney-client relationship existed, arguing that if no such relationship existed, Plaintiff's claims fail.  He makes no effort in his pleadings to address the distinct question of whether, even accepting that no attorney-client relationship existed, Plaintiff's claims nonetheless fail.  Similarly, while Plaintiff urges the Court to find that Duncan did in fact owe her certain duties as part the FMV Loan closing, even absent an attorney-client relationship, her briefing on this issue is wholly inadequate.  In addition, the Court declines to make any ruling at this time regarding Duncan's contention that he is entitled to summary judgment because Plaintiff cannot proffer adequate expert testimony to demonstrate liability, as the argument was advanced for the first time in reply.  Nonetheless, because Duncan's argument on this latter point, if meritorious, appears to be dispositive of Plaintiff's legal malpractice, breach of fiduciary duty, and negligence claims, the Court concludes that the appropriate course of action at this time is to hold Duncan's motion in abeyance as to these counts and provide Plaintiff an opportunity to respond to Duncan's argument regarding the need for expert testimony.

a.      Duncan and Plaintiff did not enter into an attorney-client
relationship.

The record evidence demonstrates that Plaintiff did not enter into an attorney-client

relationship with Duncan at any time during the FMV Loan transaction.  Indeed, as indicated

above, Plaintiff has conceded that no attorney-client relationship existed with respect to the FMV

Loan closing itself, *see* Pl.'s [196] Opp'n at 12, and for good reason.  Plaintiff explicitly

acknowledged at her deposition that Duncan had neither agreed to be nor was acting as her

attorney with respect to the FMV Loan and that he had made it very clear to her that he was

acting as counsel for FMVILA with regard to the FMV Loan transaction.  Nonetheless, in an

attempt to rescue her legal malpractice claim against Duncan based on his formation of the LLC,

Plaintiff argues that while an attorney-client relationship may not have existed with respect to the

loan closing itself, such a relationship existed with respect to the formation of the LLC.

The Court is not persuaded by Plaintiff's attempts to carve the FMV Loan transaction into

two discrete events — *i.e.*, the creation of the LLC and the actual loan settlement.  It is readily

apparent from the record evidence that the establishment of the LLC was part and parcel of the

FMV Loan closing.  That is, the LLC was formed in order to facilitate FMVILA's extension of a

commercial loan to Plaintiff, and as Duncan asserts — and as Plaintiff does not dispute — an

attorney often prepares documents to facilitate a closing for both sides.  *See* Duncan's [186-1]

Mem. of Law in support of MSJ at 6-8.  Although a dispute continues to exist as to the true

nature of that loan, there is no dispute that establishment of the LLC was an integral part of the

FMV Loan transaction as it was structured and Plaintiff has presented no argument to the

contrary.

Regardless, even if the Court were persuaded (which it is not) that Duncan's role in the formation of the LLC should be viewed as discrete from his larger role as counsel for FMVILA with respect to the FMV Loan closing, Plaintiff's argument on this point is insufficient to defeat summary judgment for two principal reasons.  First, Plaintiff has not directed the Court to any record evidence or relevant legal authority supporting her claim that she entered into an attorney-client relationship with Duncan to form the LLC.  As a review of her opposition briefing demonstrates, Plaintiff's argument in favor of finding that an attorney-client relationship existed with respect to the formation of the LLC consists solely of unsupported allegations copied almost verbatim from her Fourth Amended Complaint.  *See* Pl.'s [196] Opp'n at 9-11.  She has not directed the Court to any evidentiary or factual support for these allegations.  *See id.*  Discovery is now closed, and Plaintiff cannot continue to rely solely on her own unfounded and unsupported allegations.  Rather, she "must 'go beyond the pleadings and . . . 'designate' specific facts showing that there is a genuine issue for trial.'"  *See Celotex Corp.*, 477 U.S. at 324 (internal citations omitted).  This she has failed to do.

Second, Plaintiff has also failed to cite to any legal authority in support of her position that an attorney-client relationship was formed with respect to the establishment of the LLC.  By contrast, citing to case law from both Virginia and elsewhere, Duncan argues in his opening motion that the mere fact that he assisted in the preparation of documents to facilitate the loan closing and that Plaintiff paid for these services does not create an attorney-client relationship. *See* Duncan's [186-1] Mem. of Law in support of MSJ at 6-7.  Plaintiff has not responded to this assertion and the related case law nor has she directed the Court to any case law in support of her apparent contrary view that the preparation and filing of the LLC's articles of organization as part

of the FMV Loan closing created an attorney-client relationship between herself and Duncan.

Third and finally, Plaintiff's current litigation position that she and Duncan entered into an attorney-client relationship with respect to the establishment of the LLC is ***wholly inconsistent*** with Plaintiff's own testimony.  As set forth above, Plaintiff testified that she had neither heard of the LLC prior to this lawsuit nor requested Duncan's assistance in setting it up. While a contract establishing an attorney-client relationship may, under Virginia law, be either express or implied, there must be "some indication that the advise and assistance of the attorney was sought and received." *Carstensen v. Chrisland Corp.*, 442 S.E.2d 660, 668 (Va. 1994).  In this case, Plaintiff maintains that she did not request the advice and assistance of Duncan with respect to the establishment of a limited liability corporation.  Having testified as such, her present litigation position that she nonetheless entered into an attorney-client relationship in order to have Duncan establish the LLC on her behalf is without merit.   The Court shall therefore GRANT Duncan's [185/186] Motion for Partial Summary Judgment to the extent he argues that no attorney-client relationship existed between himself and Plaintiff.

> b.   Duncan's motion with respect to Plaintiff's claims for legal malpractice, negligence, and breach of fiduciary duty is otherwise held in abeyance.

