# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANDREA SLOAN, as Guardian and Conservator on behalf of Mary Juergens, an Incapacitated Individual, in both Mary Juergens' individual capacity and as the sole member of "1230 23rd Street, LLC," <br><br> Plaintiff/Counter-Defendant, <br><br> v. <br><br> URBAN TITLE SERVICES, INC., *et al.*, <br><br> Defendants/Counter-Plaintiffs. | Civil Action No. 06-1524 (CKK) |

## MEMORANDUM OPINION
(February 12, 2010)

The above-captioned lawsuit was filed by the original Plaintiff in this matter, Mary Juergens,[1] nearly three years ago to challenge the legality of two disparate loans extended to Plaintiff, each of which was secured by a condominium located at 1230 23rd Street, N.W., Apartment 505, Washington, D.C. 20037 (the "Condo"). Plaintiff initially named as Defendants in this action Urban Title Services, Inc. ("UTS") as well as Dale Duncan, First Mount Vernon Industrial Loan Association, Inc. ("FMVILA"), Arthur Bennett, and Brickshire Settlements, LLC ("Brickshire").[2] According to Plaintiff, the first of the two loans at issue in this case was

---

[1] Subsequent to filing the instant action, Ms. Juergens was found to be an "incapacitated individual," and Andrea Sloan was appointed as Guardian and Conservator on behalf of Ms. Juergens and has been substituted as Plaintiff for Ms. Juergens, in both her individual capacity and in her capacity as the sole member of 1230 23rd Street, LLC. *See* Docket No. [114] at 2; *see also* Fourth Am. Compl., Docket No. [120]. For convenience, the Court shall refer to Ms. Juergens and Ms. Sloan interchangeably as "Plaintiff."

[2] Plaintiff also originally named as Defendants in this matter First Mount Vernon Mortgage, L.L.C. ("FMVLLC"), as well as individuals William Kenney, Robert William Carney,

extended by the Owen Living Trust with the assistance of UTS, while the second loan

(hereinafter "FMV Loan") was extended by FMVILA with the assistance of Bennett, Duncan and

Brickshire (collectively with FMVILA, "FMV Defendants").  Plaintiff has since voluntarily

dismissed with prejudice all of her claims against UTS.  *See* Stip. of Dismissal, Docket No.

[243].  Accordingly, the only claims that remain at issue in this lawsuit relate to the second of

these two loans, the FMV Loan.

Plaintiff and the FMV Defendants have filed a series of cross-motions for partial

summary judgment.  The Court previously ruled on several of the parties' cross-motions —

specifically, those motions for partial summary judgment filed by Plaintiff with respect to

allegations in her Fourth Amended Complaint relating to the FMV Loan and those related cross-

motions for partial summary judgment by the FMV Defendants.  *See Juergens v, UTS*, 652 F.

Supp. 2d 51 (D.D.C. 2009).  By separate Memorandum Opinion and Order issued this same date,

the Court has also ruled on Plaintiff's motion for partial summary judgment filed with respect to

Defendant Duncan's counterclaims as well as Defendant Duncan's motion for partial summary

judgment.  Still outstanding, however, are several motions for partial summary judgment filed by

Defendant Brickshire and Defendant Duncan with respect to certain allegations and claims

asserted against them in Plaintiff's Fourth Amended Complaint.  This Memorandum Opinion

---

and Paul Erb.  Plaintiff's claims against Defendant FMVLLC were dismissed by this Court in a
Memorandum Opinion and Order dated February 4, 2008, *Juergens v. UTS*, 533 F. Supp. 2d 64,
75 (D.D.C. 2008), and Plaintiff's claims against the individual Defendants Kenney, Carney, and
Erb.have been voluntarily dismissed by Plaintiff, *see* Jt. Stip. Regarding Dismissal of Defendants
William Kenney and Paul Erb, Docket No. [112] and Stip. of Dismissal, Docket No. [113]
(dismissing without prejudice any and all claims asserted against Defendants Kenney and Erb
individually); *see also* Notice and Stip. of Vol. Dismissal, Docket No. [116] (dismissing any and
all claims asserted against Defendant Carney).

addresses two of those remaining motions filed by Defendant Brickshire, namely Brickshire's

[177] Motion for Partial Summary Judgment Regarding the Absence of Damages to Plaintiff

from the Late Filing of Certain Documents with the District of Columbia Recorder of Deeds and

Brickshire's [178] Motion for Partial Summary Judgment on Count XXXI - Violation of DC

Code Section 28-3901, Et Seq. (Consumer Protection Procedures Act).

Upon a searching review of the memoranda filed with respect to the pending motions, the

exhibits thereto, the relevant case law and statutes, and the entire record herein, the Court orders

as follows, for the reasons set forth below.  Brickshire's [177] Motion for Partial Summary

Regarding the Absence of Damages to Plaintiff from the Late Filing of Certain Documents with

the District of Columbia Recorder of Deeds is GRANTED.  In addition, Brickshire's [178]

Motion for Partial Summary Judgment on Count XXXI - Violation of DC Code Section 28-3901,

Et Seq. (Consumer Protection Procedures Act) is GRANTED-IN-PART and DENIED-IN-PART;

specifically, the motion is GRANTED insofar as Plaintiff alleges that Brickshire violated

paragraphs (e) & (f) of section 3904 of the CPPA, but is DENIED insofar as Plaintiff alleges that

Brickshire violated section 3904(z-1) of the CPPA.

## I.  BACKGROUND

### A.    *Factual Background*

The Court assumes familiarity with the factual background of this case, which is set forth

in detail in this Court previous' opinions, *see Juergens v. UTS,* 652 F. Supp. 2d 51 (D.D.C.

2009);  *Juergens v. UTS*, 246 F.R.D. 4 (D.D.C. 2007); *Juergens v, UTS*, 533 F. Supp. 2d 64

(D.D.C. 2008); *Juergens v, UTS*, 652 F. Supp. 2d 40 (D.D.C. 2009); *Juergens v, UTS*, 652 F.

Supp. 2d 51 (D.D.C. 2009), and the Court therefore addresses herein only such facts as are

necessary for resolution of the motions currently before the Court.  Before doing so, however, the

Court pauses briefly to comment upon the parties' compliance with the  Local Civil Rule 7(h)(1).

