# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**ANDREA SLOAN**, as Guardian and Conservator on behalf of Mary Juergens, an Incapacitated Individual, in both Mary Juergens' individual capacity and as the sole member of "1230 23rd Street, LLC,"

    *Plaintiff/Counter-Defendant*,

v.

**URBAN TITLE SERVICES, INC.**, *et al.*,

    *Defendants/Counter-Plaintiffs*.

Civil Action No. 06-01524 (CKK)

## MEMORANDUM OPINION
(March 18, 2011)

Mary Juergens ("Juergens") commenced this action on August 29, 2006, challenging the legality of two loans extended to her, each of which was secured on a condominium located at 1230 23rd Street, N.W., Apartment 505, Washington, D.C. 20037 (the "Condo"). Subsequently, Juergens was found to be an "incapacitated individual" and Andrea Sloan, who was appointed as Juergens' Guardian and Conservator, was substituted for Juergens as the Plaintiff/Counter-Defendant in this action.[1] Over the years, the claims and parties in this action have been successively winnowed down by orders of this Court and by the agreement of the parties. Today, the defendants include First Mountain Vernon Industrial Loan Association, Inc. ("FMVILA"), Dale E. Duncan ("Duncan"), Brickshire Settlements, LLC ("Brickshire"), and Arthur G. Bennett ("Bennett"). As is relevant to the instant motion, Duncan, who acted as FMVILA's agent in connection with the only loan transaction that remains at issue in this action, asserts a

---

[1] The Court shall refer to Juergens and Sloan interchangeably as "Counter-Defendant."

counterclaim (the "Counterclaim") based upon the allegedly false and misleading misrepresentations made by Counter-Defendant during the transaction at issue. Presently before the Court is Counter-Defendant's [174] Motion for Summary Judgment on the Issue of Dale Duncan's Counterclaim ("Motion for Summary Judgment"), which was previously resolved in part and held in abeyance in part pending further briefing by the parties. The parties have now had the opportunity to submit the supplemental briefing required by the Court. Based upon the parties' submissions, the relevant authorities, and the record as a whole, the Court shall GRANT the remainder of Counter-Defendant's [174] Motion for Summary Judgment.

## I. BACKGROUND

The Court assumes familiarity with its prior opinions in this action, which set forth in detail the history of this case, and shall therefore only address the factual and procedural background necessary to address the discrete issues currently before the Court.

The only loan that remains at issue in this action was extended by or with the assistance of FMVILA, Brickshire, Duncan, and Bennett (the "Loan"). The heart of Counter-Defendant's lawsuit is her allegation that the Loan was intended to be, or should be construed as, a personal residential loan—not a commercial loan. *See Sloan v. Urban Title Servs., Inc.*, 689 F. Supp. 2d 94, 100 (D.D.C. 2010). The relevant documents, taken at face value, characterize the Loan as a $250,000 commercial loan extended by FMVILA to 1220 23rd Street, LLC (the "LLC"), a limited liability corporation of which Counter-Defendant is the sole member. *Id.* Counter-Defendant nevertheless maintains that the Loan is, or should be construed as, a personal residential loan because (a) the documents relating to the Loan were fraudulently obtained by forgery and (b) the Loan is an illegal consumer residential loan disguised as a commercial loan in order to evade fair

2

lending and disclosure requirements. *See* 4th Am. Compl., Docket No. [120], ¶¶ 89-92. Unsurprisingly, FMVILA, Brickshire, Duncan, and Bennett deny these allegations and assert that the Loan is a valid commercial loan extended to Counter-Defendant's LLC. *See id.* ¶¶ 94-96. By their account, they assisted Counter-Defendant, at her request, in establishing the LLC; the title to the Condo was transferred from Counter-Defendant to the LLC; and FMVILA extended a lawful commercial loan for $250,000, secured by the Condo, to the LLC. *See id.* ¶ 96. Therefore, as presented by the parties, the central question underlying this lawsuit is whether the Loan is or is not a legitimate commercial loan lawfully extended to the LLC.

In responding to the operative iteration of the Complaint in this action, Duncan asserted a two-count Counterclaim:

- **Count I** sounds in fraud, fraud in the inducement, misrepresentation, and negligent misrepresentation; and

- **Count II** sounds in abuse of process and malicious prosecution.

*See* Answer, Grounds of Defense, and Counterclaim to 4th Am. Compl. ("Counter-Pl.'s Counterclaim"), Docket No. [119], ¶¶ 25-48.

Duncan's **Count I** is rooted in allegations that Counter-Defendant made certain false and misleading statements in connection with securing the Loan. *Id.* ¶¶ 25-40. Simply by way of example, Duncan alleges that although Counter-Defendant advised him that the Condo was not her principal residence, she has since admitted the statement was not true at the time it was made. *Id.* ¶ 29. According to Duncan, Counter-Defendant intentionally, recklessly, and negligently misrepresented this and other material facts in securing the Loan and that he relied on those statements to his detriment in determining how to form the LLC and document the Loan. *Id.* ¶ 39. In connection with **Count I**, Duncan seeks the attorneys' fees and costs incurred in

3

connection with the present action. *See* Stmt. of Material Facts with Genuine Issues in Dispute in Regard to Def./Counterclaimant Dale E. Duncan's Opp'n to Pl.'s Mot. to Dismiss Counterclaims, Docket No. [201-1], ¶ 4.

On March 6, 2009, Counter-Defendant moved for summary judgment on both counts of Duncan's Counterclaim. *See* Pl./Counter-Def. Sloan's Mot. for Summ. J. on the Issue of Dale Duncan's Counterclaim, Docket No. [174]. Duncan filed a timely opposition. *See* Def. Dale Duncan's Opp'n to Pl.'s Mot. for Summ. J. to Dismiss Counterclaims, Docket No. [201]. Plaintiff filed a reply. *See* Pl. Sloan's Reply to Def. Duncan's Opp'n to Pl. Sloan's Mot. for Summ. J. on the Issue of Def. Duncan's Counterclaim ("Counter-Def.'s Mem."), Docket No. [213].

On February 12, 2010, this Court issued a Memorandum Opinion and Order addressing a series of motions and cross-motions raised by the parties, including Counter-Defendant's Motion for Summary Judgment on Duncan's Counterclaim. *See generally Sloan v. Urban Title Servs., Inc.*, 689 F. Supp. 2d 94 (D.D.C. 2010). While the Court then granted Counter-Defendant's motion insofar as it sought dismissal of **Count II** of Duncan's Counterclaim—the claim for abuse of process and malicious prosecution—the Court did not reach a final decision on Counter-Defendant's motion as it pertained to **Count I**—the claim sounding in fraud, fraud in the inducement, misrepresentation, and negligent misrepresentation. *See id.* at 119-22.

The parties' briefing as to **Count I** left much to be desired. In her opening memorandum, Counter-Defendant misconstrued Duncan's claim as being premised on Counter-Defendant's decision to commence the present action and targeted her arguments accordingly. *See Sloan*, 689 F. Supp. 2d at 120. Alerted to the correct foundation of **Count I** by Duncan's opposition

4

briefing, Counter-Defendant changed course and argued for the first time that Duncan's claim must fail because he suffered no damages in connection with the formation of the LLC and the preparation of the Loan documents. *Id.* at 120-21. Because the argument was raised for the first time in reply, the Court declined to consider the argument. *Id.* at 121. However, because the argument, if meritorious, would appear to be dispositive of **Count I**, the Court held the motion in abeyance as it pertains to **Count I** in order to provide Duncan with a meaningful opportunity to respond. *Id.* Specifically, Duncan was directed to "provide legal authority in support of his apparent claim that he is entitled to attorneys' fees and costs and that this alone is sufficient proof of damages to sustain his claim for fraud and misrepresentation." *Id.*

The Court set a supplemental briefing schedule. *See* Order (Feb. 12, 2010), Docket No. [246], at 2-3; Min. Order (Mar. 13, 2010). Duncan filed a timely supplemental opposition. *See* Def. Dale E. Duncan's Resp. to Pl.'s Argument That Summ. J. Should Be Granted on Count One of Duncan's Counterclaim as Failing for Lack of Damages ("Counter-Pl.'s Opp'n"), Docket No. [258]. Counter-Defendant never filed a reply.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [that it] . . . is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact, and therefore "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nor may summary judgment be avoided based on just any disagreement as to the

relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in its favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted," *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

### III. DISCUSSION

Under District of Columbia law,[2] regardless of the theory applied to **Count I** of Duncan's Counterclaim—fraud, fraud in the inducement, misrepresentation, or negligent misrepresentation —Duncan must prove his damages. *See, e.g.*, *Kitt v. Capital Concerts, Inc.*, 742 A.2d 856, 861 (D.C. 1999); *C & E Servs., Inc. v. Ashland, Inc.*, 498 F. Supp. 2d 242, 257 (D.D.C. 2007). When the Court last had the opportunity to address the issue, it observed: "as Duncan has admitted that his damages on this claim consist only of attorneys' fees and costs incurred in this lawsuit, he must provide legal authority in support of his apparent claim that he is entitled to attorneys' fees and costs and that this alone is sufficient proof of damages to sustain his claim for fraud and misrepresentation." *Sloan*, 689 F. Supp. 2d at 121. Responding to that call, Duncan now tenders a single argument—that he may seek attorneys' fees and costs as his only damages in connection with **Count I** in accordance with the so-called "bad faith exception" to the American Rule on attorneys' fees. Duncan's argument is without merit.

The District of Columbia adheres to the American Rule on attorneys' fees, which "provides that a prevailing litigant ordinarily may not recover attorneys' fees from the defeated party when a case is concluded." *In re Jumper*, 984 A.2d 1232, 1247 (D.C. 2009). At the same

---

[2] Both parties assume that District of Columbia law applies in the present context, Counter-Def.'s Mem. at 1-3; Counter-Pl.'s Opp'n at 4-6, and the Court need not question that assumption. *Himes v. Medstar-Georgetown Univ. Med. Ctr.*, __ F. Supp. 2d __, 2010 WL 4879438, at *4 n.3 (D.D.C. Dec. 1, 2010).

time, it has also adopted the "bad faith exception" to the American Rule, which "permits an award of attorneys' fees against a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons connected to the litigation." *Synanon Found., Inc. v. Bernstein*, 517 A.2d 28, 36 (D.C. 1986) (internal quotation marks omitted). The exception is punitive in nature; it is not designed to "compensate worthy litigants," but rather is "intended to punish those who have abused the judicial process and to deter those who would do so in the future." *Id.* at 37.

The Court does not doubt that it has the power to award reasonable attorneys' fees and costs where a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons connected to the litigation." *Synanon*, 517 A.2d at 36. Indeed, reaching that conclusion hardly requires resort to the laws of the District of Columbia. *See, e.g.*, Fed. R. Civ. P. 11 (district courts may direct payment of reasonable attorneys' fees resulting from frivolous claims, defenses, and other legal contentions, representations presented for an improper purpose, and factual contentions unlikely to have evidentiary support); 28 U.S.C. § 1927 ("Any attorney or other person . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) (federal courts may in appropriate circumstances "resort to [their] inherent power to impose attorney's fees as a sanction for bad-faith conduct."). Duncan's argument, however, completely misses the mark. Concluding that an award of attorneys' fees to the opposing party may be appropriate as a response to litigation misconduct contributes nothing in the way of resolving the question of whether Duncan may recover such fees *as damages flowing from Counter-Defendant's alleged pre-litigation fraud and misrepresentation.*

8

Despite Duncan's consistent efforts to draw the attention elsewhere—namely, to Counter-Defendant's conduct in this litigation—**Count I** is based on allegations that Counter-Defendant intentionally, recklessly, and negligently misrepresented certain material facts in securing the Loan and that Duncan relied on those misrepresentations to his detriment in determining how to form the LLC and document the Loan. Counter-Pl.'s Counterclaim ¶ 39. Despite this Court's clear instruction, Duncan still has cited no authority even remotely suggesting that the attorneys' fees and costs that he has incurred in the course of this action are compensable damages for the alleged pre-litigation fraud and misrepresentation underlying these claims. Without exception, the authorities relied upon by Duncan concern awards of attorneys' fees and costs based on a party's misconduct in the context of a given litigation—they are, plain and simple, cases about sanctions. *See Synanon*, 517 A.2d at 37-38 (upholding fee award where party "perpetrated a fraud upon the court" and "engaged in groundless, bad faith litigation manoeuvers."); *Jung v. Jung*, 844 A.2d 1099, 1107-13 (D.C. 2004) (upholding trial court's denial of post-trial motion for attorneys' fees).[3] The only inference to be made is that no authority for Duncan's position exists.

Perhaps aware of this fact, Duncan next suggests that the fact finder may consider such damages as an "equitable offset" to any damages awarded against him. Counter-Pl.'s Opp'n at 6.

---

[3] Three of the authorities cited by Duncan are so dated and far afield that the Court is left wondering why they are cited at all. The Supreme Court's decision in *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 719 (1967), concerned the availability of attorneys' fees in the context of statutory causes of action for which the legislature had prescribed intricate remedies. Its decision in *Vaughan v. Atkinson*, 369 U.S. 527, 530 (1962), involves the relief available to an injured seaman in a suit in admiralty based upon his employer's willful non-payment of maintenance and cure. And its decision in *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 164-65 (1939), addressed whether a nineteenth-century statute governing the fees and costs recoverable in federal court displaced the courts' equitable power to permit the trustee of a fund or property, or a party preserving or recovering a fund for the benefit of others, to recover his attorneys' fees from the fund or property itself.

The argument is a *non sequitor*. Although Duncan has asserted an affirmative defense of offset and recoupment in this action, the existence of that defense simply has no bearing on the viability of his independent cause of action for fraud and misrepresentation.[4]

In the final analysis, the law of the District of Columbia is clear: "[i]n the absence of statutory or rule authority, attorney's fees generally are not allowed as an element of damages, costs, or otherwise." *Delacruz v. Harris*, 780 A.2d 262, 264 (D.C. 2001) (internal quotation marks omitted). Duncan has utterly failed to establish a legal basis for his claimed entitlement to attorneys' fees and costs as damages flowing from Counter-Defendant's alleged pre-litigation fraud and misrepresentation. As Duncan has identified no other damages to support his claims, Counter-Defendant is entitled to summary judgment on **Count I**.

## IV. CONCLUSION

The Court has considered the remaining arguments tendered by the parties and has concluded that they are without merit. Therefore, and for the reasons set forth above, the Court shall GRANT Counter-Defendant Sloan on behalf of Juergens' [174] Motion for Summary Judgment as to **Count I** of Duncan's Counterclaim.

Date: March 18, 2011

/s/
**COLLEEN KOLLAR-KOTELLY**
United States District Judge

---

[4] While of questionable merit, the assertion that Duncan may recoup attorneys' fees as an offset to any damages awarded against him is not before the Court.