# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ANDREA SLOAN**, as Guardian and Conservator on behalf of Mary Juergens, an Incapacitated Individual, in both Mary Juergens' individual capacity and as the sole member of "1230 23rd Street, LLC," <br><br> *Plaintiff/Counter-Defendant*, <br><br> v. <br><br> **URBAN TITLE SERVICES, INC.**, *et al.*, <br><br> *Defendants/Counter-Plaintiffs*. | Civil Action No. 06-01524 (CKK) |

## MEMORANDUM OPINION
(March 27, 2011)

Mary Juergens ("Juergens") commenced this action on August 29, 2006, challenging the legality of two loans extended to her, each of which was secured on a condominium located at 1230 23rd Street, N.W., Apartment 505, Washington, D.C. 20037 (the "Condo"). Subsequently, Juergens was found to be an "incapacitated individual" and Andrea Sloan ("Sloan"), who was appointed as Juergens' Guardian and Conservator, was substituted for Juergens as the plaintiff in this action.[1] Over the years, the claims and defendants in this action have been successively winnowed down by orders of this Court and by the agreement of the parties. Today, the defendants include Dale Duncan ("Duncan"), First Mountain Vernon Industrial Loan Association, Inc. ("FMVILA"), Brickshire Settlements, LLC, and Arthur G. Bennett (collectively, "Defendants"). Presently before the Court is Duncan's [185/186] Motion for Summary Judgment, which was previously resolved in part and held in abeyance in part pending

---

[1] The Court shall refer to Juergens and Sloan interchangeably as "Plaintiff."

further briefing by the parties.  The parties have now had the opportunity to submit the supplemental briefing required by the Court.  Based upon the parties' submissions, the relevant authorities, and the record as a whole, the Court shall DENY the remainder of Duncan's [185/186] Motion for Summary Judgment.

## I.  BACKGROUND

The Court assumes familiarity with its prior opinions in this action, which set forth in detail the history of this case, and shall therefore only address the factual and procedural background necessary to address the discrete issues currently before the Court.

The only loan that remains at issue in this action was extended by or with the assistance of Defendants (the "Loan").  The heart of Plaintiff's lawsuit is her allegation that the Loan was intended to be, or should be construed as, a personal residential loan—not a commercial loan.  *See Sloan v. Urban Title Servs., Inc.*, 689 F. Supp. 2d 123, 127 (D.D.C. 2010).  The relevant documents, taken at face value, characterize the Loan as a $250,000 commercial loan extended by FMVILA to 1220 23rd Street, LLC (the "LLC"), a limited liability corporation of which Plaintiff is the sole member.  *Id.* at 127-28.  Plaintiff nevertheless maintains that the Loan is, or should be construed as, a personal residential loan because (a) the documents relating to the Loan were fraudulently obtained by forgery and (b) the Loan is an illegal consumer residential loan disguised as a commercial loan in order to evade fair lending and disclosure requirements.  *See* 4th Am. Compl., Docket No. [120], ¶¶ 89-92.  Unsurprisingly, Defendants deny Plaintiff's allegations and assert that the Loan is a valid commercial loan extended to Plaintiff's LLC.  *See id.* ¶¶ 94-96.  By their account, Defendants assisted Plaintiff, at her request, in establishing the LLC; the title to the Condo was transferred from Plaintiff to the LLC; and FMVILA extended a

lawful commercial loan for $250,000, secured by the Condo, to the LLC. *See id.* ¶ 96.

Therefore, as presented by the parties, the central question underlying this lawsuit is whether the

Loan is or is not a legitimate commercial loan lawfully extended to the LLC.

As is relevant to the instant motion, the operative version of Plaintiff's Complaint

includes five claims against Duncan relating to his alleged role in the creation of the LLC and the

closing of the Loan.[2] The five claims may be divided into two groups—the claims in each of the

two groups are based on an identical set of factual allegations and essentially set forth alternative

theories of recovery for the same conduct:

- **Claims Concerning the Creation of the LLC.** The three claims in the first group (the "LLC Creation Claims")—**Count XVIII** (Legal Malpractice), **Count XIX** (Breach of Fiduciary Duty), and **Count XX** (Negligence)—are each premised on an identical set of factual allegations relating to Duncan's role in the creation of the LLC. *See* 4th Am. Compl. ¶¶ 351-74. Plaintiff alleges that, by claiming to have prepared documents creating the LLC on Plaintiff's behalf and receiving a fee for doing so, and then filing these documents with state authorities, Duncan entered into an attorney-client relationship with Plaintiff and owed her a fiduciary duty and a duty of care. *Id.* ¶¶ 352, 360, 368. Plaintiff contends that Duncan violated these various duties because, by virtue of the creation of the LLC, (a) she received no benefit from the transaction, (b) she was required to pay "transfer" and "recordation" taxes, (c) she lost the ability to obtain a homestead tax deduction, (d) Duncan failed to register the LLC as a foreign limited liability company authorized to do business in the District of Columbia, (e) Duncan failed to register the Condo as rental property, and (f) the transaction allowed FMVILA to fraudulently disguise the Loan as a commercial loan in order to charge Plaintiff a higher rate of interest and circumvent consumer and fair lending laws. *Id.* ¶¶ 353-356, 361-364, 369-372.

- **Claims Concerning the Closing of the Loan.** The two claims in the second group (the "Loan Closing Claims")—**Count XXII** (Breach of Fiduciary Duty) and **Count XXIII** (Negligence)—are each premised on an identical set of factual allegations relating to Duncan's role in the closing of the Loan. *See* 4th Am. Compl. ¶¶ 383-98. Plaintiff alleges that Duncan owed her a duty of care and a fiduciary duty to perform the closing on the Loan. *Id.* ¶¶ 384, 392. Plaintiff contends that Duncan violated

---

[2] Plaintiff has asserted other claims against Duncan that, unless otherwise noted herein, are not relevant to the instant motion.

these duties by (a) failing to use a proper and accurate accounting statement, (b) failing to ensure that the loan documents complied with all relevant laws and statutes, (c) failing to promptly disburse funds associated with the Loan, (d) failing to promptly file loan documents and loan releases, (e) failing to conduct the settlement in a manner in accordance with all relevant laws and statutes, (f) using a HUD-1[3] settlement statement that did not accurately reflect the nature of the transaction, and (g) paying "transfer" and "recordation" taxes to the Recorder of Deeds.[4] *Id.* ¶¶ 385-87, 393-95.

On March 7, 2009, Duncan moved for summary judgment on several fronts, including the merits of each of the five claims identified above. *See* Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem."), Docket No. [186-1]. He also moved for summary judgment with respect to Plaintiff's request for punitive damages on each of the five identified claims, as well as **Count XXI** (Breach of Contract), which is based on the same allegations underlying the Loan Closing Claims.[5] *See id.* Plaintiff filed a timely opposition to Duncan's motion. *See* Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n"), Docket No. [196]. Duncan filed a reply. *See* Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Def.'s Reply"), Docket No. [224].

Duncan's primary argument was that Plaintiff's claims for legal malpractice, breach of fiduciary duty, and negligence are all predicated upon a finding that he entered into an attorney-client relationship with Plaintiff and that, absent such a relationship, she cannot succeed on her

---

[3] The HUD-1 is a standard form used to itemize services and fees charged to a borrower by a lender or broker.

[4] Plaintiff's additional allegation that Duncan failed to properly notarize and authenticate documents by a licensed notary was dismissed as moot in a prior opinion. *See Sloan v. Urban Title Servs., Inc.*, 702 F. Supp. 2d 1 (D.D.C. 2010).

[5] Duncan did not move for summary judgment on the merits of **Count XXI** (Breach of Contract), limiting his motion, as it pertained to that particular claim, to challenging Plaintiff's request for punitive damages. *See Sloan v. Urban Title Servs., Inc.*, 689 F. Supp. 2d 94, 102 n.4 (D.D.C. 2010).

claims.  *See* Def.'s Mem. at 4-8.  Plaintiff, for her part, conceded that she never entered into an

attorney-client relationship with Duncan in connection with the closing of the Loan, but

maintained that such a relationship nonetheless existed with respect to the creation of the LLC.

*See* Pl.'s Opp'n at 9-16.  In addition, Plaintiff argued that, even in the absence of an attorney-

client relationship, Virginia law permits third parties to bring a legal malpractice claim in certain

"special circumstances" where the third party's reliance is reasonable and foreseeable and,

irrespective of the question of whether an attorney-client relationship existed, her claims based

on negligence and fiduciary duty would survive.  *See id.* at 11-16.  In reply, Duncan offered no

direct response to Plaintiff's argument, but instead argued for the first time that Plaintiff's claims

must fail because she is required to proffer expert testimony to establish the appropriate standard

of care and to prove liability.  *See* Def.'s Reply at 4-8.

On February 12, 2010, this Court issued a decision addressing, *inter alia*, Duncan's

Motion for Summary Judgment.  *See generally Sloan v. Urban Title Servs., Inc.*, 689 F. Supp. 2d

94 (D.D.C. 2010) (hereinafter, "*Sloan II*").  As noted by the Court at the time, the parties'

briefing left much to be desired.  Indeed, the Court observed that its resolution of Duncan's

motion was "significantly hindered by the generally deficient quality of the parties' briefing."  *Id.*

at 104.  Among other things, the parties had failed to provide the Court with anything beyond a

"bare outline" of the facts relevant to Duncan's role in creating the LLC and closing the Loan.

*Id.*  As a result, the precise contours of Duncan's conduct remained, to a large degree, unclear.

*Id.*  Nevertheless, the following background could be gleaned from the parties' respective

submissions, which the Court shall quote in full here as it sets the stage for the issues that remain

open:

As the parties agree, Duncan acted as FMVILA's attorney with respect to the FMV Loan transaction. Plaintiff admitted as much at deposition, testifying that she knew Duncan was counsel for FMVILA and that he had neither agreed to be nor was acting as her attorney with respect to the FMV Loan.

The details of the FMV Loan closing itself are largely absent from the parties' briefing. The parties' agree, however, that Duncan was present at the FMV Loan closing and that he discussed the FMV Loan papers with Plaintiff. Although Plaintiff was aware that Duncan was acting as FMVILA's attorney at the closing, she testified that she "trusted" him because he was a lawyer who was "there to be on your side and not take advantage."

In addition, the parties appear to agree that Duncan assisted with the preparation and filing of the articles of organization necessary for the formation of Plaintiff's LLC. A material dispute exists, however, as to whether Duncan did so at Plaintiff's request. As to this point, the parties present contradictory stories. According to Duncan, Plaintiff requested that Duncan assist with the formation of a limited liability corporation. Duncan agreed to the request, but he maintains that in so doing, he made it clear to Plaintiff that he was not acting as her attorney.

Plaintiff for her part denies that she ever requested Duncan to assist with the formation of the LLC. Specifically, Plaintiff testified at deposition that she never signed any document containing the words "1230 23rd Street, LLC" and that she only learned of the existence of the LLC during the course of the pending litigation. The implication, of course, is that she never requested that Duncan establish an LLC and that the decision to form a limited liability company was made by Duncan, FMVILA, or one of the other FMV Defendants without her consent or knowledge.

*Sloan II*, 689 F. Supp. 2d at 104-05 (internal citations, quotations, and notations omitted).

From this foundation, the Court proceeded to assess the merits of the parties' arguments.

Succinctly stated, the Court found that no reasonable fact finder "could reasonably conclude that

[Duncan] and Plaintiff entered into an attorney-client relationship." *Sloan II*, 689 F. Supp. 2d at

109. Nevertheless, based on the scant record support and legal authority provided by the parties,

the Court could not agree with Duncan that the absence of an attorney client-relationship conclusively established his entitlement to summary judgment on Plaintiff's claims for legal malpractice, breach of fiduciary duty, and negligence. *Id.* The fundamental—and ultimately fatal—shortcoming in Duncan's submissions on this issue was that he "chose not to directly respond" to Plaintiff's position that, irrespective of the answer to the question of whether an attorney-client relationship existed, Virginia law permits third parties to bring a legal malpractice claim in certain special circumstances and, in any event, her claims based on negligence and fiduciary duty are based on duties arising independently of the attorney-client relationship. *Id.* In the end, the Court could not "determine whether Duncan, who appears to have been the only attorney present at the FMV Loan closing (albeit as FMVILA's attorney), owed Plaintiff any duties . . . or may be held liable for legal malpractice under Virginia law, and the Court decline[d] to advance arguments that the parties themselves ha[d] not made." *Id.* As a result, the Court held that Duncan had simply failed to "show[] that he is entitled to summary judgment on Plaintiff's claims for legal malpractice, negligence and breach of fiduciary duty based on the absence of an attorney-client relationship alone." *Id.* The Court did not solicit supplemental briefing on the issue or otherwise afford Duncan a second bite at the apple. Therefore, the question of whether the absence of an attorney-client relationship precludes Plaintiff from recovering on her claims for legal malpractice, breach of fiduciary duty, and negligence is not before the Court in connection with the instant motion.

The same is not true of the second issue raised by Duncan—namely, that Plaintiff's claims for legal malpractice, breach of fiduciary duty, and negligence must fail because she is required to proffer expert testimony to establish the appropriate standard of care and to prove

liability. While the Court declined to consider this argument because it was raised by Duncan for the first time in his reply papers, the Court nevertheless observed that, if meritorious, the argument would appear to be dispositive of Plaintiff's claims. *Sloan II*, 689 F. Supp. 2d at 112. In light of this observation, the Court concluded that the most prudent course was to hold Duncan's motion in abeyance to provide Plaintiff with a full and fair opportunity to respond to Duncan's argument concerning the need for expert testimony. *Id.* The Court set an appropriate supplemental briefing schedule. *See* Order (Feb. 12, 2010), Docket No. [246]. Both parties were instructed that any supplemental briefing was limited to two discrete issues: (a) whether Virginia law requires Plaintiff to present expert testimony in this case to establish three things—the appropriate standard of care, whether Duncan breached that standard of care, and whether his breach was the proximate cause of Plaintiff's damages, and (b) whether Plaintiff has failed to produce expert testimony sufficient to meet that requirement. *Id.* at 2. Both parties were "admonished that any future briefing must include accurate citations to both evidentiary and legal support for their arguments." *Sloan II*, 689 F. Supp. 2d at 112.

In addition, reasoning that resolution of the underlying merits of Plaintiff's claims for legal malpractice, breach of fiduciary duty, and negligence in light of the expert testimony issue could render it unnecessary to address Plaintiff's request for punitive damages in connection with such claims, the Court also held in abeyance Duncan's motion insofar as it pertained to the punitive damages issue. *See Sloan II*, 689 F. Supp. 2d at 116. The Court indicated that it would revisit the issue, as may be appropriate, upon reviewing the parties' supplemental briefing on the expert testimony issue. *Id.*

On March 12, 2010, Plaintiff filed her supplemental opposition. *See* Pl.'s Mem.

Concerning Expert Test. on Def.'s Malpractice, Fiduciary Duty and Negligence Claims ("Pl.'s Suppl. Opp'n"), Docket No. [254].  On March 29, 2010, Duncan filed his reply.  *See* Def.'s Reply to Pl.'s Mem. Concerning Expert Test. on Def.'s Malpractice, Fiduciary Duty and Negligence Claims ("Def.'s Suppl. Reply"), Docket No. [261].  The matter is therefore fully briefed and ripe for adjudication.

## II.  LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [that it] . . . is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact, and therefore "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant.  *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute.  Fed. R. Civ. P. 56(c)(1).  Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment.  *Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009).

Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in its favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted," *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

## III.  DISCUSSION

The Court's discussion here divides into three parts. First, the Court addresses Duncan's argument that Plaintiff has not proffered sufficient expert testimony to support her claims for legal malpractice, breach of fiduciary duty, and negligence. Second, the Court addresses Duncan's argument that Plaintiff is not entitled to punitive damages on certain claims. Third, and finally, the Court shall explain why it has not considered certain evidence proffered by

Plaintiff in opposition to the instant motion.

### A.   *Duncan is Not Entitled to Summary Judgment on Plaintiff's Claims for Legal Malpractice, Breach of Fiduciary Duty, and Negligence*

Duncan argues that Plaintiff has not proffered sufficient expert testimony to support her claims for legal malpractice, breach of fiduciary duty, and negligence—the LLC Creation Claims and the Loan Closing Claims.  The Court shall first explain why expert testimony is required in this context and then turn to the question of whether Plaintiff's proffered expert testimony is sufficient to survive summary judgment.

### 1.   Plaintiff Must Support Her Claims with Expert Testimony

Under Virginia law,[6] it is well-established that "[u]nless a malpractice case turns upon matters within the common knowledge of laymen, expert testimony is required to establish the appropriate professional standard, to establish a deviation from that standard, and to establish that such a deviation was the proximate cause of the claimed damages."  *Seaward Int'l, Inc. v. Price Waterhouse*, 391 S.E.2d 283, 287 (Va. 1990) (internal citations omitted).  As the foregoing formulation makes clear, the need for expert testimony is presumed but not universal—provided the subject matter is within the common knowledge of laymen, no such testimony is required.  *Whitley v. Chamouris*, 574 S.E.2d 251, 252 (Va. 2003).  In other words, there is no brightline rule delineating when expert testimony will and will not be needed; the court must instead address the issue on a "case-by-case" basis, in the context of the particular facts presented.  *Polyzos v. Cotrupi*, 563 S.E.2d 775, 778 (Va. 2002).  Where professional conduct is involved, the

---

[6]  The Court previously found that the law of the Commonwealth of Virginia applies to Plaintiff's claims for legal malpractice, breach of fiduciary duty, and negligence.  *See Sloan*, 689 F. Supp. 2d at 106.  Both parties have briefed the instant motion accordingly.  *See* Pl.'s Opp'n; Def.'s Suppl. Reply.

essential question is whether the acts at issue involve transactions or matters beyond the capacity or laymen to comprehend "without the assistance of expert testimony."[7] *Id.*

Plaintiff has taken the position that expert testimony is not required in this case. Unfortunately, apart from reciting the general legal standard, the totality of her argument is the first clause of a single sentence:

> While Plaintiff Sloan believes that expert testimony is not required to prove Defendant Duncan's legal malpractice, breach of fiduciary duty and negligence, the expected testimony of Harvey S. Jacobs, Esquire, will define the applicable standards and duties at issue and show how Defendant Duncan's actions deviated from these standards and duties.

Pl.'s Opp'n at 13. Plaintiff makes no credible attempt to situate the facts of this case within the applicable legal standard and the relevant body of case law.[8] *See* Pl.'s Opp'n. In light of this

---

[7] While there is a well-developed body of case law from the Virginia courts addressing these principles in connection with claims for professional malpractice and negligence, *see, e.g.*, *Seaward*, 391 S.E.2d at 287; *Whitley*, 574 S.E.2d at 252; *Hewlette v. Hovis*, 318 F. Supp. 2d 332, 335 (E.D. Va. 2004), the same is not true of claims for breach of fiduciary duty, though the Court's independent research suggests that the same principles would apply in a case such as this, *see, e.g.*, *Feld v. Priebe*, No. HQ-111512-1, 2004 WL 2999114, at *4 (Va. Cir. Ct. Dec. 22, 2004) (without expert testimony, plaintiff failed to establish that fiduciary breached his duty to principal by making investments with a reasonable degree of investment certainty). Regardless, in briefing the present motion, both parties have assumed that these principles apply with equal force to Plaintiff's claims for legal malpractice, breach of fiduciary, and negligence. *See* Def.'s Reply; Pl.'s Suppl. Opp'n; Def.'s Suppl. Reply. Since the parties do not raise the issue, the Court need not reach the question.

[8] To the extent Plaintiff intends to rely on the authorities she cites in describing the general legal standard, even a cursory review of those authorities would reveal how inapposite they are here. In *Beverly Enterprises-Virginia, Inc. v. Nichols*, 441 S.E.2d 1, 3 (Va. 1994), the Supreme Court of Virginia encountered one of the "rare instances" in which expert testimony is unnecessary. There, the defendant left food with, and failed to provide any assistance to, an individual known to be unable to feed herself and who had experienced serious choking incidents on two separate occasions. *Id.* In other words, the defendant's failure to live up to the expectations of care was so blatant that no expert testimony was required. Meanwhile, the decision of the Circuit Court of Virginia in *McCabe v. Reed*, No. L00-1636, 2001 WL 34037268 (Va. Cir. Ct. Mar. 13, 2001), if anything, undermines Plaintiff's position. In that case, a legal malpractice action, the court held that expert testimony was required even though the alleged

entirely cursory treatment, the Court simply is not in a position to consider the merits of Plaintiff's argument on this point. *Estate of Gaither ex rel. Gaither v. District of Columbia*, 655 F. Supp. 2d 69, 87 n.13 (D.D.C. 2009); *cf. Armstrong v. Geithner*, 608 F.3d 854, 857 n.2 (D.C. Cir. 2010). The failure to provide a fulsome answer to the question is, frankly, inexplicable given that one of the two issues Plaintiff was expressly instructed to address in the supplemental briefing allowed by the Court was whether she is required to present expert testimony in light of the facts of this case. *See* Order (Feb. 12, 2010), Docket No. [246], at 2.

Obviously, Plaintiff's subjective belief that she is not required to present expert testimony in support of her claims for legal malpractice, breach of fiduciary duty, and negligence is patently inadequate to overcome the general presumption that at least some expert testimony is required in this context. *See Brown v. Slenker*, 220 F.3d 411, 422 (5th Cir. 2000) (in applying Virginia law, concluding that expert testimony is generally required to establish each element of a claim for legal malpractice). Indeed, given that Plaintiff's wholly conclusory denial that expert testimony is necessary here is immediately followed by her representation that she *will* provide expert testimony on these issues, and subsumed by the argument that the testimony she will provide is sufficient, her chosen approach is tantamount to a concession that such testimony is required. As if this were not problem enough, in attempting to bolster her proffered expert witness' credentials, Plaintiff maintains that the contemplated testimony will be based on "knowledge of a subject beyond that of persons of common intelligence and ordinary experience based on his experience, study or observation." Pl.'s Opp'n at 14 (internal quotation marks omitted). In other words, Plaintiff represents that the expert testimony she intends to offer will

---

malpractice was as simple as missing a deadline. *Id.* at *4.

13

be on subject matter outside the "common knowledge of laymen." *Seaward*, 391 S.E.2d at 287. In light of that admission, it is difficult to see how the Court could reach a conclusion to the contrary.

Regardless, given the nature of Plaintiff's LLC Creation Claims and Loan Closing Claims, there is no doubt that testimony as to matters beyond the common knowledge of laymen will be necessary at trial. Indeed, Plaintiff's claims each turn on rather specific and arcane details concerning the real estate settlement process, such as the proper preparation of loan documents, releases, accounting statements, and articles of incorporation, tax consequences, considerations of consumer and fair lending laws, the custom and practice within the industry, and the relationship among and responsibilities between the parties. *See* 4th Am. Compl. ¶¶ 353-356, 361-364, 369-372, 385-87, 393-95. Simply put, this is not a straightforward case of legal malpractice such that would warrant disregarding the general presumption in favor of expert testimony. *Compare Seaward*, 391 S.E.2d at 287 (generally accepted auditing standards are outside the common knowledge of laymen), *with Baserva v. Remes*, No. 08 Civ. 997, 2009 WL 1392532, at *2 (E.D. Va. May 18, 2009) (expert testimony not required where defendants waited three months to file the appropriate forms with authorities).

For all these reasons, the Court concludes that Plaintiff is required to present at least some expert testimony in support of her claims for legal malpractice, breach of fiduciary duty, and negligence.

### 2. Plaintiff's Proffered Expert Testimony Is Sufficient to Survive Summary Judgment

In establishing Duncan's liability for legal malpractice, breach of fiduciary duty, and negligence—the LLC Creation Claims and the Loan Closing Claims—Plaintiff intends to rely on

expert testimony by Harvey S. Jacobs, Esq. ("Jacobs").  In the instant motion, Duncan argues that Jacobs' testimony is insufficient for three basic reasons: (a) he is not qualified to opine on real estate settlement practice in Virginia; (b) his opinions do not align with the nature of the underlying transaction at issue in this action; and (c) his testimony would inappropriately veer into the jury's domain by touching upon ultimate issues in the case.  *See* Def.'s Reply at 4-8; Def.'s Suppl. Reply at 8-9.  The Court shall address each argument in turn.

First, Duncan argues that Jacobs is not qualified to opine on matters of Virginia real estate settlement practice.  As an initial matter, the Court observes that, in briefing this issue, the parties' submissions share a common and curious defect—namely, both parties cite to Virginia law for the proposition that a witness must possess sufficient knowledge, skill, or experience to render him competent to testify as an expert.  *See* Def.'s Reply at 6; Pl.'s Suppl. Opp'n at 4. While that proposition is entirely non-controversial, the parties' reliance on state law is misplaced; even when sitting in diversity, a district court is guided by federal law when exercising its "gatekeeping" function in connection with expert testimony.  *See generally City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 558 (11th Cir. 1998) ("[I]t is well settled that the Federal Rules of Evidence, not state evidence law, [generally] govern the admissibility of evidence in federal court.") (citing Fed. R. Evid. 1101); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) (addressing the standards governing the admissibility of non-scientific expert testimony in the context of a diversity action).  At this stage of the proceedings, the distinction is largely immaterial—like Virginia law, the federal standard requires an expert witness to be "qualified . . . by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  The Court merely takes note of the issue in the event the question of Jacobs'

qualifications arises again in the context of pretrial proceedings.

Turning to the merits of Duncan's first argument, Duncan contends that Jacobs is not licensed to practice law in Virginia and that his experience with real estate settlement practice has focused on the laws of the District of Columbia and Maryland and not Virginia—the jurisdiction which the parties agree has the closest ties to the settlement at issue in this action. From this, Duncan argues that Jacobs' testimony must be disregarded in its entirety as a matter of law and, without such testimony, Plaintiff's claims for legal malpractice, breach of fiduciary duty, and negligence must fail. However, the Court cannot say, at this stage of the proceedings, that Duncan is so patently unqualified to opine on the subject of real estate settlement practice in Virginia that his proffered testimony must be excluded in its entirety. Jacobs is an attorney and a member of the bars of the District of Columbia, Maryland, and New York. *See* Pl. Juergen's [sic] F.R.Civ.P.26(a)(2)(B) [sic] Expert Disclosure of Harvey S. Jacobs, Settlement Attorney ("Jacobs Report"), Docket No. [254-2], at 1. He has purportedly processed and conducted more than one thousand real estate settlements in this region over the course of his nearly thirty-year career, an experience which has apparently extended to settlement closings in Virginia. *See id.*; Dep. of Harvey S. Jacobs ("Jacobs Dep."), Docket No. [254-3], at 422. He also claims to have authored various publications and to have served as a panelist in programs touching upon real estate practice, including the role of counsel in real estate settlements and the function of the HUD-1 settlement statement. *See* Jacobs Report at 2-4. In short, Jacobs purports to have education, training, and experience in the general field of real estate settlement practice. *Id.* at 4. His opinions extend to the industry generally, and are not necessarily confined to a single jurisdiction. Moreover, at his deposition, Jacobs testified that his opinions as to the obligations

imposed upon the settlement agent in the context of the real estate closing process apply to Virginia practice as well. *See* Jacobs Dep. at 422-23. Without a doubt, Jacobs' testimony is less forceful and less compelling when it relates to Virginia practice than when it relates to the practice within the District of Columbia or Maryland, but the Court cannot say at this stage and with this record that it is entirely unsupported or unreliable. Whatever its ultimate merits, this factor alone does not render Jacobs so clearly unqualified that his testimony must be altogether disregarded. Therefore, summary judgment may not rest on this basis. Of course, that does not mean that Duncan is without recourse to test Jacobs' qualifications. The proper vehicle for raising such issues is a motion *in limine* filed in the context of pretrial proceedings and, if necessary, the Court shall consider a request that a *Daubert* hearing be held to evaluate Jacobs' proffered testimony. At this stage of the proceedings, it suffices to say that the Court cannot conclude that Jacobs' testimony is insufficient as a matter of law.

Second, Duncan appears to argue that Jacobs' opinions do not align with the nature of the underlying transaction at issue in this action. The argument is not easy to follow. So far as the Court can tell, the argument is this: Plaintiff admitted at her deposition that Duncan was not functioning as her lawyer at the closing of the Loan; Jacobs' testimony at his deposition that the role of the settlement agent is to serve as a neutral to all the parties was followed by the qualifier "especially if the parties don't know that [the agent has] picked a side," Jacobs Dep. at 423; therefore, Jacobs' opinion "does not apply," Def.'s Reply at 5. However, the argument is predicated upon a strained and ultimately untenable reading of Jacobs' testimony. Jacobs repeatedly offered his opinion that real estate settlement agents function as neutrals, wear many hats, and owe duties to all the parties, including the borrower. *See* Jacobs Report at 8-9; Jacobs

Dep. at 8, 422-23. By testifying that the agent's role as a neutral is "especially" true where the parties "don't know that [the agent has] picked a side" does not vitiate the remainder of Jacobs' testimony that the settlement agent owes duties to all parties at the settlement proceedings—he did not, in other words, testify that the agent acts as a neutral "only if" the parties are aware he is not representing a particular side. To the extent there is a contradiction here, it goes to Jacobs' credibility and the weight to be afforded his testimony; it does not warrant summary judgment in Duncan's favor. However, to the extent Duncan is able to show that there is an insufficient "fit" between Jacobs' proffered testimony and the facts of the case—a showing he simply has not made here—he may, if appropriate, raise the argument in the context of a motion *in limine* during pretrial proceedings.

Third, Duncan argues that Jacobs' testimony would inappropriately veer into the jury's domain by touching upon ultimate issues in the case. If Jacobs intends to testify as to all the matters set forth in his expert report, Duncan is clearly correct. Simply by way of example, Jacobs opines in his report that the conduct at issue in this case amounts to a statutory or common law violation, or that certain allegations of which he clearly has no personal knowledge are true or false. *See* Jacobs Report at 7-8. Plainly, these are questions for the jury. In this limited respect, Duncan's objections are valid and, should he choose to raise them in the context of a motion *in limine*, he might very well prevail. Unfortunately, these defects simply do not extend to Jacobs' opinions concerning the broader custom, practice, and usage governing real estate settlements. Therefore, summary judgment may not rest on this basis.

In the final analysis, neither Duncan's arguments nor Plaintiff's response truly speak to the question of whether Jacobs' proffered testimony, assuming admissibility, would suffice to

support Plaintiff's claims for legal malpractice, breach of fiduciary duty, and negligence. Instead, both sides focus on issues that go to Duncan's qualifications and competency that are more appropriately raised in the context of pretrial proceedings. At this stage, their focus should have been on whether Jacobs' testimony is sufficient to establish (a) the appropriate professional standard, (b) a deviation from that standard, and (c) that the deviation was the proximate cause of the claimed injury. *Seaward*, 391 S.E.2d at 287. Critically, Duncan never attempts to show how Jacobs' proffered testimony falls short in establishing one or more of these elements. Indeed, he never bothers to identify which of these elements are at issue, a failure that is especially troubling because the Virginia Supreme Court has held that expert testimony may be required as to some elements but not others depending on the particular facts of the case. *Whitley*, 574 S.E.2d at 252.

Based on its own review of Jacobs' expert report and the limited excerpts of his deposition testimony that the parties have provided to the Court, it is clear that Duncan's opinions will extend to the following: the settlement agent has a duty to the borrower and all other parties at the settlement proceedings; the settlement agent has a duty to ensure that all parties read and understand the documents they are signing; the settlement agent is a neutral, wearing many hats and representing all the parties to the transaction; even if independent attorneys are present, the settlement agent still has a duty to treat all parties fairly; the settlement agent has a duty to explain the ramifications of signing documents, including the HUD-1 settlement statement; and Duncan's conduct was not in compliance with industry custom, practice, and usage. *See* Jacobs Report at 8-9; Jacobs Dep. at 8, 422-23. Without any contrary argument from the parties, the Court can only conclude that a genuine dispute exists as to whether Duncan's conduct deviated from the applicable standard governing real estate settlement

agents and whether that deviation caused Plaintiff harm. Stated differently, the Court cannot

conclude on this record that no reasonable fact finder could find in Plaintiff's favor after

considering Jacobs' testimony. This is especially true because, "[o]rdinarily, the questions of

whether an attorney has exercised the required degree of care and, if not, whether the failure was

a proximate cause of the client's loss are to be decided by a fact finder, after considering expert

testimony." *Ripper v. Bain*, 482 S.E.2d 832, 836 (Va. 1997). Therefore, the Court shall DENY

Duncan's [185/186] Motion for Summary Judgment insofar as it seeks summary judgment on the

LLC Creation Claims and Loan Closing Claims—**Count XVIII** (Legal Malpractice), **Count XIX**

(Breach of Fiduciary Duty), **Count XX** (Negligence), **Count XXII** (Breach of Fiduciary Duty),

and **Count XXIII** (Negligence)—based on the sufficiency of Plaintiff's expert testimony

concerning the applicable standard of care, whether Duncan breached that standard of care, and

whether his breach was the proximate cause of Plaintiff's damages.

Before leaving the issue, the Court pauses to observe that Jacobs' expert report is directed

towards a now-superseded version of the Complaint in this action and does not appear to take

into account all the discovery taken in this action. The Court reminds Plaintiff that she has an

ongoing obligation to supplement her expert disclosures in a timely manner and her failure to do

so may result in the automatic sanction of exclusion. Fed. R. Civ. P. 26(e); Fed. R. Civ. P.

37(c)(1). To the extent supplementation is required, Plaintiff shall be required to serve a revised

expert report for Jacobs on or before April 22, 2011.

>    **B.**    ***Duncan Has Failed to Show That He Is Entitled to Summary Judgment on***
>             ***Plaintiff's Request for Punitive Damages***

Duncan next argues that Plaintiff cannot recover punitive damages on the LLC Creation

Claims and the Loan Closing Claims—**Count XVIII** (Legal Malpractice), **Count XIX** (Breach

of Fiduciary Duty), **Count XX** (Negligence), **Count XXII** (Breach of Fiduciary Duty), and

**Count XXIII** (Negligence)—as well as **Count XXI** (Breach of Contract), which is based on the

same allegations underlying the Loan Closing Claims. In support, he argues that in this situation

punitive damages may only be recovered if the breach alleged constitutes an independent, willful

tort beyond the mere breach of a contractual duty and only if the breach was based on actual

malice. *See* Def.'s Mem. at 14-15. In opposition, Plaintiff does not dispute that Duncan has

stated the proper standard for recovery of punitive damages, but counters that she has set forth

sufficient facts to suggest that Duncan "conspired to fraudulently disguise a consumer residential

refinance loan as a commercial loan" and that this suffices to satisfy the agreed-upon standard.

Pl.'s Opp'n at 20. Unfortunately, neither party attempts to root their legal arguments in the facts

of this case, which is especially problematic since the resolution of the issue necessarily turns on

the facts. More broadly, as the Court previously observed, "the parties have provided only a bare

outline of the facts relevant to Duncan's . . . role in forming the LLC and extending the [] Loan."

*Sloan II*, 689 F. Supp 2d at 104. As a result, "[t]he specific details regarding Duncan's exact

conduct in those transactions . . . remain unclear to a large degree." *Id.* These deficiencies in the

record remain as true today as when they were first noted by the Court. At the same time,

whether the Loan is a legitimate commercial loan, or instead an unlawful and fraudulently

disguised consumer residential loan, remains an open question in this action. *Id.* at 100. While

Duncan's argument may have some merit, based upon the skeletal factual record created by the

parties and their failure to tether their legal arguments to the facts of this case, the Court simply is

not in a position to engage in the fact-based inquiry required to assess whether punitive damages

may lie with respect to some or all of these claims. As such, Duncan has failed to carry his

burden of establishing his "entitle[ment] to judgment as a matter of law" on this issue. Fed. R. Civ. P. 56(a). Therefore, the Court shall DENY Duncan's [185/186] Motion for Summary Judgment insofar as it seeks summary judgment on Plaintiff's request for punitive damages in connection with **Count XVIII** (Legal Malpractice), **Count XIX** (Breach of Fiduciary Duty), **Count XX** (Negligence), **Count XXI** (Breach of Contract), **Count XXII** (Breach of Fiduciary Duty), and **Count XXIII** (Negligence).

C. *In Resolving the Instant Motion, the Court Has Not Considered Plaintiff's Allegation that Duncan's License to Practice Law Has Been Suspended*

In opposing the instant motion, Plaintiff avers that Duncan's license to practice law in Virginia has been suspended for "conduct involving dishonesty, fraud, deceit, or misrepresentation that reflects adversely on his fitness to practice law." Pl.'s Suppl. Opp'n at 4-5 & Ex. 1 at 3. While Plaintiff represents to this Court that the referenced conduct "involved the matter that is the basis of the instant case," Pl.'s Opp'n at 5, she provides no competent evidence in support of that assertion, relying exclusively on an unauthenticated printout from the Virginia State Bar's website that neither identifies the conduct underlying the disciplinary proceedings nor otherwise suggests that the proceedings had any connection to Plaintiff and her claims in this case, Pl.'s Opp'n Ex. 1 at 3. In fact, according to the Court's independent review of the unpublished memorandum order describing the basis for the suspension, the disciplinary proceedings concerned an entirely unrelated matter. *See Virginia State Bar ex rel. Fourth Dist., Section II Comm. v. Duncan*, Case No. CL09003613 (Va. Cir. Ct. Mar. 15, 2010), *available at* http://www.vsb.org/docs/Duncan_03-23-10.pdf. In any event, Plaintiff never bothers to articulate how the referenced disciplinary proceedings have any relevance to the question of whether she has adduced sufficient evidence to support her claims for legal malpractice, breach

of fiduciary duty, and negligence, or her ability to recover punitive damages, and the Court can discern none. *See* Pl.'s Opp'n at 6-7. Accordingly, the Court has not considered the contention in resolving in the instant motion.

## IV.  CONCLUSION

The Court has considered the remaining arguments tendered by the parties and has concluded that they are without merit. Therefore, and for the reasons set forth above, the Court shall DENY the remainder of Duncan's [185/186] Motion for Summary Judgment. An appropriate Order accompanies this Memorandum Opinion.


Date:   March 27, 2011

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge
