# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ANDREA SLOAN**, as Guardian and
Conservator on behalf of Mary Juergens, an
Incapacitated Individual, in both Mary
Juergens' individual capacity and as the sole
member of "1230 23rd Street, LLC,"

*Plaintiff/Counter-Defendant*,

v.

**URBAN TITLE SERVICES, INC.**, *et al.*,

*Defendants/Counter-Plaintiffs*.

Civil Action No. 06-01524 (CKK)

## MEMORANDUM OPINION
(March 27, 2011)

Mary Juergens ("Juergens") commenced this action on August 29, 2006, challenging the

legality of two loans extended to her, each of which was secured on a condominium located at

1230 23rd Street, N.W., Apartment 505, Washington, D.C. 20037 (the "Condo"). Subsequently,

Juergens was found to be an "incapacitated individual" and Andrea Sloan ("Sloan"), who was

appointed as Juergens' Guardian and Conservator, was substituted for Juergens as the plaintiff in

this action.[1] Over the years, the claims and defendants in this action have been successively

winnowed down by orders of this Court and by the agreement of the parties. Today, the

defendants include First Mountain Vernon Industrial Loan Association, Inc. ("FMVILA"),

Brickshire Settlements, LLC ("Brickshire"), Arthur G. Bennett ("Bennett"), and Dale Duncan

("Duncan") (collectively, "Defendants"). Presently before the Court is Defendants' [265] Motion

for Summary Judgment. Based upon the parties' submissions, the relevant authorities, and the

---

[1] The Court shall refer to Juergens and Sloan interchangeably as "Plaintiff."

record as a whole, the Court shall GRANT-IN-PART and DENY-IN-PART Defendants' [265] Motion for Summary Judgment.[2]

## I. BACKGROUND

The Court assumes familiarity with its prior opinions in this action, which set forth in detail the history of this case, and shall therefore only address the factual and procedural background necessary to address the discrete issues currently before the Court.

The only loan that remains at issue in this action was extended by or with the assistance of Defendants (the "Loan"). The heart of Plaintiff's lawsuit is her allegation that the Loan was intended to be, or should be construed as, a personal residential loan—not a commercial loan. *See Sloan v. Urban Title Servs., Inc.*, 689 F. Supp. 2d 123, 127 (D.D.C. 2010) (hereinafter, "*Sloan I*"). The relevant documents, taken at face value, characterize the Loan as a $250,000 commercial loan extended by FMVILA to 1220 23rd Street, LLC (the "LLC"), a limited liability company of which Plaintiff is the sole member. *Id.* at 127-28. Plaintiff nevertheless maintains that the Loan is, or should be construed as, a personal residential loan because (a) the documents relating to the Loan were fraudulently obtained by forgery and (b) the Loan is an illegal consumer residential loan disguised as a commercial loan in order to evade fair lending and disclosure

---

[2] While the Court renders its decision today on the record as a whole, its consideration has focused on the following documents, listed in chronological order of their filing: Mem. of P. & A. in Supp. of the FMV Defs.' Mot. for Summ. J. ("Defs.' Mem."), Docket No. [265-1]; FMV Defs.' LCvR 7(h) Stmt. of Undisptued [sic] Facts ("Defs.' Stmt."), Docket No. [265-1]; Pl. Sloan's Opp'n to the FMV Defs.' Mot. for Summ. J. ("Pl.'s Opp'n"), Docket No. [270]; FMV Defs.' Mem. in Reply to Pl.'s Opp'n to Their Mot. for Summ. J., Docket No. [272]; FMV Defs.' LCvR 7(h) Resp. to Pl.'s Stmt. of Facts Genuinly [sic] in Dispute, Docket No. [272]. While Plaintiff requests that oral argument be had on the instant motion, the Court concludes that the issues presented are properly resolved on the parties' briefing and that oral argument would not aid the Court in rendering its decision.

requirements. *See* 4th Am. Compl., Docket No. [120], ¶¶ 89-92. Unsurprisingly, Defendants

deny Plaintiff's allegations and assert that the Loan is a valid commercial loan extended to

Plaintiff's LLC. *See id.* ¶¶ 94-96. By their account, Defendants assisted Plaintiff, at her request,

in establishing the LLC, the title to the Condo was transferred from Plaintiff to the LLC, and

FMVILA extended a lawful commercial loan for $250,000, secured by the Condo, to the LLC.

*See id.* ¶ 96. Therefore, as presented by the parties, the central question underlying this lawsuit is

whether the Loan is or is not a legitimate commercial loan lawfully extended to the LLC.

Defendants now argue that certain actions taken by Plaintiff in the time since this action was

commenced resolve this central question and preclude Plaintiff from securing further relief.

The operative facts are not in dispute.[3] Sometime in mid-2009, Sloan, claiming to have

insufficient funds to cover the monthly mortgage payment on the Loan, decided to sell the

Condo. Pl.'s Opp'n at 6-7 & Ex. 3. On or about September 18, 2009, while the instant lawsuit

was still pending, Plaintiff executed a special warranty deed (the "Deed") transferring title to the

Condo to third-party purchasers. Defs.' Stmt. ¶ 6 & Ex. 1. The Deed provides, in principal part:

> THEREFORE, THIS DEED, is made this 18th day of September,
> 2009, by and between ANDREA J. SLOAN in her capacity as
> Conservator for Mary L. Juergens, individually <u>and</u> as Sole Member

---

[3] As has become a recurring theme in this action, in responding to the instant motion, Plaintiff has failed to fully comply with Local Rule LCvR 7(h)(1) and this Court's scheduling orders, which require the party opposing a motion for summary judgment to submit a statement enumerating all material facts that the party contends are genuinely disputed. *See* Local Rule LCvR 7(h)(1); Order (Jan. 30, 2009), Docket No. [155]. Plaintiff, *inter alia*, fails to respond to each paragraph in Defendants' statement with a correspondingly numbered paragraph, adduces additional facts throughout her response rather than placing those facts at the end, and fails to affirmatively indicate when facts are admitted. The response is patently inadequate and inexcusable given the Court's repeated warnings in this regard. Fortunately, while Plaintiff disputes some facts and seeks to introduce others, the only facts necessary for resolution of the instant motion are not genuinely in dispute.

of 1230 23rd Street, LLC, a Virginia Limited Liability Company, party(ies) to the first part, and WILLIAM E. NOLAN and BARBARA A. WHITE, parties of the second part.

Defs.' Stmt. Ex. 1 at 1 (emphasis in original). In addition, in language particularly seized upon by Defendants in making the instant motion, the Deed included the following recital concerning the origins of Plaintiff's title to the Condo: "by [d]eed recorded September 21, 2005, Mary L. Juergens conveyed title to the subject property to 1230 23rd Street, LLC." *Id.*

Plaintiff used some of the proceeds received from the sale to satisfy the Loan. Defs.' Stmt. ¶ 8 & Ex. 5. FMVILA agreed to accept the amount tendered—$319,229.18—and to hold the Loan fully satisfied and waive its lien on the Property. Defs.' Stmt. ¶ 9 & Exs. 4, 8; Pl.'s Opp'n at 10 & Ex. 4. As a result, Plaintiff was able to convey clear title to the third-party purchasers. Defs.' Stmt. ¶ 9 & Ex. 1; Pl.'s Opp'n at 10-11.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [that it] . . . is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact, and therefore "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to

specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in its favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted," *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

# III. DISCUSSION

### A.    *Defendants Are Not Entitled to Summary Judgment Based Upon the Equitable Doctrine of Estoppel by Deed*

The instant motion turns in large part on the legal consequences flowing from the factual recitals in the Deed.  The argument is succinctly summarized by Defendants as follows:

> Defendants' Motion for Summary Judgment is based on the premise that the factual recitations contained in the special warranty deed executed by Plaintiff Sloan . . . have certain legal ramifications. Specifically, Defendants argue that Plaintiff cannot, as a matter of law, continue to offer arguments that are in conflict with the recitations contained in the special warranty deed.  Because the special warranty deed recites that the LLC exists, that Juergens is its sole [m]ember, and that Juergens transferred "clear title" to her condominium to the LLC, . . . Plaintiff can no longer continue to contest these facts in this litigation.

Defs.' Reply at 1.  According to Defendants, if the factual recitals in the Deed are taken to be conclusively established, the central question underlying this lawsuit and upon which Plaintiff's claims invariably hinge—*i.e.*, whether the Loan is or is not a legitimate commercial loan lawfully extended to the LLC—must be resolved in their favor.  Therefore, as presented by Defendants, the "sole issue for the Court's determination is what legal effect the recitations in the deed have." *Id.* at 2.  Plaintiff counters that Defendants, as non-parties to the Deed, have no standing to enforce the factual recitals in the Deed against Plaintiff.  Pl.'s Opp'n at 21.

The issue rises and falls on the reach of the equitable doctrine of "estoppel by deed." Under District of Columbia law,[4] "[a] fact recited in a deed or lease will be taken to be true

---

[4]  Both parties assume that District of Columbia law applies in the present context, Defs.' Mem. at 6; Pl.'s Opp'n at 21 n.23, and the Court need not question that assumption.  *Himes v. Medstar-Georgetown Univ. Med. Ctr.*, __ F. Supp. 2d __, 2010 WL 4879438, at *4 n.3 (D.D.C. Dec. 1, 2010).

against all parties thereto and all claiming under them, and a party is estopped not only from disputing the deed or lease, but every fact which it recites." *Union Provision & Distrib. Corp. v. Thomas J. Fisher & Co.*, 49 A.2d 85, 87 (D.C. 1946) (citing *Morris v. Wheat*, 8 App. D.C. 379, 1896 WL 14776, at *5 (D.C. 1896)); *see generally* Richard R. Powell, *Powell on Real Property*, § 81A.03(1)(b)(i) (Michael Allan Wolf ed., 2000 ed. & Supp. 2010) (describing the contours of the doctrine of estoppel by deed). As recently described by the District of Columbia Court of Appeals, the doctrine operates in equity to preclude the grantor from denying the truth of a deed "against one in whose favor he executed it." *Ackerman v. Abbott*, 978 A.2d 1250, 1254 (D.C. 2009) (emphasis added). That is, the equitable doctrine of estoppel by deed may be invoked only by and against parties to the deed and their successors-in-interest.[5]

The principle is hardly novel. Nearly one hundred and fifty years ago, the Supreme Court characterized the reach of the doctrine as follows:

> [N]o person can rely upon estoppel growing out of a transaction to which he was not a party nor a privy, and which in no manner touches his rights. There is no mutuality, which is a requisite of all estoppels. * * * Defendants claim nothing under [the] deed, and deny all connection with the title it purports to give. They are strangers to it, and have no right to set up its recitals as estoppels.

*Deery v. Cray*, 72 U.S. 795, 803 (1866). Simply put, "[s]trangers can neither take advantage of, nor be bound by," an estoppel by deed; "[i]ts binding effect is between the immediate parties—their privies in blood, in law and by estate." *Howard v. Perkins*, 191 S.E.2d 46, 57 (Ga. 1972) (internal quotation marks omitted).

---

[5] This limitation on the reach of factual recitals coincides with the reach of the covenant of warranty itself—which, by statute, is binding among the covenantor, the covenantee, and their privies. D.C. Code § 42-603 (2001).

Defendants' authorities are not to the contrary. Defendants concede that the cases cited in their opening memorandum involve parties to the deed at issue—not third-party strangers, Defs.' Reply at 6—and they therefore shed no light on the present question. In reply, Defendants cite to a single case which they contend supports the proposition that a non-party may invoke the doctrine. Defs.' Reply at 7. In the cited decision, the intermediate-level appellate court for the State of Texas observed that it was "aware of no requirement that the litigant invoking estoppel by deed be a party to the deed," emphasizing that "[n]o cases imposing such a requirement ha[d] been cited" by the parties in that case. *Freeman v. Stephens Prod. Co.*, 171 S.W.3d 651, 655 (Tex. Ct. App. 2005). The Court finds this unsupported statement unpersuasive when weighed against the overwhelming and persuasive authority to the contrary; irrespective of time or jurisdiction, courts have adhered to the fundamental principle that the equitable doctrine of estoppel by deed is confined to the parties and their successors-in-interest. *See, e.g.*, *Davidson Land Co., LLC v. Davidson*, __ P.3d __, 2011 WL 565619, at *8 n.8 (Wyo. Feb. 18, 2011); *Scott v. MorEquity, Inc.*, 683 F. Supp. 2d 1280, 1283 (N.D. Ala. 2009); *Am. Fence Co., Inc. v. MRM Sec. Sys., Inc.*, 710 F. Supp. 37, 40 (D. Conn. 1989); *Dixieland Realty Co. v. Wysor*, 158 S.E.2d 7, 15 (N.C. 1967); *see also* Richard A. Lord, *Williston on Contracts*, § 33:12 (4th ed. 2010) ("[T]he doctrine of estoppel by deed applies only to the parties to the transaction and their privies."). Indeed, the decision relied upon by Defendants does not even reflect the settled law of Texas. *See Patton Children's Trust v. Hamlin*, No. 07 Civ. 488, 2008 WL 3863475, at *4 (Tex. Ct. App. Aug. 20, 2008) ("[W]hile a deed may furnish evidence of the recited fact, it may not be competent evidence of the recited fact as between a party to the deed and a stranger.").

In the final analysis, Defendants, as strangers to the Deed, may not invoke the doctrine of

estoppel by deed against Plaintiff.  Therefore, summary judgment may not rest on this basis.

### B.     *Defendants Are Not Entitled to Summary Judgment Based Upon the Broader Doctrine of Equitable Estoppel*

To the extent Defendants intend to rely on a more generalized concept of equitable estoppel—an argument left entirely unaddressed in their reply papers—that argument also fails. Even assuming, *arguendo*, that the broader doctrine of equitable estoppel is not displaced by the more specific doctrine of estoppel by deed, Defendants have fallen woefully short of establishing, at least as a matter of law, an essential element of equitable estoppel—reasonable and detrimental reliance.  *Goldberg, Marchesano, Kohlman, Inc. v. Old Republic Sur. Co.*, 727 A.2d 858, 862 (D.C. 1999).  While the record in this regard is inadequately developed in several respects, the Court shall only mention three.  First, in corresponding with Defendants about the contemplated sale of the Condo to third-party purchasers, Plaintiff expressly reserved all rights in the present lawsuit and disclaimed that her offer to tender payment on the Loan was an offer of settlement. Pl.'s Opp'n Ex. 3 at 2.  Given that Defendants concede that "[t]he parties generally recognize that the central issue in this lawsuit concerns whether the loan extended by FMVILA was a commercial loan," Defs.' Reply at 3, it is hard to see how they could have reasonably construed Plaintiff's representations as resolving this "central issue" while Plaintiff was simultaneously representing that she intended to proceed with the action.  Second, the record evinces that Defendants accepted Plaintiff's offer of payment well before the Deed was executed, Pl.'s Opp'n Ex. 4 at 2, raising the question of whether they relied on Plaintiff's representations in the Deed at all.  Third, Defendants have been on notice of Plaintiff's position that the LLC has never held legal title to the Condo since the outset of this litigation; as a result, they were not without "the means of knowledge" to test the truth of Plaintiff's representations.  *Cassidy v. Owen*, 533 A.2d

253, 255 (D.C. 1987). These considerations at the very least create a genuine dispute as to the reasonableness of Defendants' claimed reliance, and therefore summary judgment cannot rest on this basis.

### C. Defendants' Arguments Unrelated to the Deed and the Nature of the Loan Are Meritorious in Part

While the lion's share of Defendants' motion is dedicated to the legal consequences flowing from the Deed and its effect upon the "central question" in this case—the true nature of the Loan—it does not end there. In fact, Defendants tender several arguments as to why summary judgment is appropriate on several counts irrespective of the ultimate determination on whether the factual recitations in the Deed are conclusively established. Stated differently, Defendants offer various reasons why some of Plaintiff's claims fail as a matter of law even setting aside the question of whether the central question in this case—the nature of the Loan—is resolved in their favor.

In responding to the instant motion, Plaintiff addresses Defendants' arguments concerning estoppel by deed and equitable estoppel at some length, but almost entirely ignores Defendants' arguments that are unrelated to the Deed. The sum total of her response in this regard is as follows:

> The main issue in this case—whether the loan from FMVILA to Mary Juergens [was] a consumer or commercial loan—is "live." * * * The arguments raised by the FMV Defendants that the remaining claims asserted by Andrea Sloan . . . are all premised on a finding that the loan at issue was a commercial as opposed to a consumer loan. Since Andrea Sloan has shown, throughout this opposition, that no "deed estoppel" theory operates to convert the underlying loan into a commercial loan as a matter of law, the FMV Defendants' motion for summary judgment on each individually stated cause of action must fail as a matter of law.

Pl.'s Opp'n at 25-26. To the extent Plaintiff considered her argument fully responsive, she is mistaken. As described in greater detail below, a number of Defendants' arguments simply do not turn on the question of whether the Loan is or is not a legitimate commercial loan, but instead raise independent legal questions as to the viability of Plaintiff's claims. Plaintiff's failure to provide a meaningful response is inexplicable in light of this Court's repeated warnings that, in this Circuit, "when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Lewis v. District of Columbia*, No. 10-5275, 2011 WL 321711, at *1 (D.C. Cir. Feb. 2, 2011) (internal quotation marks omitted); *see also Sloan I*, 689 F. Supp. 2d at 134; *Sloan II*, 689 F. Supp. 2d at 121-22. Moreover, despite the fact that Defendants highlighted in their reply the non-responsiveness of Plaintiff's opposition, Defs.' Reply at 3-4, Plaintiff has never sought leave to supplement or augment her opposition.

Despite Plaintiff's failure to provide a fulsome response, based on the one-sided record provided to the Court, it is clear that only some of Defendants' arguments are meritorious at this point in the proceedings. The Court shall address each argument in turn.

### 1. Defendants Are Not Entitled to Summary Judgment on Count XXIV (Conversion against FMVILA)

Plaintiff's **Count XXIV** against FMVILA sounds in conversion and turns on the allegation that FMVILA charged her illegal fees and an impermissibly high rate of interest, thereby "unlawfully exercis[ing] ownership, dominion, and control over [her] personality in denial or repudiation of [her] right to such property." 4th Am. Compl. ¶ 401. The referenced "property," though not expressly stated, is clearly Plaintiff's money—namely, money that she paid over to FMVILA as fees or interest in connection with the Loan. *Id.* ¶¶ 399-403. In support

of the instant motion, Defendants construe Plaintiff's conversion count "as a claim that she

overpaid FMVILA both in fees and in interest and that she is now due a return of that money."

Defs.' Mem. at 21. Based on that reading, Defendants make a two-fold legal argument: that the

claim fails because (a) there is no allegation that FMVILA "exercised unlawful control" over the

money in question, and (b) a cause of action for conversion "cannot be maintained to enforce a

mere obligation to pay money."[6] Defs.' Mem. at 19-20. In opposition, Plaintiff offers nothing in

the way of a counter-argument apart from her broad rejoinder that summary judgment is

inappropriate on any of her claims because there is a factual dispute as to the true nature of the

Loan, Pl.'s Opp'n at 26, which is plainly non-responsive to Defendants' legal arguments.

Plaintiff's failure to respond is particularly troubling because, if Defendants' reading of her claim

is correct, her conversion claim would rest on shaky ground.

Beginning with Defendants' first argument, if the Court credits Defendants' reading of

Plaintiff's conversion claim, then there would be a real question as to whether Plaintiff could

establish, as she must, an "*unlawful* exercise of ownership, dominion, and control" over the

money in question. *Baltimore v. District of Columbia*, 10 A.3d 1141, 1155 (D.C. 2011)

(emphasis added). That is, if Plaintiff asserts nothing more than that "she overpaid FMVILA

both in fees and in interest and that she is now due a return of that money," Defs.' Mem. at 21,

the inevitable conclusion is that Plaintiff made such payments voluntarily and that FMVILA's

receipt thereof was not unlawful. *See Gharib v. Wolf*, 518 F. Supp. 2d 50, 56 (D.D.C. 2007)

---

[6] To the extent Defendants also intend to argue that the money at issue does not
constitute a "specific identifiable fund of money," *Curaflex Health Servs., Inc. v. Bruni*, 877 F.
Supp. 30, 32 (D.D.C. 1995), the argument is entirely cursory and the Court declines to reach its
merits without an adequate record and legal support from either party.

(where plaintiff voluntarily transfers ownership in property in question, there is no unlawful exercise of control); *Equity Grp., Ltd. v. PaineWebber Inc.*, 839 F. Supp. 930, 933 (D.D.C. 2003) (same).[7] While other causes of action might contemplate relief in such circumstances, conversion would not be among them.

The problem with Defendants' argument is that it is predicated upon a misunderstanding as to the foundation of Plaintiff's conversion claim. The basis of that claim is that FMVILA was only able to overcharge Plaintiff by first "fraudulently disguising its loan . . . as a commercial loan rather than, what was in reality, a personal consumer residential loan." 4th Am. Compl. ¶ 400. The implication from the allegation is obvious—FMVILA's exercise of dominion over Plaintiff's payments was unlawful *ab initio* because the payments were obtained through fraudulent means. At least one court in this District has concluded that a plaintiff's allegation that the subject property was obtained "by the use of fraudulent misrepresentations" is sufficient to discharge the plaintiff's burden. *Bonino*, 2010 WL 1328813, at *8. However, because neither party has addressed the direct issue, the Court declines to opine on whether such an allegation would ultimately be meritorious. At this stage, it suffices to say that Defendants' first argument fails for the simple reason that it is premised on a misreading of the Complaint.

Defendants' second argument fares no better. While they are correct that "[a] cause of action for conversion . . . may not be maintained to enforce a mere obligation to pay money," *Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 106 (D.D.C. 2004) (Walton, J.), they misapprehend the

---

[7] An exception to this principle lies where the defendant's initial possession is lawful, but there is a subsequent "demand for return" by the plaintiff. *de Lupis v. Bonino*, No. 07 Civ. 1372, 2010 WL 1328813, at *7 (D.D.C. Mar. 31, 2010). Neither party has addressed the applicability of the exception in connection with the instant motion and the Court declines to do so for them.

line of cases upon which they rely. What is meant by the quoted statement is more limited than Defendants suggest: simply put, "a claim for conversion of money may not be maintained to enforce a contractual obligation for payment of money." *Cuneo Law Grp., P.C. v. Joseph*, 669 F. Supp. 2d 99, 123 (D.D.C. 2009) (Walton J.) (citing *Calvetti*, 346 F. Supp. at 106); *Shulman v. Voyou, L.L.C.*, 251 F. Supp. 2d 166, 171 (D.D.C. 2003) (claim for conversion may not rest on rights that "are of a contractual nature and are not property interests"). In other words, a plaintiff may not cloak a breach of contract claim in the dress of conversion. *Cuneo*, 669 F. Supp. 2d at 124. But Plaintiff's claim does not suffer from this defect, at least not in any way that the Court can glean from Defendants' papers.

Viewed from a slightly different perspective, Defendants' second argument, like the first, is premised upon a misunderstanding as to the foundation of Plaintiff's conversion claim. Plaintiff does not merely allege that she paid FMVILA certain monies and that she is "now due a return of that money." Defs.' Mem. at 19. Were the claim so confined, Defendants' argument might have some merit. But the claim extends further, and includes an allegation that FMVILA obtained the money at issue only through unlawful means—indeed, Plaintiff maintains that the parties' entire contractual relationship was fraudulent. Courts within this District have upheld conversion claims based on less compelling allegations. *Cf. Gov't of Rwanda v. Rwanda Working Grp.*, 227 F. Supp. 2d 45, 63 (D.D.C. 2002) (defendant held liable for conversion even though the monies were paid pursuant to contract; defendant did not perform the services as required and failed to return the monies upon demand). However, because neither party has addressed the direct issue, the Court declines to opine on whether Plaintiff's claim, properly construed, is meritorious in this regard. At this stage, it suffices to say that Defendants' second

14

argument also fails for the simple reason that it is premised on a misreading of the Complaint.

For the foregoing reasons, Defendants are not entitled to summary judgment on Plaintiff's **Count XXIV** (Conversion against FMVILA).

### 2. Defendants Are Entitled to Summary Judgment on Count XXVI (Civil Conspiracy against Duncan and Bennett)

Plaintiff's **Count XXVI** alleges that Duncan and Bennett "formed a conspiracy whereby they fraudulently disguised [FMVILA's] loan to [Plaintiff] as a commercial loan rather than, what was in reality, a personal consumer residential loan." 4th Am. Compl. ¶ 420. As these allegations make clear, the underlying tort upon which Plaintiff's civil conspiracy claim rests is an alleged fraud arising out of her allegations that Duncan and Bennett improperly disguised a personal residential loan as a commercial loan. Plaintiff has asserted a separate claim against Duncan and Bennett for the underlying fraud—**Count XXV**. *Id.* ¶¶ 404-418. In support of the instant motion, Defendants make a straightforward legal argument—*i.e.*, that because civil conspiracy is only a means for establishing vicarious liability, Plaintiff's claim must fail regardless of how the Loan is construed. Defs.' Mem. at 21-22. In other words, they argue that Plaintiff's civil conspiracy allegations cannot survive as an independent cause of action. Given the basis of Defendants' legal argument, Plaintiff's broad rejoinder that summary judgment is inappropriate on any of her claims because there is a factual dispute as to the true nature of the Loan is non-responsive to Defendants' argument. Pl.'s Opp'n at 26. In any event, Defendants are correct that civil conspiracy is "not an independent tort but only a means for establishing vicarious liability for an underlying tort." *Hill v. Medlantic Health Care Grp.*, 933 A.2d 314, 334 (D.C. 2007) (internal quotation marks omitted); *see also McCord v. Bailey*, 636 F.2d 606, 611 n.6 (D.C. Cir. 1980) ("[C]ivil conspiracy is not in and of itself a civil wrong, giving an

independent cause of action.").  That is, like *respondeat superior*, civil conspiracy "is a theory of liability, not a separate cause of action that demands its own count."  *Baird v. Holway*, 539 F. Supp. 2d 79, 91 (D.D.C. 2008); *accord Williams v. District of Columbia*, 916 F. Supp. 1, 3 n.2 (D.D.C. 1996).  As such, Defendants are entitled to summary judgment insofar as they seek dismissal of **Count XXVI** (Civil Conspiracy against Duncan and Bennett) as a freestanding cause of action.  Of course, Defendants' victory is largely a hollow one.  So long as the underlying fraud count—**Count XXV** (Fraud against Duncan and Bennett)—remains viable, Plaintiff is free to rely upon civil conspiracy as a theory to establish Duncan and Bennett's liability for the underlying fraud.  *See Bonino*, 2010 WL 1328813, at *10.

Furthermore, because Defendants' argument applies with equal force to Plaintiff's counts against FMVILA and Brickshire for *respondeat superior*—**Count XXXIII** (*Respondeat Superior* against FMVILA) and **Count XXXIV** (*Respondeat Superior* against Brickshire)—the Court shall dismiss those counts as well.  However, as with civil conspiracy, Plaintiff may similarly rely upon the theory of *respondeat superior* in establishing that FMVILA and Brickshire are liable for the underlying conduct identified in connection with those counts.

### 3.  Defendants are Entitled to Summary Judgment on Count XXVIII (Loan Shark Act against FMVILA)

Plaintiff's **Count XXVIII** asserts a claim against FMVILA under the District of Columbia's so-called "Loan Shark Act," D.C. Code § 26-901 *et seq.*  4th Am. Compl. ¶¶ 436-447.  Specifically, Plaintiff contends that FMVILA violated the Loan Shark Act by charging her an impermissibly high interest rate and by failing to furnish her with a statement and receipt in conformity with the statute's requirements.  *Id.*  In support of the instant motion, Defendants make a straightforward legal argument—*i.e.*, because the Loan Shark Act does not apply to loans

exceeding $25,000, Plaintiff's claim must fail regardless of how it is construed. Defs.' Mem. at 24. Given the basis of Defendants' legal argument, Plaintiff's broad rejoinder that summary judgment is inappropriate on any of her claims because there is a factual dispute as to the true nature of the Loan is again entirely non-responsive to Defendants' argument. Pl.'s Opp'n at 26. At any rate, Defendants are correct that the Loan Shark Act expressly exempts from its coverage "any loan, or the making of any loan[,] . . . [g]reater than $25,000." D.C. Code § 26-912(a)(5) (2001); *see also Poblete v. Indymac Bank*, 657 F. Supp. 2d 86, 96 (D.D.C. 2009) ("[T]he D.C. Loan Shark Act explicitly exempts from its coverage loans greater than $25,000."). Accordingly, based on the undisputed fact that the Loan in this case was for $250,000, Defendants are entitled to summary judgment on Plaintiff's **Count XXVIII** (Loan Shark Act against FMVILA).

### 4. Defendants Are Not Entitled to Summary Judgment on Counts XVIII, XIX, and XX (Legal Malpractice, Breach of Fiduciary Duty, and Negligence against Duncan)

Plaintiff's **Count XVIII** (Legal Malpractice), **Count XIX** (Breach of Fiduciary Duty), and **Count XX** (Negligence) are each premised on an identical set of factual allegations relating to Duncan's role in the creation of the LLC. *See* 4th Am. Compl. ¶¶ 351-74. Plaintiff alleges that, by claiming to have prepared documents creating the LLC on Plaintiff's behalf and receiving a fee for doing so, and then filing these documents with state authorities, Duncan entered into an attorney-client relationship with Plaintiff and owed her a fiduciary duty and a common law duty of care. *Id.* ¶¶ 352, 360, 368. Significantly, on March 7, 2009, Duncan moved for summary judgment on several fronts, including the merits of each of these three claims. *See* Def.'s Mem. in Supp. of Mot. for Summ. J., Docket No. [186-1]. Duncan's primary argument was that Plaintiff's claims for legal malpractice, breach of fiduciary duty, and negligence are all

predicated upon a finding that he entered into an attorney-client relationship with Plaintiff and that, absent such a relationship, she cannot succeed on her claims. *See id.* at 4-8. Plaintiff, in opposition, conceded that she never entered into an attorney-client relationship with Duncan in connection with the closing of the Loan, but maintained that such a relationship nonetheless existed with respect to the creation of the LLC. *See* Pl.'s Opp'n to Def.'s Mot. for Summ. J., Docket No. [196], at 9-16. In addition, Plaintiff argued that, even in the absence of an attorney-client relationship, Virginia law permits third parties to bring a legal malpractice claim in certain "special circumstances" where the third party's reliance is reasonable and foreseeable and, irrespective of the question of whether an attorney-client relationship existed, her claims based on negligence and fiduciary duty would survive. *See id.* at 11-16. In reply, Duncan offered no direct response to Plaintiff's argument, but instead argued for the first time that Plaintiff's claims must fail because she is required to proffer expert testimony to establish the appropriate standard of care and to prove liability. *See* Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. for Summ. J., Docket No. [224], at 4-8.

In its February 12, 2010 decision, the Court found that no reasonable fact finder "could reasonably conclude that [Duncan] and Plaintiff entered into an attorney-client relationship." *Sloan II*, 689 F. Supp. 2d at 109. Nevertheless, based on the scant record support and legal authority provided by the parties, the Court could not agree with Duncan that the absence of an attorney client-relationship conclusively established his entitlement to summary judgment on Plaintiff's claims for legal malpractice, breach of fiduciary duty, and negligence. *Id.* The fundamental—and ultimately fatal—shortcoming in Duncan's submissions on this issue was that he "chose not to directly respond" to Plaintiff's position that, irrespective of the answer to the

question of whether an attorney-client relationship existed, Virginia law permits third parties to bring a legal malpractice claim in certain special circumstances and, in any event, her claims based on negligence and fiduciary duty are based on duties arising independently of the attorney-client relationship. *Id.* In the end, the Court could not "determine whether Duncan . . . owed Plaintiff any duties . . . or may be held liable for legal malpractice under Virginia law, and the Court decline[d] to advance arguments that the parties themselves ha[d] not made." *Id.* As a result, the Court held that Duncan had simply failed to "show[] that he is entitled to summary judgment on Plaintiff's claims for legal malpractice, negligence and breach of fiduciary duty based on the absence of an attorney-client relationship alone." *Id.* While the Court permitted the parties to engage in supplemental briefing on an entirely different issue involving these very same claims—namely the sufficiency of Plaintiff's proffered expert testimony—the Court did not solicit supplemental briefing on the issue or otherwise afford Duncan a second bite at the apple. *See* Order (Feb. 12, 2010), Docket No. [246].

In the instant motion, Duncan seeks to resurrect the issue by responding to some, but not all, of the arguments that Plaintiff raised earlier in opposition to his prior motion for summary judgment.[8] *See* Defs.' Mem. at 16-18. Duncan has never sought this Court's leave to file a

---

[8] To see that Duncan's argument still does not respond to all of Plaintiff's prior arguments, the Court need look no further than Plaintiff's long-standing position that, regardless of whether an attorney-client relationship existed, her claims based on negligence and fiduciary duty are based on duties arising independently of the attorney-client relationship. It is hornbook law that "privity of contract"—the underpinning of Duncan's argument—is not an essential element of a cause of action for breach of fiduciary duty or negligence. Yet Duncan makes no credible attempt to explain why his argument should apply to Plaintiff's claims for fiduciary duty and negligence, apart from his passing and unilluminating representation that all three claims are predicated upon the same factual allegations. There may be an explanation, but Duncan simply has not provided one.

renewed motion for summary judgment on an issue that was previously raised and ruled upon by the Court, and his attempt to circumvent this Court's scheduling orders by embedding a recycled argument in his most recent papers is simply unacceptable. To the extent Duncan believes the matter requires a level of attention that he himself did not provide at the time he last filed a motion for summary judgment, he must first seek the Court's leave and establish good cause for requiring further briefing. At this point, the Court merely observes that the parties have been afforded more than ample opportunity to file dispositive motions and this action has been needlessly delayed by the parties' piecemeal approach to litigation. In any event, Defendants are not entitled to summary judgment on Plaintiff's **Count XVIII** (Legal Malpractice), **Count XIX** (Breach of Fiduciary Duty), and **Count XX** (Negligence) on this basis.

## IV. CONCLUSION

The Court has considered the remaining arguments tendered by the parties and has concluded that they are without merit. Therefore, and for the reasons set forth above, the Court shall GRANT-IN-PART and DENY-IN-PART Defendants' [265] Motion for Summary Judgment. Specifically, the Court shall GRANT the motion insofar as it pertains to:

- **Count XXVI** (Civil Conspiracy against Duncan and Bennett);

- **Count XXXIII** (*Respondeat Superior* against FMVILA);

- **Count XXXIV** (*Respondeat Superior* against Brickshire); and

- **Count XXVIII** (Loan Shark Act against FMVILA).

The motion shall be DENIED in all other respects.  An appropriate Order accompanies this Memorandum Opinion.

Date:   March 27, 2011

                          _____/s/_____
                          **COLLEEN KOLLAR-KOTELLY**
                          United States District Judge