As indicated above, the Court is unable to resolve Duncan's motion for partial summary judgment with respect to Plaintiff's malpractice and common law tort claims on the present record.  First, given the precursory nature of the parties' briefing, the Court cannot determine whether Duncan, who appears to have been the only attorney present at the FMV Loan closing (albeit as FMVILA's attorney), owed Plaintiff any duties — such as the duty of acting carefully or the duty of fairness — or may be held liable for legal malpractice under Virginia law, and the

Court declines to advance arguments the parties themselves have not made.  Although Plaintiff

raised the issue in her opposition briefing, Duncan chose not to directly respond in his briefing.

The general lack of details regarding Duncan's exact role in the FMV Loan closing further

hampers any discussion of the potential duties, if any, that may have flowed from Duncan's role

in the FMV Loan transaction.  Duncan therefore has not shown that he is entitled to summary

judgment on Plaintiff's claims for legal malpractice, negligence, and breach of fiduciary duty

based on the absence of an attorney-client relationship alone.

Second, the Court declines to consider at this time Duncan's alternative argument, raised

for the first time in reply, that Plaintiff's claims fail because she cannot proffer qualified expert

testimony establishing Duncan's liability.  The Court has previously indicated in these

proceedings that it is disinclined to consider arguments advanced for the first time in a reply.  *See*

*Juergens v. UTS*, 652 F. Supp. 2d 40, 50, n. 8. (D.D.C. 2009) (declining to consider argument

raised for first time in reply) (citing *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C.

Cir.2008) ("We need not consider this argument because plaintiffs . . . raised it for the first time

in their reply brief.")).   As the D.C. Circuit has observed, "[c]onsidering an argument advanced

for the first time in a reply brief . . . is not only unfair to an appellee, but also entails the risk of an

improvident or ill-advised opinion on the legal issues tendered."  *McBride v. Merrell Dow &*

*Pharm.,* 800 F.2d 1208, 1211 (D.C. Cir.1986) (internal citation omitted)).  In this case, Duncan

did not substantively address this particular argument until his reply, and Plaintiff has not had a

full opportunity to respond.

Nonetheless, the Court notes that Duncan's argument on this point, if meritorious,

appears to be dispositive of Plaintiff's legal malpractice, breach of fiduciary duty, and negligence

claims.  It therefore concludes that the appropriate course of action at this time is to hold

Duncan's motion in abeyance as to these counts and provide Plaintiff an opportunity to respond

to Duncan's argument regarding the need for expert testimony, pursuant to the schedule set forth

in the accompanying Order.  Plaintiff is advised that her response is limited solely to addressing

Duncan's assertions, made for the first time in reply, that (a) Virginia law requires Plaintiff to

present expert testimony in this case to establish the appropriate standard of care, whether

Duncan breached that standard of care, and whether his breach was the proximate cause of

Plaintiff's damages, and (b) Plaintiff has failed to produce expert testimony sufficient to meet

that requirement.  The Court shall also provide Duncan an opportunity to reply to Plaintiff's

response.  The parties are admonished that any future briefing must include accurate citations to

both evidentiary and legal support for their arguments.  Accordingly, the Court shall HOLD IN

ABEYANCE Duncan's [185/186] Motion for Summary Judgment with respect to Counts XVIII

(Legal Malpractice), XIX (Breach of Fiduciary Duty), XX (Negligence), XXII (Breach of

Fiduciary Duty), and XXIII (Negligence) of Plaintiff's Fourth Amended Complaint in order to

provide Plaintiff an opportunity to file a targeted response to Duncan's argument, raised for the

first time in reply, that her claims fail for lack of expert testimony.  A schedule for further

briefing is set forth in the accompanying Order.

3.    Plaintiff's Breach of Contract Claim Relating to Duncan's Role in the<br>Formation of the LLC

Duncan has also moved for summary judgment with respect to Count XVII of Plaintiff's

Fourth Amended Complaint, which asserts a breach of contract claim premised on Duncan's

preparation and filing of the LLC articles of organization.  Specifically, Plaintiff alleges that

"[b]y claiming to have prepared documents [establishing the LLC] on [Plaintiff's] behalf and receiving a fee for doing so, . ... and filing these documents with the Virginia State Corporation Commission, Defendant Duncan entered into [a] contract with [Plaintiff] to use a degree or reasonable care and skill expected of lawyers acting under similar circumstances."  Fourth Am. Compl. ¶ 344.  Plaintiff further alleges that in establishing the LLC, Duncan breached his contract with Plaintiff because: (a) "there was no benefit to [Plaintiff] from entering into such a complicated transaction;" (b) Plaintiff was "actually harmed" by the transaction "as she was forced to pay significant 'transfer' and 'recordation' taxes to the District of Columbia Record of Deeds and lost her homestead tax deduction;" (c) Duncan "failed to file any request with the District of Columbia Department of Consumer and Regulatory Affairs for authorization for the [LLC] to conduct business as a foreign Limited Liability Company or register the property as a rental property with the District of Columbia Department of Consumer and Regulatory Affairs or obtain a business license for the [LLC];" and (d) the transaction actually "benefitted Defendant Duncan's principal client, Defendant [FMVILA], and allowed [FMVILA] to fraudulently disguise the loan to [Plaintiff] as a commercial loan rather than, what was in reality, a personal consumer residential loan."  *Id.* ¶¶ 344-349.

Duncan argues that he is entitled to summary judgment with respect to Plaintiff's claim for breach of contract because there is no evidence that a contract was ever formed.  Specifically, Duncan argues that there are no facts sufficient to establish that the requirements for a contract under Virginia law have been met in this case or, alternatively, that any such contract is void for

vagueness.  Duncan's [186-1] Mem. of Law in support of MSJ at 13-14.[12]  Plaintiff appears to

agree.  She does not dispute Duncan's contention that no contract exists under Virginia law (or if

one exists, it is void for vagueness as a matter of law).  *See* Pl.'s [196] at 17-18.  Rather, she

contends that her breach of contract claim survives summary judgment — not because she and

Duncan agreed to enter into a contractual relationship — but because (a) "she has shown that

Defendant Duncan owed duties to [Plaintiff] in the establishment of the [LLC] and in the closing

of the [FMV Loan]" and (b) even "assuming there was no explicit contract between [Plaintiff]

and Defendant Duncan, [she] was an intended beneficiary of the contract between Defendant

Duncan and [FMVILA]."  Pl.'s [196] Opp'n at 17-18.  Such arguments are without merit.

First, Plaintiff's assertion that Duncan owed a duty of care to Plaintiff is wholly irrelevant

to her breach of contract claim.  While the Court cannot determine on the present record whether

Duncan in fact owed any duties to Plaintiff, as discussed above, Plaintiff's contention, even if

true, does not support a claim for breach of contract.  In order to establish a breach of contract

claim under Virginia law, a party must show:  "(1) a legally enforceable obligation of a defendant

to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage

to the plaintiff caused by the breach of obligation."  *Filak v. George*, 594 S.E.2d 610, 614 (Va.

2004).  In addition, for a contract to exist as a matter of law, there must be a "'mutuality of assent

---

[12] Duncan also argues that Plaintiff's breach of contract claim must fail because "there are no facts alleged to substantiate either Plaintiff's claim of incurring special damages of $5,000,000 in a $250,000 loan transaction, or how breach of the alleged contract may be the basis of imposition fo punitive damages," and that Plaintiff "asks for impossible relief against Duncan, including declaring the [FMV Loan] void, the voiding of the loan documents, and rescinding the transfer of title to the LLC."  Duncan's [186-1] Mem. of Law in support of MSJ at 14.  Given the Court's conclusion below that there is no evidence that a contract was ever entered into as between Duncan and Plaintiff, the Court does not consider Duncan's arguments in the alternative.

— the meeting of the minds of the parties . . . [u]ntil the parties have a distinct intention common

to both . . . there is a lack of mutual assent and, therefore, no contract.'" *Moorman v. Blackstock,*

*Inc.*, 661 S.E.2d 404, 409 (Va. 2008) (quoting *Phillips v. Mazyck*, 643 S.E.2d 172, 175 (Va.

2007)).  "Mutual assent is determined 'exclusively from those expressions of [the parties']

intentions which are communicated between them.'"  *Id.* (quoting *Lucy v. Zehmer*, 84 S.E.2d

516, 522 (Va. 1954)).  There is no evidence on the present record to support a finding that

Plaintiff and Duncan mutually agreed to enter into a contract regarding the establishment of the

LLC.  Indeed, as discussed above, the record evidence demonstrates that the parties did not enter

into a contractual attorney-client relationship at any point.  *See supra* at pp. 23-25.  Moreover,

specific to the claim that a contract was entered into with respect to the LLC, Plaintiff herself has

explicitly ***denied*** that she ever requested Duncan to assist her with the establishment of a limited

liability corporation.  Pl.'s [196] Resp. Stmt. ¶ 4.  As such, Plaintiff's present claim that she and

Duncan entered into a contract to form a limited liability company is not only unsupported by the

record but also stands in direct contradiction to Plaintiff's own testimony that she did not request

Duncan assist her in establishing the LLC.

Second, Plaintiff may not pursue a breach of contract claim based on an "intended

beneficiary theory," as such a theory is directly at odds with her Fourth Amended Complaint.  As

set forth therein, Plaintiff's breach of contract claim is premised solely on the allegation that

"Duncan entered into [a] contract with [Plaintiff]."  Fourth Am. Compl. ¶ 344.  There is no claim

that she can recover for breach of contract based on an "intended beneficiary" theory.  *See id.*

Fourth Am. Compl. ¶¶ 343-50.  Plaintiff has been repeatedly advised that she cannot amend her

complaint through her opposition briefing.  *See, e.g., Juergens v. UTS*, 533 F. Supp. 2d 64, 75

(D.D.C. 2008).

Accordingly, as there are no facts on the present record from which a reasonable jury could conclude that Duncan entered into a contract with Plaintiff and as Plaintiff may not pursue a breach of contract claim based on an intended beneficiary theory, her breach of contract claim is without merit.  Duncan's [185/186] Motion for Summary Judgment is therefore GRANTED with respect to Count XVII (Breach of Contract) of Plaintiff's Fourth Amended Complaint.

4.      Plaintiff's Fraud Claim

The Court next moves to consider Duncan's motion for summary judgment with respect to Count XXV (Fraud) of Plaintiff's Fourth Amended Complaint, which alleges that Duncan made false statements to Plaintiff and prepared false documents with respect to the FMV Loan in an effort to fraudulently disguise the transaction as a commercial loan rather than a personal consumer residential loan.  *See* Fourth Am. Compl. ¶¶ 404-18.  Duncan argues that he is entitled to summary judgment because "there are no allegations that [he] did anything more than prepare documents in the manner in which he was directed" by his client, Defendant FMVILA; accordingly, Duncan contends that Plaintiff's fraud claim must fail because he cannot be held liable for any misrepresentations or inaccuracies that might be contained in the documents where he was simply "paper[ing] the deal" at his client's direction and had no reason to believe any of the statements were untrue.  Duncan's [186-1] Mem. of Law in support of MSJ at 18-19. Plaintiff responds that "Defendant Duncan did more than simply acting as a scribe," and as such, may be held liable for fraud.  *See* Pl.'s [196] Opp'n at 19-20.  Although Duncan filed a reply generally in support of his motion for summary judgment, he chose not to include any substantive response regarding Plaintiff's fraud claim.  *See generally* Duncan's [224] Reply.

Upon review of the parties' briefing and the operative complaint, the Court concludes that Duncan has not demonstrated that he is entitled to summary judgment on Plaintiff's fraud claim. First, Duncan's argument is premised on a mischaracterization of Plaintiff's Fourth Amended Complaint.  While Duncan focuses only on Plaintiff's allegations that he prepared loan documents containing false statements, Plaintiff has also clearly alleged that Duncan made certain false representations and statements directly to Plaintiff herself.  *See* Fourth Am. Compl. ¶¶ 405-06.  Duncan has not addressed these allegations, instead focusing only on the alleged false statements contained in the loan documents.  Moreover, Plaintiff's fraud claim is not premised solely "on the notion that if Duncan drafted documents that incorrectly stated the terms of what Juergens believed she was getting, he was committing fraud," as Duncan claims.  Duncan's [186-1] Mem. of Law in support of MSJ at 18.  Rather, Plaintiff has alleged that Duncan "made these representations and prepared these documents with actual knowledge that representations made and statements contained in the documents were false," and that he did so "with the intent to deceive [Plaintiff] into entering into the loan from Defendant [FMVILA]."  *Id.* ¶¶ 411-12.  Even assuming, then, that Duncan is correct that an attorney cannot be held liable for fraud based solely on allegations that he unknowingly prepared false documents at his client's direction, that is not Plaintiff's claim in this case.

Second, Duncan urges the Court to find as matter of undisputed fact that his role in the FMV Loan closing was limited to that of "preparing the documents to 'paper the deal' between the parties," such that any "representations [included in the documents] were not his own."  Duncan's [186-1] Mem. of Law in support of MSJ at 19.  Duncan, however, has not directed the Court to any factual support for these claims.  *See id.* at 18-21.  Similarly, Duncan asserts that he

"did not negotiate the terms of the loan . . . and fully disclosed the loan documents to [Plaintiff] before execution," but fails to proffer any supporting record citations. *See id.* at 19.  As indicated previously, Duncan's motion and supporting briefing provide the Court with few details regarding his precise role in the FMV Loan closing. *See supra* at pp. 12, 13.  Admittedly, Plaintiff has done no better, relying solely on unsupported allegations to oppose Duncan's motion. *See* Pl.'s [196] Opp'n at 19-20.  But Duncan, as the moving party, bears the burden of proving that his role in the FMV Loan transaction was limited to "papering the deal," as he now argues.  Having failed to do so, he is not entitled to judgment as a matter of law.  Accordingly, Duncan's [185/186] Motion for Summary Judgment is DENIED with respect to Count XXV (Fraud) of Plaintiff's Fourth Amended Complaint.

**5.**   Plaintiff's Claim for Civil Conspiracy

Duncan next moves for summary judgment with respect to Count XXVI of Plaintiff's Fourth Amended Complaint, which asserts a claim for civil conspiracy against Duncan based on allegations that he conspired with Defendant Bennet to fraudulently disguise the FMV Loan as a commercial loan rather than a personal consumer residential loan. *See* Fourth Am. Compl. ¶¶ 419-25.  Although unacknowledged by either Duncan or Plaintiff, Virginia recognizes both a *claim for common law civil conspiracy and a claim for statutory conspiracy pursuant to the* Virginia Business Conspiracy statute, Va. Code § 18.2-499(A) (precluding "two or more persons" from combining together "for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act"). *See Catercorp., Inc. v. Caterin*

33

*Concepts, Inc.*, 431 S.E.2d 277, 281-82 (Va. 1993) (discussing common law conspiracy cause of action as well as statutory conspiracy cause of action under Virginia law); *see also* Va. Code § 18.2-500 (providing for civil relief for any person "injured in his reputation, trade, business or profession by reason of a violation of § 18.2-499").   A fair reading of the Fourth Amended Complaint indicates that Plaintiff has alleged only a claim for common law civil conspiracy; the complaint itself does not reference Virginia statute § 18.2-500 nor is there any other suggestion that Plaintiff intended to allege a claim for conspiracy in violation of Virginia statute rather than a claim for common law civil conspiracy.   *See* Fourth Am. Compl. ¶¶ 419-25.

In moving for summary judgment, however, Duncan appears to have construed Plaintiff's claim — not as a common law claim for civil conspiracy — but as a claim for statutory conspiracy pursuant to Virginia Code § 18.2-500.   For example, he relies upon Va. Code § 18.2-499(A) in setting forth the requirements for establishment of civil conspiracy under Virginia law.  *See* Duncan's [186-1] Mem. of Law in support of MSJ at 16 & n. 27.   Similarly, in advancing his arguments against Plaintiff's civil conspiracy claim, Duncan principally relies on Virginia case law discussing statutory conspiracy.  *See, e.g., id.* at 16-17 (citing to *Charles E. Brauer Co., Inc. v. NationsBank of Virginia*, 466 S.E.2d 382, 38-87 (Va. 1996) (analyzing claim under Va. Code § 18.2-499); *Fox v. Deese*, 362 S.E.2d 699, 428 (Va. 1987) (same)).   Thus, while Duncan does not explicitly indicate in his briefing that he construes Plaintiff's claim as one for statutory civil conspiracy under Va. Code § 18.2-500, his reliance on the statutory code and related case law suggests that he has done as much.   It may be that the arguments Duncan now advances with respect to a claim for statutory conspiracy are equally applicable to a claim for common law civil conspiracy.   Duncan, however, has not argued as much or indeed, even recognized that distinct

claims for common law conspiracy and statutory conspiracy exist under Virginia law.  As such, he has not demonstrated that he is entitled to summary judgment on Plaintiff's claim for common law civil conspiracy and his motion for summary judgment is therefore DENIED with respect to Count XXVI.

### 6.     Plaintiff's Claims for Punitive Damages

Duncan also moves for summary judgment with respect to Plaintiff's request for punitive damages as requested in Counts XVIII (Legal Malpractice), XIX (Breach of Fiduciary Duty), XX (Negligence), XXI (Breach of Contract), XXII (Breach of Fiduciary Duty),and XXIII (Negligence).[13]  As indicated above, the Court has held in abeyance Duncan's motion with respect to the majority of these claims pending further briefing from the parties.  Because resolution of Duncan's motion may ultimately render it unnecessary to address Plaintiff's requests for punitive damages based on such claims, the Court declines to consider at the present time Duncan's motion insofar he moves for summary judgment on punitive damages in Counts XVIII through XXIII.  Accordingly, Duncan's [185/186] Motion for Summary Judgment is HELD IN ABEYANCE with respect to Plaintiff's punitive damages requests in Counts XVIII (Legal Malpractice), XIX (Breach of Fiduciary Duty), XX (Negligence), XXI (Breach of Contract), XXII (Breach of Fiduciary Duty), and XXIII (Negligence) of Plaintiff's Fourth Amended Complaint.  The Court shall revisit the issue, as may be appropriate, once the parties' supplemental briefing has been submitted.

---

[13] Duncan has also moved for summary judgment with respect to Plaintiff's request for punitive damages in Count XVII (Breach of Contract) of the Fourth Amended Complaint. Because the Court has already granted Duncan's motion for summary judgment as to Count XVII, the Court need not reach Duncan's argument regarding Plaintiff's punitive damages request based on that claim.

7.      Plaintiff's Statutory Claims

Finally, Duncan has moved for summary judgment on Counts XXXI and XXXII of

Plaintiff's Fourth Amended Complaint, which assert violations of the District of Columbia's

Consumer Protection Procedures Act ("CPPA"), D.C. Code § 29.3901 *et seq.,* and the District of

Columbia's Consumer Credit Service Organization Act ("CCSOA"), D.C. Code § 28-4601 *et*

*seq.*, respectively.  *See* Fourth Am. Compl. ¶¶ 482-507.  The Court shall address Duncan's

arguments regarding each statute in turn.

a.      Consumer Protection Procedures Act.

As set forth in Count XXXI of Plaintiff's Fourth Amended Complaint, she alleges that

Duncan violated various provisions of the CPPA by, *inter alia*, fraudulently misrepresenting the

FMV Loan as a commercial loan.  *See id.*  ¶¶ 482-97.  "The []CPPA regulates transactions

between a consumer and a merchant."  *Adler v. Vision Lab Telecommunications, Inc.*, 393 F.

Supp. 2d 35, 39 (D.D.C. 2005); *see also Howard v. Riggs Nat'l Bank,* 432 A.2d 701, 709 (D.C.

1981).  A "consumer" is "a person who does or would purchase, lease (from), or receive

consumer goods or services, including a co-obligor or surety, or a person who does or would

provide the economic demand for a trade practice."   D.C. Code § 28-3901(a)(2).  A "merchant"

is "a person who does or would sell, lease (to), or transfer, either directly or indirectly, consumer

goods or services, or a person who does or would supply the goods or services which are or

would be the subject matter of a trade practice."  *Id.* § 28-3901(a)(3).  "A merchant need not be

the 'actual seller of the goods or services' complained of, but must be 'connected with the

'supply' side of the consumer transaction.'"  *Adler*, 393 F. Supp. 2d at 39 (quoting *Save*

*Immaculata/Dunblane, Inc. v. Immaculata Prep. Sch.,* 514 A.2d 1152, 1159 (D.C. 1986)).

Duncan contends that he is entitled to summary judgment on Plaintiff's CPPA claim because he is not a "merchant," as that term is defined under the Act.  Duncan's [186-1] Mem. of Law in support of MSJ at 20.  Without citing to any case law or relevant statutory provisions, Duncan asserts that he does not qualify as a merchant because (a) he "did not sell or transfer services to [Plaintiff] in the District of Columbia" and (b) "[a]ll meetings and activities occurred solely in the Commonwealth of Virginia."  *Id.*  As indicated above, the statutory definition of "merchant" does not itself contain any geographical limitation nor has Duncan directed the Court to any other legal authority in support of his claim that the term is so limited.  Accordingly, Duncan's argument, as framed, is without merit.

Nonetheless, it appears to the Court that, although poorly articulated, Duncan may have in fact intended to raise a choice of law challenge to Plaintiff's CPPA claim.  While Duncan frames his argument as one challenging his qualification as a merchant under the Act, his argument regarding the location of the challenged conduct is more appropriately characterized as a choice of law challenge.  *Cf. Williams v. First Gov't Mortgage and Investors Corp.*, 176 F.3d 497, 499 (D.C. Cir. 1999) (applying choice of law analysis and concluding that CPPA applied to home loan issued to D.C. resident and secured by property in the District of Columbia, even though loan was issued by non-D.C. corporation with offices in Maryland, meetings regarding the loan took place in Maryland, and loan payments were sent to a Maryland address).  Duncan, however, has not provided the Court with any specific discussion regarding the choice of law inquiry with respect to Plaintiff's statutory claims, and the Court declines to advance arguments not made by the parties themselves.  Accordingly, Duncan's [185/186] Motion for Summary Judgment is DENIED with respect to Count XXXI (violations of the CPPA) of Plaintiff's Fourth Amended

Complaint.

> b.      Consumer Credit Service Organizations Act.

As set forth in Count XXXII of the Fourth Amended Complaint, Plaintiff alleges that

Duncan violated the CCSOA by, *inter alia*, fraudulently misrepresenting the FMV Loan as a

commercial loan and failing to provide Plaintiff with certain disclosures.  *See* Fourth Am.

Compl. ¶¶ 498-507.  The CCSOA precludes consumer credit service organizations from

engaging in certain prohibited conduct.  *See* D.C. Code § 28-4601 *et seq.*  A "consumer credit

service organization" is defined as

> any person who, with respect to the extension of credit by others, sells, provides,
> performs, or represents that he or she can sell, provide, or perform, in return for the
> payment of money or other valuable consideration, any of the following services:
>
> (i)      Improvement of a consumer's credit record, history, or rating;
>
> (ii)     Obtain an extension of credit for a consumer; or
>
> (iii)    Provide advice or assistance to a consumer regarding any matter related to the
> consumer's personal, household, or family credit.

*Id.* § 28-4601(2)(A).

Duncan contends that he is entitled to summary judgment because he does not qualify as

a "consumer credit service organization."  Duncan's [186-1] Mem. of Law in support of MSJ at

20.  Specifically, he asserts that "he had no contact with [Plaintiff] to improve her credit, obtain

an extension of credit, or provide assistance regarding any matter related to her personal credit,

and had never seen her loan application before the suit" nor did he "take a credit application from

[Plaintiff] [or] meet with her respect to any item concerning her credit."  *Id.*  From this, Duncan

concludes, without citation to any supporting case law or legal authority, that the Act therefore

does not apply to him.  *See id.*

Duncan's argument on this point is premised on the Court's acceptance of his version of the relevant facts.  Unfortunately for Duncan, he has failed to provide sufficient support for the broad factual assertions upon which his argument is based.  Duncan cites to paragraph five of his statement of material facts not in dispute as the sole support for his assertions that "he had no contact with [Plaintiff] to improve her credit, obtain an extension of credit, or provide assistance regarding any matter related to her personal credit, and had never seen her loan application before the suit" nor did he "take a credit application from [Plaintiff] [or] meet with her respect to any item concerning her credit."  *See id.*  But as reference to Duncan's statement demonstrates, paragraph five states only that "[i]t was not Duncan's job to review [Plaintiff]'s credit report with regard to her First Mount Vernon Loan."  Duncan [186-3] Stmt. ¶ 5.  This factual statement, even if true, obviously does not support Duncan's sweeping denials that he had no contact with Plaintiff regarding her credit; rather, it states only that it was not his "job" to review her credit report in connection with the FMV Loan.[14]  As such, there is no cited support for Duncan's broader claims that he did not, for example, give "advice or assistance" to Plaintiff regarding "any matter related to the consumer's personal, household, or family credit."  *See, e.g.,* D.C. Code § 28-4601(2)(A)(iii).  Accordingly, Duncan has not demonstrated on the present record that

---

[14] In addition, Duncan cites to his deposition at pages 6:15-7:1 as support for his assertion that "[i]t was not [his] job to review Juergen's credit report with respect to her First Mount Vernon Loan."  *See* Duncan's [186-3] Stmt. ¶ 5.  The Court notes, however, that he has not provided it with a copy of the relevant pages of his deposition.  *See generally* Duncan Dep. (skipping from page 5 to page 7).  The Court therefore cannot determine on the present record if Duncan's factual assertion is adequately supported.  Regardless, because Duncan's claim that he it was not his "job" to review Plaintiff's credit report does not support his much broader assertions that "he had no contact with Juergens to improve her credit, obtain an extension of credit, or provide assistance regarding any matter related to her personal credit, [] had never seen her loan application before the suit," his failure to include the cited deposition page is ultimately immaterial.  Duncan's [186-1] Mem. of Law in support of MSJ at 20.

he is entitled to summary judgment on Plaintiff's CCSOA claim, and his [185/186] Motion for

Summary Judgment is therefore DENIED with respect to Count XXXII of Plaintiff's Fourth

Amended Complaint.

To summarize, Duncan's [185/186] Motion for Partial Summary Judgment is

GRANTED-IN-PART, DENIED-IN-PART, and HELD IN ABEYANCE-IN-PART.

Specifically, the motion is GRANTED insofar as Duncan argues that no attorney-client

relationship existed between himself and Plaintiff, and it is also GRANTED with respect to

Count XVII (Breach of Contract) of Plaintiff's Fourth Amended Complaint.  It is denied,

however, with respect to Counts XXV (Fraud), XXVI (Civil Conspiracy), XXXI (CPPA), and

XXXII (CCSOA) of Plaintiff's Fourth Amended Complaint.  Finally, the motion is HELD IN

ABEYANCE insofar as Duncan urges that he is entitled to summary judgment on the underlying

claims and/or Plaintiff's punitive damages requests set forth in Counts XVIII (Legal

Malpractice), XIX (Breach of Fiduciary Duty), XX (Negligence), XXI (Breach of Contract),

XXII (Breach of Fiduciary Duty), and XXIII (Negligence), pending further briefing by the parties

pursuant to the schedule set forth in the accompanying Order.

>  **B.**    *Plaintiff's Motion for Partial Summary Judgment on the Issue of Duncan's*
>            *Counterclaim*

The Court turns next to consider Plaintiff's [174] Motion for Summary Judgment on the

Issue of Duncan's Counterclaim.  As indicated above, Duncan filed an Answer and Counterclaim

against Plaintiff in response to her Fourth Amended Complaint.  *See generally* Duncan's Ans. &

Counterclaim, Docket No. [119].  Duncan's Counterclaim includes two counts: (1) Count One

alleges fraud, fraud in the inducement, misrepresentation, and negligent misrepresentation; and

(2) Count Two alleges abuse of process or malicious prosecution.  *See id.*  Plaintiff has moved

for summary judgment on both counts, arguing that discovery has failed to disclose any facts to support these two counts. *See* Pl.'s [174] MSJ at 5. Defendant Duncan timely filed an opposition to Plaintiff's motion, *see* Duncan's [201] Opp'n, and Plaintiff has since filed a reply, *see* Pl.'s [213] Reply. Accordingly, Plaintiff's motion is fully briefed and ripe for the Court's review.

### 1.    Choice of Law

Because this is a diversity case, the Court must first determine which jurisdiction's substantive law applies before it may evaluate the parties' common law claims on their merits. Although neither party has directly addressed this question in their briefing on Plaintiff's motion, each party supports their arguments by reference to District of Columbia law and neither argues that the laws of any other jurisdiction should apply. Both parties therefore assume that District of Columbia law controls. As discussed above, "[t]he Court need not and does not question the parties' assumptions on that point." *Davis*, 639 F. Supp. 2d at 65; *see also CSX Transp.*, 82 F.3d at 482-83 (parties may waive choice-of-law arguments); *In re Korean Air Lines Disaster*, 932 F.2d at 1495 (courts need not address choice of law questions *sua sponte* ). Accordingly, the Court shall apply District law to Duncan's counterclaims.

### 2.    Count One of Duncan's Counterclaim

Plaintiff first moves for summary judgment with respect to Count One of Duncan's Counterclaim, which alleges fraud, fraud in the inducement, misrepresentation, and negligent misrepresentation based on statements allegedly made by Plaintiff in securing the FMV Loan and which Plaintiff now asserts are incorrect. *See* Duncan's Ans. & Counterclaim, ¶¶ 25-40. For example, Duncan alleges that Plaintiff advised him that the Condo located in the District of

Columbia was not her principal residence, but that she now indicates that this statement was not true at the time made.  *See id.* ¶ 29.  According to Duncan, Plaintiff "intentionally and recklessly misrepresented" this and other material facts to him, and he relied on those false statements to his detriment in determining how to document the loan and form the LLC.  *See id.* ¶ 39 ("As a result . . . Plaintiff fraudulently induced Duncan to form the LLC, prepare documentation for a commercial loan for Plaintiff upon which his client [FMVILA] relied, and for FMV to make a contract, for which Duncan suffered damages in an amount to be determined, but not less than $10,000.00.").

Notwithstanding the language in Duncan's Counterclaim, Plaintiff argues in her opening motion that Count One is premised only on Plaintiff's actions with respect to the filing of the instant lawsuit.  *See* Pl.'s [174] MSJ at 6.  She does so based on Duncan's testimony at deposition that his claims for fraud and misrepresentation against Plaintiff were based on various allegedly false statements she included in her complaint in this action.  *See id.*  Framed as such, Plaintiff argues that Duncan's claim for fraud and misrepresentation must fail because Duncan has not "made any assertion that he took any action in reliance of any statement contained in Ms. Juergens' complaint."  *Id.*  This argument is without merit.  While Duncan testified at his deposition that his claim for fraud and/or misrepresentation was based, at least in part, on Plaintiff's statements in her complaint, Duncan's testimony in discovery did not (and indeed, could not) amend or modify his Counterclaim as set forth in his pleading.  Plaintiff herself is well aware that the parties may not amend their operative pleadings through discovery, having been repeatedly advised as much by this Court.  *See Juergens v. UTS*, 652 F. Supp. 2d 51, 63-64 (D.D.C. 2009) ("Plaintiff cannot amend her complaint by merely taking discovery on a subject or

by filing a motion for summary judgment; she must amend her complaint in accordance with

Fed. R. Civ. P. 15(a)).[15]

Having been alerted to the correct nature of the Counterclaim by Duncan's opposition

briefing, *see* Duncan's [201-2] Resp. Stmt. ¶ 3, Plaintiff argues for the first time in her Reply that

Count One nonetheless fails because Duncan suffered no damages from his preparation of the

LLC and FMV Loan documents.  Pl.'s [213] Reply at 2.  The Court reiterates that it shall not

consider arguments advanced for the first time in reply.  *See supra* at p. 26.  Plaintiff did not raise

this particular argument until her reply, and Duncan has not yet had an opportunity to respond.

Nonetheless, because Plaintiff's argument on this point, if meritorious, appears to be dispositive

of Duncan's claim for fraud and/or misrepresentation, the Court concludes that the appropriate

course of action at this time is to hold Plaintiff's motion in abeyance as to Count One of

Duncan's Counterclaim in order to provide Duncan an opportunity to respond.  Such response

shall be filed pursuant to the schedule set forth in the accompanying Order and shall be limited

solely to addressing Plaintiff's argument, made for the first time in reply, that Count One of

Duncan's Counterclaim fails due to an absence of damages.  In particular, as Duncan has

admitted that his damages on this claim consist only of attorneys' fees and costs incurred in this

lawsuit, *see* Duncan's [201-2] Resp. ¶ 4, he must provide legal authority in support of his

---

[15] Nor would a claim for fraud or misrepresentation based on allegations in Plaintiff's Complaint likely succeed under either District of Columbia or Virginia law.  *See Finkelstein, Thompson & Loughran v. Hemispherx Biopharma, Inc.,* 774 A.2d 332, 338 (D.C. 2001) ("Along with the overwhelming majority of the States, the District of Columbia has long recognized an absolute privilege for statements made preliminary to, or in the course of, a judicial proceeding, so long as the statements bear some relation to the proceeding"); *Katz v. Odin, Feldman & Pittleman, P.C.,*  332 F. Supp. 2d 909, 918-19 (E.D. Va. 2004) ("It is well-settled that words spoken or written in a judicial or quasi-judicial proceeding are absolutely privileged when relevant to the subject matter of the proceeding.").

apparent claim that he is entitled to attorneys' fees and costs and that this alone is sufficient proof

of damages to sustain his claim for fraud and misrepresentation.  The Court shall also provide

Plaintiff an opportunity to reply to Duncan's response.  Accordingly, Plaintiff's [174] Motion for

Summary Judgment on the Issue of Duncan's Counterclaim is HELD IN ABEYANCE with

respect to Count One.  A schedule for further briefing is set forth in the accompanying Order.

<u>3.</u>      <u>Count Two of Duncan's Counterclaim</u>

Plaintiff also has moved for summary judgment with respect to Count Two of Duncan's

Counterclaim, which alleges a claim for "abuse of process or malicious prosecution."  *See*

Duncan's Ans. & Counterclaim, ¶¶ 41-48.  Plaintiff argues that "Duncan's abuse of process and

malicious prosecution count should be dismissed on summary judgment since Mr. Duncan's

deposition testimony does not provide any facts upon which this count may be based."  Pl.'s

[174] MSJ at 7.  Plaintiff also contends that Duncan's claims for abuse of process and malicious

prosecution must fail because he has not suffered any legally cognizable damages; specifically,

Plaintiff argues that the only damages Duncan claims as a result of Plaintiff's actions in this case

are attorneys' fees, but Duncan has not shown the necessary bad faith required for an award of

attorneys' fees under the American Rule.  *Id.* at 8-11.

Turning first to Plaintiff's arguments regarding any claim for malicious prosecution, the

Court finds that Duncan has conceded the motion with respect to this claim.  Although Duncan

filed an Opposition to Plaintiff's motion, which nominally purports to address both Plaintiff's

arguments regarding Duncan's malicious prosecution and abuse of process claims, it is apparent

upon closer review that Duncan has failed to provide any substantive response to Plaintiff's

motion with respect to his claim for malicious prosecution.  Rather, Duncan's opposition focuses

exclusively on Plaintiff's arguments regarding his abuse of process claim.  *See* Duncan's [201]

Opp'n at 5-7.  "It is well understood in this Circuit that when a plaintiff files an opposition to a

dispositive motion and addresses only certain arguments raised by the defendant, a court may

treat those arguments that the plaintiff failed to address as conceded."  *Hopkins v. Women's Div.,*

*General Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), aff'd 98 Fed. Appx. 8

(D.C. Cir. 2004); *see also Franklin v. Potter,* 600 F. Supp. 2d 38, 60 (D.D.C. 2009) (treating

defendant's argument in motion for summary judgment as conceded where plaintiff failed to

address it in his response).  Accordingly, because Duncan had the opportunity to respond to

Plaintiff's arguments regarding his malicious prosecution claim, but did not do so, the Court

shall construe his failure as a concession with respect to Plaintiff's motion for summary

judgment on that claim.  *See Hopkins,* 284 F. Supp. 2d at 25.

Duncan has, however, opposed the merits of Plaintiff's arguments regarding his abuse of

process claim, and the Court therefore turns now to consider the parties' substantive arguments

on that point.  Plaintiff argues that she is entitled to summary judgment on Duncan's claim for

abuse of process because he has not proffered facts sufficient to support a finding that Plaintiff

has used the legal system to accomplish an impermissible end.  Pl.'s [174] MSJ at 7.

Significantly, while Duncan asserts that he "has demonstrated facts sufficient to bring in dispute

whether there has been an abuse of process," Duncan's [201] Opp'n at 5, he has not directed the

Court to any specific facts allegedly in support of his abuse of process claim.  Rather, Duncan

simply repeats his allegation, as contained in his Counterclaim, that Plaintiff brought the instant

lawsuit for "leverage purposes."  *See id.* at 6.  He points to no record support for that assertion.[16]

Discovery is now closed, and Duncan can no longer rely on unsupported allegations to support

his claim for abuse of process.  Accordingly, Plaintiff's [174] Motion for Summary Judgment on

the Issue of Duncan's Counterclaim is GRANTED with respect to Count Two, as Duncan has

conceded Plaintiff's motion with respect to his claim for malicious prosecution and has failed to

proffer facts sufficient to support his claim for abuse of process.[17]

To summarize, Plaintiff's [174] Motion for Summary Judgment on the Issue of Duncan's

Counterclaim is GRANTED-IN-PART and HELD IN ABEYANCE-IN-PART.  Specifically,

Plaintiff's motion is GRANTED with respect to Count Two of Duncan's Counterclaim but is

HELD IN ABEYANCE with respect to Count One.  A schedule for further briefing is set forth in

the accompanying Order.

## IV.  CONCLUSION

For the reasons set forth above, Duncan's [185/186] Motion for Partial Summary

Judgment is GRANTED-IN-PART, DENIED-IN-PART, and HELD IN ABEYANCE-IN-PART.

---

[16] The only attempt by Duncan to cite to record evidence in support of this allegation is his reference to his own "testi[mony] and alleg[ation] that the whole basis for the allegations made against him in the First Amended and Second Amended Complaints, followed by the new claims in the 4th Amended Complaint, . . . was for leverage purposes."  *See* Duncan's [201] Opp'n at 6.  Duncan, however, provides no citation to the claimed deposition testimony.  *See id.* Moreover, even assuming that Duncan did testify at deposition that he believed the instant lawsuit was brought for "leverage purposes," Duncan's "own unsubstantiated beliefs amount to nothing more than hearsay, self-serving statements and speculation, and are insufficient as such to defeat summary judgment."  *See Hinson v. Merrit Educ. Ctr.*, 579 F. Supp. 2d 89, 109 n. 5 (D.D.C. 2008).

[17] Given the Court's decision above, it need not reach Plaintiff's alternative argument that Duncan's claims for abuse of process and malicious prosecution fail because he has not suffered any legally cognizable damages.

Specifically, the motion is GRANTED insofar as Duncan argues that no attorney-client relationship existed between himself and Plaintiff, and it is also GRANTED with respect to Count XVII (Breach of Contract) of Plaintiff's Fourth Amended Complaint.  It is denied, however, with respect to Counts XXV (Fraud), XXVI (Civil Conspiracy), XXXI (CPPA), and XXXII (CCSOA) of Plaintiff's Fourth Amended Complaint.  Finally, the motion is HELD IN ABEYANCE insofar as Duncan urges that he is entitled to summary judgment on the underlying claims and/or Plaintiff's punitive damages requests set forth in Counts XVIII (Legal Malpractice), XIX (Breach of Fiduciary Duty), XX (Negligence), XXI (Breach of Contract), XXII (Breach of Fiduciary Duty), and XXIII (Negligence), pending further briefing by the parties.

Second, Plaintiff's [174] Motion for Summary Judgment on the Issue of Duncan's Counterclaim is GRANTED-IN-PART and HELD IN ABEYANCE-IN-PART.  Specifically, Plaintiff's motion is GRANTED with respect to Count Two of Duncan's Counterclaim but is HELD IN ABEYANCE with respect to Count One, pending further briefing by the parties.  An appropriate Order accompanies this Memorandum Opinion.

Date:  February 12, 2010

                                                                    _/s/_____
                                                                    **COLLEEN KOLLAR-KOTELLY**
                                                                    United States District Judge