As the D.C. Circuit has emphasized, "[LCvR 7(h)(1)] places the burden on the parties and their

counsel, who are most familiar with the litigation and the record, to crystallize for the district

court the material facts and relevant portions of the record." *Jackson v. Finnegan, Henderson,*

*Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996) (citing *Twist v. Meese*, 854

F.2d 1421, 1425 (D.C. Cir. 1988).  Because of the significance of this task and the potential

hardship placed on the court if the parties are derelict in their duty, courts require strict

compliance with LCvR 7(h)(1).  *See id.* at 150.  This Court has repeatedly advised the parties that

it strictly adheres to the text of Local Civil Rule 7(h)(1) when resolving motions for summary

judgment.  *See, e.g.,* 1/30/09 Scheduling and Procedures Order, Docket No. [155] at 2.  Counsel

has been cautioned that they are expected to "comply ***fully*** with Local Civil LCvR 7(h)" and that

the Court "assumes facts identified by the moving party in its statement of material facts are

admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition

to the motion." *Id.* (emphasis in original).  Moreover, the Court has cautioned the parties that it

"may strike pleadings not in conformity with these rules." *Id.*

Nonetheless, while Brickshire has complied with the requirements of LCvR 7(h)(1) in

filing its motions for partial summary judgment, Plaintiff has failed to do so in opposing those

motions.  First, although Plaintiff has provided the required response statements in opposition to

Brickshire's pending motions, a significant number of Plaintiff's specific responses to

Brickshire's statements of fact are inadequate and fail to comport with the requirements of LCvR

7(h)(1).  For example, many of Plaintiff's factual assertions are not supported by "precise

citations to the portions of the record," as required.  Rather, they contain only generic references

to Plaintiff's consolidated statement of material facts, a 78-page document that purports to relate

to *all* summary judgment motions and cross-motions filed by the parties and which was filed

without leave of this Court, *see* Pl.'s [199] Stmt. of Mat. Facts.  *See, e.g.,* Pl.'s [197] Resp. ¶¶ 2,

3, 5, 16, 17; Pl.'s [198] Resp. ¶¶ 1, 2, 4.  Setting aside for the moment that Plaintiff's

consolidated statement violates the local rules of this Court and shall be disregarded for that

reason, as is discussed below, Plaintiff's general references to the consolidated statement —

made without specifying any particular paragraph or factual assertions contained therein — are

insufficient.  Plaintiff has impermissibly shifted her burden to locate and identify the relevant

facts to this Court, leaving it to guess which of the 75 factual statements set forth in the

consolidated filing she purportedly relies upon to create a genuine dispute of material fact.  In

setting out the relevant factual background below, the Court — consistent with its prior orders

and LCvR 7(h)(1) — deems admitted any facts identified by Defendants in their statements of

material facts that are not appropriately controverted by Plaintiff.

Second, in addition to filing the individual response statements she provided in

opposition to Brickshire's motions for partial summary judgment, Plaintiff also filed the

consolidated statement of material facts referred to above.  *See* Pl.'s [199] Stmt. of Mat. Facts.

Plaintiff did not seek prior leave of the Court to file her consolidated factual statement and, as the

Court has previously observed, the document was filed in violation of both this Court's orders

and the local rules of this Court.  *See Juergens v. UTS*, 652 F. Supp. 2d 51, 55-56 (D.D.C. 2009).

Moreover, the consolidated statement, which appears to have been intended principally as a

means of supplementing Plaintiff's own cross-motions for summary judgment, does not directly

respond to the Brickshire's statements of material facts not in issue filed with its motions for

partial summary judgment and is therefore of little assistance to the Court in identifying what, if

any, material facts are purportedly in dispute with respect to the pending motions.  Accordingly,

the Court shall — once again — disregard Plaintiff's consolidated [199] Statement of Material

Facts and any factual assertions set forth therein, as well as the Defendants' [223] Joint

Response, in ruling on the pending motions.  *Cf. Juergens v. UTS*, 652 F. Supp. 2d 51, 55-56

(D.D.C. 2009).  As a consequence, the Court is left with only the individual statements of

material fact and response statements of genuine issues in dispute that were filed with the parties'

briefing.  Given that these statements are narrowly tailored to each individual motion, the Court

at this point provides only a short introduction to the facts of this case, with a more detailed

discussion to follow below as is necessary for evaluation of a particular claim.

The heart of Plaintiff's lawsuit against the FMV Defendants, including Brickshire, is her

allegation that the FMV Loan was intended to be, or should properly be construed as, a personal

mortgage loan — not a commercial loan.  As the parties agree, the relevant documents relating to

the FMV Loan, when taken at face value, purport to characterize the loan as a $250,000

commercial loan extended by FMVILA to 1220 23rd Street, LLC (hereinafter, "LLC"), a limited

liability corporation of which Plaintiff is the sole shareholder.  Plaintiff nonetheless contends that

the loan is, or should properly be construed as, a personal residential loan, based upon two

alternative theories: (1) Plaintiff claims that the FMV Defendants offered her a personal

mortgage loan, not a commercial loan, and that she signed only documents related to a residential

loan; thus, although the FMV Loan documents on their face purportedly describe the FMV Loan

as commercial in nature, such documents were fraudulently obtained by forgery, such that the

entire transaction is fraudulent, Pl.'s Fourth Am. Compl. ¶¶ 89-91; (2) alternatively, Plaintiff alleges that, even assuming she did in fact sign the relevant loan documents purporting to describe the FMV Loan as commercial in nature, the loan is nonetheless unlawful as it is an illegal consumer residential loan impermissibly disguised as a commercial loan in order to avoid fair lending laws and disclosure requirements, *id.* ¶ 92.

Not unsurprisingly, the FMV Defendants deny Plaintiff's allegations and assert that the FMV Loan is a valid commercial loan extended to Plaintiff's LLC. *See id.* ¶¶ 94-96.  The Defendants contend that they assisted Plaintiff, at her request, in establishing the LLC; title to the Condo was then transferred from Plaintiff to the LLC, and FMVILA extended a lawful commercial loan for $250,000 to the LLC, which was secured by the Condo. *See id.* ¶ 96.

As presented by the parties, then, the key question underlying this case is whether the FMV Loan is a legitimate commercial loan lawfully extended to the LLC or whether it is an unlawful loan — either because the underlying documents were fraudulently forged by the FMV Defendants or because it was unlawfully disguised by the FMV Defendants as a commercial loan in order to avoid fair lending laws and disclosure requirements.  As the Court has previously observed, this ultimate question appears unlikely to be suitable for resolution on summary judgment based on the record before the Court at this time.  *See Juergens v. UTS*, 652 F. Supp. 2d 51, 58 (D.D.C. 2009).  At present, the Court is presented with two very different stories regarding the formation of the LLC and the issuance of the FMV Loan.  Nonetheless, to the extent the parties' arguments in the instant motions do not depend upon or turn on this key factual dispute, summary judgment on such discrete issues may be appropriate.

B.      *Procedural Background*

Plaintiff filed her Fourth Amended Complaint in the above-captioned civil action on

October 7, 2008.  *See* Fourth Am. Compl., Docket No. [120].  Plaintiff sets forth 25 causes of

action against the FMV Defendants in this matter stemming from the issuance of the FMV Loan.

*See generally id.*  As is of particular relevance to the instant Memorandum Opinion, Plaintiff has

alleged, *inter alia*, claims for breach of contract (Count XXI), breach of fiduciary duty (Count

XXII) and negligence (Count XXIII) against Brickshire based upon its alleged conduct with

respect to the FMV Loan closing, *see id.* ¶¶ 375-98, as well as a claim for violation of the District

of Columbia's Consumer Protection Procedures Act ("CPPA"), D.C. Code § 29.3901 *et seq.*

(Count XXXI), *see id.* ¶¶ 482-97.[3]

Discovery in this case is now closed, and the parties have each filed a series of motions

for partial summary judgment.  The Court previously issued a Memorandum Opinion ruling on

those motions for partial summary judgment that were filed by Plaintiff with respect to

allegations in her Fourth Amended Complaint relating to the FMV Loan and those related cross-

motions for partial summary judgment by the FMV Defendants.  *See Juergens v. UTS*, 652 F.

Supp. 2d 51 (D.D.C. 2009).  In addition, the Court has, by separate Memorandum Opinion and

Order issued this same date, ruled on Plaintiff's motion for partial summary judgment filed with

respect to Defendant Duncan's counterclaims as well as Defendant Duncan's motion for partial

summary judgment.  As indicated above, the instant Memorandum Opinion addresses

---

[3] Plaintiff also alleges in Count XXXIV of her Fourth Amended Complaint that Brickshire is liable for the conduct of Defendant Duncan under the theory of Respondeat Superior.  Fourth Am. Compl. ¶¶ 512-15.  Brickshire has not moved for summary judgment with respect to this claim.

8

Brickshire's [177] Motion for Partial Summary Judgment Regarding the Absence of Damages to Plaintiff from the Late Filing of Certain Documents with the District of Columbia Recorder of Deeds and Brickshire's [178] Motion for Partial Summary Judgment on Count XXXI - Violation of DC Code Section 28-3901, Et Seq. (Consumer Protection Procedures Act).

Finally, the Court notes that after the parties' cross-motions for summary judgment had been fully briefed, Plaintiff advised the Court that she had executed a special warranty deed selling the Condo at issue in this litigation to a third-party purchaser, and that Defendant FMVILA had agreed to release its lien on the Condo in exchange for receiving $319,229.18 in compensation from the sale proceeds. *See* [242] Status Report.

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56, a party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Under the summary judgment standard, the moving party bears the "initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In response, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal citations omitted).

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party.  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).  "Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment."  *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996).  The adverse party must do more than simply "show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'"  *Id.* at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

## III. DISCUSSION

A.     *Brickshire's Motion for Partial Summary Judgment Regarding the Absence of Damages to the Plaintiff from the Late Filing of Certain Documents with the District of Columbia Recorder of Deeds*

Brickshire's pending Motion [177] for Partial Summary Judgment focuses on Plaintiff's claim that Brickshire failed to timely file certain FMV Loan documents with the District of Columbia Recorder of Deeds — namely, (a) the Deed conveying the Condo from Plaintiff to the LLC (the "Deed"), and (b) the release of the UTS Loan ("Release").  Fourth Am. Compl. ¶¶ 170-72.  Plaintiff relies on Brickshire's alleged late filing of these loan documents as support for her breach of contract (Count XXI), breach of fiduciary duty (Count XXII), and negligence (Count XXIII) claims against Brickshire.  *See id.* ¶¶ 375-98 (alleging, *inter alia*, that Brickshire "fail[ed] to promptly file loan documents and loan releases").[4]  Brickshire contends that it is entitled to

---

[4] Plaintiff's breach of contract (Count XXI), breach of fiduciary duty (Count XXII), and negligence (Count XXIII) claims against Brickshire are each premised on an identical set of allegations relating to the establishment of the LLC and essentially assert alternative theories of recovery for the same conduct.  *See* Fourth Am. Compl. ¶¶ 375-98.  Specifically, Plaintiff alleges that Brickshire entered into a contract with her and owed a duty of care and/or fiduciary duty to her to "perform the closing on the [FMV Loan], including using a proper and accurate accounting statement, ensuring the all loan documents comply with all relevant laws and statutes, notarizing and authenticating loan documents by a licensed notary, promptly disbursing funds associated with this loan, promptly filing loan documents and loan releases and conducting the settlement in a manner in accordance with all relevant laws and statutes."  *Id.* ¶¶ 376, 384, 392.  According to Plaintiff, Brickshire breached this contract, was negligent, and/or breached its fiduciary duty to her by:  (a) "by failing to use a proper and accurate accounting statement;" (b) "by failing to ensure that the all loan documents comply with all relevant laws and statutes;" (c) "by failing to notarize and authenticate loan documents by a licensed notary;" (d) "by failing to promptly disburse funds associated with this loan;" (e) "*by failing to promptly filing [sic] loan documents and loan releases*;" (f) "by failing to conduct the settlement in a manner in accordance with all relevant laws and statutes;" (g) "by using a HUD-1 settlement statement that did not accurately reflect the nature of the transaction;" and (h) "by paying 'transfer' and 'recordation' taxes to the District of Columbia Recorder of Deeds."  Fourth Am. Compl. ¶¶ 377-82, 385-87, 393-95 (emphasis added).

summary judgment on Plaintiff's claims for breach of contract, breach of fiduciary duty, and negligence to the extent each is based upon Plaintiff's allegation that Brickshire failed to timely file the Deed and Release with the Recorder of Deeds because neither Plaintiff herself nor the LLC sustained any damage as a result of the late filing.  *See generally* Brickshire's [177] MSJ. Plaintiff has filed an opposition to Brickshire's motion, *see* Pl.'s [198] Opp'n, and Brickshire a reply, *see* Brickshire's [216] Reply.  Briefing on Brickshire's motion is therefore complete.

As set forth therein, Plaintiff alleges — and Brickshire does not dispute — that both the Deed and the Release were untimely filed with the Recorder of Deeds.  Specifically, with respect to the Deed, the parties agree that the Deed bears an execution date of August 31, 2005, but was not recorded with the District of Columbia Recorder of Deeds until September 21, 2006. Brickshire's [177] Stmt. ¶¶ 1,2; Pl.'s [198] Resp. ¶¶ 1, 2.[5]  Between the time the Deed was executed on August 31, 2005, and the time it was filed with the Recorder of Deeds on September 21, 2006, the parties agree that no intervening liens were filed with respect to the Condo (*i.e.,* the subject of the Deed).  Brickshire's [177] Stmt. ¶ 4; Pl.'s [198] Resp. ¶ 4.  As concerns the Release, while the parties do not specifically indicate when the Release was executed, they agree that it was not registered with the District of Columbia Recorder of Deeds until April 21, 2008. Brickshire's [177] Stmt. ¶ 3; Pl.'s [198] Resp. ¶ 3.

With respect to the issue of how Plaintiff was damaged by Brickshire's failure to timely file the Deed and the Release, Plaintiff's real estate settlement expert, Harry S. Jacobs, testified at

---

[5] The Court notes that Plaintiff continues to dispute that she in fact signed any documents referencing the LLC, including, by implication, the Deed.  *See, e.g.*, Pl.'s [198] Resp. ¶ 1.  This dispute is not, however, material to the resolution of Brickshire's pending motion, which focuses on whether the untimely filing of the Deed — regardless of whether Plaintiff in fact signed the document — damaged Plaintiff.

deposition as follows:

Q. We all acknowledge that the deed, the deed of trust, and the George Owens release were recorded late, correct?

A. My understanding.

Q. How if at all was Ms. Juergens damaged by that?

A. Well, so long as the lien of the deed of trust remains of record, she would not be able to secure either refinancing or subordinate financing.

Q. The fact it was recorded late, am I correct that the fact that they were recorded late -

A. You said release. Didn't you say release?

Q. The George Owens release is the release of that loan.

A. Right. Well, if the release is recorded late, then the lien stayed on longer than it should have.

Q. And is there any indication that that [*sic*] stopped her from getting any loans or anything that she wanted?

A. It would. I mean, it would have to be –

Q. Is there any indication it did? I understanding you haven't read her testimony. But is there any indication that anyone ever raised that as an issue with her, ever?

A. I don't recall.

* * *

Q.  So if [the deed of trust and the deed] were recorded late, would agree with me that Ms. Juergens was not damaged by that recording?

A.  By those two documents – let's see, the deed of trust and – yes, I would agree.

Q. And with regard to the George Owens release, you would agree with me that if Ms. Juergens was unaware of any issue raised with regard to any effect of the late recording of the George Owens release that she would not be damaged by that either, correct?

A. Well, the type of damage that arises from a late recorded release would be damage to your credit report, for example, because when they do the credit reports, it would still show that you have an outstanding mortgage.

Q. Are you aware of any credit report that showed the George Owens –

A. No.

Q. Anything else?

A. Other than what I said was speculative or hypothetical, that it would prevent her from refinancing or putting subordinate -- that would be –

Q. And there is no testimony that she attempted to do any of that?

A. Those would be the types of damages that would occur.

Q. You would agree with me that as you sit here, you are not aware of any damage flowing from a late recording of the George Owens release?

A. Yes, I would.

Brickshire's [177] MSJ, Ex. D (Excerpts from Oct. 27, 2008 Deposition of Harry S. Jacobs)

("Jacobs Dep.") at 198:14-202:15.[6]  With that factual background in mind, the Court now turns

to consider the merits of the parties' arguments on the issue of damages relating to the late filing

of the Deed and Release.

---

[6] In addition, it is undisputed that Plaintiff's mortgage broker expert, Gary Schiller, testified that neither she nor the LLC were damaged as a result of the late filing of any document in this case.  Brickshire's [177] Stmt. ¶ 7; Pl.'s [198] Resp. ¶ 7.  Plaintiff contends, however, that this testimony is immaterial to the present motion as Mr. Schiller was not called as an expert on this issue and will not be called to testify on this issue at trial; rather, Plaintiff indicates that she will present proof of damages via Mr. Jacobs.  *See* Pl.'s [198] Resp. ¶ 7.  Brickshire has not responded in its reply to Plaintiff's argument on this point and therefore appears to agree that Mr. Schiller's testimony is irrelevant to the resolution of its motion.  *See generally* Brickshire's [216] Reply.  Regardless, to the extent a dispute exists between the parties as to the ultimate admissibility of Mr. Schiller's testimony regarding the lack of damages to Plaintiff, the Court need not resolve it at this time as even absent consideration of Mr. Schiller's testimony, Brickshire's motion must be granted.

### 1.    Choice of Law

Because this is a diversity action the Court must first apply the District of Columbia's

choice of law rules to determine which forum's substantive laws to apply to Plaintiff's breach of

contract, breach of fiduciary duty, and negligence claims against Brickshire.  *Klaxon Co. v.*

*Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941).   Under the District of Columbia's rules, the

Court first determines whether a "true conflict" exists between the laws of competing

jurisdictions.  *GEICO v. Fetisoff,* 958 F.2d 1137, 1141 (D.C. Cir. 1992).  Where no true conflict

exists, a court applies the law of the District of Columbia by default.  *Id.*

Neither Brickshire nor Plaintiff have raised the choice of law issue in their briefing filed

with regards to Brickshire's [177] Motion for Partial Summary Judgment.  This may in part be

due to the unusual and regrettable fact that neither party has cited to any legal authority or case

law in their respective briefs.  Although Brickshire asserts, and Plaintiff does not dispute, that

proof of damages is a necessary element of Plaintiff's claims for breach of contract, breach of

fiduciary duty, and negligence, neither party has cited any legal authority for that proposition.

Having failed to cite to any law, it is not surprising then that the parties have also overlooked the

choice of law issue.  Nonetheless, setting aside the parties' inadequate briefing on this point, it is

apparent that no true conflict exists between the potentially interested forums — namely, the

District of Columbia, where Plaintiff is a resident and where the Condo is located, and the

Commonwealth of Virginia, where the events relating to the FMV Loan transaction took place.

Both District and Virginia law require proof of injury (*i.e.*, damages) as an element of claims for

breach of contract,[7] breach of fiduciary duty,[8] and negligence.[9]  Accordingly, as no true conflict

exists, and as the parties have not advocated for the application of Virginia law, the Court shall,

by default, apply the District of Columbia's substantive law to consideration of Brickshire's

motion.

> 2.    Brickshire is Entitled to Summary Judgment as Plaintiff Has Not
>        Sustained Any Damage as a Result of the Late Filings

As indicated above, Brickshire has moved for summary judgment with respect to

Plaintiff's claims for breach of contract, breach of fiduciary duty, and negligence to the extent

each claim is based on Brickshire's failure to timely filed the Deed and Release.  Brickshire

contends that these claims fail because neither Plaintiff nor the LLC sustained any damage as a

result of the late filings.  *See* Brickshire's [177] MSJ.  The Court turns first to consider

Brickshire's claim that Plaintiff suffered no damages as a result of the late filing of the Deed

before then turning to consider Brickshire's argument with respect to the late filing of the

Release.

---

[7] *Compare Osbourne v. Capital City Mortgage Corp.*, 727 A.2d 322, 324-25 (D.C. 1999) (claim for breach of contract requires proof of some actual damage under District law) *with Sunrise Continuing Care, LLC v. Wright*, 671 S.E.2d 132, 135 (Va. 2009) (claim for breach of contract under Virginia law requires "injury or damage to the plaintiff caused by the breach of obligation").

[8] *Compare Armenian Genocide Museum & Memorial, Inc. v. Cafesjian Family Foundation, Inc.*, 595 F. Supp. 2d 110, 116 (D.D.C. 2009) (breach of fiduciary duty requires proof of injury under District law) *with Carstensen v. Chrisland Corp.*, 442 S.E.2d 660, 666-68 (Va. 1994) (breach of fiduciary duty requires proof of damages under Virginia law).

[9] *Compare District of Columbia v. Cooper*, 483 A.2d 317, 321 (D.C. 1984) (elements of a cause of action for negligence include damage to the interests of the plaintiff) *with Blue Ridge Serv. Corp. of Va. v. Saxon Shoes, Inc.*, 624 S.E.2d 55,62 (Va. 2006) (elements of a negligence action under Virginia law require proof that "breach was the proximate cause of injury, resulting in damage to the plaintiff").

a.    Plaintiff has conceded that neither she nor the LLC suffered
damages as a result of the late filing of the Deed.

Brickshire first argues that neither Plaintiff nor the LLC suffered damages as a result of

the late filing of the Deed.  As demonstrated above, it is undisputed that no intervening lien was

filed on the subject property (*i.e.*, the Condo) between the date the Deed was executed and the

date it was finally recorded and that Plaintiff's own expert, Mr. Jacobs, admitted at deposition

that the late recording of the Deed did not result in any damage to Plaintiff.  Based on these

undisputed facts, Brickshire contends it is entitled to judgment as a matter of law that Plaintiff

did not suffer damages from the late filing of the Deed.  Brickshire's [177] MSJ at 4.  The Court

finds that Plaintiff has conceded this argument.  While Plaintiff's opposition briefing addresses

Brickshire's arguments regarding the Release (as discussed below), she fails to provide any

response to Brickshire's arguments specifically regarding the late filing of the Deed.  *See* Pl.'s

[198] Opp'n at 5-6.  Indeed, her opposition makes no mention whatsoever of the Deed, and for

good reason, as her own real estate settlement expert testified that Plaintiff was not damaged by

the late filing of the Deed.  *See* Jacobs Dep. at 6-10 ("Q.  So if [the deed of trust and the deed]

were recorded late, would agree with me that Ms. Juergens was not damaged by that recording?

A.  By those two documents . . . yes, I would agree.").

The Court therefore treats Plaintiff's failure to respond as a concession that neither she

nor the LLC were injured as a result of the Deed's late filing and that her claims for breach of

contract, breach of fiduciary duty, and negligence fail to the extent each are based on Brickshire's

failure to timely file the Deed with the District of Columbia's Recorder of Deeds.  *See Hopkins v.*

*Women's Div., General Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C.2003), aff'd 98

Fed. Appx. 8 (D.C. Cir. 2004) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."); *see also Franklin v. Potter,* 600 F. Supp. 2d 38, 60 (D.D.C.2009) (treating defendant's argument in motion for summary judgment as conceded where plaintiff failed to address it in his response). Accordingly, Brickshire's [177] Motion for Partial Summary is GRANTED with respect to Plaintiff's breach of contract (Count XXI), breach of fiduciary duty (Count XXII), and negligence (Count XXIII) claims against Brickshire to the extent each claim is based on Brickshire's failure to timely filed the Deed.

> b.    The undisputed facts demonstrate that neither Plaintiff nor the LLC were damaged as a result of the late filing of the Release.

Brickshire next argues that neither Plaintiff nor the LLC suffered damages as a result of the late filing of the Release.  Specifically, Brickshire contends that it is undisputed that neither Plaintiff nor the LLC was damaged by the late filing of the Release and that Plaintiff's own real estate settlement expert, Mr. Jacobs, admitted as much at deposition.  *See* Brickshire's [177] MSJ at 4.  Plaintiff disputes this contention, arguing that she was damaged by the late filing of the Release because "the fact that the debt remained on record had a negative impact on [her] credit." Pl.'s [198] Opp'n at 5.  Her sole support for this assertion, however, is Mr. Jacobs' deposition testimony — the same testimony relied upon by Brickshire in support of its motion.  *See id.* at 6. Plaintiff claims that contrary to Brickshire's assertion Mr. Jacobs in fact testified that Plaintiff had been damaged by the late filing of the Release.  *Id.* at 6.  As Plaintiff points to no other evidence in support of her assertion that she sustained damages, the parties' dispute turns on the

18

testimony of Mr. Jacobs and whether the excerpted statements support Brickshire's or Plaintiff's argument.[10]

The Court concludes that Brickshire has the better argument and that Plaintiff's assertions are based on a flawed reading of Mr. Jacobs' testimony.  Specifically, while Mr. Jacobs testified that the late filing of the Release *could have* resulted in injury to Plaintiff — by damaging her credit report or precluding her from securing additional financing — he admitted that there was no evidence that she *did* in fact suffer such damages in this case.  As outlined above, Mr. Jacobs testified that any damages to Plaintiff were "speculative or hypothetical," and that he had not seen any evidence that Plaintiff's credit report had been damaged or that she had been precluded from obtaining refinancing or subordinate financing.  Jacobs Dep. at 201:22-202:10.  Indeed, he plainly conceded that he was not aware of any damage flowing from the late recording of the Release.  *Id.* at 202:12-15 ("Q. You would agree with me that as you sit here, you are not aware of any damage flowing from a late recording of the George Owens release? A. Yes, I would.").  Plaintiff's reliance on Mr. Jacobs' testimony is therefore misplaced.  As she has not directed the Court to any other evidence on the record contradicting Mr. Jacobs' admission that Plaintiff was

---

[10] While Plaintiff does not direct the Court to any other record evidence in support of her claim that she suffered damages from the late filing of the Release, Plaintiff does advance an alternative legal argument that Brickshire's motion should be denied because Virginia Code § 6.1- 2.13 requires a "settlement agent" to "cause recordation of the deed, the deed of trust, or mortgage, or other documents required to be recorded . . . within two business days of settlement."  Pl.'s [198] Opp'n at 5-6.  According to Plaintiff, "the fact that this statute is so clear provides support for Plaintiff's belief that [Brickshire] was derelict in its duties toward [Plaintiff]."  *Id.*  This argument is wholly without merit.  Even if the Court were to accept that Virginia code applies to the recordation of the Release in the District of Columbia, Plaintiff's argument goes to the question of whether Brickshire violated a duty to Plaintiff; it does not go to the question currently at issue, which is whether Plaintiff was damaged by Brickshire's failure to timely file the Release.

not injured by the late filing of the Release, there is no genuine dispute of material fact and

Brickshire is entitled to summary judgment.  Accordingly, Brickshire's [177] Motion for Partial

Summary is also GRANTED with respect to Plaintiff's breach of contract (Count XXI), breach

of fiduciary duty (Count XXII), and negligence (Count XXIII) claims against Brickshire to the

extent each claim is based on Brickshire's failure to timely filed the Release.

> B.      *Brickshire's [178] Motion for Partial Summary Judgment on Count XXXI -*
> *Violation of DC Code Section 28-3901, Et Seq. (Consumer Protection Procedures*
> *Act)*

The Court turns next to consider Brickshire's [178] Motion for Partial Summary

Judgment filed with respect to Count XXXI of Plaintiff's Fourth Amended Complaint, which

asserts that Brickshire, along with Defendants Duncan and FMVILA, violated the District of

Columbia's Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901 *et seq.*[11]

"The CPPA regulates transactions between a consumer and a merchant."  *Adler v. Vision Lab*

*Telecommunications, Inc.*, 393 F. Supp. 2d 35, 39 (D.D.C. 2005); *see also Howard v. Riggs Nat'l*

*Bank,* 432 A.2d 701, 709 (D.C. 1981).  As is relevant to Plaintiff's claim, section 3904 of the

CPPA provides that it is a violation of that Act for a merchant to take certain enumerated actions,

regardless of whether any consumer is in fact misled, including:

---

[11] As this is a diversity action, the Court must generally first determine which state law to apply.  The Court notes, however, that neither party has challenged the application of the District's consumer protection statutes to Brickshire and both therefore assume that District law governs.  "The Court need not and does not question the parties' assumptions on that point." *Davis v. Grant Park Nursing Home LP*, 639 F. Supp. 2d 60, 65 (D.D.C. 2009); *see also CSX Transp., Inc. v. Commercial Union Ins. Co.*, 82 F.3d 478, 482-83 (D.C. Cir. 1996) (parties may waive choice-of-law arguments); *C&E Servs., Inc. v. Ashland, Inc.*, 498 F. Supp. 2d 242, 255 n. 5 (D.D.C. 2007) (same); *cf. In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475, 1495 (D.C. Cir. 1991) (courts need not address choice of law questions *sua sponte* ).

* * *

(e) misrepresent as to a material fact which has a tendency to mislead;

(f) fail to state a material fact if such failure tends to mislead;

* * *

(z-1) violate any provision of Chapter 46 of this title [the Consumer Credit Service Organizations Act, D.C. Code § 28-4601 *et seq.*].

D.C. Code § 28-3904(e), (f) and (z-1).  As set forth in the Fourth Amended Complaint, Plaintiff alleges that Brickshire violated paragraphs (e) and (f) of section 3904 in two principal ways: (1) "by failing to state a material fact if such failure tends to mislead, specifically, by fraudulently disguising the loan to Mary Juergens as a commercial loan rather than, what was in reality, a personal consumer residential loan in order to charge Mary Juergens a higher rate of interest and to circumvent District of Columbia mortgage, consumer and fair lending laws;" and (2) "by providing Mary Juergens with a false, incomplete and deceptive HUD-1 settlement statement." Fourth Am. Compl. ¶¶ 487-88.  In addition, Plaintiff alleges that Brickshire violated paragraph (z-1) of section 3904 by "violat[ing] the District of Columbia Consumer Credit Service Organization Act, D.C. Code § 28-4601 *et seq.*"  *Id.* ¶ 489.

Brickshire argues that it is entitled to summary judgment on Plaintiff's CPPA claim, to the extent it is based on an allegation that Brickshire "fraudulently disguised" the FMV Loan, because it had no role in the origination of the FMV Loan, creating the LLC or preparing any of the FMV Loan documents other than the HUD-1; accordingly, even assuming that Plaintiff is correct that the FMV Loan is in fact a consumer loan fraudulently disguised as a commercial loan, there is no evidence that Brickshire knew that the FMV Loan was anything other than a

21

commercial loan, as all loan documents indicated that the loan is commercial in nature.  *See generally* Brickshire's [178] MSJ.  In addition, Brickshire contends that it is entitled to summary judgment on Plaintiff's CPPA claim to the extent it is based on the allegation that Brickshire provided a "false, incomplete and deceptive HUD-1 settlement statement" because any errors in the HUD-1 were not material and were entered by Brickshire at the direction of others.  *See id.* Plaintiff has filed an opposition to Brickshire's motion, *see* Pl.'s [197] Opp'n, and Brickshire a reply, *see* Brickshire's [215] Reply.  Briefing on Brickshire's motion is therefore complete.

As set forth therein, the facts relevant to Brickshire's [178] Motion for Partial Summary Judgment are as follows.  With respect to Brickshire's role in the FMV Loan transaction, the parties agree that Brickshire had no role in the origination of the FMV Loan, which was Defendant FMVILA's responsibility, or in the creation of the LLC, which was undertaken by Defendant Duncan.  Brickshire's [178] Stmt. ¶¶ 1, 2; Pl.'s [197] Resp. ¶¶ 1, 2.  In addition, it is undisputed on the present record that Brickshire itself did not prepare any of the loan documents; rather, Defendant Duncan drafted the documents and then provided them to Brickshire. Brickshire's [178] Stmt. ¶ 3; Pl.'s [197] Resp. ¶ 3.[12]  Similarly, the parties agree that Brickshire

---

[12] Although Plaintiff purports that "[t]here is a question of material fact presented as to whose behalf Defendant Duncan was acting (whether Brickshire Settlement, LLC's or First Mount Vernon ILA's) . . . when he drafted the loan documents," she offers no factual support for this claim.  *See* Pl.'s [197] Resp. ¶ 3.  Instead, Plaintiff simply refers the Court to her "Statement of Facts Not in Issue."  *See id.*  Although unclear, the Court assumes that Plaintiff is referring to her consolidated Statement of Facts Not in Issue, *see* Pl.'s [199] Stmt. of Mat.  As indicated above, that document was filed in violation of both the local civil rules and this Court's orders, and the Court has therefore disregarded it for purposes of this Memorandum Opinion. Nonetheless, even if the Court were to consider the consolidated statement (which it does not), Plaintiff's broad reference to the entire 78-page document — done without citation to any particular paragraph or factual statement — is wholly insufficient to create a genuine dispute of material fact.  The Court has made clear that in filing their statements of material fact and response statements, the parties must, "[a]t all points, [] furnish precise citations to the portions

had no involvement with determining the rate of interest that Plaintiff was charged in association with the FMV Loan.  Brickshire's [178] Stmt. ¶ 4; Pl.'s [197] Resp. ¶ 4.  It is also undisputed that "[t]here is no claim in this case, and no facts to suggest, that Defendant Brickshire circumvented District of Columbia mortgage, consumer or fair lending laws."  Brickshire's [178] Stmt. ¶ 5; Pl.'s [197] Resp. ¶ 5.[13]  Rather, in this case, the record demonstrates that Brickshire's role was to order the title search, obtain the title insurance, prepare the UTS Loan release, disburse certain monies received after settlement and — as is of particular relevance to the parties' arguments — prepare the HUD-1.  Brickshire's [178] Stmt. ¶ 9; Pl.'s [197] Resp. ¶ 9.

Specifically with respect to the HUD-1, Brickshire was asked by FMVILA's attorney, Defendant Duncan, to prepare the HUD-1 for the FMV Loan.  Brickshire's [178] Stmt. ¶ 15; Pl.'s [197] Resp. ¶ 15.  Brickshire indicates, and Plaintiff agrees, that Brickshire prepared the HUD-1 with information provided by Duncan.  Brickshire's [178] Stmt. ¶ 6; Pl.'s [197] Resp. ¶ 6.  With regards to the contents of the HUD-1, it lists the place of settlement — not as the actual physical location where the settlement documents were signed — but as Brickshire's then-place

---

of the record on which they rely."  *See, e.g.,* Jan. 30, 2009 Order, Docket No. [155] at p. 2.  This Plaintiff has not done.  In the absence of such record citations, it is not the Court's obligation to speculate as to which of the 75 statements contained in her 78-page consolidated statement Plaintiff intended to rely on for support of her claim.  Accordingly, Plaintiff has failed to demonstrate that there is a dispute as to whether Duncan acted as an agent for Brickshire in drafting the loan documents.

[13] In responding to Brickshire's statement ¶ 5, as quoted above, Plaintiff has simply repeated, almost verbatim, her response to Brickshire's statement ¶ 3 — stating that "[t]here is a question of material fact presented as to whose behalf Defendant Duncan was acting when he drafted the loan documents (whether Brickshire Settlement, LLC's or First Mount Vernon ILA's)."  *See* Pl.'s [197] Resp. ¶ 5.  Plaintiff's assertion is not only unresponsive to Brickshire's statement, but also fails to raise a dispute of material fact for the same reasons outlined above by the Court with respect to Plaintiff's response statement ¶ 3.  *See supra* n. 12.

of business, which was located in Annadale, Virginia.  Brickshire's [178] Stmt. ¶¶ 6-7; Pl.'s

[197] Resp. ¶¶ 6-7.  Brickshire indicates that it is its practice to place its address as the place of

settlement, regardless of where the actually closing documents were signed, since that is where

the file is maintained.  Brickshire's [178] Stmt. ¶ 10; Pl.'s [197] Resp. ¶ 10.  In addition,

Plaintiff's mortgage broker expert, Gary Schiller, testified at deposition that the actual place of

settlement, as listed on the HUD-1, is "without consequence."  Brickshire's [178] Stmt. ¶11;

Brickshire's [178] MSJ, Ex. D (Excerpts of Oct. 31, 2008 Deposition of Gary Schiller) ("Schiller

Dep.") at 107:18-109:13.[14]

      The HUD-1 also indicated at line 104 that there was an escrow amount of $60,966.04.

Brickshire's [178] Stmt. ¶ 12; Pl.'s [197] Resp. ¶ 12.  The parties agree that this indication was in

error and that those monies were never withheld.  Brickshire's [178] Stmt. ¶ 13; Pl.'s [197] Resp.

¶ 13.  Plaintiff's real estate settlement expert, Harvey Jacobs, admitted at deposition that this type

---

[14] Plaintiff does not dispute that her expert, Mr. Schiller, made this statement, but she
protests that Mr. Schiller's testimony should not be considered because he was not identified as
an expert on the issue of the place of settlement and how it relates to the HUD-1.  Pl.'s [197]
Resp. ¶ 11.  She instead directs the Court to the testimony of her real estate settlement expert,
Harvey Jacobs, who Plaintiff contends testified that she was damaged by the fact that the HUD-1
listed the place of settlement as Brickshire's place of business rather than the physical location of
settlement.  Id.  The Court does not agree, however, that Mr. Jacobs' testimony on this point
supports a finding, as Plaintiff claims, that she was damaged by the place of settlement listing on
the HUD-1.  The cited portion of Mr. Jacob's testimony does not indicate that the specific
location listed on the HUD-1 is of import, but merely reflects Mr. Jacob's opinion that Plaintiff
was damaged by the settlement itself — regardless of the actual location listed on the HUD-1.
See Jacobs Dep. at 194:2-195:4 ("Q: How was she damaged by going to Tower Court instead of
Little River Turnpike?  A: . . . [I]f she didn't go to any location, she wouldn't have entered into
this transaction and wouldn't have been charged the fees. . . . Q: . . . How does the address under
place of settlement cause her any damage? A: If she didn't go to the settlement at all, then -. . . -
she wouldn't have these damages.").  Plaintiff's attempt to stretch this testimony to support a
finding that the specific place of settlement, as indicated on the HUD-1, damaged Plaintiff is
without merit.

of error is only a "scrivener's error" and would not result in harm to Plaintiff.  Brickshire's [178]

Stmt. ¶ 14; Brickshire's [178] MSJ, Ex. F (Excerpts of Oct. 27, 2008 Deposition of Harvey

Jacobs) ("Jacobs Dep.) at 196-20-197:5.[15]

Brickshire indicates that it has previously served as a settlement agent for Defendant

FMVILA and that, in that capacity, it has worked only on commercial loans.  Brickshire's [178]

Stmt. ¶ 16.  Brickshire further indicates that Duncan has always acted as FMVILA's contact

person for commercial loans.  *Id.*  Finally, all loan documents prepared by Duncan and provided

to Brickshire referred to the FMV Loan as a commercial loan, and there was no indication on the

face of the loan documents provided to Brickshire that the FMV Loan was consumer in nature.

*Id.* ¶ 17.[16]

Based on these undisputed facts, Brickshire contends that it is entitled to summary

judgment on Plaintiff's CPPA claim.  The Court turns first to Plaintiff's allegation that

Brickshire violated paragraphs (e) and (f) of section 3904 "by fraudulently disguising the loan to

Mary Juergens as a commercial loan rather than, what was in reality, a personal consumer

residential loan in order to charge Mary Juergens a higher rate of interest and to circumvent

District of Columbia mortgage, consumer and fair lending laws."  Fourth Am. Compl. ¶¶ 487-88.

---

[15] Plaintiff's response to Brickshire's statement ¶ 14 is non-responsive and does not contradict or otherwise dispute Brickshire's assertion that this type of error did not result in damage to Plaintiff.  *See* Pl.'s [197] Resp.  ¶ 14 ("Plaintiff's real estate settlement attorney expert, attorney Harvey Jacobs, testified that disclosures are the key issue with regard to a HUD-1.").

[16] Although Plaintiff continues to argue that the FMV Loan is in reality an unlawful commercial loan, she does not dispute that Brickshire has previously worked with FMVILA only in association with commercial loans and that the loan documents indicate on their face that the FMV Loan is commercial in nature.  *See* Pl.'s [197] Resp. ¶¶ 16, 17.

Brickshire contends that Plaintiff's claim must fail because there is no evidence that Brickshire knew that the FMV Loan was anything other than a commercial loan, as all loan documents indicate that the loan is a commercial in nature.  The Court agrees.

Even assuming, as Plaintiff urges, that the FMV Loan is actually a personal loan improperly disguised as a commercial transaction, there is no direct or circumstantial evidence on the present record to suggest that Brickshire knew or had reason to know that the FMV Loan was anything but a commercial loan.  As indicated above, the undisputed facts on the present record indicate that Brickshire had no role in the origination of the FMV Loan, in the creation of the LLC, in determining the rate of interest Plaintiff was charged, or in the preparation of any of the FMV Loan documents (other than the HUD-1).  Nor has Plaintiff proffered any evidence that Brickshire circumvented District of Columbia mortgage, consumer or fair lending laws in relation to the FMV Loan transaction.  Rather, in this case, the record demonstrates that Brickshire's role was limited to ordering the title search, obtaining the title insurance, preparing the UTS Loan release, disbursing certain monies received after settlement and — as is of particular relevance to the parties' arguments — preparing the HUD-1, which Brickshire did with information provided by Duncan.  Notwithstanding the material dispute concerning the true nature of the FMV Loan, it is uncontroverted that the FMV Loan documents provided to Brickshire indicated on their face that the FMV Loan was commercial in nature.  In addition, Brickshire had previously served as a settlement agent for Defendant FMVILA on commercial loans only and had always understood that Duncan was FMVILA's contact person for commercial loans.  Plaintiff herself has not directed the Court to any evidence otherwise suggesting that Brickshire was aware of the allegedly personal nature of the FMV Loan.

Accordingly, the Court finds that Plaintiff has failed to proffer any fact from which a reasonable

jury could conclude that Brickshire "fraudulently disguis[ed]" the FMV Loan as a commercial

loan "in order to charge Mary Juergens a higher rate of interest and to circumvent District of

Columbia mortgage, consumer and fair lending laws," as she claims.

The Court turns next to Plaintiff's allegation that Brickshire violated paragraphs (e) and

(f) of section 3904 " by providing Mary Juergens with a false, incomplete and deceptive HUD-1

settlement statement."  Fourth Am. Compl. ¶¶ 487-88.  Section 3904(e) and (f) require that any

misrepresentations or omissions are "material" in nature and have a tendency to mislead.  *See*

D.C. Code § 28-3904(e) (prohibits "misrepresent[ing] as to a material fact which has a tendency

to mislead") and (f) (prohibits the "fail[ure] to state a material fact if such failure tends to

mislead").  Brickshire argues that "the errors Plaintiff alleges on the HUD-1 are either not errors

or are not material," and thus it is entitled to summary judgment on this allegation as well.  *See*

Brickshire's [178] MSJ at 6.  The Court agrees.

While the issue of materiality is a generally question of fact for the jury, *see Grayson*

*AT&T Corp.*, 980 A.2d 1137, 1157 (D.C. 2009), summary judgment is nonetheless appropriate

where, as here, the plaintiff has failed to direct the Court to the existence of any facts from which

a reasonable jury could find that the alleged statements or omissions were material in nature.  As

indicated above, Plaintiff's own experts testified that the two identified "errors" on the HUD-1

— namely, the listed place of settlement and the escrow amount set forth in line 104 — were,

respectively, "without consequence" and resulted in no harm to Plaintiff.  *See* Schiller Dep. at

107:18-109:13 (testifying that the actual place of settlement, as listed on the HUD-1, is "without

consequence"); Jacobs Dep. at 196-20-197:5 (testifying that mistaken listing of escrow amount

was a "scrivener's error" that would not harm Plaintiff).

Plaintiff herself offers no countervailing evidence from which a reasonable jury could find that any alleged misrepresentations or omissions on the HUD-1 were material with a tendency to mislead. Indeed, her opposition briefing is devoid of any discussion regarding materiality and is almost entirely unresponsive to Brickshire's motion for summary judgment on this point. *See generally* Pl.'s [197] Opp'n. For example, Plaintiff dedicates the first three pages of her opposition to merely reproducing, in almost verbatim form, the allegations from her Fourth Amended Complaint in an apparent effort to demonstrate that the "[CPPA] applies to the settlement of the loan at issue." *Id.* at 8-10. But Brickshire has not contested the applicability of the CPPA to the FMV Loan, and Plaintiff's unsupported allegations have no weight at summary judgment. Similarly, Plaintiff dedicates several pages to arguing that Brickshire "had the duty to provide a HUD-1 settlement statement to [Plaintiff]." *See id.* at 11-13. Brickshire, however, has not disputed that it was obligated to provide an accurate HUD-1, instead asserting only that any alleged errors were not material and that it therefore cannot be held liable under the CPPA. Finally, Plaintiff argues that she has presented sufficient facts to "present[] a jury question as to whether the Defendants [including Brickshire] entered into a conspiracy to defraud [Plaintiff] of the protections of RESPA and TILA." *Id.* at 16. But Plaintiff offers no explanation as to why this argument is relevant to Brickshire's pending motion regarding the lack of materiality under the CPPA nor can the Court itself divine any relevance. Moreover, while Plaintiff — in arguing that Brickshire violated the Real Estate Procedures Act of 1974 ("RESPA") and the Truth in Lending Act ("TILA") — repeats her allegations that Brickshire and/or other Defendants made various errors in the HUD-1, she fails to offer any supporting citations to the factual record and

makes no argument that such alleged errors, even if accurately described, are material misrepresentations or omissions with a tendency to mislead.  *See id.* at 13-16.  The Court reiterates that Plaintiff may not continue to rely on her own unsupported allegations but must support her arguments on summary judgment with specific citations to the record.  This she has not done.

Accordingly, there are no genuine disputes of material fact on the present record and Brickshire is entitled to summary judgment as a matter of law with respect to Plaintiff's allegations in Count XXXI that Brickshire violated sections 3904(e) and 2904(f) of the CPPA.  Brickshire's [178] Motion for Partial Summary Judgment on Count XXXI is therefore GRANTED insofar as Plaintiff alleges that Brickshire violated paragraphs (e) & (f) of section 3904 "by fraudulently disguising the loan to Mary Juergens as a commercial loan rather than, what was in reality, a personal consumer residential loan in order to charge Mary Juergens a higher rate of interest and to circumvent District of Columbia mortgage, consumer and fair lending laws."

The Court notes, however, that this does not resolve in full Plaintiff's allegations against Brickshire as set forth in Count XXXI of the Fourth Amended Complaint.  As indicated above, Plaintiff has alleged not only that Brickshire violated paragraphs (e) and (f) of section 3904, but that it also violated paragraph(z-1) of section 3904.  *See* Fourth Am. Compl. ¶ 489.  Although Brickshire has purportedly moved for summary judgment with respect to Count XXXI in its entirety, its motion addresses only Plaintiff's allegations that it violated paragraphs (e) and (f) of section 2904 and fails to provide any analysis of Plaintiff's allegation that Brickshire violated paragraph (z-1) of section 3904.  *See generally* Brickshire's [178] MSJ; Brickshire's [215]

Reply.  Brickshire therefore has not shown that it is entitled to summary judgment on Plaintiff's

CPPA claim to the extent it is based on alleged violations of section 3904(z-1), and its [178]

Motion for Partial Summary Judgment on Count XXXI is therefore DENIED insofar as Plaintiff

alleges that Brickshire violated section 3904(z-1) of the CPPA.

## IV.  CONCLUSION

For the reasons set forth above, Brickshire's [177] Motion for Partial Summary

Regarding the Absence of Damages to Plaintiff from the Late Filing of Certain Documents with

the District of Columbia Recorder of Deeds is GRANTED.  In addition, Brickshire's [178]

Motion for Partial Summary Judgment on Count XXXI - Violation of DC Code Section 28-3901,

Et Seq. (Consumer Protection Procedures Act) is GRANTED-IN-PART and DENIED-IN-PART;

specifically, the motion is GRANTED insofar as Plaintiff alleges that Brickshire violated

paragraphs (e) & (f) of section 3904 of the CPPA, but is DENIED insofar as Plaintiff alleges that

Brickshire violated section 3904(z-1) of the CPPA.  An appropriate Order accompanies this

Memorandum Opinion.

Date: February 12, 2010

_/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge